Oluwamuyiwa Awodiya
15005 Dahlia Dr.
Bowie, MD 20721
(240) 602-1836
Plaintiff, in Proper Person

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

---

|  |  |
|---|---|
| Oluwamuyiwa Awodiya | Case No.  0:18-cv-60482-KMM |
| *Plaintiff* |  |
|  | Jury Trial:   ☒ Yes ☐ No |
| -v- |  |
|  | Hon. Chief Judge: K. Michael Moore |
|  | Magistrate Judge: Barry S. Seltzer |
| Ross University School of Medicine, School of Veterinary Medicine Limited |  |
| *Defendant* |  |

## PROPOSED THIRD AMENDED COMPLAINT

Plaintiff, OLUWAMUYIWA AWODIYA, in proper person, complains against

Defendant, ROSS UNIVERSITY SCHOOL OF MEDICINE, SCHOOL OF VETERINARY

MEDICINE LIMITED (hereinafter, referred to as "Defendant" or "RUSM").

## PARTIES

1.      Plaintiff, Oluwamuyiwa Awodiya is currently a resident of the State of Maryland

and, at all relevant times, was a student at Ross University School of Medicine.

2.       Defendant, RUSM is a private for-profit medical school. Adtalem Global Education is registered with the Florida Department of State to do business in Florida as Ross University School of Medicine. According to public records, RUSM's principal place of business is in Broward county of the State of Florida. RUSM is also registered to do business in Tennessee, which documents that RUSM's "principal address" is located in Broward county of the State of Florida. RUSM has administrative offices in Florida, has 5 classrooms in Florida, and gives programs of instruction in Florida. RUSM institution is licensed by Florida Department of Education, under the provision of Chapter 1005 of Florida Statues also under the provision Chapter 6E of the Florida Administrative Code.

## JURISDICTION AND VENUE

3.       This court has jurisdiction pursuant to 28 U.S.C. § 1332 in that there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.00, exclusive of interests and costs.

4.       Jurisdiction is invoked pursuant to 28 U.S.C. § 1331 (questions of federal law) based upon Section 504 of the Rehabilitation Act of 1973 (hereinafter, referred to as "Section 504") and Title III of the Americans with Disabilities Act (hereinafter, referred to as the "ADA").

5.       This Court also has supplemental jurisdiction over the state law claims in this action pursuant to 28 U.S.C. § 1367(a) because Plaintiff's state law claims are so related to his federal claims that both form a part of the same case or controversy.

6.       Venue is appropriate in this Court under 28 U.S.C. § 1391 as Defendant's administrative offices, its principal place of business, and its principal address are located in this judicial district.

## **FACTS FOR NBME CBSE EXAM TAKEN IN THE UNITED STATES**

7.      Plaintiff suffers from mental impairments; he has an attention impairment later diagnosed as Attention Deficit Disorder Without Mention of Hyperactivity (hereinafter, referred to as "ADHD") and has an anxiety disorder later diagnosed as "Anxiety State, Unspecified" (hereinafter, referred to as "Anxiety Disorder") which resembles the anxiety caused by Plaintiff's later diagnosed Obsessive Compulsive Disorder (hereinafter, referred to as "OCD").

8.      In December 2015, Plaintiff requested test accommodations from the Associate Dean of RUSM, Dr. Bryan Hayse ("Dr. Hayse").

9.      After Plaintiff failed his 5th semester by one percent, he went to Dr. Hayse and asked if he could retake any of his exams because he needed more time to answer the questions; Plaintiff also told Dr. Hayse that he had extreme difficulty paying attention during his exams. Dr. Hayse partially denied the request, responding that he could only accommodate Plaintiff for future exams but not for exams that Plaintiff had already taken.

10.      Dr. Hayse then told Plaintiff that he would call McMillan Cuffy ("Mr. Cuffy") to get accommodations for the Plaintiff.

11.      In January 2016, Plaintiff gave the RUSM counseling center his CONNERS CPT3 assessment results of his ADHD assessed by his primary health care provider in the United States of America. At the same time, he requested accommodations for his ADHD which included additional time to complete exams, extended testing time and extra time to study for and between the National Board of Medical Examiners (NBME) Comprehensive Basic Sciences examination (CBSE) (hereinafter, referred to as "NBME CBSE" or "COMP") attempts, as well as assistance and guidance to process requests with NBME for extended test time.

12.      After Plaintiff requested accommodations again, Dr. Davendra Sharma and

McMillan Cuffy wanted to do their own evaluation and diagnostic assessments for Plaintiff's attention problem.

13.     In addition to Plaintiff's CONNERS CPT3 assessment already provided to RUSM, Plaintiff took RUSM's CAARS assessment for the second time which indicated ADHD and took the Test of Variables of Attention (T.O.V.A.) assessment which also indicated ADHD.

14.     RUSM later confirmed Plaintiff's diagnosis of ADHD and the need for test accommodations.

15.     RUSM also diagnosed Plaintiff with an Anxiety Disorder.

16.     RUSM knew that Plaintiff had difficulty completing his exams on time.

17.     With an already signed 'Release of Information Consent' form addressed to RUSM administration, Plaintiff allowed RUSM psychiatrist and counseling center to confirm the ADHD diagnoses with the Accommodations Coordinator. Mr. Cuffy then scheduled Plaintiff to see the Accommodations Coordinator, Matthew J. Stewart-Fulton.

18.     During the Plaintiff's meeting with the Accommodations Coordinator, he again requested the same test accommodations.

19.     RUSM denied and failed to provide Plaintiff with any accommodations for his mental impairments.

20.     Due to RUSM denial of accommodations for Plaintiff's disability, RUSM caused a hostile and discriminative academic environment.

21.     The Plaintiff's disabilities worsened because of the discriminative academic environment created by RUSM. Over numerous documented visits to the counseling center of RUSM, Plaintiff continued to express his concern for his mental impairments and the need for extended testing time.

22.     In February and March 2016, Plaintiff again requested RUSM's assistance and guidance to process requests for accommodations on NBME exams. RUSM refused again.

23.     Majority of the Plaintiff's attempts to pass the NBME CBSE took place in the United States of America. He again requested for reasonable accommodations from RUSM administration located in Florida, including to postpone his NBME CBSE until the next testable window. RUSM denied the request also saying that if Plaintiff does not sit for the exam, he will be withdrawn from the school.

24.     When Plaintiff enrolled into RUSM, the student handbook stated that students are subject to administrative withdrawal if they do not "pass" the NBME CBSE within three consecutive attempts. RUSM changed this policy to state that students are subject to administrative withdrawal if they do not "sit" the NBME CBSE within three consecutive attempts. RUSM essentially forced students to sit for the exam even when they are not ready to do so, by penalizing them with an Academic Withdrawal. RUSM decision to change the policy in order to make students sit for the NBME CBSE was arbitrary, capricious, and lacking any discernable rational basis. Furthermore, RUSM did not make any attempt to notify students in advance of this significant change in policy. And lastly, this significant change in policy put students with learning disabilities at a substantial disadvantage to other students.

25.     While Plaintiff was seeking assistance from RUSM, RUSM failed to provide Plaintiff any information regarding disability support services provided by the university, accommodations, or his rights under Section 504 and the ADA.

26.     RUSM took no action pursuant to Plaintiff's requests for assistance, and RUSM, refused to acknowledge his disabilities, let alone provide disability accommodations.

27.     RUSM eventually dismissed Plaintiff for failure to pass any of his NBME CBSE

attempts.

28.     Despite RUSM's knowledge of Plaintiff disability, RUSM failed to address his disability and dismissed him.

29.     RUSM was aware that Plaintiff's disabilities qualified him under Section 504, which dictates that he is entitled to various "academic adjustments" to ensure that he is not discriminated against, based upon his disabilities. These adjustments can include substitution of specific courses required to complete a degree program and modification "of the manner in which specific courses are conducted." Section 504 also requires that a college or university modify how they evaluate academic achievement of a student with disabilities.

30.     Had RUSM provided the reasonable accommodations Plaintiff requested, which did not materially alter the program and could have been provided by RUSM for minimal (if any) expense, Plaintiff would have had the same opportunity as students without his disabilities. But, RUSM provided no such accommodations.

31.     As a result of not being provided reasonable accommodations, Plaintiff was put at a substantial disadvantage to other students ultimately leading to his dismissal from the program.

32.     RUSM's failures to provide Plaintiff with minimal accommodations and to modify its evaluation of his academic performance in light of his disability, despite RUSM's knowledge of his disability and despite Plaintiff's repeated requests, are in direct violation of law.

33.     In August 2016, Plaintiff scored a 67 on the NBME Comprehensive exam. At the time of this score, the academic catalog stated that a score of 66 or higher is a passing score. The academic catalog also states that "this catalog supersedes all previous editions and is in effect until a subsequent version is published either in print or online. The latest version published at

the time was the 2015-2016, vol. 7 Ross University Academic Catalog. The next version of the academic catalog was not published until November 2016 in which it changes the passing score from 66 to 68. This publication was months after the Plaintiff had already attained a score of 67. RUSM claims that the 67 score was not a passing score leading to the dismissal of the Plaintiff.

34.     The Plaintiff appealed his dismissal to the Dean. The Dean did not make his final decision to permanently dismiss Plaintiff within 15 calendar days of receipt of the appeal. The student handbook clearly states that on a student's second appeal, the Dean will respond within 15 calendar days of receipt of the appeal.

## FACTS FOR NBME CBSE EXAM TAKEN IN DOMINICA
## (FACTS FOR FRAUDULENT INDUCEMENT)

35.     In early 2014, Plaintiff was a prospective student who had applied to RUSM for its medical degree program.

36.     While Plaintiff was searching for medical schools that he could apply to, he would go to their websites and read their admission requirements. Plaintiff used RUSM's website to make an important life decision to apply and attend its medical degree program.

37.     During his search and before Plaintiff enrolled into RUSM, RUSM put this exact statement, word for word, in the Admission Requirements section of its website:

> It is the policy and practice of the University to **comply** with the Americans with Disabilities Act as **applicable** and practical **in Dominica**. No qualified individual with a disability will be denied access to or participation in services, programs, or activities of Ross University.

(Emphasis added). This statement is falsely represented because there is no applicable

7

Americans with Disability ("ADA") law for **students** in Dominica.

38.     RUSM had knowledge that students did not have a protected right under the laws of the ADA in Dominica and did not disclose this to prospective students.

39.     When Plaintiff enrolled into RUSM, he fully relied and depended on RUSM's statement about ADA applicability and compliance that they advertised to prospective students. Plaintiff felt that it was safe to attend the school because he knew that he would still have the protection of the Americans with Disability Act in any event that he becomes disabled or if any disabilities are discovered during his enrollment in Dominica.

40.     RUSM published this statement in its admission requirements with the intentions of persuading U.S. prospective students to apply to its medical degree program in Dominica.

41.     When Plaintiff was enrolled in RUSM, he requested accommodations to address his mental impairments for the NBME CBSE exam that he first attempted in Dominica. Plaintiff believed that he would get those accommodations if RUSM determined the requested accommodations were appropriate, because of RUSM's stated compliance with the ADA in Dominica.

42.     RUSM did not provide any test accommodations for Plaintiff's mental disabilities, despite providing them with his ADHD assessment from his private health provider in the U.S. and despite the multiple ADHD diagnostic assessments that RUSM administered to the Plaintiff in Dominica.

43.     The same NBME CBSE exam that Plaintiff requested accommodations for, he did not pass and RUSM dismissed him for not passing that exam. Due to his dismissal from the program, Plaintiff suffered direct and proximate damages.

44.     It is recently learned that RUSM knew that its statements of ADA compliance and

applicability in Dominica were false. Also, from previous lawsuits against RUSM and its veterinary sister school, it is easily apparent that RUSM knew that its statements on its website, used to induce prospective students to enroll into their school, were false.

## **FIRST CAUSE OF ACTION**

### *VIOLATION OF SECTION 504 OF THE REHABILITATION ACT OF 1973 ("SECTION 504"), 29 U.S.C. § 794*

45.     Plaintiff reincorporates by reference each and every preceding paragraph as if fully restated herein.

46.     Plaintiff is a qualified individual with a disability, as defined by Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 705(20). Plaintiff suffers from mental impairments which qualifies him as an individual with a disability. His mental impairments include his attention impairment with ADHD and his clinical anxiety caused by his Anxiety Disorder and his OCD.  These disabilities substantially limit major life activities; including learning and working, because it substantially limits his ability to complete examinations and assignments on a timely basis and limits his ability to organize and stay on task, limits his ability to take notes in class, and requires him to take medication.

47.     Plaintiff is otherwise qualified to participate in RUSM's curriculum and is able to participate in said program with or without accommodations, but was discriminated against because of his disability.

48.     Defendants receive federal financial assistance, as defined by 29 U.S.C. §794, and, as such, may not discriminate against a person because of his disability.

49.     Despite Plaintiff's requests for reasonable accommodations; including allowing

him the additional time he required to complete the NBME CSBE, as a result of his disabilities, Defendants refused to provide them.

50.     Solely by reason of his disabilities, Plaintiff was excluded from the participation in, denied the benefits of, subjected to discrimination, exploitation and a hostile educational environment at RUSM, such acts and omissions violating Section 504. Plaintiff's inability to pass the NBME CBSE was a direct manifestation of his disabilities and RUSM's failure to provide the reasonable accommodations he required to address these disabilities. As a result, RUSM dismissed Plaintiff on the basis of his known disabilities.

51.     Defendant exercised bad faith in failing to provide appropriate and necessary accommodations and modifications to Plaintiff so that he could continue in his educational program, which is a violation of Section 504.

52.     Such acts, omissions and failures by RUSM proximately caused injuries to Plaintiff.

53.     Defendant has wrongly caused Plaintiff to be discriminated against, denied reasonable accommodations, forcibly dismissed him from the program, all in violation of his rights pursuant to Section 504, depriving him of the opportunity to complete his education and further his career, including the value of the lost degree with respect to future earnings, and inflicting emotional distress and physical injury, all to his damage in an amount in excess of Seventy Five Thousand Dollars ($75,000.00).

## SECOND CAUSE OF ACTION

### *VIOLATION OF TITLE III OF THE AMERICANS WITH DISABILITIES ACT (ADA), 42 U.S.C. §12101, et seq.*

54.     Plaintiff reincorporates by reference each and every preceding paragraph as if fully restated herein.

55.     Plaintiff is a qualified individual with a disability, as defined in the Americans with Disabilities Act ("ADA"), as amended, 42 U.S.C. § 12101, *et seq.* Plaintiff suffers from mental impairments which qualifies him as an individual with a disability. His mental impairments include his attention impairment with ADHD and his clinical anxiety caused by his Anxiety Disorder and his OCD. These disabilities substantially limit major life activities; including learning and working, because it substantially limits his ability to complete examinations and assignments on a timely basis and limits his ability to organize and stay on task, limits his ability to take notes in class, and requires him to take medication.

56.     Plaintiff is able to perform the essential functions to participate in Defendant's curriculum with or without accommodations but was discriminated against and placed at a disadvantage because of his disability.

57.     RUSM is considered to be a "place of public accommodation," as defined in 42 U.S.C. § 12181(7), as it is a private school, so as to be covered by the mandate of the ADA.

58.     RUSM is a facility, the operation of which constitutes a program and services for ADA purposes.

59.     RUSM failed and refused to reasonably accommodate Plaintiff in violation of Title III of the ADA. Plaintiff required additional time in which to complete his NBME CBSE as a result of his disabilities, which was a reasonable accommodation he requested and RUSM refused to provide.

60.     Plaintiff's inability to pass the NBME CBSE was a direct manifestation of his disabilities and RUSM's failure to provide the reasonable accommodations he required to

address these disabilities. As a result, RUSM dismissed Plaintiff on the basis of his known disabilities.

61.     RUSM failed and refused to reasonably modify its services in violation of Title III of the ADA. Such failures by RUSM proximately caused injuries to Plaintiff.

62.     Plaintiff's disabilities were well known to RUSM but, despite Plaintiff's multiple requests for reasonable accommodations, RUSM refused to provide the reasonable accommodations of allowing him additional time in which to complete his NBME CBSE to address the difficulties he was having with his disabilities.

63.     Defendant has wrongly caused Plaintiff to be discriminated against, denied reasonable accommodations, forcibly dismissed him from the program, all in violation of his rights pursuant to ADA, depriving him of the opportunity to complete his education and further his career, including the value of the lost degree with respect to future earnings, and inflicting emotional distress and physical injury, all to his damage in an amount in excess of Seventy Five Thousand Dollars ($75,000.00).

64.     Plaintiff is entitled to injunctive reliefs consisting of: (1) An order that RUSM clarifies the dismissal comment on his transcript by including language that he was 'unlawfully' dismissed. This clarification is needed to hopefully lessen the impact of further discrimination by a third party who may need access to the Plaintiff's transcript; and (2) An order preventing RUSM from releasing any comments, statements, documentations, 'Dean's Letters' or records of any kind directly or indirectly relating to the Plaintiff's failure to pass the NBME CBSE exam.

## **THIRD CAUSE OF ACTION**

### *VIOLATION OF 34 C.F.R. § 104.4, et seq.*

65.     Plaintiff reincorporates by reference each and every preceding paragraph as if fully restated herein.

66.     Plaintiff is a qualified individual with a handicap, as defined by 34 CFR § 104.3. Plaintiff suffers from mental impairments which qualifies him as an individual with a handicap. His mental impairments include his attention impairment with ADHD and his clinical anxiety caused by his Anxiety Disorder and his OCD. These handicaps substantially limit major life activities; including learning and working, because it substantially limits his ability to complete examinations and assignments on a timely basis and limits his ability to organize and stay on task, limits his ability to take notes in class, and requires him to take medication.

67.     Plaintiff is otherwise qualified to participate in RUSM's curriculum and is able to participate in said program with reasonable accommodations in place.

68.     Defendant is a recipient that receives federal financial assistance, as defined by 34 CFR § 104.3, and, as such, may not discriminate against a person because of his handicap.

69.     Despite Plaintiff's requests for reasonable accommodations; including allowing him the additional time he required to complete the NBME CSBE, as a result of his disabilities, Defendant refused to provide them.

70.     Solely by reason of his disability, Plaintiff was excluded from the participation in, denied the benefits of, subjected to discrimination, exploitation and a hostile educational environment at RUSM, such acts and omissions violating 34 C.F.R. § 104.4. Plaintiff's inability to pass the NBME CBSE was a direct manifestation of his disabilities and RUSM's failure to provide the reasonable accommodations he required to address these disabilities. As a result, RUSM dismissed Plaintiff on the basis of his known disabilities.

71.     Defendant exercised bad faith in failing to provide appropriate and necessary

accommodations and modifications to Plaintiff so that he could continue in his educational program, which is a violation of 34 C.F.R. § 104.4.

72.     Such acts, omissions and failures by RUSM proximately caused injuries to Plaintiff.

73.     Defendant has wrongly caused Plaintiff to be discriminated against, denied reasonable accommodations, forcibly dismissed him from the program, all in violation of his rights pursuant to 34 C.F.R. § 104.4, depriving him of the opportunity to complete his education and further his career, including the value of the lost degree with respect to future earnings, and inflicting emotional distress and physical injury, all to his damage in an amount in excess of Seventy Five Thousand Dollars ($75,000.00).

## FOURTH CAUSE OF ACTION

### *VIOLATION OF 34 C.F.R. § 104.44, et seq.*

74.     Plaintiff reincorporates by reference each and every preceding paragraph as if fully restated herein.

75.     Plaintiff is a qualified individual with a handicap, as defined by 34 CFR § 104.3. Plaintiff suffers from mental impairments which qualifies him as an individual with a handicap. His mental impairments include his attention impairment with ADHD and his clinical anxiety caused by his Anxiety Disorder and his OCD. These handicaps substantially limit major life activities; including learning and working, because it substantially limits his ability to complete examinations and assignments on a timely basis and limits his ability to organize and stay on task, limits his ability to take notes in class, and requires him to take medication.

76.     Plaintiff is otherwise qualified to participate in RUSM's curriculum and is able to

participate in said program with reasonable accommodations in place.

77.     Defendant is a recipient that receives federal financial assistance, as defined by 34 CFR § 104.3, and, as such, may not discriminate against a person because of his handicap.

78.     RUSM changed the handbook to make students "sit" for the NBME CBSE exam within 3 consecutive attempts or be removed from the school. This rule change is a discrimination against ADHD students. ADHD students need more time to study therefore need the ability to space out their attempts instead of doing them without an option to take more time to study for an attempt.

79.     Solely by reason of his disability, Plaintiff was excluded from the participation in, denied the benefits of, subjected to discrimination, exploitation and a hostile educational environment at RUSM, such acts and omissions violating 34 C.F.R. § 104.44. Plaintiff's inability to pass the NBME CBSE was a direct manifestation of his disability and RUSM's unlawful rule imposed upon handicapped students that had the effect of limiting the participation of handicapped students. As a result, RUSM dismissed Plaintiff on the basis of his known disability.

80.     Defendant exercised bad faith when RUSM imposed an unlawful rule upon handicapped students that had the effect of limiting the participation of handicapped students, which is a violation of 34 C.F.R. § 104.44.

81.     Such acts, omissions and failures by RUSM proximately caused injuries to Plaintiff.

82.     Defendant has wrongly caused Plaintiff to be discriminated against, denied reasonable accommodations, forcibly dismissed him from the program, all in violation of his rights pursuant to 34 C.F.R. § 104.44, depriving him of the opportunity to complete his education

and further his career, including the value of the lost degree with respect to future earnings, and inflicting emotional distress and physical injury, all to his damage in an amount in excess of Seventy Five Thousand Dollars ($75,000.00).

## **FIFTH CAUSE OF ACTION**

### *VIOLATION OF FLORIDA ADMINISTRATIVE CODE 6E-2.004(5)(c)(4);*

### *VIOLATION OF § 760.08, Fla. Stat. (2018) (in the alternative)*

83.    Plaintiff reincorporates by reference each and every preceding paragraph as if fully restated herein.

84.    Plaintiff is a qualified individual with a disability. Plaintiff suffers from mental impairments which qualifies him as an individual with a disability. His mental impairments include his attention impairment with ADHD and his clinical anxiety caused by his Anxiety Disorder and his OCD. These disabilities substantially limit major life activities; including learning and working, because it substantially limits his ability to complete examinations and assignments on a timely basis and limits his ability to organize and stay on task, limits his ability to take notes in class, and requires him to take medication.

85.    Plaintiff is able to perform the essential functions to participate in Defendant's curriculum with or without accommodations but was discriminated against and placed at a disadvantage because of his disability.

86.    Plaintiff is otherwise qualified to participate in RUSM's curriculum and is able to participate in said program with reasonable accommodations in place.

87.    RUSM institution is licensed by Florida Department of Education, under the provision of Chapter 1005 of Florida Statues also under the provision Chapter 6E of the Florida

Administrative Code.

88.    Despite Plaintiff's requests for reasonable accommodations; including allowing him the additional time he required to complete the NBME CSBE, as a result of his disabilities, Defendants refused to provide them.

89.    Solely by reason of his disability, Plaintiff was excluded from the participation in, denied the benefits of, subjected to discrimination, exploitation and a hostile educational environment at RUSM, such acts and omissions violating 6E-2.004(5)(c)(4). Plaintiff's inability to pass the NBME CBSE was a direct manifestation of his disability and RUSM's failure to provide the reasonable accommodations he required to address this disability. As a result, RUSM dismissed Plaintiff on the basis of his known disabilities.

90.    Defendant exercised bad faith in failing to provide appropriate and necessary accommodations and modifications to Plaintiff so that he could continue in his educational program, which is a violation of 6E-2.004(5)(c)(4).

91.    Such acts, omissions and failures by RUSM proximately caused injuries to Plaintiff.

92.    Defendant has wrongly caused Plaintiff to be discriminated against, denied reasonable accommodations, forcibly dismissed him from the program, all in violation of his rights pursuant to 6E-2.004(5)(c)(4), depriving him of the opportunity to complete his education and further his career, including the value of the lost degree with respect to future earnings, and inflicting emotional distress and physical injury, all to his damage in an amount in excess of Seventy Five Thousand Dollars ($75,000.00).

## SIXTH CAUSE OF ACTION

## *BREACH OF CONTRACT*

93.     Plaintiff reincorporates by reference each and every preceding paragraph as if fully restated herein.

94.     By admitting Plaintiff and accepting his tuition payments, and by Florida law, RUSM has an express and implied contract with Plaintiff in connection with rights explicitly guaranteed him by RUSM pursuant to the RUSM Student Handbook and RUSM Academic Catalog.

95.     Defendant's actions constitute a material and substantial breach of the express and implied contract by:

*(SUBCOUNT 1)* denying Plaintiff his right to equal opportunity and denying Plaintiff, a "qualified person with a disability," "reasonable accommodations" as is set forth in the RUSM Academic Catalog.

*(SUBCOUNT 2)* denying Plaintiff his right to a productive learning environment free from discrimination as is set forth in the RUSM Academic Catalog.

*(SUBCOUNT 3)* Refusing Plaintiffs request for assistance and guidance to process requests for accommodations on USLME exams as is set forth in the RUSM Academic Catalog - Accommodations and USMLE/NBME Testing.

*(SUBCOUNT 4)* Making Plaintiff sit the NBME CBSE within three consecutive attempts which had not existed in the RUSM Student Handbook when Plaintiff had enrolled in 2014 and has no basis in academic or professional requirements. Defendant's decision to change the policy in order to make students sit for the NBME CBSE within three consecutive attempts was arbitrary, capricious, and lacking any discernable rational basis which also put students with learning disabilities at a substantial disadvantage to

other students. Even if the Defendant's reserved the right to change the university's academic degree requirements, it cannot if such changes are arbitrary or capricious.

*(SUBCOUNT 5)* Dismissing Plaintiff when he obtained a score of 67 on the NBME CBSE. The latest version of the Ross University Academic Catalog published at that time was the 2015-2016, vol. 7 which stated that the passing score for NBME CBSE was a 66. This version was in effect until a subsequent version is published online.

*(SUBCOUNT 6)* The Dean's failure to respond to the Plaintiff within 15 calendar days of receipt of the second appeal as is set forth in the RUSM Student Handbook.

96.    At all times relevant, Plaintiff abided by and governed his conduct by the terms of the aforementioned contract and met all financial obligations.

97.    As a direct and proximate result of Defendants' actions, Plaintiff has lost the difference in value over a lifetime of earnings expected to be earned by an individual who graduated from RUSM and Plaintiff's earning capacity without a medical degree from RUSM.

98.    As a direct and proximate result of Defendants' actions, Plaintiff has lost tuition he paid to RUSM.

99.    As a result of the breach committed against Plaintiff, he has suffered loss, damage and detriment; including incidental and consequential damages in an amount in excess of Seventy Five Thousand Dollars ($75,000.00).

## SEVENTH CAUSE OF ACTION

### *BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING*

100.    Plaintiff reincorporates by reference each and every preceding paragraph as if

19

fully restated herein.

101.   The aforementioned contract between the parties contained an implied covenant of good faith and fair dealing, which precludes Defendants from evading the spirit of the contract, willfully rendering imperfect performance, interfering with Plaintiff's ability to benefit from its terms, acting in contravention of Plaintiff's reasonable expectations, failing to abide by the standards and policies promulgated by Defendants, or otherwise acting in an arbitrary and capricious manner with respect to Plaintiff.

102.   Defendants breached this implied covenant of good faith and fair dealing by making it impossible for Plaintiff to realize the benefit of his contract and by permitting its agents to act in bad faith and in a manner which interfered with Plaintiff's contractual expectations.

103.   As a result of the breach committed against Plaintiff, he has suffered loss, damage and detriment; including incidental and consequential damages in an amount in excess of Seventy Five Thousand Dollars ($75,000.00).

## EIGHTH CAUSE OF ACTION

### FRAUDULENT INDUCEMENT (both false statement and omission of fact)

104.   Plaintiff reincorporates by reference each and every preceding paragraph as if fully restated herein.

105.   RUSM publishes important information to prospective students on its website. This information includes statements made in its admission requirements section of its website. The statement quoted in ¶106 has not changed since 2012 and is currently (as of 2018) still on RUSM's website advertised to prospective students looking to gain admission into the medical

degree program.

106.     Continuously between 2012 and 2018, and before Plaintiff applied and enrolled into RUSM's medical degree program, RUSM published a statement in its Admission Requirements section of its website stating "It is the policy and practice of the University to **comply** with the Americans with Disabilities Act as **applicable** and practical **in Dominica**. No qualified individual with a disability will be denied access to or participation in services, programs, or activities of Ross University School of Medicine." (Emphasis added).

107.     The quoted statement in ¶106, published by RUSM, intended to induce and persuade prospective students to apply and enroll into RUSM's medical degree program.

108.     RUSM was fully aware that the statement in ¶106 was false. This statement is falsely represented because there is no applicable Americans with Disability law for <u>students</u> in Dominica. Even after the numerous students filed ADA lawsuits against RUSM, they continued to advertise the false statement to prospective students on its Admission Requirements website. Previous lawsuits reveal that RUSM knew that the statement was false for almost 10 years.

109.     In addition to making a false statement, RUSM also committed fraud by omission when it failed to disclose that <u>students</u> did not have a protected right under the laws of the ADA in Dominica.

110.     Plaintiff relied on RUSM's fraudulent ADA statement when he chose to enroll at RUSM for its medical degree program in Dominica.

111.     RUSM did not take the reasonable steps, and was deliberately indifferent, to ensure that Plaintiff was reasonably accommodated for his mental impairments because RUSM believed that it had no legal obligations to provide those reasonable accommodations in Dominica.

112.     As a result of RUSM's fraudulent ADA statement, Plaintiff was induced into leaving the United States of America to enroll at RUSM in Dominica, was discriminated against, denied reasonable accommodations, forcibly dismissed him from the program, depriving him of the opportunity to complete his education and further his career, including the value of the lost degree with respect to future earnings, and inflicting emotional distress and physical injury, all to his damage in an amount in excess of Seventy Five Thousand Dollars ($75,000.00).

113.     Plaintiff is also entitled to punitive damages at a 2:1 or 3:1 ratio of the compensatory damages.

## NINTH CAUSE OF ACTION

### *NEGLIGENT MISREPRESENTATION IN THE INDUCEMENT*

114.     Plaintiff reincorporates by reference each and every preceding paragraph as if fully restated herein.

115.     Continuously between 2012 and 2018, and before Plaintiff applied and enrolled into RUSM's medical degree program, RUSM published a statement in its Admission Requirements section of its website stating "It is the policy and practice of the University to **comply** with the Americans with Disabilities Act as **applicable** and practical **in Dominica**. No qualified individual with a disability will be denied access to or participation in services, programs, or activities of Ross University School of Medicine." (Emphasis added).

116.     RUSM misrepresented the statement in ¶115 by misleading prospective students into believing that they still had their protected rights under the ADA while enrolled at RUSM in Dominica.

117.     RUSM should have been aware that the statement in ¶115 was false. Especially

after numerous students had filed ADA lawsuits against RUSM and its sister school. RUSM continued to advertise the false statement to prospective students on its Admission Requirements website. Previous lawsuits reveal that RUSM should have known that the statement was false for almost 10 years.

118. By RUSM placing the statement of ¶115 in its Admission Requirements section of it website, RUSM intended to use the statement to induce prospective students to enroll into its medical degree program in Dominica.

119. Plaintiff was one of the many prospective students that relied on all the important information that RUSM posted in its Admissions Requirements section of it website, including the statement quoted in ¶115. Plaintiff used this information to decide if he should enroll at RUSM.

120. RUSM did not take the reasonable steps, and was deliberately indifferent, to ensure that Plaintiff was reasonably accommodated for his mental impairments because RUSM believed that it had no legal obligations to provide those reasonable accommodations in Dominica.

121. As a result of RUSM's negligently misrepresented ADA statement, Plaintiff was induced into leaving the United States of America to enroll at RUSM in Dominica, was discriminated against, denied reasonable accommodations, forcibly dismissed him from the program, depriving him of the opportunity to complete his education and further his career, including the value of the lost degree with respect to future earnings, and inflicting emotional distress and physical injury, all to his damage in an amount in excess of Seventy Five Thousand Dollars ($75,000.00).

122. Plaintiff is also entitled to punitive damages at a 2:1 or 3:1 ratio of the

compensatory damages.

## **TENTH CAUSE OF ACTION**

### *BREACH OF FIDUCIARY DUTY*

123.    Plaintiff reincorporates by reference each and every preceding paragraph as if fully restated herein.

124.    RUSM created a fiduciary duty when it assured Plaintiff that "RUSM is committed to ensuring that qualified students with disabilities are afforded reasonable accommodations."

125.    The RUSM Academic Catalog states "RUSM is committed to ensuring that qualified students with disabilities are afforded reasonable accommodations."

126.    RUSM exercised overwhelming influence over Plaintiff in ensuring the he received reasonable accommodations for his mental impairments known to the school. It is impossible for Plaintiff to go directly to NBME to receive extended testing time for the NBME CBSE; only RUSM has the ability and the duty to inform NBME about which students need extended testing time for the NBME CBSE.

127.    Plaintiff trusted RUSM to ensure that he was reasonably accommodated for his mental impairments on his NBME CBSE.

128.    After RUSM had knowledge of Plaintiff's mental impairments, they did not ensure that he was reasonably accommodated as RUSM claimed it was committed to do.

129.    As a result of RUSM's breach of fiduciary duty, Plaintiff was discriminated against, denied reasonable accommodations, forcibly dismissed him from the program, depriving him of the opportunity to complete his education and further his career, including the value of

the lost degree with respect to future earnings, and inflicting emotional distress and physical injury, all to his damage in an amount in excess of Seventy Five Thousand Dollars ($75,000.00).

130.    Plaintiff is also entitled to punitive damages at a 2:1 or 3:1 ratio of the compensatory damages.

## **JURY DEMAND**

Plaintiff respectfully prays a trial by jury on all issues so triable.

***WHEREFORE***, Plaintiff prays that this Honorable Court enter judgment in Plaintiff's favor, and against Defendant, for:

(1) Compensatory damages in the amount excess of $9,000,000, including the loss of future earning capacity expected to be earned by an individual who graduated from RUSM.

(2) Compensatory damages for the student load debt and interest caused by RUSM in the amount excess of $200,000.

(3) Injunctive reliefs as described in paragraph 64.

(4) Punitive damages at a 2:1 or 3:1 ratio of compensatory damages; estimated in the amount excess of $20,000,000.

(5) The costs and disbursements of this action, for interest, and such other court or attorney's fees and further relief as justice requires.

DATED this 8th day of July, 2018:

**Oluwamuyiwa Awodiya** (I consent this
to be my electronic signature)
By: Oluwamuyiwa Awodiya, *pro se* litigant
15005 Dahlia Dr.
Bowie, MD 20721
(240) 602-1836
Plaintiff, in Proper Person