# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

|  |  |  |
|---|---|---|
| OLUWAMUYIWA AWODIYA, | ) | Case No.   0:18-cv-60482-KMM |
| *Plaintiff,* | ) |  |
|  | ) |  |
| -v- | ) | Hon. Chief Judge: K. Michael Moore |
|  | ) | Magistrate Judge: Barry S. Seltzer |
| ROSS UNIVERSITY SCHOOL OF | ) |  |
| MEDICINE, SCHOOL OF | ) |  |
| VETERINARY MEDICINE LIMITED | ) |  |
| *Defendant.* | ) |  |

FILED by ___ D.C.

AUG 1 6 2018

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. of FLA. – MIAMI

## PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Plaintiff, Oluwamuyiwa

Awodiya ("Plaintiff"), in proper person, hereby submits the following Plaintiff's Motion for

Partial Summary Judgment. [1]

---

[1] Also see the accompanying, Plaintiff's Statement of Material Facts in Support of Plaintiff's Motion for Partial Summary Judgment ("SMF"); Declaration of Oluwamuyiwa Awodiya in Support of Plaintiff's Motion for Partial Summary Judgment ("Awodiya Decl.") and Exhibits ("Ex.") P-01 through P-38 attached thereto.

In Defendant's Response to Plaintiff's First Set of Requests for Admission ("Ex. P-27"), each "Admission No." therein will be referenced as paragraphs hereinafter; In Defendant's Response to Plaintiff's Second Set of Requests for Admission ("Ex. P-28"), each "Request No." therein will be referenced as paragraphs hereinafter.

Also referenced is Defendant's Answer and Affirmative Defenses to Plaintiff's Third Amended Complaint [ECF No. 58] ("Def. Ans.").

**Table of Contents**

**INTRODUCTION**...................................................................................................... 1

**FACTUAL BACKGROUND** ..................................................................................... 2

    A.    Parties............................................................................................................ 2

    B.    Timeline of RUSM Counseling Center Diagnosing Plaintiff's Impairments......... 3

    C.    NBME CBSE Attempts ................................................................................ 5

    D.    Grievance Process ....................................................................................... 5

**STANDARD OF REVIEW** ......................................................................................... 5

**ARGUMENT** ................................................................................................................ 6

I.     FAILURE TO ACCOMMODATE CLAIMS ..................................................................... 6

    A.    Legal Framework ........................................................................................ 6

    B.    RUSM Knew About Plaintiff's Disabilities ............................................. 7

    C.    Plaintiff Informed RUSM of the 'Need' for an Accommodation; Plaintiff's 'Need' for an Accommodation was Obvious; or Plaintiff Requested an Accommodation 8

II.    BREACH OF FIDUCIARY DUTY CLAIM ..................................................................... 13

    A.    A Fiduciary Relationship Existed Between the RUSM Counseling Center and Plaintiff ..................................................................................................... 13

III.   BREACH OF CONTRACT CLAIM ................................................................................ 14

    A.    RUSM's Academic Catalog and Student Handbook are the Terms of a Contract Between RUSM and Plaintiff ..................................................................... 15

    B.    Breach of Contract Sub-count 5: RUSM Breached the Contract When It Dismissed Plaintiff for Failure to Pass the NBME CBSE ................................... 15

    C.    Breach of Contract Sub-count 5: Damages Resulted from RUSM's Breach ....... 16

    D.    Breach of Contract Sub-count 6: RUSM Breached the Contract When It Made Plaintiff's Dismissal Final............................................................................. 17

    E.    Breach of Contract Sub-count 6: Damages Resulted from RUSM's Breach ....... 17

IV.   FRAUDULENT INDUCEMENT/OMISSION; NEGLIGENT MISREPRESENTATION....................... 18

    A.    RUSM Made a False Statement Regarding Material Fact; RUSM Misrepresented a Material Fact ............................................................................................ 19

    B.    RUSM Intended to Induce Plaintiff's Reliance on Its ADA-Statement ............... 19

    C.    RUSM Omitted Facts That It Had a Duty to Disclose.......................................... 20

**CONCLUSION** ........................................................................................................... 20

ii

## Table of Authorities

**Cases**

*Alvey v. Gualtieri,*

    Case No. 8:15-cv-1861-T-33AEP (M.D. Fla. Nov. 7, 2016)........................................ 8

*Baker v. Lightsey,*

    CASE NO. 2:11-cv-14290-KMM (S.D. Fla. May. 3, 2012) ..................................... 6

*Bank of Am., N.A. v. Grec Homes Ix, LLC,*

    CASE NO. 13-21718-CIV-ALTONAGA/Simonton (S.D. Fla. Jan. 23, 2014)........................ 18

*Cmpa v. Maritime Park Development Partners,*

    Case No. 3:11cv60/MCR/CJK. (N.D. Fla. Jul. 14, 2011)......................................... 20

*Goldweber v. Harmony Partners, Ltd.,*

    CASE NO.: 09-61902-CIV-COHN/Seltzer. (S.D. Fla. Sep. 16, 2010) ..................................... 13

*Irwin v. Miami-Dade County Public Schools,*

    CASE NO. 06-23029-CIV-COOKE/BANDSTRA. (S.D. Fla. Feb. 25, 2009) ........................ 13

*J.A.M. v. Nova Se. Univ., Inc.,*

    Case No. 0:15-cv-60248-KMM (S.D. Fla. Aug. 12, 2015) ..................................... 6, 7

*McCullum Ex Rel. Df & Tf v. Orlando Reg'l Healthcare Sys., Inc.,*

    768 F.3d 1135 (11th Cir. 2014) ..................................... 8

*Nattiel v. Fla. Dep't of Corr.,*

    CASE NO. 1:15-cv-00150-WTH-GRJ (N.D. Fla. Nov. 27, 2017)............................. 9

*Sirpal v. Univ. of Miami,*

    No. 11-15210 (11th Cir. Feb. 19, 2013) ..................................... 15

*Textron Financial Corp. v. Lentine Marine Inc.,*

    630 F. Supp. 2d 1352 (S.D. Fla. 2009) ..................................... 15

*Traditions Senior Mgmt., Inc. v. United Health Adm'rs, Inc.*,

    Case No: 8:12-cv-2321-T-30MAP (M.D. Fla. Jun. 27, 2013) .................................................. 14

*Tsavaris v. Pfizer, Inc.*,

    Case No. 1:15-cv-21826-KMM (S.D. Fla. Feb. 1, 2016) ....................................................... 19

*Weinberg v. Advanced Data Processing, Inc.*,

    147 F. Supp. 3d 1359 (S.D. Fla. 2015) ................................................................................. 13

**Other Authorities**

29 U.S.C. § 794 ........................................................................................................................... 1

34 C.F.R. § 104.1 ........................................................................................................................ 6

34 C.F.R. § 104.4 ..................................................................................................................... 1, 6

42 U.S.C. § 12101 ....................................................................................................................... 1

Eleventh Circuit Pattern Jury Instructions for Civil Cases, § 4.12 (2013) ................................. 7, 8

Fed. R. Civ. P. 56 ........................................................................................................................ 5

Florida Administrative Code Rule 6E-2.004(11)(b)(2) ............................................................. 15

## **INTRODUCTION**

In this Motion for Partial Summary Judgment (the "Motion"), Plaintiff moves for summary judgment against Ross University School of Medicine, School of Veterinary Medicine Limited ("RUSM" or "Defendant") on parts of the following claims: discrimination by failure to reasonably accommodate his disabilities, breach of fiduciary duty, breach of contract, fraudulent inducement/omission and negligent misrepresentation. In this Motion, Plaintiff brings his failure to accommodate claims under 34 C.F.R. § 104.4, effectuating Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 (the "RA"); and Title III of the Americans with Disabilities Act, 42 U.S.C. § 12101 ("ADA").

Plaintiff suffers from multiple mental impairments that adversely affected his academic performance at RUSM. Plaintiff's mental impairments consists of anxiety and an attention impairment. Plaintiff's diagnosed anxiety disorder, 'Anxiety State, Unspecified' ("Anxiety Disorder") and his diagnosed Obsessive-Compulsive Disorder ("OCD") manifest as anxiety, concurrently with his attention impairment, diagnosed as Attention Deficit Disorder Without Mention of Hyperactivity ("ADHD") (individually a "mental impairment" and collectively the "mental impairments").

RUSM knew of Plaintiff's mental impairments. RUSM even diagnosed Plaintiff's mental impairments themselves. At least five different employees, including the Dean, failed to accommodate Plaintiff for his exams including for his NBME Comprehensive Basic Sciences Examination ("NBME CBSE" or "COMP"). In addition to Plaintiff's multiple requests for extended testing time, RUSM knew that Plaintiff needed some type of accommodation because it was documented that he kept "running out of time" to pass exams, would circle random answers without thinking about the questions to avoid leaving them blank, and simply just "never

1

finished an exam on time" all due to his mental impairments. None of RUSM's employees took the appropriate steps to ensure that Plaintiff was reasonably accommodated for his disability.

The RUSM Counseling Center had a fiduciary duty to provide RUSM administrators with Plaintiff's confidential information relevant to getting him academic accommodations. The RUSM Counseling Center became a fiduciary when it signed a joint agreement with Plaintiff and when it made commitment to Plaintiff.

RUSM breached its contract with Plaintiff when it dismissed him after he scored a 67 on the NBME CBSE. RUSM also breached its contract with Plaintiff because the Dean did not have the contractual right to make Plaintiff's dismissal final after the contractual 15 calendar days.

RUSM misrepresented and omitted facts about the applicability of the Americans with Disabilities Act in Dominica on its website to prospective students, including to Plaintiff.

## **FACTUAL BACKGROUND**

### A.    Parties

RUSM receives Federal financial assistance from the United States of America as it participates in Federal Student Loans under the William D. Ford Direct Loan Program. SMF at ¶ 2. RUSM is a place of public accommodations because it is a private school. *Id*. at ¶ 3.

The Florida Department of Education licenses RUSM to offer programs of instruction under the provision of Chapter 1005, Florida Statutes and Chapter 6E of the Florida Administrative Code. *Id*. at ¶ 4.

William Owen ("Dean Owen") is an employee of RUSM and he is employed as the Dean and Chancellor. *Id*. at ¶ 5. Davendra Sharma ("Dr. Sharma") is an employee of RUSM and he is employed as a professor and psychiatrist. *Id*. at ¶ 6. Bryan Hayse ("Dr. Hayse") is an employee of RUSM and he is employed as an Associate Dean. *Id*. at ¶ 7. McMillan Cuffy ("Mr. Cuffy") is an employee of RUSM and he is employed as a counselor. *Id*. at ¶ 8. Matthew Stewart-Fulton

("Mr. Stewart-Fulton") is an employee of RUSM and he is employed as an Accommodations Coordinator. *Id.* at ¶ 9.

Plaintiff was admitted to RUSM as a student in April 2014. *Id.* at ¶ 10. Plaintiff suffers from extreme anxiety, a manifestation of his diagnosed Anxiety Disorder and his diagnosed OCD, and he also suffers from an attention impairment diagnosed as ADHD. *Id.* at ¶ 11-13.

**B.      Timeline of RUSM Counseling Center Diagnosing Plaintiff's Impairments**

On December 9, 2015, Plaintiff was in a meeting with Dr. Sharma and Mr. Cuffy. SMF at ¶ 17. During this meeting, Plaintiff, as partially stated in Dr. Sharma's counseling note, felt that he was treated unfairly because he had trouble finishing his exams on time which is the reason why he failed by one point. Awodiya Decl. at ¶ 13; Ex. P-02 at RUSM 000125. Plaintiff then requested to change his grade by retaking the exams because he did not have enough time to finish his exams. Awodiya Decl. at ¶ 13.

Still in the same meeting, Dr. Sharma and Mr. Cuffy informed Plaintiff that he may have an attention problem. SMF at ¶ 18. Plaintiff wanted to speak to the Dean about changing his grade since his "attention problem" affected his ability to finish his exams on time. Ex. P-02 at RUSM 000125; Awodiya Decl. at ¶ 15. Plaintiff asked Dr. Sharma and Mr. Cuffy if they could tell RUSM administration that he may have an attention problem, they agreed if Plaintiff would sign a Release of Information Consent Agreement. SMF at ¶ 19; Awodiya Decl. at ¶ 16-17.

Plaintiff then signed the Release of Information Consent Agreement so that Mr. Cuffy, Dr. Sharma, and the rest of the Counseling Center could speak on his behalf about receiving accommodations. SMF at ¶ 20. The Release of Information Consent Agreement that Plaintiff signed states that he "authorize[d] RUSM Counseling Center" to discuss his "confidential information" with "RUSM Administration" for the purpose "to provide information relevant to

3

academic accommodations" and authorized them to do so with "ongoing communication." SMF at ¶ 21.

On December 14, 2015, Plaintiff told Dr. Sharma that "since [he is] still on the island, [he] want[s] to continue the process for receiving extended testing time for when [he] come[s] back in January to repeat [his] fifth semester." *Id.* at ¶ 28. Dr. Sharma informed Plaintiff that because of his impaired ability to finish exams on time, he may have ADHD. *Id.* at ¶ 29. Dr. Sharma's counseling note documents that Dr. Sharma began screening Plaintiff for ADHD on this day. *Id.* at ¶ 30. The next day, Dr. Sharma continued Plaintiff's ADHD screening by administering Plaintiff's first CAARS assessment. *Id.* at ¶ 31-32.

During the winter break, on December 31, 2015, Plaintiff was back in the United States of America where his private health care provider assessed him and documented his ADHD with a diagnostic exam called the Conners CPT3 assessment. Awodiya Decl. at ¶ 30-31. The Conners CPT3 assessment indicated that Plaintiff has a "very high likelihood of having a disorder characterized by attention deficits, such as ADHD." SMF at ¶ 33.

After the winter break, on January 11, 2016, Mr. Cuffy's counseling note states that "[Plaintiff] was assessed in the U.S. for ADHD" and that "[Plaintiff] provided us with a copy of the results which are scanned in his file." *Id.* at ¶ 34. When Plaintiff gave RUSM these results of his ADHD assessment, Plaintiff asked Mr. Cuffy and Dr. Sharma for extended testing time for his exams including his upcoming NBME CBSE attempts. *Id.* at ¶ 35. Dr. Sharma and Mr. Cuffy denied Plaintiff's request for extended testing time and informed him that they wanted to continue running their own diagnostic tests for Plaintiff's attention impairment. *Id.* at ¶ 36. RUSM made Plaintiff take the CAARS assessment for a second time and scheduled him to take the TOVA assessment the following week. *Id.* at ¶ 37-38.

4

On January 18, 2016, Mr. Cuffy's counseling note states that "[t]he TOVA was administered" to Plaintiff, his "results are not within normal limits" and Plaintiff's overall pattern "suggests an attention problem" and his "results indicated ADHD." *Id.* at ¶ 40. Then Mr. Cuffy told Plaintiff that he has an attention impairment and then diagnosed him with ADHD. *Id.* at ¶ 41-42.

On February 17, 2016, RUSM diagnosed Plaintiff with an Anxiety Disorder. *Id.* at ¶ 50.

### C.    NBME CBSE Attempts

Plaintiff had successfully completed all five semesters required to take the NBME CBSE. SMF at ¶ 16. After Plaintiff passed his fifth semester, he took his first NBME CBSE attempt in Dominica. *Id.* at ¶ 59. Plaintiff's second through fifth NBME CBSE attempts were in the United States of America. *Id.* at ¶ 60.

### D.    Grievance Process

On April 27, 2017, Plaintiff initiated the grievance process which lasted until June 29, 2017. SMF at ¶¶ 67 and 75. During the grievance process, Plaintiff, as well as Plaintiff's psychiatrist and psychotherapist, once again informed RUSM about his mental impairment and that it had "been adversely affecting his academic performance" and that Plaintiff had "never finished an exam on time" because of his mental impairment. *Id.* at ¶¶ 68-69, 71-74.

## <u>STANDARD OF REVIEW</u>

"A party may move for summary judgment, identifying each claim or defense — or the part of each claim or defense — on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "If the court does not grant all the relief requested by the motion, it may enter an order stating any material fact … that is not genuinely in dispute and treating the fact as established in the case." Fed. R.

Civ. P. 56(g). "A party asserting that a fact cannot be … disputed must support the assertion by

showing … that an adverse party cannot produce admissible evidence to support the fact." Fed.

R. Civ. P. 56(c)(1)(B). "An issue of fact is 'material' if it is a legal element of the claim under

the applicable substantive law which might affect the outcome of the case." *Baker v. Lightsey*,

CASE NO. 2:11-cv-14290-KMM, 3 (S.D. Fla. May. 3, 2012) (citing *Allen v. Tyson Foods. Inc.*,

121 F.3d 642, 646 (11th Cir. 1997)).

**ARGUMENT**

**I.     Failure to Accommodate Claims**

"To state a failure to accommodate claim, it must be shown that the plaintiff (1) is

disabled, (2) is an 'otherwise qualified' individual, and (3) was discriminated against by way of

the defendant's failure to provide a reasonable accommodation." *J.A.M. v. Nova Se. Univ., Inc.*,

Case No. 0:15-cv-60248-KMM at 8 (S.D. Fla. Aug. 12, 2015).

**A.     Legal Framework**

Since 34 C.F.R. § 104.4 effectuates the RA and because the RA and Title III of the ADA

both prohibit discrimination on the basis of disability by an institution of higher education, these

claims will be discussed together as a failure to accommodate claim.

"No qualified handicapped person shall, on the basis of handicap, be excluded from

participation in, be denied the benefits of, or otherwise be subjected to discrimination under any

program or activity which receives Federal financial assistance." 34 C.F.R. § 104.4(a). "The

purpose of this part is to effectuate section 504 of the Rehabilitation Act of 1973, which is

designed to eliminate discrimination on the basis of handicap in any program or activity

receiving Federal financial assistance." 34 C.F.R. § 104.1.

"Both the ADA and the RA prohibit discrimination on the basis of disability by an

institution of higher education … Because both statutes generally impose the same legal

6

requirements, the Court will discuss the ADA and RA claims together, relying on cases construing those statutes interchangeably, unless a distinction is relevant." *J.A.M.*, Case No. 0:15-cv-60248-KMM at 5-6.

### B.   RUSM Knew About Plaintiff's Disabilities

"[Plaintiff] must prove by a preponderance of evidence that [Defendant] knew about [Plaintiff's] disability." Eleventh Circuit Pattern Jury Instructions for Civil Cases, § 4.12 (2013).

Mr. Cuffy and Dr. Sharma knew of Plaintiff's disabilities on December 9, 2015, when they first suspected his "attention problem." SMF at ¶ 18. Dr. Sharma again knew of Plaintiff's attention impairment on December 14, 2015 when Dr. Sharma began screening Plaintiff for ADHD, *id.* at ¶ 30, on January 11, 2016 when Plaintiff provided RUSM with his ADHD assessment results obtained from the U.S., *id.* at ¶ 34-35, and on February 12, 2016 when Plaintiff and Dr. Sharma discussed Plaintiff's ADHD, *id.* at ¶ 44-46. Dr. Sharma also knew of Plaintiff's Anxiety Disorder on March 11, 2016, when, therein Dr. Sharma's assessment, he documents Plaintiff's Anxiety Disorder. *Id.* at ¶ 55.

Mr. Cuffy again knew of Plaintiff's attention impairment on January 18, 2016 when Mr. Cuffy's counseling note states that Plaintiff's "overall pattern of performance suggests an attention problem." *Id.* at ¶ 40. And when Mr. Cuffy told Plaintiff that he has an attention impairment and then diagnosed him with ADHD. *Id.* at ¶ 41-42. Mr. Cuffy also knew of Plaintiff's Anxiety Disorder on February 17, 2016 when Mr. Cuffy diagnosed Plaintiff with the Anxiety Disorder. *Id.* at ¶ 50.

Dean Owen knew of Plaintiff's ADHD and anxiety from his OCD when Plaintiff's psychiatrist and psychotherapist informed Dean Owen of these mental impairments in an email they sent on behalf of the Plaintiff. *Id.* at ¶ 71-72. Dean Owen also knew of Plaintiff's "extreme anxiety" and OCD when Plaintiff informed him of this mental impairment. *Id.* at ¶ 73-74.

Plaintiff's medical record sent to RUSM's Promotions Committee states that Plaintiff's ADHD is an active problem and that he was diagnosed with OCD. *Id.* at ¶ 69.

Plaintiff told Dr. Hayse that he has "extreme difficulty paying attention during exams." *Id.* at ¶ 22.

Plaintiff also told Mr. Stewart-Fulton that "[he] had only recently been diagnosed with ADHD, but that [he has] always displayed symptoms of ADHD for years, even before [he] knew that it was the result of a mental impairment." Awodiya Decl. at ¶ 46.

From the material facts cited above, there is no dispute that RUSM knew of Plaintiff's disabilities.

**C.      Plaintiff Informed RUSM of the 'Need' for an Accommodation; Plaintiff's 'Need' for an Accommodation was Obvious; or Plaintiff Requested an Accommodation**

In pertinent part, "[p]ut another way [this element] require[s] [Plaintiff] to prove that he informed [Defendant] of ... the **need** for an accommodation." (Emphasis added). Eleventh Circuit Pattern Jury Instructions for Civil Cases, § 4.12 (2013).

"In cases alleging a failure to make reasonable accommodations, the defendant's duty to provide a reasonable accommodation is not triggered until the plaintiff makes a specific demand for an accommodation or the need for an accommodation becomes obvious." *Alvey v. Gualtieri*, Case No. 8:15-cv-1861-T-33AEP at 16 (M.D. Fla. Nov. 7, 2016).

"[T]he entity will know of the individual's need for an accommodation because it is obvious." *McCullum Ex Rel. Df & Tf v. Orlando Reg'l Healthcare Sys., Inc.*, 768 F.3d 1135, 1147 (11th Cir. 2014) (citing *Robertson v. Las Animas Cnty. Sheriff's Dep't,* 500 F.3d 1185, 1197 (10th Cir.2007)); "[A] disabled person's failure to expressly 'request' an accommodation ... is not fatal to an ADA claim where the defendant otherwise had knowledge of an individual's disability and needs but took no action ... A specific demand may be unnecessary where the

8

need for an accommodation is obvious." (Internal citations omitted). *Nattiel v. Fla. Dep't of Corr.*, CASE NO. 1:15-cv-00150-WTH-GRJ at 2 (N.D. Fla. Nov. 27, 2017).

The material facts referenced hereinafter will be used to satisfy this element by showing any of the following: Plaintiff's "need" for an accommodation was obvious; Plaintiff informed RUSM of the "need" for an accommodation; or Plaintiff requested an accommodation.

### 1.    The Release of Information Consent Agreement

The Release of Information Consent Agreement is Plaintiff's documented request for accommodations which concurrently *informed* RUSM of his *need* for an accommodation. SMF at ¶ 21. Additionally, Plaintiff provided RUSM with documentation of his attention impairment, which the RUSM Counseling Center disregarded and instead, ran its own test to document Plaintiff's attention impairment. SMF at ¶ 34-38.

### 2.    Dean Owen

On June 1, 2017, RUSM instructed Plaintiff to email an appeal letter to Dean Owen, if he has additional information or if university procedure wasn't followed. SMF at ¶ 70.

On June 12, 2017, on behalf of the Plaintiff, his psychiatrist and psychotherapist informed Dean Owen that Plaintiff's mental impairment has adversely affected his academic performance in medical school. *Id.* at ¶ 71. Plaintiff's psychiatrist and psychotherapist sent an email to Dean Owen which states:

> We are writing on behalf of [Plaintiff].
>
> We have been treating [Plaintiff]... for ADHD and OCD.
>
> [Plaintiff] has had symptoms of [OCD] for the past 4-6 years but did not understand the nature of the diagnosis until recently.
>
> We believe that the **anxiety** and checking rituals inherent to this condition have been adversely affecting his academic performance in medical school. (Emphasis added).

*Id.* at ¶ 72.

On June 13, 2017, RUSM confirmed that it received Plaintiff's appeal letter to Dean Owen. Ex. P-24. This letter informed Dean Owen that "[Plaintiff's] objective [was] to keep this letter relevant to how OCD has influenced [his] academic performance" and that "[Plaintiff's] biggest challenge with OCD is the extreme anxiety and urges that overwhelm [him]." SMF at ¶ 73. Plaintiff also informed Dean Owen that he **never finished an exam on time** because "OCD has influenced [his] academic performance." (Emphasis added). *Id.* at ¶ 74.

On June 29, 2017, Dean Owen denied Plaintiff's appeal and made Plaintiff's dismissal final. *Id.* at ¶ 75.

### 3.   RUSM's Promotions Committee

On April 27, 2017, Plaintiff initiated the grievance process by sending his medical record and appeal form to RUSM's Promotions Committee. SMF at ¶ 67. This medical record sent to RUSM's Promotions Committee states that Plaintiff's ADHD is an active problem and that he was diagnosed with OCD. *Id.* at ¶ 69. Plaintiff's appeal form states that "[Plaintiff] was diagnosed with Obsessive Compulsive Disorder" and that "Plaintiff will likely pass any future exam, specifically COMP [NBME CBSE] with a full-on attack of [his] OCD, anxiety, and depression." *Id.* at ¶ 68.

The material facts herein again show that Plaintiff informed RUSM of his mental impairment adversely affecting his NBME CBSE and the need for some type of accommodation.

### 4.   Dr. Sharma

On December 14, 2015, Plaintiff asked Dr. Sharma "to continue the process for receiving extended testing time for when [he] come[s] back in January to repeat [his] fifth semester." SMF at ¶ 28. Dr. Sharma informed Plaintiff that because of his impaired ability to finish exams on time, he may have ADHD. *Id.* at ¶ 29. Dr. Sharma's counseling note documents that Dr. Sharma

10

began screening Plaintiff for ADHD on this day. *Id.* at ¶ 30. The next day, Dr. Sharma continued

Plaintiff's ADHD screening by administering Plaintiff's first CAARS assessment. *Id.* at ¶ 31-32.

For January 11, 2016 events, please see SMF at ¶ 34-38.

On February 12, 2016, Plaintiff had a meeting with Dr. Sharma to discuss that Plaintiff's

ADHD is affecting his exams. *Id.* at ¶ 44-46. Plaintiff, as partly repeated in Dr. Sharma's

counseling note, did not feel right during his first exam of the semester and was feeling anxious

before the scores were released because "[he] need[s] more time to answer all of the questions."

*Id.* at ¶ 45-46.

On March 11, 2016, Plaintiff told Dr. Sharma that he kept running out of time to read all

of the questions and answers for his exams, and still "needs more time" even though he passed

the exam. *Id.* at ¶ 51-52. Dr. Sharma's counseling note documents that Plaintiff was "running out

of time" on his exams. *Id.* at ¶ 53. Dr. Sharma informed Plaintiff that his Anxiety Disorder is

also affecting his exams. *Id.* at ¶ 54. Therein Dr. Sharma's assessment, he documents Plaintiff's

Anxiety Disorder. *Id.* at ¶ 55.

### 5.    Dr. Hayse

On December 10, 2015, Plaintiff asked Dr. Hayse if he could retake any of the exams

because he "need[s] more time answering questions" and that he has "extreme difficulty paying

attention during exams." SMF at ¶ 22. Dr. Hayse responded that he could accommodate Plaintiff

for future exams but not for exams that Plaintiff had already taken. *Id.* at ¶ 23. Dr. Hayse told

Plaintiff that he would call Mr. Cuffy so that Plaintiff could receive accommodations for future

exams. *Id.* at ¶ 24. Mr. Cuffy's counseling note states that "[Plaintiff] returned to [Mr. Cuffy's]

office after talking to [Dr. Hayse] in Student Affairs regarding his academic situation." *Id.* at ¶

11

25. Mr. Cuffy's counseling note also states that "[Mr. Cuffy] subsequently received an email from [Dr. Hayse] requesting that [they] talk at some point [about Plaintiff]." *Id.* at ¶ 26.

### 6. Mr. Cuffy

On December 13, 2015, Plaintiff exhausted all avenues to retake his exams with extended time and told Mr. Cuffy that he will just come back in January to repeat his fifth semester with those accommodations. SMF at ¶ 27.

For January 11, 2016 events, please see SMF at ¶ 34-39.

On February 17, 2016, Plaintiff and Mr. Cuffy met and discussed Plaintiff's anxiety affecting his exam. *Id.* at ¶ 47. Plaintiff told Mr. Cuffy that he needs help with anxiety affecting his exams. *Id.* at ¶ 48. Mr. Cuffy's counseling note documents that Plaintiff's "anxiety spiked the morning of the exam" and that he "got [a] 75%." *Id.* at ¶ 49. Mr. Cuffy told Plaintiff that he has an anxiety disorder. Awodiya Decl. at ¶ 55. Mr. Cuffy diagnosed Plaintiff with an Anxiety Disorder. SMF at ¶ 50.

On March 11, 2016, Plaintiff then met with Mr. Cuffy to discuss the difficulties that Plaintiff was having with his second exam of the semester. *Id.* at ¶ 56. Plaintiff told Mr. Cuffy that he just circled random answers without thinking about the questions to avoid leaving them blank because he "need[s] more time to be able to read all the questions for [his] exams." *Id.* at ¶ 57. Mr. Cuffy's counseling note states that "although [Plaintiff] passed, he did not do as well on mini 2 [second exam of the semester]" and that "towards the end of the exam he lost his momentum and just circle questions without really thinking of the answers." *Id.* at ¶ 58.

Redundantly, the material facts show that RUSM knew that Plaintiff's mental impairments were limiting his academic performance and that he needed some type accommodation, even months before Plaintiff took his first NBME CBSE attempt.

### 7.    Mr. Stewart-Fulton

Plaintiff's interaction with Mr. Stewart-Fulton was removed from this memorandum to help meet the page limit. If needed, please refer to Awodiya Decl. at ¶ 41-50.

### 8.    Conclusion of this Element

The substantial amount of material facts for this element shows that Plaintiff, before his NBME CBSE attempts and again during the grievance process, requested an accommodation multiple times or that Plaintiff *informed* RUSM, or it was *obvious*, of Plaintiff's 'need' for an accommodation.

## II.    Breach of Fiduciary Duty Claim

"The elements of a claim for breach of fiduciary duty are: (1) the existence of a fiduciary relationship; (2) breach of a duty owed by the fiduciary; and (3) proximate cause." *Weinberg v. Advanced Data Processing, Inc.*, 147 F. Supp. 3d 1359, 1367 (S.D. Fla. 2015).

### A.    A Fiduciary Relationship Existed Between the RUSM Counseling Center and Plaintiff

"Fiduciary relationships must be either expressly or impliedly created." *Id.* "These duties have been found in the context of a mental health therapist and patient … disclosing sensitive documents to a third party." *Goldweber v. Harmony Partners, Ltd.*, CASE NO.: 09-61902-CIV-COHN/Seltzer., 10 (S.D. Fla. Sep. 16, 2010); "There is a fiduciary relationship when 'confidence is reposed by one party and a trust accepted by the other.'" *Irwin v. Miami-Dade County Public Schools*, CASE NO. 06-23029-CIV-COOKE/BANDSTRA. (S.D. Fla. Feb. 25, 2009) (quoting *Williams v. Hunt Bros. Constr., Inc.*, 475 So. 2d 738, 741 (Fla. 2d DCA 1985)); "To establish a fiduciary relationship, a party must allege some degree of dependency on one side and some degree of undertaking on the other side to advise, counsel, and protect the weaker party." *Traditions Senior Mgmt., Inc. v. United Health Adm'rs, Inc.*, Case No: 8:12-cv-2321-T-

30MAP, 6 (M.D. Fla. Jun. 27, 2013) (quoting *Taylor Woodrow Homes Florida, Inc. v. 4/46-A Corp.,* 850 So.2d at 540 (Fla. Dist. Ct. App. 2003)).

RUSM made a "commit[ment]" to Plaintiff "ensuring that qualified students with disabilities are afforded reasonable accommodations." Ex. P-31 at RUSM 000242. Plaintiff and the RUSM Counseling Center jointly signed a Release of Information Consent Agreement (the "Agreement") which states that Plaintiff "authorize[d] RUSM Counseling Center" to discuss his "confidential information" with "RUSM Administration" for the purpose "to provide information relevant to academic accommodations" and authorized them to do so with "ongoing communication." SMF at ¶ 21. Plaintiff signed this Agreement so that Mr. Cuffy, Dr. Sharma, and the rest of the Counseling Center could "speak on [his] behalf about receiving accommodations." *Id.* at ¶ 20.

Plaintiff disclosed information in confidence to the RUSM Counseling Center about his mental impairments and how they affect his exams. Awodiya Decl. at ¶ 71-72. Plaintiff trusted Mr. Cuffy and Dr. Sharma of the RUSM Counseling Center to provide this confidential information to RUSM's administration for academic accommodations. SMF at ¶ 20-21; Awodiya Decl. at ¶ 72-73.

These material facts show that RUSM's stated "commitment" and the jointly signed Agreement created a fiduciary relationship between Plaintiff and the RUSM Counseling Center. The RUSM Counseling Center became a fiduciary with duties found in the same context of a mental health therapist, disclosing sensitive information to a third party.

### III.    Breach of Contract Claim

"Under Florida law, the elements of a breach of contract claim are: '(1) the existence of a contract, (2) a breach of the contract, and (3) damages resulting from the breach.'" *Textron*

14

*Financial Corp. v. Lentine Marine Inc.*, 630 F. Supp. 2d 1352, 1356 (S.D. Fla. 2009) (quoting

*Rollins, Inc. v. Butland*, 951 So. 2d 860, 876 (Fla. 2d Dist. Ct. App. 2006) (citations omitted)).

**A.      RUSM's Academic Catalog and Student Handbook are the Terms of a Contract Between RUSM and Plaintiff**

"Under Florida law, the legal relationship between a private university and a student is

'solely contractual in character' ... These terms may be derived from university publications

such as the student handbook and catalog." *Sirpal v. Univ. of Miami*, No. 11-15210 at 10 (11th

Cir. Feb. 19, 2013) (citing *Jallali v. Nova Se. Univ., Inc.*, 992 So. 2d 338, 342 (Fla. 4th DCA

2008)). "The catalog shall constitute a **contractual** obligation of the school to the student and

shall be the official statement of the school's policies, programs, services, and charges and fees."

(Emphasis added). Florida Administrative Code Rule 6E-2.004(11)(b)(2).

It is law that the RUSM academic catalog and the RUSM student handbook are the terms

of RUSM's contractual obligation to Plaintiff.

**B.      Breach of Contract Sub-count 5: RUSM Breached the Contract When It Dismissed Plaintiff for Failure to Pass the NBME CBSE**

Plaintiff received a score of 67 on the NBME CBSE in August 2016. Ex. P-30. The latest

version of the academic catalog that was published online for Plaintiff's third NBME CBSE

attempt in August 2016 was the Ross University School of Medicine Academic Catalog 2015-

2016, VOL. 7 ("Academic Catalog"). Def. Ans. at ¶ 33; Ex. P-31 at RUSM 000183. This

Academic Catalog is "the official statement of the school's policies." Florida Administrative

Code Rule 6E-2.004(11)(b)(2).

At the time that Plaintiff received a score of 67 on the NBME CBSE, Defendant had

never changed the official policy regarding the minimum passing score being 66 or above for the

NBME CBSE even though it emailed students that it had intentions to change the official policy.

Def. Ans. at ¶ 33; Ex. P-31 at RUSM 000194; Ex. P-30.

15

The terms of the Academic Catalog are as follows: "[t]his catalog supersedes all previous editions and is in effect until a subsequent version is published." Ex. P-31 at RUSM 000184. The Academic Catalog "[s]tatements regarding … graduation requirements are subject to change at any time and are applicable to all enrolled students." *Id*. This Academic Catalog was "the most current and accurate representation of Ross University School of Medicine's programs and policies." *Id*.

This Academic Catalog statement regarding the minimum passing score for the NBME CBSE stated, "[s]tudents receiving a score of 66 or higher on the [NBME] CBSE are certified to take the USMLE Step 1." Def. Ans. at ¶ 33; Ex. P-31 at RUSM 000194; Ex. P-27 at ¶ 34. This Academic Catalog statement regarding the minimum passing score being 66 for the NBME CBSE did not change and was the most current statement in the Academic Catalog when Plaintiff received a score of 67 on his NBME CBSE. Def. Ans. at ¶ 33; Ex. P-31 at RUSM 000194; Ex. P-27 at ¶ 34.

RUSM either never changed its NBME CBSE official policy *or* it changed the official policy back to 66 and above being a passing score. Regardless, as matter of law, the most current and official statement of the NBME CBSE policy stated that a 66 or above was a passing score when Plaintiff received a 67 on the NBME CBSE.

RUSM breached its contractual obligation to Plaintiff when it dismissed him for not passing any of his NBME CBSE attempts. SMF at ¶ 66.

### C.   Breach of Contract Sub-count 5: Damages Resulted from RUSM's Breach

Since RUSM's Registrar department failed to check what the official policy and statement was regarding the minimum passing score for the NBME CBSE, it deprived Plaintiff of his medical degree.

16

Therefore, RUSM's Registrar department acted arbitrary, capriciously, in bad faith, and in violation of contract law when it dismissed Plaintiff for failing to pass any of his NBME CBSE attempts.

### D. Breach of Contract Sub-count 6: RUSM Breached the Contract When It Made Plaintiff's Dismissal Final

The Dean did not have the contractual right to make Plaintiff's dismissal final after 15 days.

The terms of the RUSM Student Handbook state, "The Dean will respond within 15 calendar days of receipt of the appeal. The Dean's decision is final." Ex. P-32 at RUSM 000362; Ex. P-27 at ¶ 37; Def. Ans. at ¶ 34. RUSM admits that the Dean made Plaintiff's dismissal final after the required 15 calendar days from receipt of Plaintiff's appeal. Ex. P-27 at ¶ 37; Def. Ans. at ¶ 34.

Therefore, this element of this "sub-count" is undisputed.

### E. Breach of Contract Sub-count 6: Damages Resulted from RUSM's Breach

RUSM uses the NBME CBSE to determine if students can take the USMLE Step 1 ("Step 1") licensing exam, if a student does not pass the NBME CBSE then RUSM does not allow the student to take Step 1 and will instead dismiss the student from the school. Ex. P-31 at RUSM 000194. After Plaintiff was dismissed by the Dean, he took and passed Step 1 without RUSM. Awodiya Decl. at ¶ 64.

Plaintiff tried to use his passing Step 1 score to transfer to other medical schools, but they refused to consider him because his transcript from RUSM stated that he was dismissed. Awodiya Decl. at ¶ 65. Even the school that sponsored Plaintiff to take Step 1, disqualified him for transfer into its school after it received his transcript. *Id.* at ¶ 66. In an email from St. George's University School of Medicine regarding Plaintiff's transfer eligibility, it states,

"[u]nfortunately based on your dismissal by another medical school there are no options available to you at SGU." Ex. P-33.

After this, RUSM informed Plaintiff "that students who are dismissed have the opportunity to appeal" if the dismissal was not rendered final by the Dean. Ex. P-34; Awodiya Decl. at ¶ 68. Plaintiff sent an email to Dean Owen asking to be reinstated since he had passed Step 1 on his first attempt and because he thought he had one more chance to appeal based on the terms of the Student Handbook. Ex. P-35; Awodiya Decl. at ¶ 69.

The next day, RUSM declined to consider Plaintiff's appeal for reinstatement, explaining to Plaintiff that it "was denied as he had exhausted all appeals" and that Plaintiff already "used all [his] options for appeal" when the Dean made Plaintiff's dismissal final. Ex. P-34; Ex. P-36; Awodiya Decl. at ¶ 70.

This breach, by the Dean, directly and proximately deprived Plaintiff of any opportunity to continue his medical education after he passed the Step 1.

## IV.   Fraudulent Inducement/Omission; Negligent Misrepresentation

"To state a claim for fraudulent inducement pursuant to Florida law, Counter-Plaintiffs must allege four elements: '(1) a false statement regarding a material fact; (2) the statement maker's knowledge that the representation is false; (3) intent that the representation induces another's reliance; and (4) consequent injury to the party acting in reliance.'" *Bank of Am., N.A. v. Grec Homes Ix, LLC*, CASE NO. 13-21718-CIV-ALTONAGA/Simonton, 11 (S.D. Fla. Jan. 23, 2014) (quoting *Thompkins v. Lil' Joe Records, Inc.,* 476 F.3d 1294, 1315 (11th Cir. 2007)).

"A plaintiff may establish negligent misrepresentation by proving (1) a misrepresentation of a material fact; (2) the representor made the representation without knowledge as to its truth or falsity, or under circumstances in which the representor ought to have known of its falsity; (3) the representor intended to induce another to act on

18

the misrepresentation; and (4) injury resulted to the party acting in justifiable reliance on

the misrepresentation." *Tsavaris v. Pfizer, Inc.*, Case No. 1:15-cv-21826-KMM at 9 (S.D. Fla.

Feb. 1, 2016) (citing *Souran v. Travelers Ins. Co.*, 982 F.2d 1497, 1503 (11th Cir. 1993)).

### A.   RUSM Made a False Statement Regarding Material Fact; RUSM Misrepresented a Material Fact

In RUSM's Admission Requirements section of its website, it made the following

statement (hereinafter referred to as the "ADA-Statement"):

> It is the policy and practice of the University to comply with the
> Americans with Disabilities Act as **applicable** and practical **in
> Dominica**. No qualified individual with a disability will be denied
> access to or participation in services, programs, or activities of
> Ross University School of Medicine.

(Emphasis added). Def. Ans. at ¶¶ 107, 116; Ex. P-27 at ¶ 28; Ex. P-28 at ¶ 59.

RUSM's ADA-Statement was published in its Admission Requirements section before

Plaintiff applied and enrolled at RUSM and since at least the year 2012. Def. Ans. at ¶¶ 107,

116; Ex. P-37 at 3.

Title I of the Americans with Disabilities Act is only applicable to employees. 42 U.S.C.

§ 12112(a). Title II of the Americans with Disabilities Act is only applicable to public entities.

42 U.S.C. § 12132. RUSM admits that Title III of the Americans with Disabilities Act is not

applicable to RUSM students for exams taken in Dominica. Ex. P-27 at ¶ 30. Additionally,

RUSM did not have a policy that "required" its employees to comply with Title III of the ADA

for exams taken in Dominica. Ex. P-27 at ¶ 29.

Therefore, RUSM's ADA-Statement is false and misrepresented because there is no

applicable ADA law for RUSM's disabled students, and their exams, in Dominica.

### B.   RUSM Intended to Induce Plaintiff's Reliance on Its ADA-Statement

RUSM focused its marketing efforts on attracting prospective students primarily from the United States of America and Canadian. Ex. P-38 at 19. RUSM admits that it intended for prospective students to rely on the ADA-Statement. Ex. P-28 at ¶ 59.

Therefore, this element is undisputed.

### C.   RUSM Omitted Facts That It Had a Duty to Disclose

"Florida law recognizes that fraud can occur by omission and places a duty on one who undertakes to disclose material information to disclose that information fully." *Cmpa v. Maritime Park Development Partners*, Case No. 3:11cv60/MCR/CJK. at 11 (N.D. Fla. Jul. 14, 2011) (citing *ZC Ins. Co. v. Brooks*, 847 So. 2d 547, 551 (Fla. 4th DCA 2003)).

Since RUSM intended for prospective students to rely on the ADA-Statement that it published in its Admission Requirement section of its website, Ex. P-28 at ¶ 59, it had a duty to disclose that there was actually no applicable ADA law protecting students, especially for exams, in Dominica. Ex. P-27 at ¶ 30.

RUSM never told Plaintiff that the Americans with Disabilities Act did not apply to students while in Dominica.  Awodiya Decl. at ¶ 85. This is especially important because RUSM focused its marketing efforts on attracting prospective students primarily from the United States of America and Canadian. Ex. P-38 at 19.

Therefore, RUSM had a duty disclose, but omitted the fact that there was no applicable ADA law for students taking exams in Dominica.

### CONCLUSION

Plaintiff respectfully request this Court to grant summary judgment for the parts of each claim herein. If the Court cannot grant all the relief requested by this Motion, Plaintiff respectfully request that the Court enter an order stating any material fact that is not genuinely in dispute and treating the fact as established in this case.

20

DATED this 15th day of August, 2018:                    Respectfully submitted,

By: Oluwamuyiwa Awodiya, *pro se* litigant
15005 Dahlia Dr.
Bowie, MD 20721
(240) 602-1836
Plaintiff, in Proper Person

## CERTIFICATE OF SERVICE

I do hereby certify that on this 15th day of August, 2018, I have caused a true and correct copy of the foregoing by mailing a copy to the Court, where the Court's CM/ECF system will send notification to the following:

> Ryan Roman
> Akerman Senterfitt
> Suntrust International Center
> 1 SE 3rd Avenue
> 25th Floor
> Miami, FL 33131-1714
> 305-374-5600
> Fax: 305-374-5095
> Email: ryan.roman@akerman.com

By: Oluwamuyiwa Awodiya, *pro se* litigant