# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| | |
|---|---|
| OLUWAMUYIWA AWODIYA,<br>*Plaintiff,*<br><br>-v-<br><br>ROSS UNIVERSITY SCHOOL OF MEDICINE, SCHOOL OF VETERINARY MEDICINE LIMITED<br>*Defendant.* | Case No.   0:18-cv-60482-KMM<br><br>Hon. Chief Judge: K. Michael Moore<br>Magistrate Judge: Barry S. Seltzer |

FILED by JAO D.C.
AUG 15 2018
STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. of FLA – MIAMI

## PLAINTIFF'S STATEMENT OF MATERIAL FACTS

## IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Pursuant to Local Rule 56.1, Plaintiff, OLUWAMUYIWA AWODIYA, in proper person, hereby submits the following Statement of Material Facts in Support of Plaintiff's Motion for Partial Summary Judgment.

## PARTIES

**A.   Defendant**

1.   Ross University School of Medicine, School of Veterinary Medicine Limited ("RUSM" or "Defendant") operates a private, for-profit medical school. (Def. Ans. at ¶ 2)[1].

2.   RUSM receives Federal financial assistance from the United States of America as it participates in "Federal Student Loans under the William D. Ford Direct Loan Program." (Def. Ans. at ¶ 49; Ex. P-31 at RUSM 000204; Ex. P-27[2] at ¶ 2-3).

---

[1] RUSM filed Defendant's Answer and Affirmative Defenses to Plaintiff's Third Amended Complaint [ECF No. 58] ("Def. Ans.").

[2] In Defendant's Response to Plaintiff's First Set of Requests for Admission, each "Admission No." therein will be referenced as paragraphs hereinafter.

1

3. RUSM is a "place of public accommodation" because it is a private school. (42 U.S.C. § 12181(7)(J)).

4. "[T]he Florida Department of Education licenses RUSM to offer programs of instruction" under "the provision of Chapter 1005, Florida Statutes and Chapter 6E of the Florida Administrative Code." (Ex. P-31 at RUSM 000196).

5. William Owen ("Dean Owen") is an employee of RUSM, he is employed as Dean and Chancellor. (Ex. P-29 at 1).

6. Davendra Sharma ("Dr. Sharma") is an employee of RUSM, he is employed as a professor and psychiatrist. (Ex. P-29 at 2).

7. Bryan Hayse ("Dr. Hayse") is an employee of RUSM, he is employed as an Associate Dean. (Ex. P-29 at 3).

8. McMillan Cuffy ("Mr. Cuffy") is an employee of RUSM, he is employed as a counselor. (Ex. P-29 at 4).

9. Matthew Stewart-Fulton ("Mr. Stewart-Fulton") is an employee of RUSM, he is employed as an Accommodations Coordinator. (Ex. P-29 at 5).

**B.  Plaintiff**

10. Plaintiff was a student at RUSM. He was admitted into RUSM on April 21, 2014 and started his first semester at RUSM in May 2014. (Declaration of Oluwamuyiwa Awodiya in Support of Plaintiff's Motion for Partial Summary Judgment ("Awodiya Decl.") at ¶ 2).

11. Plaintiff suffers from an attention impairment, diagnosed as Attention Deficit Disorder Without Mention of Hyperactivity ("ADHD"). (Awodiya Decl. at ¶ 3).

12. Plaintiff also suffers from "extreme anxiety" that "adversely affect[s] his academic performance in medical school." (Ex. P-23; Awodiya Decl. at ¶ 4).

2

13. Plaintiff's anxiety results from his diagnosed anxiety disorder, 'Anxiety State, Unspecified' ("Anxiety Disorder") and also results from his diagnosed Obsessive Compulsive Disorder ("OCD"). (Awodiya Decl. at ¶ 5).

14. Plaintiff experiences negative effects from his attention impairment, diagnosed as ADHD, and from his anxiety diagnosed as an Anxiety Disorder and OCD (individually a "mental impairment" and collectively the "mental impairments"). (Awodiya Decl. at ¶ 6).

15. Plaintiff's mental impairments negatively affect his ability to learn, concentrate, think, complete exams and assignments on a timely basis, and limits his ability to stay on task. (Awodiya Decl. at ¶ 6).

16. Plaintiff had successfully completed all five semesters required to take the NBME Comprehensive Basic Sciences Examination ("NBME CBSE" or "COMP"). (Awodiya Decl. at ¶ 9).

## BEFORE WINTER BREAK

C. **December 9, 2015**

17. Dr. Sharma had a meeting with Plaintiff which Mr. Cuffy sat in on. (Ex. P-02 at RUSM 000126).

18. Plaintiff testifies that Mr. Cuffy and Dr. Sharma told him that he "may have an attention problem." (Awodiya Decl. at ¶ 14).

19. Plaintiff asked Mr. Cuffy and Dr. Sharma if they could "tell RUSM administration that [he] may have an attention problem." (Awodiya Decl. at ¶ 16).

20. Plaintiff then signed the Release of Information Consent Agreement so that Mr. Cuffy, Dr. Sharma, and the rest of the Counseling Center could "speak on [his] behalf about receiving accommodations." (Awodiya Decl. at ¶ 18); *see also* Plaintiff's Release of Information Consent Agreement attached as Exhibit P-03 to Awodiya Decl.).

21.     RUSM's Counseling Center and Plaintiff's jointly signed Release of Information Consent Agreement states that he "authorize[d] RUSM Counseling Center" to discuss his "confidential information" with "RUSM Administration" for the purpose "to provide information relevant to academic accommodations" and authorized them to do so with "ongoing communication." (Ex. P-03; Def. Ans. at ¶ 17).

**D.     December 10, 2015**

22.     When Plaintiff met with Dr. Hayse, he asked Dr. Hayse if he could retake any of the exams because he "need[s] more time answering questions" and that he has "extreme difficulty paying attention during exams." (Awodiya Decl. at ¶ 19-20).

23.     Plaintiff testifies that Dr. Hayse responded that he could accommodate Plaintiff for future exams but not for exams that Plaintiff had already taken because RUSM does not allow students to retake subject exams for his semester. (Awodiya Decl. at ¶ 21).

24.     Plaintiff also testifies that Dr. Hayse told Plaintiff that "he [Dr. Hayse] would call Mr. Cuffy so that [Plaintiff] could receive accommodations for future exams." (Awodiya Decl. at ¶ 22).

25.     Mr. Cuffy's counseling note states that "[Plaintiff] returned to [Mr. Cuffy's] office after talking to Dr. Hayes [Dr. Hayse] in Student Affairs regarding his academic situation." (Ex. P-04).

26.     Mr. Cuffy's counseling note also states that "[Mr. Cuffy] subsequently received an email from [Dr. Hayse] requesting that [they] talk at some point [about Plaintiff]." (Ex. P-04).

**E.     December 13, 2015**

27.     Plaintiff met with Mr. Cuffy and told him that he has "exhausted all avenues to retake [his] exams with extended time" to change his grade and that he will just "come back in

4

January to repeat [his] fifth semester with accommodations." (Awodiya Decl. at ¶ 23-24; Ex. P-05).

### F.      December 14, 2015

28.    Plaintiff told Dr. Sharma that "since [he is] still on the island, [he] want[s] to continue the process for receiving extended testing time for when [he] come[s] back in January to repeat [his] fifth semester." (Awodiya Decl. at ¶ 25).

29.    Plaintiff testifies that Dr. Sharma informed Plaintiff that because of his impaired ability to finish exams on time, he may have ADHD. (Awodiya Decl. at ¶ 26).

30.    Dr. Sharma's counseling note states that Dr. Sharma began screening Plaintiff for ADHD. (Ex. P-06; Awodiya Decl. at ¶ 27).

### G.      December 15, 2015

31.    Dr. Sharma continued Plaintiff's ADHD screening by administering Plaintiff's first CAARS assessment. (Ex. P-07).

32.    Plaintiff "was still in so much emotional distress after [he] couldn't get accommodations and failing by one point, that [he] wrote the wrong year on the top of [his] first CAARS assessment. [Plaintiff] put [his] correct birthdate and age [23], and the correct month and day of that current day (December 15th), but [he] mistakenly put the wrong year (2016) instead of the correct year (2015)." (Awodiya Decl. at ¶ 29).

## DURING WINTER BREAK

### H.      December 31, 2015

33.    The Conners CPT3 assessment indicated that Plaintiff has a "very high likelihood of having a disorder characterized by attention deficits, such as ADHD." (Ex. P-08 at RUSM 000122).

## AFTER WINTER BREAK (REPEATING FIFTH SEMESTER)

    **I.**    **January 11, 2016**

34. Mr. Cuffy's counseling note states that "[Plaintiff] was assessed in the U.S. for ADHD" and that "[Plaintiff] provided us with a copy of the results which are scanned in his file." (Ex. P-09).

35. When Plaintiff gave RUSM the results of his ADHD assessment, Plaintiff asked Mr. Cuffy and Dr. Sharma for extended testing time for his exams including his upcoming NBME CBSE attempts. (Awodiya Decl. at ¶ 32).

36. Dr. Sharma and Mr. Cuffy denied Plaintiff's request and informed him that they wanted to continue running their own diagnostic tests for Plaintiff's attention impairment. (Awodiya Decl. at ¶ 33).

37. RUSM made Plaintiff take the CAARS assessment for the second time. (Ex. P-10; Awodiya Decl. at ¶ 34).

38. RUSM also scheduled Plaintiff to take the TOVA assessment the following week. (Ex. P-09; Awodiya Decl. at ¶ 35).

39. Plaintiff told Mr. Cuffy that he did not want to try new medication because he was scared of how it might affect him, and that extended testing time would probably be enough to help with his attention impairment. (Awodiya Decl. at ¶ 36).

    **J.**    **January 18, 2016**

40. Mr. Cuffy's counseling note states that "[t]he TOVA was administered" to Plaintiff, his "results are not within normal limits," Plaintiff's "overall pattern of performance suggests an attention problem" and his "results indicated ADHD." (Ex. P-11; Def. Ans. at ¶ 13).

41. Plaintiff testifies that during this meeting, Mr. Cuffy told him that he has an attention impairment and then diagnosed him with ADHD. (Awodiya Decl. at ¶ 37).

6

42. Mr. Cuffy diagnosed Plaintiff with "Attention Deficit Disorder Without Mention of Hyperactivity - F90.9, 314.00." (Ex. P-11; Def. Ans. at ¶ 14).

43. Defendant admits that only RUSM, not the NBME, is the entity that determines whether its students require accommodations to a disability when taking the NBME CBSE. (Ex. P-27 at ¶ 18).

K.   **February 12, 2016**

44. Plaintiff had a meeting with Dr. Sharma to discuss that Plaintiff's ADHD is affecting his exams. (Ex. P-14; Awodiya Decl. at ¶ 51).

45. Plaintiff told Dr. Sharma that he did not feel right for the last mini (first exam of the semester) and was feeling anxious before the scores were released because "[he] need[s] more time to answer all of the questions." (Awodiya Decl. at ¶ 52).

46. Dr. Sharma's counseling note states that the "[s]ummary of [the] note" is Plaintiff's ADHD. (Ex. P-14). Dr. Sharma's note further states that Plaintiff "[d]id not feel right for the last mini [first exam of the semester]" and that Plaintiff "[w]as feeling anxious." (*Id.*).

L.   **February 17, 2016**

47. Plaintiff and Mr. Cuffy met and discussed Plaintiff's anxiety affecting his exam. (Ex. P-15).

48. Plaintiff told Mr. Cuffy that he needs help with anxiety affecting his exams. (Awodiya Decl. at ¶ 54).

49. Mr. Cuffy's counseling note states that Plaintiff's "anxiety spiked the morning of the exam" and that he "got [a] 75%." (Ex. P-15).

50. Mr. Cuffy diagnosed Plaintiff with an anxiety disorder, "Anxiety State, Unspecified - F41.9, 300.00." (Ex. P-15; Def. Ans. at ¶ 15).

M.   **March 11, 2016**

7

51. During Plaintiff's meeting with Dr. Sharma, Plaintiff told Dr. Sharma that he keeps running out of time to read all of the questions and answers for his exams. (Awodiya Decl. at ¶ 56).

52. Plaintiff also told Dr. Sharma that he passed his exams, but still "need[s] more time." (Awodiya Decl. at ¶ 57).

53. Dr. Sharma's counseling note states that "[d]espit[e] running out of time [Plaintiff] passed his exams." (Ex. P-16).

54. Plaintiff testifies that Dr. Sharma informed Plaintiff that his Anxiety Disorder is also affecting his exams. (Awodiya Decl. at ¶ 59).

55. Dr. Sharma also took note of Plaintiff's Anxiety Disorder in his assessment. (Ex. P-16).

56. Plaintiff then met with Mr. Cuffy to discuss the difficulties that Plaintiff was having with his second exam of the semester. (Ex. P-17; Awodiya Decl. at ¶ 60).

57. Plaintiff told Mr. Cuffy that he just circled random answers without thinking about the questions to avoid leaving them blank because he "need[s] more time to be able to read all the questions for [his] exams." (Awodiya Decl. at ¶ 61).

58. Mr. Cuffy's counseling note states that "although [Plaintiff] passed, he did not do as well on mini 2 [second exam of the semester]" and that "towards the end of the exam he lost his momentum and just circle questions without really thinking of the answers." (Ex. P-17).

## AFTER PLAINTIFF PASSED FIFTH SEMESTER

**N.     NBME CBSE Attempts**

59. Plaintiff's first NBME CBSE attempt was in Dominica. (Ex. P-28 at ¶ 70)[3].

---

[3] In Defendant's Response to Plaintiff's Second Set of Requests for Admission, each "Request No." therein will be referenced as paragraphs hereinafter.

8

60. Plaintiff's second through fifth NBME CBSE attempts were in the United States of America. (Ex. P-28 at ¶ 71).

61. RUSM admits that it granted Plaintiff's fifth NBME CBSE attempt based on academic judgement. (Ex. P-28 at ¶ 72).

62. RUSM admits that extended testing time for the NBME CBSE is a reasonable accommodation for disabled students that need extended testing time. (Ex. P-28 at ¶ 58).

63. RUSM admits that extended testing time on the NBME CBSE was a possible accommodation for disabled students. (Ex. P-27 at ¶ 17).

64. RUSM admits that it did not provide Plaintiff with extending testing time for any of his NBME CBSE attempts. (Ex. P-27 at ¶ 16).

65. RUSM admits that Plaintiff did not have any accommodations on any of his NBME CBSE attempts. (Ex. P-28 at ¶ 53-57).

66. RUSM admits that Plaintiff was dismissed for failing to pass the NBME CBSE on any of his attempts. (Ex. P-27 at ¶ 19; Def. Ans. at ¶ 27).

## GRIEVANCE PROCESS

**O.     April 27, 2017**

67. Plaintiff initiated the RUSM grievance process by sending his appeal form and medical record to RUSM's Promotions Committee. (Ex. P-20; Ex. P-21).

68. Plaintiff's appeal form to the RUSM's Promotions Committee states that "[Plaintiff] was diagnosed with Obsessive Compulsive Disorder" and that "Plaintiff will likely pass any future exam, specifically COMP [NBME CBSE] with a full-on attack of [his] OCD, anxiety, and depression." (Ex. P-20 at RUSM 000052).

69. Plaintiff's medical record sent to RUSM's Promotions Committee states that Plaintiff's ADHD is an active problem and that he was diagnosed with OCD. (Ex. P-21).

9

**P.      June 1, 2017**

70.     RUSM instructed Plaintiff to email an appeal letter to Dean Owen if he has additional information or if university procedure wasn't followed. (Ex. P-22).

**Q.      June 12, 2017**

71.     On behalf of the Plaintiff, his psychiatrist and psychotherapist notified Dean Owen that his mental impairment has negatively affected his academic performance in medical school. (Ex. P-23).

72.     In an email to Dean Owen, Plaintiff's psychiatrist and psychotherapist's state:

> We are writing on behalf of [Plaintiff].
>
> We have been treating [Plaintiff]… for ADHD and OCD.
>
> [Plaintiff] has had symptoms of [OCD] for the past 4-6 years but did not understand the nature of the diagnosis until recently.
>
> We believe that the **anxiety** and checking rituals inherent to this condition have been adversely affecting his academic performance in medical school. (Emphasis added).

(Ex. P-23).

**R.      June 13, 2017**

73.     Plaintiff's appeal letter to Dean Owen states that "[Plaintiff's] objective [was] to keep this letter relevant to how OCD has influenced [his] academic performance" and that "[Plaintiff's] biggest challenge with OCD is the extreme anxiety and urges that overwhelm [him]." (Ex. P-25).

74.     In Plaintiff's appeal letter, Plaintiff informed Dean Owen that he "never finished an exam on time" because "OCD has influenced [his] academic performance." (Ex. P-25).

**S.      June 29, 2017**

75.     In Dean Owen's decision letter from Florida, Dean Owen states that he "concur[s] with the Promotions Committee's decision to dismiss [Plaintiff]." (Ex. P-26).

10

DATED this 15th day of August, 2018:                                      Respectfully submitted,

                                                              _____
                                                              By: Oluwamuyiwa Awodiya, *pro se* litigant
                                                                                  15005 Dahlia Dr.
                                                                                  Bowie, MD 20721
                                                                                   (240) 602-1836
                                                                          Plaintiff, in Proper Person

## CERTIFICATE OF SERVICE

I do hereby certify that on this 15th day of August, 2018, I have caused a true and correct copy of the foregoing by mailing a copy to the Court, where the Court's CM/ECF system will send notification to the following:

>Ryan Roman
>Akerman Senterfitt
>Suntrust International Center
>1 SE 3rd Avenue
>25th Floor
>Miami, FL 33131-1714
>305-374-5600
>Fax: 305-374-5095
>Email: ryan.roman@akerman.com

_____
By: Oluwamuyiwa Awodiya, *pro se* litigant