# UNITED STATES DISTRICT COURT

for the
Southern District of Florida



FILED by ___ D.C.

SEP 2 4 2018

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S. D. of FLA. – MIAMI

|  |  |  |
|---|---|---|
| OLUWAMUYIWA AWODIYA, | ) | Case No.   0:18-cv-60482-KMM |
| *Plaintiff,* | ) | |
| | ) | |
| -v- | ) | Hon. Chief Judge: K. Michael Moore |
| | ) | Magistrate Judge: Barry S. Seltzer |
| ROSS UNIVERSITY SCHOOL OF | ) | |
| MEDICINE, SCHOOL OF | ) | |
| VETERINARY MEDICINE LIMITED | ) | |
| *Defendant.* | ) | |

## PLAINTIFF'S REPLY TO DEFENDANT'S RESPONSE IN

## OPPOSITION TO PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS

Plaintiff Oluwamuyiwa Awodiya ("Plaintiff"), in proper person, herby files his Reply to Defendant Ross University School of Medicine, School of Veterinary Medicine Limited's ("RUSM" or "Defendant") Response in Opposition [ECF No. 70] ("Opp'n Resp.") to Plaintiff's Motion for Judgment on the Pleadings [ECF No. 67] ("Motion").

## INTRODUCTION

RUSM's opposition brief raises no issues of material fact. Indeed, its brief is remarkable for what it does not even *attempt* to dispute. In particular:

- RUSM does not dispute the legal precedent that the RUSM Academic Catalog and RUSM Student Handbook are the terms of RUSM's contractual obligation to Plaintiff. Motion at 2-3.

- RUSM does not dispute that the Academic Catalog is "the **official** statement of the school's **policies**." *Id.* at 3 (quoting Florida Administrative Code Rule 6E-2.004(11)(b)(2) (emphasis added)).

1

- RUSM does not dispute that the November **2015** policy was an "outdated policy" that "was subsequently changed, superseded, and updated in the following semesters by the precedential authority set forth by language in the updated Academic Catalog published in mid-2016 before Plaintiff scored a 67 on his NBME CBSE." *Id.* at 3-4 (emphasis added). In fact, RUSM concedes that it "reserves the right add, **modify**, or delete… ***information contained in this catalog.***" Opp'n Resp. at 8.

- RUSM does not dispute that in **May 2016**, *six months after* RUSM's November 2015 policy, "RUSM published online the school's updated official policies and requirements in the Academic Catalog." Motion at 3.

- RUSM does not dispute "that 'Plaintiff scored a 67 on the NBME CBSE' in '**August 2016**' when the latest 'version' of the Academic Catalog to that date 'stated that the minimum passing score on the NBME CBSE was a 66.'" Motion at 3 (emphasis added); Opp'n Resp. at 5.

By not addressing these points, RUSM has conceded them. "A plaintiff who, in her responsive brief, fails to address her obligation to object to a point raised by the defendant implicitly concedes that point." *Guzman v. City of Hialeah*, Case No. 15-23985-CIV-GAYLES, at 4 (S.D. Fla. Jul. 14, 2016) (citing *Anderson v. Branch Banking & Trust Co.*, 119 F. Supp. 3d 1328, 1345 (S.D. Fla. 2015) (citing *Pelfresne v. Village of Williams Bay*, 917 F.2d 1017, 1023 (7th Cir. 1990) ("A litigant who fails to press a point by supporting it with pertinent authority, or by showing why it is sound despite a lack of supporting authority or in the face of contrary authority, forfeits the point))).

**ARGUMENT**

2

I.      **RUSM's Argument About 'Deference' and 'Arbitrariness' is Irrelevant Because
        Plaintiff Did Not Dispute RUSM's Deference to *Change* the NBME CBSE Passing
        Score Policy in 2015 or in May 2016. RUSM's *Failure to Comply* with the 2016
        Policy is What was Arbitrary.**

RUSM attempts to alter Plaintiff's argument into its own irrelevant argument that does

not exist because Plaintiff did not dispute RUSM's "deference" or "arbitrariness" to change the

Academic Catalog terms. RUSM does this by wrongfully contending that "Plaintiff alleges that

RUSM breached its contractual obligations by allegedly *changing* the passing score for the

NBME CBSE examination," this is incorrect.  Opp'n Resp. at 4. What Plaintiff actually

contended was that RUSM breached its contractual obligation because the RUSM Registrar

Department *failed to comply* with RUSM's 2016 updated policies and terms for the passing score

on the NBME CBSE when Plaintiff scored a 67 in August 2016. In fact, Plaintiff stated,

"RUSM's arbitrary act of **dismissing** 'Plaintiff'" when "the most current and official statement

of the NBME CBSE **policy stated** that a 66 or above was a passing score." Motion at 5. Also,

neither does Plaintiff's Motion nor Complaint dispute RUSM's ability to change the NBME

CBSE policy in 2015 or in 2016 when RUSM published said policies. RUSM's *changes* to the

2015 policy is *not* what Plaintiff contended was arbitrary, RUSM's *failure to comply* with the

2016 policy is what was arbitrary.

II.     **Plaintiff's Word Choice of "Arbitrary" is Not Limiting. Plaintiff was Expressing
        that RUSM did not Fulfill Its Contractual Obligation.**

RUSM seems to focus on Plaintiff's word choice of arbitrary. It is clear that Plaintiff

simply meant that RUSM did not fulfill its contractual obligation, depriving his degree in bad

faith. "[T]here is a wide discretion permitted by school authorities, and courts will not

interfere, **unless** the school authorities are shown to have acted in **bad faith** or exercised their

discretion arbitrarily" *Militana v. University of Miami*, 236 So. 2d 162, 164 (Fla. Dist. Ct. App.

1970) (emphasis added); "Accordingly, judicial review of a private educational institution's

determination of academic performance in this context is limited to whether the challenged

determination was arbitrary and capricious, irrational, made in **bad faith**, or in violation of

constitution or statute." *Sharick v. Southeastern University*, 780 So. 2d 136, 138 (Fla. Dist. Ct.

App. 2000) (emphasis added). RUSM acted in bad faith by not fulfilling its contractual

obligation as it was set forth in the "last published Academic Catalog." Opp'n Resp. at 5

(quoting Def. Ans. at ¶ 33).

**III.    RUSM Used Case Law Completely Out of Context. The Case Law that RUSM Used Only Allowed a School Discretion to Set Its Own Terms Within Publications and Discretion to Change the Terms in Subsequent Publications, Which Only Further Supports Plaintiff's Motion.**

In *Sirpal v. University of Miami*, Case No. 09-22662-CIV, (S.D. Fla. July 25, 2011), the

Court expressly holds that private universities have discretion in what rules and regulations it

shall issue in **publications**. *Id.* at 26. *Sirpal* states:

> Under Florida law, a private college may set forth the terms under
> which it will admit and subsequently graduate students who
> subject themselves to the rules, regulations and regimen of the
> college, thereby creating an implied contract with the student. The
> **terms and conditions for graduation are** those offered by the
> **publications** of the college at the time of enrollment.

*Id.* (emphasis added; internal citations omitted). Again, this is not something that Plaintiff

disputes. RUSM's argument has no weight because RUSM already admitted that after it

published new policies in "mid-November 2015," it published newer policies that "supersedes"

those policies by also admitting "that the **last published** Academic Catalog prior to that date

[when "Plaintiff scored a 67" in August 2016] stated that the minimum passing score on

the NBME CBSE was 66." Opp'n Resp. at 5 (emphasis added) (quoting Def. Ans. at ¶ 33).

RUSM relies on further case law that only supports Plaintiff's Motion. In *Jallali v. Nova*

*Se. Univ., Inc.*, 992 So. 2d 338 (Fla. 4th DCA 2008) ("the Student Handbook changed the

osteopathic program's graduation requirements." *Id.* at 340. "Nova's Dean explained that Nova

4

updated its graduation requirements." *Id*. at 341. The student "contended that these degree

requirements could not be changed by subsequent handbooks." *Id*.). In *Jallali*, the Court held that

the Dean could update the degree requirements in subsequent handbooks. This again only

supports Plaintiff's Motion for the same reasons in the previous paragraph. In other words,

RUSM may publish subsequent academic catalogs with new or modified terms of the school's

policies but, by law, is contractually obligated to those new terms. If RUSM is allowed to breach

contracts, after it had set and published its own terms, then this would make it impossible for

Plaintiff to benefit from the contract.

IV.     **In Addition to RUSM's Admissions, there are No Disputed Material Facts Because Plaintiff Has Accepted RUSM's Relevant Allegations as True.**

RUSM's entire opposition revolves around its ability to change the NBME CBSE passing

score policy set forth in publications. RUSM's entire opposition is therefore without purpose

because Plaintiff never disputed RUSM's ability to change the policy. In fact, RUSM's

opposition only supports Plaintiff's Motion. This is because RUSM stated that it published, "to

all students," that the minimum passing score would be 68 in "mid-November **2015**." Opp'n

Resp. at 5 (emphasis added) (quoting Def. Ans. at ¶ 33). Plaintiff assumed that this was true

when he stated, "[e]ven if we take that as true." Motion at 3. In fact, RUSM concedes that it

"reserves the right to add, *modify*, or delete… *information contained in this catalog.*" Opp'n

Resp. at 8.

RUSM also admits that the 2016 version of the "**last published** Academic Catalog…

stated that the minimum passing score on the NBME CBSE was 66" when "Plaintiff scored a 67

on the NBME CBSE (Comprehensive Basic Science Exam) in August **2016**." Opp'n Resp. at 5

(emphasis added) (quoting Def. Ans. at ¶ 33). And then "RUSM also admits that this version of

the Academic Catalog stated:

5

> **This catalog supersedes all previous editions** and is in effect
> until a subsequent version is published either in print or online. **All
> information in this catalog is current** at the time of printing.
> **Statements regarding** tuition and fees, curriculum, course
> offerings, admissions, and **graduation requirements** are subject
> to change at any time and **are applicable to all enrolled students**
> unless otherwise stated."

*Id.* (emphasis added). Reassuringly, RUSM also admits that a subsequent version "was not

published until November 2016, *months after* Plaintiff scored a 67." *Id.*

In light of RUSM's admissions, there is absolutely nothing here to dispute because

Plaintiff only relies on the latest and most current publication at that time when he scored a 67 on

the NBME CBSE. There is no amount of discovery that will change what RUSM has already

admitted to in its Pleadings.

**V.      Regarding RUSM's Breach in Paragraph 34 of the Complaint, the Breach is
         Material Because Plaintiff's Dismissal was Not Final.**

RUSM improperly concludes that, "Plaintiff fails to allege the specific damages that

would result from a failure to respond to an appeal within 15 days and he cannot do so because

failure to respond would not result in the appeal being overturned but rather it would simply

affirm the decision that is on appeal." Opp'n Resp. at 6.

RUSM is wrong. Plaintiff stated, "[t]he Dean did not have the contractual right to make

Plaintiff's dismissal final." Motion at 5. According to the terms of the Student Handbook,

Plaintiff's dismissal should have never been **final** since the Dean did not respond within 15

calendar days. *Id.* Plaintiff may have still been dismissed but he would have had another

opportunity to appeal after his mitigation attempts. The 'finality' is the damage. Failure to

respond would not have overturned the dismissal but it also would *not* affirm the dismissal

either, which would have allowed Plaintiff a future opportunity to continue his medical education

at RUSM. This is especially true because RUSM allows students to appeal dismissals (if not final) in the event of new information.

**VI.    Plaintiff Respects the Courts Prior Ruling with the Upmost Highest Regard. Plaintiff's Motion is Not an Attempt to Circumvent the Court's Prior Ruling.**

What Plaintiff understood for RUSM's Motion for Relief [ECF No. 63] from the prior Court ruling was that it wanted more discovery to investigate Plaintiff's disabilities. This is because RUSM stated that:

> There are a number of key areas for which discovery is necessary in this action. They include, among other things, discovery into Plaintiff's alleged *disabilities*, his alleged requests for *accommodations*, *treatments* sought by Plaintiff and *diagnoses* made by third parties regarding Plaintiff's alleged *disabilities*, key correspondence between the parties and between Plaintiff and third parties relating to the claims…

ECF No. 63 at 4 (emphasis added). RUSM made no mention of the breach of contract claims.

In fact, the Court ruled that:

> [A]reas for which discovery is necessary in this action, include[es], discovery into Plaintiff's alleged disabilities, requests for accommodations, treatments sought and diagnoses made by third parties.

ECF No. 66. Plaintiff, who is pro se, understood that he needed to allow RUSM to conduct discovery into Plaintiff's disabilities. Plaintiff completely respects with the Courts prior ruling. Since no discovery is needed for sub-counts 5 and 6, Plaintiff thought it is best and more efficient to move for Judgment on the Pleadings for these breach of contract claims.

**VII.   Plaintiff's Attached Documents Do Not Convert the Motion into a Summary Judgment Motion Because the Attachments Do Not Present <u>Matters</u> Outside of the Pleadings.**

Plaintiff only attached said documents as a courtesy because RUSM's admissions are in most part, direct quotes from those documents.

This Court has held "A court may, however, consider documents attached to a motion for judgment on the pleadings without converting it into one for summary judgment if the documents are (1) central to the plaintiffs claim and (2) their authenticity is not challenged." *Ramey v. Interstate Fire & Cas. Co.*, 32 F. Supp. 3d 1199, 1203 (S.D. Fla. 2013) (citing *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir.2005)). "In determining whether documents are 'central' to a plaintiff's claim, courts conduct a fact-sensitive analysis, considering such factors as: whether the claims depend on the documents; whether the contents of the documents are alleged in the complaint; or, whether the documents form a 'necessary part of [the plaintiff's] effort to make out [his] claim.'" *Id.* (brackets in original; internal citations omitted) (quoting *Day,* 400 F.3d at 1276).

As such, attaching documents do not convert Plaintiff's Motion into a motion for summary judgment, especially since the attachments are central to Plaintiff's breach of contract claims presented in this Motion.

## CONCLUSION

Plaintiff's Motion for Partial Judgment on the Pleadings should be granted.


DATED this 21th day of September, 2018:                    Respectfully submitted,


By: Oluwamuyiwa Awodiya, *pro se litigant*
                                    15005 Dahlia Dr.
                                    Bowie, MD 20721
                                    (240) 602-1836
                                    Plaintiff, in Proper Person

## CERTIFICATE OF SERVICE

I do hereby certify that on this 21th day of September, 2018, I have caused a true and

correct copy of PLAINTIFF'S REPLY TO DEFENDANT'S RESPONSE IN OPPOSITION TO

PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS by mailing a copy to the

Court, where the Court's CM/ECF system will send notification to the following:

> Ryan Roman
> Akerman Senterfitt
> Suntrust International Center
> 1 SE 3rd Avenue
> 25th Floor
> Miami, FL 33131-1714
> 305-374-5600
> Fax: 305-374-5095
> Email: ryan.roman@akerman.com

By: Oluwamuyiwa Awodiya, *pro se* litigant



PRESS FIRMLY TO SEAL

UNITED STATES POSTAL SERVICE

PRIORITY MAIL

FROM:

Oluwamuyiwa Awodiya
15005 Dahlia Dr.
Bowie, MD 20721

TO:

Wilkie D. Ferguson, Jr. U.S. Courthouse
400 North Miami Avenue, Room 8N09
Miami, FL 33128

FOR DOMESTIC AND INTERNATIONAL USE

VISIT US AT USPS.COM®
ORDER FREE SUPPLIES ONLINE

Label 228, March 2016

Retail

US POSTAGE PAID
$6.70

Origin: 20716
Destination: 33128
0 Lb 2.90 Oz
Sep 21 18
23093707%-05

1006

PRIORITY MAIL 2-Day®    C075

EXPECTED DELIVERY DAY: 09/24/2018

USPS TRACKING NUMBER

9505 5105 6956 8264 2657 40

WHEN USED INTERNATIONALLY,
A CUSTOMS DECLARATION
LABEL MAY BE REQUIRED.

EP14F July 2013
OD: 12.5 x 9.5

P S00001000014

This envelope is made from post-consumer waste. Please recycle - again.



TRACKED* ★ ★ INSURED*
★ ★ ★ ★



**UNITED STATES POSTAL SERVICE**®

# PRIORITY
## ★ MAIL ★

**FLAT RATE ENVELOPE**
ONE RATE ★ ANY WEIGHT*



P S 0 0 0 0 1 0 0 0 0 1 4

EP14F July 2013
OD: 12.5 x 9.5

\* Domestic only.   × For international shipments, the maximum weight is 4 lbs.