# UNITED STATES DISTRICT COURT

for the
Southern District of Florida



FILED by __PG__ D.C.

NOV 1 9 2018

STEVEN M. LARIMORE
CLERK U. S. DIST. CT.
S. D. of FLA. – MIAMI

|  |  |  |
|---|---|---|
| OLUWAMUYIWA AWODIYA, | ) | Case No.   0:18-cv-60482-KMM |
| *Plaintiff,* | ) | |
| | ) | |
| -v- | ) | Hon. Chief Judge: K. Michael Moore |
| | ) | Magistrate Judge: Alicia O. Valle |
| ROSS UNIVERSITY SCHOOL OF | ) | |
| MEDICINE, SCHOOL OF | ) | |
| VETERINARY MEDICINE LIMITED | ) | |
| *Defendant.* | ) | |

## DECLARATION OF OLUWAMUYIWA AWODIYA IN SUPPORT OF

## PLAINTIFF'S SECOND MOTION FOR JUDICIAL NOTICE

1.       Pursuant to 28 U.S.C. § 1746, I, Oluwamuyiwa Awodiya, as plaintiff, in proper person, of the above-captioned action, make this declaration in support of Plaintiff's Second Motion for Judicial Notice. I am over 18 years of age and I am competent to testify about the matters discussed herein.

2.       A true and correct copy of Plaintiff's FOIA Request No. 18-01569-F from the U.S. Department of Education, Office of the Chief Privacy Officer is attached to Plaintiff's Second Motion for Judicial Notice as Exhibit A.

3.       A true and correct copy of the Foreign School Program Participation Agreement for Ross University School of Medicine from the U.S. Department of Education, Office of the Chief Privacy Officer is attached to Plaintiff's Second Motion for Judicial Notice as Exhibit B.

1

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and accurate.

EXECUTED ON this 14th day of November, 2018:

Respectfully submitted,

By: Oluwamuyiwa Awodiya, *pro se* litigant
15005 Dahlia Dr.
Bowie, MD 20721
(240) 602-1836
Plaintiff, in Proper Person

# **Exhibit A**



# UNITED STATES DEPARTMENT OF EDUCATION

OFFICE OF MANAGEMENT

Office of the Chief Privacy Officer

May 13, 2018

Oluwamuyiwa O. Awodiya
15005 Dahlia Dr
Bowie, MD  20721

RE: FOIA Request No. 18-01569-F

Dear Oluwamuyiwa O. Awodiya:

This letter is a final response to your request for information pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. § 552, dated April 11, 2018 and received in this office on April 17, 2018.  Your request was forwarded to the appropriate office to search for documents that may be responsive to your request.

You requested the following:  the Program Participation Agreement for Ross University School of Medicine, OPEID code 022460. Any one of the school's PPA that were in effect during or after 2014 will suffice. If there is a more specific "Foreign School" Program Participation Agreement signed by the same school, then that document is also being requested.

Attached to this e-mail are 14 pages of fully releasable documents that are responsive to your request. The documents provided are:

  ➢  Ross University of Medicine 2014 PPA

Provisions of the FOIA allow us to recover the costs pertaining to your request.  The Department has concluded that you fall within the category "an all other use requester." However, the Department has provided you with this information at no charge.  The Department's release of this information at no cost does not constitute the grant of a fee waiver, and does not infer or imply that you will be granted a fee waiver for future requests made under FOIA to the Department.  Because we were able to locate and process these documents at minimal costs, they are provided to you at no cost.

You have the right to seek further assistance from the Department's FOIA Public Liaison, Robert Wehausen.  The Department's FOIA Public Liaison can be reached by e-mail at robert.wehausen@ed.gov; by phone at 202-205-0733; by fax at 202-401-0920; or by mail at Office of the Chief Privacy Officer, U.S. Department of Education, 400 Maryland Ave., SW, LBJ 2W218-58, Washington, DC 20202-4536, Attn:  FOIA Public Liaison.

Page 2 - Oluwamuyiwa O. Awodiya
18-01569-F

If you have any questions, please contact the FSC at (202) 401-8365 or
EDFOIAMANAGER@ed.gov.

Sincerely,

FOIA Analyst, OM/OCPO
FOIA Service Center

Enclosure

## Exhibit B



## UNITED STATES DEPARTMENT OF EDUCATION

### FEDERAL STUDENT AID
### SCHOOL ELIGIBILITY CHANNEL

# FOREIGN SCHOOL
# PROGRAM PARTICIPATION AGREEMENT

| | |
|---|---|
| Effective Date of Approval: | The date on which this Agreement is signed on behalf of the Secretary of Education |
| Approval Expiration Date: | **September 30, 2015** |
| Reapplication Date: | **June 30, 2015** |

Name of Institution: **Ross University, School of Medicine**

Address of Institution: **Portsmouth Campus**
**Portsmouth**
**Dominica**

OPE ID Number: **02246000**
DUNS Number: **871809674**

> **The execution of this Agreement by the Institution and the Secretary is a prerequisite to the Institution's initial or continued participation in any Title IV, HEA Program.**

The postsecondary educational institution listed above, referred to hereafter as the "Institution," and the United States Secretary of Education, referred to hereafter as the "Secretary," agree that the Institution may participate in the student financial assistance programs authorized by Title IV of the Higher Education Act of 1965, as amended (Title IV, HEA Programs) indicated under this Agreement and further agrees that such participation is subject to the terms and conditions set forth in this Agreement. As used in this Agreement, the term "Department" refers to the U.S. Department of Education.

## SCOPE OF COVERAGE

This Agreement applies to all locations of the Institution as stated on the most current ELIGIBILITY AND CERTIFICATION APPROVAL REPORT issued by the Department.

This Agreement covers the Institution's eligibility to participate in the following listed Title IV, HEA program, and incorporates by reference the regulations cited.

- **FEDERAL DIRECT STUDENT LOAN PROGRAM,** 20 U.S.C. 1087a et seq; 34 CFR Part 685.

## *Additional Considerations*

The institution's Program Participation Agreement extends only to the institution's main campus location in Portsmouth, Dominica and approved clinical training locations. It does not extend to any other locations. Therefore, the institution is authorized to obligate funds under the Direct Loan Program only for U.S. students attending the institution's location in Dominica and approved clinical training locations.

The Institution is authorized to participate in the U.S. Federal Student Aid Programs in order to provide U.S. students with access to financial assistance to receive postsecondary education outside of the United States. The institution may not make available William D. Ford Federal Direct Loan (Direct Loan) Program funds to U.S. students who receive any portion of an educational program inside the United States. The Institution may not certify or disburse Direct Loan program funds under a "study abroad" or "student exchange" agreement for U.S. students to attend educational institutions located in the United States. However, as of July 1, 2011, independent research done by an individual student in the United States for not more than one academic year is permitted, if it is conducted during the dissertation phase of a doctoral program under the guidance of faculty, and the research can only be performed in a facility in the United States.

An eligible foreign institution may not enter into a written arrangement under which an ineligible institution or organization provides any portion of one or more of the eligible foreign institution's programs. Therefore, the institution is reminded that if it enters into a written agreement with an institution that is not an eligible institution (for purposes of participation in the Title IV, HEA federal student financial assistance programs) under which the ineligible institution provides part of the educational program for students enrolled in the eligible institution, the educational program is not considered to be an eligible program. The eligible institution may not certify William D. Ford Direct Loan program funds to students enrolled in an ineligible program.

# GENERAL TERMS AND CONDITIONS

(1)

    The Institution understands and agrees that it is subject to and will comply with the program statutes and implementing regulations for institutional eligibility as set forth in 34 C.F.R Part 600 and for each Title IV, HEA program in which it participates, as well as the general provisions set forth in Part F and Part G of Title IV of the HEA, and the Student Assistance General Provisions regulations set forth in 34 CFR Part 668.
    *The recitation of any portion of the statute or regulations in this Agreement does not limit*

*the Institution's obligation to comply with other applicable statutes and regulations.*

(2) The Institution acknowledges and agrees that 34 C.F.R. Part 600 (2011) requires that it be legally authorized by the country's education ministry, council or equivalent agency to offer an eligible educational program above the secondary level, that it award degrees, certificates, or other recognized credentials that are officially recognized by the country in which the institution is located; and that the authorizing agency and the Secretary may share or report information to one another about the Institution without limitation.

(3) The Institution acknowledges and agrees that 34 C.F.R. Part 600 requires that if the Institution is or has, as a component program, a medical school, the medical school must be approved by an accrediting authority determined by the National Committee on Foreign Medical Education Accreditation to use accrediting standards comparable to those used in the United States in accrediting medical schools in the country in which Institution is located, and that the accrediting agency, authorizing agency, and the Secretary may share or report information to one another about the Institution without limitation.

(4) The Institution acknowledges and agrees that courses or programs offered in whole or in part by telecommunications or correspondence (including by distance education): or by direct assessment are not enrolled in eligible educational programs and the institution may not award or disburse Title IV, HEA program funds to students in such courses or programs. 20 U.S.C. § 1088(b) (3); 34 C.F.R. § 600.51(d). Eligible programs and courses may use telecommunications technologies only to supplement and support instruction that is offered in a classroom located in the country where the students and instructor are physically present.

## SELECTED PROVISIONS FROM
## GENERAL PROVISIONS REGULATIONS, 34 CFR PART 668

By entering into this Program Participation Agreement, the Institution agrees that:

(1) It will comply with all statutory provisions of or applicable to Title IV of the HEA, all applicable regulatory provisions prescribed under that statutory authority, and all applicable special arrangements, agreements, and limitations entered into under the authority of statutes applicable to Title IV of the HEA, including the requirement that the Institution will use funds it receives under any Title IV, HEA program and any interest or other earnings thereon, solely for the purposes specified in accordance with that program;

(2) As a fiduciary responsible for administering Federal funds, if the Institution is permitted to request funds under a Title IV, HEA program advance payment method, the Institution will time its requests for funds under the program to meet the Institution's immediate Title IV, HEA program needs;

(3) It will not request from or charge any student a fee for processing or handling any application, form, or data required to determine a student's eligibility for, and amount of, Title IV, HEA program assistance;

(4) It will establish and maintain such administrative and fiscal procedures and records as may be necessary to ensure proper and efficient administration of funds received from the Secretary or from students under the Title IV, HEA programs, together with assurances that the Institution will provide, upon request and in a timely manner, information relating to the administrative

capability and financial responsibility of the institution to--

(i) The Secretary;

(ii) The regulatory bodies or any other oversight agency for the country in which the Institution or any of the institution's campuses or other locations are located;

(iii) The accrediting authority approved by the National Committee on Foreign Medical Education and Accreditation for the country in which the Institution's foreign medical school is located if the Institution is a freestanding foreign medical school or includes a component medical program.

(5) It will comply with the provisions of 20 U.S.C. § 1094(c), 34 C.F.R. Part 668, Subpart L and 34 C.F.R. §668.23 and Subpart L of the Student Assistance General Provisions relating to factors of financial responsibility;

(6) It will comply with the provisions of 34 C.F.R. §668.16 relating to standards of administrative capability;

(7) It will submit reports to the Secretary at such times and containing such information as the Secretary may reasonably require to carry out the purpose of the Title IV, HEA programs;

(8) Pursuant to 34 C.F.R. §668.14(b)(8), the Institution will not qualify a student or parent for a loan or loans that are in excess of the amount that the student of parent is eligible to borrow;

(9) Pursuant to 34 C.F.R. §668.14(c)(1), the Institution will certify that it has in operation a drug abuse prevention program;

(10) Pursuant to 34 C.F.R. §668.14(c)(2)(ii), the Institution will certify that it has complied with the disclosure requirements of 34 C.F.R. §668.47 [*Report on athletic program participation rates and financial support data*]

(11) It will comply with requirements concerning institutional and financial assistance information for students and prospective students, information dissemination, graduation or completion rates, athletic program participation rates, missing student notification and procedures, and fire safety, found at:

34 C.F.R. §§668.41(a)-(c) [*Reporting and Disclosure of Information*]

34 C.F.R. §668.41(d) [*General disclosures for enrolled or prospective students*] The Institution will comply with 34 C.F.R. 668.41(d), except that the Institution will disclose as its retention rate a rate to be calculated in accordance with 34 C.F.R. 668.45.

34 C.F.R. §668.41(e) [*only with respect to the Annual Fire Safety Report*]

34 C.F.R. §668.41(f) and 34 C.F.R. §668.48 [*Completion and Graduation Rates for Student Athletes*]

34 C.F.R. §668.41(g) and 34 C.F.R. §668.47 [*Athletic program participation rates and financial support data*]

34 C.F.R. §668.42 [*Financial Assistance Information*]

34 C.F.R. §668.43 [*Institutional Information, with compliance with 668.43(b)(10), Copyright Infringement, based on the laws of the country in which the Institution is located*]

34 C.F.R. §668.44 [*Availability of employees for information dissemination purposes*]

34 C.F.R. §668.45 [*Information on completion or graduation rates*]

34 C.F.R. §668.46(h) [*Missing student notification policies and procedures, except that the Institution's annual reporting is not part of the campus security report*]; and

34 C.F.R. §668.49 [*Institutional fire safety and policies and fire statistics*]

(12) If the Institution advertises job placement rates as a means of attracting students to enroll in the Institution, it will make available to prospective students, at or before the time that those students apply for enrollment, the most recent available data concerning employment statistics in the jurisdiction to which its job placement rates advertisements pertain, graduation statistics, and any other information necessary to substantiate the truthfulness of the advertisements.

(13) (i) If the Institution is seeking to participate for the first time in the Direct Loan Program, the Institution has included a default management plan as part of its application under §600.20 for participation in those programs and will use the plan for at least two years from the date of that application;

(ii) If the Institution has experienced a change ownership that results in a change of control, the Institution will develop a default management plan for approval by the Secretary and implement the plan for at least two years after the change in control.

(iii) The Secretary considers the requirements of this paragraph to be satisfied by a default management plan developed in accordance with the default reduction measures described in the September 2005 Dear Partner Letter, GEN-05-14;

(iv) The Institution does not have to use an approved default management plan if

(A) The Institution, including its main campus and any branch campus, does not have a cohort default rate in excess of 10 percent; and

(B) the owner of the Institution does not own and has not owned any other Institution that had a cohort default rate in excess of 10 percent while that owner owned the institution.

(14) The Secretary, government agencies that legally authorize the Institution or its branch campuses or other locations to provide the postsecondary education, the U.S. Secretary of Veterans Affairs, and other U.S. government agencies, and, if Institution is or includes a medical school, that medical school's accrediting authority, have the authority to share with each other any information pertaining to the Institution's eligibility for or participation in the Title IV, HEA programs or any information on fraud and abuse pertaining to the Title IV, HEA programs;

(15) The Institution will not knowingly -

(i) Employ in a capacity that involves the administration of the Title IV, HEA programs, or the receipt of funds under those programs, an individual who has been convicted of, or has pled *nolo contendere* or guilty to, a crime involving the acquisition, use or expenditure of U.S. Federal, State or local government funds, or has been administratively or judicially determined to have committed fraud or any other material violation of law involving U.S. Federal, State, or local government funds, or has a;

(ii) Contract with an institution or third-party servicer that has been terminated under section

432 of the HEA for a reason involving the acquisition, use or expenditure of U.S. Federal, State or local government funds, or that has been administratively or judicially determined to have committed fraud or any other material violation of law involving U.S. Federal, State or local government funds; or

(iii) Contract with or employ any individual, agency or organization that has been, or whose officers or employees have been

(A) convicted of, or pled nolo contendere or guilty to, a crime involving the acquisition, use or expenditure of U.S. Federal, State, or local government funds; or

(B) administratively or judicially determined to have committed fraud or any other material violation of law involving U.S. Federal, State or local government funds;

(16) It will not impose any penalty, including, but not limited to, the assessment of late fees, the denial of access to classes, libraries, or other Institutional facilities, or the requirement that the student borrow additional funds for which interest or other charges are assessed, on any student because of the student's inability to meet his or her financial obligations to the Institution as a result of the delayed disbursement of the proceeds of a Title IV, HEA program loan due to compliance with statutory and regulatory requirements of or applicable to the Title IV, HEA programs, or delays attributable to the Institution;

(17) Within the meaning of 34 C.F.R. § 668.14(b)(22), it will not provide any commission, bonus, or other incentive payment based directly or indirectly on success in securing enrollments or financial aid to any persons or entities engaged in any student recruiting or admission activities or in making decisions regarding the awarding of student financial assistance, except that this requirement shall not apply to the recruitment of students who are not U.S. Citizens, U.S. Nationals, or U.S. residents who are residing in countries outside of the United States who are not eligible to receive Federal Student Assistance;

(18) It will meet the requirements established pursuant to Part H of Title IV of the Higher Education Act (HEA) by the Secretary, as well as the requirements of the oversight authorities in the country in which it is located, and, if it is or includes a medical school, the requirements imposed on it by its accrediting authority(ies);

(19) It will comply with the refund provisions established in 34 C.F.R. § 668.22;

(20) It is liable for all improperly administered funds received under the Title IV, HEA programs, including any funds administered by a third-party servicer, and returns of Title IV program funds that the institution or its servicer may be required to make;

(21) If the stated objective of an educational program of the Institution are to prepare a student for gainful employment in a recognized occupation, the Institution will-

(i) demonstrate a reasonable relationship between the length of the program and entry level requirements for the recognized occupation for which the program prepares the student. The Secretary considers the relationship to be reasonable if the number of clock hours provided in the program does not exceed by more than 50 percent the minimum number of clock hours required for training in the recognized occupation for which the program prepares the student, as established by a relevant government agency; and

(ii) establish the need for the training for the student to obtain employment in the recognized occupation for which the program prepares the student.

(22) The Institution

(i) will develop, publish, administer, and enforce a code of conduct with respect to loans made under the Title IV, HEA loan programs in accordance with 34 C.F.R. § 601.21 and

(ii) must annually inform its officers, employees, and agents with responsibilities with respect to Title IV, HEA program loans of the provisions of the code;

(23) For any year in which the Institution has a preferred lender arrangement, (as defined in 34 C.F.R. § 601.2(b)), it will at least annually compile, maintain, and make available for students attending the Institution who are U.S. citizens, U.S. Nationals, or U.S. residents who are residing in the countries outside the United States, and the families of such students, a list in print or other medium, of the specific lenders of private education loans that the Institution recommends, promotes, or endorses in accordance with such preferred lender arrangement. In making such a list, the Institution must comply with the requirements in 34 C.F.R. § 601.10;

(24) (i) The Institution will, upon the request of an enrolled or admitted student who is a U.S. citizen, U.S. National, or U.S. resident who is residing in a country outside the United States and is an applicant for a private education loan (as defined in 34 C.F.R. § 601.2(b)), provide to the applicant the self-certification form required under 34 C.F.R. § 601.11(d) and the information required to complete the form, to the extent the Institution possesses such information, including--

(A) The applicant's cost of attendance at the Institution, as determined by the Institution under part F of title IV of the HEA;

(B) The applicant's estimated financial assistance, including amounts of financial assistance used to replace the expected family contribution as determined by the Institution in accordance with Title IV, for students who have completed the Free Application for Federal Student Aid; and

(C) The difference between the amounts under (A) and (B), as applicable;

(ii) The Institution will, upon the request of the applicant, discuss with the applicant the availability of Federal and institutional student financial aid;

(25) The Institution--

(i) Has developed and implemented written plans to effectively combat the distribution of copyrighted material by users of the Institution's network that is unauthorized under the laws of the country in which the Institution is located, without unduly interfering with educational and research use of the network, that include--

(A) The use of one or more technology-based deterrents;

(B) Mechanisms for educating and informing its community about appropriate versus inappropriate use of copyrighted material, including policies and sanctions as described in 34 C.F.R. § 668.43(a)(10) that are consistent with the laws of the country in which the Institution is located;

(C) Procedures for handling unauthorized distribution of copyrighted material, including disciplinary procedures; and

(D) Procedures for periodically reviewing the effectiveness of the plans to combat the unauthorized distribution of copyrighted materials by users of the Institution's network using relevant assessment criteria. No particular technology measures are favored or required for inclusion in the Institution's plans, and the Institution retains the authority to determine what its particular plans for compliance with this paragraph (22) will be, including those that prohibit content monitoring; and

(ii) Will, in consultation with the chief technology officer or other designated officer of the Institution--

(A) Periodically review the legal alternatives for downloading or otherwise acquiring

copyrighted material;

(B) Make available the results of the review to its students through a Web site or other means; and

(C) To the extent practicable, offer legal alternatives for downloading or otherwise acquiring copyrighted material, as determined by the Institution.

(26) If Institution is for-profit (i.e., a for-profit foreign medical, veterinary, or nursing school), the institution will derive at least 10 percent of its revenues for each fiscal year from sources other than Title IV, HEA program funds, as provided in § 668.28(a) and (b), or be subject to sanctions described in § 668.28(c);

(27) It will complete, in a timely manner and to the satisfaction of the Secretary, surveys conducted as part of any Federal information collection effort, as designated by the Secretary, regarding data on postsecondary institutions;

(28) (i) This Agreement becomes effective on the date that the Secretary signs the Agreement;

(ii) This Agreement supersedes any prior program participation agreement between the Secretary and the Institution;

(29) (i) With respect to an institution that has been certified *other than under a provisional certification*--

(A) Except as provided in paragraphs (B) and (C) of this paragraph, the Secretary terminates this Agreement through the proceedings in Subpart G of 34 C.F.R. Part 668.

(B) An Institution may terminate this Agreement.

(C) If the Secretary or the Institution terminates this Agreement under paragraph (i) of this section, the Secretary establishes the termination date.

(ii) With respect to an institution that has been *provisionally certified*--

(A) The Secretary revokes a provisional certification through the proceedings in 34 C.F.R. §668.13(d).

(B) An Institution may terminate this Agreement.

(30) An Institution's program participation agreement automatically expires on the date that--

(i) The Institution changes ownership that results in a change in control as determined by the Secretary under 34 C.F.R. Part 600, or

(ii) The Institution's participation ends under the provisions of 34 C.F.R. §668.26.

(31) The Institution's Program Participation Agreement no longer applies to or covers a location of the Institution as of the date on which that location ceases to be a part of the participating Institution

## WILLIAM D. FORD FEDERAL DIRECT LOAN PROGRAM

(1) The Institution agrees to include the William D. Ford Federal Direct Loan Program, 20 U.S.C. §§ 1087a et seq. (Direct Loan Program), in its participation, effective as of July 1, 2010. The Institution and its representatives shall comply with the statute, guidelines, and regulations governing the Title IV, Part D, William D. Ford Federal Direct Loan Program.

(2) The Institution's participation in the Direct Loan Program involves "standard origination," as defined in 34 C.F.R. § 685.102, and does not involve "School origination option 1" or "School origination option 2" as defined in that regulation.

(3) The Institution's participation does not include authorization under 34 C.F.R. § 685.402(f) for multi-year use of the Master Promissory Note. Master Promissory Notes will be made available to students enrolling at Institution by the Department of Education electronically, or, upon the request of the student, in paper.

(4) The Institution understands that, as required by Section 452 of the Higher Education Act of 1965, as amended effective July 1, 2010 by title II, subtitle A of the Health Care and Education Reconciliation Act of 2010, Public Law 111-152, enacted on March 30, 2010, the Secretary of the U.S. Department of Education has appointed the U.S. Federal Reserve Banks as the financial institutions located or operating in the United States that will serve as the agents for it with respect to the receipt of disbursements of Direct Loan Program funds and the transfer of such funds to Institution, and that to receive Direct Loan Program funds, the Institution must make the necessary arrangements with the appropriate U.S. Federal Reserve Bank, including having or establishing its own bank account into which Direct Loan Program funds from the U.S. Federal Reserve Bank can be deposited.

(5) The Institution agrees that, during the time it participates in the Direct Loan Program under this Agreement, it will provide for the establishment and maintenance of a Direct Loan Program at the Institution that will:

(i) Identify eligible students who seek student financial assistance in accordance with Section 484 of the Higher Education Act of 1965, as amended (the HEA);

(ii) Estimate the need of each of these students as required under Title IV, Part F of the HEA for the academic year. For purposes of estimating need, a Direct Unsubsidized Loan, a Direct PLUS Loan, or any loan obtained under any State-sponsored or private loan program may be used to offset the expected family contribution of the student for that year;

(iii) Determine that the amount of the loan for any student under Part D of the HEA is in an amount that does not exceed the annual limit applicable for that loan program and that the amount of the loan, in combination with previous loans received by the borrower, is not in excess of the aggregate limit for that loan program;

(iv) Set forth a schedule for disbursement of the proceeds of the loan in installments, consistent with the requirements of Section 428G of the HEA;

(v) Provide timely and accurate information to the Secretary for the servicing and collecting of loans A) concerning the status of student borrowers (and students on whose behalf parents borrow under this program) while those students are in attendance at the school, and B) on request of the Secretary, concerning any new information of which the Institution becomes aware for these students (or their parents) after the student leaves the Institution, and C) concerning student eligibility and need, for the alternative origination of loans to eligible students and parents in accordance with part D of Title IV of the HEA;

(vi) Comply with requirements established by the Secretary relating to student loan information with respect to the Direct Loan Program;

(vii) Provide for the implementation of a quality assurance system, as established by the Secretary and developed in consultation with the Institution, to ensure that the Institution is complying with program requirements and meeting program objectives;

(viii) Provide that the Institution will not charge any fees of any kind, regardless of how they are described, to student or parent borrowers for loan application, or loan origination activities (if applicable), or the provision and processing of any information necessary for a student or parent to receive a loan under Part D of Title IV of the HEA;

(ix) Comply with other provisions that the Secretary determines are necessary to protect the interest of the United States and to promote the purposes of Part D of Title IV of the HEA.

(x) Accept responsibility and financial liability stemming from its failure to perform its functions under this Program Participation Agreement.

## CERTIFICATIONS REQUIRED FROM INSTITUTIONS

The Institution should refer to the regulations cited below. Signature on this Agreement provides for compliance with certification requirements under 34 C.F.R. Part 85, "Governmentwide Debarment and Suspension (Nonprocurement)," and 34 C.F.R. Part 86, "Drug and Alcohol Abuse Prevention." Breach of any of these certifications constitutes a breach of this Agreement.

## PART 1    CERTIFICATION REGARDING DEBARMENT AND SUSPENSION

As required by Executive Order 12549, Debarment and Suspension, and implemented at 34 C.F.R. Part 85, for prospective participants in primary covered transactions as defined at 34 C.F.R. Part 85, Sections 85.105 and 85.110, the Institution certifies that it and its principals:

(1) are not presently debarred, suspended, proposed for debarment, declared ineligible, or voluntarily excluded from covered transactions by any U.S. government department or agency, or by any approving agency;

(2) have not within a three year period preceding this application been convicted of or had a civil judgment rendered against them for commission of fraud or a criminal offence in connection with obtaining, attempting to obtain, or performing a U.S. public transaction or contract under a U.S. public transaction, violation of U.S. antitrust statutes or commission of embezzlement, theft, forgery, bribery, falsification or destruction of records, making false statements, or receiving stolen property, making false claims, or obstruction of justice; or commission of any other offense indicating a lack of business integrity or business honesty that seriously and directly affects their present responsibility;

(3) are not presently indicted or otherwise criminally or civilly charged by a government entity in the U.S. with commission of any of the offenses enumerated in paragraph (2) of this certification;

(4) have not within a three year period preceding this application had one or more public transactions in the U.S. terminated for cause or default.

## PART 2    U.S. DEPARTMENT OF EDUCATION DRUG PREVENTION CERTIFICATION

The undersigned Institution certifies that it has adopted and implemented a drug prevention program for its students and employees that the Institution has determined to be accessible to any officer, employee, or student at the Institution, and that, at a minimum, includes—

(1) The annual distribution in writing to each employee, and to each student who is taking one or more classes for any kind of academic credit except for continuing education units, regardless

of the length of the student's program of study, of:

- Standards of conduct that clearly prohibit, at a minimum, the possession, use, or distribution of illicit drugs and alcohol, to the extent unlawful in the country in which the Institution is located, by students and employees on its property or as part of any of its activities. A description of the applicable legal sanctions under law for the unlawful possession or distribution of illicit drugs and alcohol.
- A description of the health risks associated with the use of illicit drugs and the abuse of alcohol.
- A description of all drug or alcohol counseling, treatment, or rehabilitation or re-entry programs that are available to employees or students.
- A clear statement that the Institution will impose disciplinary sanctions on students and employees (consistent with law), and a description of those sanctions, up to and including expulsion or termination of employment and referral for prosecution, for violation of the standards of conduct. A disciplinary sanction may include the completion of an appropriate rehabilitation program.

(2) A biennial review by the Institution of its program to:

- Determine its effectiveness and implement changes to the program if they are needed.
- Ensure that its disciplinary sanctions are consistently enforced.

## PART 3 CERTIFICATION REGARDING DEBARMENT, SUSPENSION, INELIGIBILITY, AND VOLUNTARY EXCLUSION -- LOWER TIER COVERED TRANSACTIONS

**The Institution is to obtain the signatures of Lower Tier Contractors on reproduced copies of the certification below, and retain the completed certification(s) in the Institution's files.**

<table>
<tr><td colspan="2" align="center"><strong>CERTIFICATION BY LOWER TIER CONTRACTOR</strong><br>(Before Completing Certification, Read Instructions for This Part 3, below)</td></tr>
<tr><td colspan="2">(1) The prospective lower tier participant certifies by submission of this proposal, that neither it nor its principals are presently debarred, suspended, proposed for debarment, declared ineligible, or voluntarily excluded from participation in this transaction by any Federal Department or Agency.</td></tr>
<tr><td colspan="2">(2) Where the prospective lower tier participant is unable to certify to any of the statements in this certification, such prospective participant shall attach an explanation to this proposal.</td></tr>
<tr><td>Name of Lower Tier Organization</td><td>PR/Award Number or Project Name</td></tr>
<tr><td>Name of Authorized Representative</td><td>Title of Authorized Representative</td></tr>
<tr><td>Signature of Authorized Representative</td><td>Date</td></tr>
</table>

1. By signing and submitting this proposal, the prospective lower tier participant is providing the certification set out below.

2. The certification in this clause is a material representation of fact upon which reliance was placed when this transaction was entered into. If it is later determined that the prospective lower tier participant knowingly rendered an erroneous certification, in addition to other remedies available to the Federal Government, the department or agency with which this transaction originated may pursue available remedies, including suspension and/or debarment.

3. The prospective lower tier participant shall provide immediate written notice to the person to which this proposal is submitted if at any time the prospective lower tier participant learns that its certification was erroneous when submitted or has become erroneous by reason of changed circumstances.

4. The terms "covered transaction," "debarred," "suspended," "ineligible," "lower tier covered transaction," "participant," "person," "primary covered transaction," "principal," "proposal," "voluntarily excluded," as used in this clause, have the meanings set out in the Definitions and Coverage sections of rules implementing Executive Order 12549. You may contact the person to whom this proposal is submitted for assistance in obtaining a copy of those regulations.

5. The prospective lower tier participant agrees by submitting this proposal that, should the proposed covered transaction be entered into, it shall not knowingly enter into any lower tier covered transaction with a person who is debarred, suspended, declared ineligible, or voluntarily excluded from participation in this covered transaction, unless authorized by the department or agency with which this transaction originated.

6. The prospective lower tier participant further agrees by submitting this proposal that it will include the clause titled "Certification Regarding Debarment, Suspension, Ineligibility, and

Voluntary Exclusion--Lower Tier Covered Transactions," without modification, in all lower tier covered transactions and in all solicitations for lower tier covered transactions.

7. A participant in a covered transaction may rely upon a certification of a prospective participant in a lower tier covered transaction that is not debarred, suspended, ineligible, or voluntarily excluded from the covered transaction, unless it knows that the certification is erroneous. A participant may decide the method and frequency by which it determines the eligibility of its principals. Each participant may, but is not required to, check the Nonprocurement List.

8. Nothing contained in the foregoing shall be construed to require establishment of a system of records in order to render in good faith the certification required by this clause. The knowledge and information of a participant is not required to exceed that which is normally possessed by a prudent person in the ordinary course of business dealings.

9. Except for transactions authorized under paragraph 5 of these instructions, if a participant in a covered transaction knowingly enters into a lower tier covered transaction with a person who is suspended, debarred, ineligible, or voluntarily excluded from participation in this transaction, in addition to other remedies available to the Federal Government, the department or agency with which this transaction originated may pursue available remedies, including suspension and/or debarment.


NOTE: A completed copy of the "Certification Regarding Debarment, Suspension, Ineligibility and Voluntary Exclusion--Lower Tier Covered Transactions" form must be retained by the Institution. The original blank certification must be returned with the PPA.

## IN WITNESS WHEREOF

the parties hereto have caused this Agreement to be executed by their duly authorized representatives.

Signature of Institution's
Chief Executive Officer: _____ Date: _____

Print Name and Title: _____

_____

For the Secretary: _____ Date: _____
U.S. Department of Education

PRIORITY MAIL®

PRESS FIRMLY TO SEAL

DATE OF DELIVERY SPECIFIED*

USPS TRACKING™ INCLUDED*

INSURANCE INCLUDED*
Domestic only

PICKUP AVAILABLE

WHEN USED INTERNATIONALLY,
A CUSTOMS DECLARATION
LABEL MAY BE REQUIRED.

Label 228, March 2016

UNITED STATES POSTAL SERVICE®

PRIORITY MAIL★

1006

33128-1801

U.S. POSTAGE PAID
PM 2-DAY
BOWIE, MD
2071E
NOV 14, 18
AMOUNT
$6.70
R2303S103654-03

VISIT US AT USPS.COM®
ORDER FREE SUPPLIES ONLINE

USMS INSPECTED
By _____

FROM:

FROM:
Oluwamuyiwa Awodiya
15005 Dahlia Dr.
Bowie, MD 20721

TO:
Wilkie D Ferguson, Jr. U.S. Courthouse
400 North Miami Avenue, Room 8N09
Miami, FL 33128

FOR DOMESTIC AND INTERNATIONAL USE

g is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail® shipments. Misuse may be a violation of federal law. This packaging is not for resale. EP14F © U.S. Postal Service; July 2013; All rights reserved.