UNITED STATES DISTRICT COURT
for the
Southern District of Florida

FILED by PG D.C.

DEC 10 2018

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S. D. of FLA. – MIAMI

OLUWAMUYIWA AWODIYA,

*Plaintiff,*

-v-

ROSS UNIVERSITY SCHOOL OF
MEDICINE, SCHOOL OF
VETERINARY MEDICINE LIMITED

*Defendant.*

Case No.   0:18-cv-60482-KMM

Hon. Chief Judge: K. Michael Moore
Magistrate Judge: Alicia O. Valle

## PLAINTIFF'S STATEMENT OF MATERIAL FACTS IN SUPPORT OF PLAINTIFF'S SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiff Oluwamuyiwa Awodiya ("Plaintiff"), in proper person, hereby files his Statement of Material Facts in Support of Plaintiff's Second Motion for Partial Summary Judgment.

1. Ross University School of Medicine, School of Veterinary Medicine Limited ("RUSM" or "Defendant") operates a private, for-profit medical school. Answer ¶ 2.

2. RUSM receives Federal financial assistance from the United States of America, Department of Education. Answer ¶ 49; *See also* Pl.'s Second Motion for Judicial Notice [ECF No. 89].

3. RUSM is a "place of public accommodation" because it is a private school. 42 U.S.C. § 12181(7)(J).

4. William Owen ("Dean Owen") is the Dean and Chancellor of RUSM. Admis. No. 80.

5. Davendranand Sharma ("Dr. Sharma") is RUSM's "professor of behavior sciences and consultant psychiatrist for health services." Sharma Dep. 7:23-24.

1

6. Bryan Hayse ("Dr. Hayse") is the Associate Dean of Student Affairs at RUSM. Admis. No 81; Ex. SJ-09.

7. McMillan Cuffy ("Mr. Cuffy") is a counselor at RUSM. Admis. No. 48.

8. Matthew Stewart-Fulton ("Mr. Stewart-Fulton") is one of the accommodation coordinators at RUSM. Admis. No 82; Answer ¶ 17.

9. Plaintiff was a student at RUSM. He started his first semester at RUSM in May 2014. Awodiya Decl. ¶ 2.

10. Plaintiff was given multiple diagnostic tests between December 2015 through January 2016 for his attention/concentration problems. Plaintiff's treating professionals stated, (1) "Conners CPT3 computer testing results [] states that the scores are 'associated with a very high likelihood of having a disorder' such as ADHD." Ex. SJ-01; (2) "The TOVA was administered. The results are not within normal limits and the overall pattern of performance suggests an attention problem, including ADHD." Ex. SJ-02; and (3) "The CAARS was also administered. The results indicated ADHD predominantly Inattentive presentation." *Id.*

11. Plaintiff's ADHD assessment from December 2015 indicate that Plaintiff constantly has difficulty sustaining attention to tasks at work or in school, constantly has difficulty with tasks requiring persistence or organization (schoolwork or job duties), constantly has problems with procrastination/avoidance of tasks, constantly distracted by noise or activity, and constantly is forgetful in daily activities. Ex. SJ-03, at 3.

12. Plaintiff's medical records also indicate that Plaintiff was struggling with completing exams due to compulsively checking that he has completed previous answers, was very worried about undermining his score by not completing the exams in the time allowed so he pulled his eyelashes out to the point where he wouldn't have any left. Ex. SJ-04, at 35.

2

13. RUSM counseling records indicate that Plaintiff experienced "running out of time" on his exams. Ex. SJ-05. These records also show that "towards the end" of exams, Plaintiff would "los[e] his momentum and just circle questions without really thinking of the answers." Ex. SJ-06.

14. RUSM admitted that Plaintiff is an otherwise qualified individual. *Compare* Compl. ¶ 86, *with* Answer ¶ 87.

15. After Plaintiff failed his fifth semester in December 2015, he executed a ROI Agreement[1] with the RUSM Counseling Center. Ex. SJ-07; Answer ¶ 17.

16. The ROI Agreement states that Plaintiff "authorize[d] RUSM Counseling Center" to discuss his "confidential information" with "RUSM Administration" for the purpose "**to provide information <u>relevant</u> to academic <u>accommodations</u>**" and authorized them to do so with "<u>**ongoing**</u> **communication**." Ex. SJ-07 (emphasis added). "RUSM admits that this would have permitted the Counseling Center, including the psychiatrist treating Plaintiff, to discuss his ADHD with the school's Accommodations Coordinator[.]" Answer ¶ 17.

17. When Plaintiff signed the ROI Agreement, he verbally asked Dr. Sharma and Mr. Cuffy to tell RUSM administration (1) that he needed extended testing time for a suspected attention problem that needed to be diagnosed and (2) that he needed an earlier flight home to help him emotionally with failing the semester. Awodiya Decl. ¶ 3.

18. In Dr. Sharma's own words, he stated, "I'm the one -- or the doctors make the request for accommodation, which is time-and-a-half. You get extra time. We actually put it we want the student to get the accommodation[.]" Sharma Dep. 37:17-21.

19. Dr. Sharma admitted that he noticed Plaintiff's attention/concentration symptoms, including, constantly has difficulty sustaining attention to tasks, constantly has difficulty with tasks

---

[1] The term "ROI Agreement" refers to the Release of Information Consent Agreement.

requiring persistence or organization, constantly distracted by noise or activity, and constantly forgetful in daily activities. Sharma Dep. 12:9-21. Dr. Sharma stated, "what I saw was evidence of ADHD that required, you know, testing and confirmation." *Id.* 13:1-3. Dr. Sharma admitted that he noticed Plaintiff's symptoms in "December 2015." *Id.* 13:19-24.

20. Dr. Sharma further admitted that he noticed Plaintiff's symptoms to the "extent" that Dr. Sharma "recommended an assessment for the ADHD," when Plaintiff signed the ROI Agreement "for the release of information relative to academic accommodations." Sharma Dep. 73:1-8.

21. Dr. Sharma further admitted that Plaintiff's "ADHD symptoms that [he] observed in December 2015" were "relevant to academic accommodations." Sharma Dep. 74:13-22.

22. Dr. Sharma admitted that he was "informed that [P]laintiff was running out of time on his exams." Sharma Dep. 23:7-9. Dr. Sharma further admitted that he believed that "[P]laintiff's ADHD, specific to him, was significantly limiting his ability to complete his exams in the time allowed." *Id.* 20:19-22.

23. Dr. Sharma further stated, "did I prescribe the stimulant [Ritalin] because the student needed extra time? That is part of the problem that ADHD has, that it causes the student to take longer. So the medication would help that. So, yes, that's correct." Sharma Dep. 39:14-19.

24. Dr. Hayse told Plaintiff that he could accommodate Plaintiff for future exams but not for exams that Plaintiff had already taken. Awodiya Decl. ¶ 5. Dr. Hayse told Plaintiff that he would contact Mr. Cuffy about the suspected attention problem so that Plaintiff could receive extended testing time for future exams. *Id.* ¶ 6.

25. Mr. Cuffy's counseling note reads, "[Plaintiff] returned to office after talking to Dr. Hayes [*sic*] in Student Affairs regarding his academic situation. I subsequently received an email

4

from Dr. Hayes [*sic*] requesting that we talk at some point re: the client. After the meeting with Dr. Hayes, [*sic*] the client was very disappointed but stable." Ex. SJ-11.

26. When Plaintiff returned to Dominica to repeat his fifth semester in January 2016, Plaintiff provided the RUSM Counseling Center with an assessment of his ADHD that was performed by Dr. Mauricio in the United States. Mr. Cuffy's counseling note reads, "[Plaintiff] was assessed in the U.S. for ADHD; he provided us with a copy of the results which are scanned in his file. … Clinical assessment: Academic problems; repeating semester 5." Ex. SJ-13.

27. Mr. Cuffy's counseling notes also reads, "that towards the end of the exam [Plaintiff] lost his momentum and just circle questions without really thinking of the answers." Ex. SJ-06.

28. Plaintiff's first attempt to pass the NBME CBSE took place in Dominica and his second through fifth attempts took place in the United States of America. Answer ¶ 23.

29. On June 12, 2017, Plaintiff's independent psychiatrist and psychotherapist informed Dean Owen that Plaintiff's anxiety and checking rituals inherent to his condition have been adversely affecting his academic performance in medical school. Ex. SJ-15.

30. Plaintiff also informed Dean Owen that he never finished an exam on time and he was compelled to back track answers just to make sure they didn't disappear five seconds after he went to the next question, explaining some of the ways that OCD has influenced his academic performance. Ex. SJ-17.

31. RUSM admits "that extended testing time for the NBME CBSE is a reasonable accommodation for disabled students that need extended testing time." Admis. No. 58.

32. RUSM admits "that RUSM did not provide Plaintiff with extended testing time for the NBME CBSE." Admis. No. 16.

33. Before Plaintiff applied and enrolled into RUSM's medical degree program, RUSM published a statement in its Admission Requirements section of its website" stating:

> It is the policy and practice of the University to comply with the Americans with Disabilities Act as applicable and practical in Dominica.

Compl. ¶ 106 (hereinafter referred to as the "ADA-Statement"); *Compare* Answer ¶ 107.

34. Dr. Hayse—who made the final decision and oversaw the academic accommodations process—had no knowledge of any imposed compliance with the ADA nor the RA in Dominica. Hayse Dep. 14:11-18. In fact, Dr. Hayse even went as far as to say that they were not "beholden to" the ADA, rather, they just used it as a "guideline." Hayse Dep. 10:14-17.[2]

35. RUSM also did not have a policy or requirement instructing its faculty to comply with the RA in Dominica, Hayse Dep. 14:11-18, 10:14-11:6, 11:17-21.

36. Plaintiff asked Mr. Stewart-Fulton if "faculty at RUSM" was required "to comply" with Title III of the ADA and the RA. Fulton Dep. 31:14-21. Mr. Stewart-Fulton answered, "[i]n reference to when you were enrolled and the campus was located on Dominica, we were not required to comply with the ADA." *Id.* 32:1-4. He further answered that they simply "abided by the spirit" of the ADA and the RA. *Id.* 32:5-7. Mr. Stewart-Fulton further admitted that there was no policy "to comply" and therefore was not required to comply with the ADA and RA in Dominica. *Id.* 32:12-19.

37. RUSM "focus their marketing efforts on attracting highly qualified, primarily U.S. and Canadian applicants[.]" Ex. SJ-20, at 19. RUSM admits that it published information for prospective students on its website, including in the Admissions Requirements section." Answer ¶ 106.

---

[2] The term "ADA" refers to Title III of the Americans with Disabilities Act, 42 U.S.C. § 12182. The term "RA" refers to Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794.

38. Plaintiff had "serious concerns about attending a medical school ... located in a less developed nation than the U.S." Awodiya Decl. ¶ 9. "The ADA-Statement about RUSM's ADA compliance was one of the most important factors in [Plaintiff's] decision to leave the U.S. to become a student at RUSM in Dominica." Awodiya Decl. ¶ 14-15; *Id.* ¶ 10-12.

39. Plaintiff "thought the ADA-Statement was only applicable to U.S. students, as opposed to non-U.S. students, because of the word 'Americans' in 'Americans with Disabilities Act.'" Awodiya Decl. ¶ 16. "[Plaintiff] didn't know that the ADA had different divisions or parts and that geographical applicability could differ among any parts of the ADA." *Id.* ¶ 18.

DATED this 7th day of December, 2018:

<div style="text-align: right;">
Respectfully submitted,

By: Oluwamuyiwa Awodiya, *pro se* litigant
15005 Dahlia Dr.
Bowie, MD 20721
(240) 602-1836
Plaintiff, in Proper Person
</div>

PRIORITY ★ MAIL EXPRESS
OUR FASTEST SERVICE

U.S. POSTAGE PAID
PME 2-Day
BOWIE, MD
20716
DEC 08, 18
AMOUNT
**$24.70**
R2304M115731-05

1007 33128-1801

EK557426165US

UNITED STATES POSTAL SERVICE® | PRIORITY ★ MAIL ★ EXPRESS™

WRITE FIRMLY TO MAKE ALL COPIES LEGIBLE

**CUSTOMER USE ONLY**

FROM: (PLEASE PRINT) PHONE ( 240 602-1836
Oluwamuyiwa Awodiya
15005 Dahlia Dr.
Bowie, MD 20721

PAYMENT BY ACCOUNT (if applicable)

DELIVERY OPTIONS (Customer Use Only)

☐ SIGNATURE REQUIRED Note: The mailer must check the "Signature Required" box if the mailer: 1) Requires the addressee's signature; OR 2) Purchases additional insurance; OR 3) Purchases COD service; OR 4) Purchases Return Receipt service. If the box is not checked, the Postal Service will leave the item in the addressee's mail receptacle or other secure location without attempting to obtain the addressee's signature on delivery.
Delivery Options
☐ No Saturday Delivery (delivered next business day)
☐ Sunday/Holiday Delivery Required (additional fee, where available*)
☐ 10:30 AM Delivery Required (additional fee, where available*)
*Refer to USPS.com® or local Post Office™ for availability.

TO: (PLEASE PRINT) PHONE ( )
Wilkie D. Ferguson, Jr. U.S. Courthouse
400 North Miami Avenue, Room 8N09
Miami, FL 33128

ZIP + 4® (U.S. ADDRESSES ONLY)
3 3 1 2 8 -

■ For pickup or USPS Tracking™, visit USPS.com or call 800-222-1811.
■ $100.00 insurance included.

**ORIGIN (POSTAL SERVICE USE ONLY)**

| ☐ 1-Day | ☐ 2-Day | ☐ Military | ☐ DPO |
|---|---|---|---|
| PO ZIP Code: 20716 | Scheduled Delivery Date (MM/DD/YY): 12/10/18 | Postage: $ 24.70 | |
| Date Accepted (MM/DD/YY): 12/8/18 | Scheduled Delivery Time: ☐ 10:30 AM ☐ 3:00 PM ☐ 12 NOON | Insurance Fee: $ | COD Fee: $ |
| Time Accepted: 10:17 ☐ AM ☐ PM | 10:30 AM Delivery Fee: $ | Return Receipt Fee: $ | Live Animal Transportation Fee: $ |
| Weight: ☐ Flat Rate 1 lbs. 10.60 ozs. | Sunday/Holiday Premium Fee: $ | Total Postage & Fees: $ 24.70 | |
| | Acceptance Employee Initials: RV | | |

**DELIVERY (POSTAL SERVICE USE ONLY)**

| Delivery Attempt (MM/DD/YY) | Time | Employee Signature |
|---|---|---|
| | ☐ AM ☐ PM | |
| | ☐ AM ☐ PM | |

LABEL 11-B, JANUARY 2014 PSN 7690-02-000-9996 3-ADDRESSEE COPY

USMS INSPECTED

WHEN USED INTERNATIONALLY, A CUSTOMS DECLARATION LABEL MAY BE REQUIRED.

EMS

* Money Back Guarantee to U.S., select APO/FPO/DPO, and select International destinations. See DMM and IMM at pe.usps.com for complete details.
† Money Back Guarantee for U.S. destinations only.

EP13F July 2013 OD: 12.5 x 9.5

PS10001000006

VISIT US AT USPS.COM®
ORDER FREE SUPPLIES ONLINE

UNITED STATES POSTAL SERVICE

