UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

OLUWAMUYIWA AWODIYA,  CASE NO. 0:18-cv-60482-KMM-AOV

    Plaintiff,

v.

ROSS UNIVERSITY SCHOOL OF
MEDICINE, SCHOOL OF VETERINARY
MEDICINE LIMITED,

    Defendant.
_____/

**DEFENDANT'S RESPONSE IN OPPOSITION TO
PLAINTIFF'S SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT**

Defendant Ross University School of Medicine, School of Veterinary Medicine Limited ("RUSM"), by counsel, hereby submits its response in opposition to the Second Motion for Partial Summary Judgment [ECF No. 102] (the "Motion") filed by plaintiff Oluwamuyiwa Awodiya ("Plaintiff").

**I.  INTRODUCTION**

In this action, Plaintiff brings ten (10) causes of action against RUSM alleging violation of federal and Florida state statutes, including Title III of the Americans with Disabilities Act ("ADA"), and state law claims for breach of contract, breach of the covenant of good faith and fair dealing, fraudulent inducement, negligent misrepresentation, and breach of fiduciary duty, all stemming from the same alleged conduct involving Plaintiff's dismissal from RUSM. Plaintiff now moves for partial summary judgment on his federal failure to accommodate claims, his breach of fiduciary duty claim, his fraudulent inducement claim and his negligent misrepresentation claim. Plaintiff's Motion should be denied because he has failed to meet his burden of establishing

that there is no genuine issue of material facts and because he is not entitled to summary judgment as a matter of law.

## II.  FACTUAL BACKGROUND

Plaintiff is a former medical school student who attended RUSM from May 2014 through April 2017.  *See* RUSM's Statement of Material Facts in Opposition to Plaintiff's Motion for Summary Judgment ("RUSM SOF"), a copy of which is being filed simultaneously with this Opposition, at ¶ 40.  Prior to attending RUSM, Plaintiff completed college in three years at Morgan State University where he graduated with a Bachelor of Science degree and majored in Biology with a 3.45 grade point average.  *Id.* at ¶40.  Upon deciding to attend medical school, Plaintiff sat for the Medical College Admission Test ("MCAT") and then applied to medical school.  *Id.* at ¶ 40.

Plaintiff contends that while applying to RUSM, he reviewed and relied on the following statement on RUSM's website:

> It is the policy and practice of the University to comply with the Americans with Disabilities Act as applicable and practical in Dominica.

[ECF No. 47, at ¶ 106].  However, the record evidence shows that at the time of applying, Plaintiff was not disabled and had no knowledge of the provisions of the Americans with Disabilities Act.  RUSM SOF, at ¶ 38**.**

Plaintiff was accepted into RUSM.  *Id.* at ¶ 40.  Plaintiff successfully completed his first four semesters at RUSM but began struggling with his coursework during his fifth semester.  *See* RUSM SOF, at ¶¶ 41-46 and **Exhibit 8**.  During his fifth semester, Plaintiff started suffering from depression and self-harm ideations after learning that his girlfriend was being unfaithful.  *Id.* at ¶¶ 41-48.  Dr. Davendranand Sharma and McMillan Cuffy, mental health counselors with RUSM's Counseling Center, began treating Plaintiff on or about December 8, 2015.  *Id.* at ¶¶ 48.

2

Because of Plaintiff's emotional state, Dr. Sharma and Mr. Cuffy made arrangements to have Plaintiff return to the United States early for his Christmas break. *Id.* at ¶¶ 48-49. *See also* [ECF No. 102, SJ-10]. In order to facilitate this action plan, Plaintiff executed a Release of Information Consent form, which granted the counselors permission to speak to RUSM administration about Plaintiff. *Id.* at ¶ 50. *See also* [ECF No. 101 at ¶ 17]. At the time of execution of that consent form, Plaintiff was not yet diagnosed with any mental health disabilities. As Dr. Sharma testified in his deposition:

> Q. The purpose of this document for academic accommodations—for information relevant to academic accommodations?
> . . .
> A. … This document was not for releasing information about accommodation, because there was no request for accommodations from me in December 2015.

RUSM SOF, at ¶ 52 (testifying that the consent form was related to arranging an early return home for Plaintiff from the island). The record evidence shows that Plaintiff did not make any request for accommodations. *Id.* at ¶¶ 63, 71.

Upon returning to Dominica for his repeat fifth semester in January 2016, Plaintiff continued receiving treatment from the RUSM Counseling Center. *Id.* at ¶¶ 60-61. After receiving treatment from his primary physicians in the United States, Dr. Sharma and Mr. Cuffy ran diagnostic tests with Plaintiff. [ECF No. 62 ¶¶ 34-35]. An Attention Deficit Disorder Without Mention of Hyperactivity ("ADHD") diagnosis was made by RUSM on January 18, 2016. RUSM SOF at ¶¶ 19, 61. *See also* [ECF No. 62, at ¶ 37]. Upon being diagnosed, Plaintiff failed to make a request for accommodations. RUSM SOF, at ¶ 63. The record evidence shows that Plaintiff did not provide any documentation to RUSM: 1) identifying his disabilities; 2) requesting accommodations; or 3) identifying any substantial limitations as a result of his disabilities. *Id.* at ¶ 71.

Once students are diagnosed, the record shows that students seeking an academic accommodation have a responsibility to obtain a thorough written evaluation from an appropriate professional, documenting the presence, extent, and ramifications of the disability. RUSM SOF, at ¶¶ 64-68. The process for applying for accommodations, found in the Student Handbook, also states that "[t]he documentation should explain what specific types of accommodation the evaluator believes might be most helpful in offsetting the effects of the disability to an acceptable extent (in the medical school environment, if possible.)." *Id.* at ¶ 68. Students are advised vis-à-vis the Student Handbook how to apply for accommodations. *Id.* at ¶ 66. Specifically, "Foundations of Medicine Requests for accommodations during the foundational science portion of the curriculum should be submitted in writing to the Accommodations Coordinator for Foundations of Medicine." *Id.*

A student requesting an accommodation would need to apply in writing by completing an application for academic accommodations, which is a specific form that is provided by the Accommodations Office and is available in the online student portal. *Id.* at ¶¶ 66-68, 70. According to Matthew Stewart-Fulton, the Accommodations Coordinator for Foundations of Medicine at RUSM and the employee who is primarily responsible for academic accommodations on the Dominica campus:

> Q. Can you define what a request is to you?
>
> A. Under what circumstances?
>
> Q. What do you consider a request? Does the student have to use specific words?
>
> A. To request accommodations, a student has to submit an application for academic accommodations. It will be noted as supporting documentation that is referenced in the application.

RUSM SOF at ¶ 69.

The record also shows that RUSM, through its counselors, would have supported Plaintiff's request for accommodations if he would have actually made a request. As Dr. Sharma testified:

> Q. And he signed the form for the release of information relative to academic accommodations.
>
> A. Yes.
>
> Q. If you noticed these things—
>
> A. Uh-huh.
>
> Q.--how is that not relevant?
>
> A. To what?
>
> Q. Academic accommodations.
>
> A. There's no relevance—this form was done for—for the emotional crisis to get the student back home. Relevance for academic accommodation can only come in place if there is a request. We went over this over and over. Yes, yes, I would support academic accommodation 100 percent, 1,000 percent, 100,000 percent if a request is made. I cannot send details of a diagnosis to anybody unless there's a request to send it and for a purpose. It's not my opinion. It is what the plaintiff wants. He wants accommodations, put it in writing. It's done. It's granted. The university does not deny students accommodations once documentation is adequate.

*Id.* at ¶ 72. As Mr. Cuffy testified:

> Q. Did you receive a request from the accommodations office for information pertaining to Mr. Awodiya?
>
> A. No.
>
> Q. Had you gotten such a request, would you have supported it?
>
> A. Yes, I would.

*Id.* Plaintiff failed to make such a request. As Mr. Stewart-Fulton testified:

> Q. Did Mr. Awodiya ever submit this packet of information to you?
>
> A. I do not have a record of this in my files.
>
> Q. If one had been submitted by Mr. Awodiya, would it have been kept in your files?

5

    A. It would have, yes.

*Id.* at ¶ 71.

### III. LEGAL STANDARD

A court may only grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is genuine if a reasonable trier of fact could return judgment for the non-moving party. *See Ali v. Dist. Dir., U.S. Citizenship & Immigration Servs.*, 209 F. Supp. 3d 1268, 1271 (S.D. Fla. 2016). A fact is material if it might affect the outcome of the suit under the governing law. *Id.* "The moving party has the burden of showing the absence of a genuine issue as to any material fact, and in deciding whether the movant has met this burden the court must view the movant's evidence and all factual inferences arising from it in the light most favorable to the nonmoving party." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997).

When determining if a non-moving party has met its burden, the court must stop short of weighing the evidence and/or making a determination regarding the credibility of the truth of the matter. *Tipton v. Bergrohr GBMH Siegen,* 965 F.2d 994, 999 (11th Cir. 1993). The Court must believe the evidence presented by the non-moving party and draw all justifiable inferences in its favor. *Id.* Even where the facts are undisputed, if reasonable minds could differ on the inferences arising from them, summary judgment should be denied. *Id.*

### IV. ARGUMENT

#### A. Plaintiff Cannot Meet His Burden of Establishing that Summary Judgment is Appropriate on His Failure to Accommodate Claims

To succeed on his failure to accommodate claims, including both his Title III ADA claim and his claim under Section 504 of the Rehabilitation Act, Plaintiff must demonstrate that he (1) has a disability; (2) is a "qualified individual" under 42 U.S.C. § 12112(a); and (3) was

discriminated against because of his disability by failing to receive an accommodation. *Hetherington v. Wal-Mart, Inc.,* 511 Fed. Appx. 909, 912 (11th Cir. 2013); *Portales v. Sch. Bd. of Broward County*, Case Number: 16-62935-CIV-Moreno, 2017 WL 4402534, at *4 (S.D. Fla. Oct. 2, 2017).

    i. *Plaintiff was Not Disabled as Defined by Statute.*

To prevail with his ADA claim, Plaintiff must show that his disability is one that is recognized under the statute and that the impairment restricts important life activities in comparison to most people. *Forbes v. St. Thomas Univ., Inc.*, 768 F. Supp. 2d 1222, 1229 (S.D. Fla. 2010),

This analysis can be broken down into three parts. First, Plaintiff must show that he suffers from a physical or mental impairment. *Id.* Second, the Court must evaluate the facts concerning Plaintiffs' life activities affected by his impairment to determine if they constitute a "major" life activity. *Id.* If so, the Court then fuses the first two parts and asks whether Plaintiff's impairment substantially limits a major life activity, which is the third and final component of the analysis. *Id. (citing Rossbach v. City of Miami*, 371 F.3d 1354, 1357 (11th Cir. 2004)).

Plaintiff alleges that he is disabled because his ADHD "substantially limits" him from concentrating. [ECF No. 102 at 2-3]. "[T]he ADA requires those claiming the Act's protection … to prove a disability by offering evidence that the extent of the limitation [caused by their impairment] in terms of their own experience … is substantial." *Id.* (citing *Toyota Motor Mfg., Kentucky, Inc. v. Williams,* 534 U.S. 184, 198 (2002)). The Supreme Court has held that to be "substantially" limiting, the impairment's impact on the major life function must be permanent or long term. *Id.*

    a. *Plaintiff is Not Substantially Limited in Concentrating*

It is black letter law that determining whether a "plaintiff is substantially limited in a major life activity is a question of fact for a jury." *Dwyer v. Ethan Allen Retail, Inc.*, 528 F. Supp. 2d 1297, 1302 (S.D. Fla. 2007). *See also Kaw v. Sch. Dist. of Hillsborough County*, 434 Fed. Appx. 858, 859 (11th Cir. 2011). Whether or not a limitation is "substantial" is not a legal question. *Id.* It is a matter of degree and thus a question of fact to be determined by the jury. *Id.* Accordingly, Plaintiff cannot meet his burden of establishing that he is entitled to summary judgment as a matter of law.

Even if summary judgment were appropriate on this issue, Plaintiff has not cited facts establishing a "substantial" limitation as a matter of law. In fact, aside from his own self-serving declaration, which standing alone is insufficient to support summary judgment, Plaintiff has not cited to any evidence that his medical conditions "substantially" limit a major life activity. *Baum v. Metro Restoration Services, Inc.,* 3:15-CV-787-CRS, 2018 WL 2970756, at *4 (W.D. Ky. June 13, 2018) (A plaintiff "cannot rely on lay testimony to prove that he has any medical conditions or that his alleged conditions substantially limit" a major life activity. … These are questions beyond the realm of common experience and only can be answered by an expert. …"). Plaintiff has not designated any expert witness on this or any other matter and the record is completely bare of any evidence establishing that a substantial limitation exists. Plaintiffs' motion for summary judgment must be denied on this basis. *Id.*

To the contrary, there is significant evidence on the record that Plaintiff was not "substantially" limited in "concentrating" or any other major life activity. For instance, Plaintiff passed many tests throughout his academic career without any type of accommodation. RUSM SOF, at ¶ 38. Plaintiff graduated from Morgan State University with a 3.45 Grade Point Average and a Bachelor of Science in Biology without any type of accommodation. *Id.* at ¶ 40. Plaintiff

8

performed well enough on the MCAT, without accommodation, to gain admission into medical school. *Id.* at ¶ 40. Plaintiff passed four semesters of medical school without accommodations. *Id.* at ¶ 41. Plaintiff also passed the United States Medical Licensing Examination Step 1 Examination without accommodations. *Id*. at ¶ 85; [ECF No. 62, at ¶ 64]. Plaintiffs' ability to achieve these academic milestones without accommodations are all facts to be weighed by the jury to determine whether Plaintiff was "substantially" limited from concentration or any other major life activity. *See Bercovitch v. Baldwin Sch., Inc*., 133 F.3d 141, 155-56 (1st Cir. 1998) (holding that the plaintiff, who was diagnosed with ADHD, was not "disabled" under the ADA because his learning disability did not affect his academic success, which did not fall below the average student of his age); *Gonzales v. Nat'l Bd. of Med. Examiners,* 225 F.3d 620, 630 (6th Cir. 2000) ("The question of whether a certain form of accommodation (i.e., more testing time) is required or appropriate for a given disability is a question entirely separate from whether the individual has a 'disability' in the first place.").

In ruling on a motion for summary judgment the Court must view all evidence in favor of the non-moving party and draw all reasonable inference in its favor. *Tipton,* 965 F.2d at 999. The record is completely devoid of any admissible evidence establishing that a substantial limitation exists. Therefore, Plaintiffs' motion for summary judgment as to the claims alleging violations of Title III of the ADA and Section 504 of the Rehabilitation Act must be denied.

   ii.   *Plaintiff Cannot Establish that He is Otherwise Qualified*

Plaintiff cannot establish that he is "otherwise qualified" as contemplated by the ADA and the Rehabilitation Act. To prove that he is "otherwise qualified" Plaintiff must show that, with or without reasonable accommodation, he was able to perform the essential requirements to graduate from RUSM. *See* 42 U.S.C. § 12131(2). Put another way, Plaintiff must present sufficient

9

47293637;6

evidence to show that he could satisfy the program's necessary requirements, or that any reasonable accommodation by the school would enable him to meet these requirements. Plaintiff has not presented evidence that he is "otherwise qualified."

RUSM's Student Handbook states that:

> Candidates must possess the emotional health required for the full utilization of their intellectual abilities, for the exercise of good judgment, for the prompt completion of all responsibilities attendant to the diagnosis and care of patients, for the development of effective relationships with patients and for effective functioning as a member of the health care team. Candidates must be able to tolerate physically taxing workloads and function effectively under stress. They must be able to adapt to changing environments, display flexibility and learn to function in the face of uncertainties inherent in the clinical problems of patients.

RUSM SOF, at ¶ 64. *See also Yaldo v. Wayne State Univ.*, 266 F. Supp. 3d 988, 1012 (E.D. Mich. 2017) (finding a Plaintiff was not "otherwise qualified" if he failed to satisfy the medical school's professionalism requirements); *Zimmeck v. Marshall Univ. Bd. of Governors*, 106 F. Supp. 3d 776, 782 (S.D. W. Va. 2015) (finding that a student diagnosed with depression unqualified under the ADA because he failed to meet the professionalism requirements of the medical school).

In *Yaldo,* a plaintiff who suffered from severe anxiety and depression brought an action against his medical school for discrimination under the Rehabilitation Act and the ADA. 266 F. Supp. 3d. at 1011-1012. The court granted summary judgment in the defendant's favor after finding that the plaintiff was not "otherwise qualified" as defined in the Rehabilitation Act and ADA because he failed to satisfy the medical school's professionalism requirements. *Id.* In reaching this holding the Court looked to the medical school's Policy and Procedure Manual which had language substantially similar to the Student Handbook in this case. *Id.* The Policy and Procedure Manual in *Yaldo* stated:

10

> The candidate must possess the emotional health required for full utilization of his/her intellectual abilities, the exercise of good judgment, the prompt completion of all responsibilities attendant to the diagnosis and care of patients, and the development of mature, sensitive, and effective relationships with patients. The candidate must be able to tolerate physically taxing workloads and to function effectively under stress. He/she must be able to adapt to changing environments, to display flexibility, and to learn to function in the face of uncertainties inherent in the clinical problems of patients. Compassion, integrity, concern for others, interpersonal skills, interest and motivation are all personal qualities that will be assessed during the admissions and educational processes.

*Id.*

In *Yaldo,* the Court noted that the medical school's Policy and Procedure Manual required "not only that students exercise good judgment, but also that students be able to function effectively under stress." *Id.* The Court then looked at the plaintiff's medical records and noted that the plaintiff's therapist described Plaintiff's anxiety as causing him to react impulsively and make poor decisions. *Id.* Thus, "by the evidence Plaintiff submitted, he did not satisfy the Technical Standards the medical school required because he could not exercise good judgment while under stress." *Id.* The Court also noted that the Plaintiff's therapist found that he had "difficulty for assuming responsibility for his role in the issues that are occurring in his academic program ... and his personality prevents him from acknowledgement of his responsibility at times and therefore he feels victimized." *Id.* The Court granted the defendant's motion for summary judgment because Plaintiff did not comply with the school's professionalism policy and "failed to carry the burden of demonstrating that he was otherwise qualified." *Id.*

Here, the Student Handbook requires not only that students possess the emotional health required for the full utilization of their intellectual abilities, but also that they exercise good judgment. RUSM SOF, at ¶ 64. It also requires that students tolerate physically taxing workloads and function effectively under stress. *Id.* Plaintiff has not shown that he satisfies the technical

11

standards of the medical school.  The evidence shows that Plaintiff was suffering from depression and had suicidal ideations due to a relationship break-up with a female student who was unfaithful, familial relationship issues and general loneliness.  *See* [ECF No. 102, Exhibit SJ-10].  Plaintiff also reported being "constantly forgetful in daily activities" and having constant difficulty with tasks requiring persistence or organization, including schoolwork and job duties.  *See* [ECF No. 102, Exhibit SJ-03].  Subsequently, Plaintiff also reported to a physician that he has been pulling his eyelashes and chin hairs out.  *See* [ECF No. 102, Exhibit SJ-04].

In *Southeastern Community College v. Davis*, 442 U.S. 397, 405 (1979), the Supreme Court expressly rejected an interpretation of "otherwise qualified" that would prohibit an institution from considering an individual's limitations when determining that person's eligibility for an academic program.  The Supreme Court stated that "an otherwise qualified person is one who is able to meet all of a program's requirements in spite of his handicap." *Id.* at 406.  The law does not require an academic program to compromise its integral criteria to accommodate a disabled individual.  *Id. See also Bercovitch v. Baldwin Sch., Inc.,* 133 F.3d 141, 154 (1st Cir. 1998).  Courts are also very deferential with respect to the academic judgment of universities.  *See, e.g., Regents of Univ. of Mich. v. Ewing*, 474 U.S. 214, 225 (1985) ("When judges are asked to review the substance of a genuinely academic decision . . . they should show great respect for the faculty's professional judgment."); *Bd. of Curators of the Univ. of Mo. v. Horowitz*, 435 U.S. 78, 90 (1978) ("[T]he determination whether to dismiss a student for academic reasons requires an expert evaluation of cumulative information and is not readily adapted to the procedural tools of judicial or administrative decision-making.").  "It is equally clear that '[u]niversity faculties must have the widest range of discretion in making judgments as to academic performance of students. …'" *Forbes v. St. Thomas Univ., Inc.*, 768 F. Supp. 2d 1222, 1232 (S.D. Fla. 2010).  As the Court

recently held, "whether a student is qualified to be a physician is an academic judgment that requires an expert evaluation of cumulative information and is not readily adapted to the procedural tools of judicial or administrative decision making." *See* Order on Motion for Judgment on the Pleadings [ECF No. 105] at 4 (*citing Jallali v. Nova Se. Univ., Inc.,* 992 So. 2d 338, 342 (Fla. Dist. Ct. App. 2008)).

"A school's code of conduct is not superfluous to its proper operation; it is an integral aspect of a productive learning environment." *Bercovitch*, 133 F.3d 141 at 154. Furthermore, Plaintiff has offered no evidence that additional time would have enabled him to pass the National Board of Medical Examiners Comprehensive Basic Science Exam (the "COMP" exam) that he failed five times. Therefore, Plaintiff cannot be "otherwise qualified" unless, with reasonable accommodations, he can meet [the] requirements. *Id.*

### iii. *Plaintiff Cannot Establish that He Made an Actionable Request*

Under the ADA and Rehabilitation Act, the duty to provide a reasonable accommodation is not triggered unless a specific demand for an accommodation has been made. *Gaston v. Bellingrath Gardens & Home, Inc.,* 167 F.3d 1361, 1363 (11th Cir. 1999).

As an initial matter, RUSM disputes that Plaintiff made any request for accommodation for extended testing time on any of his exams, including his COMP exam. Aside from the Plaintiff, none of the other witnesses deposed in this case recall Plaintiff making any request for accommodation (written or oral). Moreover, there is no documented written request for accommodation in this case. Plaintiff attempts to circumvent this reality by claiming that a Release of Information Consent Form is an accommodation request. [ECF No. 101, at ¶ 17]. However, nothing in the Release of Information Consent Form asks for an accommodation. The Release of Information Consent Form only provides permission for RUSM's Counseling Center to send

information to the RUSM administration to support a request by Plaintiff to leave the campus early for Christmas break due to Plaintiff's emotional state. RUSM SOF, at ¶ 16.

Even if Plaintiff made an oral request for an accommodation – and to be clear, RUSM's witnesses do not recall ever receiving such a request – Plaintiff cannot establish that he made an *actionable* request under the ADA. In this case, RUSM's Student Handbook lays out the proper procedure for applying for an accommodation. RUSM SOF, at ¶¶ 66-67. Specifically the Student Handbook states: "Foundations of Medicine Requests for accommodations during the foundational science portion of the curriculum should be submitted ***in writing to the Accommodations Coordinator for Foundations of Medicine***." *Id.* at ¶ 66 (emphasis added). It further provides that to "qualify for accommodation, a student must identify him/herself to the Accommodation Coordinator for Foundations of Medicine or the Director of Office of Consultation and Support Services for IMF/Clinical Sciences." *Id.* at ¶ 67. It is the responsibility of students, including Plaintiff, "to obtain a thorough written evaluation from an appropriate professional, documenting the presence, extent, and ramifications of the disability." *Id.* at ¶ 68. "The documentation should explain what specific types of accommodation the evaluator believes might be most helpful in offsetting the effects of the disability to an acceptable extent (in the medical school environment, if possible.)." *Id*. By Plaintiffs' own acknowledgement in his alleged statement of facts, he did not follow this procedure.

Neither an oral request by Plaintiff nor the completion of a Release of Information Consent Form would qualify as a request pursuant to the Student Handbook. *Id.* at ¶ 69. Not only is this a sufficient basis to deny Plaintiff's Motion on his failure to accommodate claims, it supports summary judgment in RUSM's favor on these claims. *See Varad v. Barshak,* 261 F. Supp. 2d 47, 56 (D. Mass. 2003) (holding that plaintiff failed to state a cause of action for failure to

accommodate because she did not comply with the Board of Bar Examiners' policy requiring requests for testing accommodations to be in a written format made at least seventy-five days prior to date of examination). RUSM will be filing its own motion for summary judgment by the deadline set by the Court.

### B. Plaintiff Cannot Meet His Burden of Establishing that He is Entitled to Summary Judgment on His Breach of Fiduciary Duty Claims

With regards to the breach of fiduciary duty claim, RUSM disputes Plaintiffs' allegation that Plaintiff asked Dr. Sharma and Mr. Cuffy to communicate with RUSM administration on his behalf. In fact, this is an allegation that both Dr. Sharma and Mr. Cuffy deny. RUSM SOF, at ¶¶ 63, 71. This alone creates a genuine issue of material fact.

Equally as important, Plaintiff cannot make out a claim for breach of fiduciary duty as a matter of law. *Morrison v. Univ. of Miami*, Case No. 1:15-cv-23856-UU, 2016 WL 3129490, (S.D. Fla. Jan. 20, 2016). As the Court has held, "a fiduciary duty does not simply arise because of students' status." *Id.* at *7. In *Morrison*, the plaintiff attempted to circumvent a long line of case law supporting this position by arguing that a "special relationship" arose from her "dependency" on the University to handle her complaints of discrimination and retaliation. *Id.* In response, this Court stated that "this reasoning would convert many, if not all, employer/employee relationships into fiduciary relationships, and there is simply no support in the law for such a result." *Id*. The Court dismissed the plaintiff's breach of fiduciary duty claim with prejudice.

The reasoning in *Morrison* is equally applicable here. Plaintiff cannot establish that any fiduciary relationship exists. Plaintiff's motion for summary judgment on his breach of fiduciary duty claim should be denied and his claim should be dismissed as a matter of law.

### C. Plaintiff Cannot Meet His Burden of Establishing that He is Entitled to Judgment As a Matter of Law on His Fraudulent Inducement and Negligent Misrepresentation Claims

Under Florida law, in order to allege a viable cause of action for negligent misrepresentation, a plaintiff must prove that: (i) the defendant made a misrepresentation of material fact that he believed to be true but which was in fact false; (ii) the defendant was negligent in making the statement because he should have known the representation was false; (iii) the defendant intended to induce the plaintiff to rely and on the misrepresentation; and (iv) injury resulted to the plaintiff acting in justifiable reliance upon the misrepresentation. *Simon v. Celebration Co.,* 883 So. 2d 826, 832 (Fla. Dist. Ct. App. 2004) (citing *Johnson v. Davis*, 480 So. 2d 625 (Fla. 1985)).

Similarly, in order to prevail on a claim for fraudulent inducement, a plaintiff must show that: (i) the defendant made a misrepresentation material fact; (ii) the defendant knew or should have known of the falsity of the statement; (iii) the defendant intended for the representation to induce plaintiff to rely on it and act on it; and (iv) the plaintiff suffered injury in justifiable reliance on the representation. *Biscayne Inv. Group, Ltd. v. Guarantee Management Servs., Inc*. 903 So. 2d 251 (Fla. 3d DCA 2005) (*citing Samuels v. King Motor Co. of Ft. Lauderdale*, 782 So. 2d 489 (Fla. 4th DCA 2001)).

Plaintiff contends RUSM made a misstatement on its website by representing: "It is the policy and practice of the University to comply with the Americans with Disabilities Act as applicable and practical in Dominica." As an initial matter, Plaintiff has not stated facts that establish that RUSM made a misrepresentation. RUSM stands by the veracity of the statement made on its website*. Checkers Drive-In Restaurants, Inc. v. Tampa Checkmate Food Servs., Inc.,* 805 So. 2d 941, 944 (Fla. Dist. Ct. App. 2001) (reversing judgment for fraudulent inducement where "there was no evidence, however, that the statement attributed to Mr. Brown in this press

release was false or misleading at the time it was made."). The language clearly states that RUSM will comply with the ADA "as applicable and practical" in Dominica and the evidence supports that RUSM's actions are consistent with this statement.

Moreover, there is no evidence that RUSM intended to induce the plaintiff to rely on the statement or that Plaintiff justifiably relied on the statement. *Tambourine Comerico Int'l S.A. v. Solowsky*, No. 06-20682 CIV, 2007 WL 689466, at *6 (S.D. Fla. Mar. 4, 2007) (holding that "reliance requires a plaintiff to establish that, but for the alleged misrepresentation or omission, the plaintiff would not have entered into the transaction at issue."). Neither Plaintiff nor RUSM knew that Plaintiff suffered from a disability at the time he was admitted into medical school. RUSM SOF, at ¶ 38. Moreover, Plaintiff testified that he never reviewed the ADA prior to the litigation. *Id.* at ¶ 38. *See Checkers Drive-In Restaurants, Inc.*, 805 So. 2d at 943-44 (reversing judgment for fraudulent inducement where there was no evidence that defendant's statement was false or misleading at the time it was made).

Plaintiff cannot establish the absence of a material fact as to whether he actually relied on the statement or whether the statement is actually false. *See Point Blank Sols., Inc. v. Toyobo Am., Inc.*, No. 09-61166-CIV, 2011 WL 13174652, at *5 (S.D. Fla. May 20, 2011) (holding summary judgment is inappropriate where there is a genuine issue of material fact as to whether Plaintiffs relied on Defendants' statements and whether there is truth to Defendants' statements, ultimately concluding "whether such statements were misleading remains a question for a jury to determine."). Therefore, the Motion must be denied as to the fraudulent and negligent inducement claims.

## **CONCLUSION**

WHEREFORE, defendant Ross School of Medicine, School of Veterinary Medicine Limited respectfully requests that this Court enter an Order: (i) denying Plaintiff's Second Motion for Partial Summary Judgment and (ii) granting RUSM such other and further relief as the Court deems just and proper.

Dated: December 21, 2018

    Respectfully submitted,

*/s/Ryan Roman*
MICHAEL C. MARSH
Florida Bar Number: 0072796
Email: michael.marsh@akerman.com
Secondary: sharon.luesang@akerman.com
RYAN A. ROMAN
Florida Bar Number: 0025509
Email: ryan.roman@akerman.com
Secondary: dorothy.matheis@akerman.com
DONNIE M. KING
Florida Bar Number: 101386
Email: donnie.king@akerman.com
Secondary: simone.tobie@akerman.com
OCTAVIA M. GREEN
Florida Bar Number: 119179
Email: octavia.green@akerman.com
Secondary: simone.tobie@akerman.com
**AKERMAN LLP**
98 SE 7th Street, Suite 1100
Miami, FL 33131
Phone: (305) 374-5600
Fax: (305) 374-5095

*Attorneys for Defendant Ross University School of Medicine, School of Veterinary Medicine Limited*

## **CERTIFICATE OF SERVICE**

   I HEREBY CERTIFY that on December 21, 2018 a true and correct copy of the foregoing document was served via CM/ECF on:

Oluwamuyiwa Awodiya
15005 Dahlia Drive
Bowie, Maryland 20721
Telephone: (240) 602-1836
E-mail: drmuyiwa.a@gmail.com

             */s/Ryan Roman*
             Ryan Roman

47293637;6