**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

OLUWAMUYIWA AWODIYA,  CASE NO. 0:18-cv-60482-KMM-AOV

    Plaintiff,

v.

ROSS UNIVERSITY SCHOOL OF
MEDICINE, SCHOOL OF VETERINARY
MEDICINE LIMITED,

    Defendant.
_____/

**DEFENDANT'S STATEMENT OF MATERIAL FACTS IN OPPOSITION TO PLAINTIFF'S SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rule 56.1 of the Local Rules of the United States District Court for the Southern District of Florida, defendant Ross University School of Medicine, School of Veterinary Medicine Limited ("RUSM"), by counsel, hereby submits its response to the Statement of Material Facts [ECF No. 101] filed by plaintiff Oluwamuyiwa Awodiya ("Plaintiff") in support of his Second Motion for Partial Summary Judgment [ECF No. 102] (the "Motion").

**RUSM'S RESPONSE TO PLAINTIFF'S STATEMENT OF MATERIAL FACTS**

    1.    Undisputed.

    2.    Undisputed.

    3.    This paragraph of Plaintiff's Statement of Material Facts calls for a legal conclusion and is not a statement of fact. Whether or not RUSM qualifies as a "place of public accommodation" under 42 U.S.C. § 12181(7)(J) is a legal question.

    4.    Undisputed.

    5.    Undisputed.

    6.    Undisputed.

    7.    Undisputed.

    8.    Undisputed.

    9.    Undisputed.

10. Undisputed that in SJ-01 and SJ-02 Plaintiff refers to notes from Dr. Earl John D. Mauricio dated January 5, 2016 and from McMillan Cuffy dated January 18, 2016 containing the statements that are quoted therein.

11. Undisputed that in SJ-03 Plaintiff self-reported these symptoms in a session with Dr. Mauricio dated December 30, 2015.

12. Undisputed that in SJ-04 Plaintiff self-reported these symptoms on April 18, 2017 after having failed his National Board of Medical Examiners Comprehensive Basic Sciences Exam (the "COMP Exam") for the fifth and final time. This allegation is not material to the determination of this motion because it occurred after the relevant tests. It is also not material because it pertains to an April 2017 diagnosis of Obsessive Compulsive Disorder ("OCD"), a condition that neither Plaintiff nor RUSM were aware of at the time of Plaintiffs' COMP Exams. *See* excerpts from the Deposition Transcript of Oluwamuyiwa Awodiya, attached to the Declaration of Ryan Roman as **Exhibit 1**, at 20:25-21:5; s*ee also* Plaintiff's Amended Response to Defendant's Interrogatories, attached to the Declaration of Ryan Roman as **Exhibit 2**, at ¶ 4.

13. Undisputed that in SJ-05 and SJ-06 Plaintiff self-reported these symptoms on March 11, 2016.

14. Undisputed that RUSM admitted that paragraph of the Answer, which pertains to the Fifth Cause of Action for Violation of Florida Administrative Code 6E-2.004(5)(c)(4), which is not at issue in Plaintiff's Motion. Moreover, this paragraph calls for a legal conclusion and is not a statement of material fact. Finally, in the same Answer [ECF No. 58], RUSM denied that Plaintiff was an otherwise qualified individual in paragraph 48 of its Answer (denying paragraph 47 of the Third Amended Complaint, which pertains to the Section 504, Rehabilitation Act claim) and paragraph 68 of its Answer (denying paragraph 67 of the Third Amended Complaint). With regards to the Title III ADA claim, Plaintiff alleges in paragraph 55 of the Third Amended Complaint that he is a "qualified individual" and in response, RUSM neither admitted nor denied the allegations because it called for a legal conclusion. *See* Answer [ECF No. 58] at ¶ 56.

15. Undisputed that Plaintiff signed a Release of Information Consent form on December 9, 2015.

16. This fact is disputed. First, Plaintiff mischaracterizes the purpose of the Release of Information Consent form. The purpose of the Release of Information Consent form is to give RUSM's Counseling Center permission to send a student's records to the RUSM Administration. *See*

excerpts from the Deposition Transcript of Dr. Davendranand Sharma, attached to the Declaration of Ryan Roman as **Exhibit 3,** at 57:6-16.  It does not serve as a means to request an accommodation.  *Id.*

Second, Plaintiff never submitted a written request for extended testing time to the RUSM Accommodations Office.  *See* excerpts from the Deposition Transcript of McMillian Cuffy, attached to the Declaration of Ryan Roman as **Exhibit 4**, at 104:1-11; *see also* excerpts from the Deposition Transcript of Matthew Stewart-Fulton, attached to the Declaration of Ryan Roman as **Exhibit 5**, at 39:1-7.  At the time Plaintiff executed the Release of Information Consent form, it was in connection to suicidal thoughts and an effort to return to the United States early.  **Exhibit 3**, at 31:22-32:3, 32:10-15; *see also* Release of Information Consent form, [ECF No. 102, Exhibit SJ-07].  Plaintiff signed the Release of Information Consent form to give RUSM's Counseling Center permission to speak with an administrator about helping Plaintiff return to the United States.  *See* **Exhibit 4** at 36:5-17.

Plaintiff's execution of the Release of Information Consent form had no connection to a request for additional testing time.  In fact, Plaintiff executed the Release of Information Consent form before there were any assessments performed or any diagnoses made of ADHD or any other mental impairment.  *See* **Exhibit 3** at 34:9-14, 77:11-13.

17. This fact is disputed.  Neither Dr. Sharma nor Mr. Cuffy recall Plaintiff requesting extended testing time.  **Exhibit 3** at 32:2-15, 35:1-14; **Exhibit 4** at 104:9-14.  In fact, the reason for the earlier flight home was because Plaintiff had expressed idea of self-harm having learned that he failed the semester.  **Exhibit 3** at 46:14-19. Around the same time, Plaintiff executed a Safety Plan due to his self-harm ideations.  A copy of the Safety Plan is attached to the Declaration of Ryan Roman as **Exhibit 6**.

18. This fact is disputed. The testimony is quoted out of context and is not testimony about Plaintiff or any request made by him for an accommodation.  During his deposition, Dr. Sharma testified that students applying for accommodations also need to submit a written application accompanied with adequate documentation to support a request for accommodation. **Exhibit 3** at 88:15-19.    Dr. Sharma further stated that Plaintiff failed to apply for any accommodation.  **Exhibit 3** at 37:9-22; 80:7-19.

19. This fact is disputed.  The testimony is quoted out of context.  Dr. Sharma made clear that although there was evidence of  concentration problems, further testing was necessary to make a

3

diagnosis.  **Exhibit 3** at 12:22-13:3.  Plaintiff was not diagnosed with Attention-Deficit/Hyperactivity Disorder ("ADHD") until January 2016.  [ECF No. 59, at ¶ 37].  *See also* **Exhibit 2** at ¶ 4.

20. This fact is disputed.  The testimony is quoted out of context.  Dr. Sharma testified that the Release of Information Consent form was signed because of Plaintiff's suicidal thoughts and to help facilitate Plaintiff's return to the United States.  **Exhibit 3** at 33:9-21.  Dr. Sharma also testified that the Release of Information Consent form was not done in connection with a request for extended testing time. *Id.*

21. This fact is disputed.  The testimony is quoted out of context.  Dr. Sharma testified that Plaintiff never applied for an accommodation.  **Exhibit 3** at 75:4-6.

22. Undisputed.  However, Dr. Sharma testified that Plaintiff never applied for an accommodation.  **Exhibit 3** at 75:4-6.  Dr. Sharma also testified that there are reasons that students choose not to apply for accommodations, including the stigma that some students believe may be associated with receiving an accommodation.  **Exhibit 3** at 81:4-82:11.

23. Undisputed.

24. This fact is disputed.  Dr. Bryan Hayse does not recall discussing accommodations with Plaintiff in December 2015.  *See* excerpts from the Deposition Transcript of Bryan Hayse, attached to the Declaration of Ryan Roman as **Exhibit 7**, at 15:7-22.

25. Undisputed that in SJ-11 Plaintiff self-reported these symptoms.  However, SJ-11 is quoted out of context.  Prior counseling notes suggest that Plaintiff went to speak with Dr. Hayse about changing his failing grade for the semester.  *See* [ECF No. 102, Exhibit SJ-10].  There is a factual dispute as to the discussion between Dr. Hayse and Plaintiff as Dr. Hayse does not recall the specifics of their conversation.   **Exhibit 7**, at 7:25-8:20.

26. Undisputed that in SJ-13 Plaintiff self-reported these symptoms.  However, Plaintiff never made a proper request for extended testing time for any of his exams, including the COMP Exam. **Exhibit 5** at 39:1-7.

27. Undisputed that in SJ-06 Plaintiff self-reported these symptoms.

28. Undisputed.

29. The content of SJ-15 is undisputed.  However, SJ-15 is quoted out of context.  Although Plaintiff's independent psychiatrist and psychotherapist made these statements, these observations were made after Plaintiff failed the COMP Exam the fifth and final time.  *See* SJ-15.  Thus, this letter is not material to this dispute.

4

30. The content of SJ-17 is undisputed. However, SJ-17 is quoted out of context. SJ-17 was drafted in June 2017, several months after Plaintiff failed the CBSE the fifth and final time. Thus, this letter is not material to this dispute.

31. Undisputed.

32. Undisputed.

33. Undisputed.

34. This paragraph of Plaintiff's Statement of Material Facts calls for a legal conclusion and is not a statement of fact. Whether or not the Title III of the ADA or Section 504 of the Rehabilitation Act apply in Dominica is a legal question.

35. This fact is disputed. This misstates the witness's testimony. RUSM aims to comply with the ADA and Section 504 of the Rehabilitation Act. **Exhibit 7** at 10:2-7. *See also* **Exhibit 5** at 31:20-32:10.

36. This paragraph of Plaintiff's Statement of Material Facts calls for a legal conclusion and is not a statement of fact. Whether or not the Title III of the ADA or Section 504 of the Rehabilitation Act apply in Dominica is a legal question.

37. Undisputed.

38. This fact is disputed. Prior to the litigation, Plaintiff did not know anything about the Americans with Disabilities Act. **Exhibit 1** at 148:13-17. Thus, it could not have been "one of the most important factors in Plaintiff's decision to leave the U.S. to become a student at RUSM in Dominica." Prior to applying to RUSM, Plaintiff was not disabled and in fact passed many tests throughout his academic career without any type of accommodation. **Exhibit 1** at 149:9-14.

39. This fact is disputed. Prior to the litigation, Plaintiff did not know anything about the Americans with Disabilities Act. **Exhibit 1** at 148:13-17. This paragraph of Plaintiff's Statement of Material Facts calls for a legal conclusion and is not a statement of fact. Whether or not the Title III of the ADA or Section 504 of the Rehabilitation Act apply in Dominica is a legal question.

## ADDITIONAL MATERIAL FACTS ESTABLISHING THAT PLAINTIFF IS NOT ENTITLED TO SUMMARY JUDGMENT

### PLAINTIFF'S EMOTIONAL DISTRESS CONTRIBUTES TO HIS FAILURE OF HIS FIFTH SEMESTER AT RUSM

40. Plaintiff attended RUSM from May 2014 to June 2017. A true and correct copy of Plaintiff's transcript from Ross University School of Medicine is attached to the Declaration of Ryan Roman as **Exhibit 8.** Prior to attending RUSM, Plaintiff completed college in three years at

5

Morgan State University.  **Exhibit 1**, at 39:8-10. Plaintiff graduated from Morgan State University with a grade point average of 3.45.  *Id.* at 242:8-10.  Plaintiff successfully sat for the Medical College Admission Test ("MCAT") and applied to medical school.

41. Plaintiff passed his first four semesters of medical school without accommodations. **Exhibit 8**.  Plaintiff's fifth semester at RUSM commenced in September 2015.  **Exhibit 8**.

42. On October 28, 2015, Plaintiff started attending the Counseling Center for "Relationship Distress with Spouse or Intimate Partner."  A true and correct copy of RUSM's Counseling Note dated October 28, 2015, is attached to the Declaration of Ryan Roman as **Exhibit 9**.

43. Plaintiff reported having problems with his girlfriend with whom he had been in a relationship with since his fourth semester at RUSM.  *Id.* According to the counseling notes, Plaintiff's girlfriend cheated on him twice.  *Id.*  After finding out about his girlfriend cheating on him, Plaintiff went to the Health Clinic due to distress from hypertension.  *Id.* Plaintiff admitted that his study patterns were disrupted by his relationship.  *Id.*

44. On November 5, 2015, Plaintiff visited the Counseling Center again for "Relationship Distress with Spouse or Intimate Partner."  A true and correct copy of RUSM's Counseling Note dated November 5, 2015 is attached to the Declaration of Ryan Roman as **Exhibit 10**.

45. Plaintiff failed his fifth semester at RUSM and learned of this fact on or around December 8, 2015.  A true and correct copy of RUSM's Counseling Note dated December 8, 2015 is attached to the Declaration of Ryan Roman as **Exhibit 11**.  RUSM called Plaintiff into the Counseling Center where Plaintiff met with Mr. Cuffy and underwent a suicide assessment.  *Id.* Plaintiff admitted to having self-harm ideations and admitted to having relationship issues.  *Id.*

46. Plaintiff admitted to having similar feelings of self-harm after learning that his girlfriend cheated on him around the same time he took exams for the semester.  *Id.*

47. As a result of his self-harm ideations, Plaintiff signed a Safety Plan on December 8, 2015.  **Exhibit 6**.  *See also* **Exhibit 1** at 97:3-97:14. By signing the Safety Plan, Plaintiff agreed not to attempt to cause harm to himself and agreed to participate in mental health treatment.  **Exhibit 6**.

48. Plaintiff visited the Counseling Center again on December 9, 2015 and was assessed by Dr. Sharma.  [ECF No. 102, Exhibit SJ-10]. During his assessment of Plaintiff, Dr. Sharma reached out to Plaintiff's mother and left her a message.  *Id.*

49. Dr. Sharma also called RUSM employee Ryan Didier to see if he could get Plaintiff off the island earlier.  *Id.*

50.     Plaintiff executed the Release of Information Consent form on December 9, 2015 to allow his counselors to communicate with RUSM administrators about getting Plaintiff off the island earlier.  *See* [ECF No. 102, Exhibit SJ-07]; **Exhibit 3** at 32:4-15.

51.     Dr. Sharma did not diagnose Plaintiff on December 9, 2015.  **Exhibit 3** at 34:9-14.

52.     Dr. Sharma testified the Release of Information Consent form signed by Plaintiff "was not for releasing information about accommodation, because there was no request for accommodations from me in December 2015."  **Exhibit 3** at 34:2-8.

53.     Plaintiff visited the Counseling Center on December 10, 2015, still presenting with self-harm ideations.  [ECF No. 102, Exhibit SJ-11].  Plaintiff visited with Mr. Cuffy after meeting with Dr. Hayse.  *Id.*

54.     Dr. Hayse recalls meeting with Plaintiff in December 2015 but could not recall what he and Plaintiff spoke about during this meeting.  **Exhibit 7** at 7:25-8:20.  Dr. Hayse does not recall Plaintiff telling him that Plaintiff was struggling with some type of attention problem.  **Exhibit 7** at 15:20-22.

55.     During his meeting with the Counseling Center on December 10, 2015, Plaintiff did not request an accommodation.  **Exhibit 4** at 87:13-15.  Nor did Plaintiff make any mention of a request for an extended testing time.  **Exhibit 4** at 87:16-18.

56.     Plaintiff visited the Counseling Center again on December 11, 2015 but failed to make a request for accommodation.  A true and correct copy of RUSM's Counseling Note dated December 11, 2015, is attached to the Declaration of Ryan Roman as **Exhibit 12**.  *See also* **Exhibit 4** at 88:24-89:4.  Plaintiff did not make mention of wanting extended testing time.  **Exhibit 4** at 89:2-4.

57.     Mr. Cuffy assessed Plaintiff again on December 13, 2015. [ECF No. 102, Exhibit SJ-12].  According to Mr. Cuffy, Plaintiff was stable, doing well, and did not have any thoughts of harming himself.  *Id.*

58.     During this visit on December 13, 2015, Plaintiff never made a request for an accommodation and did not ask Dr. Cuffy for extended testing time.  **Exhibit 4** at 90:10-15.

59.     Dr. Sharma assessed Plaintiff on December 14, 2015 and noted that although Plaintiff was not suicidal, Plaintiff was depressed.  A true and correct copy of RUSM's Counseling Note dated December 14, 2015 is attached to the Declaration of Ryan Roman as **Exhibit 13**.  Dr. Sharma screened Plaintiff for ADHD but not because Plaintiff informed him that he needed extended testing time for his exams.  **Exhibit 3** at 8:7-23.

7

**PLAINTIFF'S RETURN TO DOMINICA**

60. Plaintiff returned home to the United States for winter break and was assessed by his primary physician. **Exhibit 1** at 105:1-3. Upon returning to RUSM, Plaintiff provided one document to the Counseling Center, a Conners assessment performed in the United States. **Exhibit 4** at 39:9-14. This was the first time Mr. Cuffy learned of Plaintiff's ADHD. *Id.* at 13:24-14:5.

61. Plaintiff underwent further testing with the Counseling Center. [ECF No. 102, Exhibit SJ-02]. The Counseling Center administered a Test on Variability Assessment (TOVA) and a CAARS assessment on January 18, 2016. *Id.* Plaintiff was diagnosed with ADHD on January 18, 2016. *Id.*

62. Every student diagnosed with ADHD is guided to the Student Handbook and is advised of the process for applying for academic accommodations. **Exhibit 3** at 29:22-25.

63. Despite being diagnosed with ADHD as of January 18, 2016, Plaintiff never made a request for an accommodation or for extended testing time. **Exhibit 4** at 92:13-18.

**PLAINTIFF NEVER APPLIES FOR AN ACCOMMODATION**

64. RUSM routinely issues a Student Handbook and an Academic Catalog to its students with content applicable to all of its students. **Exhibit 1** at 80:15-81:13. The Student Handbook specifically states that: "Candidates must possess the emotional health required for the full utilization of their intellectual abilities, for the exercise of good judgment, for the prompt completion of all responsibilities attendant to the diagnosis and care of patients, for the development of effective relationships with patients and for effective functioning as a member of the health care team. Candidates must be able to tolerate physically taxing workloads and function effectively under stress. They must be able to adapt to changing environments, display flexibility and learn to function in the face of uncertainties inherent in the clinical problems of patients." A copy of the Student Handbook is attached to the Declaration of Ryan Roman as **Exhibit 14** at 8.

65. Plaintiff knew about the Student Handbook and its content, including information about requests for accommodations. **Exhibit 1** at 80:15-81:13.

66. The Student Handbook specifically advised students with disabilities how to apply for accommodations. *Id.* at 46. In January 2016, the Handbook specifically stated that "Foundations of Medicine Requests for accommodations during the foundational science portion of the curriculum should be submitted in writing to the Accommodations Coordinator for Foundations of Medicine." *Id.*

67.     The Student Handbook further provides: "To qualify for accommodation, a student must identify him/herself to the Accommodation Coordinator for Foundations of Medicine or the Director of Office of Consultation and Support Services for IMF/Clinical Sciences." *Id.* Students are also required to declare the disability or suspected disability in writing and request accommodation. *Id.; see also* **Exhibit 5** at 9:11-16.

68.     It is the responsibility of students, including Plaintiff, "to obtain a thorough written evaluation from an appropriate professional, documenting the presence, extent, and ramifications of the disability." **Exhibit 14** at 46. "The documentation should explain what specific types of accommodation the evaluator believes might be most helpful in offsetting the effects of the disability to an acceptable extent (in the medical school environment, if possible.)." *Id.*

69.     Matthew Stewart-Fulton is the Accommodations Coordinator for Foundations of Medicine, and handles the accommodation process. **Exhibit 5** at 8:5-12. According to Matthew Stewart-Fulton, "to request accommodations, a student has to submit an application for academic accommodations." *Id.* at 12:11-15. A verbal request for an accommodation would start the application process. *Id.* at 14:2-16. A student requesting an accommodation would then need to apply in writing by completing an application packet. *Id.* at 12:8-17.

70.     An application package includes demographic information about the student, a personal statement from the student and any supporting documentation from a healthcare provider. *Id.* at 13:9-21. The application is available online or through the student portal. **Exhibit 5** at 51:25-52:10.

71.     Plaintiff never submitted a packet of information necessary to apply for an accommodation. *Id.* at 39:1-7. *See also* **Exhibit 3** at 75:4-6. *See also* **Exhibit 1,** at 122:11-20.

72.     RUSM, through its counselors, would have supported Plaintiff's request for accommodations if he had made a request. *See* **Exhibit 3**, at 73:6-74:5. *See also* **Exhibit 4**, at 82:22-83:3.

**PLAINTIFF'S FIVE ATTEMPTS AT THE CBSE**

73.     Plaintiff attempted the COMP Exam five times. True and correct copies of Plaintiff's Testing Results are attached to the Declaration of Ryan Roman as **Exhibit 15**. Plaintiff's first attempt on the COMP Exam occurred on April 22, 2016. *Id.* Plaintiff failed with a score of 58. *Id.*

74. Plaintiff's second attempt occurred on July 2, 2016 where he failed with a score of 64. *Id.*

75. Plaintiff failed his third attempt with a score of 67 on August 26, 2016. *Id.*

76. On October 22, 2016, Plaintiff took the COMP Exam for a fourth time and failed again with a score of 61. *Id.*

77. RUSM dismissed Plaintiff after he failed the COMP Exam for the fourth time in October 2016, with a score of 61. **Exhibit 1**, at 199:15-19; 200:4-6.

78. Following his dismissal, Plaintiff appealed the decision and was readmitted to RUSM in December 2016. **Exhibit 1**, at 206:14-17. RUSM permitted Plaintiff to attempt the COMP Exam for a fifth time, upon completion of a six-week review course. **Exhibit 1**, at 206:18-207:7.

79. After completion of the review course, Plaintiff took and failed his COMP Exam for the fifth time on March 30, 2017, with a score of 60. Exhibit 20. *See* also **Exhibit 1**, at 207:11-13.

80. Because of his fifth failure, RUSM dismissed Plaintiff. **Exhibit 1**, at 207: 11-13.

**RUSM UPHOLDS PLAINTIFF'S DISMISSAL**

81. Plaintiff again appealed the dismissal. **Exhibit 1**, at 207:14-22. The Student Promotions Committee upheld the dismissal. **Exhibit 1**, at 211:20-212:5.

82. In response, Plaintiff submitted a personal statement, where he makes no mention of needing additional testing time or that his alleged disability affected his test-taking abilities. [ECF No. 102, Exhibit SJ-17]. *See* also **Exhibit 1**, at 209:18-20. Plaintiff discloses for the first time that he has recently been diagnosed with OCD. Exhibit 1, at 214:3-8. *See also* **Exhibit 2**, at ¶ 4. Plaintiff does not mention ADHD in his appeal letter to Dean Owen. **Exhibit 1**, at 214:9-15.

83. The decision of the Student Promotions Committee was upheld on appeal. [ECF No. 62 at ¶ 64].

**PLAINTIFF ATTEMPTS THE STEP 1 EXAM WITHOUT ACCOMMODATIONS**

84. Following Plaintiff's dismissal from RUSM, Plaintiff took and passed the USMLE Step 1 licensing exam by enrolling with another medical school, Windsor University. [ECF No. 62, at ¶ 64.]. *See also* **Exhibit 1**, at 137:3-10.

85. Plaintiff passed the Step 1 Exam without requesting any extended testing time. **Exhibit 1**, at 137:3-16.

Dated: December 21, 2018

Respectfully submitted,

*/s/Ryan Roman*
MICHAEL C. MARSH
Florida Bar Number:  0072796
Email:  michael.marsh@akerman.com
Secondary:  sharon.luesang@akerman.com
RYAN A. ROMAN
Florida Bar Number:  0025509
Email:  ryan.roman@akerman.com
Secondary:  dorothy.matheis@akerman.com
DONNIE M. KING
Florida Bar Number: 101386
Email: donnie.king@akerman.com
Secondary: simone.tobie@akerman.com
OCTAVIA M. GREEN
Florida Bar Number: 119179
Email: octavia.green@akerman.com
Secondary: simone.tobie@akerman.com
**AKERMAN LLP**
98 SE 7th Street, Suite 1100
Miami, FL 33131
Phone:  (305) 374-5600
Fax:  (305) 374-5095

*Attorneys for Defendant Ross University School of Medicine, School of Veterinary Medicine Limited*

## CERTIFICATE OF SERVICE

  I HEREBY CERTIFY that on December 21, 2018 a true and correct copy of the foregoing document was served via CM/ECF on:

Oluwamuyiwa Awodiya
15005 Dahlia Drive
Bowie, Maryland 20721
Telephone: (240) 602-1836
E-mail: drmuyiwa.a@gmail.com

            */s/Ryan Roman*
            Ryan Roman

47313964;7