

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| | |
|---|---|
| OLUWAMUYIWA AWODIYA,<br>*Plaintiff,*<br><br>-v-<br><br>ROSS UNIVERSITY SCHOOL OF<br>MEDICINE, SCHOOL OF<br>VETERINARY MEDICINE LIMITED<br>*Defendant.* | Case No.   0:18-cv-60482-KMM<br><br>Hon. Chief Judge: K. Michael Moore<br>Magistrate Judge: Alicia O. Valle |

## PLAINTIFF'S REPLY IN SUPPORT OF PLAINTIFF'S
## SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiff Oluwamuyiwa Awodiya ("Plaintiff"), in proper person, hereby files his reply to Defendant's Response in Opposition (the "Opposition") [ECF No. 107] to Plaintiff's Second Motion for Partial Summary Judgment (the "Motion") [ECF No. 102]. *See* Plaintiff's Statement of Material Facts ("SMF") [ECF No. 101] and his Reply Statement of Material Facts ("ReSMF").

## FACTS

### A.   Academic Career Before RUSM and Undiagnosed Disabilities

Prior to Plaintiff's diagnosis of ADHD, he didn't know that his symptoms were something that people classified as ADHD. ReSMF ¶ 38(ii). He was just living his life thinking he was normal when he wasn't. *Id*. Plaintiff experienced the same limitations of his disabilities, long before he knew that the limitations were the result of the then-undiagnosed disabilities. *Id*. at ¶ 38(iii).

In high school and at Morgan State University, Plaintiff was unable to take notes while teachers were teaching. *Id*. Plaintiff was also unable to finish exams on time. *Id*. Plaintiff didn't finish with everyone else. *Id*. In his first couple of years of high school, Plaintiff's grades were

1

"horrendous" and "horrible." *Id.* ReSMF ¶ 38(iv). His lowest grade point average ("GPA"), in those years, was between a 0.00 and 1.00. *Id.* Then Plaintiff went to a different high school. *Id.*

In Plaintiff's last two years of high school, he received extended testing time and his GPA improved. *Id.* Plaintiff also received extended testing time at Morgan State University and was able to graduate with a 3.45 GPA. *Id.* He earned this 3.45 GPA as a biology major. *Id.* at ¶ 40. Plaintiff took the Medical College Admission Test ("MCAT") three times, each without extended testing time. *Id.* On his first MCAT attempt, his total score was ranked in the bottom 5% of all test takers and his *biology score* was literally one of the lowest scores in the country, that ranked in the *bottom 1%* of all test takers. *Id.* His last MCAT attempt was ranked in the bottom 15%. *Id.*

Plaintiff was unaware that the special treatment he received—for his then-undiagnosed symptoms—in the last two years of high school and at Morgan State University is what lawyers refer to as an "accommodation" in the context of legal disabilities. *Id.* at ¶¶ 38(iii), 66. In high school and at Morgan State University, Plaintiff didn't use any precise language to receive extended testing, he just indicated to teachers that "I can't finish these exams" and "that hey, I know everyone's done but, you know, I'm only like halfway through the exam." *Id.* at ¶ 38(iii).

Plaintiff is not and was not a lawyer. Rather, he took the ADA-Statement on RUSM's website at face value. Plaintiff testified at his deposition that he "was not considering [RUSM]" because the school was in a "less developed nation than the U.S." ReSMF ¶ 38(i). After Plaintiff googled pictures of Dominica, he became "very concerned" about his safety, getting hurt or injured, then becoming "disabled in some type of way" in Dominica. *Id.* When he saw the ADA-Statement on RUSM's website, it was a "green light for me." *Id.* "I didn't know what was actually technically required. **I just knew that it was some type of thing that stopped discrimination from disabled people.**" *Id.* Plaintiff just wanted some assurance that if he became disabled in

2

Dominica "that they would give me an opportunity or help me complete the program and not just say like well you're disabled now so see if you can figure it out on your own or get out of here and like just keep my money that I paid with Financial Aid money with." *Id.*

### B.  Overall Performance at RUSM

Even though Plaintiff only failed his fifth semester at RUSM with a 65% cumulative grade, that was not his worst semester. ReSMF ¶ 41. Plaintiff's worst semester at RUSM was his first semester with a 64% cumulative grade. *Id.* He repeated his fifth semester in 2016 and passed. *Id.*

The misleading narrative that RUSM is saying about Plaintiff's ex-girlfriend is complete nonsense. The record evidence shows that Plaintiff's ex-girlfriend does not deserve to be made the circus attraction of Plaintiff's case. The October 28, 2015, counseling note states that Plaintiff only went to Laura Cobb's in the RUSM Counseling Center because he wanted an objective perspective on his situation with his girlfriend. ReSMF ¶ 42. The same counseling note states that Plaintiff just broke up with his girlfriend "**3 days ago**" because he "just found out" that she had cheated on him multiple times. *Id.* The fact that the note states "3 days ago" indicates that Plaintiff broke up with his girlfriend on October 25, 2015. *Id.* This means that Plaintiff did not break up with his girlfriend until 19 days after his worst grade for that semester, which was a 42.55% on October 6, 2015. *Id.* Immediately after Plaintiff broke up with his girlfriend, all of his exam scores improved. *Id.* In fact, the very next day after Plaintiff broke up with his girlfriend, Plaintiff took his second exam for the semester on October 26, 2015, and his score improved by 26%. *Id.* On the "final exam" of that same semester, on December 3, 2015, Plaintiff scored an 80%. *Id.* Plaintiff has never achieved a score that high in his first, second, or forth semester at RUSM. *Id.* Plaintiff was "happier, better able to study" despite the fact that "[h]e found out from friends that gf has lied about how many times she slept w/ other man." *Id.* at ¶ 44. When Plaintiff learned that his girlfriend cheated on him, the counseling note clearly stated: "Self harm/Suicide/Homicide screen[:] **no thoughts of**

3

**harm to self**, no history of self-injurious behavior, no history of suicidal ideation, no thoughts of harm to others." *Id.* at ¶ 46. She does not deserve this just because Plaintiff filed a lawsuit.

Mr. Cuffy is not a mind-reader. The self-harm statements within Mr. Cuffy's counseling notes are not admissible because they are hearsay within hearsay that came from alleged reports that were relayed to Mr. Cuffy. ReSMF at ¶¶ 45, 46, 53.

### C. RUSM Discovers that Plaintiff had Undiagnosed Limitations

In December 2015, Dr. Sharma saw that Plaintiff had symptoms of undiagnosed ADHD. SMF ¶¶ 17, 19-21; ReSMF ¶ 19. As Dr. Sharma testified in his deposition: "we started -- recommended that -- based on my seeing your ADHD symptoms, we started the process in Dominica, which was done." ReSMF ¶ 19. Dr. Sharma also testified in his deposition:

> Q. Then why did you screen plaintiff for ADHD?
> A. Because he was having academic problems.
> Q. What type of academic problems?
> A. Problems with passing his exams, as far as I remember.

*Id.* Dr. Sharma testified that the ROI Agreement "is a way for the student to make life easier in the future so they don't have to come back and do another one." *Id.* at ¶ 16. Plaintiff did exactly this when he checked the "to provide information relevant to academic accommodations" box and the "ongoing communication" box. SMF ¶ 16. Plaintiff testified that the ROI Agreement was initially not for per se ADHD, it was for his concentration problems. ReSMF ¶ 16; SMF ¶ 17.

### D. Adequate Request Regardless of "Special Form" or "Special Packet" and Disability is Substantially Limiting

Even though the Student Handbook does not mention any specific packet or special form, nor identify who the Accommodations Coordinator is, ReSMF ¶ 69, and that nobody asked Plaintiff to submit any specific form, *id.* at ¶ 71, Dr. Sharma admitted that there was adequate documentation of Plaintiff's ADHD to support a request for accommodations, *id.* at ¶ 18. Dr.

4

Sharma further testified that Plaintiff had "good documentation" of his ADHD and that other students with less documentation were given accommodations. *Id.*

Dr. Sharma was Plaintiff's treating professional at RUSM who was in a position of authority to discuss with any necessary RUSM administrator about what specific types of accommodation he believes might be helpful in offsetting the effects of Plaintiff's disability. *Compare* ReSMF ¶ 18, *with* SMF ¶ 18 (Dr. Sharma testifying that he makes the request for the student and determines what type of accommodation is needed).

Dr. Sharma testified that he was "seeing" Plaintiff's symptoms of ADHD and that Plaintiff constantly has difficulty sustaining attention and constantly has difficulty with tasks that require persistence. *Compare* ReSMF ¶ 19, *with* SMF ¶ 19. Confirming the severity, the Counseling Center determined that the results of Plaintiff's attention problem, including ADHD, was "not within normal limits." SMF ¶ 10. As Dr. Sharma testified in his deposition:

> Q. Do you believe that plaintiff's ADHD, specific to him, was significantly limiting his ability to complete his exams in the time allowed?
> A. Yes.

*Id.* at ¶ 22. Dr. Sharma testified that he knew that Plaintiff "needed extra time" because of his ADHD. *Id.* at ¶ 23.

### E. Formal Appeal with Dean

RUSM contends that the undisputed SMF ¶¶ 12, 19, 29, 30 are not material. They are clearly material. Plaintiff's anxiety symptoms were re-diagnosed as OCD months before he formally appealed his dismissal. ReSMF ¶ 12(i). The day before Plaintiff formally appealed to Dean Owen, Plaintiff's psychiatrist and psychotherapist informed Dean Owen that Plaintiff's anxiety and checking rituals inherent to his condition have been adversely affecting his academic performance in medical school and that he had the symptoms for past four to six years. ReSMF ¶

5

12(i); SMF ¶ 29. Once students are permitted to send an appeal letter to Dean Owen, he investigates and determines whether a student should have an opportunity to be accommodated for their disability or whether the student should be dismissed, after he is noticed of a disability during the appeal. ReSMF ¶ 12(ii). Dean Owen's decision is based on his own set of criteria or "personal requirements" that "depends upon the diagnosis." *Id.*

RUSM "admits that RUSM, not the NBME, is the entity that determines whether its students require accommodations to a disability when taking the NBME CBSE." ReSMF ¶ 12(ii). Dean Owen's decision for dismissing Plaintiff—instead of providing him with an opportunity to be accommodated for his limitations—was because of Plaintiff's disabilities. *Id.* at ¶ 12(iii). As Dean Owen testified at his deposition:

> Q. Tell me what you recall.
>
> A. He's in CBT therapy and acquiring strategies for managing his symptoms. He is considering psychotropic medication. What I am remembering is an attestation from a therapist that describes an interventional program in progress, not being executed, nor any verification of it's [*sic*] benefits. That's what I recall.
>
> Q. So would that be the reason why you decided to uphold his dismissal?
>
> A. Yes. As well as your past performances.

*Id. See also* **Ex. SJ-15** (psychiatrist letter to Dean Owen); **Ex. SJ-17**. Dean Owen further testified:

> "Acquiring strategies." Acquiring is not the same as acquire. They are different. Acquiring describes progress in action.
>
> "Considering psychotropic medication." Not having received them. There's no statement of efficacy as of yet, against a background of a young man who failed an exam not once, not twice; five times.
>
> Summary, I felt sorry for you, because it describes progress. It doesn't describe accomplishment and execution. That's the reason for the decision.

ReSMF ¶ 12(iii). *See* 42 U.S.C. § 12102(4)(E)(i). Dean Owen refused to investigate possible accommodations with Plaintiff. ReSMF ¶ 12(iii). Dean Owen further testified:

> Q. So you wouldn't investigate with the student to see what accommodation would have helped him?
>
> A. No, I would not, since the student is under therapy by a psychiatrist and a psychotherapist. That is neither my role, nor is it my responsibility. Where is your responsibility, young man, in terms of engaging with your therapist to help yourself?

*Id.* (Deposed by Plaintiff). Dean Owen further testified, "[w]e're not using exams as experimentation to see if there's efficacy." *Id.* "You've got two bad diseases. This is why I say it. I felt sorry for you." *Id.* (Dean Owen said to Plaintiff, during Dean Owen's deposition).

## ARGUMENT[1]

### I.   Failure to Accommodate Claims

"The ADA also includes a number of rules of construction. Having concluded that the courts were defining 'disability' too narrowly, Congress amended the ADA in 2008 ...." *Barlia v. MWI Veterinary Supply, Inc.*, No. 17-1185, at *9 (6th Cir. Jan. 9, 2018). "Moreover, Congress explicitly rejected a number of standards formulated by the Supreme Court, such as the

---

[1] "On summary judgment, [a party's] inability to independently recall the conversation does not create a genuine issue of fact." *Wellons, Inc. v. Lexington Ins. Co.*, No. 13-11512, at *13 n.4 (11th Cir. 2014). The Eleventh Circuit notes that "lack of memory is insufficient to create a genuine dispute of fact." *Larsen v. Citibank FSB*, 871 F.3d 1295, 1308 (11th Cir. 2017). *Ojeda v. Louisville Ladder Inc.*, 410 Fed. Appx. 213, 215 (11th Cir. 2010) (Holding that "conclusory statements do not establish a disputed issue of material fact").

"[A] party may not avoid summary judgment by substituting previously rendered admissions and testimony with contradictory assertions of fact for the simple purpose of defeating summary judgment" *Lage v. Ocwen Loan Servicing LLC*, 145 F. Supp. 3d 1172, 1191 (S.D. Fla. 2015).

"An issue of fact is 'material' if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997). An issue of fact "is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Id.* "The basic issue before the court on a motion for summary judgment is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Id.* "However, if the nonmoving party's evidence and arguments are merely colorable and raise only some doubt, summary judgment may be granted in favor of the moving party." *Lancaster v. Carnival Corp.*, 85 F. Supp. 3d 1341, 1344 (S.D. Fla. 2015). "A mere 'scintilla' of evidence supporting the nonmoving party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Allen*, 121 F.3d 642 at 646 (11th Cir. 1997).

7

requirement that the impairment be 'permanent or long-term' to qualify as a disability under the ADA." *Id.* (citing 42 U.S.C. § 12102(4)(D)).

"Congress indicated that one of its purposes was to 'convey that the question of whether an individual's impairment is a **disability under the ADA should not demand extensive analysis.**'" *Mazzeo v. Color Resolutions Int'l, LLC*, 746 F.3d 1264, 1268 (11th Cir. 2014) (emphasis added) (quoting 42 U.S.C. § 12101). "[T]he **primary object** of attention in cases brought under the ADA **should be whether entities covered by the ADA have complied with their obligations.**" *Id.* at 1269 (emphasis added) (quoting 42 U.S.C. § 12101).

### A.  Substantially Limited in a Major Life Activity
#### i.  Construed Broadly in Favor of Expansive Coverage

RUSM cited *Baum v. Metro Restoration Servs., Inc.*, CIVIL ACTION NO. 3:15-cv-787-CRS, at *8 (W.D. Ky. Jun. 12, 2018) (which further stated, "[t]hus, the question is whether [plaintiff] has presented sufficient admissible medical evidence"). RUSM cannot dispute the record medical evidence as the ADA does not call for extensive analysis. This Court held:

> The ADAAA regulations provide that the term "substantially limits" "shall be construed broadly in favor of expansive coverage" and "is not meant to be a demanding standard." The regulations further provide that an impairment is a disability "if it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population" and that such "impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting."

*Dykstra v. Fla. Foreclosure Attorneys, PLLC*, 183 F. Supp. 3d 1222, 1230 (S.D. Fla. 2016) (citations omitted). The Eleventh Circuit held that comparative evidence is not required, and common sense is sufficient:

> [H]is impairment is so obviously substantially limiting that he needed to present no comparator evidence as part of his prima facie case. The jury's good common sense and life experiences gave them

8

> sufficient ability to determine that [plaintiff]'s impairment "significantly restricts the condition, manner or duration under which he can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity."

*Maynard v. Pneumatic Products Corp.*, 256 F.3d 1259, 1266 (11th Cir. 2001) (alterations omitted) (quoting 29 C.F.R. § 1630.2(j)(1)(ii)).

### ii. Academic Achievements and Other Major Life Activities

RUSM contends that Plaintiff is not substantially limited at concentrating by clumping it together with other major life activities under the umbrella of "concentrating." Opp'n at 8. "[G]iven the recent amendments by Congress overruling the strict interpretation of the 'major activity' requirement and the significant and ever-increasing importance of test-taking in society, the Court is persuaded test-taking constitutes a major life activity." *Rawdin v. Am. Bd. of Pediatrics*, 985 F. Supp. 2d 636, 650 (E.D. Pa. 2013). Even if we assume that one major life activity cannot occur without the other, Plaintiff has replied with his own facts that will allow the Court to analyze the record regardless of how concentrating or test-taking is construed. ReSMF ¶¶ 38-41. Regardless, in a case with very similar facts regarding academic achievements and disabilities:

> In short, the record supports a finding that Plaintiff is substantially limited in her ability to learn because of her ADD. The facts that she graduated from Middlebury with a dual degree and that she was able to succeed in part in medical school do not change the Court's decision, as these facts merely indicate that she was able to achieve some measure of success despite her disability-they do not speak to her learning ability as compared with the average person. The only evidence in the record that speaks to that is Dr. Krikorian's assessment, which supports a finding of disability. Defendant's rationale-that anyone who has had some modicum of academic success cannot be found to have a disability that affects learning-flies in the face of Congress' directives and the relevant implementing regulations. The Court cannot endorse Defendant's rationale, and Defendant has presented no compelling or controlling reason why the Court must. The Court thus finds that Plaintiff is disabled under the ADA and the RHA due to her ADD.

*Peters v. Univ. of Cincinnati Coll. of Med.*, NO. 1:10-CV-906, at *16-17 (S.D. Ohio Sep. 6, 2012).

### B. Otherwise Qualified

Extended testing time does not compromise RUSM's integral criteria. SMF ¶ 31. "This was not an academic decision, however, and it is not entitled to deference. A determination of whether an accommodation is related to a disability involves no *academic* judgment and judicial review of such a decision does not offend principles of academic freedom. Nova cannot immunize all of its decisions from review by waving the flag of deference merely because it is an academic institution." *Redding v. Nova Se. Univ., Inc.*, 165 F. Supp. 3d 1274, 1297 (S.D. Fla. 2015).

### C. RUSM had Enough Information to Offer an Academic Accommodation

Even if Plaintiff signed the wrong "form," the Student Handbook does not mention that a "specific form" or "packet" existed. The fact that the ROI agreement was "ongoing," SMF ¶ 16, and did not need to be signed again for **"future request,"** ReSMF ¶ 16, put the school on notice that he desired academic accommodations. "The Court cautions that blind adherence to policies and standards resulting in a failure to accommodate a person with a disability is precisely what the Americans with Disabilities Act of 1990 and the [RA] are intended to prevent." *Redding v. Nova Se. Univ., Inc.*, 165 F. Supp. 3d 1274, 1300-1 (S.D. Fla. 2015). There was not set procedure because RUSM granted the 'early flight home request,' which was also a verbal request. *Id.* at 1296 n.25 ("Redding cannot be faulted for making requests outside Nova's formal procedure."). SMF ¶ 17.

## II. Fraudulent and Negligent Misrepresentation Claims

Solely in the context of this claim: whether the ADA is "applicable" to RUSM in Dominica is irrelevant because it was advertised to prospective U.S. students; whether they "aim" to comply with the ADA is irrelevant. RUSM advertised that the school had its own "policy" that required its own faculty to comply with the ADA in Dominica. A child does not have to be home by 10:00pm because it is the law, the child must be home by 10:00pm because his mother said so.

DATED this 30th day of December, 2018:

Respectfully submitted,

_____
By: Oluwamuyiwa Awodiya, *pro se* litigant
15005 Dahlia Dr.
Bowie, MD 20721
(240) 602-1836
Plaintiff, in Proper Person

## CERTIFICATE OF SERVICE

I do hereby certify that on this 2nd day of January, 2018, I have caused a true and correct copy of: PLAINTIFF'S REPLY IN SUPPORT OF PLAINTIFF'S SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT; PLAINTIFF'S REPLY STATEMENT OF MATERIAL FACTS IN SUPPORT OF PLAINTIFF'S SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT; and REPLY DECLARATION OF OLUWAMUYIWA AWODIYA IN SUPPORT OF PLAINTIFF'S SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT by mailing a copy to the Court, where the Court's CM/ECF system will send notification to the following:

| | |
|---|---|
| **Ryan Roman** | **Octavia Monique Green** |
| Akerman Senterfitt | Akerman LLP |
| Suntrust International Center | Three Brickell City Centre |
| 1 SE 3rd Avenue | 98 Southeast Seventh Street |
| 25th Floor | Suite 1100 |
| Miami, FL 33131-1714 | Miami, FL 33131 |
| 305-374-5600 | (305) 982-5670 |
| Fax: 305-374-5095 | Email: |
| Email: | octavia.green@akerman.com |
| ryan.roman@akerman.com | |

_____
By: Oluwamuyiwa Awodiya, *pro se* litigant