UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

OLUWAMUYIWA AWODIYA,                    CASE NO. 0:18-cv-60482-KMM-AOV

      Plaintiff,

v.

ROSS UNIVERSITY SCHOOL OF
MEDICINE, SCHOOL OF VETERINARY
MEDICINE LIMITED,

      Defendant.
_____/

**STATEMENT OF MATERIAL FACTS IN SUPPORT OF**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

    Pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rule 56.1 of the Local Rules of the United States District Court for the Southern District of Florida, defendant Ross University School of Medicine, School of Veterinary Medicine Limited ("RUSM"), by counsel hereby submits its Statement of Material Facts ("SOF") in support of its Motion for Summary Judgment and Memorandum of Law in Support Thereof.

    1.    Plaintiff Oluwamuyiwa Awodiya ("Plaintiff") is a former RUSM medical student. [ECF No. 47] at ¶1. Plaintiff attended RUSM from May 2014 until his dismissal from the university in June 2017. *See* Deposition Transcript of Oluwamuyiwa Awodiya dated December 5, 2018 ("Awodiya Depo."), excerpts of which are attached to the Declaration of Ryan Roman ("Roman Declaration") as **Exhibit 1**, at 159:12-14.

    2.    Prior to attending RUSM, Plaintiff completed his undergraduate studies at Morgan State University. *Id.* at 38:5-7. While at Morgan State University, Plaintiff graduated from Morgan State University with a grade point average of 3.45. *Id.* at 242:6-10. A true and correct copy of Plaintiff's Academic Transcript from Morgan State University is attached to the Roman Declaration as **Exhibit 2**. Plaintiff completed his education at Morgan State University in three years. Awodiya Depo., Exh. 1 at 39:8-10.

    3.    Plaintiff never applied for formal accommodations before attending medical school. *Id.* at 33:4-14.

4. Plaintiff applied to RUSM in 2013. *Id.* at 154:6-155:10. On its admission requirements pages of its website, RUSM stated that "[i]t is the policy and practice of the University to comply with the Americans with Disabilities Act as applicable and practical in Dominica." *See* Defendant's Response to Plaintiff's First Request for Admission at ¶ 28, attached to the Declaration of Ryan Roman as **Exhibit 3**. Prior to the litigation, Plaintiff did not know anything about the Americans with Disabilities Act. Awodiya Depo., Exh. 1 at 148:13-17.

5. Plaintiff did not believe that he was disabled in any way when he enrolled in RUSM. *Id.* at 149:9-14.

6. Plaintiff's cumulative grade point average during his five semesters at RUSM was 2.61. *See* Plaintiff's Transcript from RUSM, a true and correct copy of which is attached to the Roman Declaration as **Exhibit 4**. Plaintiff admitted that his first semester at RUSM was very close to not passing. Awodiya Depo., Exh. 1 at 160:15-23. Plaintiff admitted that his worse semester at RUSM was his fifth semester. *Id*. at 159:20-24.

**Plaintiff's Emotional Distress Contributes to His Academic Woes**

7. Plaintiff's fifth semester commenced in September 2015. *See* Plaintiff's Transcript, Exh. 4. In addition to his academic struggles, Plaintiff started attending the Counseling Center on October 28, 2015 for "Relationship Distress with Spouse or Intimate Partner." A true and correct copy of RUSM's Counseling Note dated October 28, 2015 is attached to the Roman Declaration as **Exhibit 5**.

8. During his visit with the Counseling Center, Plaintiff reported having problems with a girlfriend who he had been in a relationship with since his fourth semester at RUSM. *Id.* Plaintiff's girlfriend cheated on him twice. *Id.* After learning of this, Plaintiff went to the Health Clinic due to distress from hypertension. *Id.*

9. Plaintiff continued seeking counseling from the Counseling Center on November 5, 2015, again for "Relationship Distress with Spouse or Intimate Partner. A true and correct copy of RUSM's Counseling Note dated November 5, 2015 is attached to the Roman Declaration as **Exhibit 6**.

10. On or around December 8, 2015, Plaintiff received a call from the Students Affairs Office advising him that he failed his fifth semester. A true and correct copy of RUSM's Counseling Note dated December 8, 2015 is attached to the Roman Declaration as **Exhibit 7**. After learning of his failure, Plaintiff admitted to thoughts of self-harm. *Id*.

11. McMillan Cuffy is a mental health counselor at RUSM. *See* excerpts from the Deposition Transcript of McMillan Cuffy ("Cuffy Depo."), excerpts of which are attached to the Declaration of Ryan Roman as **Exhibit 8**, at 9:15-16. Mr. Cuffy first met Plaintiff due to Plaintiff's emotional problems relating to a relationship issue. *Id.* at 10:11-15.

12. Plaintiff admitted having similar feelings of self-harm after learning that his girlfriend cheated on him around the same time he took his exams for the semester. *See* December 8, 2015 Counseling Note, Exh. 7.

13. Plaintiff completed a suicide assessment, admitting to a history of suicide ideations. *Id.* Although Plaintiff identified academics and his relationship as current stressors, Plaintiff made no mention of needing additional testing time or an accommodation. *Id.*

14. As a result of his self-harm ideations, Plaintiff signed a Safety Plan on December 8, 2015. A true and correct copy of the Safety Plan is attached to the Roman Declaration as **Exhibit 9**. *See also* Awodiya Depo., Exh. 1 at 97:3-97:14. By signing this safety plan, Plaintiff agreed not to attempt to cause harm to himself and agreed to participate in mental health treatment. *See* Safety Plan, Exh. 9.

15. Plaintiff visited the Counseling Center again on December 9, 2015, and was assessed by Dr. Devendranand Sharma. A true and correct copy of RUSM's Counseling Note dated December 9, 2015 is attached to the Roman Declaration as **Exhibit 10**. During his assessment of Plaintiff, Dr. Sharma noted that Plaintiff "did not have a clear intent to self-harm but felt the thoughts kept coming back to him about not living." *Id*.

16. In an effort to get Plaintiff back to the United States sooner due to his emotional state, Plaintiff executed a Release of Information Consent form on December 9, 2015 to allow his counselors to communicate with RUSM administrators about getting him off the island earlier. A true and correct copy of the Release of Information Consent form is attached to the Roman Declaration as **Exhibit 11**. *See also* excerpts from the Deposition Transcript of Dr. Davendranand Sharma ("Sharma Depo."), excerpts of which are attached to the Declaration of Ryan Roman as **Exhibit 12**, at 32:2-14.

17. Dr. Sharma testified "this document was not for releasing information about accommodation because there was no request for accommodations from me in December 2015." *Id.* at 34:2-8. Dr. Sharma did not diagnose Plaintiff on December 9, 2015. *Id*. at 34:9-14.

18. During his visit with Dr. Sharma on December 9, 2015, Plaintiff advised that he wanted to speak with the Dean about changing his grade. *See* December 9, 2015 Counseling Note, Exh. 10. *See also* Cuffy Depo., Exh. 4 at 37:4-9. During this visit with Dr. Sharma, Plaintiff did not request extended test time or any other accommodation. *See* Sharma Depo., Exh. 12 at 80:7-15.

19. On December 10, 2015, Plaintiff went to see Dr. Hayse, the Associate Dean for Medical Science Student Affairs. *See* excerpts from the Deposition Transcript of Dr. Bryan Hayse ("Hayse Depo."), attached to the Roman Declaration as **Exhibit 13**, at 7:25-8:2; 8:21-24. On December 10, 2015, Plaintiff still exhibited signs of self-harm ideations. A true and correct copy of RUSM's Counseling Note dated December 10, 2015 is attached to the Roman Declaration as **Exhibit 14**. During this meeting with the Counseling Center, there was no request for accommodations or request for extended testing time. *Id. See also* Cuffy Depo., Exh. 8 at 87:13-18.

20. Plaintiff visited the Counseling Center again on December 11, 2015 but failed to make a request for accommodation or request extended testing time. A true and correct copy of RUSM's Counseling Note dated December 11, 2015 is attached to the Roman Declaration as **Exhibit 15**. *See also* Cuffy Depo., Exh. 8 at 88:7-89:4.

21. Mr. Cuffy assessed Plaintiff again on December 13, 2015. A true and correct copy of RUSM's Counseling Note dated December 13, 2015 is attached to the Roman Declaration as **Exhibit 16**. During his visit with Mr. Cuffy on December 13, 2015, Plaintiff never made a request for an accommodation and did not ask Mr. Cuffy for extended testing time. Cuffy Depo., Exh. 8 at 89:5-90:15.

22. Plaintiff went home for winter break and was assessed by his primary physician in Maryland. Awodiya Depo., Exh. 1 at 105:1-3. *See also* Plaintiff's Statement of Material Facts in Support of Plaintiff's Motion for Partial Summary Judgment [ECF No. 61-1] at ¶ 33. During the assessment by his primary physician, Plaintiff reported being "constantly forgetful in daily activities" and having constant difficulty with tasks requiring persistence or organization, including schoolwork and job duties. *See* Dr. Earl John Mauricio's Medical Notes, a copy of which is attached to the Roman Declaration as **Exhibit 17**.

**Plaintiff Returns to Dominica to Repeat His Fifth Semester**

23. When Plaintiff returned to RUSM, Plaintiff visited the Counseling Center on January 11, 2016. A true and correct copy of RUSM's Counseling Note dated January 11, 2016 is attached to the Roman Declaration as **Exhibit 18**. Plaintiff provided one document to the Counseling Center, a Conners assessment performed in the United States. *See* Third Amended Complaint [ECF No. 47] at ¶ 11. *See also* Cuffy Depo., Exh. 8 at 39:9-14.

24. Mr. Cuffy first learned of Plaintiff's ADHD in January 2016. *Id.* at 13:24-14:5. During his visit with the Counseling Center on January 11, 2016, Plaintiff did not request an accommodation and did not make mention of needing additional testing time. *See* January 11, 2016 Counseling Note, Exh. 18. *See also* Cuffy Depo., Exh. 8 at 90:16-91:10.

25. Mr. Cuffy testified that students diagnosed with ADHD are advised of their rights. *Id.* at 81:8-12. "So part of that would be, you can get stimulant meds, in that case, with a referral to the psychiatrist, and we also speak to the students that they do have the choice to—they have the option of requesting academic accommodations." *Id.* at 81:12-17. Students have the option of seeking accommodations. *Id.* at 81:18-22.

26. Dr. Sharma testified that every student diagnosed with ADHD is guided to the student handbook and advised of the process of applying for academic accommodations. Sharma Depo., Exh. 12 at 29:22-30:11.

**Despite Having Knowledge of the Student Handbook, Plaintiff Never Properly Applied for an Accommodation**

27. The Student Handbook states that "Foundations of Medicine Requests for accommodation during the foundational science portion of the curriculum should be submitted in writing to the Accommodations Coordinator for Foundations of Medicine." A true and correct copy of the Student Handbook is attached to the Roman Declaration as **Exhibit 19**, at 46.

28. Matthew Stewart-Fulton is the accommodations coordinator for Foundations of Medicine and he testified that all applications should be submitted to him. *See* excerpts from the Deposition Transcript of Matthew Stewart-Fulton ("Stewart-Fulton Depo."), excerpts of which are attached to the Declaration of Ryan Roman as **Exhibit 20**, at 8:5-16.

29. "To qualify for an accommodation, a student must identify him/herself to the Accommodations Coordinator for Foundations of Medicine or the Director of Office of Consultation and Support Services for IMF/Clinical Services." Student Handbook, Exh. 19 at 46.

5

Students are also required to declare their disability or suspected disability in writing, and request accommodations. *Id.*

30. It is the responsibility of the student, including Plaintiff, "to obtain a thorough written evaluation from an appropriate professional, documenting the presence, extent, and ramifications of the disability." *Id*. "The documentation should explain what specific types of accommodation the evaluator believes might be most helpful in offsetting the effects of the disability to an acceptable extent (in the medical school environment, if possible.)." *Id.*

31. A verbal request for an accommodation would start the application process. Stewart-Fulton Depo., Exh. 20 at 14:12-16. A student requesting an accommodation would then need to apply in writing by completing an application packet. *Id*. at 12:8-17.

32. An application package includes demographic information about the student, a personal statement from the student and any supporting documentation from a healthcare provider. *Id*. at 13:9-21.

33. The student with an obvious disability would still be required to request accommodations in writing and provide the appropriate documentation. *See* Stewart-Fulton Depo, Exh. 20 at 26:11-27:8. If the application is approved, RUSM would then work with the student to find the appropriate accommodations to address the student's particular disability. *Id.* at 26:11-27:1.

34. Plaintiff never submitted the packet of information necessary to apply for an accommodation. *Id.* at 39:1-7. *See also* Sharma Depo., Exh. 12 at 75:4-6; Awodiya Depo., Exh. 1 at 122:11-20.

35. The Release of Information Consent form was not a request for an accommodation. Sharma Depo., Exh. 12 at 31:3-8.

**RUSM Increases the Minimum Required Passing Score for the COMP Exam**

36. RUSM requires its students to take the National Board of Medical Examiners' (NBME) Comprehensive Basic Science Exam (the "COMP Exam") at the end of their fifth semester. Student Handbook, Exh. 19 at 29. The Academic Catalog expressly permits RUSM to change its policies and procedures. *See* Academic Catalog, 2015-2016, Volume 7, a true and correct copy of which is attached to the Roman Declaration as **Exhibit 21**, at 1. Specifically, the Academic Catalog states "RUSM reserves the right to add, modify or delete, without notice, any course offering or information contained in this catalog." *Id.*

37.     At the time Plaintiff enrolled at RUSM, the minimum passing score for the COMP Exam was a 66, as reflected in RUSM Academic Catalog of 2015-2016, Volume 7.  *See* Third Amended Complaint [ECF No. 47] at ¶ 33; Defendant's Response to Plaintiff's First Request for Admission, Exh. 3 at ¶ 34.

38.     In September 2015, a university-wide email was sent to students, including Plaintiff, advising them that the minimum required passing score on the CBSE changed from a 66 to a 68.  *Id.* at ¶ 34.  *See also* Declaration of Sandra Herrin, a true and correct copy of which is attached to the Roman Declaration as **Exhibit 22**, at ¶ 4.  This score change became effective in November 2015.  Defendant's Response to Plaintiff's First Request for Admission, Exh. 3 at ¶ 34.

39.     Plaintiff attempted the COMP Exam five times.  True and correct copies of Plaintiff's COMP Exam Results are attached to the Roman Declaration as **Exhibit 23**.  Plaintiff's first attempt on the COMP Exam occurred on April 22, 2016.  *Id.*  Plaintiff failed with a score of 58.  *Id.*

40.     Plaintiff's second attempt occurred on July 2, 2016 where he failed with a score of 64.  *Id.*

41.     Plaintiff failed his third attempt with a score of 67 on August 26, 2016.  *Id.*

42.     On October 22, 2016, Plaintiff took the COMP Exam for a fourth time and failed again with a score of 61.  *Id.*

43.     RUSM dismissed Plaintiff after he failed the COMP Exam for the fourth time in October 2016, with a score of 61.  *Id. See also* Awodiya Depo., Exh. 1 at 199:15-19; 200:4-6.

44.     Following his dismissal, Plaintiff appealed the decision and was readmitted to RUSM in December 2016. *Id.* at 206:14-17.

45.     RUSM permitted Plaintiff to attempt the COMP Exam for a fifth time, upon completion of a six-week review course. *Id.* at 206:18-207:7.

46.     After completion of the review course, Plaintiff took and failed his COMP Exam for the fifth time on March 30, 2017, with a score of 60.  Plaintiff's COMP Exam Results, Exh. 23.  *See also* Awodiya Depo., Exh. 1 at 207:8-10.

47.     Because of his fifth failure, RUSM dismissed Plaintiff.  *Id.* at 207: 11-13.

**RUSM Upholds Plaintiff's Dismissal**

48.     Plaintiff again appealed the dismissal.  Awodiya Depo., Exh. 1, at 207:14-22.  The Student Promotions Committee upheld the dismissal.  *Id.* at 211:20-212:2.

49.     In response, Plaintiff submitted a personal statement, where he makes no mention of needing additional testing time or that his alleged disability affected his test-taking abilities. *See* Plaintiff's Personal Statement in Support of Appeal of Dismissal, a true and correct copy of which is attached to the Roman Declaration as **Exhibit 24**. *See* also Awodiya Depo., Exh. 1 at 209:10-23. In his personal statement, Plaintiff disclosed for the first time that he had recently been diagnosed with Obsessive Compulsive Disorder ("OCD") in April 2017. Awodiya Depo., Exh. 1 at 214:3-8. *See also* Plaintiff's Amended Responses and Objections to Defendant's First Set of Interrogatories, a true and correct copy of which is attached to the Roman Declaration as **Exhibit 25**, at ¶ 4; Dr. Denise Unterman's Medical Notes, a copy of which is attached to the Roman Declaration as **Exhibit 26**. At the time of his OCD diagnosis, Plaintiff reported to a physician that he was pulling his eyelashes and chin hairs out. *Id*. In his personal statement, Plaintiff does not mention the need for extended testing time or the need for an accommodation. Plaintiff's Personal Statement in Support of Appeal of Dismissal, Exh. 24.

50.     The decision of the Student Promotions Committee was upheld on appeal. A true and correct copy of RUSM's letter to Plaintiff dated June 29, 2017 denying Plaintiff's appeal is attached to the Roman Declaration as **Exhibit 27**.

Dated: January 4, 2019

Respectfully submitted,

*/s/Ryan Roman*
MICHAEL C. MARSH
Florida Bar Number:  0072796
Email:  michael.marsh@akerman.com
Secondary:  sharon.luesang@akerman.com
RYAN A. ROMAN
Florida Bar Number:  0025509
Email:  ryan.roman@akerman.com
Secondary:  dorothy.matheis@akerman.com
DONNIE M. KING
Florida Bar Number: 101386
Email: donnie.king@akerman.com
Secondary: simone.tobie@akerman.com
OCTAVIA M. GREEN
Florida Bar Number: 119179
Email: octavia.green@akerman.com
Secondary: simone.tobie@akerman.com
**AKERMAN LLP**
98 SE 7th Street, Suite 1100
Miami, FL 33131
Phone:  (305) 374-5600
Fax:  (305) 374-5095

*Attorneys for Defendant Ross University School of Medicine, School of Veterinary Medicine Limited*

9

47378727;6

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on January 4, 2019 a true and correct copy of the foregoing document was served via CM/ECF on:

Oluwamuyiwa Awodiya
15005 Dahlia Drive
Bowie, Maryland 20721
Telephone: (240) 602-1836
E-mail: drmuyiwa.a@gmail.com

                                        *s/Ryan Roman*
                                        Ryan Roman