# EXHIBIT 8

UNITED STATES DISTRICT COURT
FOR THE
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 0:18-cv-60482-KMM

OLUWAMUYIWA AWODIYA,

       Plaintiff,

vs.

ROSS UNIVERSITY SCHOOL OF
MEDICINE, SCHOOL OF VETERINARY
MEDICINE LIMITED,

       Defendant.
_____/

                  350 E. Las Olas Blvd.
                  Fort Lauderdale, Florida
                  December 4, 2018
                  1:27 p.m.

_____

THE VIDEOTAPED DEPOSITION OF

MCMILLAN CUFFY

_____

Taken on Behalf of the Plaintiff

Pursuant to Notice of Taking Deposition

Commencing at 1:27 p.m.

Case 0:18-cv-60482-RKA   Document 119-9   Entered on FLSD Docket 01/04/2019   Page 3 of 14

12/4/2018     Awodiya, Oluwamuyiwa v. Ross University School of Medicine et al.   McMillan Cuffy

Page 9

```
 1      Q.   When's the last time you've been?
 2      A.   I passed through two weeks ago.
 3      Q.   Two weeks ago?
 4      A.   Passed through, yes.
 5      Q.   Do you have any visa or citizenship in the
 6   U.S. or is -- will it be difficult for you to come
 7   back to the U.S. during trial?
 8      A.   It depends.  It all depends on what time.
 9      Q.   Let's say March.
10      A.   I'm not sure yet.
11      Q.   You're not sure?
12           When did you start working for Ross?
13      A.   February 2010.
14      Q.   2010.
15           And what was your role?
16      A.   Counselor.  Mental health counselor.
17      Q.   When did you first hear about this
18   lawsuit?
19      A.   I believe it was somewhere around October,
20   was it?
21           I'm not sure.  I think it was a couple of
22   months back.  Yeah.
23      Q.   October of this year?
24      A.   We're in December now.  October,
25   September.  Somewhere.  I'm not sure.  Could be.
```

4e42ed13-6299-4742-80d7-435c57c10785

Case 0:18-cv-60482-RKA   Document 119-9   Entered on FLSD Docket 01/04/2019   Page 4 of 14

12/4/2018    Awodiya, Oluwamuyiwa v. Ross University School of Medicine et al.   McMillan Cuffy

Page 10

1    Q.   Of this year, 2018?
2    A.   Yes.  Yes.
3    Q.   Has anyone spoken to you about the case
4  since then?
5    A.   I have spoken to the team, yes.  I have
6  had a meeting with our team, the Ross team.
7    Q.   Have you spoken with anyone else?
8    A.   No, sir.
9    Q.   You haven't spoken to the dean or --
10   A.   No, sir.
11   Q.   Why did you first engage with plaintiff?
12   A.   The plaintiff came into the counseling
13 center, because he was having some emotional -- he
14 presented with an emotional problem at the time,
15 relating to a relationship issue.
16   Q.   Let me rephrase the question.  I just want
17 to make sure that you understood my question.
18        What was the reason that you first met the
19 plaintiff?
20        MR. ROMAN:  I'll just object as asked and
21   answered, but you may go ahead and answer.
22        THE WITNESS:  The plaintiff presented at
23   the counseling center with an emotional
24   problem.  I was the counselor who dealt with
25   the plaintiff.  Specifically, it was a

4e42ed13-6299-4742-80d7-435c57c10785

Case 0:18-cv-60482-RKA   Document 119-9   Entered on FLSD Docket 01/04/2019   Page 5 of 14

12/4/2018    Awodiya, Oluwamuyiwa v. Ross University School of Medicine et al.   McMillan Cuffy

Page 13

1      MR. ROMAN:  Well, he swore that he was
2  going to tell the truth.  So, I mean, if you
3  have a question, you can ask it, but -- I mean,
4  I think we're here to answer substantive
5  questions.  He's taken the oath and said he'll
6  testify truthfully.  It's the same oath the
7  other witnesses have taken, but you may ask
8  your question.
9      MR. AWODIYA:  Okay.  As long as he
10  understands that.
11  BY MR. AWODIYA:
12      Q.   Was there any other reasons why plaintiff
13  came to you?
14      A.   In December?  When?
15      Q.   On the first visit.
16      A.   No other reason.
17      Q.   No other reason?
18      A.   No.
19      Q.   Nothing to do with school?
20      A.   Not at the time, no.
21      Q.   Did anyone refer you to him or did he come
22  to you?
23      A.   The plaintiff came to me.
24      Q.   What do you know about plaintiff's ADHD?
25      A.   I think in January 2016, if -- to be

12/4/2018    Awodiya, Oluwamuyiwa v. Ross University School of Medicine et al.    McMillan Cuffy

Page 14

1  exact, I think it was January 11th, 2016, the
2  plaintiff came to my office and presented -- I think
3  there's a Conners ADHD assessment that he said that
4  he did in the U.S.  That was my first knowledge of
5  his ADHD.
6       Q.   When was your first knowledge that he was
7  having academic problems?
8       A.   When I -- when I met him in December 2015,
9  during that melt down -- emotional melt down, he did
10 mention that he was having, I think, concentration
11 issues or so.
12      Q.   He mentioned that?
13      A.   From my recollection, he spoke to me re:
14 his -- I know there was that distress issue with the
15 relationship.  I can't recall -- I can't recall if
16 he -- if he actually said that he was having
17 concentration issues at that time, but I knew what
18 presented in December was the distress problem.  The
19 relationship distress, that's what presented in
20 December.  My first knowledge of ADHD was 11th of
21 January, 2016.
22      Q.   When you typically first meet a new
23 client, what information do you ask for?
24      A.   That depends on the presentation.
25      Q.   Do you do any type of background?

Case 0:18-cv-60482-RKA   Document 119-9   Entered on FLSD Docket 01/04/2019   Page 7 of 14

12/4/2018   Awodiya, Oluwamuyiwa v. Ross University School of Medicine et al.   McMillan Cuffy

Page 37

1    Q.   Uh-huh.
2    A.   Can't recall anything else.
3    Q.   No?
4         Tell me about your communication with
5    Dr. Hayes about plaintiff.
6    A.   If I recall, I believe that the plaintiff
7    requested a meeting with Dr. Hayes, as the director
8    of student affairs, because he wanted to contest his
9    grade given that he had failed by one point.
10   Q.   Did he give you a reason as to why he
11   might have failed by one point?
12   A.   I can only go by my notes.  Based on his
13   stressors presented, which was a relationship issue.
14   That's all I -- that's all I could remember.  I
15   don't know anything else.
16   Q.   Did Dr. Hayes send you an e-mail
17   requesting to talk?
18   A.   I can't recall.  Maybe.
19   Q.   Do you recall any information that are not
20   in notes?
21   A.   Specifically?
22   Q.   Anything would be helpful.
23   A.   I can't recall anything more than we've
24   spoken about, no.
25        Can I get some water, please?

Case 0:18-cv-60482-RKA   Document 119-9   Entered on FLSD Docket 01/04/2019   Page 8 of 14

12/4/2018    Awodiya, Oluwamuyiwa v. Ross University School of Medicine et al.    McMillan Cuffy

Page 39

1  might be appropriate, such as extended testing time
2  or a separate room?
3      A.  Yes, based on what -- based on the
4  student's mental health condition or -- yes, we
5  would.  On that letter, we would state that, yes.
6      Q.  Any counselor can do that?
7      A.  A mental health counselor, yes, in the
8  counseling center.
9      Q.  I have a bunch of questions for you then.
10         Do you remember all the documents that
11 plaintiff gave you in January 2016 about his ADHD?
12     A.  From my recollection, the plaintiff
13 presented one document to me when he returned from
14 the U.S.  It was, I think, a Conners.
15     Q.  From your recollection?
16     A.  Yes.
17     Q.  Was it in an envelope?  Was it --
18     A.  I can't recall the specifics.
19     Q.  Did he tell you the name of his
20 psychiatrist in the U.S.?
21     A.  No, I don't think he did.  At least, I
22 can't remember.
23     Q.  So what did you do after he gave you the
24 ADHD assessment?
25     A.  If my memory serves me right, the document

Case 0:18-cv-60482-RKA   Document 119-9   Entered on FLSD Docket 01/04/2019   Page 9 of 14

12/4/2018    Awodiya, Oluwamuyiwa v. Ross University School of Medicine et al.   McMillan Cuffy

Page 81

1    Ross University.  We've met before.
2         A.   Yes.
3         Q.   Okay.  I just have some questions for you.
4              When a student is diagnosed with ADHD, do
5    you have a standard practice of informing them that
6    they can seek accommodations?
7         A.   Yes.
8         Q.   Can you describe that standard practice
9    for me?
10        A.   So once the diagnosis is made, in that
11   conversation, we inform the students what their
12   rights are.  So part of that would be, you can get
13   stimulant meds, in that case, with a referral to the
14   psychiatrist, and we also speak to the students that
15   they do have the choice to -- they have the option
16   of requesting academic accommodations.  So, yeah,
17   that's the process.
18        Q.   Is a student required to seek
19   accommodations?
20        A.   That's an option every student has.  The
21   student can choose to or not to.  That's their
22   choice.
23        Q.   To the best of your recollection, would
24   you have notified Mr. Awodiya of the option to
25   request an accommodation?

Case 0:18-cv-60482-RKA   Document 119-9   Entered on FLSD Docket 01/04/2019   Page 10 of 14

12/4/2018    Awodiya, Oluwamuyiwa v. Ross University School of Medicine et al.    McMillan Cuffy

Page 87

1    A.    That's on the 10th of December, 2015.
2    Q.    And did you prepare it?
3    A.    Yes.
4    Q.    Are these notes taken at or around the
5    time of this counseling session with Mr. Awodiya?
6    A.    Yes, it would be.
7    Q.    And is this a document that is maintained
8    by Ross in the normal course of business?
9    A.    Yes, it is.
10   Q.    Do you have any reason to believe that
11   this document has been altered in any way?
12   A.    No.
13   Q.    And in these notes, do you see any mention
14   of a request for an accommodation?
15   A.    No, I don't.
16   Q.    Do you see any mention of a request for
17   extended testing time?
18   A.    No, I'm not.
19           MR. ROMAN:  Okay.  We're going to next
20       mark this exhibit.  Is this Cuffy 8?
21           THE COURT REPORTER:  (Nod in the
22       positive.)
23           (Thereupon, the referred-to document was
24           marked by the court reporter for
25           Identification as Defendant's Exhibit 8.)

Case 0:18-cv-60482-RKA   Document 119-9   Entered on FLSD Docket 01/04/2019   Page 11 of 14

12/4/2018    Awodiya, Oluwamuyiwa v. Ross University School of Medicine et al.    McMillan Cuffy

Page 88

1          THE WITNESS:  Thank you.
2          THE COURT REPORTER:  Uh-huh.
3    BY MR. ROMAN:
4         Q.    Once you've had an opportunity to review,
5    I'll just ask you to describe what that document is.
6         A.    Okay.
7         Q.    What is this document?
8         A.    This is a follow-up meeting, which speaks
9    of -- it's a follow-up meeting.  Follow-up.
10        Q.    On what date?
11        A.    It's on the 11th of December, 2015.
12        Q.    And who prepared it?
13        A.    I prepared it.
14        Q.    And are these notes taken at or around the
15   time of the counseling session with Mr. Awodiya?
16        A.    Yes, it would be.
17        Q.    Is this a document that's maintained by
18   Ross University in the normal course of it's
19   business?
20        A.    Yes.
21        Q.    Do you have any reason to believe that
22   this document has been altered in any way?
23        A.    No.
24        Q.    And in these notes, do you see any mention
25   of a request for an accommodation?

12/4/2018        Awodiya, Oluwamuyiwa v. Ross University School of Medicine et al.    McMillan Cuffy

Page 89

```
 1        A.   No.
 2        Q.   Do you see any mention of a request for
 3   extended testing time?
 4        A.   No.
 5        Q.   The next one, if we go back to Cuffy 6,
 6   which is the grouping of multiple counseling notes,
 7   we're going to look at what's the first page on your
 8   version, which is the December 13, 2015 notes.
 9        A.   First page?
10        Q.   I believe so.
11        A.   What date?
12        Q.   If that's December 13th.
13        A.   Yes.
14        Q.   Okay.  And who -- did you prepare this
15   document?
16        A.   For some reason, I did not see where it
17   was locked [sic].  Maybe part of that was not --
18        Q.   If you turn one more page behind that, do
19   you have 146 at the bottom?  A page that says,
20   "146"?  It looks likes yours is out of order.
21        A.   Okay.  It's out of order.  Okay.  That's
22   it, yeah.
23        Q.   Okay.  So from that, can you tell who is
24   the author?
25        A.   I am the author, yes.
```

Page 90

1    Q.   And are these notes taken at or around the
2    time of the counseling session with Mr. Awodiya?
3    A.   Yes.
4    Q.   Is this a document that's maintained by
5    Ross in the normal course of it's business?
6    A.   Yes, it is.
7    Q.   And do you have any reason to believe that
8    the document has been altered in any way?
9    A.   No, I don't.
10   Q.   Do you see any mention of a request for an
11   accommodation in this document?
12   A.   No, I don't.
13   Q.   Do you see any mention of a request for
14   extended testing time in this document?
15   A.   No, I don't.
16   Q.   Next, in that same exhibit, if you turn to
17   the January 11th note, 2016.
18   A.   Yes.
19   Q.   And are you the author of this document?
20   A.   Yes, I am.
21   Q.   Are these notes taken at or around the
22   time of the counseling session with Mr. Awodiya?
23   A.   Yes, it is.
24   Q.   Is this a document that's maintained by
25   Ross in the normal course of it's business?

12/4/2018        Awodiya, Oluwamuyiwa v. Ross University School of Medicine et al.    McMillan Cuffy

Page 91

```
 1        A.    Yes, it is.
 2        Q.    And do you have any reason to believe that
 3   this document has been altered in any way?
 4        A.    No, I don't.
 5        Q.    Do you see any mention in these notes of a
 6   request for an accommodation?
 7        A.    No, I don't.
 8        Q.    And do you see any mention of a request
 9   for extended testing time in these notes?
10        A.    No.
11              MR. ROMAN:  Okay.  All right.  Next I'd
12        like to mark as Exhibit 9 this document here.
13              (Thereupon, the referred-to document was
14              marked by the court reporter for
15              Identification as Defendant's Exhibit 9.)
16              THE WITNESS:  Thank you.
17              THE COURT REPORTER:  Uh-huh.
18   BY MR. ROMAN:
19        Q.    Once you've had an opportunity to review
20   it, if you could tell me what this document is.
21        A.    This is a referral form.
22        Q.    And who prepared this document?
23        A.    I prepared this document.
24        Q.    When is it dated?
25        A.    It's dated --
```

4e42ed13-6299-4742-80d7-435c57c10785