# EXHIBIT 12

```
                    UNITED STATES DISTRICT COURT
                             FOR THE
                    SOUTHERN DISTRICT OF FLORIDA



                    CASE NO.: 0:18-cv-60482-KMM



OLUWAMUYIWA AWODIYA,

            Plaintiff,

vs.

ROSS UNIVERSITY SCHOOL OF
MEDICINE, SCHOOL OF VETERINARY
MEDICINE LIMITED,

            Defendant.
_____/


                              350 E. Las Olas Blvd.
                              Fort Lauderdale, Florida
                              October 16, 2018
                              12:59 p.m.



                    _____

                    THE DEPOSITION OF

                    DAVENDRANAND SHARMA

         _____

             Taken on Behalf of the Plaintiff

         Pursuant to Notice of Taking Deposition

                Commencing at 12:59 p.m.
```

10/16/2018                Awodiya, Oluwamuyiwa v. Ross University School of Medicine et al.                Davendranand Sharma

Page 29

1  student told the academic -- if the student told the
2  accommodation coordinator he was running out of time
3  on his exams, would that constitute informing him
4  the need of more time on his exams?
5       A.   If the student told the accommodations
6  office.
7       Q.   Yes.  The point I'm trying to express here
8  is that students don't necessarily know the specific
9  language, according to the ADA or to the
10 Rehabilitation Act, what constitutes a request.
11 They simply may say that they need help some way,
12 that I'm running out of time on exams, I'm not
13 completing exams.
14      A.   Uh-huh.  I understand.
15      Q.   Does a student need to expressly request
16 and say "accommodations" in order to get
17 accommodations?
18      A.   Yes, they have to.  It's always done by
19 the counseling service part of our process when we
20 make the diagnosis of ADHD.  It's called "standards
21 practice" or "best practices."
22           Every person who is diagnosed with ADHD is
23 guided to the student handbook that there is
24 accommodations available.  The process is very
25 straightforward.  They need to go to the

Case 0:18-cv-60482-RKA   Document 119-13   Entered on FLSD Docket 01/04/2019   Page 4 of 10

10/16/2018            Awodiya, Oluwamuyiwa v. Ross University School of Medicine et al.            Davendranand Sharma

Page 30

1  accommodations office, and then, that -- what
2  happens then is, they're interviewed by the
3  accommodations officer.  That is not for us.  He
4  does it -- he or she does an interview of the
5  student.  And if he's satisfied that there's
6  evidence of a disability, the student shows him the
7  fact that they have a diagnosis of ADHD, the student
8  then makes the accommodation request on the form
9  that the accommodations office has, and the student
10 would ask us to submit his or her records to --
11 that's the process.
12       Q.    So once they ask you to submit their
13 documents --
14       A.    Yes.
15       Q.    -- to --
16       A.    The accommodations office.
17       Q.    That is when the obligation is triggered?
18       A.    Yes.  That's when we can only release the
19 student's records; only after that process is
20 completed, the process which I just outlined, where
21 the student is the one that must make the request.
22       Q.    Please see Exhibit DE-05.
23             (Thereupon, the referred-to document was
24             marked by the court reporter for
25             Identification as Plaintiff's Exhibit

10/16/2018          Awodiya, Oluwamuyiwa v. Ross University School of Medicine et al.          Davendranand Sharma

Page 31

1         DE-05.)
2    BY MR. AWODIYA:
3         Q.   Is this the document you were talking
4    about?
5         A.   This is the document about release of
6    information.  The document about requesting
7    accommodations is not this document.  This Exhibit,
8    DE-05, is not the request for accommodation.
9         Q.   But this is the document for the
10   counseling center to send the information?
11        A.   That's correct.
12        Q.   Okay.  Did you send any of plaintiff's
13   information to Ross University's administrators?
14        A.   Not me.  I didn't send anything.
15        Q.   Do you know if anyone else did?
16        A.   I wouldn't know for sure, but I believe a
17   request was made for the release of your
18   accommodation [sic], but this was not in that time.
19   This was more recently when the plaintiff had left
20   the university and returned to the U.S. for the
21   comprehensive shelf.
22        Q.   Is it correct that the document for the
23   release --
24        A.   Uh-huh.
25        Q.   -- to Ross University administration was

15eb13da-d2c1-4023-bda4-c358c06300a6

Case 0:18-cv-60482-RKA   Document 119-13   Entered on FLSD Docket 01/04/2019   Page 6 of 10

10/16/2018        Awodiya, Oluwamuyiwa v. Ross University School of Medicine et al.        Davendranand Sharma

Page 32

1  agreed upon in December 2015?
2      A.   No.  There's no evidence that there was a
3  document requesting accommodation.
4      Q.   Not requesting accommodation.
5           Requesting that the counseling center send
6  the documentation --
7      A.   No, there is no -- there's no evidence of
8  a request for sending a record.
9      Q.   -- in December 2015.
10     A.   There's a request for sending information
11 about the plaintiff's return to the U.S. for
12 emotional support in December 2015.  We received --
13 in December 2015, as far as my records show, my
14 recollection, there's no request for release for
15 accommodations.  You understand?
16     Q.   Can you please read on that form what it
17 says under "This information is released for the
18 following purpose"?
19     A.   "To facilitate treatment planning" and "to
20 provide information relevant to accommodations or
21 medical leave of absence."
22     Q.   Under that --
23     A.   And then, there is "Other" not ticked.
24          So the boxes are ticked for "facilitate
25 treatment planning" and "to provide information

Case 0:18-cv-60482-RKA   Document 119-13   Entered on FLSD Docket 01/04/2019   Page 7 of 10

10/16/2018          Awodiya, Oluwamuyiwa v. Ross University School of Medicine et al.        Davendranand Sharma

Page 34

1  plaintiff.
2          So this document was signed for that
3  purpose, so we can give information about the
4  plaintiff's emotional health and request an early
5  return.  This document was not for releasing
6  information about accommodation, because there was
7  no request for accommodations from me in
8  December 2015.
9          To make it more clear, there was no
10 diagnosis at that time.  It was just at the start of
11 preliminary testing, screening for ADHD.  So there
12 was no way documents could have been sent to support
13 accommodations for ADHD, because the diagnosis was
14 not made.  It makes no sense.
15      Q.   So when the diagnosis was made and
16 plaintiff did not revoke his consent, would that not
17 be considered ongoing?
18      A.   Ongoing to what?
19      Q.   Well, you said the documents didn't exist
20 at that time.
21      A.   The diagnosis didn't exist.
22      Q.   But the diagnosis existed after the winter
23 break?
24      A.   Yes.  Yes.
25      Q.   Why weren't those records sent?

15eb13da-d2c1-4023-bda4-c358c06300a6

Page 73

1    Q.   And you noticed symptoms of ADHD --
2    A.   Yes.
3    Q.   -- to the extent that you recommended an
4    assessment for the ADHD.
5    A.   Yes.  We went over that.
6    Q.   And he signed the form for the release of
7    information relative to academic accommodations.
8    A.   Yes.
9    Q.   If you noticed these things --
10   A.   Yes.
11   Q.   -- at that time --
12   A.   Uh-huh.
13   Q.   -- how is that not relevant?
14   A.   To what?
15   Q.   Academic accommodations.
16   A.   There's no relevance -- this form was done
17   for -- for the emotional crisis to get the student
18   back home.
19        Relevance for academic accommodation can
20   only come in place if there is a request.  We went
21   over this over and over.  Yes, yes, I would support
22   academic accommodation 100 percent, 1,000 percent,
23   100,000 percent if a request is made.  I cannot send
24   details of a diagnosis to anybody unless there's a
25   request to send it and for a purpose.  It's not my

Case 0:18-cv-60482-RKA   Document 119-13   Entered on FLSD Docket 01/04/2019   Page 9 of 10

10/16/2018     Awodiya, Oluwamuyiwa v. Ross University School of Medicine et al.     Davendranand Sharma

Page 75

1   spirits in April, went off to do the comp, right?
2   That's my recollection.
3        Q.   (Nod in the positive.)
4        A.   Student did not apply for accommodation or
5   request to give out documents for accommodation.
6   That's it.
7             MR. AWODIYA:  I think we're good.
8             MR. ROMAN:  We'll take a short break, and
9        I'll have some questions, and then, we'll wrap
10       it up.  Let's take a quick break, and then,
11       we'll come back in.
12            (Whereupon, a break was taken from 3:17 to
13            3:24 p.m.)
14                 CROSS-EXAMINATION
15  BY MR. ROMAN:
16       Q.   Good afternoon, Dr. Sharma.  As you know,
17  we've met before.  My name is Ryan Roman.  I'm one
18  of the attorneys representing Ross University.
19            I'd like to start by showing you -- and I
20  only have a quick set of questions on the medical
21  notes, some of which we've gone through today, and I
22  think only one of which we haven't shown you today.
23            Starting with Exhibit 06, do you have that
24  in front of you still?  That was the most recent one
25  we used from December 9, 2015.  Let me just write

10/16/2018          Awodiya, Oluwamuyiwa v. Ross University School of Medicine et al.          Davendranand Sharma

Page 80

1    A.   Yes.
2    Q.   And are these records that are kept in the
3    ordinary course of business --
4    A.   Yes.
5    Q.   -- by the counseling center?
6    A.   Yes.
7    Q.   Did Mr. Awodiya ever ask you for an
8    accommodation?
9    A.   No.
10   Q.   Did Mr. Awodiya ever ask you to request an
11   accommodation on his behalf?
12   A.   No.
13   Q.   Did you ever agree with Mr. Awodiya that
14   you would request an accommodation on his behalf?
15   A.   No.
16   Q.   Did you ever speak with Matthew
17   Stewart-Fulton about Mr. Awodiya getting an
18   accommodation?
19   A.   No.
20   Q.   When a student signs a release of their
21   records for the purpose of requesting an
22   accommodation, does the counseling center at Ross
23   immediately share the students information at that
24   time?
25   A.   No.