**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

OLUWAMUYIWA AWODIYA,                    CASE NO.  0:18-cv-60482-KMM-AOV

      Plaintiff,

v.

ROSS UNIVERSITY SCHOOL OF
MEDICINE, SCHOOL OF VETERINARY
MEDICINE LIMITED,

      Defendant.

_____/

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**
**AND INCORPORATED MEMORANDUM OF LAW**

      Defendant Ross University School of Medicine, School of Veterinary Medicine Limited ("RUSM"), by counsel, moves for summary judgment on the Third Amended Complaint [ECF No. 47] (the "Complaint") filed by plaintiff Oluwamuyiwa Awodiya ("Plaintiff").

## I.  **INTRODUCTION**

      In this action, Plaintiff brings the following ten (10) causes of action against RUSM: (i) violation of Section 504 of the Rehabilitation Act of 1973 (the "Rehabilitation Act"); (ii) violation of Title III of the Americans with Disabilities Act ("ADA"); (iii) violation of 34 C.F.R. § 104.4, *et seq.*; (iv) violation of 34 C.F.R. § 104.44, *et seq.*; (v) violation of Florida Administrative Code Section 6E-2.004(5)(c)(4) or, in the alternative, Section 760.08, Florida Statutes; (vi) breach of contract; (vii) breach of the covenant of good faith and fair dealing; (viii) fraudulent inducement; (ix) misrepresentation in the inducement; and (x) breach of fiduciary duty. Each of Plaintiff's causes of action fail as a matter of law.

      Counts I through IV of the Complaint, which allege that RUSM failed to provide Plaintiff with reasonable accommodations for his attention-deficient/hyperactivity Disorder ("ADHD"), anxiety, and obsessive compulsive disorder ("OCD"), fail because Plaintiff cannot establish two essential elements of these claims: (i) that he made an *actionable* request pursuant to federal law; and (ii) that he is "otherwise qualified" as defined by statute. Plaintiff's inability to proffer facts establishing these two elements are fatal to these claims.

Summary judgment is appropriate as to Counts III and IV of the Complaint, which allege that RUSM violated 34 C.F.R. § 104.4 and 34 C.F.R. § 104.44, because these sections of the Code of Federal Regulation are duplicative of the Rehabilitation Act claim and do not give rise to a private right of action.

Count V of the Complaint, which alleges that RUSM violated Florida Administrative Code Section 6E-2.004(5)(c)(4) or, in the alternative, Section 760.08, Florida Statutes, fail because there is no private right of action for a violation of Florida Administrative Code Section 6E-2.004(5)(c)(4) and Plaintiff has failed satisfy the jurisdictional prerequisites of a claim under Section 760.08, Florida Statutes.

Counts VI and VII of the Complaint, for breach of contract and breach of the covenant of good faith and fair dealing against RUSM, fail because there is no evidence of a breach and no evidence that RUSM acted arbitrarily or capriciously, as is required for a claim against an educational institution like RUSM.

Summary judgment is appropriate as to Counts VIII and IX of the Complaint, asserting claims for fraudulent inducement and negligent misrepresentation against RUSM, because there is no evidence of a false statement or justifiable reliance.

Count X of the Complaint, asserting that RUSM breached a fiduciary duty, fails because RUSM does not owe a duty to Plaintiff as a matter of law.

As to each count of the Complaint, there is no genuine issue of material fact and RUSM is entitled to summary judgment as a matter of law.  Moreover, there is no evidence to support Plaintiff's claims for lost wages or punitive damages.  Accordingly, the Court should grant the Motion and enter judgment in favor of RUSM on each of the counts of the Complaint.

## II.   **FACTUAL BACKGROUND**

Plaintiff is a former RUSM medical student.  [ECF No. 47] at ¶1.  Plaintiff attended RUSM on the island of Dominica from May 2014 until his dismissal from the university in June 2017.  *See* RUSM's Statement of Material Facts in Support of its Motion for Summary Judgment ("SOF"), a copy of which is being filed simultaneously with this Motion, at ¶1.  Before attending RUSM, Plaintiff completed his undergraduate studies at Morgan State University.  *Id.* at ¶ 2.  Plaintiff applied to RUSM in 2013.  *Id.* at ¶ 4.  When Plaintiff enrolled in RUSM, he did not believe he suffered from any impairment or disability.  *Id.* at ¶ 5.

2

Plaintiff's medical records reflect that, during Plaintiff's fifth semester at RUSM, he struggled with emotional distress due to a relationship break-up with a female student who was unfaithful, as well as familial relationship issues and general loneliness. *Id.* at ¶¶ 7-9; *see* [ECF No. 102] at Exhibit SJ-10. This substantially impacted his academics, and contributed to his study habits. *Id.* In December 2015, Plaintiff failed his fifth semester. *Id.* at ¶ 10. After learning of this, Plaintiff suffered from suicidal thoughts and continued visiting the counseling center. *Id.* at ¶¶ 10-12. Plaintiff completed a suicidal assessment, admitting to suffering with self-harm ideations. *Id.* at ¶ 13. As a result, Plaintiff signed a Safety Plan, where he agreed to not attempt to cause harm to himself and agreed to participate in mental health treatment. *Id.* at ¶ 14.

Plaintiff continued to seek counseling from the counseling center at RUSM. *Id.* at ¶ 15. In an effort to get Plaintiff back to the United States sooner, Plaintiff signed a Release of Information Consent form on December 9, 2015. *Id.* at ¶ 16. This document allowed Plaintiff's counselors to communicate with RUSM administrators about getting him off the island earlier. *Id.* at ¶ 17. Plaintiff had not been diagnosed with ADHD, anxiety, or OCD by anyone at the time of executing the Release of Information Consent form. SOF at ¶ 17. Nor did Plaintiff ever request an accommodation or mention the need for extended test time to complete his exams. *Id.* at ¶ 18. Plaintiff continued counseling, pursuant to the Safety Plan, until he returned home to the United States for winter break in mid-December 2015. *Id.* at ¶¶ 19-21.

Upon returning to RUSM in January 2016, Plaintiff resumed counseling at RUSM's counseling center. *Id.* at ¶ 23. *Id.* The counseling center first made a diagnosis of Plaintiff's ADHD in January 2016. *Id.* at ¶ 24. *See also* Declaration of Ryan Roman In Support of Motion for Summary Judgment, Exhibit 25 at ¶ 4. RUSM first diagnosed Plaintiff's anxiety disorder in February 2016. *Id.* Despite receiving the diagnoses for ADHD and anxiety, Plaintiff never requested an accommodation and did not mention the need for additional testing time. SOF at ¶ 34.

RUSM requires its students to take and pass the National Board of Medical Examiners' Comprehensive Basic Science Exam (the "COMP exam") at the end of their fifth semester. *Id.* at ¶ 36. At the time Plaintiff enrolled at RUSM, the minimum passing score for the COMP was a 66. *Id.* at ¶ 37. In September 2015, RUSM advised students that, effective November 2015, it was changing the minimum passing score on the COMP exam from a 66 to a 68. *Id.* at ¶ 38. Plaintiff unsuccessfully attempted to pass the COMP exam five times. *Id.* at ¶¶ 39-47. After failing to pass

3

the exam the fifth time, Plaintiff was dismissed from RUSM in June 2017.  *Id.* at ¶¶ 47.  Plaintiff has offered no evidence that additional time would have enabled him to pass the COMP exam.

Plaintiff appealed his dismissal and RUSM's Student Promotions Committee upheld the dismissal.  *Id.* at ¶ 48.  In response, Plaintiff submitted a personal statement, where he makes no mention of needing additional testing time or that his alleged disability affected his test-taking abilities.  *Id.* at ¶ 49.  Plaintiff disclosed to RUSM for the first time that he was diagnosed with OCD in April 2017.  *Id.*  The decision of the Student Promotions Committee was upheld on appeal. *Id.*at ¶ 50.

### III.   LEGAL STANDARD

The Court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The existence of some factual disputes – as opposed to genuine disputes of material fact – will not defeat a motion for summary judgment.  *See Gordilis v. Ocean Drive Limousines, Inc.*, Civ. No. 12-24358-JLK, 2014 WL 2214274, at *1 (S.D. Fla. May 28, 2014) ("A fact is 'material' if it is may determine the outcome under the applicable substantive law.").  To defeat summary judgment, "the non-moving party cannot merely rest upon his bare assertions, conclusory allegations, surmises or conjectures."  *McIntyre v. FLX of Miami, Inc.*, Civ. No. 08-20030-JJO, 2008 WL 4541017, at *3 (S.D. Fla. Oct. 8, 2008).  A "genuine" dispute as to a material fact exists if the evidence is such that a rational trier of fact could return a verdict for the nonmoving party. *Foreman v. City of Port St. Lucie*, Civ. No. 07-14036-KMM, 2008 WL 958030, at *1 (S.D. Fla. Apr. 8, 2008) (citing *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997)).  The Court must "view the evidence and all factual inferences therefrom in the light most favorable to the party opposing the motion."  *Id.*

### IV.   ARGUMENT

#### A. Judgment Should be Entered on Counts I Through IV of the Complaint Because There is No Evidence that Plaintiff Made an Actionable Request for an Accommodation

To succeed on his failure to accommodate claims, including both his Title III ADA claim and his claim under Section 504 of the Rehabilitation Act, Plaintiff must demonstrate that he (i) has a disability; (ii) is a "qualified individual" under 42 U.S.C. § 12112(a); and (iii) was discriminated against because of his disability by failing to receive an accommodation.  *Hetherington v. Wal-*

4

*Mart, Inc.*, 511 Fed. Appx. 909, 912 (11th Cir. 2013); *Portales v. Sch. Bd. of Broward County*, Civ. No. 16-62935-FAM, 2017 WL 4402534, at *4 (S.D. Fla. Oct. 2, 2017).

Under the ADA and Rehabilitation Act, the duty to provide a reasonable accommodation is not triggered unless a specific demand for an accommodation has been made. *Gaston v. Bellingrath Gardens & Home, Inc.,* 167 F.3d 1361, 1363 (11th Cir. 1999). The demand for accommodation was required to comply with the procedure set by RUSM in its Student Handbook. *See Varad v. Barshak,* 261 F. Supp. 2d 47, 56 (D. Mass. 2003) (holding that plaintiff failed to state a cause of action for failure to accommodate because she did not comply with the Board of Bar Examiners' policy requiring requests for testing accommodations to be in a written format made at least seventy-five days prior to date of examination).

Here, the Student Handbook states: "Foundations of Medicine Requests for accommodations during the foundational science portion of the curriculum should be submitted *in writing to the Accommodations Coordinator for Foundations of Medicine*." *Id.* at ¶ 27 (emphasis added). It further provides that to "qualify for accommodation, a student must identify him/herself to the Accommodation Coordinator for Foundations of Medicine or the Director of Office of Consultation and Support Services for IMF/Clinical Sciences." *Id.* at ¶ 29. It is the responsibility of students, including Plaintiff, "to obtain a thorough written evaluation from an appropriate professional, documenting the presence, extent, and ramifications of the disability." *Id.* at ¶ 30. "The documentation should explain what specific types of accommodation the evaluator believes might be most helpful in offsetting the effects of the disability to an acceptable extent (in the medical school environment, if possible.)." *Id.*

By Plaintiffs' own acknowledgement in his alleged statement of facts filed in support of his motion for summary judgment, *see* [ECF No. 101], he did not follow this procedure. There is no evidence of a written request for accommodation in this case. Plaintiff attempts to circumvent this reality by claiming that a Release of Information Consent form is an accommodation request. [ECF No. 101] at ¶ 17. However, nothing in the Release of Information Consent form asks for an accommodation. The Release of Information Consent form only provides permission for RUSM's Counseling Center to send information to the RUSM administration. RUSM SOF, at ¶ 16. Neither an oral request by Plaintiff nor the completion of a Release of Information Consent form would qualify as a request pursuant to the Student Handbook. *Id.* at ¶¶ 27-35.

Because Plaintiff failed to make an actionable request pursuant to the requirements of the Student Handbook, Counts I through IV of the Complaint fail as a matter of law.

**B. Judgment Should be Entered on Counts I Through IV of the Complaint Because Plaintiff Cannot Establish that He is "Otherwise Qualified"**

Plaintiff cannot establish that he is "otherwise qualified" as required by the ADA and the Rehabilitation Act. To prove that he is "otherwise qualified," Plaintiff must show that, with or without reasonable accommodation, he was able to perform the essential requirements to graduate from RUSM. *See* 42 U.S.C. § 12131(2). Put another way, Plaintiff must present sufficient evidence to show that he could satisfy the program's necessary requirements, or that any reasonable accommodation by the school would enable him to meet these requirements. Plaintiff has not presented evidence that he is "otherwise qualified."

RUSM's Student Handbook states that:

> Candidates must possess the emotional health required for the full utilization of their intellectual abilities, for the exercise of good judgment, for the prompt completion of all responsibilities attendant to the diagnosis and care of patients, for the development of effective relationships with patients and for effective functioning as a member of the health care team. Candidates must be able to tolerate physically taxing workloads and function effectively under stress. They must be able to adapt to changing environments, display flexibility and learn to function in the face of uncertainties inherent in the clinical problems of patients.

[ECF No. 107-1] at ¶ 64; *see also Yaldo v. Wayne State Univ.*, 266 F. Supp. 988, 1012 (E.D. Mich. 2017) (finding a Plaintiff was not "otherwise qualified" if he failed to satisfy the medical school's professionalism requirements); *Zimmeck v. Marshall Univ. Bd. of Governors*, 106 F. Supp. 3d 776, 782 (S.D. W. Va. 2015) (finding that a student diagnosed with depression unqualified under the ADA because he failed to meet the professionalism requirements of the medical school).

In *Yaldo,* a plaintiff who suffered from severe anxiety and depression brought an action against his medical school for discrimination under the Rehabilitation Act and the ADA. 266 F. Supp. 3d. at 1011-1012. The court granted summary judgment in the defendant's favor after finding that the plaintiff was not "otherwise qualified" as defined in the Rehabilitation Act and ADA because he failed to satisfy the medical school's professionalism requirements. *Id.* In so holding, the Court looked to the medical school's Policy and Procedure Manual, which had

language substantially similar to the Student Handbook in this case. *Id.* The Policy and Procedure Manual in *Yaldo* stated:

> The candidate must possess the emotional health required for full utilization of his/her intellectual abilities, the exercise of good judgment, the prompt completion of all responsibilities attendant to the diagnosis and care of patients, and the development of mature, sensitive, and effective relationships with patients. The candidate must be able to tolerate physically taxing workloads and to function effectively under stress. He/she must be able to adapt to changing environments, to display flexibility, and to learn to function in the face of uncertainties inherent in the clinical problems of patients. Compassion, integrity, concern for others, interpersonal skills, interest and motivation are all personal qualities that will be assessed during the admissions and educational processes.

*Id.*

In *Yaldo,* the Court noted that the medical school's Policy and Procedure Manual required "not only that students exercise good judgment, but also that students be able to function effectively under stress." *Id.* The Court then looked at the plaintiff's medical records and noted that the plaintiff's therapist described Plaintiff's anxiety as causing him to react impulsively and make poor decisions. *Id.* Thus, "by the evidence Plaintiff submitted, he did not satisfy the Technical Standards the medical school required because he could not exercise good judgment while under stress." *Id.* The Court also noted that the Plaintiff's therapist found that he had "difficulty for assuming responsibility for his role in the issues that are occurring in his academic program . . . and his personality prevents him from acknowledgement of his responsibility at times and therefore he feels victimized." *Id.* The Court granted the defendant's motion for summary judgment because Plaintiff did not comply with the school's professionalism policy and "failed to carry the burden of demonstrating that he was otherwise qualified." *Id.*

Here, the Student Handbook requires not only that students possess the emotional health required for the full utilization of their intellectual abilities, but also that they exercise good judgment. [ECF No. 107-1, at ¶ 64]. It also requires that students tolerate physically taxing workloads and function effectively under stress. *Id.* Plaintiff has not shown that he satisfies the technical standards of the medical school. The evidence shows that Plaintiff was suffering from depression and had suicidal ideations due to a relationship break-up with a female student who was unfaithful, familial relationship issues, and general loneliness. *See* [ECF No. 102] at Exhibit SJ-10. Plaintiff also reported being "constantly forgetful in daily activities" and having constant

7

difficulty with tasks requiring persistence or organization, including schoolwork and job duties. SOF at ¶ 22.  *See also* [ECF No. 102] at Exhibit SJ-03.  Subsequently, Plaintiff also reported to a physician that he has been pulling his eyelashes and chin hairs out.  SOF at ¶ 49.  *See also* [ECF No. 102] at Exhibit SJ-04.

The Supreme Court of the United States has expressly rejected an interpretation of "otherwise qualified" that would prohibit an institution from considering an individual's limitations when determining that person's eligibility for an academic program.  *See Southeastern Community College v. Davis*, 442 U.S. 397, 405 (1979).  The *Davis* Court stated that "an otherwise qualified person is one who is able to meet all of a program's requirements in spite of his handicap."  *Id.* at 406.  The law does not require an academic program to compromise its enrollment criteria.  *Id.; see also Bercovitch v. Baldwin Sch., Inc.*, 133 F.3d 141, 154 (1st Cir. 1998).  Courts are deferential with respect to the academic judgment of universities.  *See, e.g., Regents of Univ. of Mich. v. Ewing*, 474 U.S. 214, 225 (1985) ("When judges are asked to review the substance of a genuinely academic decision . . . they should show great respect for the faculty's professional judgment."); *Bd. of Curators of the Univ. of Mo. v. Horowitz*, 435 U.S. 78, 90 (1978) ("[T]he determination whether to dismiss a student for academic reasons requires an expert evaluation of cumulative information and is not readily adapted to the procedural tools of judicial or administrative decision-making.").  "It is equally clear that '[u]niversity faculties must have the widest range of discretion in making judgments as to academic performance of students. . . .'" *Forbes v. St. Thomas Univ., Inc.*, 768 F. Supp. 2d 1222, 1232 (S.D. Fla. 2010).  As this Court recently held, "whether a student is qualified to be a physician is an academic judgment that requires an expert evaluation of cumulative information and is not readily adapted to the procedural tools of judicial or administrative decision making."  *See* Order on Motion for Judgment on the Pleadings [ECF No. 105] at 4 (*citing Jallali v. Nova Se. Univ., Inc.,* 992 So. 2d 338, 342 (Fla. Dist. Ct. App. 2008)).

"A school's code of conduct is not superfluous to its proper operation; it is an integral aspect of a productive learning environment." *Bercovitch*, 133 F.3d 141 at 154.  Furthermore, Plaintiff has offered no evidence that additional time would have enabled him to pass the COMP exam) that he failed five times.  Therefore, Plaintiff is not "otherwise qualified" and judgment should be entered in RUSM's favor on Counts I and II.

### C.  Judgment Should be Entered on Counts III and IV of the Complaint Because They are Duplicative of Count I and There is No Private Right of Action

In Counts III and IV of the Complaint, Plaintiff brings claims alleging that RUSM violated 34 C.F.R. 104.4 and 34 C.F.R. 104.44, respectively.  Both of these claims must fail because they are duplicative of Count I of the Complaint, which alleges that RUSM violated Section 504 of the Rehabilitation Act.

The relevant sections of the Code of Federal Regulations were instituted by the Department of Education in coordination with the Attorney General of the United States after Executive Order No. 12250 §§ 1-201(c) and 1-402 directed all executive agencies covered by Section 504 to issue appropriate implementing regulations or policy guides.  The purpose of 34 C.F.R. § 104.1, *et seq.*, "is to effectuate section 504 of the Rehabilitation Act of 1973, which is designed to eliminate discrimination on the basis of handicap in any program or activity receiving Federal financial assistance."  *See* 34 C.F.R. § 104.1.  Neither 34 C.F.R. 104.4 nor 34 C.F.R. 104.44 can form the basis of separate claims from Plaintiff's Rehabilitation Act claim.  Accordingly, judgment should be entered in RUSM's favor as a matter of law.

Moreover, neither 34 C.F.R. 104.4 nor 34 C.F.R. 104.44 create a private right of action. *See Powers v. MJB Acquisition Corp.*, 993 F. Supp. 861, 869 (D. Wyo. 1998) (dismissing a plaintiff's claim under 34 C.F.R.  § 104.1 because the regulations do not create a private cause of action).  Instead, they set forth remedial actions for the Assistant Secretary for Civil Rights of the Department of Education to take if it is found that a recipient of federal funding discriminated against persons because of a handicap in violation of Section 504.  *See e.g.* 34 C.F.R. § 104.6 (emphasis added).  In *Powers*, the plaintiff brought a civil lawsuit under 34 C.F.R. §104.1 *et seq.* and the Court dismissed Plaintiff's claim.  993 F. Supp. at 869.  In doing so, the Court stated as follows:

> The Court is unable to discern the reason for Plaintiffs' inclusion of this claim in their Complaint.  Pt. 104 by its very terms states that its only purpose is to effectuate § 504 of the Rehabilitation Act. Given that Plaintiffs have stated a claim under § 504 any claim that could possibly be asserted under 34 C.F.R. Pt. 104 is obviously redundant.  Furthermore, there is no authority – and Plaintiffs do not direct the Court's attention to any – indicating that Congress intended Pt. 104, or any other similarly obscure regulation, to bestow upon individuals a private cause of action.  The Court therefore will dismiss this claim.

47429652;1

*Id.*

The reasoning of the Court in *Powers* is applicable here.  Therefore, judgment should be entered in RUSM's favor on Counts III and IV.

### D.  Judgment Should be Entered on Count V of the Complaint Because There is No Private Right of Action

In Count V of the Complaint, Plaintiff brings a claim alleging that RUSM violated Florida Administrative Code Section 6E-2.004(5)(c)(4) or, in the alternative, Section 760.08, Florida Statutes.  Either claim must fail as a matter of law because there is no private right of action under the former and Plaintiff has failed to comply with a prerequisite to the latter.

### 1.  There is No Private Right of Action Under Fla. Admin. Code Section 6E-2.004(5)(c)(4)

Plaintiff brings his fifth cause of action pursuant to Florida Administrative Code Section 6E-2.004(5)(c)(4).  However, there is no private right of action under this regulation.  This section of the Administrative Code regulates the standards and procedures for licensure of schools.  The penalty for a violation of this section is denial of the license or discipline by the Commission for Independent Education.  *See* Fla. Admin. Code § 6E-2.0061.  The statute does not set forth any basis by which a private citizen can bring a civil claim pursuant thereto.

The Florida Supreme Court has made clear that "a statute that does not purport to establish civil liability, but merely makes provision to secure the safety or welfare of the public as an entity, will not be construed as establishing a civil liability."  *Murthy v. N. Sinha Corp.*, 644 So. 2d 983, 986 (Fla. 1994).  Absent such expression of intent, a private right of action is not implied.  *Villazon v. Prudential Health Care Plan, Inc.*, 843 So. 2d 842, 852 (Fla. 2003).

Here, the Administrative Code does not establish civil liability.  Therefore, this claim should fail as a matter of law.

### 2.  Plaintiff Has Not Met the Jurisdictional Prerequisites

As an alternative, Plaintiff brings a claim for violation of Section 760.08, Florida Statutes, the Florida Civil Rights Act ("FCRA").  This claim also fails because Plaintiff must exhaust all administrative remedies before bringing a claim for discrimination.

The FCRA provides that, if "the statute prohibiting unlawful discrimination provides an administrative remedy, the action for equitable relief and damages provided for in this section may be initiated only after the plaintiff has exhausted his or her administrative remedy."  Fla. Stat.

§ 760.07.  In Section 760.11, the legislature provided an administrative remedy to any "person aggrieved by a violation of ss. 760.01-760.10." *Id.*

To maintain a cause of action under Section 760.08, Plaintiff was first required file a Complaint with the Florida Commission on Human Relations within 365 days of the alleged violation and follow the remaining mandatory procedures outlined in Section 760.11.  *See Jones v. Bank of Am.*, 985 F. Supp. 2d 1320, 1324-25 (M.D. Fla. 2013) ("As a jurisdictional prerequisite to filing an FCRA action, a plaintiff must exhaust her administrative remedies by filing a timely charge with the appropriate agency."); *Olson v. Dex Imaging, Inc.*, 63 F. Supp. 3d 1353, 1361 (M.D. Fla. 2014) ("To bring a suit for discrimination under the FCRA, a plaintiff first must exhaust administrative remedies.");

Here Plaintiff failed to follow the mandatory procedures before filing this suit. Accordingly, summary judgment should be entered in RUSM's favor on Count V.  *See Jones*, 985 F. Supp. 2d at 1331 (dismissing a complaint with prejudice for failing to timely exhaust administrative remedies).

> **E.  Judgment Should be Entered on Counts VI and VII of the Complaint Because Plaintiff Cannot Establish Essential Elements of These Claims**

In Count VI and VII, Plaintiff asserts claims for breach of contract and breach of the covenant of good faith and fair dealing.  Both of these claims deal with purported violations of the Student Handbook.  Pursuant to Florida law, "[a] court will not interfere with a private university's enforcement of its regulations unless the university has acted arbitrarily and capriciously, in violation of a constitution or statute, or for fraudulent purposes.*"  Sirpal v. Univ. of Miami*, Civ. No. 09-22662-STB, 2011 WL 3101791 at *14 (S.D. Fla. July 25, 2011) (citing *Jallali v. Nova Se. Univ., Inc.*¸ 992 So. 2d 338, 342 (Fla. Dist. Ct. App. 2008)).  Plaintiff has broken down the purported violations into six different "sub-counts."  [ECF No. 47] at ¶¶ 93-99.  Summary judgment is warranted on each of these sub-counts because Plaintiff has not presented any evidence to show that RUSM's actions were arbitrary or capricious.

> ### *1.  Sub-Counts I Through III Fail as a Matter of Law*

The first three sub-counts deal with Plaintiff's allegation that RUSM failed to provide Plaintiff with adequate accommodations after his ADHD diagnosis.  There is no evidence that RUSM's alleged failure to provide him a reasonable accommodation was arbitrary or capricious. Instead, the record evidence clearly establishes that RUSM has a set policy, through its Student

Handbook, of how to apply for accommodations.  SOF at ¶¶ 27-32.  The record evidence also shows that Plaintiff failed to properly apply for an accommodation.  SOF at ¶ 34.  RUSM requires all applications for accommodations to be made in writing and be supported by adequate documentation.  *Id.* at ¶ 29.

Courts have held that institutions can require requests for accommodations to be submitted in written format.  *See Varad*, 261 F. Supp. 2d at 56 (holding that plaintiff failed to state a cause of action for failure to accommodate because she did not comply with the Board of Bar Examiners' policy requiring requests for testing accommodations to be in a written format made at least seventy-five days prior to date of examination).  Where a plaintiff is aware of a policy requiring an application to be made in writing but fails to follow it, he is responsible for the breakdown of the interactive process.  *Id.*  Plaintiff failed to comply with RUSM's policy in seeking a reasonable accommodation.  Summary judgment as to sub-counts I through III should be granted.  Moreover, because sub-counts I through III relate to Plaintiff's failure to accommodate claims, to the extent that Plaintiff's ADA and Rehabilitation Act claims fail, these sub-counts must also fail.

### 2.  *Sub-Counts IV and V Fail as a Matter of Law*

In sub-counts IV and V, Plaintiff alleges that RUSM breached a contract with him and breached the covenant of good faith and fair dealing by changing its Student Handbook after he enrolled.  However, the Student Handbook in existence when Plaintiff enrolled provided that RUSM "reserved the right to change, modify or delete, without notice, any course offering or information contained in this catalog."  SOF at ¶ 36.

Moreover, Plaintiff cannot establish that RUSM's changes to its policy were arbitrary or capricious.  "Implicit in the university's general contract with students is a right to change the university's academic degree requirements if such changes are not arbitrary or capricious."  *Jallali v. Nova Se. Univ., Inc.,* 992 So. 2d 338, 343 (Fla. Dist. Ct. App. 2008); *see also Doherty v. S. Coll. of Optometry,* 862 F.2d 570, 577–78 (6th Cir. 1988) ("No record evidence exists that [the school] acted arbitrarily, capriciously or with malice.").  A court should not interfere with a private university's enforcement of its regulations unless the university has acted arbitrarily and capriciously, in violation of a constitution or statute, or for fraudulent purposes.  *See John B. Stetson Univ. v. Hunt,* 102 So. 637, 640 (Fla. 1924); *see also McCawley v. Universidad Carlos Albizu, Inc.*, 461 F. Supp. 2d 1251, 1257 (S.D. Fla. 2006) ("Courts are generally reluctant to

interfere with or substitute their judgment regarding decisions of academic institutions to award degrees.").

The United States Supreme Court has held that "[u]niversity faculties must have the widest range of discretion in making judgments as to the academic performance of students and their entitlement to promotion or graduation." *Regents of Univ. of Mich. v. Ewing*, 474 U.S. 214, 225 n. 11 (1985). The decision of whether a student is qualified to be a physician is an academic judgment that "requires an expert evaluation of cumulative information and is not readily adapted to the procedural tools of judicial or administrative decision-making." *Jallali*, 992 So. 2d at 342. Like the plaintiff in *Jallali*, Plaintiff alleges that RUSM breached its contractual obligation and breached the covenant of good faith and fair dealing when it changed its academic policy and passing requirements. [ECF No. 47] at ¶ 95. However, Plaintiff has not presented any evidence to suggest that such changes to the Student Handbook or Academic Catalog were arbitrary or capricious. Nor is Plaintiff able to. RUSM has the ability to set forth the terms under which it will admit and subsequently graduate its students. Summary judgment should be granted in RUSM's favor as to sub-counts IV and V of Plaintiff's breach of contract and breach of the covenant of good faith and fair dealing claims.

### 3. Sub-Count VI Fails as a Matter of Law

In sub-count VI, Plaintiff alleges that RUSM breached a contract and the covenant of good faith and fair dealing when RUSM's Dean failed to respond to Plaintiff within 15 calendar days of receipt of the second appeal. [ECF No. 47] at ¶ 95. The record evidence shows that Plaintiff submitted his appeal on June 13, 2017. [ECF No. 102] at Exhibit SJ-16. Upon review, Dean Owen upheld Plaintiff's dismissal and informed Plaintiff by letter on June 29, 2017. SOF at ¶ 50. This Court has previously held that Plaintiff cannot establish that the Dean's failure to reply within the 15 day deadline was arbitrary or capricious or otherwise affected Plaintiff in any material way. *See* Order on Plaintiff's Motion for Judgment on the Pleadings [ECF No. 105] at 7. Summary judgment is thus warranted as to sub-count VI of Count VI and Count VII.

### F. Judgment Should be Entered on Counts VIII and IX of the Complaint Because There is No Evidence of a False Statement or Justifiable Reliance

Under Florida law, in order to establish a viable cause of action for negligent misrepresentation, a plaintiff must prove that: (i) the defendant made a misrepresentation of material fact that he believed to be true but which was in fact false; (ii) the defendant was negligent

in making the statement because he should have known the representation was false; (iii) the defendant intended to induce the plaintiff to rely on the misrepresentation; and (iv) injury resulted to the plaintiff acting in justifiable reliance upon the misrepresentation. *Simon v. Celebration Co.*, 883 So. 2d 826, 832 (Fla. Dist. Ct. App. 2004) (citing *Johnson v. Davis*, 480 So. 2d 625 (Fla. 1985)).

Similarly, in order to prevail on a claim for fraudulent inducement, a plaintiff must show that: (i) the defendant made a misrepresentation material fact; (ii) the defendant knew or should have known of the falsity of the statement; (iii) the defendant intended for the representation to induce plaintiff to rely on it and act on it; and (iv) the plaintiff suffered injury in justifiable reliance on the representation. *Biscayne Inv. Group, Ltd. v. Guarantee Management Servs., Inc*. 903 So. 2d 251 (Fla. 3d DCA 2005) (*citing Samuels v. King Motor Co. of Ft. Lauderdale*, 782 So. 2d 489 (Fla. 4th DCA 2001)).

Plaintiff contends RUSM made a misstatement on its website by representing: "It is the policy and practice of the University to comply with the Americans with Disabilities Act as applicable and practical in Dominica." As an initial matter, Plaintiff has not stated any facts that establish the falsity of that statement. RUSM stands by the veracity of the statement made on its website. *Checkers Drive-In Restaurants, Inc. v. Tampa Checkmate Food Servs., Inc.,* 805 So. 2d 941, 944 (Fla. Dist. Ct. App. 2001) (reversing judgment for fraudulent inducement where "there was no evidence, however, that the statement attributed to Mr. Brown in this press release was false or misleading at the time it was made."). The language clearly states that RUSM will comply with the ADA "as applicable and practical" in Dominica and the evidence supports that RUSM's actions are consistent with this statement.

Moreover, there is no evidence that RUSM intended to induce the plaintiff to rely on the statement or that Plaintiff justifiably relied on the statement. *Tambourine Comerico Int'l S.A. v. Solowsky*, No. 06-20682 CIV, 2007 WL 689466, at *6 (S.D. Fla. Mar. 4, 2007) (holding that "reliance requires a plaintiff to establish that, but for the alleged misrepresentation or omission, the plaintiff would not have entered into the transaction at issue."). Neither Plaintiff nor RUSM knew that Plaintiff suffered from an impairment or disability at the time he was admitted into medical school. SOF at ¶5. Moreover, Plaintiff testified that he never reviewed the ADA prior to the litigation. *Id.* at ¶4.

14

Plaintiff's failure to proffer evidence establishing the essential elements of his fraudulent inducement and fraudulent misrepresentations claims is fatal to these claims. Judgment should be entered in RUSM's favor on Counts VIII and IX of the Complaint.

### G. Judgment Should be Entered on Count IX for Breach of Fiduciary Duty Because RUSM Does Not Owe A Duty to Plaintiff as a Matter of Law

Plaintiff cannot establish a claim for breach of fiduciary duty, alleged in his tenth cause of action. *Morrison v. Univ. of Miami*, Case No. 1:15-cv-23856-UU, 2016 WL 3129490 (S.D. Fla. Jan. 20, 2016). As the Court held in *Morrison*, "a fiduciary duty does not simply arise because of students' status." *Id.* at *7. In *Morrison*, the plaintiff attempted to circumvent a long line of case law supporting this position by arguing that a "special relationship" arose from her "dependency" on the University to handle her complaints of discrimination and retaliation. *Id.* In response, this Court stated that "this reasoning would convert many, if not all, employer/employee relationships into fiduciary relationships, and there is simply no support in the law for such a result." *Id.* The Court dismissed the plaintiff's breach of fiduciary duty claim with prejudice.

The reasoning in *Morrison* is equally applicable here. Plaintiff cannot establish that any fiduciary relationship exists. Plaintiff's motion for summary judgment on his breach of fiduciary duty claim should be denied and his claim should be dismissed as a matter of law.

### H. Plaintiff's Claim for Lost Earning Capacity Damages Should be Stricken Because there are No Facts Showing that Plaintiff Lost Any Wages

Plaintiff's claim for lost earning capacity damages should be stricken because there is no evidence supporting such damages. Through the close of discovery, Plaintiff has not provided RUSM with any evidence, through tax returns or otherwise, that he lost any wages as a result of RUSM's alleged failure to accommodate. Although Plaintiff opines that he is unable to become a doctor or find equally as lucrative alternative work, *see* Plaintiff's Third Amended Calculation of Damages, attached hereto as **Exhibit A**, this is nothing more than a self-serving and unqualified vocational rehabilitation opinion by an unqualified lay witness and subject to a *Daubert* motion filed by RUSM concurrently herewith.

Only an expert can opine on whether or not Plaintiff can obtain equally as lucrative employment in the future. Plaintiff cannot meet his burden of establishing that he has the qualifications necessary to render such expert opinions and his opinion is not based on a reliable methodology used by experts in the field. *See Elcock v. Kmart Corp.*, 233 F.3d 734 (3d Cir. 2000)

(discussing the "outer limit" of the qualifications necessary to testify as a vocational rehabilitation expert).

In *Elcock*, the Third Circuit discussed the "floor" with respect to an expert witness's qualifications.  *Id.* at 743.  In *Elcock*, Plaintiff's proffered expert had no formal training in vocational rehabilitation but had experience obtaining employment for disabled individuals while working with the Division of Workers' Compensation.  The Court noted that in his position with the Division of Workers' Compensation, the proffered expert must have "learned about the difficulties disabled individuals face in employment, and has accumulated some experience in evaluating whether they can return to a particular job." *Id.*  The Court also acknowledged that the proffered expert "kept abreast of the relevant literature in his field" and "consulted the Dictionary of Occupational Titles, a standard tool of the vocational rehabilitationist." *Id.*  In addition, the expert possessed "a degree in a field tangentially related to the one about which he testified, and he has also attended conferences regarding vocational rehabilitation." *Id.*  Finally, in the process of testifying as an expert in similar matters, the expert "no doubt performed his brand of vocational rehabilitation assessments." *Id.*  Despite these qualifications the Court had "misgivings" and found that the proffered expert was only "marginally qualified to perform a vocational rehabilitation assessment." *Id.*  In fact, the Court made clear that a district judge, within its discretion, would be free to decline to qualify him.

Plaintiff is not a vocational rehabilitation expert and has no experience helping people who suffer from mental impairments get or keep a job.  Plaintiff cannot meet his burden of establishing that he has the qualifications necessary to render vocational rehabilitation opinions or show that his methodology is reliable.  Outside of Plaintiff's owns self-serving and inadmissible opinion, there is no other evidence of lost earning capacity damages.  Accordingly Plaintiff's claim for such damages should be stricken.

## I.   Plaintiffs Claim for Monetary Damages on His ADA Title III Claim Should Be Stricken

Plaintiff may only seek injunctive relief on his ADA Title III claim (Count II).  *See* 42 U.S.C.A. § 12188; 42 U.S.C.A. § 2000a-3.  Monetary damages are not an available remedy.  *Id.*  Accordingly, Plaintiff's request for monetary damages for his ADA claim should be stricken as a matter of law.  *Forbes v. St. Thomas Univ., Inc.,* No. 07-22502-CIV, 2008 WL 11411866, at *3

(S.D. Fla. Aug. 28, 2008) (granting motion to strike student's request for damages on her ADA, Title III claims).

### J.  Plaintiff's Claim for Punitive Damages Should Be Stricken As a Matter of Law

Although Plaintiff can receive monetary damages under the Rehabilitation Act for intentional discrimination, punitive damages are not available. *Barnes v. Gorman*, 536 U.S. 181, 189 (2002) (holding punitive damages are unavailable section 504).  Moreover, punitive damages are not recoverable for breach of contract claims, irrespective of the motive of defendant. *Griffith* v. *Shamrock Village, Inc.,* 94 So. 2d 854 (Fla. 1957).  Because punitive damages cannot be sought on Plaintiff's Rehabilitation Act Claim (Count I), ADA Title III Claim (Count II) and Breach of Contract Claims (Counts VI and XII), Plaintiff's claim for punitive damages on these claims should be stricken as a matter of law.

Moreover, under Florida Statutes Section 768.72(2), "a defendant may be held liable for punitive damages only if the trier of fact, based on clear and convincing evidence, finds that the defendant was personally guilty of intentional misconduct or gross negligence.  "No claim for punitive damages shall be permitted unless there is a reasonable showing by evidence in the record or proffered by the claimant which would provide a reasonable basis for recovery of such damages." *Id*.

Here, Plaintiff cannot meet his burden of establishing that RUSM engaged in intentional misconduct or gross negligence, nor has Plaintiff made any effort to do so.  Accordingly, Plaintiff's claim for punitive damages should be stricken in its entirety.

## <u>CONCLUSION</u>

WHEREFORE, defendant Ross School of Medicine, School of Veterinary Medicine Limited respectfully requests that this Court enter an Order: (i) granting its motion for summary judgment in all respects; (ii) dismissing all of Plaintiffs' causes of action and entering final judgment in RUSM's favor; and (iii) granting RUSM such other and further relief as the Court deems just and proper.

47429652;1

Dated: January 4, 2019

Respectfully submitted,

*/s/Donnie M. King*
MICHAEL C. MARSH
Florida Bar Number:  0072796
Email:  michael.marsh@akerman.com
Secondary:  sharon.luesang@akerman.com
RYAN A. ROMAN
Florida Bar Number:  0025509
Email:  ryan.roman@akerman.com
Secondary:  dorothy.matheis@akerman.com
DONNIE M. KING
Florida Bar Number: 101386
Email: donnie.king@akerman.com
Secondary: simone.tobie@akerman.com
OCTAVIA M. GREEN
Florida Bar Number: 119179
Email: octavia.green@akerman.com
Secondary: simone.tobie@akerman.com
**AKERMAN LLP**
98 SE 7th Street, Suite 1100
Miami, FL 33131
Phone:  (305) 374-5600
Fax:  (305) 374-5095

*Attorneys for Defendant Ross University School of*
*Medicine, School of Veterinary Medicine Limited*

18

## <u>CERTIFICATE OF SERVICE</u>

       I HEREBY CERTIFY that on January 4, 2019 a true and correct copy of the foregoing document was served via CM/ECF on:

       Oluwamuyiwa Awodiya
       15005 Dahlia Drive
       Bowie, Maryland 20721
       Telephone: (240) 602-1836
       E-mail: drmuyiwa.a@gmail.com

                                               *s/Donnie M. King*
                                             Donnie M. King

47429652;1