

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| | |
|---|---|
| OLUWAMUYIWA AWODIYA, | Case No. 0:18-cv-60482-KMM |
| *Plaintiff,* | |
| -v- | Hon. Chief Judge: K. Michael Moore |
| | Magistrate Judge: Alicia O. Valle |
| ROSS UNIVERSITY SCHOOL OF MEDICINE, SCHOOL OF VETERINARY MEDICINE LIMITED | |
| *Defendant.* | |

## PLAINTIFF'S MOTION IN LIMINE TO EXCLUDE EVIDENCE REGARDING UNCERTAINTY OF DAMAGES, EX-GIRLFRIEND, COUNSELING NOTES, AND JUDICIAL ADMISSIONS

Pursuant to Federal Rules of Evidence 401, 402, 403, 802, and 805, Plaintiff Oluwamuyiwa Awodiya ("Plaintiff"), in proper person, hereby files his Motion in Limine to exclude evidence regarding the uncertainty of the post-discrimination (post-breach of contract) qualifications of becoming a medical doctor, Plaintiff's ex-girlfriend, hearsay within hearsay suicidal thoughts in counseling notes, and controverting evidence bearing on judicial admissions by defendant Ross University School of Medicine, School of Veterinary Medicine Limited ("RUSM").

## INTRODUCTION

Under Florida law, it is patently unfair for RUSM to unlawfully deny Plaintiff from obtaining his degree and then use the resulting uncertainty, caused by its wrongful actions, to then "complain" that Plaintiff has not established a track record to justify the value of the contract (the medical degree). RUSM also intends to make Plaintiff's ex-girlfriend the center of this case by alleging that his breakup caused Plaintiff's grades to decline, which is entirely fabricated. Plaintiff's ex-girlfriend is irrelevant to this case. RUSM is also attempting to admit disguised

1

hearsay within hearsay under either a medical records or business record exception. The hearsay within hearsay they intend to admit does not possess the substantial guarantees of trustworthiness and the suicidal counseling note statements of Mr. Cuffy are not firmly rooted in a hearsay exception and are proven to be factually incorrect by counseling notes from other faculty in the Counseling Center that did not rely on hearsay to write their reports. And lastly, RUSM is attempting to controvert its judicial admissions with self-serving testimony.

## **LEGAL STANDARD**

"A motion *in limine* is made before a trial has begun for the purpose of excluding or including certain evidence." *Begualg Inv. Mgmt., Inc. v. Four Seasons Hotel Ltd.*, Case No. 10-22153-Civ-SCOLA, at *1 (S.D. Fla. Feb. 27, 2013). *In limine* rulings are not binding on a trial court and remain subject to reconsideration during course of trial. *Id.*

Under the Federal Rules of Evidence, "[r]elevant evidence is admissible" unless it is prohibited by the United States Constitution, a federal statute, the Rules themselves, or other rules prescribed by the Supreme Court. Fed. R. Evid. 402. "Evidence is relevant," in turn, if "it has any tendency to make a fact more or less probable than it would be without the evidence," and "the fact is of consequence in determining the action." Fed. R. Evid. 401. "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

"Hearsay is not admissible" unless it falls within an exception. Fed. R. Evid. 802. "Hearsay included within hearsay is inadmissible unless each part of the combined statements conforms with an exception to the hearsay rule." Fed. R. Evid. 805.

"A judicial admission is a statement by a party or its counsel that removes a factual issue from dispute in a litigation and binds both parties on trial and appeal." *Starbuck v. R.J. Reynolds Tobacco Co.*, Case No. 3:09-cv-13250-WGY-HTS, at *16 (M.D. Fla. Nov. 16, 2018). *Cooper v. Meridian Yachts, Ltd.*, 575 F.3d 1151, 1177 (11th Cir. 2009) (holding that generally, "a party is bound by the admissions in his pleadings"). "[F]acts judicially admitted are facts established not only beyond the need of evidence to prove them, but beyond the power of evidence to controvert them." *Id.* at 1178.

## ARGUMENT

### I. Evidence Pertaining to the *Uncertainty* of the Remaining Qualifications of Becoming a Medical Doctor are Prejudicial and Irrelevant as a Matter of Law

Florida law controls the assessment of damages in this case. RUSM breached its contract with Plaintiff when it wrongfully dismissed him by not honoring the terms of the contract and by violating his statutory rights. As Justice Holmes said, "If a contract is broken the measure of damages generally is the same, whatever the cause of the breach." *Globe Ref. Co. v. Landa Cotton Oil Co.*, 190 U.S. 540, 544 (1903).

RUSM unlawfully excluded Plaintiff from participating in the rest of its medical program which consequently prevented him from earning the post-discrimination requirements necessary to become a medical doctor. As a matter of law, RUSM is foreclosed from complaining of the resulting uncertainty of the post-discrimination (post-breach of contract) requirements.

"[J]udicial review of a private educational institution's determination of academic performance in this context is limited to whether the challenged determination was arbitrary and capricious, irrational, made in bad faith, or in violation of constitution or statute." *Sharick v. Southeastern University*, 780 So. 2d 136, 138 (Fla. Dist. Ct. App. 2000), review granted, 804 So.2d 330 (Fla. 2001), 805 So.2d 809 (Fla. 2002), review dismissed, 822 So.2d 1290 (Fla. 2002).

3

In *Sharick*, after a jury found that the medical school wrongfully dismissed the medical student, the appeals court concluded that the trial court had erred in refusing to allow the medical student to plead and prove damages stemming from lost earning capacity and ordered a new trial on damages on remand. *Id.* The court in *Sharick* held:

> The relationship between the parties in this case was essentially a contract between the party who paid a fee for services, the student, and the provider of those services, the private university.
>
> ....
>
> In valuing the loss of this degree within the context of an arbitrary, capricious or bad faith deprivation of such, we conclude that it is appropriate to consider the possibility of lost future earnings. ... While we acknowledge the requirement for certainty of damages in a contract action, this court has recognized several modifying doctrines to this rule, which include:
>
>> (a) If the fact of damage is proved with certainty, **the extent or amount may be left to reasonable inference.**
>>
>> (b) **Where the defendant's wrong has caused the difficulty of proof of damage, he cannot complain of the resulting uncertainty.**
>>
>> (c) Mere difficulty in ascertaining the amount of damage is not fatal.
>>
>> (d) Mathematical precision in fixing the exact amount is not required.
>>
>> (e) If the best evidence of the damage of which the situation admits is furnished, this is sufficient.
>>
>> (f) **The plaintiff may recover the value of his contract, and this may be measured by the value of the expected profits.**
>>
>> (g) Profits may sometimes be proved as evidence of the damages, when they would not be directly recoverable.
>
> ....
>
> ... If the jury finds that it is no longer possible for Sharick to obtain a DO degree, then Southeastern would be **foreclosed from**

4

> **complaining of the resulting uncertainty in proof of damage caused by its wrongful actions**.
>
> ... Accordingly, the extent or amount of the resulting impairment to Sharick's earning capacity may be determined by a jury based upon reasonable inference.

*Id.* at 139-140. The established law makes sense, since it would be patently unfair for RUSM to unlawfully deny Plaintiff from obtaining his degree and then use the resulting uncertainty, caused by its wrongful actions, to then claim that Plaintiff has not established a track record to justify the value of the contract (the medical degree).

In fact, under Florida law, a party "can recover lost prospective profits regardless of whether it is established or has any 'track record.'" *In re Standard Jury Instructions—Contract & Business Cases*, 116 So. 3d 284, 334-335 (Fla. 2013) (quoting *W.W. Gay Mechanical Contractor, Inc. v. Wharfside Two, Ltd.*, 545 So.2d 1348, 1351 (Fla.1989); *accord Nebula Glass Intern., Inc. v. Reichhold*, 454 F.3d 1203, 1214 (11th Cir. 2006).

## II. The Self-Harm and Suicidal Accusations in McMillan Cuffy's Counseling Notes are Inadmissible Hearsay Within Hearsay

On December 8, 2015, Plaintiff met Mr. Cuffy for the first time [ECF No. 107-2, **Ex. 11**]. Mr. Cuffy repeatedly accused Plaintiff of self-harm ideations and was trying to force the ideation upon Plaintiff, simply because of alleged reports that were relayed to Mr. Cuffy from Jennifer Swaim which came from Jeanie Robertson which allegedly came from phone calls from the Plaintiff's mother, that allegedly came from text messages. *See* **Ex. SJ-28** therein [ECF No. 113] (Jennifer Swaim's counseling note dated December 8, 2015) and **Ex. SJ-29** therein [ECF No. 113] (Jeanie Robertson's email dated December 9, 2015).

On December 8, 2015, Jennifer Swaim "was ccontacted [*sic*] by Jeannie [*sic*] Robertson indicating that the patient's mother had reached out to her and was concerned about the clients safety as he failed his exams and was notified on Monday." **Ex. SJ-28**. Jeanie Robertson's email

5

states, "[m]other was concerned after student failed an exam by one point he was threatening to harm himself I called Jennifer Swaim at the counseling center in Dominica and let her know of the situation she referred the issue to Koffi [Mr. Cuffy] who is on call." **Ex. SJ-29**. Her email also alleges, "mother called again saying she had gotten a text from son saying he would rather die." *Id.* According to Jennifer Swaim's counseling note, this "[i]nformation regarding the individual and contact information was relayed to the on-call counselor for assessment." Ex. SJ-28. Mr. Cuffy "called Plaintiff into the Counseling Center where Plaintiff met with Mr. Cuffy." [ECF No. 107-1 at ¶ 45].

According to the December 9, 2015 counseling note, "[a]t the end of the session **yesterday** [December 8, 2015] he claimed to not have any intent to harm himself." **Ex. SJ-10**, at 1 (last sentence) therein [ECF No. 102]; "Was not suicidal." *Id.* at 2; "Denies wanting to harm himself but does not like the thoughts of sadness." *Id.* Jeanie Robertson stated in her email, "I received word from coffee [Mr. Cuffy] this morning ninth saying that he had met with the student for several hours and did not feel as did Dr. Sharma and did not feel there was a concern at this time he felt he was stable." **Ex. SJ-29**.

On December 10, 2015, despite the fact that Plaintiff continued to deny having self-harm thoughts, Mr. Cuffy incomprehensibly continued to put that Plaintiff was having self-harm ideations on that day because of the hearsay reports that were relayed Mr. Cuffy. According to the December 11, 2015, counseling note, "CLient [*sic*] stopped by **yesterday** [December 10, 2015] afternoon after meeting with Dr. Hayes at Student Affairs. He came out of the meeting feeling disappointed but denied having negative thoughts or thoughts of self harm." [ECF No. 107-2, **Ex. 12**]. Blantly ignoring Plaintiff, Mr. Cuffy still put "self harm ideation present" for December 10, 2015. **Ex. SJ-11** therein [ECF No. 102].

Jumping back to Mr. Cuffy's first accusation of self-harm ideation in his December 8, 2015, counseling note [ECF No. 107-2, **Ex. 11**], the counseling note actually contradicts itself and shows that Mr. Cuffy took notes of the hearsay reports that were relayed to him and ignored the actual statements and denials that were made by Plaintiff. The note states, "Do you have a history of suicide ideations? No." *Id.* at 1. The same note states, "Do you have a history of suicide ideations? Yes He admitted having similar thoughts around mini 1 of this semester when he found out that his girlfriend was being unfaithful." *Id.* It is unclear from the counseling note as to what gestures or expressions Mr. Cuffy may have misconstrued as an admission. But the evidence is clear, Plaintiff, in fact, did not have suicide ideations or self-harm ideations when he found out that his girlfriend was being unfaithful. *See* [ECF No. 107-2, **Ex. 9**]. The counseling note that was created three days after Plaintiff found out about his girlfriend's unfaithfulness, states, "Self harm/Suicide/Homicide screen[:] **no thoughts of harm to self**, no history of self-injurious behavior, **no history of suicidal ideation**, no thoughts of harm to others." *Id.* at 2 (emphasis added).

"[T]he evidentiary rationale for permitting hearsay testimony regarding ... statements made in the course of receiving medical care is that such out-of-court declarations are made in contexts that provide substantial guarantees of their trustworthiness." *White v. Illinois*, 502 U.S. 346, 355 (1992). "Th[e] lack of knowledge, or at least uncertainty, about who transmitted the information contained in the treatment records also deprives the information of trustworthiness." *U.S. v. Smith*, 318 Fed. Appx. 780, 796-97 (11th Cir. 2009). "Hearsay included within hearsay is inadmissible unless each part of the combined statements conforms with an exception to the hearsay rule." Fed. R. Evid. 805. "Given the uncertainty of the source of the hearsay statement, we need not address the parties' arguments as to whether the hearsay statements were actually relied

upon for treatment or diagnosis." *Geis V. Tricam Industries, Inc.*, Civil Action No. 09-1396 (MLC)., at *1 (D.N.J. Jul. 20, 2011). "Because the identity of the declarant is unclear with respect to both of the challenged statements, we cannot find that the medical diagnosis exception to the hearsay rule would provide for the admissibility of the challenged statements." *Id. See also Cook v. Hoppin*, 783 F.2d 684, 690 (7th Cir. 1986) ("statements made by members of the patient's family or by his friends in relating medical history are likewise inadmissible. … [W]e conclude that the statements in Cook's medical records lack the necessary circumstantial guarantees of trustworthiness").

### III. The Self-Harm and Suicidal Accusations in McMillan Cuffy's Counseling Notes Will Confuse or Mislead the Jury

Even if the hearsay reports within Mr. Cuffy's counseling notes were admissible, the hearsay reports would confuse or mislead the jury into thinking that the alleged suicidal thoughts from December 2015 somehow prevented Plaintiff from satisfying the technical standards required to pass the NBME CBSE with or without accommodations between April 2016 and March 2017. Plaintiff was dismissed because of the NBME CBSE, he was not dismissed because of failing his fifth semester in December 2015. There is no evidence or allegations that suggest that Plaintiff was having suicidal or self-harm thoughts before or after December 2015. In January 2016 Plaintiff repeated his fifth semester and passed, which allowed him to attempt the NBME CBSE for the first time in April 2016. [ECF No. 107-1 at ¶ 73]. RUSM's suicidal and self-harm allegation predates Plaintiff passing his fifth semester upon repeat and predates the NBME CBSE attempts.

As RUSM attempts to relate these hearsay reports to the otherwise qualified element of the failure to accommodate claims, it is outside of the relevant time frame since Plaintiff was dismissed in 2017 because of his performance on the NBME CBSE. He was not dismissed because of failing his fifth semester in December 2015.

8

If an employee leaves work early because the individual became sick and returns to work a week later, the employer cannot then use that incident—years after he/she has successfully performed his/her job—to claim that the employee is not otherwise qualified. The same is even truer for students. A school should not be able to claim that a disabled student in his/her junior year of college is not otherwise qualified to participate just because the student repeated a semester in his/her freshman year of college, regardless if it was due to a disability or not. A student's mistakes should lead to learning, not punishment.

### IV.  Evidence Regarding Plaintiff's Breakup with His Ex-Girlfriend and Her Unfaithfulness is Irrelevant.

RUSM has used Plaintiff's breakup with his girlfriend to fabricate that this affected Plaintiff's ability to study and cause him suicidal ideations which allegedly cause him to fail his fifth semester. Evidence regarding his breakup with his girlfriend because of her unfaithfulness is irrelevant because after the breakup with his girlfriend, Plaintiff's grades increased, he was better able to study, and he was not having suicidal thoughts. *See* [ECF No. 115, at ¶¶ 42, 44, 46]. The false narrative by RUSM will only serve to embarrass her, which I do not think she deserves.

### V.  Self-Serving Testimony and Evidence that Attempt to Controvert Judicial Admissions are Prejudicial and Inadmissible as a Matter of Law

RUSM cannot now, at this stage of the litigation, offer evidence to controvert its judicial admissions. "[F]acts judicially admitted are facts established not only beyond the need of evidence to prove them, but beyond the power of evidence to controvert them." *Cooper*, 575 F.3d at 1178.

In RUSM's Answer to the Third Amended to Complaint ("Answer") [ECF No. 58 at ¶ 17], it states that "RUSM admits that Plaintiff executed a Consent to Release Confidential Information, authorizing the Counseling Center to discuss otherwise confidential information pertaining to his treatment with 'RUSM Administration' to facilitate treatment planning and to provide information relevant to academic accommodations. RUSM admits that this would have permitted the

9

Counseling Center, including the psychiatrist treating Plaintiff, to discuss his ADHD with the school's Accommodations Coordinator, Matthew Stewart-Fulton." *Id. See also* **Ex. SJ-07** therein [ECF No. 102]. RUSM now attempts to controvert the judicial admission solely with self-serving testimony now alleging that it has no connection with Plaintiff's ADHD. *See* [ECF No. 107-1 at ¶ 16].

RUSM also admitted that Plaintiff is otherwise qualified to participate in RUSM's curriculum and is able to participate in said program with reasonable accommodations in place. *Compare* Complaint [ECF No. 47 at ¶ 86] *with* Answer ¶ 87. Plaintiff relied on this admission by RUSM for the last four months of discovery. Because of this admission he did not explore this fact with Mr. Cuffy and Dr. Sharma during their deposition, both of which do not live in the U.S. This will greatly prejudice Plaintiff since RUSM has used all of discovery attacking this one point.

## CONCLUSION

Plaintiff respectfully requests that the Court enter an Order (i) precluding RUSM from introducing any evidence of the resulting uncertainty in proof of damage that resulted from the breach of contract or discrimination; (ii) precluding RUSM from referencing Plaintiff's ex-girlfriend and his breakup; (iii) precluding RUSM from refencing counseling notes with self-harm and suicide thoughts and ideations; (iv) precluding RUSM from controverting judicial admissions regarding the executed Release of Information Consent Agreement [ECF No. 58 at ¶ 17], **Ex. SJ-07** therein [ECF No. 102] and regarding whether Plaintiff was qualified to participate in RUSM's curriculum (without regard to his disabilities); and (v) granting Plaintiff such other and further relief as the Court deems just and proper.

DATED this 4th day of January, 2019:

Respectfully submitted,

*[signature]*

By: Oluwamuyiwa Awodiya, *pro se* litigant
15005 Dahlia Dr.
Bowie, MD 20721
(240) 602-1836
Plaintiff, in Proper Person

## CERTIFICATE OF SERVICE

I do hereby certify that on this 4th day of January, 2019, I have caused a true and correct copy of the foregoing by mailing a copy to the Court, where the Court's CM/ECF system will send notification to the following:

**Ryan Roman**
Akerman Senterfitt
Suntrust International Center
1 SE 3rd Avenue
25th Floor
Miami, FL 33131-1714
305-374-5600
Fax: 305-374-5095
Email:
ryan.roman@akerman.com

**Octavia Monique Green**
Akerman LLP
Three Brickell City Centre
98 Southeast Seventh Street
Suite 1100
Miami, FL 33131
(305) 982-5670
Email:
octavia.green@akerman.com

*[signature]*

By: Oluwamuyiwa Awodiya, *pro se* litigant

11