UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

OLUWAMUYIWA AWODIYA,                           CASE NO.  0:18-cv-60482-KMM-AOV

    Plaintiff,

v.

ROSS UNIVERSITY SCHOOL OF
MEDICINE, SCHOOL OF VETERINARY
MEDICINE LIMITED,

    Defendant.

_____/

**DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S
MOTION IN LIMINE TO EXCLUDE EVIDENCE REGARDING UNCERTAINTY OF
DAMAGES, EX-GIRLFRIEND, COUNSELING NOTES, AND JUDICIAL ADMISSIONS**

Defendant Ross University School of Medicine, School of Veterinary Medicine Limited ("RUSM"), by counsel, hereby submits its response in opposition to the Motion in Limine to Exclude Evidence Regarding Uncertainty of Damages, Ex-Girlfriend, Counseling Notes and Judicial Admissions [ECF No. 127] (the "Motion") filed by plaintiff Oluwamuyiwa Awodiya ("Plaintiff").

**I.  INTRODUCTION**

Plaintiff alleges that RUSM discriminated against him in violation of Section 504 of the Rehabilitation Act of 1973 (the "Rehabilitation Act") and Title III of the Americans with Disabilities Act ("ADA").  To establish these claims, Plaintiff must prove that he was: (i) disabled; (ii) "otherwise qualified," as defined under the statutes; and (iii) discriminated against because of his disability.  However, Plaintiff now seeks to exclude the very evidence that RUSM puts forth to challenge the elements of his discrimination claims by claiming that such evidence is irrelevant.  In particular, Plaintiff is seeking to exclude evidence relating to his qualifications.  Plaintiff's arguments are unfounded and the Motion should be denied.

Plaintiff's argument that certain counseling notes should be excluded is also baseless. Plaintiff was diagnosed with Attention Deficit Hyperactivity Disorder ("ADHD") for the first time in January 2016. Nevertheless, Plaintiff intends to testify to counseling sessions at the RUSM Counseling Center that pre-date his ADHD diagnosis to imply that RUSM knew that Plaintiff had ADHD and that Plaintiff requested an accommodation for his ADHD in December 2015. RUSM intends to introduce the counseling notes to provide context to Plaintiff's pre-January 2016 counseling sessions. The counseling notes show that the pre-January 2016 counseling sessions did not pertain to an ADHD diagnosis and, instead, pertained to Plaintiff's suicidal thoughts as a result of an unfaithful girlfriend, poor academic performance, and family issues. RUSM should be permitted to introduce this evidence to prevent confusion of the issues and misleading of the jury by Plaintiff.

To the extent Plaintiff argues that the counseling notes should be excluded because they are "contradicting," this is not grounds for exclusion. Contradictory evidence goes to the weight to be given to the evidence, not admissibility. Moreover, to the extent that Plaintiff seeks to exclude the pre-January 2016 counseling notes on the basis of "hearsay," this assertion is incorrect. Pursuant to a stipulation dated December 7, 2018, the parties have already agreed that the counseling records are non-hearsay and fall under the "statements made for medical diagnosis or treatment" exception to the hearsay rule.

Plaintiff also alleges that in RUSM's Answer and Affirmative Defenses to Plaintiff's Third Amended Complaint [ECF No. 58] (the "Answer"), it admitted that Plaintiff was "otherwise qualified" as defined by the ADA and Rehabilitation Act. This is not true. RUSM denied allegations pertaining to Plaintiff's qualifications under the Rehabilitation Act and ADA claims in Plaintiff's Third Amended Complaint.

For each of the foregoing reasons, Plaintiff's Motion should be denied.

## II.   FACTUAL BACKGROUND

Plaintiff is a former RUSM medical student. Following his dismissal from RUSM, Plaintiff filed this lawsuit alleging claims for: (i) violation of the Rehabilitation Act; (ii) violation of the ADA; (iii) violation of 34 C.F.R. § 104.4, *et seq.*; (iv) violation of 34 C.F.R. § 104.44, *et seq.*; (v) violation of Florida Administrative Code Section 6E-2.004(5)(c)(4) or, in the alternative, Section 760.08, Florida Statutes; (vi) breach of contract; (vii) breach of the covenant of good faith and fair dealing; (viii) fraudulent inducement; (ix) misrepresentation in the inducement; and (x) breach of fiduciary duty.

Before his dismissal from RUSM, Plaintiff attended the university from May 2014 through June 2017. During his fifth semester, Plaintiff begin having emotional issues resulting from several different issues, including his romantic relationship with an ex-girlfriend. Because of these emotional issues, Plaintiff started attending RUSM's Counseling Center in October 2015. In December 2015, Plaintiff suffered from self-harm and suicidal ideations. Because of these thoughts, Plaintiff continued seeking counseling from the RUSM Counseling Center. Plaintiff was first diagnosed with ADHD in January 2016.

At the core of this litigation is when RUSM first learned Plaintiff suffered from a disability and whether Plaintiff requested an accommodation for such disability. Throughout this entire lawsuit, Plaintiff has relied on the same medical records he seeks to exclude to support his assertion that he requested academic accommodations in December 2015.

## III.   LEGAL STANDARD

"[I]n resolving motions in limine, '[t]he court excludes evidence on a Motion in Limine only if the evidence is clearly inadmissible for any purpose.'" *Smith v. Royal Caribbean Cruises,*

*Ltd.*, No. 13-20697-Civ, 2014 WL 5312534, at *1 (S.D. Fla. Oct. 10, 2014). "If the evidence is not clearly inadmissible, evidentiary rulings must be deferred until trial to allow questions of foundation, relevancy, and prejudice to be resolved in the context. *Id.* (citing *Stewart v. Hooter of Am., Inc.*, No. 8:04-CV-40-T17-MAP, 2007 WL 1752873, at *1 (M.D. Fla. June 18, 2007)).

IV.   ARGUMENT

    A. **Whether Plaintiff was Qualified to Become a Medical Doctor Is Relevant To Plaintiff's Rehabilitation Act and ADA Claims and Damages**

Plaintiff seeks to preclude RUSM from introducing evidence that he would not have been able to successfully complete the requirements to become a doctor. However, such evidence is clearly relevant to this dispute.

Plaintiff has filed failure to accommodate claims, alleging violations of the Rehabilitation Act and ADA. In order to successfully prove these claims, one of the elements Plaintiff must establish is that he was "otherwise qualified" to meet the standards necessary to become a medical doctor. *See Hetherington v. Wal-Mart, Inc.*, 511 Fed. Appx. 909, 912 (11th Cir. 2013) (holding that to bring a claim under the ADA and Rehabilitation Act, a plaintiff must demonstrate that he (i) has a disability; (ii) is a ***"qualified" individual***; and (iii) was discriminated against because of his disability by failing to receive an accommodation) (emphasis added); *King v. Catholic Charities of Northwest Fla. Inc.*, Case No. 3:16-cv-91/MCR/EMT, 2018 WL 3848819, at *2 (N.D. Fla. Aug. 12, 2018) ("Plaintiff's claim for failure to accommodate requires proof that she was a ***"qualified"*** individual . . . .") (emphasis added).

To prove that he is "otherwise qualified," Plaintiff must show that, with or without reasonable accommodations, he was able to perform the essential requirements to graduate from RUSM. *See* 42 U.S.C. § 12131(2). Put another way, Plaintiff must present sufficient evidence to show that he could satisfy the program's necessary requirements, or that any reasonable

4

accommodation by the school would enable him to meet these requirements. RUSM should not be precluded from rebutting Plaintiff's evidence as to this element. Such rebuttal evidence is clearly relevant to Plaintiff's claims.

In fact, the Supreme Court of the United States has expressly rejected an interpretation of "otherwise qualified" that would prohibit an institution from introducing evidence of an individual's limitations when determining that person's eligibility for an academic program. *See Southeastern Community College v. Davis*, 442 U.S. 397, 405 (1979). The *Davis* Court stated that "an otherwise qualified person is one who is able to meet all of a program's requirements in spite of his handicap." *Id.* at 406. Moreover, the law does not require an academic program to compromise its enrollment criteria. *Id.; see also Bercovitch v. Baldwin Sch., Inc.,* 133 F.3d 141, 154 (1st Cir. 1998). "A school's code of conduct is not superfluous to its proper operation; it is an integral aspect of a productive learning environment." *Id.* at 154.

> RUSM's Student Handbook states that:
>
>> Candidates must possess the emotional health required for the full utilization of their intellectual abilities, for the exercise of good judgment, for the prompt completion of all responsibilities attendant to the diagnosis and care of patients, for the development of effective relationships with patients and for effective functioning as a member of the health care team. Candidates must be able to tolerate physically taxing workloads and function effectively under stress. They must be able to adapt to changing environments, display flexibility and learn to function in the face of uncertainties inherent in the clinical problems of patients.

Excerpts from the RUSM Student Handbook are attached hereto as **Exhibit A**; *see also Yaldo v. Wayne State Univ.*, 266 F. Supp. 3d 988, 1012 (E.D. Mich. 2017) (finding a Plaintiff was not "otherwise qualified" if he failed to satisfy the medical school's professionalism requirements); *Zimmeck v. Marshall Univ. Bd. of Governors*, 106 F. Supp. 3d 776, 782 (S.D. W. Va. 2015)

(finding that a student diagnosed with depression unqualified under the ADA because he failed to meet the professionalism requirements of the medical school).

The Student Handbook requires not only that students possess the emotional health required for the full utilization of their intellectual abilities, but also that they exercise good judgment. Exh. A at pp. 7-8. It also requires that students tolerate physically taxing workloads and function effectively under stress. *Id.* RUSM should be permitted to introduce evidence showing that Plaintiff did not satisfy the technical standards of the medical school. The evidence shows that Plaintiff was suffering from depression and had suicidal ideations due to a relationship break-up with a female student who was unfaithful, familial relationship issues, and general loneliness. *See* [ECF No. 102] at Exhibit SJ-10. Plaintiff also reported being "constantly forgetful in daily activities" and having constant difficulty with tasks requiring persistence or organization, including schoolwork and job duties. *See* [ECF No. 102] at Exhibit SJ-03. Subsequently, Plaintiff also reported to a physician that he has been pulling his eyelashes and chin hairs out. *See* [ECF No. 102] at Exhibit SJ-04.

As this Court recently held, "whether a student is qualified to be a physician is an academic judgment that requires an expert evaluation of cumulative information and is not readily adapted to the procedural tools of judicial or administrative decision making." *See* Order on Motion for Judgment on the Pleadings [ECF No. 105] at 4 (*citing Jallali v. Nova Se. Univ., Inc.,* 992 So. 2d 338, 342 (Fla. Dist. Ct. App. 2008)). Plaintiff has not retained an expert to prove this element as required under applicable law. Nevertheless, RUSM should be able to introduce evidence showing that Plaintiff was not qualified.

Evidence pertaining to Plaintiff's remaining qualifications of becoming a medical doctor is also relevant because such evidence ties directly to the issue of damages. More specifically,

Plaintiff seeks to recover damages for his purported loss of earning capacity. However, before Plaintiff may seek damages for lost of earning capacity as a medical doctor, he must first establish that he would have in fact became a doctor. Plaintiff's qualifications and the likelihood of him becoming a doctor bear on these issues. *See King*, 2018 WL 3848819 at *2. Evidence refuting that Plaintiff was qualified should not be excluded.

Plaintiff relies on *Sharick v. Southeastern Univ.*, 780 So. 2d 136, 138 (Fla. Dist. Ct. App. 2000) to suggest that RUSM is precluded from offering evidence regarding his qualifications and the lack thereof. In *Sharick*, the Third District Court of Appeals ruled that a trial court ***could consider*** evidence pertaining to the issue of loss of earning capacity. The court also noted that "***if a jury finds that it is no longer possible for Sharick to obtain a DO degree***, then Southeastern would be foreclosed from complaining of the resulting uncertainty in proof of damage caused by the its wrongful actions." *Id.* at 140 (emphasis added). The keyword here is "if" and it shows that a jury should be allowed to consider evidence pertaining to Plaintiff's qualifications and whether it was possible for Plaintiff to obtain his degree in making its determination as to the issue of damages. Evidence pertaining to Plaintiff's qualifications is thus relevant to this determination and should not be excluded.

Moreover, Plaintiff's reliance in *Sharick* is misplaced because *Sharick* is clearly distinguishable. First, there were no ADA or Rehabilitation Act claims asserted in *Sharick*. Second, there was already a finding of breach of contract in *Sharick*. Here, Plaintiff has not established that RUSM breached its purported contract with Plaintiff and RUSM must be allowed to present evidence in support of its position that there was no breach. This would include evidence of whether RUSM's dismissal was proper pursuant to the Student Handbook and Academic Catalog and whether Plaintiff was qualified to complete the medical school program.

Plaintiff's qualifications are relevant and any prejudice asserted by Plaintiff does not substantially outweigh the probative value of such evidence. RUSM must be permitted to offer this evidence and the Motion seeking to exclude such evidence should be denied.

### B. The Counseling Notes Are Admissible

In his Motion, Plaintiff identifies four Counseling Notes that he seeks to exclude as hearsay: (i) RUSM counseling note dated December 8, 2015, attached hereto as **Exhibit B**; (ii) RUSM counseling note dated December 9, 2015, attached hereto as **Exhibit C**; (iii) RUSM counseling note dated December 10, 2015, attached hereto as **Exhibit D;** and (iv) RUSM counseling note dated December 11, 2015, attached hereto as **Exhibit E.** Plaintiff's arguments are unavailing for several reasons.

First, on December 7, 2018 the parties executed a Stipulation Regarding Medical Records Produced in Discovery (the "Stipulation"). *See* Stipulation attached hereto as **Exhibit F**. Pursuant to the Stipulation, the Parties stipulated to the authenticity of the counseling notes as required under the business records exception to the rule against hearsay and that the contested counseling notes are non-hearsay pursuant to Fed. R. Evid. 803(4). *Id.* at ¶2.

Even aside from the Stipulation, the counseling notes and the statements made therein fit under exceptions to the hearsay rule. For instance, RUSM's counseling notes fit within the business record exception to the hearsay rule. Fed. R. Evid. 803(6). Moreover, the statements made by Plaintiff within the counseling notes would fall under the "statements made for purposes of medical diagnosis or treatment" exception to the hearsay rule. Fed. R. Evid. 803(6); *see also U.S. v. Williams*, 578 Fed. Appx. 872, 876 (11th Cir. 2014) ("the following are not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness[:] … A statement that: (A) is made for—and is reasonably pertinent to—medical diagnosis or treatment;

8

and (B) describes medical history; past or present symptoms or sensations; their inception; or their general cause."); *Prophet v. Great Village Resorts, Ltd.*, Case No.:10-cv-60152-UU, 2012 WL 13001454, at *1 (S.D. Fla. Nov. 16, 2012); *Morgan v. Foretich*, 846 F. 2d 941, 949 (4th Cir. 1988) (holding that statements for the purpose of diagnosis or treatment should have been admitted into evidence regardless of witness's competency to testify at trial).

Plaintiff takes particular aim at statements allegedly made by his mother. Although RUSM has been unable to identify such statements in the identified counseling notes, statements made by a party's parent would also fall under the "statements made for purposes of medical diagnosis or treatment" exception to the hearsay rule. *See Stull v. Fuqua Indus., Inc.*, 906 F.2d 1271, 1273 (8th Cir. 1990) ("Statements must be obtained from person seeking treatment, or in some instances from person with special relationship to person seeking treatment, such as parent, to fall within medical records exception to hearsay rule."); *see also Wilson v. Zapata Off-Shore Com.*, 939 F. 2d 260, 272 (5th Cir. 1991) (finding that statements given by plaintiff's sister to be admissible under Rule 803(4)).

Plaintiff relies on *Cook v. Hoppin*, 783 F.2d 684, 690 (7th Cir. 1986) in support of his argument that the RUSM counseling notes are inadmissible pursuant to this exception. *See* [ECF No. 127] at 8. However, *Cook* is distinguishable and actually supports admissibility of these medical records. In *Cook*, the court defined the test for determining whether statements contained in medical records are admissible as follows:

> [T]he test, when examining whether statements contained in medical records relating to the cause of an injury are admissible hearsay is whether such statements are of the type reasonably pertinent to a physician in providing treatment. In determining which statements are relevant to diagnosis or treatment, each case must be examined on its own facts, and in making such a judgment much will depend on the treating physician's own analysis.

*Cook*, 783 F.2d at 690. The challenged statements in *Cook* were found not to be statements generally relied on by medical personnel when making a diagnosis. However, Plaintiff's statements regarding his self-harm and suicidal ideations are the type of statements relied upon by a mental health professional when rendering treatment. Courts have held that Rule 803(4) extends to mental health professionals. *In re Moore*, 165 B.R. 495, 498 (M.D. Ala. 1993) (citing *United States v. Lechoco*, 542 F.2d 84, 89, n. 6 (D.C. Cir. 1976), and extending Rule 803(4) to comments made to psychiatrist). Moreover, each of the counseling notes would also fall under the residual exception to the hearsay rule. Fed. R. Evid. 807.

Even if Plaintiff's arguments had merit – which they do not – RUSM should be permitted to call witnesses at trial to establish any further hearsay exceptions it deems necessary. Exclusion of this evidence at this stage would be premature and warrants denying the Motion. *See Sclafani v. Air and Liquid Systems Corp.*¸ Nos.: 2-12-cv-3013-SVW-PJW, *et al.*, 2013 WL 2477077, at *7 (C.D. Cal. May 9, 2013) (denying motion in limine where documents could be authenticated either by the testimony of a witness with knowledge or as a self-authenticating newspaper or periodical); *Guerrero v. Deane*, No. 1:09cv1313, 2012 WL 3834907, at *3 (E.D. Va. Sept. 4, 2012) ("It is impossible for this Court to determine that all such potential evidence and testimony is irrelevant without knowledge of the specific content or purpose for which any such evidence will be put forth.")

The counseling notes are admissible here and the Motion should therefore be denied.

### C. Contradictory Evidence Is Not Grounds for Exclusion

Plaintiff also argues that the RUSM counseling notes contradict themselves and thus should be excluded. *See* [ECF No. 127] at 7. However, contradicting evidence does not provide a basis for exclusion. At best, contradictory evidence should be run through the rigors of cross-examination and the jury should be left to decide what to believe. *See Galard v. Johnson*, 504

F.2d 1198, 1202 (7th Cir. 1974) ("It was, of course, the function of the jury to weigh the contradictory evidence and inferences, to judge the credibility of witnesses, and to draw the ultimate conclusions as to the facts."). The jury determines questions of fact. *Brisk v. City of Miami Beach, Fla.*, 726 F. Supp. 1305, 1312 (S.D. Fla. 1989) ("questions of fact are for a jury and that a federal court cannot predetermine facts for the jury.") Plaintiff has not established that such evidence should be excluded and thus his Motion to exclude the counseling notes should be denied.

### D. The Self-Harm and Suicidal Ideations Expressed in the Counseling Notes Will Not Confuse or Mislead the Jury

Plaintiff argues that the RUSM counseling notes would confuse or mislead the jury into thinking that the alleged suicidal thoughts from December 2015 somehow prevented Plaintiff from satisfying the technical standards required to pass the NBME CBSE with or without accommodations between April 2016 and March 2017. *See* [ECF No. 127] at 8. But this is precisely one of the reasons why such evidence is admissible, to allow the jury to reach a contrary conclusion to Plaintiff's narrative with respect to a key element of his claims – that he is ***otherwise qualified*** to complete the rigorous course of study at RUSM. Exclusion of this evidence would give a false impression to the jury and preclude them from learning the whole story.

Plaintiff started attending the counseling center in October 2015. His visits continued through December 2015 and the corresponding notes show that Plaintiff was dealing with emotional distress related to his relationship, family issues and stress from academic failure – not ADHD. In fact, there was no ADHD diagnosis in December 2015. Several counselors have testified to this fact.

In December 2015, Plaintiff alleges that he requested accommodations and relies extensively on a Release of Information Consent form signed in December 2015. Plaintiff even contends that the Release of Information Consent form constituted as his request for

accommodations. The RUSM counseling notes will provide context to the jury as to why the Release of Information Consent form was signed in December 2015, the reason being that the school was trying to get Plaintiff off the island of Dominica and back home because of his emotional distress. These travel arrangements required the Counseling Center to communicate with the RUSM administration, thereby requiring Plaintiff to execute the Release of Information Consent form. The counseling notes will also show that Plaintiff was not diagnosed until January 2016 and, thus, the December 2015 counseling notes and Release of Information Consent form did not serve as a request for accommodations.

"Courts may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." *In re American Airlines Flight 331*, Case No. 10-20131-CV-Lenard/O'Sullivan, 2013 WL 12340395, at *2 (S.D. Fla. Oct. 7, 2013). However, courts have also held that where relevant evidence goes to the issue of liability, such evidence should not be excluded on Section 403 grounds. *Id. See also U.S. v. Shelley*, 405 F. 3d 1195, 1207 (11th Cir. 2005) (holding that the district court abused its discretion by excluding relevant evidence under Rule 403); *Faigin v. Kelly*, 184 F.3d 67, 83 (1st Cir. 1999) (admitting relevant testimony of other athletes regarding their difficulties with the Plaintiff and his associations because such testimony went directly to the truth of the disputed statements contained in Kelly's autobiography).

"Rule 403 is an extraordinary remedy which should be used only sparingly since it permits the trial court to exclude concededly probative evidence. The balance under the Rule, therefore, should be struck in favor of admissibility." *Shelley*, 405 F.3d at 1206 (citing *United States v. Norton*, 867 F.2d 1354 (11th Cir. 1989)). Because the RUSM counseling notes are relevant to

Plaintiff's mental and emotional state in December 2015 and tie directly to an issue of liability, they should not be excluded under Rule 403.

### E. Evidence Regarding Plaintiff's Break-Up with His Ex-Girlfriend and Her Unfaithfulness Are Relevant.

Evidence regarding Plaintiff's break-up with his ex-girlfriend is relevant and should not be excluded. Such evidence is necessary to provide context to the jury and, without such evidence, RUSM would be prejudiced because Plaintiff would be allowed to paint a misleading narrative.

Evidence pertaining to Plaintiff's break-up with his ex-girlfriend and her unfaithfulness is being offered: (i) to show why Plaintiff received counseling from the RUSM counseling center in late 2015; (ii) to dispute that Plaintiff was "otherwise qualified" as defined by the ADA and Rehabilitation Act; and (iii) to provide context for the Release of Information Consent form and show that it was not a request for accommodations.

The test for relevancy is whether evidence has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Fed. R. Evid. 401. This evidence regarding relationship issues is both relevant and admissible. To the extent Plaintiff seeks to have such evidence excluded because his grades increased after this breakup, this is not grounds for exclusion. [ECF No. 127] at 9. Again, this at best creates a question of fact for the jury. *See Galard,* 504 F.2d at 1202.

### F. RUSM Did Not Admit that Plaintiff is Otherwise Qualified

In his Motion, Plaintiff argues that RUSM admits that Plaintiff is otherwise qualified to participate in RUSM's curriculum and is able to participate in said programs with reasonable accommodations in place. This is not true.

With regards to the Rehabilitation Act and ADA claims, RUSM denies the allegation that Plaintiff is otherwise qualified. Only in Count V, a purported claim under Florida statutory law

13

which Plaintiff files in the alternative (despite his failure to exhaust all administrative remedies beforehand), RUSM inadvertently admitted an allegation specific to that state claim that has no bearing on the federal claims. *See* Count V of Third Amended Complaint, [ECF No. 47] at ¶¶ 83-92.

Plaintiff now seeks to exploit RUSM's admission in response to his state law claim as an admission to his federal law claims. Specifically, in Count I and Count II of his Third Amended Complaint, Plaintiff alleges to be otherwise qualified under the Rehabilitation Act and the ADA, respectively. In response to these corresponding allegations, RUSM denies such allegations:

| Allegation Made in the Third Amended Complaint | Response in Answer |
|---|---|
| 46. Plaintiff is a qualified individual with a disability, as defined by Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 705(2)). Plaintiff suffers from mental impairments which qualifies him as an individual with a disability . . . . | 47. In response to paragraph 46, RUSM neither admits or denies the allegations contained therein because such allegations call for a legal conclusion and do not state any facts requiring a response from RUSM. To the extent paragraph 46 alleges any fact to which RUSM is required to respond, RUSM denies the allegations. |
| 47. Plaintiff is otherwise qualified to participate in RUSM's curriculum and is able to participate in said program with or without accommodations, but was discriminated against because of his disability. | 48. In response to paragraph 47, RUSM denies the allegations. |
| 55. Plaintiff is a qualified individual with a disability, as defined in the American with Disabilities Act ("ADA"), as amended, 42 U.S.C. § 12101, *et. seq.* . . . . | 56. In response to paragraph 55, RUSM neither admits nor denies the allegations contained therein because such allegations call for a legal conclusion and do not state any facts requiring a response from RUSM. To the extent paragraph 55 alleges any fact to which RUSM is required to respond, RUSM denies the allegations. |
| 56. Plaintiff is able to perform the essential functions to participate in Defendant's curriculum with or without accommodations but was | 57. In response to paragraph 56, RUSM denies the allegations. |

14

| | |
|---|---|
| discriminated against and placed at a disadvantage because of his disability. | |

*See* [ECF No. 47] at ¶¶ 46-47, ¶¶ 55-56; [ECF No. 58], at ¶¶ 47-48, 56-57.

RUSM denied the allegations pertaining to Plaintiff's "otherwise qualified" allegations in Count I and Count II of the operative Complaint. Therefore, there is no admission as to this element of each of the federal claims, which calls for a legal conclusion in any event.

## CONCLUSION

WHEREFORE, defendant Ross University School of Medicine, School of Veterinary Medicine Limited respectfully requests this Court to enter an Order (i) denying plaintiff Oluwamuyiwa Awodiya's Motion in Limine to Exclude Evidence Regarding Uncertainty of Damages, Ex-Girlfriend, Counseling Notes and Judicial Admissions [ECF No. 127]; and (ii) awarding RUSM such other and further relief as the Court deems appropriate.

Dated: January 22, 2019

Respectfully submitted,

*/s/Octavia M. Green*
MICHAEL C. MARSH
Florida Bar Number:  0072796
Email:  michael.marsh@akerman.com
Secondary:  sharon.luesang@akerman.com
RYAN A. ROMAN
Florida Bar Number:  0025509
Email:  ryan.roman@akerman.com
Secondary:  dorothy.matheis@akerman.com
DONNIE M. KING
Florida Bar Number: 101386
Email: donnie.king@akerman.com
Secondary: simone.tobie@akerman.com
OCTAVIA M. GREEN
Florida Bar Number: 119179
Email: octavia.green@akerman.com
Secondary: simone.tobie@akerman.com

**AKERMAN LLP**
98 SE 7th Street, Suite 1100
Miami, FL 33131
Phone:  (305) 374-5600
Fax:  (305) 374-5095

*Attorneys for Defendant Ross University School of Medicine, School of Veterinary Medicine Limited*

## **CERTIFICATE OF SERVICE**

      I HEREBY CERTIFY that on January 22, 2019 a true and correct copy of the foregoing document was served via CM/ECF on:

Oluwamuyiwa Awodiya
15005 Dahlia Drive
Bowie, Maryland 20721
Telephone: (240) 602-1836
E-mail: drmuyiwa.a@gmail.com

                                                *s/Octavia M .Green*
                                                Octavia M. Green

47585043;1