Case 0:18-cv-60482-RKA   Document 145   Entered on FLSD Docket 02/05/2019   Page 1 of 11



FILED BY _____ D.C.

FEB - 5 2019

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| | |
|---|---|
| OLUWAMUYIWA AWODIYA,<br>*Plaintiff,*<br><br>-v-<br><br>ROSS UNIVERSITY SCHOOL OF<br>MEDICINE, SCHOOL OF<br>VETERINARY MEDICINE LIMITED<br>*Defendant.* | Case No.   0:18-cv-60482-KMM<br><br>Hon. Chief Judge: K. Michael Moore<br>Magistrate Judge: Alicia O. Valle |

## PLAINTIFF'S REPLY IN SUPPORT OF PLAINTIFF'S MOTION IN LIMINE TO EXCLUDE EVIDENCE REGARDING UNCERTAINTY OF DAMAGES, EX-GIRLFRIEND, COUNSELING NOTES, AND JUDICIAL ADMISSIONS

Plaintiff Oluwamuyiwa Awodiya ("Plaintiff"), in proper person, hereby files his reply to defendant's, Ross University School of Medicine, School of Veterinary Medicine Limited ("RUSM"), Response in Opposition (the "Opposition") [ECF No. 131] to Plaintiff's Motion in Limine to Exclude Evidence Regarding Uncertainty of Damages, Ex-Girlfriend, Counseling Notes, and Judicial Admissions ("Motion") [ECF No. 127].

## ARGUMENT

### I.    RUSM Failed to Show Why the "Remaining" Post-Dismissal Qualifications are Relevant to this Case

Part I of the Motion was about the absence of Plaintiff's post-dismissal qualifications, *i.e.* United States Medical Licensing Examination ("USMLE") Step 2, needed to become a doctor. RUSM's actions prevented Plaintiff from establishing this "track record." In reply to the additional issue raised by RUSM, its **non-essential requirements are irrelevant to this case**. The post-dismissal qualifications were not essential to Plaintiff's "participation" when he was dismissed from RUSM.

1

### A. RUSM Has Mischaracterized the ADA Term of "Qualified Individual."

First, Plaintiff is not required to show that he was otherwise qualified "to graduate from RUSM." Opposition at 4. The Eleventh Circuit held, "In the context of postsecondary education, an otherwise qualified individual is a person who is able to meet the academic and technical standards **requisite to admission or participation** in the education program or activity." *Zainulabeddin v. Univ. of S. Fla. Bd. of Trs.*, No. 17-11888, at *10 (11th Cir. Sep. 5, 2018) (emphasis added); *accord* 34 C.F.R. § 104.3(l)(3). "The term 'technical standards' refers to all **nonacademic** admission criteria that are essential to participation in the program in question." *Southeastern Community College v. Davis*, 442 U.S. 397, 404 (1979) (emphasis added) (quoting an explanatory note to the original regulations); 34 C.F.R. § 104, App. A at 374.

Second, Plaintiff is not required to show that he was able to meet "all" of RUSM's requirements, only the ones that were "**essential** to participation in the program in question." *Id.* (emphasis added). "[F]or a postsecondary education program, … [a] requirement is 'essential' if 'the nature of the program would be fundamentally altered' without it. By contrast, an individual does not need to satisfy non-essential program requirements to be 'otherwise qualified.'" *Shaikh v. Tex. A&M Univ. Coll. of Med.*, No. 16-20793, at *9-10 (5th Cir. Jun. 20, 2018) (internal citations omitted).

*See*, for example, *McKelvey v. Turnage*, 792 F.2d 194, 204 (D.C. Cir. 1986) ("Plaintiff McKelvey satisfies these requirements. The government does not suggest that McKelvey in any way fails to meet an 'academic [or] technical standard requisite to admission or participation.' The ten-year deadline plainly is not an academic standard, nor, according to the above-stated HEW definition, is it a technical one; indeed, it is not an admissions criterion at all, and it surely is not essential to McKelvey's successful participation in the program."); *Shaikh v. Tex. A&M Univ. Coll. of Med.*, No. 16-20793, at *10-12 (5th Cir. Jun. 20, 2018) ("The College's demand that Shaikh

retake the exam during his leave of absence suggests that was *a* requirement for remaining in the program, but it may well have been a non-essential requirement, given the factual allegations before us at this stage. Nor was passing the USMLE Step 1 an essential requirement for readmission, given the College's statements and actions indicating that Shaikh remained eligible to reenter the program after his withdrawal.").

### B. The Post-Dismissal Qualifications are Not Relevant to Assessment of Damages.

RUSM's reliance on the word "if," in *Sharick*, is misplaced. Opposition at 7. The word if was in the context of mitigating damages (doctrine of avoidable consequences), specifically if the student was able to earn the same medical degree elsewhere. In the correct context, the court in *Sharick* stated, "Alternatively, we recognize the potential for mitigation of damages if Sharick fails to establish that it would be impossible for him to obtain a DO degree at another institution. In that event, the appropriate measure of damages would only be the reproduction cost of acquiring the degree elsewhere." *Sharick v. Southeastern University*, 780 So. 2d 136, 140 (Fla. Dist. Ct. App. 2000). The "if," had nothing to do with the remaining "qualifications" contend by RUSM. Opposition at 7. Here, once the jury finds that RUSM dismissed Plaintiff in violation of the law, the remaining, unperformed qualifications of their contractual relationship becomes irrelevant.

Applying *Sharick*, this Court held that "[c]ontracts routinely require parties to undertake obligations without specifying a price for those obligations. Instead, in the event of a breach, expectation damages constitute the measure of value of the obligations." *Waste Corporation of America, Inc. v. Genesis Ins. Co.*, 382 F. Supp. 2d 1349, 1361 (S.D. Fla. 2005) (citing *Sharick*, 780 So.2d 136). In other words, "[p]ursuant to Florida law, the non-breaching party may choose [] seeking lost profits in order to be placed in the position it would have been in had the contract been fully performed ...." *Lady of America Franchise Corporation v. Arcese*, CASE NO.:05-61306-CIV-COHN/JOHNSON., at *8 (S.D. Fla. May. 25, 2006).

3

II. **Self-Harm and Suicidal Ideations, and Plaintiff's Ex-Girlfriend are Irrelevant as a Matter of Law because RUSM Did Not Dismiss Him For, Nor did It Ever Discipline Him for, Any of These Mid-Litigation Allegations**

"Due to Section 504's remedial purpose, however, judicial deference extends only so far as there is 'a factual basis in the record reasonably demonstrating' that the requirement at issue is necessary to 'the essential nature of the program.'" *Shaikh*, No. 16-20793, at *12 n.6 (quoting *Strathie v. Dep't of Transp.*, 716 F.2d 227, 231 (3d Cir. 1983)).

A. **Judicial Deference is Limited in this Case.**

"In the disability discrimination context, the First Circuit has held that the *Ewing* standard should be modified as it relates to the 'reasonable accommodation.'" *Redding v. Nova Se. Univ., Inc.*, 165 F. Supp. 3d 1274, 1291 (S.D. Fla. 2015) (citing *Wynne v. Tufts University School of Medicine*, 932 F.2d 19, 24-26 (1st Cir. 1991) (en banc). "Other circuits agree .... The Eleventh Circuit does not appear to have explicitly decided *Ewing*'s applicability to disability discrimination cases, but *Wynne* is consistent with current Eleventh Circuit law." *Redding v. Nova Se. Univ., Inc.*, 165 F. Supp. 3d 1274, 1291-92 (S.D. Fla. 2015). In *Wynne*, the Court discussed the application of judicial deference and the "otherwise qualified" element at length by analyzing *Southeastern Community College v. Davis*, 442 U.S. 397 (1979), *Alexander v. Choate*, 469 U.S. 287 (1985), *Strathie v. Department of Transportation*, 716 F.2d 227 (3d Cir. 1983), *School Bd. of Nassau County v. Arline*, 480 U.S. 273 (1987), and *Regents of University of Michigan v. Ewing*, 474 U.S. 214 (1985).

In short, *Wynne* stated:

> The Third Circuit in *Strathie,* noting that *Davis* lacked any discussion on the scope of judicial review, acknowledged the need to accord some measure of judicial deference to program administrators, but rejected a "broad judicial deference resembling that associated with the 'rational basis' test [which] would substantially undermine Congress' intent . . . that stereotypes or

4

> generalizations not deny handicapped individuals equal access to federally-funded programs." [*Strathie*, 716 F.2d at 231].
>
> ... The question in *Ewing* was whether a university had violated substantive due process (i.e., had engaged in wholly arbitrary action) .... This was a context where no federal statutory obligation impinged on the academic administrators; their freedom to make genuine academic decisions was untrammeled. This is why the Court added to the above quoted passage the sentence: "Plainly, [judges] may not override [the faculty's professional judgment] unless it is such a substantial departure from accepted academic norms as to demonstrate that the person or committee responsible did not actually exercise professional judgment." [*Ewing*, 474 U.S. at 225].
>
> In the context of an "otherwise qualified-reasonable accommodations" inquiry under the Rehabilitation Act, the same principle of respect for academic decision making applies but with two qualifications. First, as we have noted, there is a real obligation on the academic institution to seek suitable means of reasonably accommodating a handicapped person and to submit a factual record indicating that it conscientiously carried out this statutory obligation. Second, the *Ewing* formulation, hinging judicial override on "a substantial departure from accepted academic norms," is not necessarily a helpful test in assessing whether professional judgment has been exercised in exploring reasonable alternatives for accommodating a handicapped person.

*Wynne*, 932 F.2d at 25-26 (emphasis added).

**B.    There is No Factual Basis that RUSM Dismissed Plaintiff for Behavior that Resulted from the Allegations.**

RUSM's allegations of suicidal and self-harm ideations, and Plaintiff's Ex-girlfriend, are irrelevant because these were not issues considered by RUSM when it dismissed him from the school. *See Wong v. Regents of the University of California*, 192 F.3d 807, 811 (9th Cir. 1999):

> Again, our analysis begins with a determination of whether we defer to the University's decision to dismiss Wong for "failure to meet the academic standards of the School of Medicine." We will not defer to a school's decision if the ostensibly professional, academic judgment "disguise[s] truly discriminatory requirements." Zukle, 166 F.3d at 1048. Moreover, **the academic institution bears the burden of presenting us with a factual record that shows it**

5

> **conscientiously considered all pertinent and appropriate information in making its decision**. Far from demonstrating a conscientious effort to consider all relevant factors in deciding that Wong could not meet the school's academic requirements even with reasonable accommodation, the record contains evidence that the University eschewed its obligation to consider possible modifications it could make (or could have made) in the program to accommodate Wong and the past and potential effects of such accommodations (and lack thereof) on Wong's performance."

*Id.* (emphasis added). "Such after-the-fact justification obviously does not satisfy the University's obligation to present "undisputed facts" showing that it conscientiously considered whether possible modification would fundamentally or substantially alter the school's standards when it decided that it could not reasonably accommodate the disabled student." *Wong v. Regents of the University of California*, 192 F.3d 807, 811 (9th Cir. 1999).

RUSM needed to—and failed to—show **a factual basis** that it considered such allegations when it dismissed him "based on the school's 'rationally justifiable conclusion that accommodating [him] would lower academic standards or otherwise unduly affect its program." *Forbes v. St. Thomas University, Inc.*, 07-22502-CIV-HOEVELER., at *1 (S.D. Fla. May. 27, 2011).

### C.   Confusion, Prejudice and Irrelevance.

RUSM's reliance on *King v. Catholic Charities of Nw. Fla., Inc.*, Case No. 3:16cv191/MCR/EMT, at *5 (N.D. Fla. Aug. 12, 2018) is misplaced. Opposition at 6-7. In fact, *King* supports Plaintiff's argument. Motion at 8-9. This Court in King, granted the plaintiff's motion in limine in part, holding that "medical records too temporally removed from Defendant's alleged failure to accommodate have marginal, if any, probative value, and, moreover, introduce the potential for significant confusion and misleading of the jury with respect to Plaintiff's medical condition during the relevant time period." *King*, Case No. 3:16cv191/MCR/EMT, at *5-6. The *King* Court agreed with the plaintiff "that representations and admissions in Plaintiff's medical

6

records ... would tend to call into question Plaintiff's position that she was able to perform the essential functions of her job during the time period relevant to this case." *Id.* at \*5.

Here, the allegations of self-harm ideations and Plaintiff's ex-girlfriend are also too removed from the NBME CBSE. Restated here, Plaintiff was dismissed solely because of the minimum passing score on the NBME CBSE, he was not dismissed in any way related to RUSM's allegations. This after-the-fact justification would confuse the jury into thinking that RUSM dismissed Plaintiff for other non-NBME CBSE minimum score reasons. Motion at 8-9. *See also* Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment, Part IV.A, at 14-15 [ECF No. 137].

"[A]n employer's after-the-fact, legitimate reason for taking an adverse employment action cannot be considered if that reason did not actually motivate the employer at the time it made the decision." *Cyprian v. Auburn University Montgomery*, 799 F. Supp. 2d 1262, 1284 (M.D. Ala. 2011) (citing *Campbell v. Civil Air Patrol*, 138 Fed.Appx. 201, 203 (11th Cir.2005)); "This after-the-fact justification is legally insufficient to rebut [plaintiff's] prima facie case." *Crawford v. Western Elec. Co., Inc.*, 745 F.2d 1373, 1381 (11th Cir. 1984); "If at the time of the adverse employment decision the decision-maker gave one reason, but at the time of the trial gave a different reason which was unsupported by the documentary evidence, the jury could reasonably conclude that the new reason was a pretextual after-the-fact justification." *Perfetti v. First Nat. Bank of Chicago*, 950 F.2d 449, 456 (7th Cir. 1991); "[T]he Court notes that these reasons appear to be after the fact justifications for the Defendants' refusal to consider Turner for the Deputy IG position." *Turner v. State of Georgia Sec'y of State*, 848 F. Supp. 2d 1361, 1376 (M.D. Ga. 2012) (defendant claimed after-the-fact that plaintiff had "poor communication skills").

**D.    The Counseling Notes Do Not Indicate that the Alleged Ideations and Alleged Depression Related to Plaintiff's Ex-Girlfriend, Affected Plaintiff's Performance at RUSM.**

RUSM is simply introducing the terms "suicide," "self-harm" and "depression" allegedly caused by Plaintiff's ex-girlfriend to shock the jury into the stereotyping Plaintiff. The Supreme Court has held that the "mere possession of a handicap is not a permissible ground for assuming an inability to function in a particular context." *Davis*, 442 U.S. at 404. The counseling notes do not indicate any "misconduct" as a result of said terms. RUSM merely asks the jury to stereotype the possible implications of said terms without offering anything more.

**III.   Hearsay Within Hearsay**

**A.    The Stipulation Does Not Apply to the Statements Within the Counseling Notes, Nor Does the Stipulation Mention Anything About a Business Record Hearsay Exception.**

The stipulation clearly states that the counseling records, produced by RUSM "are authentic, true and correct **copies**" and the "copies" are non-hearsay pursuant to Fed. R. Evid. 803(4). The stipulation does not mention anything about the statements within the "copies" nor does it mention anything about Fed. R. Evid. 803(6).

The challenge statements within the counseling notes are hearsay within hearsay, and "[h]earsay included within hearsay is inadmissible unless each part of the combined statements conforms with an exception to the hearsay rule." Fed. R. Evid. 805. The stipulation was for the "copies," but the hearsay within the hearsay is inadmissible for the truth of the matter asserted. The self-harm and suicidal ideation admissions and statements that were relayed to Mr. Cuffy should at the least be redacted from Mr. Cuffy's counseling notes.

This Court has held, "when a stipulation is contrary to law the Court is not bound thereby." *Burnside-Ott Aviation Training v. U.S.*, 617 F. Supp. 279, 284 (S.D. Fla. 1985) ("In instances where a stipulation is inadvertent, contrary to law, contrary to fact or made without proper

8

authority this court may disregard the stipulation."); *See also Koch v. U.S. Dept. of Interior*, 47 F.3d 1015, 1018 (10th Cir. 1995) ("[i]t is well-settled that a court is not bound by stipulations of the parties as to questions of law" (quoting *Dimidowich v. Bell Howell,* 803 F.2d 1473, 1477 n. 1 (9th Cir. 1986)).

### B. Plaintiff's Mother Would Have Lacked Person Knowledge to Make Such Statements and Would Have Been Improperly Motivated Because She was Upset that Plaintiff Failed by One Percent.

Just because Plaintiff's mother is his mother, does not mean there was a "special relationship." This is conclusory. RUSM's argument lacks foundation. Plaintiff's mother would have had no standing to make the alleged statements of self-harm and suicidal ideations, nor would she have personal knowledge as she was obviously not in Dominica to have observed said allegations. In addition to this, Plaintiff was not "seeking treatment" from Mr. Cuffy, Plaintiff had never met Mr. Cuffy until Mr. Cuffy interrogated Plaintiff following the improperly motivated alleged statements allegedly from Plaintiff's mother.

Plaintiff testified that he never talked to his mother about self-harm or suicidal ideations. Awodiya Dep. 95:20-24, **Exhibit SJ-25** [ECF No. 113]. He further testified that "[y]ou can't join [his] actions with hers" because she was "very upset that [he] failed." *Id.* at 95:15-18. Plaintiff was very "confused" as to why Mr. Cuffy was calling him into the Counseling Center. *Id.* at 94:19-95:3. Plaintiff was not seeking treatment because this was Plaintiff's first time ever meeting Mr. Cuffy. *See* [ECF No. 139] at ¶ 11. The alleged admissions and statements regarding self-harm and suicidal ideations, allegedly made by Plaintiff's mother, were not made to seek treatment, they were not made to the Counseling Center at all, they were made to a person named Jeanie Robertson who then reported it to the Counseling Center that told Mr. Cuffy. *See* Motion at 5. The alleged admissions and statements allegedly originating from Plaintiff's mother would have been improperly motivated to redress the failing grade, not to "seek treatment."

### C. The Internal Contradictions Within a Counseling Note Indicates a Lack of Trustworthiness.

Pursuant to Fed. R. Evid. 803(6), to fall under the business record hearsay exception, the statements by Mr. Cuffy must "not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness." Fed. R. Evid. 803(6)(E). This also makes the declarant of the source of the admissions and statements unclear.

The fact that Mr. Cuffy's counseling notes indicates at least two sources of information by way of internal contradictions, shows a lack of trustworthiness in the challenged, internally-contradicting statements of those counseling notes. "Given the uncertainty of the source of the hearsay statement, we need not address the parties' arguments as to whether the hearsay statements were actually relied upon for treatment or diagnosis." *Geis V. Tricam Industries, Inc.*, Civil Action No. 09-1396 (MLC)., at *1 (D.N.J. Jul. 20, 2011) (granting an identical motion in limine to the same issues here). "Because the identity of the declarant is unclear with respect to both of the challenged statements, we cannot find that the medical diagnosis exception to the hearsay rule would provide for the admissibility of the challenged statements." *Id.*

The internal contradictions are just simply too confusing and pointless to present before a jury. The Eleventh Circuit has held, "we conclude that the trial court acted well within its discretion to exclude irrelevant, confusing and misleading evidence." *U.S. v. Anderson*, 872 F.2d 1508, 1518 (11th Cir. 1989) (quotation marks omitted); *Hull v. Merck Co., Inc.*, 758 F.2d 1474, 1478 (11th Cir. 1985) ("The ruling was within the trial judge's broad discretion to exclude evidence that is irrelevant, confusing or misleading."); *Kight v. Singletary*, 50 F.3d 1539, 1546 (11th Cir. 1995) ("Given the confusing nature of the evidence and its limited probative value, we cannot say that the trial court erred in excluding this evidence.").

DATED this 31st day of January, 2019:

Respectfully submitted,

By: Oluwamuyiwa Awodiya, *pro se* litigant
15005 Dahlia Dr.
Bowie, MD 20721
(240) 602-1836
Plaintiff, in Proper Person

## CERTIFICATE OF SERVICE

I do hereby certify that on this 31st day of January, 2019, I have caused a true and correct copy of the foregoing by mailing a copy to the Court, where the Court's CM/ECF system will send notification to the following:

**Ryan Roman**
Akerman Senterfitt
Suntrust International Center
1 SE 3rd Avenue
25th Floor
Miami, FL 33131-1714
305-374-5600
Fax: 305-374-5095
Email:
ryan.roman@akerman.com

**Octavia Monique Green**
Akerman LLP
Three Brickell City Centre
98 Southeast Seventh Street
Suite 1100
Miami, FL 33131
(305) 982-5670
Email:
octavia.green@akerman.com

By: Oluwamuyiwa Awodiya, *pro se* litigant

11