## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

OLUWAMUYIWA AWODIYA,                          CASE NO.  0:18-cv-60482-KMM-AOV

      Plaintiff,

v.

ROSS UNIVERSITY SCHOOL OF
MEDICINE, SCHOOL OF VETERINARY
MEDICINE LIMITED,

      Defendant.

_____/

## JOINT PRETRIAL STIPULATION

      The following pre-trial stipulation is submitted by plaintiff Oluwamuyiwa Awodiya and

defendant Ross University School of Medicine, School of Veterinary Medicine Limited

("RUSM") pursuant to Rule 16 of the Federal Rules of Civil Procedure, Local Rule 16.1(e) of the

Local Rules for the United States District Court for the Southern District of Florida, and this

Court's Scheduling Order dated May 14, 2018 [ECF No. 37].

    **I.**    **STATEMENT OF THE CASE**

        1.  **Plaintiff's Statement of the Case**

      Plaintiff seeks a brief extension of time until noon tomorrow, March 1, 2019, to file and

serve his statement of the case.  RUSM does not oppose this request.

        2.  **Defendant's Statement of the Case**

      RUSM is a medical school that was located on the island of Dominica during the relevant

time period.  Plaintiff is a former RUSM medical student.  Plaintiff attended RUSM from May

2014 until his dismissal from the university.

Plaintiff performed poorly during his first five semesters at RUSM.  During Plaintiff's fifth semester at RUSM, Plaintiff struggled with emotional distress due to a relationship break-up with a female student who was unfaithful, as well as familial issues and general loneliness.  This substantially impacted his academics.

In December 2015, Plaintiff failed his fifth semester.  After learning of this, Plaintiff suffered from thoughts of self-harm and visited RUSM's counseling center to seek assistance.  Due to his emotional distress and suicidal thoughts, RUSM sought to help Plaintiff return home to the United States early for winter break.  In order to facilitate this process, Plaintiff executed a Release of Information Consent form to allow his counselors to speak with RUSM's administration.  Prior to and during December 2015, neither RUSM nor Plaintiff knew that Plaintiff suffered from any impairment or disability.  In January 2016, Plaintiff was diagnosed with attention deficit hyperactivity disorder ("ADHD") by RUSM's counseling center.

Plaintiff's claims are premised largely on a purported failure by RUSM to accommodate Plaintiff's disabilities.  However, despite receiving an ADHD diagnosis, Plaintiff never applied for an accommodation with the Accommodations' Coordinator at RUSM.   RUSM, through its Student Handbook, has a policy for how students must apply for an accommodation.  This policy includes providing a written request to the Accommodations' Office.  It is undisputed the Plaintiff failed to submit the required paperwork for an academic accommodation.

Plaintiff contends that his counselors, having knowledge of his ADHD diagnosis, should have spoken with the Accommodations' Coordinator on his behalf.  Plaintiff also contends that the Release of Information Consent form signed in December 2015, before there was any diagnosis, gave his counselors permission to speak with the Accommodations' Coordinator on his behalf.  Though the Release of Information Consent form does give the counselors the ability to

release Plaintiff's medical information, this would not occur until Plaintiff or the Accommodations' Coordinator notified the counseling center of Plaintiff's application for accommodations. The counseling center never received a request to release Plaintiff's medical records to the Accommodations' Coordinator for purposes of obtaining an accommodation.

In addition to his failure to accommodate claim, Plaintiff also alleges that RUSM breached a contract with him when it (i) denied him a right to equal opportunity and denied him reasonable accommodations; (ii) denied him a right to a productive learning environment free from discrimination; (iii) refused Plaintiff's request for assistance and guidance to process requests for accommodations on the United States Medical Licensing Examination ("USMLE"); (iv) required Plaintiff to sit for the NBME CBSE within three consecutive attempts; (v) dismissed him from its institution for failure to pass the National Board of Medical Examiners' ("NBME") Comprehensive Basic Science Exam ("CBSE"); and (vi) failed to respond to Plaintiff within 15 calendar days after receiving his second appeal.

Because Plaintiff never applied for an accommodation, he will not be able to show that RUSM breached its contract with him by failing to provide accommodations. Plaintiff also contends that RUSM breached its contract with him when it changed its policies and required Plaintiff to sit for the NBME CBSE within three consecutive attempts. The evidence will show that RUSM, by law, is able to change its curriculum requirements and that it did not breach any contract with the Plaintiff.

Further, Plaintiff cannot establish that RUSM breached its contract with Plaintiff by dismissing him from its institution for failure to pass the NBME CBSE. At the time Plaintiff enrolled at RUSM, the minimum passing score was a 66. RUSM changed the minimum required passing score for the CBSE from a 66 to a 68 in November 2015. In September 2015, students,

including Plaintiff were advised of the score change by email.  The CBSE is a predictor for success in passing the USMLE Step 1 Exam, which is the first of the licensing exams that every medical student must pass before becoming a doctor.  RUSM increased the minimum passing score on the CBSE because of a corresponding minimum passing score increase on the USMLE Step 1 Exam.

Plaintiff attempted the CBSE on five different occasions and never obtained the minimum required passing score.  Following his fourth attempt, Plaintiff was dismissed from RUSM.  On appeal, RUSM reinstated Plaintiff, allowing him to attempt the CBSE for a fifth time.  However, Plaintiff did not obtain a passing score on his fifth try and he was then dismissed from RUSM.  Plaintiff contends that he was wrongly dismissed from RUSM.  However, RUSM dismissed Plaintiff only after Plaintiff failed to meet the necessary requirements of passing the CBSE after five attempts.

Plaintiff appealed RUSM's decision to dismiss him and contends that the Dean failed to respond to his appeal within fifteen (15) calendar days.  This Court has already held that such a matter, even if it could be shown, would not be material, nor would it cause Plaintiff any damages.  Nonetheless, the evidence shows that Plaintiff submitted his appeal to the Promotion Appeals Committee on June 13, 2017.  By Plaintiff's calculation, the Dean was required to respond no later than June 28, 2017.  The evidence, however, does not show when the Dean actually received Plaintiff's appeal.  Therefore, as a threshold factual matter, Plaintiff has not established that the Dean's response was untimely.

Plaintiff contends that RUSM, through a statement made on its website, misrepresented a practice of the university to comply with the American with Disabilities Act.  RUSM's website contained the following statement, which is accurate and does not give rise to any actionable claim for misrepresentation:

4

"It is the policy and practice of the University to comply with the Americans with Disabilities Act as applicable and practical in Dominica.  No qualified individual with a disability will be denied access to or participation in services, programs, or activities of Ross University School of Medicine."

Plaintiff has presented no evidence to establish that the statement made by RUSM is untrue or that RUSM does not comply with Title III of the American with Disabilities Act "as applicable and practical in Dominica."

Finally, Plaintiff contends that RUSM owed him a fiduciary duty and breached such duties when its counselors failed to apply for accommodations on Plaintiff's behalf.  By law, RUSM, as an entity cannot owe a fiduciary duty.  Further, the evidence shows that Plaintiff's counselors— owing a duty to maintain confidentiality—could not apply for accommodations on Plaintiff's behalf.  Further, the counselor's treating Plaintiff have testified that Plaintiff did not ask for extended testing time.  Plaintiff has not presented any evidence proving otherwise.

Plaintiff simply did not apply for an accommodation.  Thus, his failure to accommodate claims and supplemental state law claims must fail.

## II.    BASIS OF FEDERAL JURISDICTION

Pursuant to 28 U.S.C. § 1331, this Court has subject matter jurisdiction over Plaintiff's claims arising under 29 U.S.C. § 794 and 42 U.S.C. § 12101, et. seq., Second this Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.  Finally, this Court also has diversity jurisdiction over the parties pursuant to 28 U.S.C. § 1332 because there is a complete diversity of citizenship and the matter in controversy exceeds the value of $75,000.

## III.   PLEADINGS

1.  Plaintiff's Third Amended Complaint [ECF No. 47]; and

2.  Defendant's Answer and Affirmative Defenses [ECF No. 58].

5

48007475;6

## IV.    LIST OF PENDING MOTIONS

1.   Plaintiff's Second Motion for Partial Summary Judgment [ECF No. 102];

2.   Defendant's Motion to Exclude Reference to Adtalem Global Education and Its Net Worth [ECF No. 116];

3.   Defendant's *Daubert Motion* to Preclude Plaintiff from Testifying to Improper Lay Opinions [ECF No. 117];

4.   Defendant's Motion for Summary Judgment and Incorporated Memorandum of Law [ECF No. 120];

5.   Plaintiff's *Daubert* Motion to Exclude the Expert Testimony of Ronald Quintero [ECF No. 126];

6.   Plaintiff's Motion in Limine to Exclude Evidence Regarding Uncertainty of Damages, Ex-Girlfriend, Counseling Notes, and Judicial Admissions [ECF No. 127]; and

7.   Plaintiff's Third Motion for Judicial Notice [ECF No. 140].

## V.    STIPULATED FACTS

1.   Plaintiff is a former medical school student at Ross University School of Medicine, School of Veterinary Medicine Limited.

2.   Plaintiff enrolled in medical school at RUSM in May 2014.

## VI.    ISSUES OF FACT FOR DETERMINATION AT TRIAL

The parties state that neither of the parties waives the right to challenge the relevancy of any issue of fact contained on this list.

### Plaintiff's Proposed Stated Issues of Fact for Determination at Trial

1.      Whether Plaintiff is disabled.

2.      Whether RUSM knew of the limitations created by Plaintiff's ADHD.

6

48007475;6

3.      Whether RUSM knew of the limitations created by Plaintiff's OCD.

4.      Whether RUSM was informed of Plaintiff's need for an accommodation.

5.      Whether RUSM had enough information to know of Plaintiff's need for an accommodation.

6.      Whether the circumstances were enough to cause RUSM to make appropriate inquiries about Plaintiff's possible need for an accommodation.

7.      Whether Plaintiff's need for an accommodation was obvious.

8.      Whether Plaintiff had ADHD before December 2015.

9.      Whether Dr. Davendranand Sharma met with Plaintiff before December 2015.

10.     Whether Dr. Sharma saw symptoms of Plaintiff's ADHD before December 2015.

11.     Whether Dr. Sharma became Plaintiff's psychiatrist in December 2015.

12.     Whether Dr. Sharma saw evidence of Plaintiff's ADHD in December 2015.

13.     Whether Dr. Sharma prescribed Plaintiff medication as a trial for ADHD in December 2015.

14.     Whether Dr. Sharma met with Plaintiff in January 2016.

15.     Whether McMillan Cuffy met with Plaintiff in January 2016.

16.     Whether Plaintiff submitted a Conners CPT3 assessment to the RUSM Counseling Center in January 2016.

17.     Whether the Conners CPT3 assessment states that Plaintiff has issues with attention.

18.     Whether the Conners CPT3 assessment states that Plaintiff's attention deficit was very highly likely ADHD.

19.     Whether Plaintiff submitted a CAARS form to the RUSM Counseling Center in January 2016.

20.     Whether Plaintiff told RUSM in the CAARS form, that he has trouble keeping his attention focused when working and that he has trouble finishing job task or schoolwork.

21.     Whether Plaintiff's statements in the CAARS form were the result of ADHD.

22.     Whether Dr. Davendranand Sharma could request for accommodations on a student's behalf.

23.     Whether Dr. Sharma was authorized to identify Plaintiff and his ADHD, to an accommodation coordinator.

24.     Whether the Release of Information Consent form needed to be signed again when RUSM confirmed Plaintiff's ADHD.

25.     Whether the Release of Information Consent form is for information relevant to academic accommodations.

26.     Whether Dr. Bryan Hayse managed academic accommodations.

27.     Whether Plaintiff met with Dr. Hayse about accommodations.

28.     Whether the alleged application form existed before Plaintiff's passed his fifth semester.

29.     Whether Plaintiff met the essential academic requirements to participate in taking the NBME CBSE.

30.     Whether Plaintiff's relationship distress improved Plaintiff's exam scores during his fifth semester.

31.     Whether Plaintiff's relationship distress caused emotional distress.

32.     Whether Plaintiff was diagnosed with emotional distress.

8

33.     Whether the alleged emotional distress improved Plaintiff's exam scores during his fifth semester.

34.     Whether Plaintiff experienced relationship distress during each of his NBME CBSE attempts, if any.

35.     Whether Plaintiff experienced the alleged emotional distress during each of his NBME CBSE attempts, if any.

36.     Whether the alleged emotional distress prevented Plaintiff from meeting the technical standards required to participate in taking the NBME CBSE.

37.     Whether the alleged suicidal ideations caused any symptoms.

38.     Whether Plaintiff had any suicidal plans.

39.     Whether Plaintiff had any suicidal intents.

40.     Whether Plaintiff had any suicidal behaviors.

41.     If Plaintiff experienced the alleged suicidal ideations, did he exercise good judgment by not committing suicide.

42.     Whether the alleged suicidal ideations improved Plaintiff's exam scores during his fifth semester.

43.     Whether Plaintiff experienced the alleged suicidal ideations during each of his NBME CBSE attempts, if any.

44.     Whether the alleged suicidal ideations prevented Plaintiff from meeting the technical standards required to participate in taking the NBME CBSE.

45.     Whether Plaintiff had symptoms of OCD since before he started medical school.

46.     Whether OCD caused Plaintiff's anxiety.

47.     Whether RUSM diagnosed Plaintiff with anxiety.

48007475;6

48.     Whether Plaintiff's anxiety and checking rituals limited Plaintiff's ability to complete exams in a timely fashion.

49.     Whether Dean William Owen investigates a disability during the appeal process if he is notified that the disability affected a student's academic performance.

50.     Whether—on appeal of a dismissal—Dean William Owen allowed students with a disability to participate in retaking the NBME CBSE if the adverse impact of a student's disability could be mitigated.

51.     If RUSM is found to be liable for failure to provide a reasonable accommodation, the total amount of compensatory damages to which Plaintiff is entitled.

52.     Whether former Dean Joseph Flaherty of RUSM sent an email in February 2016, that the school will be implementing a new method in May 2016 for determining the minimum passing score that would be applicable to all students.

53.     Whether RUSM republished its Academic Catalog in May 2016 with updated polices applicable to all students.

54.     Whether RUSM decreased the minimum passing score for the NBME CBSE from 68 to 66.

55.     Whether the minimum passing score for the NBME CBSE was a 66 in August 2016.

56.     Whether RUSM applied a different minimum passing score to Plaintiff than other students taking the same exam.

57.     Whether RUSM breached its contractual obligation by dismissing Plaintiff with a score of 67 on the NBME CBSE.

58.     If RUSM is found to be liable for breach of contract, the total amount of compensatory damages to which Plaintiff is entitled.

48007475;6

59.     Whether a fiduciary duty was created between Plaintiff and the RUSM Counseling Center's psychiatrists and mental health counselors.

60.     Whether the RUSM Counseling Center breached its fiduciary duty.

61.     If RUSM is found to be liable for breach of fiduciary, the total amount of compensatory damages to which Plaintiff is entitled and the amount of punitive damages if awarded.

62.     Whether Plaintiff relied on any statement published in the Admissions Requirements section of RUSM's website when he was a prospective student.

63.     Whether any part of the statement published in the Admissions Requirements section of RUSM's website that Plaintiff relied on was false.

64.     Whether RUSM omitted any material fact from the statement published in the Admissions Requirements section of RUSM's website that Plaintiff relied on.

65.     Whether RUSM intended for prospective students from the United States to rely on the statements in the Admissions Requirements section of its website.

66.     If RUSM is found to be liable for fraud, the total amount of compensatory damages to which Plaintiff is entitled and the amount of punitive damages if awarded.

67.     If RUSM is found to be liable for negligent misrepresentation, the total amount of compensatory damages to which Plaintiff is entitled and the amount of punitive damages if awarded.

68.     Whether Plaintiff attempted to avoid his damages.

**Defendant's Proposed Stated Issues of Fact for Determination at Trial**

1.     Whether Plaintiff met with Matthew Stewart-Fulton about an accommodation.

2.     Whether Plaintiff applied for an accommodation.

11

3.      Whether Plaintiff started attending the RUSM counseling center during his fifth semester of medical school for emotional distress resulting from a relationship with a female student.

4.      Whether Plaintiff's emotional distress contributed to his academic struggles during his fifth semester of medical school.

5.      Whether RUSM knew of Plaintiff's OCD diagnosis (and whether such a diagnosis had been made) at the time it dismissed Plaintiff from the university.

6.      Whether RUSM had the authority to change the minimum passing score for the National Board of Medical Examiners' (NBME) Comprehensive Basic Science Exam (CBSE) pursuant to the university's handbook and other guidelines.

7.      Whether Plaintiff received an email in September 2015, advising him of the score change from a 66 to 68 on the NBME CBSE.

8.      Whether Plaintiff requested an accommodation on the United States Medical Licensing Examination ("USMLE") Step 1 Exam.

9.      Whether Plaintiff relied on any statement published on RUSM's website when applying for admissions.

10.     Whether any statement published on RUSM's website that Plaintiff purports to have relied on was actually false.

11.     If RUSM is found to be liable for failure to provide a reasonable accommodation, the total amount of damages to which Plaintiff is entitled.

12.     Whether Plaintiff took any actions to mitigate his damages.

13.     Whether Plaintiff struggled with emotional distress issues during his fifth semester in medical school.

48007475;6

14.     Whether Plaintiff struggled with suicidal ideations in December 2015.

15.     Whether Plaintiff signed the Release of Information Consent form to allow the counseling center to make arrangements with RUSM's administration about having Plaintiff return home earlier to the United States due to Plaintiff's suicidal ideations.

16.     Whether Plaintiff attended RUSM's counseling center in December 2015 for his emotional distress issues and suicidal thoughts.

17.     Whether Plaintiff continued seeking treatment from RUSM's counseling center in January 2016.

18.     Whether Plaintiff continued seeking treatment from RUSM's counseling center during the time he was in Dominica.

19.     Whether RUSM diagnosed Plaintiff with OCD.

20.     Whether RUSM issued its Student Handbook and its Academic Catalog to Plaintiff while he attended RUSM.

21.     Whether Plaintiff completed the requirements necessary to receive his Doctor of Medicine (MD) degree.

22.     Whether successfully passed the NBME CBSE exam.

23.     Whether Plaintiff was dismissed from RUSM for failure to pass the NBME CBSE exam in October 2016.

24.     Whether RUSM reinstated Plaintiff in December 2016.

25.     Whether RUSM dismissed Plaintiff for failure to pass his fifth attempt at the NBME CBSE in April 2017.

26.     Whether RUSM was justified in dismissing Plaintiff in June 2017.

27.     Whether Dean Owen was justified in upholding Plaintiff's dismissal from RUSM.

48007475;6

28.     Whether RUSM offered Plaintiff reinstatement on October 31, 2018.

## VII.    STIPULATED ISSUES OF LAW

1.     "In the context of postsecondary education, an otherwise qualified individual is a person who is able to meet the academic and technical standards requisite to admission or participation in the education program or activity." *Zainulabeddin v. Univ. of S. Fla. Bd. of Trs.*, No. 17-11888, at *10 (11th Cir. Sep. 5, 2018); *accord* 34 C.F.R. § 104.3(l)(3).

2.     "The term 'technical standards' refers to all nonacademic admission criteria that are essential to participation in the program in question." *Southeastern Community College v. Davis*, 442 U.S. 397, 404 (1979) (quoting an explanatory note to the original regulations); 34 C.F.R. § 104, App. A at 374.

3.     Under Florida law, the elements of a claim for breach of fiduciary duty are the existence of a fiduciary duty and the breach of that duty such that it is the proximate cause of the plaintiff's damages.  *Patten v. Winderman*, 965 So. 2d 1222, 1224 (Fla. Dist. Ct. App. 2007).

## VIII.    ISSUES OF LAW FOR DETERMINATION AT TRIAL

The parties state that neither of the parties waives the right to challenge the relevancy of any issue of law contained on this list.

### Plaintiff's Proposed Issues of Law for Determination at Trial

1.     Whether to state a failure to accommodate claim, it must be shown that the plaintiff (1) is disabled, (2) is an "otherwise qualified" individual, and (3) was discriminated against by way of the defendant's failure to provide a reasonable accommodation. *Lucas v. W.W. Grainger*, *Inc.*, 257 F.3d 1249, 1255 (11th Cir. 2001).

2.     Whether Plaintiff is disabled. 42 U.S.C. § 12102(1); 34 C.F.R. § 104.3(j)(1).

14

3.     Whether plaintiff "need only show that an 'accommodation' seems reasonable on its face, i.e., ordinarily or in the run of cases'" *Alumni Cruises, LLC v. Carnival Corp.*, 987 F. Supp. 2d 1290, 1305 (S.D. Fla. 2013) (quoting *U.S. Airways, Inc. v. Barnett*, 535 U.S. 391, 402, 122 S.Ct. 1516, 152 L.Ed.2d 589 (2002)).

4.     Whether "plaintiff satisfies 'burden of production' by showing [a] 'plausible accommodation.'" *Id.* (quoting *Barnett*, 535 U.S. 391).

5.     Whether "[i]n cases alleging a failure to make reasonable accommodations, the defendant's duty to provide a reasonable accommodation is not triggered until the plaintiff makes a specific demand for an accommodation or the need for an accommodation becomes obvious." *Alvey v. Gualtieri*, Case No. 8:15-cv-1861-T-33AEP, at *16 (M.D. Fla. Nov. 7, 2016).

6.     Whether "[f]or a demand to be specific enough to trigger the duty to provide a reasonable accommodation, the defendant must have enough information to know of both the disability and desire for an accommodation, or circumstances must at least be sufficient to cause a reasonable entity to make appropriate inquiries about the possible need for an accommodation." *Kidwell v. Fla. Comm'n on Human Relations*, Case No: 2:16-cv-403-FtM-99CM, at *12 (M.D. Fla. Jan. 17, 2017) (alterations omitted).

7.     Whether discrimination includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability." *Duckett v. Dunlop Tire Corp.*, 120 F.3d 1222, 1224 (11th Cir. 1997).

8.     Whether there is suffientient evidence that Plaintiff informed RUSM of the limitations his disabilities created. Pattern Jury Instructions, Civil Cases, Eleventh Circuit, § 4.12, p. 7 (2018 revision).

9. Whether there is suffientient evidence that Plaintiff informed RUSM of the need for an accommodation. *Id.*

10. Whether there is suffientient evidence that the circumstances were enough to cause RUSM to make appropriate inquiries about Plaintiff's possible need for an accommodation. *Kidwell v. Fla. Comm'n on Human Relations*, Case No: 2:16-cv-403-FtM-99CM, at *12 (M.D. Fla. Jan. 17, 2017).

11. Whether there is suffientient evidence that Plaintiff's need for an accommodation was obvious. *Alvey v. Gualtieri*, Case No. 8:15-cv-1861-T-33AEP, at *16 (M.D. Fla. Nov. 7, 2016).

12. Whether RUSM bears the burden of proof to establish that a request is not actionable. Pattern Jury Instructions, Civil Cases, Eleventh Circuit, § 4.12, p. 23 (2018 revision).

13. Whether requests for accommodations are required to comply with RUSM's Student Handbook. *Redding v. Nova Se. Univ., Inc.*, 165 F. Supp. 3d 1274, 1296 n.25 (S.D. Fla. 2015).

14. Whether oral requests for accommodations qualify as a request pursuant to the ADA and Rehabilitation Act. *Holly v. Clairson Indus*, 492 F.3d 1247, 1261 n.14 (11th Cir. 2007).

15. Whether the ADA and Rehabilitation Act permit RUSM to ignore notice of a student's need for an accommodation, that is not in written form. *U.S. v. Hialeah Housing Authority*, 418 Fed. Appx. 872, 876 (11th Cir. 2011).

16. Whether the ADA and Rehabilitation Act permit RUSM to ignore written notice of a student's need for an accommodation that is not on RUSM's alleged application form. *Nattiel v. Fla. Dep't of Corr.*, CASE NO. 1:15-cv-00150-WTH-GRJ, at *2 (N.D. Fla. Nov. 27, 2017).

16

17.     Whether discrimination includes "the imposition or application of eligibility criteria that screen out or tend to screen out an individual with a disability or any class of individuals with disabilities from fully and equally enjoying any goods, services, facilities, privileges, advantages, or accommodations, unless such criteria can be shown to be necessary for the provision of the goods, services, facilities, privileges, advantages, or accommodations being offered." 42 U.S.C. § 12182(b)(2)(A)(i); *accord* 34 C.F.R. § 104.4(b)(4).

18.     Whether there is suffient evidence that RUSM's alleged application form is a necessary criterion to provide an accommodation for the known limitations of a student's disability. 42 U.S.C. § 12182(b)(2)(A)(i); 34 C.F.R. § 104.4(b)(4).

19.     Whether there is suffient evidence that a reasonable accommodation existed. *Alumni Cruises, LLC v. Carnival Corp.*, 987 F. Supp. 2d 1290, 1305 (S.D. Fla. 2013).

20.     Whether there is suffient evidence that RUSM failed to provide a reasonable accommodation.

21.     Whether RUSM disparately treated Plaintiff's appeal during Dean William Owens purported inquiry of Plaintiff's ADHD and OCD. *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 267-68 (1977).

22.     Whether pursuant to Florida law, "judicial review of a private educational institution's determination of academic performance in this context is limited to whether the challenged determination was arbitrary and capricious, irrational, made in bad faith, or in violation of constitution or statute." *Sharick v. Southeastern University*, 780 So. 2d 136, 138 (Fla. Dist. Ct. App. 2000), *review granted*, 804 So.2d 330 (Fla. 2001), 805 So.2d 809 (Fla. 2002), *review dismissed*, 822 So.2d 1290 (Fla. 2002).

23.     Whether pursuant to Florida law, "[t]he relationship between the parties in this case was essentially a contract." *Id*. at 139.

24.     Whether "[p]ursuant to Florida law, the non-breaching party may choose [] seeking lost profits in order to be placed in the position it would have been in had the contract been fully performed …." Lady of America Franchise Corporation v. Arcese, CASE NO.:05-61306-CIV-COHN/JOHNSON., at *8 (S.D. Fla. May. 25, 2006).

25.     Whether "[i]n the event of a breach, expectation damages constitute the measure of value of the obligations." Waste Corporation of America, Inc. v. Genesis Ins. Co., 382 F. Supp. 2d 1349, 1361 (S.D. Fla. 2005) (citing Sharick, 780 So.2d 136).

26.     Whether "[t]o state a claim for fraudulent inducement pursuant to Florida law, [Plaintiff] must allege four elements: '(1) a false statement regarding a material fact; (2) the statement maker's knowledge that the representation is false; (3) intent that the representation induces another's reliance; and (4) consequent injury to the party acting in reliance.'" *Bank of Am., N.A. v. Grec Homes IX, LLC*, CASE NO. 13-21718-CIV-ALTONAGA/Simonton, at *11 (S.D. Fla. Jan. 23, 2014) (quoting *Thompkins v. Lil' Joe Records, Inc.,* 476 F.3d 1294, 1315 (11th Cir. 2007)).

27.     Whether justifiable reliance is a necessary element of fraud. *Bank of Am., N.A. v. Grec Homes IX, LLC*, CASE NO. 13-21718-CIV-ALTONAGA/Simonton, at *11 (S.D. Fla. Jan. 23, 2014).

28.     Whether "Florida law recognizes that fraud can occur by omission, and places a duty on one who undertakes to disclose material information to disclose that information fully." *ZC Insurance Co. v. Brooks*, 847 So. 2d 547, 551 (Fla. Dist. Ct. App. 2003).

18

29.     Whether punitive damages are available in any claim of fraud. *First Interstate Dev. v. Ablanedo*, 511 So. 2d 536, 538-39 (Fla. 1987).

30.     Whether "plaintiff may establish negligent misrepresentation by proving (1) a misrepresentation of a material fact; (2) the representor made the representation without knowledge as to its truth or falsity, or under circumstances in which the representor ought to have known of its falsity; (3) the representor intended to induce another to act on the misrepresentation; and (4) injury resulted to the party acting in justifiable reliance on the misrepresentation." *Tsavaris v. Pfizer, Inc.*, Case No. 1:15-cv-21826-KMM, at *9 (S.D. Fla. Feb. 1, 2016) (quoting *Souran v. Travelers Ins. Co.,* 982 F.2d 1497, 1503 (11th Cir. 1993) (citation omitted).

31.     Whether both fraud and negligent misrepresentation contain the same "intent" to induce another to act or rely—as a necessary element.

32.     Whether punitive damages are available in any claim of negligent misrepresentation that contains an intent element. *First Interstate Dev. v. Ablanedo*, 511 So. 2d 536, 539 (Fla. 1987).

33.     Whether "only a preponderance or greater weight of the evidence is required to establish fraud, whether the action is at law or in equity." *Wieczoreck v. H H Builders, Inc.*, 475 So. 2d 227, 228 (Fla. 1985).

34.     Whether there is sufficient evidence that RUSM's failure to provide Plaintiff with a reasonable accommodation was arbitrary and capricious, irrational, made in bad faith, or in violation of constitution or statute to maintain a breach of contract claim. *Sharick v. Southeastern University*, 780 So. 2d 136, 138 (Fla. Dist. Ct. App. 2000).

35.     Whether the law permits RUSM to hold Plaintiff to a different academic standard than other students, taking the same exam. *Id.*

19

36.     Whether "[t]he elements of a claim for breach of fiduciary duty are: (1) the existence of a fiduciary relationship; (2) breach of a duty owed by the fiduciary; and (3) proximate cause." *Weinberg v. Advanced Data Processing, Inc.*, 147 F. Supp. 3d 1359, 1367 (S.D. Fla. 2015)

37.     Whether "fiduciary relationships [can] be either expressly or impliedly created." *Id*.

38.     Whether "[w]hile a contractual relationship between the parties is not required to form a fiduciary relationship, a party must be 'under a duty to act for or to give advice for the benefit of another upon matters within the scope of that relation.'" *Building v. Ocean Bank*, 982 So. 2d 37, 41 (Fla. Dist. Ct. App. 2008) (quoting *Doe v. Evans,* 814 So.2d 370, 374 (Fla.2002)).

39.     Whether there is sufficient facts that Plaintiff and the RUSM Counseling Center's psychiatrist and mental health counselor created "some degree of dependency on one side and some degree of undertaking on the other side …." *Jaffe v. Bank of Am., N.A.,* 667 F.Supp.2d 1299, 1319 (S.D. Fla. 2009).

40.     Whether Plaintiff can request judicial notice of facts, and judicial opinions, to support his claim for lost earning capacity. *Brough v. Imperial Sterling Ltd.*, 297 F.3d 1172, 1180 (11th Cir. 2002).

41.     Whether RUSM can raise its Third Affirmative Defense.

42.     Whether RUSM can raise its Fifth Affirmative Defense.

43.     Whether RUSM's Fourth Affirmative Defense and Eight Affirmative Defense are the same affirmative defense pursuant to the doctrine of avoidable consequences. *System Components Corp. v. Florida Dept*, 14 So. 3d 967, 982 (Fla. 2009).

44.     Whether the doctrine of accord and satisfaction is an affirmative defense that applies to any of Plaintiff's claims. *J.B.D. Constr., Inc. v. Mid-Continent Cas. Co.*, No. 13-10138, at *20 (11th Cir. 2014).

45.     Whether RUSM's Seventh Affirmative Defense applies to any of Plaintiff's claims.

46.     Whether RUSM's Eleventh Affirmative Defense applies to any of Plaintiff's claims.

47.     Whether Plaintiff's pending motions should be granted.

**<u>Defendant's Proposed Issues of Law for Determination at Trial</u>**

1.     Whether Plaintiff can prove his claims under Title III of the ADA and/or Section 504 of the Rehabilitation Act by proving each of the following elements: that he (i) has a disability; (ii) is a "qualified individual"; and (iii) was discriminated against because of his disability by failing to receive an accommodation.  *Hetherington v. Wal-Mart, Inc.*, 511 Fed. Appx. 909, 912 (11th Cir. 2013).

2.     Whether Plaintiff made an actionable request for accommodation under the ADA and Rehabilitation Act.  *Gaston v. Bellingrath Gardens & Home, Inc.*, 167 F.3d 1361, 1363 (11th Cir. 1999).

3.     Whether Plaintiff was "otherwise qualified" as defined by the ADA and Rehabilitation Act.  42 U.S.C. § 12131(2).

4.     Whether Plaintiff can show that, with or without reasonable accommodation, he was able to meet the essential eligibility requirements for the participation in RUSM's academic program.  42 U.S.C. § 12131(2).

5.     Whether Plaintiff can show that a specific demand for an accommodation has been made. *Gaston v. Bellingrath Gardens & Home, Inc.,* 167 F.3d 1361, 1363 (11th Cir. 1999).

6.     Whether 34 C.F.R. 104.4 and 34 C.F.R. 104.44 create private rights of action.

7.      Whether Counts III and IV of the Complaint, Plaintiff's claims for violation of 34 C.F.R. 104.4 and 34 C.F.R. 104.44, respectively, are duplicative of Count I, alleging that RUSM violated Section 504 of the Rehabilitation Act.

8.      Whether there is a private right of action for violation of Florida Administrative Code Section 6E-2.004(5)(c)(4).

9.      Whether Plaintiff was required to exhaust his administrative remedies prior to bringing a claim for violation of Section 760.08, Florida Statutes, the Florida Civil Rights Act ("FCRA").

10.      Whether there is sufficient evidence that RUSM's alleged failure to provide Plaintiff with a reasonable accommodation was arbitrary or capricious to maintain a breach of contract claim. *Sirpal v. Univ. of Miami*, Civ. No. 09-22662-STB, 2011 WL 3101791 at *14 (S.D. Fla. July 25, 2011).

11.      Whether there is sufficient evidence that RUSM's changes to its policy were arbitrary or capricious to maintain a breach of contract claim. *Sirpal v. Univ. of Miami*, Civ. No. 09-22662-STB, 2011 WL 3101791 at *14 (S.D. Fla. July 25, 2011).

12.      Whether there is sufficient evidence that the Dean's purported failure to reply within 15 days was arbitrary or capricious or otherwise affected Plaintiff in any material way. *Sirpal v. Univ. of Miami*, Civ. No. 09-22662-STB, 2011 WL 3101791 at *14 (S.D. Fla. July 25, 2011).

13.      Whether Plaintiff can establish each of the elements of a fraudulent inducement claim under Florida law, to wit: (i) the defendant made a misrepresentation material fact; (ii) the defendant knew or should have known of the falsity of the statement; (iii) the defendant intended for the representation to induce plaintiff to rely on it and act on it; and (iv) the plaintiff suffered

22

injury in justifiable reliance on the representation. *Biscayne Inv. Group, Ltd. v. Guarantee Management Servs., Inc.* 903 So. 2d 251 (Fla. Dist. Ct. App. 2005).

14.     Whether Plaintiff can establish each of the elements of a negligent misrepresentation claim under Florida law, to wit: (i) the defendant made a misrepresentation of material fact that he believed to be true but which was in fact false; (ii) the defendant was negligent in making the statement because he should have known the representation was false; (iii) the defendant intended to induce the plaintiff to rely on the misrepresentation; and (iv) injury resulted to the plaintiff acting in justifiable reliance upon the misrepresentation. *Simon v. Celebration Co.,* 883 So. 2d 826, 832 (Fla. Dist. Ct. App. 2004).

15.     Whether there is sufficient evidence of a false statement to maintain Plaintiff's negligent misrepresentation and fraudulent inducement claims. *Checkers Drive-In Restaurants, Inc. v. Tampa Checkmate Food Servs., Inc.*, 805 So. 2d 941, 944 (Fla. Dist. Ct. App. 2001).

16.     Whether there is sufficient evidence that RUSM intended to induce Plaintiff to rely on a false statement to maintain Plaintiff's negligent misrepresentation and fraudulent inducement claims. *Tambourine Comerico Int'l S.A. v. Solowsky*, No. 06-20682 Civ, 2007 WL 689466, at *6 (S.D. Fla. Mar. 4, 2007).

17.     Whether there is sufficient evidence the Plaintiff justifiably relied on a false statement to maintain Plaintiff's negligent misrepresentation and fraudulent inducement claims. *Tambourine Comerico Int'l S.A. v. Solowsky*, No. 06-20682 Civ, 2007 WL 689466, at *6 (S.D. Fla. Mar. 4, 2007).

18.     Whether RUSM owed a fiduciary duty to Plaintiff. *Lindquist v. Linxian,* No. 11-23876-Civ., 2012 WL 3811800, at *4 (S.D. Fla. Sept. 4, 2012*).*

19.     Whether there is sufficient evidence to support Plaintiff's claims for lost earning capacity.

20.     Whether Plaintiff can opine that he is unable to become a doctor or find equally lucrative alternative work.  Fed. R. Evid. 702.

21.     Whether there is sufficient evidence of intentional or grossly negligent conduct to maintain Plaintiff's claim for punitive damages.  Fla. Stat. § 768.72(2).

22.      Whether Plaintiff can seek monetary damages under the ADA.  *Jairath v. Dyer*, 154 F.3d 1280, 1283-1284 (11th Cir. 1998).

23.      Whether Plaintiff can seek punitive damages under the Rehabilitation Act. *Barnes v. Gorman*, 536 U.S. 181, 189 (2002).

## IX.   TRIAL EXHIBITS

See attached. Plaintiff's Exhibit List is attached as Exhibit 1 and Defendant's Exhibit List is attached as Exhibit 2.   For their objections, the parties are using the following abbreviations:

> A- Authenticity
> I- Contains inadmissible matter
> R- Relevancy
> H- Hearsay
> UP- Unduly prejudicial
> P- Privileged
> F- Foundation
> C- Completeness
> Rule 26/Rule 37- Failure to Disclose

Plaintiff seeks a brief extension of time until noon tomorrow, March 1, 2019, to file and serve his objections to RUSM's exhibits.  RUSM does not oppose this request.

## X.   TRIAL WITNESSES

See attached. Plaintiff's Witness List is attached as Exhibit 3 and Defendant's Exhibit List is attached as Exhibit 4.

24

XI.    **ESTIMATED TRIAL TIME**

It is estimated that the trial of this case will take approximately five (5) days.

XII.   **ESTIMATE OF EACH PARTY'S ATTORNEYS' FEES**

Plaintiff is proceeding *pro se* and is not represented by counsel.

RUSM estimates that its attorneys' fees through trial will be approximately $800,000.00.

Dated: February 28, 2019                Respectfully submitted,

Oluwamuyiwa Awodiya                     **AKERMAN LLP**
15005 Dahlia Drive                      Three Brickell City Centre
Bowie, Maryland 20721                   98 Southeast Seventh Street
Telephone: (240) 602-1836               Suite 1100
                                        Miami, Florida 33131
                                        Telephone: (305) 374-5600
                                        Facsimile:  (305) 374-5095


By: *s/Oluwamuyiwa Awodiya*             By: *s/Ryan Roman*
Oluwamuyiwa Awodiya (*pro se*)          Michael C. Marsh
drmuyiwa.a@gmail.com                    Florida Bar No. 0072796
                                        michael.marsh@akerman.com
                                        simone.tobie@akerman.com
                                        Ryan Roman
                                        Florida Bar. No. 0025509
                                        ryan.roman@akerman.com
                                        dorothy.matheis@akerman.com
                                        Donnie M. King
                                        Florida Bar. No. 101386
                                        donnie.king@akerman.com
                                        simone.tobie@akerman.com
                                        Octavia M. Green
                                        Florida Bar No. 119179
                                        octavia.green@akerman.com
                                        simone.tobie@akerman.com

25