# Exhibit A

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| | |
|---|---|
| OLUWAMUYIWA AWODIYA, *Plaintiff,* -v- ROSS UNIVERSITY SCHOOL OF MEDICINE, SCHOOL OF VETERINARY MEDICINE LIMITED *Defendant.* | Case No.  0:18-cv-60482-KMM  Hon. Chief Judge: K. Michael Moore Magistrate Judge: Alicia O. Valle |

## PLAINTIFF'S STATEMENT OF CASE

Plaintiff Oluwamuyiwa Awodiya ("Plaintiff"), in proper person, hereby submits his statement of case. Plaintiff apologizes to the Court for not meeting the filing deadline.

RUSM is a private medical school that had campuses located on the island of Dominica and in Florida during the relevant time period. Plaintiff is a former RUSM medical student. Plaintiff enrolled in medical school at RUSM in May 2014. Plaintiff successfully passed all five semesters, although he had to repeat his fifth semester. According the Grading System in RUSM's Student Handbook, Plaintiff had a C+ average GPA. After Plaintiff passed his fifth semester upon repeat, he met the necessary academic requirements to participate in taking the NBME CBSE. He took the NBME CBSE once at the Dominica campus and four times in the United States.

During the 2015-2016 academic calendar year (Academic Year), RUSM had three semester terms; a "Fall Term 2015" that began in September 2015; a "Spring Term 2016" that began in January 2016; and a "Summer Term 2016" that began in May 2016. During the Academic Year, RUSM regularly republishes the same Academic Catalog and Student Handbook with updated policies applicable to all RUSM students.

1

In the Fall Term 2015 (September 2015), Dr. Davendranand Sharma was Plaintiff's professor. Throughout the Fall Term 2015, Plaintiff took four exams (three "mini" and one "Final Exam"). On Plaintiff's first exam, he scored a 42%. RUSM contends that Plaintiff's relationship distress that started after Plaintiff's first exam is relevant. The evidence shows that Plaintiff's relationship distress improved Plaintiff's exam scores for the remainder of this fifth semester. Plaintiff earned one of his highest test scores ever at RUSM on the Final Exam, scoring an 80%. Unfortunately, the improved exams scores were not enough to remedy his first exam. Plaintiff was one point below the minimum passing score to pass the semester, which would have qualified him to take the National Board of Medical Examiners' ("NBME") Comprehensive Basic Science Exam ("CBSE"). As a result of this, Plaintiff was placed on an auto-repeater list in accordance with RUSM's policies. The relationship distress had a positive impact on Plaintiff's academic success.

At the end of the semester, in December 2015, Dr. Sharma took the role of becoming Plaintiff's psychiatrist in the RUSM Counseling Center. Dr. Sharma testified that he saw evidence of ADHD in December 2015. Dr. Sharma informed Plaintiff that he suspected undiagnosed ADHD. Dr. Sharma's counseling note from December 2015 states that Dr. Sharma prescribed Plaintiff medication as a trial for ADHD in December 2015. The plan was to confirm the attention/concentration issues after the winter break, when Plaintiff returned to repeat his fifth semester.

Before Plaintiff went home for the winter break, as RUSM judicially admits, Plaintiff executed a Release of Consent agreement with the RUSM Counseling Center that allowed ongoing authorization for the mental health counselor and psychiatrist "to provide information relevant to academic accommodations" to RUSM administrators including any academic accommodation coordinators. RUSM contends that this would not occur until an accommodation coordinator

notifies them of an alleged application. RUSM's assertion fails for several reasons: (i) this controverts its judicial admission; (ii) the written agreement itself does not state any such provision; (iii) the Student Handbook iteration at that time does not contain any such provision nor does it mention an "application"; (iv) the same agreement was used when the Counseling Center accommodated Plaintiff with an earlier flight home without said "application"; (v) Matthew Stewart-Fulton has already testified that when Plaintiff was enrolled, the Counseling Center was able to provide the information pursuant to a preauthorized release form; and (vi) Dr. Sharma testified that it could be initiated by either a student or an accommodations coordinator once he is notified of the need for an accommodation. The problem here is that Dr. Sharma wanted to hear magic words to trigger his obligations. The last time that I checked, it is congress, Federal regulations and common law—not Dr. Sharma nor RUSM—that determines what constitutes a request. Whether an accommodation is related to a disability involves no academic judgment and does not offend principles of academic freedom.

In January 2016, Plaintiff submitted a Conners CPT3 assessment, among other documents, to the Counseling Center. The Conners CPT3 states that Plaintiff has "issues" with attention and that his "attention deficit" was "very highly likely" "ADHD." On the same day, Plaintiff also submitted a CAARS form that was administered by Dr. Sharma. Plaintiff filled out the form which contains the following statements marked by Plaintiff: "I have trouble keeping my attention focused when working" and "I have trouble finishing job task or schoolwork." McMillan Cuffy, a mental health counselor, indicated that the result of the statements in the CAARS form indicated ADHD. Plaintiff also took a TOVA test that was computerized and confirmed that Plaintiff's concentration issues were not within normal limits, as reflected in Mr. Cuffy's counseling note.

Dr. Sharma testified that he was informed that Plaintiff was not completing his exams. Dr. Sharma further testified that Plaintiff needed extra time because of his ADHD. Dr. Sharma also testified that Plaintiff informed him that medication was not helping him complete his exams.

According to the Student Handbook, the cognitive technical standard is as follows: "In order to solve clinical problems effectively, candidates must be able to measure, calculate, reason, analyze, integrate and synthesize in a timely fashion." Even though Dr. Sharma testified that he had the authority to request for accommodations for students and further testified that Plaintiff's documentation was adequate, no accommodation was provided, investigated, or offered. Also, a fiduciary duty was expressly created with the Release of Consent agreement.

RUSM also failed to accommodate Plaintiff during his formal appeal of his dismissal. Dean William Owen testified that he investigates disabilities for possible mitigating factors if he is notified during the appeal process that a disability adversely affected a student's academic performance. Plaintiff, Plaintiff's psychiatrist, and Plaintiff's psychotherapist all informed RUSM and Dean William Owen about Plaintiff's OCD and ADHD. Plaintiff asked to participate in retaking the NBME CBSE because the anxiety and checking rituals, caused by his OCD, adversely affected his academic performance and that he never finished an exam due to his disability. Under an alternative theory of discrimination, Dean William Owen disparately treated his appeal by not investigating Plaintiff's disability for possible mitigating factors, such as providing an accommodation because of the type of disabilities, ADHD and OCD, that Plaintiff had.

RUSM has continuously attempted to mischaracterize Plaintiff's position on the breach of contract claim regarding the minimum passing score ("MPS"). Plaintiff has repeatedly stated that RUSM decreased the MPS for the NBME CBSE when it republished the latest iteration of the Academic Catalog in the Summer Term 2016. RUSM has three terms in an Academic Year where

4

it regularly republishes an Academic Catalog and Student Handbook with update and current policies. The former Dean Joseph Flaherty of RUSM sent an email in February 2016, that the school will be implementing a new method in May 2016 for determining the minimum passing score that would be applicable to all students. Plaintiff does not question the former Dean's methods for determining MPS. Rather, Plaintiff called into question why other students, also at the end of their fifth semester, taking the same exam, were given a lower MPS in accordance with the Academic Catalog that was republished in May 2016 with update polices—while Plaintiff was subjected to a higher academic standard. RUSM has done nothing to explain this, and instead has tried to frame a totally different issue that is of no concern to Plaintiff.

Regarding the fraud and negligent misrepresentation, RUSM contends that since part of the statement may be true, it does not make it false. Plaintiff's position is that if any part of the statement, "It is the policy and practice of the University to comply with the Americans with Disabilities Act as applicable and practical in Dominica" is false, then the statement is not true. RUSM faculty have testified that it had no such policy in place. In other words, the statement should have said, "The University does not impose any obligation on its faculty to comply with the ADA in Dominica and that faculty can choose when to help and when to ignore the disabled."

DATED this 1st day of March, 2019:

                                                              Respectfully submitted,

                                                              */s/Oluwamuyiwa Awodiya*
                                                    By: Oluwamuyiwa Awodiya, *pro se* litigant
                                                                        15005 Dahlia Dr.
                                                                         Bowie, MD 20721
                                                                           (240) 602-1836
                                                        Plaintiff, in Proper Person