**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA**

Case No.: 18-cv-60482-KMM

OLUWAMUYIWA AWODIYA,

     Plaintiff,

v.

ROSS UNIVERSITY SCHOOL OF MEDICINE,

     Defendant.

_____/

**OMNIBUS ORDER ON MOTIONS FOR SUMMARY JUDGMENT**

THIS CAUSE came before the Court upon Plaintiff Oluwamuyiwa Awodiya's ("Plaintiff") Motion for Partial Summary Judgment ("Pl.'s Mot.") (ECF No. 102) and Defendant Ross University School of Medicine's ("Defendant" or "RUSM") Motion for Summary Judgment ("Def.'s Mot.") (ECF No. 120).[1] The motions are now ripe for review.

## I.  BACKGROUND[2]

*Pro se* Plaintiff is a former medical student at RUSM, a private medical school in Dominica. Pl.'s 56.1 ¶¶ 1, 9. Plaintiff applied to RUSM in 2013. Def.'s 56.1 ¶ 4. On its website, RUSM stated that "[i]t is the policy and practice of [RUSM] to comply with the Americans with Disabilities Act ("ADA") as applicable and practical in Dominica." *Id.* In December, 2015, after Plaintiff failed his fifth semester at RUSM, Plaintiff utilized RUSM's

---

[1] Each party filed their respective responses and replies: ("Def.'s Resp.") (ECF No. 107); ("Pl.'s Reply") (ECF No. 114); ("Pl.'s Resp.) (ECF No. 137) (Def.'s Reply") (ECF No 142).

[2] The facts are taken from Plaintiff's Statement of Undisputed Facts ("Pl.'s 56.1") (ECF No. 101); Defendant's Response in Opposition ("Def.'s Resp. 56.1") (ECF No. 107–1); Plaintiff's Reply ("Pl.'s Reply 56.1") (ECF No. 115); Defendant's Statement of Undisputed Facts (Def.'s 56.1) (ECF No. 119), Plaintiff's Response in Opposition (Pl.'s Resp. 56.1) (ECF No. 139); Defendants' Reply ("Def.'s Reply 56.1") (ECF No. 143) and a review of the corresponding record citations and submitted exhibits.

counseling services, and signed a Release of Information Agreement ("ROI"), which allowed the RUSM counseling center ("Counseling Center") to send his records to the RUSM Administration.  Pl.'s 56.1 ¶ 15–16; Def.'s Resp. 56.1 ¶ 15–16.  After Plaintiff executed the ROI, the Counseling Center provided information to the RUSM Administration to allow Plaintiff to leave campus early for the semester. Def.'s. 56.1 ¶ 16.  In January 2016, Plaintiff returned to campus and provided the Counseling Center with an assessment by a doctor in the United States diagnosing him with Attention-Deficit/Hyperactivity Disorder ("ADHD").  Pl.'s 56.1 ¶ 26. Plaintiff also informed Dr. Sharma in the Counseling Center that he was running out of time on his exams, and Dr. Sharma prescribed him Ritalin.  *Id.* ¶ 22–23.

RUSM requires its students to take the National Board of Medical Examiners' ("NBME") Comprehensive Basic Science Exam ("COMP Exam" or "CBSE") at the end of their fifth semester.  Def.'s 56.1 ¶ 36.  RUSM publishes an Academic Catalog, which includes information regarding the minimum passing score for the NBME COMP Exam.  *Id.*  The Academic Catalog states "RUSM reserves the right to add, modify or delete, without notice, any course offering or information contained in this catalog."  *Id.*  In 2013 when Plaintiff enrolled at RUSM, the minimal passing score for the COMP Exam was a 66.  Def.'s 56.1 ¶ 37.

In September 2015, an email was sent to all students advising them that the minimum passing score on the COMP Exam would be 68 as of mid-November 2015.  Def.'s 56.1 ¶ 38.  In May 2016, RUSM re-issued Volume 7 of the Academic Catalog.  Declaration of Oluwamuyiwa Awodiya in Support of Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment ("Awodiya Response Decl.") (ECF No. 138) Ex. RJ–11.  The issue date of 2015–2016 Academic Catalog was September 15, 2015.  *Id.*

Plaintiff took the COMP Exam five times.  Def.'s 56.1 ¶ 39.  On Plaintiff's first attempt in April 2016, Plaintiff failed with a score of 58.  *Id.*  On Plaintiff's second attempt in July 2016, Plaintiff failed with a score of 64.  *Id.* ¶ 40.  On Plaintiff's third attempt in August 2016, Plaintiff scored a 67,[3] and in October 2016, Plaintiff failed the COMP Exam with a score of 61.  *Id.* ¶¶ 41–42.  RUSM dismissed Plaintiff when he failed the COMP Exam in October 2016.  *Id.* ¶ 43. Plaintiff appealed his dismissal and was readmitted to RUSM in December 2016.  *Id.* ¶ 44. Plaintiff then took the COMP Exam for a fifth time and received a failing score of 60.  *Id.* ¶ 46. Plaintiff was again dismissed from RUSM.  *Id.* ¶ 47.  Plaintiff again appealed the dismissal.  *Id.* ¶ 48.  In response, Plaintiff submitted a personal statement, wherein he informed the RUSM that he was diagnosed with Obsessive Compulsive Disorder ("OCD") in April 2017.  *Id.* ¶ 49.  The dismissal was upheld on appeal to the Dean.  *Id.* ¶ 50; Pl.'s 56.1.

In the Third Amended Complaint ("TAC") (ECF No. 47) Plaintiff alleges ten counts against Defendant for failure to accommodate (Counts I–IV); violation of the Florida Administrative Code (Count V); breach of contract and breach of the covenant of good faith and fair dealing (Counts VI and VII); fraudulent inducement (Count VIII); negligent misrepresentation (Count IX); and breach of fiduciary duty (Count X).

## II.   STANDARD OF REVIEW

Summary judgment is appropriate where there is "no genuine issue as to any material fact [such] that the moving party is entitled to judgment as a matter of law."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed R. Civ. P. 56.  A genuine issue of material fact exists when "a reasonable jury could return a verdict for the non-moving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  "For factual issues to be considered genuine, they must have a

---

[3]  It is disputed whether the passing score on the COMP Exam was a 66 or 68 in August 2016.

real basis in the record." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1303 (11th Cir. 2009) (citation omitted).   Speculation or conjecture cannot create a genuine issue of material fact. *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005). The moving party has the initial burden of showing the absence of a genuine issue as to any material fact.   *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991).   In assessing whether the moving party has met this burden, the court must view the movant's evidence and all factual inferences arising from it in the light most favorable to the non-moving party.   *Denney v. City of Albany*, 247 F.3d 1172, 1181 (11th Cir. 2001).   Once the moving party satisfies its initial burden, the burden shifts to the non-moving party to come forward with evidence showing a genuine issue of material fact that precludes summary judgment.   *Bailey v. Allgas, Inc.*, 284 F.3d 1237, 1243 (11th Cir. 2002); Fed. R. Civ. P. 56(e).   "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment."   *Miranda v. B & B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1534 (11th Cir. 1992).   Credibility determinations and the weighing of the evidence are jury functions, not those of a judge at the summary judgment stage. *Strickland v. Norfolk S. Ry. Co.*, 692 F.3d 1151, 1154 (11th Cir. 2012).

## III.   DISCUSSION

### A.   Plaintiff's Motion for Summary Judgment

*Pro se* Plaintiff moves for summary judgment on his claims of RUSM's failure to accommodate (Counts I through IV), fraudulent misrepresentation (Count VIII), negligent misrepresentation (Count IX) and breach of fiduciary duty (Count X).

#### i.   Failure to Accommodate

Plaintiff moves for summary judgment on his failure to accommodate claims (Counts I through IV), arguing that Defendant knew of his OCD and ADHD and failed to reasonably

accommodate his mental impairment by allowing him extra time on examinations.  In response, Defendant argues that Plaintiff (1) was not disabled as defined by statute, (2) cannot establish that he was otherwise qualified to perform the essential requirements to graduate, and (3) cannot establish that he made an actionable request for an accommodation. [4]

To succeed on a failure to accommodate claim, including both a Title III ADA claim and a claim under Section 504 of the Rehabilitation Act, a plaintiff must demonstrate that he: (1) has a disability; (2) is an otherwise qualified individual; and (3) was discriminated against because of his disability by failing to receive an accommodation.  *See Boyle v. City of Pell City*, 866 F.3d 1280, 1288 (11th Cir. 2017) (prima facie case of discrimination under Section 504 of the Rehabilitation Act); *see also Hetherington v. Wal-Mart, Inc.*, 511 F. App'x 909, 912 (11th Cir. 2013) (prima facie case of discrimination under the ADA).  In addition, to prevail in his ADA claim, Plaintiff must further show that his disability is one that is recognized under the statute and that the impairment restricts important life activities in comparison to most people.  *Forbes v. St. Thomas Univ., Inc.*, 768 F. Supp. 2d 1222, 1229 (S.D. Fla. 2010).

First, it is undisputed that Plaintiff was diagnosed with ADHD in December 2015 and was diagnosed with OCD in April 2017.  Pl.'s 56.1 ¶¶ 10–11; Pl.'s Reply 56.1 ¶ 75.  Defendant

---

[4] Plaintiff alleges several claims regarding RUSM's alleged lack of accommodation: a violation of Section 504 of the Rehabilitation Act of 1973 ("Rehabilitation Act") (Count I); violation of the ADA (Count II), and violation of 34 C.F.R. § 104.4, *et seq* (Counts III and IV); which implement the ADA.  However, in Plaintiff's motion for summary judgment, he moves generally for this Court to grant summary judgment on his "failure to accommodate" claims.  Based on Plaintiff's arguments, the allegations, and the relevant rules and statutes, it is evident that Plaintiff is referring to Counts I through IV as the "failure to accommodate" claims.  "[P]ro se pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be construed liberally."  *Miller v. Donald*, 541 F.3d 1091, 1100 (11th Cir. 2008) (citations omitted).  Accordingly, the Court construes Plaintiff's "failure to accommodate" arguments as arguments pertaining to Counts I through IV.

argues that these disabilities do not substantially limit Plaintiff's ability to concentrate, which is a "major life activity."  Def.'s Resp. at 8.  Whether a plaintiff is substantially limited in a major life activity is a question of fact for the jury.  *Dwyer v. Ethan Allen Retail, Inc*, 528 F. Supp. 2d 1297, 1302 (S.D. Fla. 2007), *aff'd,* 325 F. App'x 755 (11th Cir. 2009).  Accordingly, Plaintiff's motion for summary judgment as to the failure to accommodate claims (Counts I–IV) is DENIED.

ii.    Fraudulent Inducement and Negligent Misrepresentation

Plaintiff moves for summary judgment on his claims of fraudulent inducement (Count VIII)[5] and negligent misrepresentation (Count IX), arguing that RUSM falsely advertised to prospective students that they complied with the ADA, which he relied on to his detriment.  In response, RUSM argues that it did not make a misstatement when it stated on its website that it has a policy and practice to comply with the ADA, and Plaintiff cannot establish that he justifiably relied on that statement.

Under Florida law, to prevail on a claim for fraudulent inducement, a plaintiff must show that (1) the defendant made a misrepresentation of material fact; (2) the defendant knew or should have known of the falsity of the statement; (3) the defendant intended for the misrepresentation to induce plaintiff to rely and act on it; and (4) the plaintiff suffered injury in justifiable reliance on the representation.  *Biscayne Inv. Grp. Ltd. v. Guarantee Mgmt. Servs., Inc.,* 903 So.2d 251, 255 (Fla. 3d DCA 2005).  Similarly, to succeed on a cause of action for negligent misrepresentation, a plaintiff must prove that (1) the defendant made a misrepresentation of material fact that he believed to be true but was in fact false; (2) the

---

[5] In the TAC, Plaintiff alleges a claim for fraudulent inducement, but refers to this claim in his motion for summary judgment as a claim for fraudulent misrepresentation.  The Court construes Plaintiff's motion to be one for summary judgment on a fraudulent inducement claim.

defendant was negligent in making the statement because he should have known that the representation was false; (3) the defendant intended to induce the plaintiff to rely on the misrepresentation; and (4) injury resulted to the plaintiff acting in justifiable reliance upon the misrepresentation. *Simon v. Celebration Co.*, 883 So.2d 826, 832 (Fla. Dist. Ct. App. 2004).

As discussed *infra* Section III.B.iv, there is a dispute of fact as to whether Defendant made a misstatement.  There is also a dispute of fact as to whether Plaintiff relied on the statement.  In support of his reliance on this statement, Plaintiff provides his own declaration stating that "[t]he ADA–Statement about RUSM's ADA compliance was one of the most important factors in [his] decision to leave the U.S. to become a student at RUSM in Dominica." Declaration of Oluwamuyiwa Awodiya ¶ 14 ("Awodiya Decl.") (ECF No. 102–1).  Defendant points to the fact that, (1) Plaintiff was not aware of his own disability until December 2015 or January 2016–over a year and a half after he began his first semester at RUSM; and (2) Plaintiff did not even know what the ADA encompassed prior to this litigation.  *See* Pl.'s 56.1 ¶¶ 9–10; Deposition of Oluwamuyiwa Awodiya ("Awodiya Dep.") at 148:13–17.  The fact that Plaintiff did not have a disability or know exactly what the ADA covers goes to the weight and credibility of Plaintiff's statement.  Credibility determinations and the weighing of the evidence are jury functions, not those of a judge at the summary judgment stage.  *Strickland*, 692 F.3d at 1154. Viewing the facts in light most favorable to Defendant, Plaintiff's motion for summary as to Counts VIII and IX is DENIED.

### iii.    Breach of Fiduciary Duty

Plaintiff moves for summary judgment on his breach of fiduciary duty claim (Count X), arguing that the Counseling Center had a duty to communicate with the RUSM Administration on Plaintiff's behalf regarding a request for an accommodation, and the Counseling Center failed

to do so.  In response, Defendant argues that no fiduciary relationship exists as a matter of law between Plaintiff, as a student, and RUSM, as a university; and even if a fiduciary relationship did exist, there is a dispute of fact as to whether Plaintiff asked the Counseling Center to communicate with the RUSM Administration about an accommodation on his behalf.

Plaintiff provided no evidence to support his breach of fiduciary duty claim alleged against RUSM.  First, in the TAC Plaintiff alleges a breach of fiduciary duty against RUSM, not against the Counseling Center.  A college or university does not owe a fiduciary duty to its students solely based upon their status as students, *Morrison v. Univ. of Miami*, No. 1:15-CV-23856, 2016 WL 3129490, at *7 (S.D. Fla. Jan. 20, 2016).

Second, to the extent Plaintiff alleges a fiduciary relationship between himself and the Counseling Center, Plaintiff fails to provide sufficient facts that RUSM as an institution owed him any fiduciary duty because of that relationship.  The fiduciary duty owed by a counselor is typically a duty of confidentiality, not a duty to disclose information.  *See Gracey v. Eaker*, 837 So. 2d 348, 354 (Fla. 2002).  It is undisputed that Plaintiff signed a ROI giving the Counseling Center permission to disclose certain confidential information without breaching its fiduciary duty to Plaintiff.  *See* ROI (Pl.'s Mot Ex. SJ-07).  However, Plaintiff does not provide, and the Court has not found, any case law to support the argument that the ROI created an affirmative duty on the Counseling Center to disclose all information related to a potential accommodation to the RUSM Administration.  Accordingly, Plaintiff's motion for summary judgment as to Count X is DENIED.

### B.    Defendant's Motion for Summary Judgment

Defendant moves for summary judgment on all ten counts of the TAC.

#### i.    Failure to Accommodate

8

Counts I through IV allege failure to accommodate claims.  In Count I, Plaintiff alleges failure to accommodate in violation of Section 504 of the Rehabilitation Act, in Count II Plaintiff alleges failure to accommodate in violation of the ADA, and in Counts III and IV Plaintiff alleges nearly identical claims of violation of the Code of Federal Regulations ("C.F.R.").

### 1.    *ADA and Rehabilitation Act*

Defendant moves for summary judgment on Counts I and II, arguing that Plaintiff did not make an actionable request for an accommodation as required under the ADA and the Rehabilitation Act and Plaintiff cannot establish that he is "otherwise qualified" to perform the essential graduation requirements.

Under the Rehabilitation Act and the ADA, "the duty to provide a reasonable accommodation is not triggered unless a specific demand for an accommodation has been made." *United States v. Hialeah Hous. Auth.*, 418 F. App'x 872, 876 (11th Cir. 2011) (internal citations omitted).  The demand must be specific enough so that the defendant had "enough information to know of both the disability and desire for an accommodation, or circumstances must at least be sufficient to cause a reasonable [person] to make appropriate inquiries about the possible need for an accommodation."  *Id.*  The Eleventh Circuit has not determined the exact form that a request must take.  *See Barron v. Sch. Bd. of Hillsborough Cty.*, 3 F.Supp.3d 1323, 1330.  Thus, there is no rule that a "specific demand" must be one that follows the written policy or procedures in place.[6]

---

[6]  The case Defendant cites for the proposition that Plaintiff is required to follow the formal procedures is inapposite.  First, it is not binding on this Court.  Second, while the Court there found that the plaintiff did not follow the instructions that she "admittedly had received on two occasions," they also found that the plaintiff made a verbal request more than a month after the written policy's deadline which at that point was "too little too late."  *Varad v. Barshak*, 261 F. Supp. 2d 47, 48 (D. Mass. 2003).  The court did not discuss whether the verbal request would have been sufficient had it been before the deadline.

There is a dispute of fact as to whether Plaintiff made a verbal request for an accommodation of extended testing time in January 2016.[7]  Plaintiff testified that he met with Mr. Stewart–Fulton in the Accommodations Office and requested extended testing time.  Awodiya Dep. At 1061–19.  Mr. Stewart–Fulton, however, does not even recall meeting with Plaintiff, let alone receiving a request for an accommodation.  Stewart–Fulton Dep. 8:20–22.

Because there is a question of fact as to an essential element of a failure to accommodate claim, and viewed in the light most favorable to Plaintiff, summary judgment as to Counts I and II is DENIED.

### 2. *Failure to Accommodate under the C.F.R.*

Defendant argues that summary judgment should be granted as to Counts III and IV because (1) they are duplicative of Counts I and II; and (2) there is no private right of action under the C.F.R.  "The purpose of [Section 104 of the CFR] is to effectuate section 504 of the Rehabilitation Act of 1973, which is designed to eliminate discrimination on the basis of

---

[7]  Plaintiff also argues that he made a verbal request for an accommodation to Dr. Sharma in the Counseling Center in December 2015, before Plaintiff was formally diagnosed with ADHD.  Further, Plaintiff has not cited any authority to suggest that Dr. Sharma, in his position as a counselor, had a duty to ensure he was provided with an accommodation.  The ROI does not support this contention.  The ROI states that Plaintiff "authorize[s] the RUSM Counseling Center to: Discuss otherwise confidential treatment pertaining to [Plaintiff's] treatment" for the purpose of "provid[ing] information relevant to academic accommodations and/or medical leave of absence."  ROI (Ex. SJ-07) (ECF No. 102).  This does not authorize the Counseling Center to *request* an accommodation on Plaintiff's behalf, it merely allows the Counseling Center to provide information when needed for academic accommodations, presumably otherwise requested by Plaintiff.  Plaintiff also testified that he requested an accommodation from the Associate Dean for Medical Science Student Affairs, Dr. Hayse in December, 2015.  Awodiya Dep. 75:8–20.   Dr. Hayse, on the other hand, testified that Plaintiff did not request accommodations or extended testing time during this meeting.  Deposition of Bryan Hayse. ("Hayse Dep") (ECF No. 102-22) at 7:25–8:2; 8:21–24.  However, even if Plaintiff did request an accommodation at this time, it was before Plaintiff was formally diagnosed with ADHD, and Plaintiff has not provided any support for the notion that a suspicion of "attention concentration problems" was enough to demonstrate to Dr. Hayse that Plaintiff had a disability which required an accommodation.

handicap in any program or activity receiving Federal financial assistance." 34 C.F.R. § 104.1. There is no private right of action to enforce a statute's implementing regulation unless Congress has clearly indicated, expressly or impliedly, to the contrary. *American Association of People with Disabilities v. Harris*, 605 F.3d 1124, 1133 (11th Cir. 2010), *opinion vacated upon rehearing on other grounds by American Association of People with Disabilities v. Harris*, 647 F.3d 1093 (11th Cir. 2011). Here, the C.F.R. interprets and defines the scope of the ADA and Rehabilitation Act but does not provide any sort of private right of action that is already present in the statute. *See Mason v. City of Huntsville, Ala.*, No. 10-CV-02794, 2012 WL 4815518, at *13 (N.D. Ala. Oct. 10, 2012). The Court has not found, and Plaintiff does not cite, any authority indicating that Congress intended 34 C.F.R. § 104 to create a private cause of action. *See Powers v. MJB Acquisition Corp.*, 993 F. Supp. 861, 869 (D. Wyo. 1998) (dismissing a claim under 34 C.F.R § 104 because there is no private cause of action). Accordingly, Defendant's motion for summary judgment as to Counts III and IV is GRANTED.

ii.     Violation of Florida Administrative Code

Defendant moves for summary judgment on Count V, which alleges violations of Florida Administrative Code Section 6E–2.004(5)(c)(4) or, in the alternative, Florida Statute Section 760.08. Defendant contends that there is no private right of action under Section 6E–2.004(5)(c)(4) and Plaintiff failed to exhaust all administrative remedies as required by Section 760.08. Plaintiff did not dispute this.

Section 6E–2.0061 provides that the penalty for a violation of this section is denial, probation, or revocation of the license or discipline by the Commission for Independent Education. *See* Fl. Admin. Code § 6E–2.0061(1)–(4) (2006). The statute does not set forth a private right of action. A federal court is "reluctant to read a private right of action into a state

statute where the state court has not done so, and the plain language of statute does not establish the private right of action." *Sailboat Pointe Condo. Ass'n, Inc. v. Aspen Specialty Ins. Co.*, No. 08-61129-CIV, 2009 WL 248373, at *4 (S.D. Fla. Feb. 1, 2009).  Thus, the Court will not read a private right of action here.

Alternatively, Plaintiff brings a claim for a violation of the Florida Civil Rights Act ("FCRA") Section 760.08.  Fla. Stat. Ann. § 760.08 (2018).  Section 760.08 provides that "[a]ll persons are entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation without discrimination or segregation on the ground of . . .  handicap."  *Id.*  However, Section 760.07 states "[i]f the statute prohibiting unlawful discrimination provides an administrative remedy, the action for equitable relief and damages provided for in this section may be initiated only after the plaintiff has exhausted his or her administrative remedy."  *Id.* § 760.07.  Section 760.11 provides an administrative remedy to "any person aggrieved by a violation of ss. 760.01–760.10," allowing them to "file a complaint with the commission within 365 days of the alleged violation."  *Id.* § 760.11.  Prior to filing suit for alleged violations of the FCRA, a plaintiff must first exhaust his administrative remedies.  *Gillis v. Sports Auth., Inc.*, 123 F. Supp. 2d 611, 615 (S.D. Fla. 2000). Here, it is undisputed that Plaintiff failed to exhaust his administrative remedies before filing this lawsuit.  Accordingly, Defendant's motion for summary judgment as to Count V is GRANTED.

      iii.    <u>Breach of Contract and Breach of Covenant of Good Faith and Fair Dealing</u>

As a threshold matter, Plaintiff's breach of contract claim (Count VI) was divided into six sub–counts, which will be discussed herein.  Defendant moves for summary judgment on all six sub–counts, arguing that the allegations relate to purported violations of the Student Handbook, and Plaintiff cannot show that RUSM acted arbitrarily and capriciously in enforcing its

regulations.  Defendant also moves for summary judgment on the breach of covenant of good faith and fair dealing claim (Count VII), arguing that because Plaintiff cannot show any breach of contract with RUSM, this count necessarily fails as well.

Under Florida law, the legal relationship between a private university and a student is "solely contractual in character." *Sirpal v. Univ. of Miami*, 509 F. App'x 924, 929 (11th Cir. 2013). "The university 'may set forth the terms under which it will admit and subsequently graduate students who subject themselves to the rules, regulations and regimen of the college.'" *Id.* These terms may be derived from university publications such as the student handbook and catalog. *Id.* "A court will not interfere with a private university's enforcement of its regulations unless the university has acted arbitrarily and capriciously, in violation of a constitution or statute, or for fraudulent purposes." *Id.* "University faculties must have the widest range of discretion in making judgments as to the academic performance of students and their entitlement to promotion or graduation." *Regents of Univ. of Mich. v. Ewing,* 474 U.S. 214, 225 n. 11 (1985).

Further, "whether a student is qualified to be a physician is an academic judgment that requires an expert evaluation of cumulative information and is not readily adapted to the procedural tools of judicial or administrative decisionmaking." *Jallali v. Nova Se. Univ., Inc.*, 992 So. 2d 338, 342 (Fla. Dist. Ct. App. 2008). "[I]mplicit in the university's general contract with students is a right to change the university's academic degree requirements if such changes are not arbitrary or capricious." *Id.* at 342–43. "As long as the actions of the University have a rational basis, founded on reason and fact, and are not shown to be the product of bias or prejudice, they cannot be considered to be arbitrary or capricious." *McCawley v. Universidad Carlos Albizu, Inc.*, 461 F. Supp. 2d 1251, 1258 (S.D. Fla. 2006).  Decisions by a university are generally accorded great deference.  *Id.*

*1.      Sub-Counts I through III*

Defendant moves for summary judgment as to sub-counts I through III, arguing summary judgment should be granted in Defendant's favor because there is no evidence that RUSM's failure to provide Plaintiff with a reasonable accommodation was arbitrary or capricious. In sub-count I, Plaintiff alleges that Defendant breached its express and implied contract in the Student Handbook and Academic Catalog by denying Plaintiff reasonable accommodations.   In sub-count II, Plaintiff alleges breach of contract for Defendant's alleged denial of the right to a productive learning environment free from discrimination.  TAC ¶ 95.  The Student Handbook provides that "[r]equests for accommodation . . . should be submitted in writing to the Accommodations Coordinator for Foundations of Medicine" and that "[t]o qualify for an accommodation, a student must identify him/herself to the Accommodation Coordinator . . . or the Director of Office of Consultation and Support Services . . . declare the disability or suspected disability in writing, and request accommodation."  RUSM Student Handbook (ECF 119–20) at 46.  The Academic Catalog also requires students to "declare the disability or suspected disability in writing" to request an accommodation.  Academic Catalog (ECF No. 119–22) at 49.   It is undisputed that Plaintiff did not submit a written request for an accommodation.  Def.'s 56.1 ¶ 34.[8]  Because Plaintiff did not request an accommodation as required by the Student Handbook and Academic Catalog, Defendant did not breach the contract

---

[8] Plaintiff attempts to dispute this fact by stating that the Student Handbook requirement that the requests for accommodation be submitted in writing are "not material" because "Plaintiff did not read the student handbook in its entirety" and "could not recall ever reading the 'accommodations' section of the student handbook."  Pl.'s Reply. 56.1 ¶ 27.  While he now argues that the language in the Student Handbook is immaterial, Plaintiff's breach of contract claim is brought under the "implied contract . . . in connection with the rights explicitly guaranteed to [Plaintiff] by RUSM pursuant to the RUSM Student Handbook."  TAC ¶ 94.

on the grounds alleged in sub–count I and II.  Thus, Defendant's motion for summary judgment on sub–counts I and II is GRANTED.

In sub-count III, Plaintiff alleges a breach of contract claim due to Defendant's alleged refusal to process Plaintiff's request for accommodation on the United States Medical Licensing Examination ("USMLE").  It is undisputed that the Academic Catalog states "[i]f a student with a disability requires an accommodation for any phase of the USMLE testing, it is the student's responsibility to seek that accommodation directly from the NBME and/or the Federation of State Medical Boards (FSMB) in compliance with their policies" because "disability accommodations for these examinations are determined solely by the policies or processes of the NBME or FSMB."  Academic Catalog at 50.  It is undisputed that Plaintiff did not make such a request and Plaintiff has provided no reason why this policy is arbitrary and capricious, in violation of a constitution or statute, or for fraudulent purpose. Accordingly, Defendant's motion for summary judgment is GRANTED as to sub-count III.

### 2.       *Sub-Counts IV and V*

In sub-count IV, Plaintiff alleges that Defendant breached its contract with Plaintiff by making Plaintiff sit for the CBSE within three consecutive attempts, because this requirement did not exist in the Student Handbook when he enrolled in 2014.  TAC ¶ 95. Defendant argues that summary judgment is warranted on this sub–count because Defendant had the right to change RUSM's academic degree requirements and such changes were not arbitrary or capricious. Def.'s Mot. at 12.  "[I]mplicit in the university's general contract with students is a right to change the university's academic degree requirements if such changes are not arbitrary or capricious."  *Jallali*, 992 So. 2d at 342–43.  Plaintiff does dispute that this change was not arbitrary or capricious, and as such waives any argument otherwise.  *See Hamilton v. Southland*

*Christian School, Inc.*, 680 F.3d 1316 1319, (11th Cir. 2012) ("The failure to make arguments and cite authorities in support of an issue waives it.").   Accordingly, summary judgment as to sub–count IV is granted in favor of Defendant.

In sub–count V, Plaintiff alleges that Defendant breached its contract with Plaintiff when it dismissed Plaintiff after he obtained a score of 67 on the NMBE CBSE, because the latest version of the Academic Catalog stated the passing score was a 66.   Defendant moves for summary judgment on this claim, arguing that RUSM had the right to change its academic degree requirements if such changes were not arbitrary or capricious, and Plaintiff has not established that the higher passing score requirement was arbitrary or capricious.   Universities have a right to change the university's academic degree requirements if such changes are not arbitrary or capricious. *Jallali*, 992 So. 2d at 342–43

Here, Plaintiff was on notice via an email sent by the administration on or after September 11, 2015 that informed students the passing score on the CBSE would be increased from 66 to 68 effective November 2015.   The email stated the passing score would be increased because,

> [a]ccording to the NBME, a CBSE score of 66 predicts a Step 1 score of approximately 190. A CBSE score of 68 predicts a Step 1 approximate score of 195. Since the current passing score on Step 1 is 192, RUSM believes it prudent to increase the RUSM passing score on the CBSE to 68. Beginning November 15, 2015, the RUSM passing score on the CBSE will increase from 66 to 68.

*See* Declaration of Sandra Herrin ("Herrin Decl.") Ex. 22 (ECF No. 119–23).

Plaintiff argues that this email was superseded by the Academic Catalog, Volume 7 issued on September 15, 2015 because the catalog was re–distributed in May 2016 with a 2016 copyright date.   However, the Academic Catalog distributed in May 2016 is the same volume number as the "September 2015" catalog and has the same "Date of Issue"–September 15, 2015.

Awodiya Response Decl., Exs. RJ–10; RJ–11.  Except for the copyright date, Plaintiff has shown no material difference between the catalogs distributed in September 2015 and May 2016 to indicate that this is an updated catalog or was meant to supersede the September 2015 version, as opposed to just republishing the same version already available.  Regardless, the Academic Catalog specifically states that "RUSM reserves the right to add, modify or delete**, *without notice*, any course offering or information contained in this catalog." *Id.* (emphasis added). Thus, even if the May 2016 catalog did supersede the September 2015 catalog, Defendant reserved the right to change the score requirement without notice.

Thus, it is undisputed that RUSM gave Plaintiff notice that the NBME passing score was changing effective November 2015.  *See* Herrin Decl., Ex. 22.  It is also undisputed that RUSM provided an explanation for that updated passing score in its email and Plaintiff has not shown that the change was arbitrary or capricious. Accordingly, Defendant's motion for summary judgment as to sub–count V is GRANTED.

### 3.    *Sub-Count VI*

In sub-count VI, Plaintiff alleges that Defendant breached its contract with Plaintiff when RUSM's Dean failed to respond to Plaintiff within fifteen (15) calendar days of receipt of his appeal.  Plaintiff submitted his appeal on June 13, 2017 and Dean Owen upheld Plaintiff's dismissal and informed Plaintiff by letter on June 29, 2017–sixteen (16) calendar days after receipt of his appeal.  Def.'s 56.1 Ex. 27.  Defendant argues that Plaintiff cannot establish that this failure to meet the 15–day deadline was arbitrary or capricious or otherwise affected Plaintiff in any material way.  Def.'s Motion at 13.  Plaintiff did not reply as to why summary judgment should not be granted on this sub-count, and as such, waives his argument opposing summary judgment.  *See Hamilton,* 680 F.3d at 1319.  Further, the Court can find no reason why a one–

day delay in responding to an appeal is arbitrary or capricious as a matter of law. Accordingly, Defendant's motion for summary judgment as to sub-count VI is GRANTED.

Because Defendant's motion for summary judgment is GRANTED as to all six sub–counts alleged in Count VI, summary judgment is GRANTED as to Count VI.

### 4.    Breach of Good Faith and Fair Dealing

Under Florida law there can be no breach of the implied covenant of good faith and fair dealing absent a breach of contract. *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1316 (11th Cir. 1999). Because there is no breach a contract, Count VII of Plaintiff's TAC fails and summary judgment is granted in favor of Defendant.

### iv.    Fraudulent Inducement and Negligent Misrepresentation

Defendant moves for summary judgment on Plaintiff's claim for fraudulent inducement and negligent misrepresentation, arguing that Defendant stands behind the veracity of the statement on its website that "[i]t is the policy and practice of [RUSM] to comply with the [ADA] as applicable and practicable in Dominica" and that Plaintiff has provided no evidence that he justifiably relied on Defendant's statement.

As previously stated, under Florida law, to prevail on a claim for fraudulent inducement, a plaintiff must show that (1) the defendant made a misrepresentation of material fact; (2) the defendant knew or should have known of the falsity of the statement; (3) the defendant intended for the misrepresentation to induce plaintiff to rely and act on it; and (4) the plaintiff suffered injury in justifiable reliance on the representation. *Biscayne Inv. Grp. Ltd.,* 903 So.2d at 255. Similarly, to succeed on a cause of action for negligent misrepresentation, a plaintiff must prove that (1) the defendant made a misrepresentation of material fact that he believed to be true but was in fact false; (2) the defendant was negligent in making the statement because he should

have known that the representation was false; (3) the defendant intended to induce the plaintiff to rely on the misrepresentation; and (4) injury resulted to the plaintiff acting in justifiable reliance upon the misrepresentation.  *Simon*, 883 So.2d at 832.

First, while Defendant "stands by" the statement on its website, Defendant provides no evidence why the statement is true.   Additionally, while RUSM outlines in the Student Handbook how a student must apply for an accommodation, Defendant does not provide the Court with any information as to how this policy complies with the ADA or whether it has a separate policy in place to comply with the ADA.[9]  Dr. Hayse testified that, to his knowledge, RUSM did not require its employees and facilities to comply with the ADA in Dominica.  Hayse Dep. 14:11-18.  Plaintiff argues that Defendant did not, in fact, have a policy and practice to comply with the ADA.  Pl.'s Resp. at 18.   At minimum, there is a dispute as to whether RUSM in fact had a policy or practice of complying with the ADA.

Second, Defendant argues that there is no evidence that RUSM "intended to induce [Plaintiff] to rely on the statement" because RUSM did not know that Plaintiff suffered from an impairment or disability at the time he was admitted.  Def.'s Mot. at 4.  Fraud in the inducement exists when "the maker [of a false statement] intends that another rely upon the statement."  *Spitz v. Prudential-Bache Sec., Inc.*, 549 So. 2d 777, 778 (Fla. Dist. Ct. App. 1989).  Here, the statement was made on RUSM's admission requirements page of its website.  Def.'s 56.1 ¶4. RUSM.  Viewing the facts in the light most favorable to the Plaintiff, a reasonable juror could find that the admission requirements page of a medical school's website is targeted towards prospective students, such as Plaintiff, to induce them to apply for admission at the school.

---

[9] As discussed, *supra*, the duty to provide a reasonable accommodation is not triggered unless a specific demand for an accommodation has been made," (*Hialeah Hous. Auth.*, 418 F. App'x at 876) but the Eleventh Circuit has not determined how that request must be made. *Barron*, 3 F.Supp.3d at 1330.

Third, as discussed *supra* Section III.A.ii, there is a dispute of fact as to whether Plaintiff relied on this statement.

Accordingly, Defendant's motion for summary judgment as to Counts VIII and IX is DENIED.

v.    <u>Breach of Fiduciary Duty</u>

Defendant moves for summary judgment on Plaintiff's breach of fiduciary duty claim (Count X), arguing that there was no fiduciary relationship between Plaintiff and Defendant.  As discussed *supra* Section III.A.iii, a college or university does not owe a fiduciary duty to its students solely based upon their status as students.  *Morrison*, 2016 WL 3129490, at *7. Accordingly, Defendant's motion for summary judgment as to Count X is GRANTED.

vi.    <u>Plaintiff's Claims for Damages</u>

Defendant argues that certain of Plaintiff's claims for damages should be stricken.  First, Defendant argues that Plaintiff's lost earning capacity damages should be stricken because Plaintiff is not an expert and has not provided any evidence supporting such damages. [10]  As a lay witness, Plaintiff may testify to his own personal knowledge on a topic.  *See* Fed. R. Evid. 701(a).  Although Plaintiff may not be able to sustain a lost earnings capacity award should he prevail at trial, as set forth in the Court's forthcoming order on the motions in limine and Daubert motions, Defendant's motion to exclude Plaintiff's testimony on damages is DENIED WITHOUT PREJUDICE.  *See Gharfeh v. Carnival Corp.*, No. 17-20499-CIV, 2019 WL 186864, at *3–4 (S.D. Fla. Jan. 14, 2019) (denying without prejudice defendant's motion to exclude plaintiff's speculative lost earning capacity damages).

---

[10] This part of Defendant's motion is duplicative of Defendant's Daubert Motion (ECF No. 117). The Court will provide further analysis on this issue in its subsequently-filed order on Defendant's Daubert Motion.

Second, Defendant argues that monetary damages are not an available remedy for an ADA Title III claim.  Monetary damages are only available under Title III of the ADA if the action is initiated by the Attorney General  *See Jairath v. Dyer*, 154 F.3d 1280, 1283 n. 7 (11th Cir. 1998) Thus, Defendant's motion to strike monetary damages on Count II is GRANTED.

Finally, Defendant argues that Plaintiff's claims for punitive damages should be stricken.[11]  Punitive damages are not available under the Rehabilitation Act.  *See Barnes v. Gorman*, 536 U.S. 181, 189 (2002) (punitive damages are not available under Section 504 of the Rehabilitation Act).  As such, Plaintiff's claim for punitive damages on Count I is stricken.  Defendant also moves to strike Plaintiff's punitive damages for fraudulent inducement and negligent misrepresentation.  Pursuant to Section 768.72(2) of the Florida Statutes, "a defendant may be held liable for punitive damages only if the trier of fact, based on clear and convincing evidence, finds that the defendant was personally guilty of misconduct or gross negligence." Fla. Stat. § 768.72(1).  Under Florida law, punitive damages are permitted for claims of fraudulent inducement.  *See XP Glob., Inc. v. AVM, L.P.*, No. 16-CV-80905, 2016 WL 6679427, at *5 (S.D. Fla. Nov. 14, 2016) (Florida courts allow an award of punitive damages for fraudulent inducement).  Additionally, a claim of negligent misrepresentation that resembles fraud in the inducement may support a claim for punitive damages.  *Burger King Corp. v. Austin*, 805 F. Supp. 1007, 1025 (S.D. Fla. 1992).  As such, Plaintiff's claim for punitive damages on Counts VII and IX may proceed.

Accordingly, Defendant's motion to strike Plaintiff's claims of punitive damages is GRANTED IN PART and DENIED IN PART.

---

[11] As discussed above, Defendant's motion for summary judgment is granted as to Plaintiff's breach of contract claims.  Accordingly, the Court need not discuss Defendant's request to strike punitive damages on these claims.

**IV.     CONCLUSION**

UPON CONSIDERATION of the Motions, the pertinent portions of the record, and being otherwise fully advised in the premises, it is hereby ORDERED AND ADJUDGED Plaintiff's Motion for Summary Judgment (ECF No. 102) is DENIED and Defendant's Motion for Summary Judgment (ECF No. 120) is GRANTED IN PART AND DENIED IN PART as follows:

A.     Summary judgment on Counts III, IV, V, VI, VII, and X is GRANTED; and

B.     Summary judgment on Counts I, II, VIII and IX is DENIED.

DONE AND ORDERED in Chambers at Miami, Florida, this 2nd day of March, 2019.

_____
K. MICHAEL MOORE
UNITED STATES CHIEF DISTRICT JUDGE

c:     All counsel of record