**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA**

Case No.: 18-cv-60482-KMM

OLUWAMUYIWA AWODIYA,

    Plaintiff,

v.

ROSS UNIVERSITY SCHOOL OF MEDICINE,

    Defendant.

_____/

## **OMNIBUS ORDER**

THIS CAUSE came before the Court upon Defendant Ross University School of Medicine's ("Defendant" or "RUSM") Motion in Limine (Def.'s Mot. in Lim.) (ECF No. 116) and Daubert Motion ("Def.'s Daubert) (ECF No. 117) and Plaintiff Oluwamuyiwa Awodiya's ("Plaintiff") Motion in Limine ("Pl.'s Mot. in Lim.") (ECF No. 125) and Daubert Motion ("Pl.'s Daubert") (ECF No. 126).[1] The motions are now ripe for review.

## I. BACKGROUND

The Court assumes familiarity with the background facts which are set forth in the Court's Omnibus Order on Summary Judgment and need not be repeated herein.

## II. LEGAL STANDARD

### A. Daubert Motions

Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure provides that expert disclosures be accompanied by a written report, signed by the witness, containing a complete statement of all

---

[1] Plaintiff responded to Defendant's Daubert Motion ("Pl.'s Daubert Resp.") (ECF No. 136) and Defendant replied ("Def.'s Daubert Reply") (ECF No. 141). Defendant responded to Plaintiff's motions ("Def.'s Mot. in Lim. Resp." and "Def.'s Daubert Resp.") (ECF Nos. 131, 133), and Plaintiff replied ("Pl.'s Mot. in Lim. Reply" and "Pl.'s Daubert Reply") (ECF Nos. 145, 146).

opinions the witness will express and the bases for those opinions. Fed. R. Civ. P. 26(a)(2)(A), (B). Rule 702 of the Federal Rules of Evidence provides that expert testimony is admissible if

> scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

*STMicroelectronics, Inc. v. SanDisk Corp.*, No. 05cv-45, 2007 WL 4386234 (E.D. Tex. Mar. 15, 2007). "Rule 702 compels the district courts to perform the critical 'gatekeeping' function concerning the admissibility of expert *scientific* evidence." *U.S. v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) (emphasis in original) (citing *Daubert v. Merrill Dow Pharm., Inc.*, 509 U.S. 579, 589, n.7, 597 (2006)). The court must also act as gatekeeper with respect to the admissibility of technical expert evidence. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999). In determining the admissibility of expert testimony, the Court considers whether:

> (1) The expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*Finestone v. Florida Power & Light Co.,* No. 03-cv-14040, 2006 WL 267330, *8 (S.D. Fla. Jan. 6, 2006) (internal citations omitted). "The burden of laying the proper foundation for the admission of the expert testimony is on the party offering the expert." *Allison v. McGhan Med. Corp.,* 184 F.3d 1300, 1306 (11th Cir. 1999).

    **B.**    **Motions in Limine**

A motion in limine is a "motion, whether made before or during trial, to exclude anticipated prejudicial evidence before the evidence is actually offered." *Luce v. United States*,

469 U.S. 38, 40 n. 2 (1984).  Motions in limine are generally disfavored.  *See United States v. Amor*, No. 14-cv-20750, 2015 WL 6438479, at *1 (S.D. Fla. Oct. 23, 2015).  Evidence is properly excluded "only if the evidence is clearly inadmissible for any purpose."  *Stewart v. Hooters of Am., Inc.*, No. 04-cv-40, 2007 WL 1752873, at *1 (M.D. Fla. June 18, 2007).

### III.   DISCUSSION

#### A.   Defendant's Motions

##### i.   Defendant's Motion in Limine

Defendant moves to exclude reference to non–party Adtalem Global Education Inc. ("Adtalem") and its net worth.  Defendant argues these references should be excluded because they are irrelevant and could unfairly prejudice Defendant.  Plaintiff did not respond.

Adtalem is the parent company of RUSM.  Def.'s Mot. in Lim. at 1.  Plaintiff purports to seek punitive damages amounting to "1% of Adtalem's net worth" on his fraudulent inducement, negligent inducement, and breach of fiduciary duty claims.  *See* Plaintiff's Third Amended Calculation of Damages (ECF No. 116–1) at 3.

Courts may preclude evidence of a parent company's net worth when it is irrelevant to the litigation.  *See Grizzle v. Travelers Health Network, Inc.*, 14 F.3d 261, 271 (5th Cir. 1994) (upholding district court's decision to exclude evidence of parent companies' net worth); *McCune v. Graco Children's Prod., Inc.*, No. 5:09-CV-107, 2011 WL 13217898, at *13 (E.D. Tex. Aug. 8, 2011) (excluding references to parent company's net worth where plaintiff did not name parent company in pleadings or as a party to the case).  Here, Adlatem was not named or referenced by Plaintiff in his pleadings and is not a party in this case.  Plaintiff has not shown why Adlatem's existence as Defendant's corporate parent is of consequential relevance in this case.

Accordingly, Defendant's Motion in Limine is GRANTED and Plaintiff may not reference Adtalem's net worth.

      ii.      <u>Defendant's Daubert Motion</u>

Defendant moves to exclude Plaintiff from offering improper lay opinion testimony on (1) medical issues; (2) vocational rehabilitation issues; and (3) calculation of damages. Defendant contends that Plaintiff (1) does not possess the requisite qualifications to provide such testimony; (2) does not provide a reliable methodology for such testimony; and (3) failed to make a timely expert disclosure on these subject matters. Def.'s Daubert at 1. In response, Plaintiff argues that he has not rendered any expert opinions and only intends to testify as a lay witness on the above-referenced issues.[2] Pl.'s Daubert Resp. at 1.

Federal Rule of Evidence 701 provides: "[i]f a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is: (a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702)." Fed. R. Evid. 701.

      *a.*      *Medical Opinion Testimony*

Defendant argues that Plaintiff is not qualified to render expert testimony on his medical issues. Def.'s Daubert at 4–5. Plaintiff argues that he is permitted to offer lay opinion testimony pertaining to his symptoms. Pl.'s Response to Daubert at 2–3. Defendant does not dispute this. Def.'s Daubert at 5; Def.'s Daubert Reply at 4.

---

[2] Plaintiff's response was untimely, and Defendant moves to strike the response on that basis. Def.'s Daubert Reply at 2. The Court agrees that the response was untimely and implores Plaintiff to comply with the Court's deadlines moving forward. However, the Court will consider Plaintiff's response and decide this motion on the merits.

Medical diagnoses and medical causation opinions ordinarily present technical and scientific issues that require the specialized knowledge of an expert witness. *See Wingster v. Head*, 318 F. App'x 809, 814 (11th Cir. 2009) (finding the cause of an aneurysm was a medical causation issue that required competent medical testimony); *see also Leblanc v. Coastal Mech. Servs., LLC*, No. 04-80611-CIV, 2005 WL 5955027, at *2 at n.l (S.D. Fla. Sept. 7, 2005) (diagnosis of mental disease or defect requires testimony of qualified expert). Here, Plaintiff is not a physician and has no additional training or experience that qualifies him to render medical opinions. While Plaintiff may attest to any personally observable injuries, Plaintiff may not testify to any medical opinions failing within the scope of Federal Rule of Evidence 702, any technical matters beyond his knowledge, or to any out–of–court statements of medical professionals constituting inadmissible hearsay. *In re Am. Airlines Flight 331*, No. 10-20131-CV, 2013 WL 12340397, at *2 (S.D. Fla. Oct. 24, 2013).

          b.     *Vocational Rehabilitation and Damages Calculations Testimony*

Defendant argues that Plaintiff is unqualified to render (1) vocational rehabilitation testimony; and (2) lost earning capacity, emotional distress, or punitive damages testimony. Def.'s Daubert at 5–7. Plaintiff responded generally that he is not rendering expert opinions. Pl.'s Daubert Resp. at 1.

Plaintiff is not qualified to be an expert and does not contend to be. Under Rule 701, a lay witness may testify regarding their own personal knowledge. *See* Fed. R. Evid. 701(a). Rule 701 "does not permit a lay witness to express an opinion as to matters which are beyond the realm of common experience and which require the special skill and knowledge of an expert witness." *James River Ins. Co. v. Rapid Funding, LLC*, 658 F.3d 1207, 1214 (10th Cir. 2011) (citing *Asplundh Mfg. Div. v. Benton Harbor Eng.*, 57 F.3d 1190, 1196 (3d Cir.1995)). "The

5

prototypical example of the type of evidence contemplated by the adoption of Rule 701 relates to the appearance of persons or things, identity, the manner of conduct, competency of a person, degrees of light or darkness, sound, size, weight, distance, and an endless number of items that cannot be described factually in words apart from inferences." *Id.* While a lay witness may testify to very elementary mathematical operations such as those "well within the ability of anyone with a grade-school education, lay testimony about lost profits based on more sophisticated economic models is impermissible. *Id.*

Here, Plaintiff may testify to his own experiences, such as whether he has been able to obtain a job, in support of his damages. To the extent that Plaintiff seeks to testify to vocational rehabilitation beyond his own personal experience of applying for jobs and being rejected, or to labor and employment statistics outside of his own personal experience, this testimony is impermissible. Further, the Court is concerned that Plaintiff's rationale for his requested lost earning capacity damages is unduly speculative. Defendant points out that Plaintiff failed to consider numerous factors related to his future earnings, including that he had been unable to gain admission to a U.S. medical school, his GPA while at RUSM, and his failed attempts at passing the CBSE. *See* Def.'s Daubert at 9. Although Plaintiff might not be able to sustain a lost earnings capacity award should he prevail at trial, the Court is, for present purposes, denying without prejudice Defendant's Daubert motion because the Court will not summarily exclude Plaintiff's testimony on damages. However, Defendant may renew its argument to exclude Plaintiff's damages calculation at trial. *See Gharfeh v. Carnival Corp.*, No. 17-20499-CIV, 2019 WL 186864, at *3–4 (S.D. Fla. Jan. 14, 2019) (denying without prejudice defendant's motion to exclude plaintiff's speculative lost earning capacity damages).

6

Next, Plaintiff's proposed punitive damages are based on Adtalem's net worth. As discussed *supra* Section III.A.i., Plaintiff is precluded from referencing Adtalem's net worth.

Finally, Defendant moves to exclude Plaintiff's testimony on emotional distress damages. Courts have awarded emotional distress damages even though no expert testimony was submitted. *See McLean v. GMAC Mortg. Corp.*, 595 F.Supp.3d 1360, 1369 (S.D. Fla. 2009). Plaintiff does not purport to provide expert testimony as to emotional distress damages, but instead offers a straightforward calculation of what he is seeking–emotional distress damages as a percentage of the lost earning capacity. *See* Pl.'s Third Amended Calculation of Damages at 2. Accordingly, Plaintiff may testify to emotional distress damages, but Defendant may renew its argument to exclude Plaintiff's specific damages calculation at trial.

Accordingly, Defendant's Daubert Motion is GRANTED IN PART AND DENIED WITHOUT PREJUDICE IN PART as discussed above.

**B.     Plaintiff's Motions**

   i.      Plaintiff's Motion in Limine

Plaintiff moves to exclude evidence regarding (1) the qualifications of becoming a medical doctor; (2) information within counseling notes; (3) Plaintiff's ex-girlfriend; and (4) evidence to controvert judicial admissions. Pl.'s Mot. in Lim. at 1.

   a.      *Evidence Plaintiff Was Not Otherwise Qualified*

Plaintiff moves to exclude evidence that he was not "otherwise qualified" to become a medical doctor, arguing that RUSM "unlawfully excluded Plaintiff from participating in the rest of its medical program" and that "as a matter of law, RUSM is foreclosed from complaining of the resulting uncertainty of the post–discrimination requirements." Pl.'s Mot. in Lim. at 3. Evidence is relevant if it has any tendency to make the existence of any fact that is of

7

consequence to the determination of the action more probably or less probably than it would be without the evidence. Fed. R. Evid. 401. Here, the evidence of whether or not Plaintiff would otherwise be qualified to become a doctor is relevant to Plaintiff's failure to accommodate claims and to any potential lost-earning capacity damages.

Accordingly, Plaintiff's motion to exclude evidence that he is not otherwise qualified is DENIED

### b. *Information Within the Counseling Notes*

Plaintiff moves to exclude certain RUSM counseling notes that discuss Plaintiff's alleged self–harm and suicidal ideations as being inadmissible hearsay and confusing to the jury. Pl.'s Mot. in Lim. at 5–8. Defendant argues that the counseling notes fit within the business record exception of the hearsay rule, and that the notes will not confuse the jury. Def.'s Mot. in Lim. Resp. at 8–11. Federal Rule of Evidence 803(4) permits a statement that "is made for–and is reasonably pertinent to–medical diagnosis or treatment" and "describes medical history; past or present symptoms or sensations; their inception; or their general cause." Fed R. Evid. 803(4). Federal Rule of Evidence 803(6) permits records kept in the course of regularly conducted business activity. Fed R. Evid. 803(6). Hearsay is a statement, other than one made by the declarant while testifying at the trial, offered in evidence to prove the truth of the matter asserted. Fed. R. Evid. 801(c). An out-of-court statement offered for a reason other than its truth is not hearsay. *United States v. Baptiste*, 596 F. App'x 880, 882 (11th Cir. 2015).

Here, Plaintiff argues that the counseling records are prejudicial because they are being used as after–the–fact justification for dismissing Plaintiff from school. However, these records are also relevant to why Plaintiff signed the Release of Information Agreement ("ROI") and the obligations created by the ROI, and thus are relevant to RUSM's defense. Plaintiff's central

concern appears to be statements in the counseling notes made by his mother. Here, to the extent statements made by Plaintiff's mother are included in the counseling records because they were relevant to a potential diagnosis, they may be admitted. *See Stull v. Fuqua Indus., Inc.*, 906 F.2d 1271, 1273 (8th Cir. 1990) ("Statements must be obtained from person seeking treatment, or in some instances from person with special relationship to person seeking treatment, such as parent, to fall within medical records exception to hearsay rule."). However, if Defendant attempts to introduce these statements as proof of truth of the matter asserted in the statements, it may constitute impermissible hearsay.

Finally, Plaintiff argues that the mention of self-harm and suicidal thoughts in the counseling notes will confuse or mislead the jury "into thinking that the alleged suicidal thoughts . . . somehow prevented Plaintiff from satisfying the technical standards" required by RUSM. It "is the function of the jury as the traditional finder of facts, and not the Court, to weigh conflicting evidence and inferences, and determine the credibility of witnesses." *Worsham v. A.H. Robins Co.*, 734 F.2d 676, 682 (11th Cir. 1984); *see also Shannon v. Bellsouth Telecommunications, Inc.*, 292 F.3d 712, 715 (11th Cir. 2002). Whether Plaintiff satisfied RUSM's technical standards of qualification is at the heart of the ADA and Rehabilitation Act claims, and it is an issue for the jury to decide.

Accordingly, Plaintiff's motion to exclude the counseling records is DENIED.

### c.   *Evidence Regarding Plaintiff's Ex-Girlfriend*

Plaintiff moves to exclude evidence regarding his ex–girlfriend, arguing that such evidence is irrelevant. Pl.'s Mot. in Lim. at 9. In response, Defendant argues that this evidence is relevant to (1) show why Plaintiff received counseling services; (2) dispute that Plaintiff was "otherwise qualified" as defined by the ADA and Rehabilitation Act; and (3) provide context for

9

the ROI.  Def.'s Mot. in Lim. Resp. at 13.  Evidence is relevant if it has any tendency to make the existence of any fact that is of consequence to the determination of the action more probably or less probably than it would be without the evidence.  Fed. R. Evid. 401.  Here, the evidence regarding Plaintiff's relationship with his ex–girlfriend is relevant to RUSM's defense. Accordingly, such testimony may be admitted.

### d. *Evidence Contradicting Judicially Admitted Facts*

Plaintiff moves to exclude evidence that controverts RUSM's answers to the Third Amended Complaint ("TAC") that the ROI "would have permitted" the counseling center to discuss Plaintiff's ADHD with the school's Accommodation Coordinator and RUSM's alleged admission that Plaintiff was otherwise qualified under the ADA and Rehabilitation Act.  Answer (ECF No. 58).  "[F]acts judicially admitted are facts established not only beyond the need of evidence to prove them, but beyond the power of evidence to controvert them."  *Cooper v. Meridian Yachts, Ltd.*, 575 F.3d 1151, 1178 (11th Cir. 2009).

First, Defendant's statement that the ROI "would have permitted" the counseling center to discuss Plaintiff's ADHD is not a statement that the ROI *required* the counseling center to discuss Plaintiff's ADHD.  Defendant may provide evidence to support its argument that the ROI did not compel the counseling center to request an accommodation on Plaintiff's behalf.

Second, Defendant admitted that Plaintiff was "otherwise qualified" in response to Plaintiff's state-court claims.  *See* TAC (ECF No. 47) ¶ 86; Answer ¶ 87.  Defendant now concedes that this admission was inadvertent, but also argues that Defendant denied that Plaintiff was otherwise qualified in its Answer to the ADA and Rehabilitation Act claims.  *Compare* TAC ¶¶ 47, 56 *with* Answer ¶¶ 48, 57.  Because Defendant did not judicially admit that Plaintiff was

"otherwise qualified" under the ADA and Rehabilitation Act, Defendant is permitted to offer evidence to support its defense that Plaintiff was not otherwise qualified.

Accordingly, for the reasons mentioned above, Plaintiff's Motion in Limine is DENIED.

### ii. Plaintiff's Daubert Motion

Plaintiff moves to exclude the testimony of Defendant's rebuttal expert Robert Quintero arguing that Quintero is not qualified to be an expert and that Quintero's expert opinions are unreliable.

#### a. *Qualification*

Plaintiff argues that Quintero is not qualified to testify to Plaintiff's lost earning capacity because his experience in financial accounting does not qualify him to opine on the impact that Plaintiff's performance in medical school would have on his future earning potential. Pl.'s Daubert at 4–5.

"Experts may be qualified in various ways." *U.S. v. Frazier*, 387 F.3d 1244, 1260 (11th Cir.2004). "While scientific training or education may provide possible means to qualify, experience in a field may offer another path to expert status." *Id*. at 1260–61. "The qualification standard for expert testimony is 'not stringent,' and 'so long as the expert is minimally qualified, objections to the level of the expert's expertise [go] to credibility and weight, not admissibility.'" *Kilpatrick v. Breg, Inc.*, No. 08–10052–CIV, 2009 WL 2058384, at *3 (S.D. Fla. June 25, 2009) (internal citations omitted).

Here, Quintero is opining on Plaintiff's calculation of his lost earning capacity and offering the opinion that there is no reliable evidence that Plaintiff's earning capacity has been impaired. Quintero has a Master's Degree of Science in Accountancy and an assessment of Professional Competence in Investment Management. *See* Expert Report of Ronald G. Quintero

("Quintero Report") (ECF No. 133–1) Ex. 30. Quintero has served more than 750 public and private clients in a broad range of industries, including health care, and has testified as an expert witness on approximately 100 occasions. Quintero Report at 3; Ex. 30. Accordingly, the Court finds that Quintero is qualified to critique Plaintiff's damages calculations.

        b.    *Reliability*

Plaintiff argues that Quintero's opinions regarding (1) the impact of Plaintiff's grades and test scores on his ability to become a doctor; (2) alternative employment in healthcare; (3) the risk of death or disability; (4) the growth rates of annual earnings; and (5) the reinstatement offer from RUSM are all unreliable. Pl.'s Daubert at 5–11. In response, Defendant argues that Quintero's opinions are founded in evidence, his experience, widely accepted benchmarks, and other authoritative sources commonly relied on by experts in his field. Def.'s Daubert Resp. at 9.

"The Supreme Court in *Daubert* identified four nonexclusive factors for trial courts to use in determining the reliability of scientific opinions; *i.e.*: (1) whether the theory can and has been tested; (2) whether it has been subjected to peer review; (3) the known or expected rate of error; and (4) whether the theory and methodology employed is generally accepted in the relevant scientific community. *McClain v. Metabolife Int'l, Inc.*, 401 F.3d 1233, 1251 (11th Cir. 2005) (citing Daubert, 509 U.S. at 593–94). "Notably, however, these factors do not exhaust the universe of considerations that may bear on the reliability of a given expert opinion, and a federal court should consider any additional factors that may advance its Rule 702 analysis." *Quiet Tech. DC–8, Inc. v. Hurel–Dubois UK Ltd.*, 326 F.3d 1333, 1341 (11th Cir. 2003). As such, these factors are guidelines, and the trial judge has "considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." *United States v. Kyler*, 429 F. App'x 828, 830 (11th Cir. 2011) (quoting *Kumho Tire,* 526 U.S. at

152). Accordingly, "[t]o the extent that expert opinions are derived from literature review, witness interviews and data analysis, they are not automatically rendered unreliable by their non-susceptibility to empirical verification." *United States v. Levinson,* No. 10–80166–CR, 2011 WL 1467225, at *4 (S.D. Fla. Mar. 17, 2011) (citing *Am. Gen. Life Ins. Co. v. Schoenthal Family, LLC,* 555 F.3d 1331, 1338 (11th Cir.2009)). An expert may properly base his testimony on "professional study or personal experience." *Maiz v. Virani*, 253 F.3d 641, 669 (11th Cir. 2001).

Quintero's methodology is reliable. As a rebuttal expert, he provides an opinion as to Plaintiff's assertions and conclusions. In providing that opinion, he reviewed Plaintiff's Third Amended Calculation of Damages and pertinent materials related to calculating lost earnings. Quintero Report Ex.1. This methodology–based on personal experience and a review of literature and data–is sufficiently reliable under *Daubert*. *See Nature's Prod., Inc. v. Natrol, Inc.*, No. 11-62409-CIV, 2013 WL 11275370, at *6 (S.D. Fla. Oct. 8, 2013) (finding rebuttal expert's opinion based on personal knowledge and experience is reliable under *Daubert*).

c.   *Helpfulness*

Plaintiff also argues that Quintero's testimony would not be helpful to the trier of fact. "Expert testimony is admissible if it concerns matters that are beyond the understanding of the average lay person." *Frazier,* 387 F.3d at 1262. To assist the trier of fact, "[e]xpert testimony must be relevant to the task at hand, . . . *i.e.,* that it logically advances a material aspect of the case." *McDowell v. Brown,* 392 F.3d 1283, 1299 (11th Cir.2004).

Here, Quintero's testimony will assist the trier of fact in understanding the factors to consider when calculating lost–earnings damages. However, as discussed *supra* Section III.A.ii.b, Plaintiff's ability to testify regarding damages is limited to his own personal experiences and not to testimony that is within an expert's purview. To the extent Plaintiff's

13

testimony is limited, Quintero's rebuttal may not be helpful and may be similarly limited. *See Nature's Prod., Inc.*, 2013 WL 11275370, at *6 (finding that where an expert's testimony is found to be unreliable and inadmissible, rebuttal testimony will not be helpful and is likewise inadmissible).

Accordingly, Plaintiff's Daubert Motion is DENIED WITHOUT PREJUDICE.

## IV. CONCLUSION

UPON CONSIDERATION of the Motions, the pertinent portions of the record, and being otherwise fully advised in the premises, it is here ORDERED AND ADJUGED that:

    A.    Defendant's Motion in Limine (ECF No. 116) is GRANTED;

    B.    Defendant's Daubert Motion (ECF No. 117) is GRANTED IN PART and DENIED WITHOUT PREJUDICE IN PART

    C.    Plaintiff's Motion in Limine (ECF No. 125) is DENIED; and

    D.    Plaintiff's Daubert Motion (ECF No. 126) is DENIED WITHOUT PREJUDICE.

DONE AND ORDERED in Chambers at Miami, Florida, this <u>2nd</u> day of March, 2019.

                                            K. MICHAEL MOORE
                                            UNITED STATES CHIEF DISTRICT JUDGE

c:    All counsel of record