UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

OLUWAMUYIWA AWODIYA,   CASE NO. 0:18-cv-60482-KMM-AOV

    Plaintiff,

v.

ROSS UNIVERSITY SCHOOL OF
MEDICINE, SCHOOL OF VETERINARY
MEDICINE LIMITED,

    Defendant.
_____/

**DEFENDANT'S REPLY IN SUPPORT OF ITS
MOTION IN LIMINE TO EXCLUDE NEW THEORIES OF LIABILITY**

Defendant Ross University School of Medicine, School of Veterinary Medicine Limited ("RUSM"), by counsel, hereby files its reply in support of its Motion in Limine to Exclude New Theories of Liability [ECF No. 160] (the "Motion"). The Court should strike and/or disregard the untimely response in opposition to the Motion [ECF No. 166] (the "Opposition") filed by plaintiff Oluwamuyiwa Awodiya ("Plaintiff") and grant the Motion.

**I.   INTRODUCTION**

In the Opposition, Plaintiff primarily uses the brief to expound upon the merits of his new theories of liability. However, absent from the brief is any compelling argument that he put RUSM on notice of these new theories either in the pleadings, in response to discovery or in his deposition testimony. RUSM will suffer significant prejudice at trial because it was not permitted to take discovery as to these new theories of liability that were presented for the first time in Plaintiff's statement of the case submitted on February 28, 2019 as part of the joint pretrial statement. [ECF No. 151].

1

Moreover, while not relevant to the determination of this Motion, Plaintiff's statement of the law regarding these new theories is not correct. Therefore, on the substance, these new theories would fail and would only serve to confuse the jury.

RUSM respectfully requests that the Court exclude these new theories of liability from the trial in this action.

## II. FACTUAL BACKGROUND

Plaintiff was dismissed from RUSM on April 13, 2017 for failure to pass his National Board of Medical Examiner's (NBME) Comprehensive Basic Science Examination (CBSE). Plaintiff omits to inform the Court that his dismissal on April 13, 2017 was not his first dismissal, but yet his second dismissal from the university for failure to pass the NBME CBSE.

Plaintiff failed the NBME CBSE five different times. Pursuant to the policies promulgated by RUSM, dismissal is warranted if a student does not pass the NBME CBSE within three attempts. *See* Exhibit A to Declaration of Sandra Herrin, [ECF No. 119-23]. However, if a student obtains a score of at least 62, students are given a fourth attempt. *Id.*

Plaintiff first attempted the NBME CBSE on April 22, 2016, obtaining a score of 58. On Plaintiff's second attempt, taken on July 2, 2016, Plaintiff obtained a 64. On his third attempt, which occurred on August 26, 2016, Plaintiff obtained a 67. Because Plaintiff obtained a score above 62, he was given a fourth attempt. Plaintiff again failed the NBME CBSE on October 22, 2016, scoring only a 61. Plaintiff was dismissed from RUSM following his fourth attempt on the NBME CBSE in October 2016.

Conveniently, Plaintiff omits to advise the Court that following his dismissal in October 2016, RUSM did in fact reinstate Plaintiff, allowing him to take the NBME CBSE exam. Prior to attempting the exam for his fifth time, RUSM required Plaintiff to complete a review course.

Plaintiff attempted the NBME CBSE exam again on March 30, 2017, only scoring a 60. Subsequently, he was dismissed from RUSM for a second time in April 2017.

The timing of Plaintiff's Obsessive Compulsive Disorder ("OCD") diagnosis is also important. It is undisputed that Plaintiff was not diagnosed until April 2017—after he was dismissed from RUSM for the second time. Plaintiff attempts to conflate his Attention-deficit/hyperactivity disorder diagnosis and his anxiety diagnosis pre-dismissal with his OCD diagnosis. Plaintiff argues that RUSM had knowledge of his disabilities at the time of his second dismissal. However, RUSM could not have possibly known about his OCD until after his second dismissal.

## III.   ARGUMENT
### A.   Plaintiff Failed to Timely File His Motion

The Motion is untimely and should be stricken. Pursuant to the Paperless Order Scheduling Trial [ECF No. 37] (the "Scheduling Order") and the Court's Paperless Order granting RUSM's Motion for Extension of Time [ECF No. 104], all pretrial motions were due by January 4, 2019. That said, during the March 5, 2019 Final Pretrial Conference this Court permitted the parties to file and serve any further motions by March 8, 2019.

The March 8, 2019 deadline passed without Plaintiff filing or serving any motions on RUSM. The Motion, which Plaintiff now seeks to be considered, was not mailed to the Court for filing until March 25, 2019 and was not received by the Court or RUSM until March 27, 2019 – fifteen (15) days after the Court established deadline. This is not the first time Plaintiff failed to comply with the deadlines established by this Court and the Local Rules. *See* the March 2, 2019 Omnibus Order [ECF No. 155] at 4 n.2 ("The Court agrees that the response was untimely and implores Plaintiff to comply with the Court's deadlines moving forward."). In fact, Plaintiff previously requested the same relief that it seeks here by filing a Motion for Judicial Notice [ECF

3

No. 140] and this Court denied it as untimely. *See* the Court's Paperless Order [ECF No. 157] denying Plaintiff's Motion for Judicial Notice as untimely because it was filed more than three weeks after the Court's deadline for pretrial motions.

Moreover, Plaintiff's *Daubert* Motion to Exclude the Expert Testimony of Ronald Quintero (the "*Daubert* Motion") also raises the exact same arguments Plaintiff raises here. *See* [ECF No. 126] at p. 11-13. This Court denied the arguments raised in support of Plaintiff's *Daubert* Motion on the merits. *See* the Omnibus Order [ECF No. 155] at pp.11-14.

Plaintiff should not be permitted to continue to ignore the orders of this Court or "back door" in relief previously rejected by this Court. *See Enwonwu v. Fulton-Dekalb Hosp. Auth.*, 286 F. App'x 586, 595 (11th Cir. 2008) (finding that a district court has discretion in deciding how best to manage the cases before them, and that discretion extends to whether to consider untimely motions.)

The Motion should be stricken.

### B. Plaintiff Has Never Advanced These New Theories

In his Opposition, Plaintiff claims that RUSM had notice of these new theories of liability that he now attempts to advance. However, Plaintiff's citations to the Third Amended Complaint do not support such a conclusion. Opposition at 3-4.

Plaintiff cites to the following paragraph pertaining to his now-dismissed breach of contract claim: "The Dean did not make his final decision to permanently dismiss Plaintiff within 15 calendar days of receipt of the appeal. The student handbook clearly states that on a student's second appeal, the Dean will respond within 15 calendar days of receipt of the appeal." [ECF No. 47] at ¶ 34. *See* Opposition at 3. This allegation does not state or imply that the decision to uphold Plaintiff's dismissal is itself a basis for the accommodation claims. It does not put RUSM on

4

notice that Plaintiff intends to pursue an accommodation claim arising from the appeal of his dismissal, nor would such conduct logically give rise to such a claim (for example, Plaintiff does not and cannot identify what the accommodation would be in that scenario).

Furthermore, in response to RUSM's argument that it had no prior notice of a theory of "disparate impact," Plaintiff seems to acknowledge as much when he admits that "he lacked—and somewhat still lacks—the legal vocabulary to label every form of disability discrimination by a specific 'theory' of discrimination." Opposition at 4. Plaintiff further claims that even though he was unable "to tell the exact differences between these 'theories,'" RUSM should be found to have been on notice of them. *Id*. Plaintiff argues that the Third Amended Complaint contains notice of "[m]ultiple '[t]heories' of [d]iscrimination." Opposition at 3. Yet, the examples that Plaintiff provides do not support such a statement. At pages 3 to 4 of his Opposition, Plaintiff quotes from the Third Amended Complaint. These quotations do not support the extension of a theory of disparate impact. Even in layman's terms, they do not reference treatment of other students as compared to Plaintiff. There is not a single allegation in the Third Amended Complaint that suggests that Plaintiff is pursuing a disparate impact theory, nor did Plaintiff provide any information in discovery to indicate he was pursuing such a claim.

It is within the Court's authority to bar Plaintiff from pursuing new theories of liability on the eve of trial. *See Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1297 (11th Cir. 2006) (plaintiff was not entitled to assert separate statutory basis for recovery in the midst of summary judgment); *McGoy v. Ray*, 164 Fed. Appx. 876, 879, n. 2 (11th Cir. 2006) ("Further, McGoy could not amend his complaint by adding his VOITIS claim in his brief opposing summary judgment, as he attempted to do."); *Edwards v. Niles Sales & Serv., Inc.*, 439 F. Supp. 2d 1202, 1224 (S.D. Fla. 2006) (plaintiff was not entitled to assert new claims for the first time in opposition

to summary judgment); *Brown v. Gulf Jewish Family Servs., Inc.*, No. 8:10-cv-1749-T-27AEP, 2011 WL 3957771, at * 9 (M.D. Fla. Aug. 9, 2011).

Here, RUSM was never on notice of Plaintiff's claim that the decision to uphold his dismissal gave rise to Plaintiff's accommodation claims, nor was RUSM on notice of any theory of disparate impact. Plaintiff should be precluded from advancing these new theories of liability at trial.

### C. This District and the Eleventh Circuit Have Not Declined to Extend the Holding of *Halpern*

If the Court examines the substance of Plaintiff's new theories of liability, it will find that Plaintiff's arguments are meritless. As an initial matter, Plaintiff challenges RUSM's reliance on *Halpern v. Wake Forest University Health Sciences*, 669 F. 3d 454 (4th Cir. 2012), by arguing that courts in the Fourth Circuit have not extended the decision in certain factual scenarios. *See* Opposition at 6. Plaintiff fails to acknowledge, however, that courts in the Eleventh Circuit continue to cite to and rely upon *Halpern*. *See J.A.M. v. Nova Se. Univ., Inc.*, 646 Fed. Appx. 921, 926 (11th Cir. 2016); *Jacobson v. City of West Palm Beach*, Case No. 16-cv-81638-Middlebrooks, 2017 WL 6366841 at *7 (S.D. Fla. May 16, 2017) (noting that the Eleventh Circuit has rejected the argument that termination for non-compliance with a disability-related EAP is disability discrimination (citing *Halpern*)).

In *J.A.M.*, the Eleventh Circuit, citing *Halpern*, held that the university was not required to excuse past misconduct, even if that misconduct is linked to a student's mental disability. 646 Fed. Appx. at 926. The plaintiff breached the substance abuse and alcohol agreement on at least three separate occasions. *Id.* The Eleventh Circuit held that the plaintiff's mental disability does not excuse his misconduct. *Id.* Furthermore, the plaintiff in *J.A.M.* could not show that his mental disability was the ***sole reason*** for his dismissal. *Id.* at 927 (emphasis added).

In his Opposition, Plaintiff ignores the record evidence regarding his academic performance, including his repeated failures on the NBME CBSE, which was the reason for his dismissal from RUSM. Plaintiff was given five different attempts to pass the NBME CBSE but failed each and every attempt. Furthermore, following his fourth attempt, RUSM afforded Plaintiff another opportunity to take the NBME CBSE. Decisions of an educational institution regarding academic matter are to be afforded deference. *J.A.M.*, 646 Fed. Appx. at 926 (citing *Regents of Univ. of Mich. v. Ewing*, 474 U.S. 214, 225 (1985) ("When judges are asked to review the substance of a genuinely academic decision . . . they should show great respect for the faculty's professional judgment.")).

### D. The Cases Relied on by Plaintiff are Distinguishable

Plaintiff's cases are factually dissimilar and do not support his position. For example, in *Hill v. Kansas City Area Transp. Authority,* 181 F.3d 891 (8th Cir. 1999), the facts and holding in this case actually support RUSM's position. In *Hill*, the court found that plaintiff's request for an accommodation was untimely. *Hill*, 181 F.3d at 894. The plaintiff in *Hill* never told her supervisors that she was taking medication or the side effects of such until after her misconduct. *Id*. Further, the plaintiff never offered any assurance that a drug screening would remedy her job performance difficulties. *Id*. Similarly here, Plaintiff never told RUSM about his OCD diagnosis until after his dismissal (nor could he given the timing of the diagnosis in April of 2017). Like the plaintiff in *Hill*, Plaintiff did not request an accommodation during his appeal of his dismissal. *See* [ECF No. 119-25]. Rather, he asked for a second chance to better control his newly diagnosed condition. *Id.* "That is not a cause of action under the ADA." *Hill*, 181 F.3d at 894.

Plaintiff also relies on *Wynne v. Tufts University School of Medicine*, 976 F. 2d 791 (1st Cir. 1992). There, the First Circuit affirmed summary judgment in favor of the university, finding

7

that the student failed to establish that the school's reasons for not making further accommodations with respect to exam were pretextual. *Id.* at 795. Similar to our facts, the court in *Wynne* found that the defendant neither ignored Wynne nor turned a deaf ear to his plight because the university did a number of things, including allowing Wynne to repeat his first-year curriculum after failure and giving him make-up examinations after his failure. *Id.* In fact, the court held that the university had offered Wynne an array of remedial measures. *Id.* The same is true of RUSM which reinstated Plaintiff following his first dismissal and offered Plaintiff five opportunities to pass the NBME CBSE exam.

Even if the Court were to permit Plaintiff to advance new theories of liability at this stage of the litigation, these new theories fail as a matter of law.

## **CONCLUSION**

For the reasons stated herein, defendant Ross University School of Medicine, School of Veterinary Medicine Limited respectfully requests that the Court enter an Order precluding Plaintiff from advancing new theories of the case and granting RUSM such other and further relief as the Court deems just and proper.

Dated: April 3, 2019

Respectfully submitted,

*/s/Octavia M. Green*
MICHAEL C. MARSH
Florida Bar Number:  0072796
Email:  michael.marsh@akerman.com
Secondary:  sharon.luesang@akerman.com
RYAN A. ROMAN
Florida Bar Number:  0025509
Email:  ryan.roman@akerman.com
Secondary:  dorothy.matheis@akerman.com
DONNIE M. KING
Florida Bar Number: 101386
Email: donnie.king@akerman.com
Secondary: simone.tobie@akerman.com
OCTAVIA M. GREEN
Florida Bar Number: 119179
Email: octavia.green@akerman.com
Secondary: simone.tobie@akerman.com
**AKERMAN LLP**
98 SE 7th Street, Suite 1100
Miami, FL 33131
Phone:  (305) 374-5600
Fax:  (305) 374-5095

*Attorneys for Defendant Ross University School of Medicine, School of Veterinary Medicine Limited*

9

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on April 3, 2019 a true and correct copy of the foregoing document was served via CM/ECF on:

Oluwamuyiwa Awodiya
15005 Dahlia Drive
Bowie, Maryland 20721
Telephone: (240) 602-1836
E-mail: drmuyiwa.a@gmail.com

                                              *s/Octavia M. Green*
                                              Octavia M. Green

48447426;5