UNITED STATES DISTRICT COURT
for the
Southern District of Florida

FILED BY _IL_ D.C.

JUN - 3 2019

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - FT. LAUD.

OLUWAMUYIWA AWODIYA,  )  Case No.  0:18-cv-60482-RKA
   *Plaintiff,*  )
  )
-v-  )  Hon. Judge: Roy K. Altman
  )  Magistrate Judge: Patrick M. Hunt
ROSS UNIVERSITY SCHOOL OF  )
MEDICINE, SCHOOL OF  )
VETERINARY MEDICINE LIMITED,  )
   *Defendant.*  )

## PLAINTIFF'S MOTION IN LIMINE TO PRECLUDE PREJUDICIAL EVIDENCE AND THEORIES

Pursuant to the Amended Scheduling Order [ECF No. 180], *pro se* plaintiff Oluwamuyiwa Awodiya ("Plaintiff") hereby files his motion in limine to preclude prejudicial evidence and theories.

### I. INTRODUCTION

Plaintiff respectfully moves to preclude defendant Ross University School of Medicine, School of Veterinary Medicine Limited ("RUSM") from making any reference to the following:

(1) RUSM's Test Accommodations Application Packet;

(2) RUSM's procedure for students to "request" an accommodation, therein any iteration of RUSM's Student Handbook;

(3) RUSM's procedure for students to "request" an accommodation, therein any iteration of RUSM's Academic Catalog;

(4) Plaintiff's academic success at Morgan State University;

(5) Plaintiff's undergraduate Academic Transcripts;

1

(6) RUSM's theory that Plaintiff must be "otherwise qualified" to "complete" RUSM's program;

(7) RUSM's theory that Plaintiff must prove that "he would have been able to pass his exams, including the NBME CBSE with extended testing time";

(8) A waived "direct threat" affirmative defense;

(9) RUSM's theory that Plaintiff must "pursue any other type of educational degree" to mitigate damages; and

(10) RUSM's theory that Plaintiff must "obtain an equally lucrative job position" to mitigate damages.

## II. FACTUAL BACKGROUND

Rule 36 of the Federal Rules of Civil Procedure provides that "[a] matter admitted under this rule is conclusively established." Fed. R. Civ. P. 36(b); *see also In re Carney*, 258 F.3d 415, 420 (5th Cir. 2001) ("Since Rule 36 admissions, whether express or by default, are conclusive as to the matters admitted, they cannot be overcome at the summary judgment stage by contradictory affidavit testimony or other evidence in the summary judgment record."); *Zurich American Insurance v. Frankel Enterprises*, 287 Fed. Appx. 775, 778 (11th Cir. 2008) ("In this case, [defendant] neither objected to the request for admission ... nor filed a motion with the court seeking to withdraw or amend his response. Therefore, under Rule 36, [defendant's] admission ... is conclusively established.... [W]e cannot ignore [defendant's] admission.").

RUSM admits "that Plaintiff was dismissed for failing to pass the NBME CBSE." *See* Defendant's Reponses to Plaintiff's Requests for Admission, attached as **Exhibit A** to the Declaration of Oluwamuyiwa Awodiya filed simultaneously herewith this motion, at Plaintiff's Requests for Admission No. 19. RUSM "admits that RUSM, not the NBME, is the entity that determines whether its students require accommodations to a disability when taking the NBME

2

CBSE and that this is referenced at Page 2 of Exhibit 10." *See id.* at Plaintiff's Requests for Admission No. 18; *see also* "Exhibit 10" thereto Plaintiff's Requests for Admission No. 18, attached hereto as **Exhibit B**. "This document provides basic information on ordering, fees, and related information to request administration of an NBME subject examination to your students at Prometric Test Centers." Exhibit B at 1. "[T]he decision to provide an accommodation is still [RUSM's], as it is with locally-delivered NBME web-based examinations." *Id.* at 2. RUSM can provide "students who need extra testing time" with "1.25x, 1.5x, or 2x" the amount time for extended testing time. *Id.* at 2.

RUSM admits "that Plaintiff did not have any accommodations for his ADHD on his first NBME CBSE attempt." *See* Plaintiff's Requests for Admission No. 53, Exhibit A. RUSM admits "that Plaintiff did not have any accommodations for his ADHD on his second NBME CBSE attempt." *Id.* at Plaintiff's Requests for Admission No. 54. RUSM admits "that Plaintiff did not have any accommodations for his ADHD on his third NBME CBSE attempt." *Id.* at Plaintiff's Requests for Admission No. 55. RUSM admits "that Plaintiff did not have any accommodations for his ADHD on his fourth NBME CBSE attempt." *Id.* at Plaintiff's Requests for Admission No. 56. RUSM admits "that Plaintiff did not have any accommodations for his ADHD on his fifth NBME CBSE attempt." *Id.* at Plaintiff's Requests for Admission No. 57. RUSM admits that "RUSM did not provide Plaintiff with extended testing time for the NBME CBSE." *Id.* at Plaintiff's Requests for Admission No. 16.

### III. LEGAL STANDARDS

A motion in limine is a "motion, whether made before or during trial, to exclude anticipated prejudicial evidence before the evidence is actually offered." *Luce v. United States*, 469 U.S. 38, 40 n. 2 (1984). Under the Federal Rules of Evidence, "[r]elevant evidence is admissible unless" it is prohibited by the United States Constitution, a federal statute, the Rules themselves, or other

3

rules prescribed by the Supreme Court. Fed. R. Evid. 402. "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

## IV.   ARGUMENT

Under the ADA and the Rehabilitation Act, a university offering an examination must assure that the examination is selected and administered so as to best ensure that the examination results accurately reflect the individual's academic performance, rather than reflecting the individual's disability. *See* 28 CFR § 36.309(b)(1)(i) (Title III of the ADA standards for examinations); 42 U.S.C. § 12189; 34 CFR § 104.44(c) (same in Rehabilitation Act under "course examinations"). "Required modifications to an examination may include changes in the length of time permitted for completion of the examination and adaptation of the manner in which the examination is given." 28 CFR § 36.309(b)(2).

The ADA provides that "nothing in this chapter shall be construed to apply a lesser standard than the standards applied under title V of the Rehabilitation Act of 1973 (29 U.S.C. 790 et seq.) or the regulations issued by Federal agencies pursuant to such title." 42 U.S.C. § 12201(a). "Because the same standards govern discrimination claims under the Rehabilitation Act and the ADA, we discuss those claims together and rely on cases construing those statutes interchangeably." *Allmond v. Akal Security, Inc.*, 558 F.3d 1312, 1316 n.3 (11th Cir. 2009).

"To establish a prima facie case of discrimination under the ADA, a plaintiff must show: (1) he is disabled; (2) he is a qualified individual; and (3) he was subjected to unlawful discrimination because of his disability." *Holly v. Clairson Indus*, 492 F.3d 1247, 1255-56 (11th Cir. 2007).

4

**A. Evidence of RUSM's Written Policies and Procedures for "Requesting" Accommodations, is Irrelevant and its Value is Outweighed by a Danger of Unfair Prejudice and Misleading the Jury**

    i. <u>Plaintiff Moves to Preclude Any Reference to the Following:</u>

(1) RUSM's Test Accommodations Application Packet, attached hereto as **Exhibit C**;

(2) RUSM's procedure for students to "request" an accommodation, therein any iteration of RUSM's Student Handbook, attached hereto as **Exhibit D**, *see also* [ECF No. 119-20] at 46–47; and

(3) RUSM's procedure for students to "request" an accommodation, therein any iteration of RUSM's Academic Catalog, attached hereto as **Exhibit E**, *see also* [ECF No. 119-22] at 48–49.

    ii. <u>Under the ADA and the Rehabilitation Act, a Request or Specific Demand Does Not Need to Follow RUSM's Written Policies or Procedures.</u>

Despite the Court's March 2, 2019 Omnibus Order [ECF No. 154] denying RUSM's motion for summary judgment regarding the ADA and the Rehabilitation Act, RUSM still intends on presenting evidence of its procedure for students to "request" an accommodation therein its Student Handbook and Academic Catalog. Moreover, RUSM is attempting to go as far as to misinform the jury that it "must also consider whether Ross University could be liable for failing to provide a reasonable accommodation where the evidence shows that Mr. Awodiya failed to submit the application form for an accommodation." *See* previously filed Defendant's Proposed Jury Instructions [ECF No. 162], at 30.

The Court already agreed with Plaintiff and ruled that "[t]he demand must be specific enough so that the defendant had 'enough information to know of both the disability and desire for an accommodation, or circumstances must at least be sufficient to cause a reasonable [person] to make appropriate inquiries about the possible need for an accommodation.'" Omnibus Order at 9 (quoting *United States v. Hialeah Hous. Auth.*, 418 F. App'x 872, 876 (11th Cir. 2011)). "Thus,

5

there is no rule that a 'specific demand' must be one that follows the written policy or procedures in place." *Id.*

Furthermore, whether Plaintiff's need for an accommodation was obvious is also still an open question of fact to be determined at trial. *See U.S. v. Hialeah Housing Authority*, 418 Fed. Appx. 872, 876 (11th Cir. 2011) ("or circumstances must at least be sufficient to cause a reasonable [person] to make appropriate inquiries about the possible need for an accommodation"); *McCullum ex rel. DF & TF v. Orlando Reg'l Healthcare Sys., Inc.*, 768 F.3d 1135, 1147 (11th Cir. 2014) ("Where the substantial likelihood of harm is obvious, a jury may infer that the defendant had actual knowledge of that substantial risk of harm…. That is, the entity will know of the individual's need for an accommodation because it is obvious." (citations omitted)); *Nattiel v. Fla. Dep't of Corr.*, CASE NO. 1:15-cv-00150-WTH-GRJ, at *1–2 (N.D. Fla. Nov. 27, 2017) (holding that under the ADA, a request for an accommodation is not necessary where the need is "obvious" and also holding that a defendant's "mandated [request] form is not required to trigger the ADA"); *Schwarz v. Villages Charter Sch., Inc.*, 165 F. Supp. 3d 1153, 1173 (M.D. Fla. 2016) ("plaintiff must also establish that the plaintiff requested an accommodation or the need for one was obvious" (parenthesis omitted)); *Alvey v. Gualtieri*, Case No. 8:15-cv-1861-T-33AEP, at *16 (M.D. Fla. Nov. 7, 2016) ("In cases alleging a failure to make reasonable accommodations, the defendant's duty to provide a reasonable accommodation is not triggered until the plaintiff makes a specific demand for an accommodation or the need for an accommodation becomes obvious.").

**B.     Evidence of Plaintiff's Academic Success Prior to Enrolling at RUSM, is Irrelevant and its Value is Outweighed by a Danger of Unfair Prejudice and Misleading the Jury**

     i.     <u>Plaintiff Further Moves to Preclude Any Reference to the Following:</u>

(4) Plaintiff's academic success at Morgan State University; and

(5) Plaintiff's undergraduate Academic Transcripts.

ii.   Grounds for Preclusion

Controlling law provides: "In determining whether an individual has a disability ... the focus is on how a major life activity is substantially limited, and not on what outcomes an individual can achieve. For example, someone with a learning disability may achieve a high level of academic success, but may nevertheless be substantially limited in one or more major life activities, including, but not limited to, reading, writing, speaking, or learning because of the additional time or effort he or she must spend to read, write, speak, or learn compared to most people in the general population." 28 C.F.R. § 36.105(d)(3)(iii). *See also Peters v. Univ. of Cincinnati Coll. of Med.*, NO. 1:10-CV-906 (S.D. Ohio Sep. 6, 2012):

> In short, the record supports a finding that Plaintiff is substantially limited in her ability to learn because of her ADD. The facts that she graduated from Middlebury with a dual degree and that she was able to succeed in part in medical school do not change the Court's decision, as these facts merely indicate that she was able to achieve some measure of success despite her disability-they do not speak to her learning ability as compared with the average person. The only evidence in the record that speaks to that is Dr. Krikorian's assessment, which supports a finding of disability. Defendant's rationale-that anyone who has had some modicum of academic success cannot be found to have a disability that affects learning-flies in the face of Congress' directives and the relevant implementing regulations. The Court cannot endorse Defendant's rationale, and Defendant has presented no compelling or controlling reason why the Court must. The Court thus finds that Plaintiff is disabled under the ADA and the RHA due to her ADD.

*Id.* at \*16-17.

### C.   RUSM's Theory of "Otherwise Qualified" is Incorrect and its Value is Outweighed by a Danger of Unfair Prejudice and Misleading the Jury

i.   Plaintiff Further Moves to Preclude Any Reference to the Following:

(6) RUSM's theory that Plaintiff must be "otherwise qualified" to "complete" RUSM's program; and

(7) RUSM's theory that Plaintiff must prove that "he would have been able to pass his exams, including the NBME CBSE with extended testing time."

### ii.     Grounds for Preclusion

RUSM is attempting to misinform the jury that it must find that Plaintiff "had the skill, experience, education, academic and technical requirements to complete his medical school program" and "must decide whether … he would have been able to pass his exams, including the NBME CBSE with extended testing time." *See* previously filed Defendant's Proposed Jury Instructions [ECF No. 162], at 28, 29.

"In the context of postsecondary education, an otherwise qualified individual is a person who is able to meet the academic and technical standards requisite to admission or **participation** in the education program or **activity**." *Zainulabeddin v. Univ. of S. Fla. Bd. of Trs.*, No. 17-11888, at *10 (11th Cir. Sep. 5, 2018) (emphasis added). Put another way, "[u]nder both the ADA and Rehabilitation Act, an individual is 'qualified' for a program if she can meet the essential eligibility requirements for participation in the program, either with or without reasonable accommodations." *Redding v. Nova Se. Univ., Inc.*, 165 F. Supp. 3d 1274, 1290 (S.D. Fla. 2015).

In this case, Plaintiff claims that additional testing time on examinations could ensure that his examination results accurately reflect his academic performance, rather than reflecting his disability. *See* 28 CFR § 36.309(b)(1)(i) (ADA standards for examinations); 42 U.S.C. § 12189; 34 CFR § 104.44(c) (same in Rehabilitation Act under "course examinations"). Moreover, RUSM Rule 36-admitted that it dismissed Plaintiff for failure to pass an examination that he took five times without any accommodations for his disabilities. *See* Factual Background, *supra* Part II.

Under the ADA and the Rehabilitation Act, Plaintiff only needs to prove that he was otherwise qualified to participate in the examinations and that extended testing time was necessary for the participation to be meaningful. *See Redding v. Nova Se. Univ., Inc.*, 165 F. Supp. 3d 1274,

8

1299 (S.D. Fla. 2015) ("Meaningful participation and access to an academic program includes the *opportunity* to advance to the next academic year on the regular schedule and to achieve one's academic potential on a level playing field with one's peers. When a qualified student's disability prevents such meaningful participation, a reasonable accommodation cannot be called unnecessary." (emphasis in original)).

Furthermore, Plaintiff only needs to prove that he was "otherwise qualified" to participate when RUSM had knowledge of Plaintiff's need for, and failed to provide, an examination accommodation for his disability. *See Redding v. Nova Se. Univ., Inc.*, 165 F. Supp. 3d 1274, 1294–95 (S.D. Fla. 2015) ("Redding's failure-to-accommodate claims arise from Nova's alleged failure to accommodate Redding *before* her clinical semester. Because the basis for these claims is the alleged denial of a requested accommodation, Nova's liability necessarily depends on whether Redding was a 'qualified individual' at the time she allegedly requested, and Nova allegedly denied, the accommodation. Redding's later actions are irrelevant to this claim. Contrary to Nova's argument, Redding's later disqualification does not preclude liability for prior wrongful denials of accommodations." (internal citations omitted)). In *Redding*, the plaintiff was only required to prove that she "was qualified at the time she requested accommodations for taking her make-up exams." *Id.* at 1295. Here, Plaintiff claims that RUSM first had knowledge of his need for an examination accommodation for his disability, sometime between January 2016 through June 2017.

Lastly, Plaintiff does not need to satisfy non-essential eligibility requirements to be "otherwise qualified." *See Shaikh v. Tex. A&M Univ. Coll. of Med.*, No. 16-20793, at *9-10 (5th Cir. Jun. 20, 2018) (per curiam) ("A requirement is essential if the nature of the program would be fundamentally altered without it. By contrast, an individual does not need to satisfy non-essential

program requirements to be 'otherwise qualified.'" (internal citations omitted)); *McKelvey v. Turnage*, 792 F.2d 194, 204 (D.C. Cir. 1986) (per curiam) (same).

### D. RUSM's Attempt to Raise a Waive "Direct Threat" Affirmative Defense is Precluded by Law.

i. <u>Plaintiff Further Moves to Preclude Any Reference to the Following:</u>

(8) A waived "direct threat" affirmative defense.

ii. <u>Grounds for Preclusion</u>

RUSM intends to instruct the jury that "Ross University contends that [Plaintiff] is not a 'qualified individual' because [Plaintiff's] continued enrollment at Ross University would have posed a direct threat …." *See* previously filed Defendant's Proposed Jury Instructions [ECF No. 162], at 28; *But see* Plaintiff's Request for Admission No. 19 (RUSM admitting "that Plaintiff was dismissed for failing to pass the NBME CBSE."), *supra* Part II.

The ADA provides that "an individual shall not pose a direct threat to the health or safety of other individuals in the workplace." 42 U.S.C. § 12113(b). In 2002, the U.S. Supreme Court superseded the circuit split on the whether a "direct threat" theory is an affirmative defense. *See Chevron U.S.A. Inc. v. Echazabal*, 536 U.S. 73, 78 (2002) (Holding that under "§ 12113(a), the Act creates an affirmative defense for action under a qualification standard …. Such a standard may include 'a requirement that an individual shall not pose a direct threat to the health or safety of other individuals in the workplace.'" (quoting 42 U.S.C. § 12113(b)). The Eleventh Circuit has since adopted the Supreme Court precedent. "[T]he direct threat exception … is an affirmative defense …." *See Hunt v. Aimco Props., L.P.*, 814 F.3d 1213, 1225 (11th Cir. 2016) (Noting that the Supreme Court has "characterize[ed] as an affirmative defense the Americans with Disabilities Act's ('ADA') direct threat provision").

RUSM has failed to raise the "direct threat" affirmative defense. *See* Defendant's Answer and Affirmative Defenses [ECF No. 58], at 15–17. "Under Federal Rule of Civil Procedure 8(c),

10

defendants are required to 'affirmatively state any avoidance or affirmative defense' in their pleadings." *Keybank Nat'l Ass'n v. Hamrick*, No. 12-15498, at *8 (11th Cir. 2014). "Failure to plead an affirmative defense generally results in a waiver of that defense." *Latimer v. Roaring Toyz, Inc.*, 601 F.3d 1224, 1239 (11th Cir. 2010); *see also Diaz v. Jaguar Restaurant Group*, 627 F.3d 1212, 1214 (11th Cir. 2010) ("The only time [defendant] raised the issue prior to trial was by inserting it in one line of the Joint Pretrial Stipulation and in the proposed Joint Jury Instructions …. If ever there were a classic case of waiver, this is it! [Defendant] repeatedly waived, the [affirmative] defense by failing to plead the defense in its Answer and by failing to move to amend its Answer before trial.").

### E. RUSM's Theory of Mitigating Damages is Incorrect and its Value is Outweighed by a Danger of Unfair Prejudice and Misleading the Jury

#### i. Plaintiff Further Moves to Preclude Any Reference to the Following:

(9) RUSM's theory that Plaintiff must "pursue any other type of educational degree" to mitigate damages; and

(10) RUSM's theory that Plaintiff must "obtain an equally lucrative job position" to mitigate damages.

#### ii. Plaintiff is Entitled to Compensatory Damages.

Plaintiff is entitled to compensatory damages for violations of the Rehabilitation Act. *See McCullum ex rel. DF & TF v. Orlando Reg'l Healthcare Sys., Inc.*, 768 F.3d 1135, 1147 (11th Cir. 2014); *see also Holly v. Clairson Indus*, 492 F.3d 1247, 1262 (11th Cir. 2007) ("an employer's failure to reasonably accommodate a disabled individual *itself* constitutes discrimination under the ADA"); *Borkowski v. Valley Cent. School Dist*, 63 F.3d 131, 143 (2d Cir. 1995) ("Failure to consider the possibility of reasonable accommodation for such disabilities, if it leads to discharge for performance inadequacies resulting from the disabilities, amounts to a discharge solely because of the disabilities."); *Humphrey v. Memorial Hospitals Ass'n*, 239 F.3d 1128, 1139 (9th Cir.

11

2001) ("[T]he consequence of the failure to accommodate is, as here, frequently an unlawful termination."); *Danielle-Diserafino v. Dist. Sch. Bd. of Collier Cnty.*, Case No: 2:15-cv-569-FtM-29CM, at *9 (M.D. Fla. Aug. 11, 2016) ("A failure to accommodate is akin to a strict liability claim ...." (citing *Palmer v. McDonald*, 624 F. App'x 699, 706 (11th Cir. 2015) (per curiam));

Plaintiff is also entitled to compensatory damages for acts of fraudulent inducement. "Florida law provides for an election of remedies in fraudulent inducement cases ... 'whereby the party ratifies the contract.'" *Linville v. Ginn Real Estate Co.*, 697 F. Supp. 2d 1302, 1308 (M.D. Fla. 2010) (quoting *Mazzoni Farms, Inc. v. E.I. DuPont*, 761 So.2d 306, 313 (Fla. 2000)).

RUSM intends to argue to the jury that Plaintiff "did not make reasonable diligent efforts to pursue any other type of educational degree." *See* previously filed Defendant's Proposed Jury Instructions [ECF No. 162], at 33. RUSM further intends to argue that Plaintiff "did not make reasonable diligent efforts to obtain an equally lucrative job position." *Id.*

### iii. The Legal Relationship Between Plaintiff and RUSM.

Plaintiff was not an employee to RUSM. Under Florida law, the legal relationship between a private university and a student is "solely contractual in character." *Sirpal v. Univ. of Miami*, 509 F. App'x 924, 929 (11th Cir. 2013). "A court will not interfere with a private university's enforcement of its regulations unless the university has acted arbitrarily and capriciously, in violation of a constitution or statute, or for fraudulent purposes." *Id.*; *accord Sharick v. Southeastern University*, 780 So. 2d 136, 139–140 (Fla. Dist. Ct. App. 2000) ("In valuing the loss of this degree ... it is appropriate to consider the possibility of lost future earnings." This is "measured by the value of the expected profits" in "the analogous context of lost prospective profits."), *review granted*, 804 So.2d 330 (Fla. 2001), 805 So.2d 809 (Fla. 2002), *review dismissed*, 822 So.2d 1290 (Fla. 2002). Thus, in valuing the loss of a Doctor of Medicine (MD) degree, the appropriate measure of damage is the expected profits of that MD degree. Plaintiff "can recover

lost prospective profits regardless of whether [he] is established or has any 'track record.'" *W.W. Gay Mech. Contr. v. Wharfside Two*, 545 So. 2d 1348, 1351 (Fla. 1989).

Under Florida law, an educational degree is an independent measure of earning capacity. *See Walker v. Electronic Products Engineering Co.*, 248 So. 2d 161, 163 (Fla. 1971) (A "[c]riteria by which loss of earning capacity may be measured" is the "[e]ducation of claimant"); *see also Albanese v. Albanese*, 135 So. 3d 532, 534 (Fla. Dist. Ct. App. 2014) ("He has about three and a half years more to complete his pharmacy degree. Upon completion, his earning capacity will be greatly enhanced."); *Sharick v. Southeastern University*, 780 So. 2d 136, 140 (Fla. Dist. Ct. App. 2000) (Holding that an unlawfully dismissed medical student "must be afforded the opportunity to plead and prove damages in the form of the loss of earning capacity that would reasonably have resulted had he received his DO degree."). "The purpose of damages is to put the injured party in as good a position as he would have occupied had the contract been fully performed." *Ocean Comms. v. Bubeck*, 956 So. 2d 1222, 1225 (Fla. Dist. Ct. App. 2007).

"An award for loss of earning capacity is measured by the plaintiff's diminished ability to earn money in the future." *W.R. Grace & Co.-Conn. v. Pyke*, 661 So. 2d 1301, 1304 (Fla. Dist. Ct. App. 1995) (citing *Baggett v. Davis,* 169 So. 372 (Fla. 1936)). "The jury is not to be concerned with actual future loss of earnings, but with the loss of the power to earn." *Id.*

    iv. <u>The Proper Theory of Mitigating Damages.</u>

"The doctrine of avoidable consequences, which is also somewhat inaccurately identified as the 'duty to mitigate' damages, commonly applies in contract and tort actions." *System Components Corp. v. Florida Dept*, 14 So. 3d 967, 982 (Fla. 2009). "There is no actual 'duty to mitigate,' because the injured party is not compelled to undertake any ameliorative efforts." *Id.* "The doctrine does not permit damage reduction based on what 'could have been avoided' through Herculean efforts." *Id.* "Extraordinary efforts on the part of a plaintiff to mitigate are not required."

13

*Thompson v. Fla. Drum Co.*, 651 So.2d 180, 182 (Fla. 1st DCA 1995), *approved*, 668 So.2d 192 (Fla. 1996).

RUSM's incorrect theories of mitigating damages, grossly misstates Florida law. In *Sharick*, the court set forth that, for an unlawfully dismissed student, the potential to mitigate damages is to obtain the **same degree** at another institution. *See Sharick v. Southeastern University*, 780 So. 2d 136, 140 (Fla. Dist. Ct. App. 2000) (The "[student] must be afforded the opportunity to plead and prove damages in the form of the loss of earning capacity that would reasonably have resulted had he received his DO degree.... Alternatively, we recognize the potential for mitigation of damages ... for him to obtain a DO degree at another institution. In that event, the appropriate measure of damages would only be the reproduction cost of acquiring the degree elsewhere. This would include a calculation of the present value of his lost income during the time period needed to acquire the degree, coupled with the tuition and associated costs incurred at the new school."), *review granted*, 804 So.2d 330 (Fla. 2001), 805 So.2d 809 (Fla. 2002), *review dismissed*, 822 So.2d 1290 (Fla. 2002).

    v. <u>Plaintiff is Not Required to Pursue "Any Other Type of Educational Degree" or Any Other "Job Position" as a Matter of Law.</u>

As stated above, Plaintiff was not an employee to RUSM. And Plaintiff was not fired from a "job position." Perhaps equally important to both employment-based actions and contractual-based actions, "the unemployed or underemployed claimant need not go into another line of work, accept a demotion, or take a demeaning position." *Ford Motor Co. v. Equal Employment Opportunity Commission*, 458 U.S. 219, 231 (1982).

To the extent that RUSM contends that an unlawfully terminated person should go back to undergraduate school to earn credits in different prerequisite courses that "any other type" of graduate degree program may require of applicants, its contention is simply not founded in any

14

law — whether employment or contractual. In fact, the law suggests the contrary. *See Miller v. Marsh*, 766 F.2d 490, 491–493 (11th Cir. 1985) (Holding that an employee voluntarily removing oneself from the job market in order to attend law school constitutes a failure to mitigate. "Even if she were willing to leave law school in order to accept the job she was illegally denied, she still failed to mitigate her damages since she remained unavailable for any alternative employment."); *Picinich v. United Parcel Service*, 583 F. Supp. 2d 336, 341 (N.D.N.Y. 2008) (In an ADA case for front pay: "[N]o court has found that one must pursue an education in order to properly mitigate one's damages. Therefore, however ill-advised Picinich's decision to not enroll in college, it is not a proper consideration by this court in deciding whether Defendants have met their burden to show that Picinich failed to make reasonable efforts to mitigate his damages."), *affirmed*, 318 Fed. Appx. 34 (2d Cir. Mar. 31, 2009); *Equal Employment Opportunity Comm. v. Dresser Rand Co.*, 04-CV-6300 CJS., at *14 (W.D.N.Y. Aug. 11, 2011) ("[B]ecause [the expert's] opinion could well mislead a jury into thinking that [plaintiff] had an obligation to pursue additional education in order to mitigate his damages, it should be excluded pursuant to FRE 403."); *Dollar General Pa. v. Up., Ky.App*, 214 S.W.3d 910, 919 (Ky. Ct. App. 2007) ("We agree that the pursuit of an education is not sufficient to meet the duty to mitigate damages.").

## V.   CONCLUSION

WHEREFORE, Plaintiff respectfully requests that the Court enter an Order, (i) granting Plaintiff's Motion in Limine to Preclude Prejudicial Evidence and Theories; and (ii) granting Plaintiff such other and further relief as the Court deems just and proper.

DATED this 31st day of May, 2019:

Respectfully submitted,

_____
By: Oluwamuyiwa Awodiya, *pro se* litigant
15005 Dahlia Dr.
Bowie, MD 20721
(240) 602-1836
Plaintiff, in Proper Person

## CERTIFICATE OF CONFERRAL

Pursuant to Local Rule 7.1(a)(3)(A), I hereby certify that Plaintiff has conferred, telephonically, with all parties or non-parties who may be affected by the relief sought in this motion in a good faith effort to resolve the issues but has been unable to resolve the issues.

## CERTIFICATE OF SERVICE

I do hereby certify that on this 31st day of May, 2019, I have caused a true and correct copy of the foregoing by mailing a copy to the Court, where the Court's CM/ECF system will send notification to the following:

**Ryan Roman**
Akerman Senterfitt
Suntrust International Center
1 SE 3rd Avenue
25th Floor
Miami, FL 33131-1714
305-374-5600
Fax: 305-374-5095
Email:
ryan.roman@akerman.com

**Octavia Monique Green**
Akerman LLP
Three Brickell City Centre
98 Southeast Seventh Street
Suite 1100
Miami, FL 33131
(305) 982-5670
Email:
octavia.green@akerman.com

_____
By: Oluwamuyiwa Awodiya, *pro se* litigant