UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| | |
|---|---|
| OLUWAMUYIWA AWODIYA,<br>*Plaintiff,*<br><br>-v-<br><br>ROSS UNIVERSITY SCHOOL OF MEDICINE, SCHOOL OF VETERINARY MEDICINE LIMITED,<br>*Defendant.* | Case No.   0:18-cv-60482-RKA<br><br>Hon. Judge: Roy K. Altman<br>Magistrate Judge: Patrick M. Hunt |

**JOINT PRETRIAL STIPULATION**

The following pre-trial stipulation is submitted by plaintiff Oluwamuyiwa Awodiya ("Plaintiff") and defendant Ross University School of Medicine, School of Veterinary Medicine Limited ("Ross University" or "RUSM") pursuant to Rule 16 of the Federal Rules of Civil Procedure, Local Rule 16.1(e) of the Local Rules for the United States District Court for the Southern District of Florida, and this Court's Scheduling Order dated April 22, 2019 [ECF No. 180].

**I.   STATEMENT OF CASE**

    **A.   Plaintiff's Statement of Case**

Plaintiff enrolled in medical school at RUSM in May 2014. RUSM is a private, for-profit, postgraduate institution of higher education. RUSM operates a medical school that had campuses located on the island of Dominica and in Miramar, Florida during the relevant time period. The relevant time period of this case is between January 2016 through June 2017.

Plaintiff was diagnosed with Attention-Deficit/Hyperactivity Disorder ("ADHD") in December 2015 and was diagnosed with Obsessive Compulsive Disorder ("OCD") in April 2017.

1

49137045;1

After Plaintiff was diagnosed with ADHD, Plaintiff returned to RUSM's campus in Dominica in January 2016, and provided the Counseling Center with an assessment by a doctor in the United States diagnosing him with ADHD. RUSM administration knew of Plaintiff's desire or obvious need for examination accommodations for his ADHD and OCD. In June 2017, RUSM administration made its final decision to dismiss Plaintiff for failure to pass an examination that he took five times without any accommodations for his disabilities. Thus, Plaintiff never had a meaningful attempt to pass the examination. RUSM discriminated against Plaintiff by failing to provide an examination accommodation for his disabilities.

RUSM also fraudulently induced prospective students into enrolling at the university. RUSM advertised a false statement or omitted a material fact about the statement that was published in the Admissions Requirements section of its website. RUSM misrepresented that it was the policy of the university, for the university to comply with the American with Disabilities Act (ADA) in Dominica. The published statement in the Admissions Requirements section of its website reads:

> It is the policy and practice of the University to comply with the Americans with Disabilities Act as applicable and practical in Dominica.

The Rehabilitation Act and Title III of the ADA are governed by the same standards. These antidiscrimination statutes have an extraterritorial effect on the foreign conduct of institutions outside of the United States. This applies to institutions as defined by the antidiscrimination statutes.

RUSM administration testified that the university does not require its employees and faculties to comply with the ADA and the Rehabilitation Act. RUSM administration further

testified that RUSM faculty was not provided with "any guidance," "any policy" or "any rules" on how to comply with requests for accommodations.

Plaintiff took his examinations in both Dominica and the United States. RUSM administration at both its Dominica campus and Miramar, Florida campus, failed to provide Plaintiff with examination accommodations for his disabilities on all his examinations, including the National Board of Medical Examiners Comprehensive Basic Science Exam ("NBME CBSE") (an examination that RUSM orders from the NBME).

### B.     Defendant's Statement of Case

Ross University is a medical school that was located on the island of Dominica during the relevant time period.  Plaintiff is a former Ross University medical student.  Plaintiff attended Ross University in Dominica from May 2014 until his dismissal from the university.

Plaintiff performed poorly during his first five semesters at Ross University.  During Plaintiff's fifth semester at Ross University, Plaintiff struggled with emotional distress due to a relationship break-up with a female student who was unfaithful, as well as familial issues and general loneliness.  This substantially impacted his academics.

In December 2015, Plaintiff failed his fifth semester.  After learning of this, Plaintiff suffered from thoughts of self-harm and visited Ross University's counseling center to seek assistance.  Due to his emotional distress and suicidal thoughts, Ross University sought to help Plaintiff return home to the United States early for winter break.  In order to facilitate this process, Plaintiff executed a Release of Information Consent form to allow his counselors to speak with Ross University's administration.  Prior to and during December 2015, neither Ross University nor Plaintiff knew that Plaintiff suffered from any impairment or disability.  In January 2016, Plaintiff was diagnosed with attention deficit hyperactivity disorder ("ADHD") by Ross University's counseling center.

Plaintiff's claims are premised largely on a purported failure by Ross University to accommodate Plaintiff's disabilities. However, despite receiving an ADHD diagnosis, Plaintiff never applied for an accommodation with the Accommodations' Coordinator at Ross University. Ross University, through its Student Handbook, has a policy for how students must apply for an accommodation. This policy includes providing a written request to the Accommodations' Office. It is undisputed the Plaintiff failed to submit the required paperwork for an academic accommodation.

Plaintiff contends that his counselors, having knowledge of his ADHD diagnosis, should have spoken with the Accommodations' Coordinator on his behalf. Plaintiff also contends that the Release of Information Consent form signed in December 2015, before there was any diagnosis, gave his counselors permission to speak with the Accommodations' Coordinator on his behalf. Though the Release of Information Consent form does give the counselors the ability to release Plaintiff's medical information, this would not occur until Plaintiff or the Accommodations' Coordinator notified the counseling center of Plaintiff's application for accommodations. The counseling center never received a request to release Plaintiff's medical records to the Accommodations' Coordinator for purposes of obtaining an accommodation.

All events pertaining to Plaintiff's counseling sessions with the Ross University Counseling Center and Plaintiff's purported request for an accommodation took place in Dominica, not the United States. The relevant portions of the Americans with Disabilities Act and the Rehabilitation Act only apply to conduct in the United States.

Following passage of their fifth semester, students are required to take and pass the National Board of Medical Examiner's Comprehensive Basic Science Exam ("CBSE"). Plaintiff attempted the CBSE on five different occasions and never obtained the minimum required passing

4

score. Following his fourth attempt, Plaintiff was dismissed from Ross University. On appeal, Ross University reinstated Plaintiff, allowing him to attempt the CBSE for a fifth time. However, Plaintiff failed the CBSE again on his fifth try and he was then dismissed from Ross University. Plaintiff contends that he was wrongfully dismissed from Ross University. However, Ross University dismissed Plaintiff only after Plaintiff failed to meet the necessary requirements of passing the CBSE after five attempts. Plaintiff appealed Ross University's decision to dismiss him to the Dean, who upheld the decision.

Plaintiff contends that Ross University, through a statement made on its website, misrepresented a practice of the university to comply with the Americans with Disabilities Act. Ross University's website contained the following statement, which is accurate and does not give rise to any actionable claim for misrepresentation:

> "It is the policy and practice of the University to comply with the Americans with Disabilities Act as applicable and practical in Dominica. No qualified individual with a disability will be denied access to or participation in services, programs, or activities of Ross University School of Medicine."

Plaintiff has presented no evidence to establish that the statement made by Ross University is untrue nor could he. The alleged conduct in this matter took place in Dominica. The relevant portions of the Americans with Disabilities Act and the Rehabilitation Act do not apply to conduct in Dominica. Nonetheless, the evidence shows that Ross University—to the extent practical and applicable—did seek to accommodate students with disabilities. Plaintiff simply did not apply for an accommodation. Thus, his failure to accommodate claims and supplemental state law claims must fail.

## II.   BASIS OF FEDERAL JURISDICTION

Pursuant to 28 U.S.C. § 1331, this Court has subject matter jurisdiction over Plaintiff's claims arising under 29 U.S.C. § 794 and 42 U.S.C. § 12101, et. seq., Second this Court has

supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367. Finally, this Court also has diversity jurisdiction over the parties pursuant to 28 U.S.C. § 1332 because there is a complete diversity of citizenship and the matter in controversy exceeds the value of $75,000.

### III. PLEADINGS

1. Plaintiff's Third Amended Complaint [ECF No. 47]; and
2. Defendant's Answer and Affirmative Defenses [ECF No. 58].

### IV. LIST OF PENDING MOTIONS

1. Defendant's Motion in Limine to Exclude New Theories of Liability [ECF No. 160];
2. Plaintiff's Motion for Order to Designate Method of Damage Calculation [ECF No. 165];
3. The Court's May 16, 2019 Order [ECF No. 191] requesting briefing from the parties regarding the extraterritorial application of the Americans with Disabilities Act and the Rehabilitation Act; and
4. Plaintiff's Motion in Limine to Preclude Prejudicial Evidence and Theories [ECF No. 194].

### V. UNCONTESTED FACTS

#### A. Stipulated Facts

1. Plaintiff is a former medical school student at Ross University School of Medicine.
2. Plaintiff enrolled in medical school at Ross University in May 2014.
3. Plaintiff was dismissed for failing to pass the NBME CBSE.
4. RUSM, not the NBME, is the entity that determines whether its students require accommodations to a disability when taking the NBME CBSE.

5. Extended testing time for the NBME CBSE is a reasonable accommodation for some disabled students that need extended testing time.

6. RUSM did not provide Plaintiff with extended testing time for the NBME CBSE.

7. Plaintiff did not have any accommodations for his ADHD on his first NBME CBSE attempt.

8. Plaintiff did not have any accommodations for his ADHD on his second NBME CBSE attempt.

9. Plaintiff did not have any accommodations for his ADHD on his third NBME CBSE attempt.

10. Plaintiff did not have any accommodations for his ADHD on his fourth NBME CBSE attempt.

11. Plaintiff did not have any accommodations for his ADHD on his fifth NBME CBSE attempt.

12. RUSM published the following statement in the Admissions Requirements section of its website: "It is the policy and practice of the University to comply with the Americans with Disabilities Act as applicable and practical in Dominica."

13. RUSM published information for prospective students on its website, including in the Admissions Requirements section.

## VI. ISSUES OF FACT FOR DETERMINATION AT TRIAL

The parties state that neither of the parties waives the right to challenge the relevancy of any issue of fact contained on this list.

### A. Plaintiff's Proposed Stated Issues of Fact for Determination at Trial

1. Whether Plaintiff had a disability.

2. Whether RUSM administration knew that Plaintiff had a disability.

7

49137045;1

3. Whether RUSM administration knew of Plaintiff's desire for examination accommodations.

4. Whether Plaintiff's need for an examination accommodation was obvious.

5. Whether Plaintiff was an "otherwise qualified" individual to participate in the examinations.

6. Whether RUSM failed to provide a necessary examination accommodation with deliberate indifference.

7. The amount of money, with the Doctor of Medicine (MD) degree, that Mr. Awodiya would have had the power to earn per year.

8. The amount of money, without the Doctor of Medicine (MD) degree, that Mr. Awodiya has the power to earn per year.

9. The remaining number of years Mr. Awodiya is expected to work in his lifetime.

10. The interest rate reflecting the safest available investment that Mr. Awodiya could make.

11. The rate of wage increase, that will affect all individuals of society.

12. The amount of money Plaintiff should recover for emotional pain and mental anguish.

13. Whether RUSM advertised a false statement regarding a material fact or that RUSM omitted a material fact about the statement.

14. Whether RUSM knew the statement was false when it made it or made the statement knowing it did not know whether it was true or false.

15. Whether RUSM intended that prospective students would rely on the statement.

16. Whether Plaintiff relied on the statement.

17. Whether there was consequent injury to Plaintiff acting in reliance on the statement.

18. The amount of punitive damages as a result of fraud in the inducement.

**B.     Defendant's Proposed Stated Issues of Fact for Determination at Trial**

1. Whether Plaintiff met with Matthew Stewart-Fulton about an accommodation.

2. Whether Plaintiff applied for an accommodation.

3. Whether Plaintiff started attending the Ross University counseling center during his fifth semester of medical school for emotional distress resulting from a relationship with a female student.

4. Whether Plaintiff's emotional distress contributed to his academic struggles during his fifth semester of medical school.

5. Whether Ross University knew of Plaintiff's OCD diagnosis (and whether such a diagnosis had been made) at the time it dismissed Plaintiff from the university.

6. Whether Plaintiff requested an accommodation on the United States Medical Licensing Examination ("USMLE") Step 1 Exam.

7. Whether Plaintiff relied on any statement published on Ross University's website when applying for admissions.

8. Whether any statement published on Ross University's website that Plaintiff purports to have relied on was actually false.

9. If Ross University is found to be liable for failure to provide a reasonable accommodation, the total amount of damages to which Plaintiff is entitled.

10. Whether Plaintiff took any actions to mitigate his damages.

11. Whether Plaintiff struggled with emotional distress issues during his fifth semester in medical school.

12. Whether Plaintiff struggled with suicidal ideations in December 2015.

13. Whether Plaintiff signed the Release of Information Consent form to allow the counseling center to make arrangements with Ross University's administration about having Plaintiff return home earlier to the United States due to Plaintiff's suicidal ideations.

14. Whether Plaintiff attended Ross University's counseling center in December 2015 for his emotional distress issues and suicidal thoughts.

15. Whether Plaintiff continued seeking treatment from Ross University's counseling center in January 2016.

16. Whether Plaintiff continued seeking treatment from Ross University's counseling center during the time he was in Dominica.

17. Whether Ross University diagnosed Plaintiff with OCD.

18. Whether Ross University issued its Student Handbook and its Academic Catalog to Plaintiff while he attended Ross University.

19. Whether Plaintiff completed the requirements necessary to receive his Doctor of Medicine (MD) degree.

20. Whether successfully passed the NBME CBSE exam.

21. Whether Plaintiff was dismissed from Ross University for failure to pass the NBME CBSE exam in October 2016.

22. Whether Ross University reinstated Plaintiff in December 2016.

23. Whether Ross University dismissed Plaintiff for failure to pass his fifth attempt at the NBME CBSE in April 2017.

24. Whether Ross University was justified in dismissing Plaintiff in June 2017.

25. Whether Dean Owen was justified in upholding Plaintiff's dismissal from Ross University.

26.     Whether Ross University offered Plaintiff reinstatement on October 31, 2018.

## VII.    STIPULATED ISSUES OF LAW

1.      "In the context of postsecondary education, an otherwise qualified individual is a person who is able to meet the academic and technical standards requisite to admission or participation in the education program or activity." *Zainulabeddin v. Univ. of S. Fla. Bd. of Trs.*, No. 17-11888, at *10 (11th Cir. Sep. 5, 2018); *accord* 34 C.F.R. § 104.3(l)(3).

## VIII.   ISSUES OF LAW FOR DETERMINATION AT TRIAL

The parties state that neither of the parties waives the right to challenge the relevancy of any issue of law contained on this list.

### A.     Plaintiff's Proposed Issues of Law for Determination at Trial

1.      Whether the Rehabilitation Act and Title III of the ADA have an extraterritorial effect on institutions outside of the United States. 29 U.S.C. § 705(23); 20 U.S.C. §§ 1002(a)(2), (a)(1)(C); 42 U.S.C. §§ 12181(1)(B), (7), (7)(J); 34 C.F.R. § 600.51(c)(1); 34 C.F.R. § 601.2(b); 20 U.S.C. § 1019(2); 34 C.F.R. § 668.14(b)(1); 20 U.S.C. § 1011; *see also RJR Nabisco, Inc. v. European Cmty.*, 136 S. Ct. 2090, 2103–04 (2016) ("[T]here is a clear indication at step one that [a statute] applies extraterritorially. We therefore do not proceed to the 'focus' step…. [S]o we do not need to determine which transnational (or wholly foreign) patterns of [conduct] it applies to; it applies to all of them, regardless of whether they are connected to a 'foreign' or 'domestic' enterprise."); *Comparelli v. Republica Bolivariana De Venez., , S.A., an Agency Or Instrumentality of the Bolivarian Republic of Venez., Int'l Petrochemical Sales, Ltd.*, 891 F.3d 1311, 1324 (11th Cir. 2018) ("That nexus requirement was enough to rebut the presumption against extraterritoriality in RJR Nabisco, and we hold that the nexus requirement of [a statute] similarly rebuts that presumption here.").

2. Whether standards from Title I of the ADA, pertaining to employment, apply to cases brought under Title III of the ADA. *See Enyart v. National Conference*, 630 F.3d 1153, 1162 (9th Cir. 2011) ("The text of these other ADA provisions does not resolve the ambiguity in § 12189's use of term 'accessible' because an examination is not equivalent to a physical space.").

3. Whether Plaintiff had a disability. *See* 28 CFR §§ 36.105(d)(2)(ii), (iii)(K) ("Given their inherent nature, these types of impairments will, as a factual matter, virtually always be found to impose a substantial limitation on a major life activity…. [O]bsessive compulsive disorder … substantially limits brain function.").

4. Whether "in cases alleging a failure to make reasonable accommodations, the defendant's duty to provide a reasonable accommodation is not triggered until the plaintiff makes a specific demand for an accommodation or the need for an accommodation becomes obvious." *Alvey v. Gualtieri*, Case No. 8:15-cv-1861-T-33AEP, at *16 (M.D. Fla. Nov. 7, 2016).

5. Whether under the Rehabilitation Act and the ADA, "there is no rule that a 'specific demand' must be one that follows the written policy or procedures in place." *Awodiya v. Ross University School of Medicine*, Case No. 18-6042, (S.D. Fla. 2018), *Omnibus Order on Motions for Summary Judgment*, ECF No. 154, at *9.

6. Whether plaintiff "need only show that an 'accommodation' seems reasonable on its face, *i.e.*, ordinarily or in the run of cases.'" *Alumni Cruises, LLC v. Carnival Corp.*, 987 F. Supp. 2d 1290, 1305 (S.D. Fla. 2013) (quoting *U.S. Airways, Inc. v. Barnett*, 535 U.S. 391, 402, 122 S.Ct. 1516, 152 L.Ed.2d 589 (2002)).

7. Whether "plaintiff satisfies 'burden of production' by showing [a] 'plausible accommodation.'" *Id.* (quoting *Barnett*, 535 U.S. 391).

8. Whether Plaintiff only needs to prove that he was "otherwise qualified" to participate when RUSM had knowledge of Plaintiff's desire or need for, and failed to provide, an examination accommodation for his disability. *See Redding v. Nova Se. Univ., Inc.*, 165 F. Supp. 3d 1274, 1294–95 (S.D. Fla. 2015).

9. Whether "punitive damages are appropriate for any tortious conduct accomplished through fraud." *First Interstate Dev. v. Ablanedo*, 511 So. 2d 536, 539 (Fla. 1987).

10. Whether "only a preponderance or greater weight of the evidence is required to establish fraud, whether the action is at law or in equity." *Wieczoreck v. H Builders, Inc.*, 475 So. 2d 227, 228 (Fla. 1985).

### B. Defendant's Proposed Stated Issues of Law for Determination at Trial

1. Whether Plaintiff can prove his claims under Title III of the ADA and/or Section 504 of the Rehabilitation Act by proving each of the following elements: that he (i) has a disability; (ii) is a "qualified individual"; and (iii) was discriminated against because of his disability by failing to receive an accommodation. *Hetherington v. Wal-Mart, Inc.*, 511 Fed. Appx. 909, 912 (11th Cir. 2013).

2. Whether Plaintiff made an actionable request for accommodation under the ADA and Rehabilitation Act. *Gaston v. Bellingrath Gardens & Home, Inc.*, 167 F.3d 1361, 1363 (11th Cir. 1999).

3. Whether Plaintiff was "otherwise qualified" as defined by the ADA and Rehabilitation Act. 42 U.S.C. § 12131(2).

4. Whether "the term 'technical standards' refer to all nonacademic admission criteria that are essential to participation in the program in question." *Southeastern Community College v. Davis*, 442 U.S. 397, 404 (1979) (quoting an explanatory note to the original regulations); 34 C.F.R. § 104, App. A at 374.

13

5. Whether Plaintiff can show that, with or without reasonable accommodation, he was able to meet the essential eligibility requirements for the participation in Ross University's academic program.  42 U.S.C. § 12131(2).

6. Whether Plaintiff can show that a specific demand for an accommodation has been made.  *Gaston v. Bellingrath Gardens & Home, Inc.,* 167 F.3d 1361, 1363 (11th Cir. 1999).

7. Whether Plaintiff can establish each of the elements of a fraudulent inducement claim under Florida law, to wit: (i) the defendant made a misrepresentation material fact; (ii) the defendant knew or should have known of the falsity of the statement; (iii) the defendant intended for the representation to induce plaintiff to rely on it and act on it; and (iv) the plaintiff suffered injury in justifiable reliance on the representation.  *Biscayne Inv. Group, Ltd. v. Guarantee Management Servs., Inc*. 903 So. 2d 251 (Fla. Dist. Ct. App. 2005).

8. Whether the ADA and the Rehabilitation Act applies to conduct performed in Dominica.  *See Archut v. Ross Univ. Sch. of Veterinary Med.*, Civil Action no. 10-1681 (MLC), 2012 WL 5867148, at *4 (D.N.J. Nov. 19, 2012).

9. Whether Plaintiff can establish each of the elements of a negligent misrepresentation claim under Florida law, to wit: (i) the defendant made a misrepresentation of material fact that he believed to be true but which was in fact false; (ii) the defendant was negligent in making the statement because he should have known the representation was false; (iii) the defendant intended to induce the plaintiff to rely on the misrepresentation; and (iv) injury resulted to the plaintiff acting in justifiable reliance upon the misrepresentation.  *Simon v. Celebration Co.,* 883 So. 2d 826, 832 (Fla. Dist. Ct. App. 2004).

10. Whether there is sufficient evidence of a false statement to maintain Plaintiff's negligent misrepresentation and fraudulent inducement claims. *Checkers Drive-In Restaurants, Inc. v. Tampa Checkmate Food Servs., Inc.*, 805 So. 2d 941, 944 (Fla. Dist. Ct. App. 2001).

11. Whether there is sufficient evidence that Ross University intended to induce Plaintiff to rely on a false statement to maintain Plaintiff's negligent misrepresentation and fraudulent inducement claims. *Tambourine Comerico Int'l S.A. v. Solowsky*, No. 06-20682 Civ, 2007 WL 689466, at *6 (S.D. Fla. Mar. 4, 2007).

12. Whether there is sufficient evidence the Plaintiff justifiably relied on a false statement to maintain Plaintiff's negligent misrepresentation and fraudulent inducement claims. *Tambourine Comerico Int'l S.A. v. Solowsky*, No. 06-20682 Civ, 2007 WL 689466, at *6 (S.D. Fla. Mar. 4, 2007).

13. Whether there is sufficient evidence to support Plaintiff's claims for lost earning capacity.

14. Whether Plaintiff can opine that he is unable to become a doctor or find equally lucrative alternative work. Fed. R. Evid. 702.

15. Whether there is sufficient evidence of intentional or grossly negligent conduct to maintain Plaintiff's claim for punitive damages. Fla. Stat. § 768.72(2).

16. Whether Plaintiff can seek monetary damages under the ADA. *Jairath v. Dyer*, 154 F.3d 1280, 1283-1284 (11th Cir. 1998).

**IX. TRIAL EXHIBITS**

See attached. Plaintiff's Exhibit List is attached as Exhibit 1 and Defendant's Exhibit List is attached as Exhibit 2. For their objections, the parties are using the following abbreviations:

> A- Authenticity
> I- Contains inadmissible matter
> R- Relevancy

    H- Hearsay
    UP- Unduly prejudicial
    P- Privileged
    F- Foundation
    C- Completeness
    Rule 26/Rule 37- Failure to Disclose

**X. TRIAL WITNESSES**

See attached. Plaintiff's Witness List is attached as Exhibit 3 and Defendant's Witness List is attached as Exhibit 4.

**XI. ESTIMATED TRIAL TIME**

It is estimated that the trial of this case will take approximately five (5) days.

**XII. ESTIMATE OF EACH PARTY'S ATTORNEYS' FEES**

Plaintiff is proceeding *pro se* and is not represented by counsel.

Ross University estimates that its attorneys' fees through trial will be approximately $800,000.00