# Exhibit A

## PLAINTIFF'S REQUESTED JURY INSTRUCTION NO. 1

### Preliminary Instructions Before Trial

Members of the Jury:

Now that you've been sworn, I need to explain some basic principles about a civil trial and your duty as jurors. These are preliminary instructions. I'll give you more detailed instructions at the end of the trial.

The jury's duty:

It's your duty to listen to the evidence, decide what happened, and apply the law to the facts. It's my job to provide you with the law you must apply – and you must follow the law even if you disagree with it.

What is evidence:

You must decide the case on only the evidence presented in the courtroom. Evidence comes in many forms. It can be testimony about what someone saw, heard, or smelled. It can be an exhibit or a photograph. It can be someone's opinion.

Some evidence may prove a fact indirectly. Let's say a witness saw wet grass outside and people walking into the courthouse carrying wet umbrellas. This may be indirect evidence that it rained, even though the witness didn't personally see it rain. Indirect evidence like this is also called "circumstantial evidence" – simply a chain of circumstances that likely proves a fact.

As far as the law is concerned, it makes no difference whether evidence is direct or indirect. You may choose to believe or disbelieve either kind. Your job is to give each piece of evidence whatever weight you think it deserves.

What is not evidence:

During the trial, you'll hear certain things that are not evidence and you must not consider them.

First, the lawyers' statements and arguments aren't evidence. In their opening statements and closing arguments, the lawyers will discuss the case. Their remarks may help you follow each side's arguments and presentation of evidence. But the remarks themselves aren't evidence and shouldn't play a role in your deliberations.

Second, the lawyers' questions and objections aren't evidence. Only the witnesses' answers are evidence. Don't decide that something is true just because a lawyer's question suggests that it is. For example, a lawyer may ask a witness, "You saw Mr. Jones hit his sister, didn't you?" That question is not evidence of what the witness saw or what Mr. Jones did – unless the witness agrees with it.

There are rules of evidence that control what the court can receive into evidence. When a lawyer asks a witness a question or presents an exhibit, the opposing lawyer may object if he thinks the rules of evidence don't permit it. If I overrule the objection, then the witness may answer the question or the court may receive the exhibit. If I sustain the objection, then the witness cannot answer the question, and the court cannot receive the exhibit. When I sustain an objection to a question, you must ignore the question and not guess what the answer might have been.

Sometimes I may disallow evidence – this is also called "striking" evidence – and order you to disregard or ignore it. That means that you must not consider that evidence when you are deciding the case.

I may allow some evidence for only a limited purpose. When I instruct you that I have admitted an item of evidence for a limited purpose, you must consider it for only that purpose and no other.

Credibility of witnesses:

To reach a verdict, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, part of it, or none of it. When considering a witness's testimony, you may take into account:

- the witness's opportunity and ability to see, hear, or know the things the witness is testifying about;
- the witness's memory;
- the witness's manner while testifying;
- any interest the witness has in the outcome of the case;
- any bias or prejudice the witness may have;
- any other evidence that contradicts the witness's testimony;
- the reasonableness of the witness's testimony in light of all the evidence; and
- any other factors affecting believability.

At the end of the trial, I'll give you additional guidelines for determining a witness's credibility.

Description of the case:

This is a civil case. To help you follow the evidence, I'll summarize the Parties' positions. The plaintiff, Oluwamuyiwa Awodiya, claims the defendant, Ross University School of Medicine, discriminated against him by failing to provide an examination accommodation for his Attention-Deficit/Hyperactivity Disorder ("ADHD"), "Anxiety" and/or Obsessive Compulsive Disorder ("OCD").

Ross University denies Mr. Awodiya's claims and contends that Mr. Awodiya was not an otherwise qualified individual with or without a reasonable accommodation.

Mr. Awodiya also claims that Ross University fraudulently induced prospective students into enrolling at the university. Mr. Awodiya claims that Ross University advertised a false statement or omitted a material fact about the statement that was published in the Admissions

Requirements section of its website. Specifically, Mr. Awodiya claims that Ross University misrepresented that it was the policy of the university, for the university to comply with the American with Disabilities Act (ADA) in Dominica.

Burden of proof:

Mr. Awodiya has the burden of proving his case by what the law calls a "preponderance of the evidence." That means Mr. Awodiya must prove that, in light of all the evidence, what he claims is more likely true than not. So, if you could put the evidence favoring Mr. Awodiya and the evidence favoring Ross University on opposite sides of balancing scales, Mr. Awodiya needs to make the scales tip to his side. If Mr. Awodiya fails to meet this burden, you must find in favor of Ross University.

To decide whether any fact has been proved by a preponderance of the evidence, you may – unless I instruct you otherwise – consider the testimony of all witnesses, regardless of who called them, and all exhibits that the court allowed, regardless of who produced them. After considering all the evidence, if you decide a claim or fact is more likely true than not, then the claim or fact has been proved by a preponderance of the evidence.

When more than one claim is involved, you should consider each claim separately.

On certain issues, called "affirmative defenses," Ross University has the burden of proving the elements of a defense by a preponderance of the evidence. I'll instruct you on the facts Ross University must prove for any affirmative defense. After considering all the evidence, if you decide that Ross University has successfully proven that the required facts are more likely true than not, the affirmative defense is proved.

Conduct of the jury:

While serving on the jury, you may not talk with anyone about anything related to the case. You may tell people that you're a juror and give them information about when you must be in court. But you must not discuss anything about the case itself with anyone.

You shouldn't even talk about the case with each other until you begin your deliberations. You want to make sure you've heard everything – all the evidence, the lawyers' closing arguments, and my instructions on the law – before you begin deliberating. You should keep an open mind until the end of the trial. Premature discussions may lead to a premature decision.

In this age of technology, I want to emphasize that in addition to not talking face-to-face with anyone about the case, you must not communicate with anyone about the case by any other means. This includes e-mails, text messages, and the Internet, including social-networking websites such as Facebook, Instagram, and Twitter.

You also should not Google or search online or offline for any information about the case, the parties, or the law. Do not read or listen to the news about this case, visit any places related to this case, or research any fact, issue, or law related to this case. The law forbids the jurors to talk with anyone else about the case and forbids anyone else to talk to the jurors about it. It is very important that you understand why these rules exist and why they are so important. You must base

your decision only on the testimony and other evidence presented in the courtroom. It is not fair to the parties if you base your decision in any way on information you acquire outside the courtroom. For example, the law often uses words and phrases in special ways, so it is important that any definitions you hear come only from me and not from any other source. Only you jurors can decide a verdict in this case. The law sees only you as fair, and only you have promised to be fair – no one else is so qualified.

Taking notes:

If you wish, you may take notes to help you remember what the witnesses said. If you do take notes, please do not share them with anyone until you go to the jury room to decide the case. Do not let note-taking distract you from carefully listening to and observing the witnesses. When you leave the courtroom, you should leave your notes hidden from view in the jury room.

Whether or not you take notes, you should rely on your own memory of the testimony. Your notes are there only to help your memory. They are not entitled to greater weight than your memory or impression about the testimony.

Course of the trial:

Let's walk through the trial. First, each side may make an opening statement, but they do not have to. Remember, an opening statement is not evidence, and it's not supposed to be argumentative; it's just an outline of what that party intends to prove.

Next, Mr. Awodiya will present his witnesses and ask them questions. After Mr. Awodiya questions the witness, Ross University may ask the witness questions – this is called "cross-examining" the witness. Then Ross University will present its witnesses, and Mr. Awodiya may cross-examine them. You should base your decision on all the evidence, regardless of which party presented it.

After all the evidence is in, the parties' lawyers will present their closing arguments to summarize and interpret the evidence for you, and then I'll give you instructions on the law.

**Authorities**: Eleventh Circuit Civil Pattern Jury Instructions 1.1 (2019).

Granted:                              _____

Granted as Modified:                 _____

Denied:                              _____

4

49121024;5

### DEFENDANT'S REQUESTED JURY INSTRUCTION NO. 1
### PRELIMINARY INSTRUCTIONS BEFORE TRIAL

Ladies and Gentlemen:

Now that you've been sworn, I need to explain some basic principles about a civil trial and your duty as jurors. These are preliminary instructions. I'll give you more detailed instructions at the end of the trial.

The jury's duty:

It's your duty to listen to the evidence, decide what happened, and apply the law to the facts. It's my job to provide you with the law you must apply – and you must follow the law even if you disagree with it.

What is evidence:

You must decide the case on only the evidence presented in the courtroom. Evidence comes in many forms. It can be testimony about what someone saw, heard, or smelled. It can be an exhibit or a photograph. It can be someone's opinion.

Some evidence may prove a fact indirectly. Let's say a witness saw wet grass outside and people walking into the courthouse carrying wet umbrellas. This may be indirect evidence that it rained, even though the witness didn't personally see it rain. Indirect evidence like this is also called "circumstantial evidence" – simply a chain of circumstances that likely proves a fact.

As far as the law is concerned, it makes no difference whether evidence is direct or indirect. You may choose to believe or disbelieve either kind. Your job is to give each piece of evidence whatever weight you think it deserves.

What is not evidence:

During the trial, you'll hear certain things that are not evidence and you must not consider them.

First, the parties' statements and arguments aren't evidence except if Mr. Awodiya takes the witness stand and testifies under oath. In their opening statements and closing arguments, the parties will discuss the case. Their remarks may help you follow each side's arguments and presentation of evidence. But the remarks themselves aren't evidence and shouldn't play a role in your deliberations.

Second, the parties' questions and objections aren't evidence. Only the witnesses' answers are evidence. Don't decide that something is true just because a party's question suggests that it is. For example, a lawyer may ask a witness, "You saw Mr. Jones hit his sister, didn't you?" That question is not evidence of what the witness saw or what Mr. Jones did – unless the witness agrees with it.

There are rules of evidence that control what the court can receive into evidence. When a party asks a witness a question or presents an exhibit, the opposing party may object if he thinks the rules of evidence don't permit it. If I overrule the objection, then the witness may answer the question or the court may receive the exhibit. If I sustain the objection, then the witness cannot answer the question, and the court cannot receive the exhibit. When I sustain an objection to a question, you must ignore the question and not guess what the answer might have been.

Sometimes I may disallow evidence – this is also called "striking" evidence – and order you to disregard or ignore it. That means that you must not consider that evidence when you are deciding the case.

I may allow some evidence for only a limited purpose. When I instruct you that I have admitted an item of evidence for a limited purpose, you must consider it for only that purpose and no other.

<u>Credibility of witnesses:</u>

To reach a verdict, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, part of it, or none of it. When considering a witness's testimony, you may take into account:

· the witness's opportunity and ability to see, hear, or know the things the witness is testifying about;

· the witness's memory;

· the witness's manner while testifying;

· any interest the witness has in the outcome of the case;

· any bias or prejudice the witness may have;

· any other evidence that contradicts the witness's testimony;

· the reasonableness of the witness's testimony in light of all the evidence; and

· any other factors affecting believability.

At the end of the trial, I'll give you additional guidelines for determining a witness's credibility.

This is a civil case. To help you follow the evidence, I'll summarize the Parties' positions. In particular, this dispute stems from plaintiff's dismissal from medical school. The plaintiff in this matter is Oluwamuyiwa Awodiya.  The defendant is Ross University School of Medicine.

In 2014, Mr. Awodiya enrolled in Ross University as a medical student and attended the university until his dismissal.  During his fifth semester, Mr. Awodiya started struggling with

emotional distress issues stemming from a relationship with a romantic partner.  Mr. Awodiya failed his fifth semester, ultimately leading him to exhibit suicidal thoughts.

On January 18, 2016, Mr. Awodiya was diagnosed with "Attention Deficit Disorder Without Mention of Hyperactivity."  On February 17, 2016, Mr. Awodiya was diagnosed with "Anxiety Stated, Unspecified."   Despite having these diagnoses, Mr. Awodiya never submitted information regarding his diagnosis or information pertaining to the impact of his diagnoses to Ross University's accommodations office.

Mr. Awodiya was dismissed from Ross University because of his failure to meet certain academic requirements.  Ross University denies Mr. Awodiya's claims and contends that: i) Mr. Awodiya failed to formally apply for an accommodation; ii) Mr. Awodiya was not a "qualified individual" as required under the Americans with Disabilities Act and the Rehabilitation Act; and iii) the ADA and the Rehabilitation Act do not apply extraterritorially to conduct in Dominica.

At the time of his enrollment, Mr. Awodiya also claims that he relied on a representation made my Ross University on its website in making his decision to enroll into the school. Specifically, Mr. Awodiya alleges that Ross University's claim that it complies with the ADA in Dominica as applicable and practical was false and he justifiably relied on such statement in making a decision to attend medical school in Dominica.  Ross University contends that the statement is not false and that Mr. Awodiya did not rely on the statement at the time that he applied to Ross University.  Furthermore, as previously mentioned, Ross University contends that the ADA and the Rehabilitation Act do not apply extraterritorially to conduct performed in Dominica.

Burden of proof:

Mr. Awodiya has the burden of proving his case by what the law calls a "preponderance of the evidence." That means Mr. Awodiya must prove that, in light of all the evidence, what he claims is more likely true than not. So, if you could put the evidence favoring Mr. Awodiya and the evidence favoring Ross University on opposite sides of balancing scales, Mr. Awodiya needs to make the scales tip to his side. If Mr. Awodiya fails to meet this burden, you must find in favor of Ross University.

To decide whether any fact has been proved by a preponderance of the evidence, you may – unless I instruct you otherwise – consider the testimony of all witnesses, regardless of who called them, and all exhibits that the court allowed, regardless of who produced them. After considering all the evidence, if you decide a claim or fact is more likely true than not, then the claim or fact has been proved by a preponderance of the evidence.

When more than one claim is involved, you should consider each claim separately.

On certain issues, called "affirmative defenses," Ross University has the burden of proving the elements of a defense by a preponderance of the evidence. I'll instruct you on the facts Ross University must prove for any affirmative defense. After considering all the evidence, if you decide that Ross University has successfully proven that the required facts are more likely true than not, the affirmative defense is proved.

49121024;5

<u>Conduct of the jury:</u>

While serving on the jury, you may not talk with anyone about anything related to the case. You may tell people that you're a juror and give them information about when you must be in court. But you must not discuss anything about the case itself with anyone.

You shouldn't even talk about the case with each other until you begin your deliberations. You want to make sure you've heard everything – all the evidence, the parties' closing arguments, and my instructions on the law – before you begin deliberating. You should keep an open mind until the end of the trial. Premature discussions may lead to a premature decision.

In this age of technology, I want to emphasize that in addition to not talking face-to-face with anyone about the case, you must not communicate with anyone about the case by any other means. This includes e-mails, text messages, and the Internet, including social-networking websites such as Facebook, Instagram, and Twitter.

You also should not Google or search online or offline for any information about the case, the parties, or the law. Do not read or listen to the news about this case, visit any places related to this case, or research any fact, issue, or law related to this case. The law forbids the jurors to talk with anyone else about the case and forbids anyone else to talk to the jurors about it. It is very important that you understand why these rules exist and why they are so important. You must base your decision only on the testimony and other evidence presented in the courtroom. It is not fair to the parties if you base your decision in any way on information you acquire outside the courtroom. For example, the law often uses words and phrases in special ways, so it is important that any definitions you hear come only from me and not from any other source. Only you jurors can decide a verdict in this case. The law sees only you as fair, and only you have promised to be fair – no one else is so qualified.

<u>Taking notes:</u>

If you wish, you may take notes to help you remember what the witnesses said. If you do take notes, please do not share them with anyone until you go to the jury room to decide the case. Do not let note-taking distract you from carefully listening to and observing the witnesses. When you leave the courtroom, you should leave your notes hidden from view in the jury room.

Whether or not you take notes, you should rely on your own memory of the testimony. Your notes are there only to help your memory. They are not entitled to greater weight than your memory or impression about the testimony.

<u>Course of the trial:</u>

Let's walk through the trial. First, each side may make an opening statement, but they do not have to. Remember, an opening statement is not evidence, and it's not supposed to be argumentative; it's just an outline of what that party intends to prove.

Next, Mr. Awodiya will present his witnesses and ask them questions. After Mr. Awodiya questions the witness, Ross University may ask the witness questions – this is called "cross-examining" the witness. Then Ross University will present its witnesses, and Mr. Awodiya may cross-examine them. You should base your decision on all the evidence, regardless of which party presented it.

After all the evidence is in, the parties will present their closing arguments to summarize and interpret the evidence for you, and then I'll give you instructions on the law.

Source: Eleventh Circuit Pattern Jury Instructions, "General Preliminary Instruction"

Granted:                           _____

Granted as Modified:               _____

Denied:                            _____

**PLAINTIFF'S OBJECTIONS**: RUSM's alterations misstate the law. RUSM altered the default language of the instruction to say "party" or "parties" instead of the standard term "lawyer." For example, RUSM changed the phrase "the **lawyers'** statements and arguments aren't evidence" to "the **parties'** statements and arguments aren't evidence." The alterations made by RUSM prejudice Plaintiff because (i) it implies that neither RUSM nor Plaintiff's statements are evidence; (ii) it implies that the lawyers' statements may constitute evidence; and (iii) it will confuse the jury as to when statements made by RUSM employees are and are not evidence.

Plaintiff further objects to RUSM's description of the case, as it inaccurately frames the issues to be resolved by the jury. Also, RUSM's description goes beyond the stipulated facts, admissions, and established facts. RUSM's unfounded assertions, disguised as a "description" of the case, would have undue influence on the jury's deliberations and the jury's ability to interpret the evidence for themselves.

49121024;5

## PLAINTIFF'S REQUESTED JURY INSTRUCTION NO. 2

### Jury Questions

During this trial, you may submit questions to a witness after the lawyers have finished their own questioning. Here is how the procedure works: After each witness has testified, and the lawyers have asked all of their questions, I will ask if any of you have questions. If you have a question, write it down and give it to the court staff.

You may submit a question for a witness only to clarify an answer or to help you understand the evidence. Our experience with juror questions indicates that jurors rarely have more than a few questions for any one witness, and there may be no questions at all for some witnesses.

If you submit a question, the court staff will give it to me and I will share your questions with the lawyers in the case. If the rules of evidence allow your question, one of the lawyers or I will read your question to the witness. I may modify the form or phrasing of a question so that it is allowed under the evidence rules. Sometimes, I may not allow the questions to be read to the witness, either because the law does not allow it or because another witness is in a better position to answer the question. If I cannot allow the witness to answer a question, you must not draw any conclusions from that fact or speculate on what the answer might have been.

Here are several important things to keep in mind about your questions for the witnesses:

- First, you must submit all questions in writing. Please do not ask any questions aloud.

- Second, the court cannot re-call witnesses to the stand for additional juror questions. If you have a question for a particular witness, you must submit it when I ask.

- Finally, because you should remain neutral and open-minded throughout the trial, you should phrase your questions in a way that does not express an opinion about the case or a witness. You must keep an open mind until you have heard all the evidence, the closing arguments, and my final instructions on the law.

**Authorities**: Eleventh Circuit Civil Pattern Jury Instructions 1.4 (2019).

Granted: _____

Granted as Modified: _____

Denied: _____

10

49121024;5

### DEFENDANT'S REQUESTED JURY INSTRUCTION NO. 2
### JURY QUESTIONS

During this trial, you may submit questions to a witness after the parties have finished their own questioning. Here is how the procedure works: After each witness has testified, and the parties have asked all of their questions, I will ask if any of you have questions. If you have a question, write it down and give it to the court staff.

You may submit a question for a witness only to clarify an answer or to help you understand the evidence. Our experience with juror questions indicates that jurors rarely have more than a few questions for any one witness, and there may be no questions at all for some witnesses.

If you submit a question, the court staff will give it to me and I will share your questions with the parties in the case. If the rules of evidence allow your question, one of the parties or I will read your question to the witness. I may modify the form or phrasing of a question so that it is allowed under the evidence rules. Sometimes, I may not allow the questions to be read to the witness, either because the law does not allow it or because another witness is in a better position to answer the question. If I cannot allow the witness to answer a question, you must not draw any conclusions from that fact or speculate on what the answer might have been.

Here are several important things to keep in mind about your questions for the witnesses:

· First, you must submit all questions in writing. Please do not ask any questions aloud.

· Second, the court cannot re-call witnesses to the stand for additional juror questions. If you have a question for a particular witness, you must submit it when I ask.

· Finally, because you should remain neutral and open-minded throughout the trial, you should phrase your questions in a way that does not express an opinion about the case or a witness. You must keep an open mind until you have heard all the evidence, the closing arguments, and my final instructions on the law.

Source: Eleventh Circuit Pattern Jury Instructions, "Jury Questions"

Granted: _____

Granted as Modified: _____

Denied: _____

**PLAINTIFF'S OBJECTIONS**: RUSM's alterations misstate the law. RUSM altered the default language of the instruction to say "party" or "parties" instead of the standard term "lawyer."

11

## PLAINTIFF'S REQUESTED JURY INSTRUCTION NO. 3

### Interim Statements (Preliminary)

At times during the trial, the lawyers will address you. You'll soon hear the lawyers' opening statements, and at the trial's conclusion you'll hear their closing arguments. Sometimes the lawyers may choose to make short statements to you, either to preview upcoming evidence or to summarize and highlight evidence they just presented. These statements and arguments are the lawyers' views of the evidence or of what they anticipate the evidence will be. They are not evidence themselves.

Mr. Awodiya has decided not to use a lawyer in this case and will be representing himself. Mr. Awodiya has decided to act as his own lawyer. You will hear him speak at various times during the trial. He may make an opening statement and a closing argument. He may ask questions of witnesses, make objections, and argue to the court. When he is acting as a lawyer, his questions, objections, and arguments to the court are not evidence. The only evidence in the case is the testimony of Mr. Awodiya and other witnesses under oath and exhibits admitted into evidence.

**Authorities**: Eleventh Circuit Civil Pattern Jury Instructions 1.5 (2019); *U.S. v. Brown*, 393 Fed. Appx. 686, 704 n.15 (11th Cir. 2010) (Addressing jury instructions appropriate for *pro se* defendants in the context of a criminal case).

Granted:                          _____

Granted as Modified:           _____

Denied:                           _____

12

### DEFENDANT'S REQUESTED JURY INSTRUCTION NO. 3
### INTERIM STATEMENTS

At times during the trial, the parties will address you. You'll soon hear the parties' opening statements, and at the trial's conclusion you'll hear their closing arguments. Sometimes the parties may choose to make short statements to you, either to preview upcoming evidence or to summarize and highlight evidence they just presented. These statements and arguments are the parties' views of the evidence or of what they anticipate the evidence will be. They are not evidence themselves.

Source: Eleventh Circuit Pattern Jury Instructions, "Interim Statements"

Granted:                          _____

Granted as Modified:           _____

Denied:                           _____

**PLAINTIFF'S OBJECTIONS**: RUSM's alterations misstate the law. RUSM altered the default language of the instruction to say "party" or "parties" instead of the standard term "lawyer." The alterations made by RUSM prejudice Plaintiff because (i) it implies that neither RUSM nor Plaintiff's statements are evidence; (ii) it implies that the lawyers' statements may constitute evidence; and (iii) it will confuse the jury as to when statements made by RUSM employees are and are not evidence.

13

## PLAINTIFF'S REQUESTED JURY INSTRUCTION NO. 4

### Use of Depositions

A deposition is a witness's sworn testimony that is taken before the trial. During a deposition, the witness is under oath and swears to tell the truth, and the lawyers for each party may ask questions. A court reporter is present and records the questions and answers.

The deposition of [name of witness], taken on [date], [is about to be/has been] presented to you [by a video/by reading the transcript]. Deposition testimony is entitled to the same consideration as live testimony, and you must judge it in the same way as if the witness was testifying in court.

**Authorities**: Eleventh Circuit Civil Pattern Jury Instructions 2.2 (2019)

Granted:                          _____

Granted as Modified:              _____

Denied:                           _____

14

49121024;5

### DEFENDANT'S JURY INSTRUCTION NO. 4
### USE OF DEPOSITIONS

A deposition is a witness's sworn testimony that is taken before the trial. During a deposition, the witness is under oath and swears to tell the truth, and the parties may ask questions. A court reporter is present and records the questions and answers.

The deposition of [insert witness], taken on [insert date], is about to be presented to you by [reading the transcript/playing a video of the testimony]. Deposition testimony is entitled to the same consideration as live testimony, and you must judge it in the same way as if the witness was testifying in court.

Source: Eleventh Circuit Pattern Jury Instructions, "Use of Depositions"

Granted: _____

Granted as Modified: _____

Denied: _____

**PLAINTIFF'S OBJECTIONS**: RUSM's alterations misstate the law. RUSM altered the default language of the instruction to say "party" or "parties" instead of the standard term "lawyer."

## PLAINTIFF'S REQUESTED JURY INSTRUCTION NO. 5

### Interim Statements (Trial)

At the beginning of the trial, I told you that the lawyers might make short statements previewing upcoming evidence or summarizing and highlighting evidence that they have already presented before. Right now, [Mr./Ms.] [insert name of attorney] is going to make a short statement. Please remember that the statement you are about to hear – like all statements by the lawyers – is [insert name of attorney] view of the evidence or of what he anticipates the evidence will be, but isn't itself evidence.

**Authorities**: Eleventh Circuit Civil Pattern Jury Instructions 2.4 (2019).

Granted: _____

Granted as Modified: _____

Denied: _____

49121024;5

### *DEFENDANT'S REQUESTED JURY INSTRUCTION NO. 5*
### *INTERIM STATEMENTS*

At the beginning of the trial, I told you that the parties might make short statements previewing upcoming evidence or summarizing and highlighting evidence that they have already presented before. Right now, [insert name of party] is going to make a short statement. Please remember that the statement you are about to hear – like all statements by the parties– is [insert party ] view of the evidence or of what he anticipates the evidence will be, but isn't itself evidence.

Source: Eleventh Circuit Pattern Jury Instructions, "Interim Statements"

Granted: _____

Granted as Modified: _____

Denied: _____

**PLAINTIFF'S OBJECTIONS**: RUSM's alterations misstate the law. RUSM altered the default language of the instruction to say "party" or "parties" instead of the standard term "lawyer." The alterations made by RUSM prejudice Plaintiff because (i) it implies that neither RUSM nor Plaintiff's statements are evidence; (ii) it implies that the lawyers' statements may constitute evidence; and (iii) it will confuse the jury as to when statements made by RUSM employees are and are not evidence.

**JURY INSTRUCTION NO. 6**

**Judicial Notice**

The rules of evidence allow me to accept facts that no one can reasonably dispute. The law calls this "judicial notice." I've accepted [state the fact that the court has judicially noticed] as proved even though no one introduced evidence to prove it. You must accept it as true for this case.

Source: Eleventh Circuit Civil Pattern Jury Instructions, Judicial Notice, § 2.5 (2018).

Granted: _____

Granted as Modified: _____

Denied: _____

## PLAINTIFF'S REQUESTED JURY INSTRUCTION NO. 7

### Introduction

Members of the jury:

It's my duty to instruct you on the rules of law that you must use in deciding this case.

When I have finished you will go to the jury room and begin your discussions, sometimes called deliberations.

**Authorities**: Eleventh Circuit Civil Pattern Jury Instructions 3.1 (2019).

Granted: _____

Granted as Modified: _____

Denied: _____

49121024;5

## PLAINTIFF'S REQUESTED JURY INSTRUCTION NO. 8

### The Duty to Follow Instructions – Corporate Party Involved

Your decision must be based only on the evidence presented here. You must not be influenced in any way by either sympathy for or prejudice against anyone.

You must follow the law as I explain it – even if you do not agree with the law – and you must follow all of my instructions as a whole. You must not single out or disregard any of the instructions on the law.

The fact that a corporation is involved as a party must not affect your decision in any way. A corporation and all other persons stand equal before the law and must be dealt with as equals in a court of justice. When a corporation is involved, of course, it may act only through people as its employees; and, in general, a corporation is responsible under the law for the acts and statements of its employees that are made within the scope of their duties as employees of the company.

**Authorities**: Eleventh Circuit Civil Pattern Jury Instructions 3.2.2 (2019).

Granted: _____

Granted as Modified: _____

Denied: _____

49121024;5

### DEFENDANT'S REQUESTED JURY INSTRUCTION NO. 8
### DUTY TO FOLLOW INSTRUCTIONS
### CORPORATE PARTY INVOLVED

Your decision must be based only on the evidence presented here. You must not be influenced in any way by either sympathy for or prejudice against anyone.

You must follow the law as I explain it – even if you do not agree with the law – and you must follow all of my instructions as a whole. You must not single out or disregard any of the instructions on the law.

The fact that a corporation is involved as a party must not affect your decision in any way. A corporation and all other persons stand equal before the law and must be dealt with as equals in a court of justice. When a corporation is involved, of course, it may act only through people as its employees; and, in general, a corporation is responsible under the law for the acts and statements of its employees that are made within the scope of their duties as employees of the company.

Source: Eleventh Circuit Pattern Jury Instructions, "Duty to Follow Instructions - Corporate Party Involved"

Granted: _____

Granted as Modified: _____

Denied: _____

49121024;5

## PLAINTIFF'S REQUESTED JURY INSTRUCTION NO. 9

**Consideration of Direct and Circumstantial Evidence; Argument of Counsel; Comments by the Court**

As I said before, you must consider only the evidence that I have admitted in the case. Evidence includes the testimony of witnesses and the exhibits admitted. But, anything the lawyers say is not evidence and isn't binding on you.

You should not assume from anything I have said that I have any opinion about any factual issue in this case. Except for my instructions to you on the law, you should disregard anything I may have said during the trial in arriving at your own decision about the facts – unless I have taken judicial notice of a fact.

Your own recollection and interpretation of the evidence is what matters.

In considering the evidence you may use reasoning and common sense to make deductions and reach conclusions. You should not be concerned about whether the evidence is direct or circumstantial.

"Direct evidence" is the testimony of a person who asserts that he or she has actual knowledge of a fact, such as an eyewitness.

"Circumstantial evidence" is proof of a chain of facts and circumstances that tend to prove or disprove a fact. There is no legal difference in the weight you may give to either direct or circumstantial evidence.

**Authorities**: Eleventh Circuit Civil Pattern Jury Instructions 3.3 (2019).

Granted: _____

Granted as Modified: _____

Denied: _____

### DEFENDANT'S REQUESTED JURY INSTRUCTION NO. 9
### CONSIDERATION OF DIRECT AND CIRCUMSTANTIAL EVIDENCE;
### ARGUMENT OF COUNSEL; COMMENTS BY THE COURT

As I said before, you must consider only the evidence that I have admitted in the case. Evidence includes the testimony of witnesses and the exhibits admitted. But, anything the parties say is not evidence, except for when Mr. Awodiya is testifying in the witness box and under oath.

You should not assume from anything I have said that I have any opinion about any factual issue in this case. Except for my instructions to you on the law, you should disregard anything I may have said during the trial in arriving at your own decision about the facts.

Your own recollection and interpretation of the evidence is what matters.

In considering the evidence you may use reasoning and common sense to make deductions and reach conclusions. You should not be concerned about whether the evidence is direct or circumstantial.

"Direct evidence" is the testimony of a person who asserts that he or she has actual knowledge of a fact, such as an eyewitness.

"Circumstantial evidence" is proof of a chain of facts and circumstances that tend to prove or disprove a fact. There is no legal difference in the weight you may give to either direct or circumstantial evidence.

Source: Eleventh Circuit Pattern Jury Instructions, "Consideration of Direct and Circumstantial Evidence; Argument of Counsel; Comments by the Court"

Granted: _____

Granted as Modified: _____

Denied: _____

**PLAINTIFF'S OBJECTIONS**: RUSM's alterations misstate the law. RUSM altered the default language of the instruction to say "party" or "parties" instead of the standard term "lawyer." The alterations made by RUSM prejudice Plaintiff because (i) it implies that neither RUSM nor Plaintiff's statements are evidence; (ii) it implies that the lawyers' statements may constitute evidence; and (iii) it will confuse the jury as to when statements made by RUSM employees are and are not evidence.

## JURY INSTRUCTION NO. 10

### Credibility of Witnesses

When I say you must consider all the evidence, I do not mean that you must accept all the evidence as true or accurate. You should decide whether you believe what each witness had to say, and how important that testimony was. In making that decision you may believe or disbelieve any witness, in whole or in part. The number of witnesses testifying concerning a particular point does not necessarily matter.

To decide whether you believe any witness I suggest that you ask yourself a few questions:

1.   Did the witness impress you as one who was telling the truth?

2.   Did the witness have any particular reason not to tell the truth?

3.   Did the witness have a personal interest in the outcome of the case?

4.   Did the witness seem to have a good memory?

5.   Did the witness have the opportunity and ability to accurately observe the things he or she testified about?

6.   Did the witness appear to understand the questions clearly and answer them directly?

7.   Did the witness's testimony differ from other testimony or other evidence?

Source: Eleventh Circuit Civil Pattern Jury Instructions, "Credibility of Witnesses"

Granted: _____

Granted as Modified: _____

Denied: _____

49121024;5

## JURY INSTRUCTION NO. 11

### In-Trial Instructions on News Coverage

Reports about this trial may appear in the media. The reporters may not have heard all the testimony as you have, may be getting information from people who are not under oath and subject to cross examination, may emphasize an unimportant point, or may simply be wrong.

You must not read, listen to, or watch anything about this trial. It would violate your oath as a juror to decide this case on anything other than the evidence presented at trial and on your own common sense. You must decide this case exclusively on the evidence you receive here in court.

Source: Eleventh Circuit Pattern Jury Instructions, "In-Trial Instructions on News Coverage"

Granted: _____

Granted as Modified: _____

Denied: _____

49121024;5

## JURY INSTRUCTION NO. 12

### Impeachment of Witnesses Because of Inconsistent Statements

You should also ask yourself whether there was evidence that a witness testified falsely about an important fact. And ask whether there was evidence that at some other time a witness said or did something, or did not say or do something, that was different from the testimony the witness gave during this trial.

But keep in mind that a simple mistake does not mean a witness was not telling the truth as he or she remembers it. People naturally tend to forget some things or remember them inaccurately. So, if a witness misstated something, you must decide whether it was because of an innocent lapse in memory or an intentional deception. The significance of your decision may depend on whether the misstatement is about an important fact or about an unimportant detail.

Source: Eleventh Circuit Pattern Jury Instructions, "Impeachment of Witnesses Because of Inconsistent Statements"

Granted:                    _____

Granted as Modified:        _____

Denied:                     _____

26

49121024;5

### DEFENDANT'S REQUESTED JURY INSTRUCTION NO. 13
### CIVIL ALLEN CHARGE

Members of the jury:

I am going to ask you to continue your deliberations to reach a verdict. Please consider the following comments.

This is an important case. The trial has been expensive in terms of time, effort, money, and emotional strain to both the plaintiff and the defendant. If you fail to agree on a verdict, the case remains open and may have to be tried again. A second trial would be costly to both sides, and there is no reason to believe either side can try it again better or more exhaustively than they have tried it before you.

Any future jury would be selected in the same manner and from the same source as you. There is no reason to believe that the case could ever be submitted to a jury of people more conscientious, more impartial, or more competent to decide it – or that either side could produce more or clearer evidence.

It is your duty to consult with one another and to deliberate with a view to reaching an agreement – if you can do it without violating your individual judgment. You must not give up your honest beliefs about the weight of the evidence or effect solely because of other jurors' opinions or just to return a verdict. You must each decide the case for yourself – but only after you consider the evidence with your fellow jurors.

You should not hesitate to reexamine your own views and change your opinion if you become convinced it is wrong. To bring your minds to a unanimous result, you must openly and frankly examine the questions submitted to you with proper regard for the opinions of others and with a willingness to reexamine your own views.

If a substantial majority of you is for a verdict for one party, each of you who holds a different position ought to consider whether your position is reasonable. It may not be reasonable since it makes so little impression on the minds of your fellow jurors – who bear the same responsibility, serve under the same oath, and have heard the same evidence.

You may conduct your deliberations as you choose, but I suggest that you now carefully reexamine and reconsider all the evidence in light of the court's instructions on the law. You may take all the time that you need.

I remind you that in your deliberations, you are to consider the court's instructions as a whole. You should not single out any part of any instructions including this one, and ignore others.

You may now return to the jury room and continue your deliberations.

49121024;5

Source: Eleventh Circuit Pattern Jury Instructions, "Civil *Allen* Charge"

Granted:                                  _____

Granted as Modified:               _____

Denied:                                   _____

**PLAINTIFF'S OBJECTIONS**: The timing of this instruction will have a coercive impact on the jury, as well as the language.

**Plaintiff's Authorities**: *United States v. Cunningham*, No. 16-14153, at *5 (11th Cir. Aug. 25, 2017) ("An <u>Allen</u> charge can be coercive in two ways relevant to this appeal: (1) if it is given prematurely; or (2) if it is inherently coercive, given the totality of the circumstances." (quotations omitted)).

49121024;5

## PLAINTIFF'S REQUESTED JURY INSTRUCTION NO. 14

### Expert Witness

When scientific, technical or other specialized knowledge might be helpful, a person who has special training or experience in that field is allowed to state an opinion about the matter. As with any other witness's testimony, you must decide for yourself whether to rely upon the opinion.

When a witness is being paid for reviewing and testifying concerning the evidence, you may consider the possibility of bias and should view with caution the testimony of such witness where court testimony is given with regularity and represents a significant portion of the witness's income.

**Authorities**: Eleventh Circuit Civil Pattern Jury Instructions 3.6.2 (2019)

Granted:                     _____

Granted as Modified:         _____

Denied:                      _____

49121024;5

### DEFENDANT'S REQUESTED JURY INSTRUCTION NO. 14
### EXPERT WITNESS

When scientific, technical or other specialized knowledge might be helpful, a person who has special training or experience in that field is allowed to state an opinion about the matter.

As with any other witness's testimony, you must decide for yourself whether to rely upon the opinion.

Source: Eleventh Circuit Civil Pattern Jury Instructions, Expert Witness, § 3.6.1 (2018).

Granted: _____

Granted as Modified: _____

Denied: _____

**PLAINTIFF'S OBJECTIONS**: There is no expert witness in this case. And even if there was, the Eleventh Circuit Civil Pattern Jury Instruction 3.6.2, would be more appropriate for this case.

**Plaintiff's Authorities**: Eleventh Circuit Civil Pattern Jury Instructions 3.6.2 (2019) ("When a witness is being paid for reviewing and testifying concerning the evidence, you may consider the possibility of bias and should view with caution the testimony of such witness where court testimony is given with regularity and represents a significant portion of the witness's income.").

49121024;5

## JURY INSTRUCTION NO. 15

### Responsibility for Proof – Plaintiff's Claims – Preponderance of the Evidence

In this case it is the responsibility of Mr. Awodiya to prove every essential part of his claims by a "preponderance of the evidence." This is sometimes called the "burden of proof" or the "burden of persuasion."

A "preponderance of the evidence" simply means an amount of evidence that is enough to persuade you that Mr. Awodiya's claim is more likely true than not true.

If the proof fails to establish any essential part of a claim or contention by a preponderance of the evidence, you should find against Mr. Awodiya.

When more than one claim is involved, you should consider each claim separately.

In deciding whether any fact has been proved by a preponderance of the evidence, you may consider the testimony of all of the witnesses, regardless of who may have called them, and all of the exhibits received in evidence, regardless of who may have produced them.

If the proof fails to establish any essential part of Mr. Awodiya's claims by a preponderance of the evidence, you should find for Ross University as to that claim.

Source: Eleventh Circuit Civil Pattern Jury Instructions 3.7.1 (2018).

Granted: _____

Granted as Modified: _____

Denied: _____

31

49121024;5

## PLAINTIFF'S REQUESTED JURY INSTRUCTION NO. 16

**Responsibility for Proof—Ross University's Affirmative Defense Preponderance of the Evidence**

In this case, Ross University asserts the affirmative defense of mitigating damages. Even if Mr. Awodiya proves his claims by a preponderance of the evidence, Ross University can prevail in this case if it proves an affirmative defense by a preponderance of the evidence.

I caution you that Ross University does not have to disprove Mr. Awodiya's claims, but if Ross University raises an affirmative defense, the only way it can prevail on that specific defense is if it proves that defense by a preponderance of the evidence.

**Authorities**: Eleventh Circuit Civil Pattern Jury Instructions 3.7.2 (2019).

Granted: _____

Granted as Modified: _____

Denied: _____

49121024;5

### DEFENDANT'S REQUESTED JURY INSTRUCTION NO. 16
### RESPONSIBILITY FOR PROOF—AFFIRMATIVE DEFENSE—PREPONDERANCE OF THE EVIDENCE

In this case, Ross University asserts the affirmative defenses of: (1) failure to mitigate; and (2) RUSM made a good faith effort to comply with Title III of the American with Disabilities Act. Even if Mr. Awodiya proves his claims by a preponderance of the evidence, Ross University can prevail in this case if it proves an affirmative defense by a preponderance of the evidence.

When more than one affirmative defense is involved, you should consider each one separately.

I caution you that Ross University does not have to disprove Mr. Awodiya's claims, but if Ross University raises an affirmative defense, the only way it can prevail on that specific defense is if it proves that defense by a preponderance of the evidence.

Source: Eleventh Circuit Pattern Jury Instructions, "Responsibility for Proof—Affirmative Defense—Preponderance of the Evidence"

Granted: _____

Granted as Modified: _____

Denied: _____

**PLAINTIFF'S OBJECTIONS**: Plaintiff objects to RUSM's "good faith effort to comply" affirmative defense because Plaintiff is not seeking punitive damages under the Rehabilitation Act nor the ADA—therefore it is not a cognizable affirmative defense and RUSM has note cited any case law to show otherwise. *See* Defendant's Answer and Affirmative Defenses, at 17 (Ninth and Tenth affirmative defense to punitive damages) [ECF No. 58]. Furthermore, this instruction should be placed right before RUSM's affirmative defense claim instructions.

49121024;5

## PLAINTIFF'S REQUESTED JURY INSTRUCTION NO. 17

### Duty to Deliberate When Only the Plaintiff Claims Damages

Of course, the fact that I have given you instructions concerning the issue of Mr. Awodiya's damages should not be interpreted in any way as an indication that I believe that either party should, or should not, prevail in this case.

Your verdict must be unanimous – in other words, you must all agree. Your deliberations are secret, and you'll never have to explain your verdict to anyone.

Each of you must decide the case for yourself, but only after fully considering the evidence with the other jurors. So you must discuss the case with one another and try to reach an agreement. While you're discussing the case, don't hesitate to reexamine your own opinion and change your mind if you become convinced that you were wrong. But don't give up your honest beliefs just because others think differently or because you simply want to get the case over with.

Remember that, in a very real way, you're judges – judges of the facts. Your only interest is to seek the truth from the evidence in the case.

**Authorities**: Eleventh Circuit Civil Pattern Jury Instructions 3.8.1 (2019).

Granted: _____

Granted as Modified: _____

Denied: _____

49121024;5

### DEFENDANT'S REQUESTED JURY INSTRUCTION NO. 17
### DUTY TO DELIBERATE WHEN ONLY THE PLAINTIFF CLAIMS DAMAGES

Of course, the fact that I have given you instructions concerning the issue of Mr. Awodiya's damages should not be interpreted in any way as an indication that I believe that the Mr. Awodiya should, or should not, prevail in this case.

Your verdict must be unanimous – in other words, you must all agree. Your deliberations are secret, and you will never have to explain your verdict to anyone.

Each of you must decide the case for yourself, but only after fully considering the evidence with the other jurors. So you must discuss the case with one another and try to reach an agreement. While you are discussing the case, do not hesitate to reexamine your own opinion and change your mind if you become convinced that you were wrong. But do not give up your honest beliefs just because others think differently or because you simply want to get the case over with.

Remember that, in a very real way, you are judges – judges of the facts. Your only interest is to seek the truth from the evidence in the case.

**Source:** Eleventh Circuit Pattern Jury Instructions, "Duty to Deliberate When Only the Plaintiff Claims Damages"

Granted:                    _____

Granted as Modified:        _____

Denied:                     _____

**PLAINTIFF'S OBJECTIONS**: This instruction should state that the Court does not believe that either party should, or should not, prevail in this case—as opposed to singling out one party. This may mislead the jury into thinking that the Court may believe that RUSM should prevail in this case.

## PLAINTIFF'S REQUESTED JURY INSTRUCTION NO. 18

### Established Facts

Sometimes the parties have agreed that certain facts are true. This agreement is called a stipulation. Some facts are not genuinely in dispute and are treated as established in the case. You must treat these facts as proved for this case.

Stipulated facts and Rule 8(b), Rule 36 admissions:

1.     Mr. Awodiya is a former medical school student at Ross University School of Medicine.

2.   Mr. Awodiya enrolled in medical school at Ross University in May 2014.

3.   Mr. Awodiya was dismissed for failing to pass the NBME CBSE.

4.     Ross University, not the NBME, is the entity that determines whether its students require accommodations to a disability when taking the NBME CBSE.

5.     Extended testing time for the NBME CBSE is a reasonable accommodation for some disabled students that need extended testing time.

6.     Ross University did not provide Mr. Awodiya with extended testing time for the NBME CBSE.

7.     Mr. Awodiya did not have any accommodations for his ADHD on his first NBME CBSE attempt.

8.     Mr. Awodiya did not have any accommodations for his ADHD on his second NBME CBSE attempt.

9.     Mr. Awodiya did not have any accommodations for his ADHD on his third NBME CBSE attempt.

10.     Mr. Awodiya did not have any accommodations for his ADHD on his fourth NBME CBSE attempt.

11.     Mr. Awodiya did not have any accommodations for his ADHD on his fifth NBME CBSE attempt.

12.     Ross University published information for prospective students on its website, including in the Admissions Requirements section.

13.     Ross University published the following statement in the Admissions Requirements section of its website: "It is the policy and practice of the University to comply with the Americans with Disabilities Act as applicable and practical in Dominica."

49121024;5

<u>Rule 56(g) established facts</u>:

      1.     Mr. Awodiya was diagnosed with Attention-Deficit/Hyperactivity Disorder ("ADHD") in December 2015 and was diagnosed with Obsessive Compulsive Disorder ("OCD") in April 2017.

      2.     In January 2016, Mr. Awodiya returned to Ross University's campus and provided the Counseling Center with an assessment by a doctor in the United States diagnosing him with ADHD.

      3.     Mr. Awodiya also informed Dr. Davendranand Sharma in the Counseling Center that he was running out of time on his exams.

**Authorities**: Eleventh Circuit Civil Pattern Jury Instructions 2.1 (2019); Fed. R. Civ. P. 56(g) ("treating the fact as established in the case"); *Awodiya v. Ross University School of Medicine*, Case No. 18-6042, (S.D. Fla. 2018), *Omnibus Order on Motions for Summary Judgment*, ECF No. 154, at *1–2, 5; *see also* Fed. R. Civ. P. 36(b) (Rule 36 provides that "[a] matter admitted under this rule is conclusively established"); Defendant's Reponses to Plaintiff's Requests for Admission, at Plaintiff's Requests for Admission Nos. 19, 18, 58, 16, 53–57, 28, Exhibit A [ECF No. 195]; Defendant's Answer and Affirmative Defenses [ECF No. 58] ¶ 106.

Granted:         _____

Granted as Modified:    _____

Denied:          _____

### *DEFENDANT'S REQUESTED JURY INSTRUCTION NO. 19*
### *STIPULATIONS*

Sometimes the parties have agreed that certain facts are true. This agreement is called a stipulation. You must treat these facts as proved for this case.

The parties have agreed to the following facts:

1.      Plaintiff is a former medical school student at Ross University School of Medicine, School of Veterinary Medicine Limited.

2.      Plaintiff enrolled in medical school at Ross University in May 2014.

Source: Eleventh Circuit Pattern Jury Instructions, "Stipulations," §2.1

Granted:                                 _____

Granted as Modified:                     _____

Denied:                                  _____

**PLAINTIFF'S OBJECTIONS**: The parties have not stipulated to any facts. However, this section should include Rule 8(b) admissions, Rule 36 admissions, and Rule 56(g) established facts.

**Plaintiff's Authorities**: Fed. R. Civ. P. 36(b) (Rule 36 provides that "[a] matter admitted under this rule is conclusively established"); Fed. R. Civ. P. 56(g) ("treating the fact as established in the case"); Fed. R. Civ. P. 8(b)(6) ("An allegation … is admitted if a responsive pleading is required and the allegation is not denied.").

49121024;5

## PLAINTIFF'S REQUESTED JURY INSTRUCTION NO. 20

### Election of Foreperson; Explanation of Verdict Forms

When you get to the jury room, choose one of your members to act as foreperson. The foreperson will direct your deliberations and speak for you in court.

A verdict form has been prepared for your convenience.

[Explain verdict]

You will take the verdict form to the jury room and when you have reached unanimous agreement you will have your foreperson fill in the verdict form, date and sign it, and then return to the courtroom.

If you should desire to communicate with me at any time, please write down your message or question and pass the note to the marshal who will bring it to my attention. I will then respond as promptly as possible, either in writing or by having you returned to the courtroom so that I can address you orally. I caution you, however, with regard to any message or question you might send, that you should not tell me your numerical division at the time.

**Authorities**: Eleventh Circuit Civil Pattern Jury Instructions 3.9 (2019).

Granted: _____

Granted as Modified: _____

Denied: _____

### DEFENDANT'S REQUESTED JURY INSTRUCTION NO. 20
### ELECTION OF FOREPERSON; EXPLANATION OF VERDICT FORMS

When you get to the jury room, choose one of your members to act as foreperson. The foreperson will direct your deliberations and speak for you in court.

A verdict form has been prepared for your convenience.

You will take the verdict form to the jury room and when you have reached unanimous agreement you will have your foreperson fill in the verdict form, date and sign it, and then return to the courtroom.

If you should desire to communicate with me at any time, please write down your message or question and pass the note to the marshal who will bring it to my attention. I will then respond as promptly as possible, either in writing or by having you returned to the courtroom so that I can address you orally. I caution you, however, with regard to any message or question you might send, that you should not tell me your numerical division at the time.

Source: Eleventh Circuit Pattern Jury Instructions, "Election of Foreperson; Explanation of Verdict Forms"

Granted: _____

Granted as Modified: _____

Denied: _____

49121024;5

<u>PLAINTIFF'S REQUESTED JURY INSTRUCTION NO. 21</u>

**Violation of Title III of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act – Examination Accommodation**

In this case, Mr. Awodiya claims that Ross University discriminated against him by failing to provide an examination accommodation for his disability within the meaning of Title III of the Americans with Disabilities Act (the ADA) and Section 504 of the Rehabilitation Act (the Rehabilitation Act).

Ross University denies Mr. Awodiya's claims and asserts that he was not an "otherwise qualified" individual to participate in the examinations.

Under the ADA and the Rehabilitation Act, a university offering an examination must assure that the examination is selected and administered so as to best ensure that the examination results accurately reflect the individual's academic performance, rather than reflecting the individual's disability.

To succeed on his claim, Mr. Awodiya must prove that each of the following facts are more likely true than not true:

<u>First</u>:      That Mr. Awodiya had a disability;

<u>Second</u>:   That Ross University knew that Mr. Awodiya had a disability;

<u>Third</u>:     That Ross University knew of Mr. Awodiya's desire for examination accommodations or that Mr. Awodiya's need for an accommodation was obvious;

<u>Fourth</u>:    That Mr. Awodiya was an "otherwise qualified" individual to participate in the examinations; and

<u>Fifth</u>:     That Ross University failed to provide a necessary examination accommodation with deliberate indifference.

The essential elements of a claim for violations of the ADA and the Rehabilitation Act are the same. In the verdict form that I will explain in a moment, you will be asked to answer questions about these factual issues.

**Authorities**: Eleventh Circuit Civil Pattern Jury Instructions 4.12 (2019) (limited use of pattern instructions because of its inapplicable employment standards under Title I); 42 U.S.C. § 12189 (Title III obligations for examinations); 28 CFR § 36.309(b)(1)(i) (implementing Title III "best ensures" standard that "examination results accurately reflect"); 34 CFR § 104.44(c) (same in Rehabilitation Act; "course examinations"); *Schwarz v. Villages Charter Sch., Inc.*, 165 F. Supp. 3d 1153, 1173 (M.D. Fla. 2016); *McCullum ex rel. DF & TF v. Orlando Reg'l Healthcare Sys., Inc.*, 768 F.3d 1135, 1147 (11th Cir. 2014); *United States v. Hialeah Hous. Auth.*, 418 F. App'x 872, 876 (11th Cir. 2011); *Alumni Cruises, LLC v. Carnival Corp.*, 987 F. Supp. 2d 1290, 1305 (S.D. Fla. 2013); *Redding v. Nova Se. Univ., Inc.*, 165 F. Supp. 3d 1274, 1290 (S.D. Fla. 2015);

41

*Allmond v. Akal Security, Inc.*, 558 F.3d 1312, 1316 n.3 (11th Cir. 2009) ("[T]he same standards govern discrimination claims under the Rehabilitation Act and the ADA ….").

Granted: _____

Granted as Modified: _____

Denied: _____

## PLAINTIFF'S REQUESTED JURY INSTRUCTION NO. 21A

### Definition of "Disability"

Mr. Awodiya can satisfy the first element under the ADA and the Rehabilitation Act if he proves that it is more likely true than not true that he had a disability.

A "disability" is a physical or mental impairment that substantially limits one or more major life activities.

A "mental impairment" means any mental or psychological disorder. Any of the following are considered a mental impairment:

(a) Attention-Deficit/Hyperactivity Disorder ("ADHD"); and
(b) Obsessive Compulsive Disorder ("OCD").

An impairment is a disability within the meaning of the ADA and the Rehabilitation Act if it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population.

Any one of the following are considered a major life activity:

(a) Concentration/attention;

(b) Test-taking;

(c) Thinking;

(d) Brain functions; or

(e) Neurological functions.

An impairment that substantially limits one major life activity does not need to limit other major life activities in order to be considered a substantially limiting impairment. An impairment does not need to prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting.

To decide whether Mr. Awodiya had an impairment that substantially limits concentration/attention, test taking abilities, thinking, brain functions, or neurological functions, it may be useful to consider, as compared to most people in the general population:

(a) the difficulty, effort or time required for Mr. Awodiya to perform any of these activities;

(b) the length of time it takes Mr. Awodiya to perform any of these activities; or

(c) the way that Mr. Awodiya's impairment affects the operation of any of these activities.

Whether an impairment substantially limits a major life activity should not demand extensive analysis. Given the inherent nature of OCD, this impairment will virtually always be found to impose a substantial limitation on a major life activity.

49121024;5

In determining whether Mr. Awodiya had a disability, the focus is on how a major life activity is substantially limited, and not on what outcomes Mr. Awodiya can achieve. For example, someone with a learning disability may achieve a high level of academic success, but may nevertheless be substantially limited in the major life activity of learning because of the additional time or effort he or she must spend to read, write, or learn compared to most people in the general population.

**Mitigating measures:** When deciding whether an impairment substantially limits a major life activity, it does not matter that an impairment could possibly be corrected by the use of medication.

**Episodic impairment:** If an impairment is are not always a problem but flares up from time to time, it can be a disability if it would substantially limit a major life activity when active.

Mr. Awodiya can also establish that he had a disability by proving that he had a record of a disability. Mr. Awodiya had a "record of" a disability if he had a history of, or had been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities. Mr. Awodiya claims that Ross University misclassified his anxiety disorder.

**Authorities**: 28 CFR § 36.105(d)(ii) ("whether an impairment substantially limits a major life activity should not demand extensive analysis"); 28 CFR § 36.105(b)(1)(ii) (defining mental impairment); 28 CFR § 36.105(d)(1)(v) ("An impairment does not need to prevent, or significantly or severely restrict"); 28 CFR § 36.105(d)(3)(i)–(ii) ("it may be useful in appropriate cases to consider" "condition, manner, or duration"); 28 CFR § 36.105(d)(3)(iii) ("the focus is on how a major life activity is substantially limited, and not on what outcomes an individual can achieve"); *Rawdin v. Am. Bd. of Pediatrics*, 985 F. Supp. 2d 636, 650 (E.D. Pa. 2013) ("test-taking constitutes a major life activity"); 28 C.F.R. § 36.105(b)(2)(i) ("mental impairment includes, but is not limited to … Attention Deficit Hyperactivity Disorder"); 28 CFR §§ 36.105(d)(2)(ii), (iii)(K) ("Given their inherent nature, these types of impairments will, as a factual matter, virtually always be found to impose a substantial limitation on a major life activity…. [O]bsessive compulsive disorder … substantially limits brain function.").

Granted: _____

Granted as Modified: _____

Denied: _____

## PLAINTIFF'S REQUESTED JURY INSTRUCTION NO. 21B

### Knowledge of a Disability

The second element of the ADA and the Rehabilitation Act requires that Mr. Awodiya prove that it is more likely true than not true that Ross University knew that he had a disability.

**Authorities**: *U.S. v. Hialeah Housing Authority*, 418 Fed. Appx. 872, 876 (11th Cir. 2011).

Granted: _____

Granted as Modified: _____

Denied: _____

49121024;5

## PLAINTIFF'S REQUESTED JURY INSTRUCTION NO. 21C

### Knowledge of Desire or Need for Examination Accommodations

The third element of the ADA and the Rehabilitation Act requires that Mr. Awodiya prove that it is more likely true than not true that *either* (i) Ross University knew of Mr. Awodiya's desire for an accommodation *or* (ii) that Mr. Awodiya's need for an accommodation was obvious.

Under the ADA and the Rehabilitation Act, a request or specific demand by Mr. Awodiya does not need to follow Ross University's written policies or procedures to satisfy this element; and a request or specific demand by Mr. Awodiya does not need to be formal or use any magic words. Mr. Awodiya does not need to say the word "accommodation" when asking for an accommodation.

Here are some **examples** of an adequate request or specific demand for an accommodation:

Example A: An employee tells her supervisor, "I'm having trouble getting to work at my scheduled starting time because of medical treatments I'm undergoing."

Example B: An employee tells his supervisor, "I need six weeks off to get treatment for a back problem."

Example C: A new employee, who uses a wheelchair, informs the employer that her wheelchair cannot fit under the desk in her office.

Each of these examples are an adequate request or demand for an accommodation.

If you do not find that Mr. Awodiya informed Ross University of his desire for examination accommodations, then you must decide if Mr. Awodiya's need for an accommodation was obvious.

To find that Mr. Awodiya's need for an accommodation was obvious, the circumstances must have at least been sufficient to cause a reasonable person to make appropriate inquiries about Mr. Awodiya's possible need for an accommodation.

**Authorities**: *U.S. v. Hialeah Housing Authority*, 418 Fed. Appx. 872, 876 (11th Cir. 2011) ("or circumstances must at least be sufficient to cause a reasonable [person] to make appropriate inquiries about the possible need for an accommodation"); *McCullum ex rel. DF & TF v. Orlando Reg'l Healthcare Sys., Inc.*, 768 F.3d 1135, 1147 (11th Cir. 2014) ("Where the substantial likelihood of harm is obvious, a jury may infer that the defendant had actual knowledge of that substantial risk of harm…. That is, the entity will know of the individual's need for an accommodation because it is obvious." (citations omitted)); *Nattiel v. Fla. Dep't of Corr.*, CASE NO. 1:15-cv-00150-WTH-GRJ, at *1–2 (N.D. Fla. Nov. 27, 2017) (holding that under the ADA, a request for an accommodation is not necessary where the need is "obvious" and also holding that a defendant's "mandated [request] form is not required to trigger the ADA"); *Schwarz v. Villages Charter Sch., Inc.*, 165 F. Supp. 3d 1153, 1173 (M.D. Fla. 2016) ("plaintiff must also establish that the plaintiff requested an accommodation or the need for one was obvious" (parenthesis omitted)); *Alvey v. Gualtieri*, Case No. 8:15-cv-1861-T-33AEP, at *16 (M.D. Fla. Nov. 7, 2016) ("In cases

46

alleging a failure to make reasonable accommodations, the defendant's duty to provide a reasonable accommodation is not triggered until the plaintiff makes a specific demand for an accommodation or the need for an accommodation becomes obvious."); *Awodiya v. Ross University School of Medicine*, Case No. 18-6042, (S.D. Fla. 2018), *Omnibus Order on Motions for Summary Judgment*, ECF No. 154, at *9 (Holding that under the Rehabilitation Act and the ADA, "there is no rule that a 'specific demand' must be one that follows the written policy or procedures in place."); *Schwarz v. City of Treasure Island*, Case No. 8:05-cv-1696-T-30MAP, at *2-3 (M.D. Fla. Oct. 14, 2010) ("[F]ederal law on this issue reflects that a party need not make a 'formal' request or use any 'magic words' when asking for an accommodation."); *See also Holly v. Clairson Indus*, 492 F.3d 1247, 1261 n.14 (11th Cir. 2007) (quoting ADA examples of sufficient "request" from EEOC Enforcement Guidance); *accord* https://www.eeoc.gov/policy/docs/accommodation.html#requesting.

Granted: _____

Granted as Modified: _____

Denied: _____

## PLAINTIFF'S REQUESTED JURY INSTRUCTION NO. 21D

### Definition of "Otherwise Qualified" Individual

The fourth element of the ADA and the Rehabilitation Act requires Mr. Awodiya to prove that it is more likely true than not true that he was an "otherwise qualified" individual at the time that Ross University knew of the desire or need for an accommodation and failed to provide one. Mr. Awodiya's later disqualification is not relevant to this claim.

In this case, Mr. Awodiya claims that additional testing time on examinations could ensure that the examination results accurately reflect Mr. Awodiya's academic performance, rather than reflecting his disability.

An individual is "otherwise qualified" for an examination if he can meet the essential eligibility requirements for participation in the examination, either with or without accommodations.

Meaningful participation and access to an academic program or activity includes the opportunity to achieve one's academic potential on a level playing field with one's peers. When a qualified student's disability prevents such meaningful participation, a reasonable accommodation is necessary.

More than one accommodation may be available. Ross University is required to provide the necessary accommodations that best ensures that the examination results accurately reflect Mr. Awodiya's academic performance, rather than reflecting his disability.

Required modifications to an examination may include additional testing time on examinations.

Mr. Awodiya only needs to show that additional testing time seems reasonable on its face. Mr. Awodiya satisfies this element by showing that it is plausible that additional testing time on examinations could ensure that the examination results accurately reflect Mr. Awodiya's academic performance, rather than reflecting his disability.

Mr. Awodiya does not need to satisfy non-essential eligibility requirements to be "otherwise qualified."

**Authorities**: 42 U.S.C. § 12189 (Title III obligations for examinations); 28 CFR § 36.309(b)(1)(i) (implementing Title III "best ensures" standard that "examination results accurately reflect"); 34 CFR § 104.44(c) (same in Rehabilitation Act under "course examinations"); 28 CFR § 36.309(b)(2) ("Required modifications to an examination may include changes in the length of time permitted for completion of the examination …."); *Redding v. Nova Se. Univ., Inc.*, 165 F. Supp. 3d 1274, 1290 (S.D. Fla. 2015) ("Under both the ADA and Rehabilitation Act, an individual is 'qualified' for a program if she can meet the essential eligibility requirements for participation in the program, either with or without reasonable accommodations."); *Shaikh v. Tex. A&M Univ. Coll. of Med.*, No. 16-20793, at *9-10 (5th Cir. Jun. 20, 2018) ("does not need to satisfy non-essential program requirements"); *McKelvey v. Turnage*, 792 F.2d 194, 204 (D.C. Cir. 1986) (same); *Redding*, 165 F. Supp. 3d at 1294–95 (S.D. Fla. 2015) ("Nova's liability necessarily

depends on whether Redding was a 'qualified individual' at the time she allegedly requested, and Nova allegedly denied, the accommodation. Redding's later actions are irrelevant to this claim. Contrary to Nova's argument, Redding's later disqualification does not preclude liability for prior wrongful denials of accommodations."); *Redding*, 165 F. Supp. 3d at 1299 ("Meaningful participation and access to an academic program includes the *opportunity* to advance to the next academic year on the regular schedule and to achieve one's academic potential on a level playing field with one's peers. When a qualified student's disability prevents such meaningful participation, a reasonable accommodation cannot be called unnecessary."); *Alumni Cruises, LLC v. Carnival Corp.*, 987 F. Supp. 2d 1290, 1305 (S.D. Fla. 2013) (quoting *U.S. Airways, Inc. v. Barnett,* 535 U.S. 391, 402 (2002) ("plaintiff satisfies 'burden of production' by showing 'plausible accommodation'); *Barnett,* 535 U.S. at 402 ("need only show that an 'accommodation' seems reasonable on its face, *i.e.,* ordinarily or in the run of cases").

Granted: _____

Granted as Modified: _____

Denied: _____

49121024;5

## PLAINTIFF'S REQUESTED JURY INSTRUCTION NO. 21E
### Deliberate Indifference

Finally, the fifth element of the ADA and the Rehabilitation Act requires that Mr. Awodiya prove that it is more likely true than not true that Ross University failed to provide a necessary examination accommodation with deliberate indifference.

Mr. Awodiya must show that Ross University knew there was a substantial likelihood that Mr. Awodiya's examination results would not accurately reflect his academic performance without an examination accommodation for his disability and failed to act on that likelihood.

But if the substantial likelihood was obvious, you may infer that Ross University had actual knowledge of that substantial likelihood.

If you find that Ross University failed to provide a necessary examination accommodation with deliberate indifference, then you must find Ross University liable and Mr. Awodiya is entitled to compensatory damages.

**Authorities**: *McCullum ex rel. DF & TF v. Orlando Reg'l Healthcare Sys., Inc.*, 768 F.3d 1135, 1147 (11th Cir. 2014) ("A plaintiff may prove discriminatory intent by showing that a defendant was deliberately indifferent to his statutory rights…. Where the substantial likelihood of harm is obvious, a jury may infer that the defendant had actual knowledge of that substantial risk of harm…. That is, the entity will know of the individual's need for an accommodation because it is obvious." (citations omitted)); 34 CFR § 104.44(c) (Rehabilitation Act; "course examinations"); 42 U.S.C. § 12189 (examinations); 28 CFR §§ 36.309(a), (b)(1)(i) ("examinations"); *Holly v. Clairson Indus*, 492 F.3d 1247, 1262 (11th Cir. 2007) ("an employer's failure to reasonably accommodate a disabled individual *itself* constitutes discrimination under the ADA"); *Borkowski v. Valley Cent. School Dist*, 63 F.3d 131, 143 (2d Cir. 1995) ("Failure to consider the possibility of reasonable accommodation for such disabilities, if it leads to discharge for performance inadequacies resulting from the disabilities, amounts to a discharge solely because of the disabilities."); *Humphrey v. Memorial Hospitals Ass'n*, 239 F.3d 1128, 1139 (9th Cir. 2001) ("the consequence of the failure to accommodate is, as here, frequently an unlawful termination."); *Danielle-Diserafino v. Dist. Sch. Bd. of Collier Cnty.*, Case No: 2:15-cv-569-FtM-29CM, at *9 (M.D. Fla. Aug. 11, 2016) ("A failure to accommodate is akin to a strict liability claim …." (citing *Palmer v. McDonald*, 624 F. App'x 699, 706 (11th Cir. 2015) (per curiam)).

Granted:                    _____

Granted as Modified:        _____

Denied:                     _____

***DEFENDANT'S REQUESTED JURY INSTRUCTION NO. 21***
***AMERICANS WITH DISABILITIES ACT – REASONABLE ACCOMMODATION CLAIM***
***– 42 U.S.C. §§ 12101-12117***

In this case, Mr. Awodiya claims that Ross University discriminated against him because of his disability by failing to provide a reasonable accommodation for his disability within the meaning of the Americans with Disabilities Act (the ADA).

Ross University denies Mr. Awodiya's claims and asserts that: i) Mr. Awodiya failed to properly request an accommodation; and ii) Mr. Awodiya was not a qualified individual.

To succeed on his claim, Mr. Awodiya must prove each of the following facts by a preponderance of the evidence:

<u>First</u>:     Mr. Awodiya had a disability;

<u>Second</u>:   Mr. Awodiya was an otherwise qualified individual;

<u>Third</u>:     Ross University knew of Mr. Awodiya's disability and also knew of his desire for accommodations;

<u>Fourth</u>:    Mr. Awodiya requested an accommodation;

<u>Fifth</u>:     A reasonable accommodation existed that would have allowed Mr. Awodiya to perform the essential functions of the academic curriculum; and

<u>Sixth</u>:     Ross University failed to provide a reasonable accommodation.

Mr. Awodiya is required to prove each of these elements in order for you to find Ross University liable for failure to provide an accommodation.  In the verdict form that I will explain in a moment, you will be asked to answer questions about these factual issues. If one or more of these elements are missing, you must find for Ross University on this issue.

<u>Definition of "Disability"</u>

The first element requires that Mr. Awodiya prove by a preponderance of the evidence that he had a disability. A "disability" is a physical or mental impairment that substantially limits one or more major life activities.

A "physical impairment" is a condition that prevents the body from functioning normally. A "mental impairment" is a condition that prevents the mind from functioning normally.

A "major life activity" is an activity that is centrally important to everyday life, including the operation of major bodily functions.  Mr. Awodiya claims that test taking is a major life activity, and you must decide whether it is.

51

An impairment "substantially limits" a major life activity if it prevents or significantly restricts a person from performing the activity, compared to an average person in the general population. An impairment that substantially limits one major life activity is a disability even if it does not limit any other major life activity.

To decide whether Mr. Awodiya's mental impairments substantially limit his ability to take tests, you should consider, as compared to most people in the general population:

(a) the condition under which Mr. Awodiya performs on exams;

(b) the manner in which Mr. Awodiya performs on exams; and

(c) how long it takes Mr. Awodiya to perform while taking tests.

<u>"Otherwise Qualified"</u>

The second element requires that Mr. Awodiya prove by a preponderance of the evidence that he was qualified to complete Ross University's academic program when Ross University dismissed him from the program. This means that Mr. Awodiya must show that he had the skill, experience, education, academic and technical requirements to complete his medical school program, and could do the essential functions of the program—with or without reasonable accommodation.

To decide whether Mr. Awodiya was qualified to participate and complete Ross University's medical school program, you should consider his abilities as they existed when Ross University dismissed him from its program.

Ross University contends that Mr. Awodiya is not a "qualified individual" because Mr. Awodiya's continued enrollment at Ross University would have posed a direct threat to Mr. Awodiya. A "direct threat" is a significant risk to the health or safety of Mr. Awodiya or others that cannot be eliminated by a reasonable accommodation. Therefore, you must decide whether Mr. Awodiya could safely perform the essential functions of Ross University's academic curriculum with or without a reasonable accommodation. In determining whether Mr. Awodiya would have posed a direct threat, you may consider:

(a) the nature of the risk of Mr. Awodiya's condition ;

(b) the severity of the risk of Mr. Awodiya's condition;

(c) the duration of the risk of Mr. Awodiya's condition;

(d) how likely it is that harm will occur due to Mr. Awodiya's condition; and

(e) whether the potential harm due to Mr. Awodiya's condition is likely to occur in the near future.

Mr. Awodiya has the burden to prove that he did not pose a direct threat to himself and/or to Ross University's employees. If you find that Mr. Awodiya could not safely perform the essential functions of Ross University's academic curriculum with or without a reasonable accommodation, then Mr. Awodiya is not a "qualified individual."

For the third element, Mr. Awodiya must prove by a preponderance of evidence that Ross University knew about his disabilities.

For the fourth element, Mr. Awodiya must prove by a preponderance of the evidence that he requested an accommodation.

Together, the third and fourth elements require Mr. Awodiya to prove that he informed Ross University of both the substantial limitations that his disabilities created and the need for an accommodation.  A duty to provide a reasonable accommodation is not triggered unless a specific demand for an accommodation has been made.

Mr. Awodiya must actually request an accommodation and be refused before Ross University may be liable.  If you find that Mr. Awodiya failed to provide sufficient notice that would trigger a duty for Ross University to provide an accommodation, you should enter a verdict in Ross University's favor.

For the fifth element, Mr. Awodiya must prove by a preponderance of the evidence that a reasonable accommodation existed that would have allowed him to perform the essential functions of a Ross University medical student.

For the sixth element, Mr. Awodiya must prove by a preponderance of the evidence that Ross University failed to provide a reasonable accommodation.

You must decide whether Mr. Awodiya has proven by the preponderance of the evidence that he would have been able to pass his exams, including the NBME CBSE with extended testing time.  Second, you must determine whether it would have been reasonable to require Ross University, under all of the circumstances, to allow Mr. Awodiya extra test time.

In this case, Mr. Awodiya claims that Ross University should have accommodated Mr. Awodiya by giving him additional testing time.  Additional testing time can be a reasonable accommodation – but only if Mr. Awodiya shows that extended testing time would have enabled him to perform the essential functions of being a medical school student and shows that it would have been reasonable under the circumstances.

Once an accommodation is required through the proper channels, the appropriate reasonable accommodation is best determined through a flexible, interactive process that involves both Ross University and Mr. Awodiya.  By law, Ross University is not required to grant every accommodation requested by Mr. Awodiya.  Rather, Ross University is only required to provide accommodations that are reasonable.

49121024;5

Further, Mr. Awodiya contends that Ross University failed to properly accommodate him during his second formal appeal for reinstatement.  For a request to be timely, Mr. Awodiya must make a request for an accommodation while still a student at Ross University, and not after the fact.  Thus, if you find that Mr. Awodiya's second formal appeal for reinstatement constitutes a request for accommodation, you must find that such request is untimely and you need not consider whether Mr. Awodiya requested an accommodation during his second formal appeal for reinstatement.

Further, Ross University is not required to ignore misconduct that has occurred because a student subsequently asserts such misconduct was the result of a disability.  Thus, if you find that Ross University dismissed Mr. Awodiya because of his failure to pass the National Board of Medical Examiners' Comprehensive Basic Science Exam, you should not consider whether Ross University failed to accommodate Mr. Awodiya during his second formal appeal for reinstatement.

You must assess given the facts of the case whether Ross University knew that Mr. Awodiya wanted a reasonable accommodation.  You must also consider whether Ross University could be liable for failing to provide a reasonable accommodation where the evidence shows that Mr. Awodiya failed to submit the application form for an accommodation.

Source: Eleventh Circuit Pattern Jury Instructions, §4.12 Americans with Disabilities Act – Reasonable Accommodation Claim – 42 U.S.C. §§ 12101-12117; *Hirsch v. Nova Southeastern Univ., Inc.*, 2005 WL 6705999 (S.D. Fla. 2005); *Barron v. School Bd. of Hillsborough County*¸ 3 F. Supp. 3d 1323 (S.D. Fla. 2014); *U.S. v. Hialeah Housing Auth.*, 418 Fed. Appx. 872, 876 (11th Cir. 2011); *Alvarez v. Sch. Bd. of Broward Cnty.*, 208 F. Supp. 3d 1281, 1286 (S.D. Fla. 2016); *Halpern v. Wake Forest Univ. Health Sciences*, 669 F. 3d 454. 465 (4th Cir. 2012).

Granted:  _____

Granted as Modified:  _____

Denied:  _____

**PLAINTIFF'S OBJECTIONS**: As an initial matter, the Eleventh Circuit Pattern Jury Instructions are limited to the employment context of Title I ADA cases. Further, RUSM's instructions are unnecessarily jumbled under one instruction, misstates the applicable law, and incorrectly frames the issues to be resolved by the jury. Plaintiff's Proposed Jury Instructions, and his authorities cited therein, correctly state the applicable law and the issues of this case. RUSM also failed to raise a "direct threat" affirmative defense in its Answer to the Complaint.

**Plaintiff's Authorities**: In addition to the authority cited therein Plaintiff's Proposed Jury Instructions. *See Enyart v. National Conference of Bar Examiners. Inc*., 630 F. 3d 1153, 1162 (9th Cir. 2011) (holding that standards from Title I of the ADA, pertaining to employment, do not apply to cases brought under Title III of the ADA); *Steere v. George Washington University*, 368 F. Supp. 2d 52, 56–57 (D.D.C. 2005) (Observing the "no second chance" doctrine also adopted in the D.C. Circuit, but denying defendant's summary judgement on the grounds that a medical student's subsequent request for test accommodations made after she was dismissed but during her appeal to the Dean, were timely because the Dean had total discretion to adopt or ignore the

decision of the school's Medical Student Evaluation Committee ("MSEC")); *Singh v. George Washington*, 508 F.3d 1097, 1105 (D.C. Cir. 2007) (same); *Alvarez v. Sch. Bd. of Broward Cnty.*, 208 F. Supp. 3d 1281, 1286 n.2 (S.D. Fla. 2016) (taking note of "special circumstances" that make reinstatement a reasonable accommodation); *Von Drasek v. Burwell*, 121 F. Supp. 3d 143, 157–158 (D.D.C. 2015); *Simon v. Schlumberger Tech. Corp.*, CIVIL ACTION NO. 13-CV-3074, at *16 (W.D. La. Dec. 19, 2014); *Kemp v. JHM Enterprises, Inc.*, No. 6:14-cv-02604-TMC-KFM, at *11–13 (D.S.C. Mar. 7, 2016) (refusing to extend the holding of *Halpern*, based on the facts); *Gray v. BMW Mfg. Co.*, Civil Action No. 7:15-cv-4133, at *14 (D.S.C. Aug. 16, 2017) (same).

**DEFENDANT'S REQUESTED JURY INSTRUCTION NO. 22**
**VIOLATION OF SECTION 504 OF THE REHABILITATION ACT OF 1973**

The essential elements of a claim for violations of Title III of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act of 1973 are the same.

Source: *Redding v. Nova Southeastern Univ., Inc.*, 165 F. Supp. 3d 1274, 1293 (S.D. Fla. 2016); *Salmon v. Dade Cnty. School Bd.*, 4 Supp. 2d 1157 (S.D. Fla. 1998).

Granted:                    _____

Granted as Modified:        _____

Denied:                     _____

**PLAINTIFF'S OBJECTIONS**: This instruction does not need a whole page to itself. Unnecessary.

56

### DEFENDANT'S REQUESTED JURY INSTRUCTION NO. 23
### EXTRATERRITORIALITY

The Americans with Disabilities Act and the Rehabilitation Act are American laws and do not apply to territories outside of the United States. If you find that the alleged conduct that is the subject of this lawsuit occurred outside of the United States, then the Americans with Disabilities Act and the Rehabilitation Act do not apply and you cannot find Ross University liable for any violation of these statutes.

Source: *Archut v. Ross Univ. Sch. of Veterinary Med.*, Civil Action No. 10-1681 (MLC), 2012 WL 5867148, at *4 (D.N.J. Nov. 19, 2012) (citing *Morrison v. Nat'l Austl. Bank, Ltd*., 130 S.Ct. 2869, 2877 (2010)); *Galligan v. Adtalem Global Education, Inc.*, Case No. 17 C 6310, 2019 WL 423356 (N.D. Ill. Feb. 4, 2019).

Granted: _____

Granted as Modified: _____

Denied: _____

**PLAINTIFF'S OBJECTIONS**: This instruction misstates controlling law. The Rehabilitation Act and Title III of the ADA have an extraterritorial effect on institutions outside of the United States. 29 U.S.C. § 705(23); 20 U.S.C. §§ 1002(a)(2), (a)(1)(C); 42 U.S.C. §§ 12181(1)(B), (7), (7)(J); 34 C.F.R. § 600.51(c)(1); 34 C.F.R. § 601.2(b); 20 U.S.C. § 1019(2); 34 C.F.R. § 668.14(b)(1); 20 U.S.C. § 1011; *see also RJR Nabisco, Inc. v. European Cmty.*, 136 S. Ct. 2090, 2103–04 (2016) ("[T]here is a clear indication at step one that [a statute] applies extraterritorially. We therefore do not proceed to the 'focus' step…. [S]o we do not need to determine which transnational (or wholly foreign) patterns of [conduct] it applies to; it applies to all of them, regardless of whether they are connected to a 'foreign' or 'domestic' enterprise."); *Comparelli v. Republica Bolivariana De Venez., , S.A., an Agency Or Instrumentality of the Bolivarian Republic of Venez., Int'l Petrochemical Sales, Ltd.*, 891 F.3d 1311, 1324 (11th Cir. 2018) ("That nexus requirement was enough to rebut the presumption against extraterritoriality in RJR Nabisco, and we hold that the nexus requirement of [a statute] similarly rebuts that presumption here.").

## PLAINTIFF'S REQUESTED JURY INSTRUCTION NO. 24
### Compensatory Damages

When considering the issue of Mr. Awodiya's compensatory damages, you should determine what amount, if any, has been proven by Mr. Awodiya by a preponderance of the evidence as full, just and reasonable compensation for all of Mr. Awodiya's damages as a result of Ross University's violation of the law, no more and no less. Compensatory damages are not allowed as a punishment and must not be imposed or increased to penalize Ross University. The extent or amount of compensatory damages may be left to reasonable inference.

You should consider the following elements of damage, to the extent you find that Mr. Awodiya has proved them by a preponderance of the evidence, and no others:

(a)     Lost future enhanced earning capacity; and

(b)     Emotional pain and mental anguish.

**Authorities**: Eleventh Circuit Civil Pattern Jury Instructions 4.12 (2019); *Sharick v. Southeastern University*, 780 So. 2d 136, 140 (Fla. Dist. Ct. App. 2000) ("[T]he extent or amount may be left to reasonable inference."), *review granted*, 804 So.2d 330 (Fla. 2001), 805 So.2d 809 (Fla. 2002), *review dismissed*, 822 So.2d 1290 (Fla. 2002).

Granted: _____

Granted as Modified: _____

Denied:

58

### DEFENDANT'S REQUESTED JURY INSTRUCTION NO. 24
### DAMAGES

Before you are allowed to award damages, you must find some reasonable basis in the evidence submitted by Mr. Awodiya to support the amount of damages to be awarded.  Mr. Awodiya must, by the preponderance of the evidence, show that the damages sought were caused by Ross University's wrongful act and must show the extent and amount of such damages.

Mr. Awodiya has the burden of presenting evidence to justify an award of damages.  Before you are allowed to award any damages, you must find facts sufficient to afford a basis for measuring Mr. Awodiya's loss with reasonable certainty, and the evidence must be such that you may find the amount of the loss by reasonable inference from established fact, and not by conjecture, speculation, or surmise.

If you find that Mr. Awodiya has failed to prove his entitlement to damages with reasonable certainty and with sufficient evidence, you need not determine the issue of damages.  Mr. Awodiya's claim cannot be based upon speculation or guesswork.

Source: *Smith v. Austin Dev. Co.*, 538 So. 2d 128, 129 (Fla. Dist. Ct. App. 1989); *Gonzalez v. Barrenechea*, 170 So. 3d 13, 16 (Fla. Dist. Ct. App. 2015).

Granted:                              _____

Granted as Modified:           _____

Denied:                               _____

**PLAINTIFF'S OBJECTIONS**: Plaintiff is not pursing double compensatory damages for lost future enhanced earning capacity. This instruction unduly misstates the applicable law and is inappropriate because there is already an instruction on compensatory damages under the Rehabilitation Act claim. This will only confuse the jury.

**Plaintiff's Authorities**: *HGI Associates, Inc. v. Wetmore Printing Co.*, 427 F.3d 867, 879 (11th Cir. 2005) ("The uncertainty and speculative nature of lost profits that generally defeats their recovery in contract cases refers to the cause of that damage and not to the amount of the damage"); *Holly v. Clairson Indus*, 492 F.3d 1247, 1262 (11th Cir. 2007) ("an employer's failure to reasonably accommodate a disabled individual *itself* constitutes discrimination under the ADA"); *Borkowski v. Valley Cent. School Dist*, 63 F.3d 131, 143 (2d Cir. 1995) ("Failure to consider the possibility of reasonable accommodation for such disabilities, if it leads to discharge for performance inadequacies resulting from the disabilities, amounts to a discharge solely because of the disabilities."); *Humphrey v. Memorial Hospitals Ass'n*, 239 F.3d 1128, 1139 (9th Cir. 2001) ("the consequence of the failure to accommodate is, as here, frequently an unlawful termination."); *Danielle-Diserafino v. Dist. Sch. Bd. of Collier Cnty.*, Case No: 2:15-cv-569-FtM-29CM, at *9 (M.D. Fla. Aug. 11, 2016) ("A failure to accommodate is akin to a strict liability claim …." (citing *Palmer v. McDonald*, 624 F. App'x 699, 706 (11th Cir. 2015) (per curiam)); *Sirpal v. Univ. of Miami*, 509 F. App'x 924, 929 (11th Cir. 2013) (Under Florida law, the legal relationship between a private university and a student is "solely contractual in character.");

*Sharick v. Southeastern University*, 780 So. 2d 136, 139–140 (Fla. Dist. Ct. App. 2000) ("In valuing the loss of this degree … it is appropriate to consider the possibility of lost future earnings.... While we acknowledge the requirement for certainty of damages in a contract action, this court has recognized several modifying doctrines to this rule, which include: (a) If the fact of damage is proved with certainty, the extent or amount may be left to reasonable inference. (b) Where the defendant's wrong has caused the difficulty of proof of damage, he cannot complain of the resulting uncertainty. (c) Mere difficulty in ascertaining the amount of damage is not fatal."), *review granted*, 804 So.2d 330 (Fla. 2001), 805 So.2d 809 (Fla. 2002), *review dismissed*, 822 So.2d 1290 (Fla. 2002); *Delta Air Lines, Inc. v. Ageloff*, 552 So. 2d 1089, 1093 (Fla. 1989) ("by its very nature the calculation of an award for lost earnings must be a rough approximation. Because the lost stream can never be predicted with complete confidence, any lump sum represents only a 'rough and ready' effort to put the plaintiff in the position he would have been in").

### DEFENDANT'S REQUESTED JURY INSTRUCTION NO. 25
### VIOLATION OF SECTION 504 OF THE REHABILITATION ACT OF 1973-
### COMPENSATORY DAMAGES

If you find that Ross University failed to provide Mr. Awodiya with a reasonable accommodation in violation of Section 504 of the Rehabilitation Act, then you must decide the issue of compensatory damages.  Before compensatory damages may be awarded, Mr. Awodiya must show that his rights were violated with discriminatory intent.  This is an "exacting standard," which requires a showing of more than gross negligence.  Mr. Awodiya must show that Ross University was deliberately indifferent to his statutory right or made a deliberate choice in denying Mr. Awodiya a federally protected right.  If Mr. Awodiya has not proven this by the preponderance of the evidence, you shall not consider the issue of damages.

When considering the issue of compensatory damages, you should determine what amount, if any, Mr. Awodiya has proven by a preponderance of the evidence as full, just and reasonable compensation for Mr. Awodiya's damages as a result of Ross University's failure to provide Mr. Awodiya with extended testing time, no more and no less.  Compensatory damages are not allowed as a punishment and must not be imposed or increased to penalize Ross University.  Also, compensatory damages must not be based on speculation or guesswork.

You should consider whether Mr. Awodiya is entitled to the following damages, and no others, to the extent you find that Mr. Awodiya has proved the elements of his claims by a preponderance of the evidence:

a)  emotional distress;

b)  loss earning capacity; and

c)  cost of tuition.

To determine whether and how much Mr. Awodiya should recover for his noneconomic compensatory damages, you may consider both the mental and physical aspects of injury— tangible and intangible.  You will determine what amount fairly compensates him for his claim. There is no exact standard to apply, but the award should be fair in light of the evidence.

Sources: *McCullum v. Orlando Regional Healthcare Sys., Inc.*, 768 F.3d 1135, 1147 (11th Cir. 2014); *Sheely v. MRI Radiology Network, P.A.*, 505 F. 3d 1173 (11th Cir. 2007); *Schwarz et al. v. The Villages Charter Sch., Inc.*, Case No. 5:12-cv-00177-MMH-PRL (M.D. Fla. Feb. 22, 2017), ECF No. 347 (jury instructions); *Daniel-Rivera v. Everglades College d/b/a Keiser Univ.*, 0:16-cv-60044-WPD (S.D. Fla. 2016), ECF No. 105 (jury instructions).

Granted: _____

Granted as Modified: _____

Denied: _____

49121024;5

**PLAINTIFF'S OBJECTIONS**: RUSM's instruction does not accurately define the applicable law and incorrectly frames the issues to be resolved by the jury. Plaintiff's Proposed Jury Instructions, and his authorities cited therein, correctly state the applicable law and the issues of this case.

62

## PLAINTIFF'S REQUESTED JURY INSTRUCTION NO. 26
### Ross University's Affirmative Defense – Mitigation of Damages

In this case, Ross University claims that Mr. Awodiya could have mitigated his damages with reasonable effort or expenditures. If Ross University unlawfully dismissed Mr. Awodiya and the dismissal caused damages, he is not entitled to recover for those damages which Ross University proves Mr. Awodiya could have mitigated with reasonable efforts or expenditures.

By law, Mr. Awodiya is not required to make extraordinary efforts to mitigate his damages. Mr. Awodiya is also not required to undertake any ameliorative efforts. This means that you should consider the reasonableness of Mr. Awodiya's efforts in light of the circumstances facing him at the time, including his ability to make the efforts or expenditures without undue risk, burden, or humiliation.

To prove this affirmative defense, Ross University must prove by a preponderance of evidence:

First:     That Mr. Awodiya made no reasonable effort to obtain a Doctor of Medicine (MD) degree from another institution;

Second:   The time period needed to acquire the MD degree at the other institution; and

Third:    The tuition and associated costs incurred at the other institution.

If you do not believe that Ross University has satisfied these elements, then you should find for Mr. Awodiya on this issue.

**Authorities**: Florida Standard Jury Instructions (Contract and Business) 504.9; *System Components Corp. v. Florida Dept*, 14 So. 3d 967, 982 (Fla. 2009) ("There is no actual 'duty to mitigate,' because the injured party is not compelled to undertake any ameliorative efforts"); *Thompson v. Fla. Drum Co.*, 651 So.2d 180, 182 (Fla. 1st DCA 1995) ("Extraordinary efforts on the part of a plaintiff to mitigate are not required."), *approved*, 668 So.2d 192 (Fla. 1996); *Sharick v. Southeastern University*, 780 So. 2d 136, 140 (Fla. Dist. Ct. App. 2000) (The "[student] must be afforded the opportunity to plead and prove damages in the form of the loss of earning capacity that would reasonably have resulted had he received his DO degree…. Alternatively, we recognize the potential for mitigation of damages … for him to obtain a DO degree at another institution. In that event, the appropriate measure of damages would only be the reproduction cost of acquiring the degree elsewhere. This would include a calculation of the present value of his lost income during the time period needed to acquire the degree, coupled with the tuition and associated costs incurred at the new school."), *review granted*, 804 So.2d 330 (Fla. 2001), 805 So.2d 809 (Fla. 2002), *review dismissed*, 822 So.2d 1290 (Fla. 2002).

Granted:                  _____

Granted as Modified:      _____

49121024;5

Denied: _____

49121024;5

### DEFENDANT'S REQUESTED JURY INSTRUCTION NO. 26
### VIOLATION OF SECTION 504 OF THE REHABILITATION ACT OF 1973 - FAILURE TO MITIGATE

You are instructed that any person who claims damages as a result of an alleged wrongful act on the part of another has a duty under the law to "mitigate" those damages. For purposes of this case, the duty to mitigate damages requires Mr. Awodiya to be reasonably diligent in seeking a substantially equivalent opportunity to further his education and another equally lucrative job opportunity. To prove that Mr. Awodiya failed to mitigate damages, Ross University must prove by a preponderance of the evidence that (1) Mr. Awodiya did not make reasonable diligent efforts to obtain a degree comparable to the degree he would have obtained from Ross University; (2) Mr. Awodiya did not make reasonable diligent efforts to pursue any other type of educational degree; or (3) Mr. Awodiya did not make reasonable diligent efforts to obtain an equally lucrative job position.

If you find that Ross University proved by a preponderance of the evidence that Mr. Awodiya failed to mitigate damages, then you should reduce the amount of Mr. Awodiya's damages by the amount that could have been reasonably realized if Mr. Awodiya had taken advantage of an opportunity for a substantially equivalent degree or substantially equivalent employment.

Sources: Eleventh Circuit Pattern Jury Instructions, §4.12 Americans with Disabilities Act – Reasonable Accommodation Claim – 42 U.S.C. §§ 12101-12117; *Hudson v. Chertoff*, 473 F. Supp. 2d 1292, 1297 (S.D. Fla. 2007).

Granted: _____

Granted as Modified: _____

Denied: _____

**PLAINTIFF'S OBJECTIONS**: RUSM's instruction does not accurately define the applicable law and incorrectly frames the issues to be resolved by the jury. Plaintiff's Proposed Jury Instructions, and his authorities cited therein, correctly state the applicable law and the issues of this case.

49121024;5

## PLAINTIFF'S REQUESTED JURY INSTRUCTION NO. 27

### Fraud in the Inducement

In this case, Mr. Awodiya claims that Ross University fraudulently induced prospective students into enrolling at the university.

Ross University published the following statement in the Admissions Requirements section of its website:

> It is the policy and practice of the University to comply with the American with Disabilities Act as applicable and practical in Dominica.

To prove fraud in the inducement, Mr. Awodiya must show that it is more likely true than not true:

1. That the statement published by Ross University is a false statement regarding a material fact or that Ross University omitted a material fact about the statement;

2. That Ross University knew the statement was false when it made it or made the statement knowing it did not know whether it was true or false;

3. That Ross University intended that prospective students would rely on the statement;

4. That Mr. Awodiya relied on the statement; and, if so,

5. Consequent injury to Mr. Awodiya acting in reliance on the statement.

If you believe that Mr. Awodiya has satisfied these elements, then you should find for Mr. Awodiya on this issue. If you do not believe that Mr. Awodiya has satisfied these elements, then you should find for Ross University on this issue.

**Authorities**: Florida Standard Jury Instructions (Civil) 409.7; *Thompkins v. Lil' Joe Records, Inc.*, 476 F.3d 1294, 1315 (11th Cir. 2007); *ZC Insurance Co. v. Brooks*, 847 So. 2d 547, 551 (Fla. Dist. Ct. App. 2003) ("Florida law recognizes that fraud can occur by omission, and places a duty on one who undertakes to disclose material information to disclose that information fully."); *Woods v. On Baldwin Pond, LLC*, No. 15-13082, at *4 (11th Cir. 2015) ("Florida law does not recognize a stark distinction between fraud by commission and fraud by omission."); *Philip Morris USA, Inc. v. Duignan*, 243 So. 3d 426, 440 (Discussing in detail, fraud by omission).

Granted: _____

Granted as Modified: _____

66

Denied: _____

### DEFENDANT'S REQUESTED JURY INSTRUCTION NO. 27
### FRAUDULENT INDUCEMENT

Mr. Awodiya alleges a claim for fraudulent inducement against Ross University.

Mr. Awodiya alleges that Ross University published the following statement:

It is the policy and practice of the University to comply with the American with Disabilities Act as applicable and practical in Dominica. No qualified individual with a disability will be denied access to or participate services, programs, or activities of Ross University School of Medicine.

Mr. Awodiya further alleges that the statement is false and that Ross University intended for prospective students to rely on this statement when applying and enrolling in Ross University's medical degree program.

In order to prove a claim for fraudulent inducement, Mr. Awodiya must show by a preponderance of the evidence each of the following elements:

1. That the statement published by Ross University is a false statement;

2. That Ross University knew that the statement was false when it made it;

3. That Ross University intended that the false statement would induce Mr. Awodiya to rely or act on it when applying for and enrolling into Ross University's medical degree program;

4. That Mr. Awodiya relied on the statement when he applied for enrollment into Ross University; and

5. That the statements caused damages to Mr. Awodiya.

If you conclude that Plaintiff has not proven that the statement published by Ross University was a false statement, then you should find for Ross University on this issue. If you conclude that Plaintiff has not proven that Ross University intended for the false statement to induce Mr. Awodiya to rely on the statement when applying for and enrolling into its medical school, you must find for Ross University. If you find that Plaintiff has not proven that he actually relied on the statement at the time he applied for and enrolled in Ross University, you must find for Ross University.

Source: Florida Standard Jury Instructions (Civil), 409.7; *Thompkins v. Lil' Joe Records, Inc.*, 476 F. 3d 1294, 1315 (11th Cir. 2007).


Granted:          _____
Granted as Modified:   _____
Denied:          _____

49121024;5

**PLAINTIFF'S OBJECTIONS**: RUSM's instruction does not accurately define the applicable law and incorrectly frames the issues to be resolved by the jury. Plaintiff's Proposed Jury Instructions, and his authorities cited therein, correctly state the applicable law and the issues of this case.

### DEFENDANT'S REQUESTED JURY INSTRUCTION NO. 28
### NEGLIGENT MISREPRESENTATION IN THE INDUCEMENT

The next issue you must decide is Mr. Awodiya's claim for negligent misrepresentation.

Mr. Awodiya alleges that Ross University published the following statement:

It is the policy and practice of the University to comply with the American with Disabilities Act as applicable and practical in Dominica.  No qualified individual with a disability will be denied access to or participate services, programs, or activities of Ross University School of Medicine.

Mr. Awodiya further alleges that the statement is false and Ross University should have known that the statement was false.  Mr. Awodiya also alleges that Ross University intended for prospective students to rely on this statement when applying and enrolling in Ross University's medical degree program.

In order to prove a claim for negligent misrepresentation, Mr. Awodiya must show by a preponderance of the evidence each of the following elements:

1. First, whether Ross University made a statement concerning its compliance with the American with Disabilities Act in Dominica that it believed to be true but which was in fact false;

2. Second, whether Ross University was negligent in making the statement because it should have known the statement was false;

3. Third, whether in making the statement, Ross University intended for Mr. Awodiya to rely on the statement;

4. Fourth, whether Mr. Awodiya justifiably relied on the false statement; and

5. Fifth, whether the false statement was a legal cause of damage to Mr. Awodiya.

If you conclude that Plaintiff has not proven that the statement published by Ross University was a false statement, then you should find for Ross University on this issue.  If you conclude that Plaintiff has not proven that Ross University intended for the false statement to induce Mr. Awodiya to rely on the statement when applying for and enrolling into its medical school, you must find for Ross University.  If you find that Plaintiff has not proven that he actually relied on the statement at the time he applied for and enrolled in Ross University, you must find for Ross University.

Source: Florida Supreme Court Pattern Jury Instructions, 409.8

Granted: _____

Granted as Modified: _____

Denied: _____

49121024;5

## PLAINTIFF'S REQUESTED JURY INSTRUCTION NO. 29

### Punitive Damages Generally

There is an additional claim in this case that you must decide. If you find for Mr. Awodiya and against Ross University on Mr. Awodiya's claims of fraud in the inducement, you must decide whether, in addition to compensatory damages, punitive damages are warranted as punishment to Ross University and as a deterrent to others.

**Authorities**: Florida Standard Jury Instructions (Civil) 503.2a (Notes on Use To 503.2 ¶ 1 ("This instruction is designed so it can be given before the taking of evidence.")).

Granted: _____

Granted as Modified: _____

Denied: _____

### DEFENDANT'S REQUESTED JURY INSTRUCTION NO. 29
### PUNITIVE DAMAGES

a.  *Punitive damages generally:*

There is an additional claim in this case that you must decide.  If you find for Mr. Awodiya and against Ross University on Mr. Awodiya's claims for fraudulent inducement or negligent misrepresentation, you must decide whether, in addition to compensatory damages, punitive damages are warranted as punishment to Ross University and as a deterrent to others.

Mr. Awodiya has filed two separate causes of action against Ross University—fraudulent inducement and negligent misrepresentation.  Mr. Awodiya claims that punitive damages should be awarded against Ross University because of its alleged representation on its website.

Before punitive damages may be awarded, Mr. Awodiya must show by clear and convincing evidence that Ross University was guilty of intentional misconduct or gross negligence, which was a substantial cause of damages to Mr. Awodiya. More specifically, Mr. Awodiya must prove by clear and convincing evidence that Ross University intentionally placed a statement on its website that it knew was false for the purpose of inducing students to apply to its institution.

Under those circumstances you may, in your discretion, award punitive damages against Ross University.  If clear and convincing evidence does not show such conduct by Ross University, punitive damages are not warranted against Ross University.

"Intentional misconduct" means that Ross University had actual knowledge of the wrongfulness of the conduct, that there was a high probability that injury or damage to Mr. Awodiya would occur and that, despite that knowledge, Ross University intentionally pursued that course of conduct, resulting in injury or damage. "Gross negligence" means that Ross University's conduct was so reckless or wanting in care that it constituted a conscious disregard or indifference to the life, safety, or rights of persons exposed to such conduct.

"Clear and convincing evidence" differs from the "greater weight of the evidence" in that it is more compelling and persuasive. As I have already instructed you, "greater weight of the evidence" means the more persuasive and convincing force and effect of the entire evidence in the case.

Source: Florida Supreme Court Pattern Jury Instructions, 409.8

Granted: _____

Granted as Modified: _____

Denied: _____

**PLAINTIFF'S OBJECTIONS**: RUSM's instruction is not supported by the source that it cites. Furthermore, this instruction does not apply to fraudulent conduct.

**Plaintiff's Authorities**: Florida Standard Jury Instructions (Civil) 503.2c (Notes on Use To 503.2 ¶ 3 ("Instructions 503.2b(1)–b(4) are designed for use in most common-law tort cases. However, certain types of intentional torts may require a punitive damage charge appropriate to the particular tort." (citing *First Interstate Dev. v. Ablanedo*, 511 So. 2d 536 (Fla. 1987)))); *First Interstate Dev. v. Ablanedo*, 511 So. 2d 536, 539 (Fla. 1987) ("[P]unitive damages are appropriate for any tortious conduct accomplished through fraud…. This is so because intentional misconduct is a necessary element of fraud."); *Wieczoreck v. H Builders, Inc.*, 475 So. 2d 227, 228 (Fla. 1985) ("[O]nly a preponderance or greater weight of the evidence is required to establish fraud, whether the action is at law or in equity.").

49121024;5

## PLAINTIFF'S REQUESTED JURY INSTRUCTION NO. 30

### Punitive Damages for Fraud

Punitive damages are appropriate for any tortious conduct accomplished through fraud. If you decide that punitive damages are warranted against Ross University then you must decide the amount of punitive damages, if any, to be assessed as punishment against Ross University and as a deterrent to others. This amount would be in addition to the compensatory damages you have previously awarded.

In making this determination, you should consider the following:

1. the nature, extent and degree of misconduct and the related circumstances, including whether the wrongful conduct was motivated solely by unreasonable financial gain; and
2. the financial resources of Ross University.

**Authorities**: Florida Standard Jury Instructions (Civil) 503.2c (Notes on Use To 503.2 ¶ 3 ("Instructions 503.2b(1)–b(4) are designed for use in most common-law tort cases. However, certain types of intentional torts may require a punitive damage charge appropriate to the particular tort." (citing *First Interstate Dev. v. Ablanedo*, 511 So. 2d 536 (Fla. 1987)))); *First Interstate Dev. v. Ablanedo*, 511 So. 2d 536, 539 (Fla. 1987) ("[P]unitive damages are appropriate for any tortious conduct accomplished through fraud…. This is so because intentional misconduct is a necessary element of fraud."); *Wieczoreck v. H Builders, Inc.*, 475 So. 2d 227, 228 (Fla. 1985) ("[O]nly a preponderance or greater weight of the evidence is required to establish fraud, whether the action is at law or in equity.").

Granted: _____

Granted as Modified: _____

Denied: _____

74

### DEFENDANT'S REQUESTED JURY INSTRUCTION NO. 31
### PUNITIVE DAMAGES- NEGLIGENT MISREPRESENTATION CLAIM

Mr. Awodiya is seeking punitive damages against Ross University in connection with two of his claims—fraudulent inducement and negligent misrepresentation. Mr. Awodiya claims that punitive damages should be awarded against Ross University because of its alleged representation on its website.

You must decide whether the negligent misrepresentation claim will support an award of punitive damages. As we previously stated, a claim for punitive damages may only be awarded if Mr. Awodiya shows by clear and convincing evidence that Ross University was guilty of intentional misconduct or gross negligence, which was a substantial cause of damages to Mr. Awodiya. This standard does not include any conduct that amounts to simple negligence. Thus, if you find that: i) Ross University did not have actual knowledge of the wrongfulness of the conduct; ii) Ross University did not have actual knowledge that there was a high probability of an injury or damage to Mr. Awodiya; and iii) that, despite that knowledge, Ross University did not intentionally pursue that course of conduct, resulting in injury or damage to Mr. Awodiya, then you cannot award punitive damages.

If you find that Ross University's conduct was not so reckless or wanting in care constituting a conscious disregard or indifference to the life, safety, or rights of persons exposed to such conduct, then you cannot award punitive damages.

If you find that the conduct complained of in support of Mr. Awodiya's negligent misrepresentation claim only amounts to negligence, Mr. Awodiya is not entitled to punitive damages on his negligent misrepresentation claim.

Source: *Burger King Corp. v. Austin*, 805 F. Supp. 1007, 1025 (S.D Fla. 1992); *John Brown Automation, Inc. v. Nobles*, 537 So. 2d 614 (Fla. Dist. Ct. App. 1988).

Granted: _____

Granted as Modified: _____

Denied: _____

49121024;5

***DEFENDANT'S REQUESTED JURY INSTRUCTION NO. 32***
***BURDEN OF PROOF - CLEAR AND CONVINCING EVIDENCE***

Sometimes a party has the burden of proving a claim or defense by clear and convincing evidence. This is a higher standard of proof than proof by a preponderance of the evidence. It means the evidence must persuade you that the claim or defense is highly probable or reasonably certain. The court will tell you when to apply this standard.

Source: Eleventh Circuit Pattern Jury Instructions, "Burden of Proof - Clear and Convincing Evidence"

Granted:                          _____

Granted as Modified:          _____

Denied:                          _____

**PLAINTIFF'S OBJECTIONS**: None of the claims or defenses in this case involve a clear and convincing burden of proof. This instruction is irrelevant and will only serve to confuse the jury.

**Plaintiff's Authorities**: *First Interstate Dev. v. Ablanedo*, 511 So. 2d 536, 539 (Fla. 1987) ("[P]unitive damages are appropriate for any tortious conduct accomplished through fraud…. This is so because intentional misconduct is a necessary element of fraud."); *Wieczoreck v. H H Builders, Inc.*, 475 So. 2d 227, 228 (Fla. 1985) ("[O]nly a preponderance or greater weight of the evidence is required to establish fraud, whether the action is at law or in equity.").

49121024;5

<u>**PLAINTIFF'S REQUESTED JURY INSTRUCTION NO. 33**</u>

**Compensatory Damages – Lost Future Enhanced Earning Capacity**

Under Florida law, the legal relationship between Mr. Awodiya and Ross University is solely contractual. In valuing the loss of a Doctor of Medicine (MD) degree, the appropriate measure of damage is the expected profits of that MD degree. Mr. Awodiya can recover lost expected profits regardless of whether he is established or has any track record.

The purpose of this award is to put Mr. Awodiya in the same position he would have been had he earned the MD degree. The completion of a degree enhances earning capacity. Earning capacity is the ability to earn money in the future.

By its very nature the calculation of an award for lost expected profits must be a rough approximation. Because lost expected profits can never be predicted with complete confidence, any lump sum represents only a "rough and ready" effort to put Mr. Awodiya in the position he would have been in had he earned the MD degree.

You will be asked in the verdict form to determine:

(1) The amount of money, with the Doctor of Medicine (MD) degree, that Mr. Awodiya would have had the power to earn per year;

(2) The amount of money, without the Doctor of Medicine (MD) degree, that Mr. Awodiya has the power to earn per year;

(3) The remaining number of years Mr. Awodiya is expected to work in his lifetime;

(4) The interest rate reflecting the safest available investment that Mr. Awodiya could make; and

(5) The rate of wage increase, that will affect all individuals of society.

**Authorities**: *Sirpal v. Univ. of Miami*, 509 F. App'x 924, 929 (11th Cir. 2013) (Under Florida law, the legal relationship between a private university and a student is "solely contractual in character."); *Sharick v. Southeastern University*, 780 So. 2d 136, 139–140 (Fla. Dist. Ct. App. 2000) ("In valuing the loss of this degree … it is appropriate to consider the possibility of lost future earnings." This is "measured by the value of the expected profits" in "the analogous context of lost prospective profits."), *review granted*, 804 So.2d 330 (Fla. 2001), 805 So.2d 809 (Fla. 2002), *review dismissed*, 822 So.2d 1290 (Fla. 2002); *W.W. Gay Mech. Contr. v. Wharfside Two*, 545 So. 2d 1348, 1351 (Fla. 1989) ("can recover lost prospective profits regardless of whether it is established or has any 'track record.'"); *W.R. Grace & Co.-Conn. v. Pyke*, 661 So. 2d 1301, 1304 (Fla. Dist. Ct. App. 1995) ("An award for loss of earning capacity is measured by the plaintiff's diminished ability to earn money in the future. The jury is not to be concerned with actual future loss of earnings, but with the loss of the power to earn." (citations omitted)); *Walker v. Electronic Products Engineering Co.*, 248 So. 2d 161, 163 (Fla. 1971) (A "[c]riteria by which loss of earning capacity may be measured" is the "[e]ducation of claimant"); *Albanese v. Albanese*, 135 So. 3d 532, 534 (Fla. Dist. Ct. App. 2014) ("He has about three and a half years more to

complete his pharmacy degree. Upon completion, his earning capacity will be greatly enhanced."); *Sharick v. Southeastern University*, 780 So. 2d 136, 140 (Fla. Dist. Ct. App. 2000) (Holding that an unlawfully dismissed medical student "must be afforded the opportunity to plead and prove damages in the form of the loss of earning capacity that would reasonably have resulted had he received his DO degree."); *Ocean Comms. v. Bubeck*, 956 So. 2d 1222, 1225 (Fla. Dist. Ct. App. 2007) ("The purpose of damages is to put the injured party in as good a position as he would have occupied had the contract been fully performed"); *Culver v. Slater Boat Co.*, 722 F.2d 114, 117, 120–121 (5th Cir. 1984) (Future earning capacity and "The jury may … answer interrogatories"); *Deakle v. John E. Graham Sons*, 756 F.2d 821, 830 n.7 (11th Cir. 1985) ("*Culver* is binding precedent in the Eleventh Circuit."); *Culver*, 722 F.2d at 120 ("we consider only work-life expectancy"); *Jones Laughlin Steel Corp. v. Pfeifer*, 462 U.S. 523, 538 (1983) ("reflecting the safest available investment"); *Deakle v. John E. Graham Sons*, 756 F.2d 821, 832 n.15 (11th Cir. 1985) ("The wage inflation incorporated here is 'general' in the sense that it will affect all individuals of society"); *Delta Air Lines, Inc. v. Ageloff*, 552 So. 2d 1089, 1093 (Fla. 1989) ("by its very nature the calculation of an award for lost earnings must be a rough approximation. Because the lost stream can never be predicted with complete confidence, any lump sum represents only a 'rough and ready' effort to put the plaintiff in the position he would have been in").

Granted: _____

Granted as Modified: _____

Denied: _____

78

### DEFENDANT'S REQUESTED JURY INSTRUCTION NO. 33
### DAMAGES FOR LOSS OF ANY FUTURE EARNING CAPACITY

You must now determine whether Mr. Awodiya is entitled to an award of damages for loss of any future earning capacity. The purpose of a jury's award of damages for loss of any future earning capacity is to compensate a plaintiff for loss of capacity to earn income as opposed to actual loss of future earnings. In order for Mr. Awodiya to be entitled to damages for loss of any future earning capacity, he must demonstrate not only a reasonable certainty of injury, but he must also present evidence that will allow you to reasonably calculate loss earning capacity. Damages must be established with reasonable certainty. If you find that Mr. Awodiya has failed to present sufficient evidence in support of his claims for loss of any future earning capacity, you must not award such damages.

If you find that sufficient evidence has been presented, the measure of damages is the loss of capacity to earn by virtue of any impairment you may find. Your decision must be based on all relevant factors including the plaintiff's age, health, habits, occupation, surroundings, and earnings before and after Mr. Awodiya's injury.

Any amount of damages that you allow for loss of any future earning capacity should be reduced to its present money value and only the present money value of those future economic damages should be included in your verdict.

Source: Florida Supreme Court Pattern Jury Instructions, 417.12; *W.R. Grace & Company-Conn. v. Pyke*, 661 So. 2d 1301 (Fla. 1995); *Benjamin v. Diel*, 831 So. 2d 1227 (Fla. Dist. Ct. App. 2002); *GEICO General Insurance Com. v. Dixon*, 209 So. 3d 77 (Fla. Dist. Ct. App. 2017).

Granted:                          _____

Granted as Modified:              _____

Denied:                           _____

**PLAINTIFF'S OBJECTIONS**: Plaintiff is not pursing double compensatory dames for lost future enhanced earning capacity. This instruction misstates the applicable law and is inappropriate because there is already an instruction on compensatory damages under the Rehabilitation Act claim. This will only confuse the jury.

**Plaintiff's Authorities**: *Sirpal v. Univ. of Miami*, 509 F. App'x 924, 929 (11th Cir. 2013) (Under Florida law, the legal relationship between a private university and a student is "solely contractual in character."); *Sharick v. Southeastern University*, 780 So. 2d 136, 139–140 (Fla. Dist. Ct. App. 2000) ("In valuing the loss of this degree … it is appropriate to consider the possibility of lost future earnings." This is "measured by the value of the expected profits" in "the analogous context of lost prospective profits."), *review granted*, 804 So.2d 330 (Fla. 2001), 805 So.2d 809 (Fla. 2002), *review dismissed*, 822 So.2d 1290 (Fla. 2002); *W.W. Gay Mech. Contr. v. Wharfside Two*, 545 So. 2d 1348, 1351 (Fla. 1989) ("can recover lost prospective profits regardless of whether it is established or has any 'track record.'"); *W.R. Grace & Co.-Conn. v. Pyke*, 661 So. 2d 1301, 1304 (Fla. Dist. Ct. App. 1995) ("An award for loss of earning capacity is measured by the

plaintiff's diminished ability to earn money in the future. The jury is not to be concerned with actual future loss of earnings, but with the loss of the power to earn." (citations omitted)); *Walker v. Electronic Products Engineering Co.*, 248 So. 2d 161, 163 (Fla. 1971) (A "[c]riteria by which loss of earning capacity may be measured" is the "[e]ducation of claimant"); *Albanese v. Albanese*, 135 So. 3d 532, 534 (Fla. Dist. Ct. App. 2014) ("He has about three and a half years more to complete his pharmacy degree. Upon completion, his earning capacity will be greatly enhanced."); *Sharick v. Southeastern University*, 780 So. 2d 136, 140 (Fla. Dist. Ct. App. 2000) (Holding that an unlawfully dismissed medical student "must be afforded the opportunity to plead and prove damages in the form of the loss of earning capacity that would reasonably have resulted had he received his DO degree."); *Ocean Comms. v. Bubeck*, 956 So. 2d 1222, 1225 (Fla. Dist. Ct. App. 2007) ("The purpose of damages is to put the injured party in as good a position as he would have occupied had the contract been fully performed"); *Delta Air Lines, Inc. v. Ageloff*, 552 So. 2d 1089, 1093 (Fla. 1989) ("by its very nature the calculation of an award for lost earnings must be a rough approximation. Because the lost stream can never be predicted with complete confidence, any lump sum represents only a 'rough and ready' effort to put the plaintiff in the position he would have been in").

### DEFENDANT'S REQUESTED JURY INSTRUCTION NO. 34
### DOUBLE RECOVERY PROHIBITED

Mr. Awodiya's claims for fraudulent inducement and negligent misrepresentation are based on the same facts and rely on the same elements of damage.  Thus, recovery on both counts is prohibited and if you find Ross University liable under both theories, you may only award judgment once.

Source: *Minotty v. Baudo*, 42 So. 3d 824, 833-34 (Fla. Dist. Ct. App. 2010).

Granted: _____

Granted as Modified: _____

Denied: _____

49121024;5

### DEFENDANT'S REQUESTED JURY INSTRUCTION NO. 35
### MATTER OF LAW ALREADY DETERMINED BY THE COURT

The Court has already made certain determinations as a matter of law.  Given these rulings, certain issues should not be considered in your determination as to liability.  The Court has previously held:

- The Release of Information Consent Form Agreement was not a request for accommodation.

- The Release of Information Consent Form Agreement did not authorize the Counseling Center to request an accommodation on Mr. Awodiya's behalf, it only allowed the Counseling Center to provide information if an accommodation is requested.

- Mr. Awodiya did not submit a written request for an accommodation as required by Student Handbook and Academic Catalog.

Source:  *Awodiya v. Ross University School of Medicine, School of Veterinary Medicine Limited,* Case No. 18-6042, (S.D. Fla. 2018), *Omnibus Order on Motions for Summary Judgment*, ECF No. 154

Granted:                     _____

Granted as Modified:     _____

Denied:                      _____

**PLAINTIFF'S OBJECTIONS**: RUSM's conclusions misstates the Court's Order. More importantly, none of the RUSM's mischaracterized "holdings" were in the context of the ADA and the Rehabilitation Act. The breach of fiduciary duty claim, and breach of express contract claims are no longer relevant. Thus, this instruction only serves to confuse the jury.

## PLAINTIFF'S REQUESTED JURY INSTRUCTION NO. 36

### Compensatory Damages – Emotional Distress

To determine whether and how much Mr. Awodiya should recover for emotional pain and mental anguish, you may consider the following factors:

- Whether Mr. Awodiya lost the esteem of his peers;
- Whether he received psychological counseling or other medical treatment;
- Whether he suffered a loss of income;
- The degree of emotional distress;
- The context of the events surrounding the emotional distress;
- The evidence tending to corroborate her testimony;
- The nexus between the challenged conduct and the emotional distress; and
- Any mitigating circumstances.

Mr. Awodiya does not have to introduce evidence of a monetary value for intangible things like mental anguish. You must determine what amount will fairly compensate him for those claims. There is no exact standard to apply, but the award should be fair in light of the evidence.

**Authorities**: Eleventh Circuit Civil Pattern Jury Instructions 4.12 (2019); *Sheely v. MRI Radiology Network, P.A.*, 505 F.3d 1173, 1204 (11th Cir. 2007) ("[W]e conclude that emotional damages are available to make whole the victims of violations of § 504 of the Rehabilitation Act[.]"); *Barker v. Niles Bolton Assoc*, 316 Fed. Appx. 933, 939-40 (11th Cir. 2009) ("The challenged instructions here accurately reflected the law and did not mislead the jury…. The district court then offered nine factors which the jury could consider in assessing whether Barker suffered emotional distress damages.").

Granted: _____

Granted as Modified: _____

Denied: _____

49121024;5

**DEFENDANT'S REQUESTED JURY INSTRUCTION NO. 37**
**EMOTIONAL DISTRESS DAMAGES PRECLUDED UNDER FLORIDA LAW**

Mr. Awodiya is seeking damages for emotional distress in connection with his negligent misrepresentation and fraudulent inducement claims.  Absent a showing of physical injury, Mr. Awodiya is not entitled to damages for emotional distress under either his claim for negligent misrepresentation or his fraudulent inducement claim.  If you find that Mr. Awodiya has not shown any physical injury by a preponderance of the evidence, then you must not award damages for emotional distress.

Source: *Reynolds v. State Farm Mutual Auto. Ins. Co.*, 611 So. 2d 1294, 1295-96 (Fla. Dist. Ct. App. 1993); *R.J. v. Humana of Fla., Inc.*, 652 So. 2d 360, 362 (Fla. 1995).

Granted:                          _____

Granted as Modified:              _____

Denied:                           _____

**PLAINTIFF'S OBJECTIONS**: RUSM's instruction is not supported by the source that it cites. Furthermore, this instruction does not apply to intentional torts, such as fraud in the inducement. RUSM misapplies the "impact rule."

**Plaintiff's Authorities**: *Thomas v. Hospital Board of Directors of Lee County*, 41 So. 3d 246, 253 (Fla. Dist. Ct. App. 2010) ("[T]he impact rule is not applicable to the claim for intentional misrepresentation. The impact rule essentially provides that in an action for simple negligence, there can be no recovery for mental or emotional pain and suffering unconnected with physical injury…. [T]hat rule has not been extended to intentional tort cases …."); *Rowell v. Holt*, 850 So. 2d 474, 478 n.1 (Fla. 2003) ("[I]ntentional torts have been deemed exclusions from, as opposed to exceptions to, the impact rule.").

49121024;5