# Exhibit B

*REQUESTED JURY INSTRUCTION NO. 1*

~~Preliminary Instructions Before Trial~~
*PRELIMINARY INSTRUCTIONS BEFORE TRIAL*

~~Members of the Jury:~~Ladies and Gentlemen:

Now that you've been sworn, I need to explain some basic principles about a civil trial and your duty as jurors. These are preliminary instructions. I'll give you more detailed instructions at the end of the trial.

The jury's duty:

It's your duty to listen to the evidence, decide what happened, and apply the law to the facts. It's my job to provide you with the law you must apply – and you must follow the law even if you disagree with it.

What is evidence:

You must decide the case on only the evidence presented in the courtroom. Evidence comes in many forms. It can be testimony about what someone saw, heard, or smelled. It can be an exhibit or a photograph. It can be someone's opinion.

Some evidence may prove a fact indirectly. Let's say a witness saw wet grass outside and people walking into the courthouse carrying wet umbrellas. This may be indirect evidence that it rained, even though the witness didn't personally see it rain. Indirect evidence like this is also called "circumstantial evidence" – simply a chain of circumstances that likely proves a fact.

As far as the law is concerned, it makes no difference whether evidence is direct or indirect. You may choose to believe or disbelieve either kind. Your job is to give each piece of evidence whatever weight you think it deserves.

What is not evidence:

During the trial, you'll hear certain things that are not evidence and you must not consider them.

First, the ~~lawyers~~parties' statements and arguments aren't evidence except if Mr. Awodiya takes the witness stand and testifies under oath. In their opening statements and closing arguments, the ~~lawyers~~parties will discuss the case. Their remarks may help you follow each side's arguments and presentation of evidence. But the remarks themselves aren't evidence and shouldn't play a role in your deliberations.

Second, the ~~lawyers~~parties' questions and objections aren't evidence. Only the witnesses' answers are evidence. Don't decide that something is true just because a ~~lawyer~~party's question suggests that it is. For example, a lawyer may ask a witness, "You saw Mr. Jones hit his sister,

didn't you?" That question is not evidence of what the witness saw or what Mr. Jones did – unless the witness agrees with it.

There are rules of evidence that control what the court can receive into evidence. When a ~~lawyer~~party asks a witness a question or presents an exhibit, the opposing ~~lawyer~~party may object if he thinks the rules of evidence don't permit it. If I overrule the objection, then the witness may answer the question or the court may receive the exhibit. If I sustain the objection, then the witness cannot answer the question, and the court cannot receive the exhibit. When I sustain an objection to a question, you must ignore the question and not guess what the answer might have been.

Sometimes I may disallow evidence – this is also called "striking" evidence – and order you to disregard or ignore it. That means that you must not consider that evidence when you are deciding the case.

I may allow some evidence for only a limited purpose. When I instruct you that I have admitted an item of evidence for a limited purpose, you must consider it for only that purpose and no other.

<u>Credibility of witnesses:</u>

To reach a verdict, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, part of it, or none of it. When considering a witness's testimony, you may take into account:

- the witness's opportunity and ability to see, hear, or know the things the witness is testifying about;

- the witness's memory;

- the witness's manner while testifying;

- any interest the witness has in the outcome of the case;

- any bias or prejudice the witness may have;

- any other evidence that contradicts the witness's testimony;

- the reasonableness of the witness's testimony in light of all the evidence; and

- any other factors affecting believability.

At the end of the trial, I'll give you additional guidelines for determining a witness's credibility.
~~Description of the case:~~

This is a civil case. To help you follow the evidence, I'll summarize the Parties' positions. In particular, this dispute stems from plaintiff's dismissal from medical school. The plaintiff, in this matter is Oluwamuyiwa Awodiya ~~, claims the~~.  The defendant, is Ross University School of Medicine ~~discriminated against him by failing to provide an examination accommodation for his Attention-Deficit/Hyperactivity Disorder ("ADHD"), "Anxiety" and/or Obsessive Compulsive Disorder ("OCD").~~.

In 2014, Mr. Awodiya enrolled in Ross University as a medical student and attended the university until his dismissal.  During his fifth semester, Mr. Awodiya started struggling with emotional distress issues stemming from a relationship with a romantic partner.  Mr. Awodiya failed his fifth semester, ultimately leading him to exhibit suicidal thoughts.

On January 18, 2016, Mr. Awodiya was diagnosed with "Attention Deficit Disorder Without Mention of Hyperactivity."  On February 17, 2016, Mr. Awodiya was diagnosed with "Anxiety Stated, Unspecified."   Despite having these diagnoses, Mr. Awodiya never submitted information regarding his diagnosis or information pertaining to the impact of his diagnoses to Ross University's accommodations office.

Mr. Awodiya was dismissed from Ross University because of his failure to meet certain academic requirements.  Ross University denies Mr. Awodiya's claims and contends that: i) Mr. Awodiya failed to formally apply for an accommodation; ii) Mr. Awodiya was not ~~an otherwise qualified individual with or without a reasonable accommodation.~~ a "qualified individual" as required under the Americans with Disabilities Act and the Rehabilitation Act; and iii) the ADA and the Rehabilitation Act do not apply extraterritorially to conduct in Dominica.

At the time of his enrollment, Mr. Awodiya also claims that ~~Ross University fraudulently induced prospective students into enrolling at the university. Mr. Awodiya claims that Ross University advertised a false statement or omitted a material fact about the statement that was published in the Admissions Requirements section of its website.~~ he relied on a representation made my Ross University on its website in making his decision to enroll into the school. Specifically, Mr. Awodiya ~~claims~~ alleges that Ross University ~~misrepresented that it was the policy of the university, for the university to comply with the American with Disabilities Act (ADA)~~'s claim that it complies with the ADA in Dominica as applicable and practical was false and he justifiably relied on such statement in making a decision to attend medical school in Dominica.  Ross University contends that the statement is not false and that Mr. Awodiya did not rely on the statement at the time that he applied to Ross University.  Furthermore, as previously mentioned, Ross University contends that the ADA and the Rehabilitation Act do not apply extraterritorially to conduct performed in Dominica.

<u>Burden of proof:</u>

Mr. Awodiya has the burden of proving his case by what the law calls a "preponderance of the evidence." That means Mr. Awodiya must prove that, in light of all the evidence, what he claims is more likely true than not. So, if you could put the evidence favoring Mr. Awodiya and the evidence favoring Ross University on opposite sides of balancing scales, Mr. Awodiya needs to

make the scales tip to his side. If Mr. Awodiya fails to meet this burden, you must find in favor of Ross University.

To decide whether any fact has been proved by a preponderance of the evidence, you may – unless I instruct you otherwise – consider the testimony of all witnesses, regardless of who called them, and all exhibits that the court allowed, regardless of who produced them. After considering all the evidence, if you decide a claim or fact is more likely true than not, then the claim or fact has been proved by a preponderance of the evidence.

When more than one claim is involved, you should consider each claim separately.

On certain issues, called "affirmative defenses," Ross University has the burden of proving the elements of a defense by a preponderance of the evidence. I'll instruct you on the facts Ross University must prove for any affirmative defense. After considering all the evidence, if you decide that Ross University has successfully proven that the required facts are more likely true than not, the affirmative defense is proved.

Conduct of the jury:

While serving on the jury, you may not talk with anyone about anything related to the case. You may tell people that you're a juror and give them information about when you must be in court. But you must not discuss anything about the case itself with anyone.

You shouldn't even talk about the case with each other until you begin your deliberations. You want to make sure you've heard everything – all the evidence, the ~~lawyers~~parties' closing arguments, and my instructions on the law – before you begin deliberating. You should keep an open mind until the end of the trial. Premature discussions may lead to a premature decision.

In this age of technology, I want to emphasize that in addition to not talking face-to-face with anyone about the case, you must not communicate with anyone about the case by any other means. This includes e-mails, text messages, and the Internet, including social-networking websites such as Facebook, Instagram, and Twitter.

You also should not Google or search online or offline for any information about the case, the parties, or the law. Do not read or listen to the news about this case, visit any places related to this case, or research any fact, issue, or law related to this case. The law forbids the jurors to talk with anyone else about the case and forbids anyone else to talk to the jurors about it. It is very important that you understand why these rules exist and why they are so important. You must base your decision only on the testimony and other evidence presented in the courtroom. It is not fair to the parties if you base your decision in any way on information you acquire outside the courtroom. For example, the law often uses words and phrases in special ways, so it is important that any definitions you hear come only from me and not from any other source. Only you jurors can decide a verdict in this case. The law sees only you as fair, and only you have promised to be fair – no one else is so qualified.

Taking notes:

If you wish, you may take notes to help you remember what the witnesses said. If you do take notes, please do not share them with anyone until you go to the jury room to decide the case. Do not let note-taking distract you from carefully listening to and observing the witnesses. When you leave the courtroom, you should leave your notes hidden from view in the jury room.

Whether or not you take notes, you should rely on your own memory of the testimony. Your notes are there only to help your memory. They are not entitled to greater weight than your memory or impression about the testimony.

<u>Course of the trial:</u>

Let's walk through the trial. First, each side may make an opening statement, but they do not have to. Remember, an opening statement is not evidence, and it's not supposed to be argumentative; it's just an outline of what that party intends to prove.

Next, Mr. Awodiya will present his witnesses and ask them questions. After Mr. Awodiya questions the witness, Ross University may ask the witness questions – this is called "cross-examining" the witness. Then Ross University will present its witnesses, and Mr. Awodiya may cross-examine them. You should base your decision on all the evidence, regardless of which party presented it.

After all the evidence is in, the parties' lawyers will present their closing arguments to summarize and interpret the evidence for you, and then I'll give you instructions on the law.

~~Authorities~~Source: Eleventh Circuit ~~Civil~~ Pattern Jury Instructions ~~1.1 (2019).~~, "General Preliminary Instruction"

Granted:                              _____

Granted as Modified:          _____

Denied:                               _____

*REQUESTED JURY INSTRUCTION NO. 2*

~~Jury Questions~~
*JURY QUESTIONS*

During this trial, you may submit questions to a witness after the ~~lawyers~~parties have finished their own questioning. Here is how the procedure works: After each witness has testified, and the ~~lawyers~~parties have asked all of their questions, I will ask if any of you have questions. If you have a question, write it down and give it to the court staff.

You may submit a question for a witness only to clarify an answer or to help you understand the evidence. Our experience with juror questions indicates that jurors rarely have more than a few questions for any one witness, and there may be no questions at all for some witnesses.

If you submit a question, the court staff will give it to me and I will share your questions with the ~~lawyers~~parties in the case. If the rules of evidence allow your question, one of the ~~lawyers~~parties or I will read your question to the witness. I may modify the form or phrasing of a question so that it is allowed under the evidence rules. Sometimes, I may not allow the questions to be read to the witness, either because the law does not allow it or because another witness is in a better position to answer the question. If I cannot allow the witness to answer a question, you must not draw any conclusions from that fact or speculate on what the answer might have been.

Here are several important things to keep in mind about your questions for the witnesses:

• First, you must submit all questions in writing. Please do not ask any questions aloud.

• Second, the court cannot re-call witnesses to the stand for additional juror questions. If you have a question for a particular witness, you must submit it when I ask.

• Finally, because you should remain neutral and open-minded throughout the trial, you should phrase your questions in a way that does not express an opinion about the case or a witness. You must keep an open mind until you have heard all the evidence, the closing arguments, and my final instructions on the law.

~~Authorities~~Source: Eleventh Circuit ~~Civil~~ Pattern Jury Instructions ~~1.4 (2019).~~, "Jury Questions"

Granted: _____

Granted as Modified: _____

Denied: _____

### *REQUESTED JURY INSTRUCTION NO. 3*

~~Interim Statements (Preliminary)~~
### *INTERIM STATEMENTS*

At times during the trial, the ~~lawyers~~parties will address you. You'll soon hear the ~~lawyers~~parties' opening statements, and at the trial's conclusion you'll hear their closing arguments. Sometimes the ~~lawyers~~parties may choose to make short statements to you, either to preview upcoming evidence or to summarize and highlight evidence they just presented. These statements and arguments are the ~~lawyers~~parties' views of the evidence or of what they anticipate the evidence will be. They are not evidence themselves.

~~Mr. Awodiya has decided not to use a lawyer in this case and will be representing himself.~~ ~~Mr. Awodiya has decided to act as his own lawyer. You will hear him speak at various times~~ ~~during the trial. He may make an opening statement and a closing argument. He may ask questions~~ ~~of witnesses, make objections, and argue to the court. When he is acting as a lawyer, his questions,~~ ~~objections, and arguments to the court are not evidence. The only evidence in the case is the~~ ~~testimony of Mr. Awodiya and other witnesses under oath and exhibits admitted into evidence.~~


~~**Authorities**~~Source: Eleventh Circuit ~~Civil~~ Pattern Jury Instructions ~~1.5 (2019); *U.S. v. Brown*, 393~~ ~~Fed. Appx. 686, 704 n.15 (11th Cir. 2010) (Addressing jury instructions appropriate for *pro se*~~ ~~defendants in the context of a criminal case).~~, "Interim Statements"

Granted: _____

Granted as Modified: _____

Denied: _____

~~REQUESTED~~ *JURY INSTRUCTION NO. 4*

~~Use of Depositions~~

***USE OF DEPOSITIONS***

A deposition is a witness's sworn testimony that is taken before the trial. During a deposition, the witness is under oath and swears to tell the truth, and the ~~lawyers for each party~~parties may ask questions. A court reporter is present and records the questions and answers.

The deposition of [~~name of~~insert witness], taken on [insert date], [~~is about to be~~has been] presented to you [~~by a video/by~~ reading the transcript/playing a video of the testimony]. Deposition testimony is entitled to the same consideration as live testimony, and you must judge it in the same way as if the witness was testifying in court.

~~Authorities~~Source: Eleventh Circuit ~~Civil~~ Pattern Jury Instructions ~~2.2 (2019)~~, "Use of Depositions"

Granted:                        _____

Granted as Modified:            _____

Denied:                         _____

**_DEFENDANT'S_ _REQUESTED JURY INSTRUCTION NO. 5_**
~~**Interim Statements (Trial)**~~

**_INTERIM STATEMENTS_**

At the beginning of the trial, I told you that the ~~lawyers~~parties might make short statements previewing upcoming evidence or summarizing and highlighting evidence that they have already presented before. Right now, ~~[Mr./Ms.]~~ [insert name of ~~attorney~~party] is going to make a short statement. Please remember that the statement you are about to hear – like all statements by the ~~lawyers~~ parties– is [insert ~~name of attorney~~party ] view of the evidence or of what he anticipates the evidence will be, but isn't itself evidence.

~~**Authorities**~~Source: Eleventh Circuit ~~Civil~~ Pattern Jury Instructions ~~2.4 (2019).~~, "Interim Statements"

Granted: _____

Granted as Modified: _____

Denied: _____

***REQUESTED JURY INSTRUCTION NO. 8***

~~The Duty to Follow Instructions – Corporate Party Involved~~

***DUTY TO FOLLOW INSTRUCTIONS***
***CORPORATE PARTY INVOLVED***

Your decision must be based only on the evidence presented here. You must not be influenced in any way by either sympathy for or prejudice against anyone.

You must follow the law as I explain it – even if you do not agree with the law – and you must follow all of my instructions as a whole. You must not single out or disregard any of the instructions on the law.

The fact that a corporation is involved as a party must not affect your decision in any way. A corporation and all other persons stand equal before the law and must be dealt with as equals in a court of justice. When a corporation is involved, of course, it may act only through people as its employees; and, in general, a corporation is responsible under the law for the acts and statements of its employees that are made within the scope of their duties as employees of the company.

~~Authorities~~Source: Eleventh Circuit ~~Civil~~ Pattern Jury Instructions ~~3.2.2 (2019).~~, "Duty to Follow Instructions - Corporate Party Involved"

Granted:                         _____

Granted as Modified:     _____

Denied:                         _____

***REQUESTED JURY INSTRUCTION NO. 9***

~~Consideration of Direct and Circumstantial Evidence; Argument of Counsel; Comments by the Court~~

***CONSIDERATION OF DIRECT AND CIRCUMSTANTIAL EVIDENCE; ARGUMENT OF COUNSEL; COMMENTS BY THE COURT***

As I said before, you must consider only the evidence that I have admitted in the case. Evidence includes the testimony of witnesses and the exhibits admitted. But, anything the ~~lawyers~~parties say is not evidence~~and isn't binding on you~~, except for when Mr. Awodiya is testifying in the witness box and under oath.

You should not assume from anything I have said that I have any opinion about any factual issue in this case. Except for my instructions to you on the law, you should disregard anything I may have said during the trial in arriving at your own decision about the facts~~— unless I have taken judicial notice of a fact~~.

Your own recollection and interpretation of the evidence is what matters.

In considering the evidence you may use reasoning and common sense to make deductions and reach conclusions. You should not be concerned about whether the evidence is direct or circumstantial.

"Direct evidence" is the testimony of a person who asserts that he or she has actual knowledge of a fact, such as an eyewitness.

"Circumstantial evidence" is proof of a chain of facts and circumstances that tend to prove or disprove a fact. There is no legal difference in the weight you may give to either direct or circumstantial evidence.

~~Authorities~~Source: Eleventh Circuit ~~Civil~~ Pattern Jury Instructions ~~3.3 (2019).~~, "Consideration of Direct and Circumstantial Evidence; Argument of Counsel; Comments by the Court"

Granted:          _____

Granted as Modified:   _____

Denied:          _____

*REQUESTED JURY INSTRUCTION NO. 14*

~~Expert Witness~~

*__EXPERT WITNESS__*

When scientific, technical or other specialized knowledge might be helpful, a person who has special training or experience in that field is allowed to state an opinion about the matter.

As with any other witness's testimony, you must decide for yourself whether to rely upon the opinion.

~~When a witness is being paid for reviewing and testifying concerning the evidence, you may consider the possibility of bias and should view with caution the testimony of such witness where court testimony is given with regularity and represents a significant portion of the witness's income.~~

~~Authorities~~Source: Eleventh Circuit Civil Pattern Jury Instructions ~~3.6.2 (2019~~, Expert Witness, § 3.6.1 (2018).

Granted: _____

Granted as Modified: _____

Denied: _____

### *REQUESTED JURY INSTRUCTION NO. 16*

~~Responsibility for Proof — Ross University's Affirmative Defense Preponderance of the Evidence~~

### *RESPONSIBILITY FOR PROOF—AFFIRMATIVE DEFENSE—PREPONDERANCE OF THE EVIDENCE*

In this case, Ross University asserts the affirmative ~~defense of mitigating damages.~~ defenses of: (1) failure to mitigate; and (2) RUSM made a good faith effort to comply with Title III of the American with Disabilities Act. Even if Mr. Awodiya proves his claims by a preponderance of the evidence, Ross University can prevail in this case if it proves an affirmative defense by a preponderance of the evidence.

When more than one affirmative defense is involved, you should consider each one separately.

I caution you that Ross University does not have to disprove Mr. Awodiya's claims, but if Ross University raises an affirmative defense, the only way it can prevail on that specific defense is if it proves that defense by a preponderance of the evidence.

~~Authorities~~Source: Eleventh Circuit ~~Civil~~ Pattern Jury Instructions ~~3.7.2 (2019).~~, "Responsibility for Proof—Affirmative Defense—Preponderance of the Evidence"

Granted:                    _____

Granted as Modified:      _____

Denied:                     _____

### *REQUESTED JURY INSTRUCTION NO. 17*
~~Duty to Deliberate When Only the Plaintiff Claims Damages~~
*DUTY TO DELIBERATE WHEN ONLY THE PLAINTIFF CLAIMS DAMAGES*

Of course, the fact that I have given you instructions concerning the issue of Mr. Awodiya's damages should not be interpreted in any way as an indication that I believe that ~~either party~~the Mr. Awodiya should, or should not, prevail in this case.

Your verdict must be unanimous – in other words, you must all agree. Your deliberations are secret, and you~~'ll~~ will never have to explain your verdict to anyone.

Each of you must also decide the case for yourself, but only after fully considering the evidence with the other jurors. So you must discuss the case with one another and try to reach an agreement. While you~~'re~~ are discussing the case, ~~don't~~do not hesitate to reexamine your own opinion and change your mind if you become convinced that you were wrong. But ~~don't~~do not give up your honest beliefs just because others think differently or because you simply want to get the case over with.

Remember that, in a very real way, you~~'re~~ are judges – judges of the facts. Your only interest is to seek the truth from the evidence in the case.

**~~Authorities~~Source**: Eleventh Circuit ~~Civil~~ Pattern Jury Instructions~~3.8.1 (2019)~~., "Duty to Deliberate When Only the Plaintiff Claims Damages"

Granted:                          _____

Granted as Modified:       _____

Denied:                           _____

*REQUESTED JURY INSTRUCTION NO. 20*

**Election of Foreperson; Explanation of Verdict Forms**
***ELECTION OF FOREPERSON; EXPLANATION OF VERDICT FORMS***

When you get to the jury room, choose one of your members to act as foreperson. The foreperson will direct your deliberations and speak for you in court.

A verdict form has been prepared for your convenience.
**[Explain verdict]**

You will take the verdict form to the jury room and when you have reached unanimous agreement you will have your foreperson fill in the verdict form, date and sign it, and then return to the courtroom.

If you should desire to communicate with me at any time, please write down your message or question and pass the note to the marshal who will bring it to my attention. I will then respond as promptly as possible, either in writing or by having you returned to the courtroom so that I can address you orally. I caution you, however, with regard to any message or question you might send, that you should not tell me your numerical division at the time.

**Authorities**Source: Eleventh Circuit ~~Civil~~ Pattern Jury Instructions ~~3.9 (2019).~~, "Election of Foreperson; Explanation of Verdict Forms"

Granted:                          _____

Granted as Modified:              _____

Denied:                           _____

*REQUESTED JURY INSTRUCTION NO. 21*

~~Violation of Title III of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act – Examination Accommodation~~

*AMERICANS WITH DISABILITIES ACT – REASONABLE ACCOMMODATION CLAIM – 42 U.S.C. §§ 12101-12117*

In this case, Mr. Awodiya claims that Ross University discriminated against him <u>because of his disability</u> by failing to provide ~~an examination~~<u>a reasonable</u> accommodation for his disability within the meaning of ~~Title III of~~ the Americans with Disabilities Act (the ADA) ~~and Section 504 of the Rehabilitation Act (the Rehabilitation Act)~~.

Ross University denies Mr. Awodiya's claims and asserts that ~~he was not an "otherwise~~<u>: i) Mr. Awodiya failed to properly request an accommodation; and ii) Mr. Awodiya was not a</u> qualified<u>"</u> individual ~~to participate in the examinations~~.

~~Under the ADA and the Rehabilitation Act, a university offering an examination must assure that the examination is selected and administered so as to best ensure that the examination results accurately reflect the individual's academic performance, rather than reflecting the individual's disability.~~

To succeed on his claim, Mr. Awodiya must prove ~~that~~ each of the following facts ~~are more likely true than not true~~<u>by a preponderance of the evidence</u>:

<u>First</u>:      ~~That~~ Mr. Awodiya had a disability;

<u>Second</u>:   ~~That Ross University knew that~~ Mr. Awodiya ~~had a disability~~<u>was an otherwise qualified individual</u>;

<u>Third</u>:    ~~That~~ Ross University knew of Mr. Awodiya's <u>disability and also knew of his</u> desire for ~~examination~~ accommodations ~~or that Mr. Awodiya's need for an accommodation was obvious~~;

<u>Fourth</u>:   ~~That~~ Mr. Awodiya ~~was an "otherwise qualified" individual to participate in the examinations; and~~<u>requested an accommodation;</u>

<u>Fifth</u>:    ~~That~~ <u>A reasonable accommodation existed that would have allowed Mr. Awodiya to perform the essential functions of the academic curriculum; and</u>

<u>Sixth</u>:    Ross University failed to provide a ~~necessary examination~~<u>reasonable</u> accommodation ~~with deliberate indifference~~.

~~The essential elements of a claim for violations of the ADA and the Rehabilitation Act are the same.~~  <u>Mr. Awodiya is required to prove each of these elements in order for you to find Ross University liable for failure to provide an accommodation.</u>  In the verdict form that I will explain in a moment, you will be asked to answer questions about these factual issues. <u>If one or more of these elements are missing, you must find for Ross University on this issue.</u>

**Authorities**: Eleventh Circuit Civil Pattern Jury Instructions 4.12 (2019) (limited use of pattern instructions because of its inapplicable employment standards under Title I); 42 U.S.C. § 12189 (Title III obligations for examinations); 28 CFR § 36.309(b)(1)(i) (implementing Title III "best ensures" standard that "examination results accurately reflect"); 34 CFR § 104.44(c) (same in Rehabilitation Act; "course examinations"); *Schwarz v. Villages Charter Sch., Inc.*, 165 F. Supp. 3d 1153, 1173 (M.D. Fla. 2016); *McCullum ex rel. DF & TF v. Orlando Reg'l Healthcare Sys., Inc.*, 768 F.3d 1135, 1147 (11th Cir. 2014); *United States v. Hialeah Hous. Auth.*, 418 F. App'x 872, 876 (11th Cir. 2011); *Alumni Cruises, LLC v. Carnival Corp.*, 987 F. Supp. 2d 1290, 1305 (S.D. Fla. 2013); *Redding v. Nova Se. Univ., Inc.*, 165 F. Supp. 3d 1274, 1290 (S.D. Fla. 2015); *Allmond v. Akal Security, Inc.*, 558 F.3d 1312, 1316 n.3 (11th Cir. 2009) ("[T]he same standards govern discrimination claims under the Rehabilitation Act and the ADA ….").

Granted: _____  _____

Granted as Modified: _____  _____

Denied: _____  _____

## PLAINTIFF'S REQUESTED JURY INSTRUCTION NO. 21A

Definition of "Disability"

~~Mr. Awodiya can satisfy the first element under the ADA and the Rehabilitation Act if he proves that it is more likely true than not true~~ The first element requires that Mr. Awodiya prove by a preponderance of the evidence that he had a disability. A "disability" is a physical or mental impairment that substantially limits one or more major life activities.

A "~~mental impairment" means any mental or psychological disorder. Any of the following are considered a mental impairment:~~ physical impairment" is a condition that prevents the body from functioning normally. A "mental impairment" is a condition that prevents the mind from functioning normally.
~~(a) Attention-Deficit/Hyperactivity Disorder ("ADHD"); and~~
~~(b) Obsessive Compulsive Disorder ("OCD").~~

A "major life activity" is an activity that is centrally important to everyday life, including the operation of major bodily functions.  Mr. Awodiya claims that test taking is a major life activity, and you must decide whether it is.

An impairment ~~is a disability within the meaning of the ADA and the Rehabilitation Act if it "~~substantially limits ~~the ability of an individual to perform"~~ a major life activity ~~as~~ if it prevents or significantly restricts a person from performing the activity, compared to ~~most people~~ an average person in the general population.
~~Any one of the following are considered a major life activity:~~

~~(a) Concentration/attention;~~

~~(b) Test-taking;~~

~~(c) Thinking;~~

~~(d) Brain functions; or~~

~~(e) Neurological functions.~~ An impairment that substantially limits one major life activity is a disability even if it does not ~~need to~~ limit any other major life ~~activities in order to be considered a substantially limiting impairment. An impairment does not need to prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting~~ activity.

To decide whether Mr. Awodiya ~~had an impairment that substantially limits concentration/attention, test taking abilities, thinking, brain functions, or neurological functions, it may be useful to~~'s mental impairments substantially limit his ability to take tests, you should consider, as compared to most people in the general population:

(a) ~~the difficulty, effort or time required for~~ the condition under which Mr. Awodiya ~~to perform any of these activities~~ performs on exams;

(b) ~~the length of time it takes Mr. Awodiya to perform any of these activities; or~~ the manner in which Mr. Awodiya performs on exams; and

(c) how long it takes Mr. Awodiya to perform while taking tests.

"Otherwise Qualified"

The second element requires that Mr. Awodiya prove by a preponderance of the evidence that he was qualified to complete Ross University's academic program when Ross University dismissed him from the program.  This means that Mr. Awodiya must show that he had the skill, experience, education, academic and technical requirements to complete his medical school program, and could do the essential functions of the program—with or without reasonable accommodation.

To decide whether Mr. Awodiya was qualified to participate and complete Ross University's medical school program, you should consider his abilities as they existed when Ross University dismissed him from its program.

Ross University contends that Mr. Awodiya is not a "qualified individual" because Mr. Awodiya's continued enrollment at Ross University would have posed a direct threat to Mr. Awodiya.  A "direct threat" is a significant risk to the health or safety of Mr. Awodiya or others that cannot be eliminated by a reasonable accommodation. Therefore, you must decide whether Mr. Awodiya could safely perform the essential functions of Ross University's academic curriculum with or without a reasonable accommodation. In determining whether Mr. Awodiya would have posed a direct threat, you may consider:

(a) the nature of the risk of Mr. Awodiya's condition ;

(b) the severity of the risk of Mr. Awodiya's condition;

(c) ~~the way that Mr. Awodiya's impairment affects the operation of any of these activities.~~ the duration of the risk of Mr. Awodiya's condition;

~~Whether an impairment substantially limits a major life activity should not demand extensive analysis. Given the inherent nature of OCD, this impairment will virtually always be found to impose a substantial limitation on a major life activity.~~

~~In determining whether Mr. Awodiya had a disability, the focus is on how a major life activity is substantially limited, and not on what outcomes Mr. Awodiya can achieve. For example, someone with a learning disability may achieve a high level of academic success, but may nevertheless be substantially limited in the major life activity of learning because of the additional time or effort he or she must spend to read, write, or learn compared to most people in the general population.~~

**Mitigating measures:** When deciding whether an impairment substantially limits a major life activity, it does not matter that an impairment could possibly be corrected by the use of medication.

**Episodic impairment:** If an impairment is are not always a problem but flares up from time to time, it can be a disability if it would substantially limit a major life activity when active.

Mr. Awodiya can also establish that he had a disability by proving that he had a record of a disability. Mr. Awodiya had a "record of" a disability if he had a history of, or had been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities. Mr. Awodiya claims that Ross University misclassified his anxiety disorder.

**Authorities:** 28 CFR § 36.105(d)(ii) ("whether an impairment substantially limits a major life activity should not demand extensive analysis"); 28 CFR § 36.105(b)(1)(ii) (defining mental impairment); 28 CFR § 36.105(d)(1)(v) ("An impairment does not need to prevent, or significantly or severely restrict"); 28 CFR § 36.105(d)(3)(i)- (ii) ("it may be useful in appropriate cases to consider" "condition, manner, or duration"); 28 CFR § 36.105(d)(3)(iii) ("the focus is on how a major life activity is substantially limited, and not on what outcomes an individual can achieve"); *Rawdin v. Am. Bd. of Pediatrics*, 985 F. Supp. 2d 636, 650 (E.D. Pa. 2013) ("test-taking constitutes a major life activity"); 28 C.F.R. § 36.105(b)(2)(i) ("mental impairment includes, but is not limited to … Attention Deficit Hyperactivity Disorder"); 28 CFR §§ 36.105(d)(2)(ii), (iii)(K) ("Given their inherent nature, these types of impairments will, as a factual matter, virtually always be found to impose a substantial limitation on a major life activity…. [O]bsessive compulsive disorder … substantially limits brain function.").


Granted: _____

Granted as Modified: _____

Denied: _____

(d) how likely it is that harm will occur due to Mr. Awodiya's condition; and

(e) whether the potential harm due to Mr. Awodiya's condition is likely to occur in the near future.

Mr. Awodiya has the burden to prove that he did not pose a direct threat to himself and/or to Ross University's employees. If you find that Mr. Awodiya could not safely perform the essential functions of Ross University's academic curriculum with or without a reasonable accommodation, then Mr. Awodiya is not a "qualified individual."

For the third element, Mr. Awodiya must prove by a preponderance of evidence that Ross University knew about his disabilities.

## PLAINTIFF'S REQUESTED JURY INSTRUCTION NO. 21B

### Knowledge of a Disability

For the fourth element, Mr. Awodiya must prove by a preponderance of the evidence that he requested an accommodation.

The second element of the ADA and the Rehabilitation Act requires that Mr. Awodiya prove that it is more likely true than not true that Ross University knew that he had a disability.

**Authorities:** *U.S. v. Hialeah Housing Authority*, 418 Fed. Appx. 872, 876 (11th Cir. 2011).

Granted: _____

Granted as Modified: _____

Denied: _____

Together, the third and fourth elements require Mr. Awodiya to prove that he informed Ross University of both the substantial limitations that his disabilities created and the need for an accommodation.  A duty to provide a reasonable accommodation is not triggered unless a specific demand for an accommodation has been made.

**PLAINTIFF'S REQUESTED JURY INSTRUCTION NO. 21C**

~~**Knowledge of Desire or Need for Examination Accommodations**~~

Mr. Awodiya must actually request an accommodation and be refused before Ross University may be liable.  If you find that Mr. Awodiya failed to provide sufficient notice that would trigger a duty for Ross University to provide an accommodation, you should enter a verdict in Ross University's favor.

For the fifth element, Mr. Awodiya must prove by a preponderance of the evidence that a reasonable accommodation existed that would have allowed him to perform the essential functions of a Ross University medical student.

~~The third element of the ADA and the Rehabilitation Act requires that Mr. Awodiya prove that it is more likely true than not true that *either* (i) Ross University knew of Mr. Awodiya's desire for an accommodation *or* (ii) that Mr. Awodiya's need for an accommodation was obvious.~~

~~Under the ADA and the Rehabilitation Act, a request or specific demand by Mr. Awodiya does not need to follow Ross University's written policies or procedures to satisfy this element; and a request or specific demand by Mr. Awodiya does not need to be formal or use any magic words. Mr. Awodiya does not need to say the word "accommodation" when asking for an accommodation.~~

~~Here are some **examples** of an adequate request or specific demand for an accommodation:~~

~~Example A: An employee tells her supervisor, "I'm having trouble getting to work at my scheduled starting time because of medical treatments I'm undergoing."~~

~~Example B: An employee tells his supervisor, "I need six weeks off to get treatment for a back problem."~~

~~Example C: A new employee, who uses a wheelchair, informs the employer that her wheelchair cannot fit under the desk in her office.~~

~~Each of these examples are an adequate request or demand for an accommodation.~~

~~If you do not find that Mr. Awodiya~~ informed Ross University ~~of his desire for examination accommodations, then you must decide if Mr. Awodiya's need for an accommodation was obvious.~~

~~To find that Mr. Awodiya's need for an accommodation was obvious, the circumstances must have at least been sufficient to cause a reasonable person to make appropriate inquiries about Mr. Awodiya's possible need for an accommodation.~~

~~**Authorities**: *U.S. v. Hialeah Housing Authority*, 418 Fed. Appx. 872, 876 (11th Cir. 2011) ("or circumstances must at least be sufficient to cause a reasonable [person] to make appropriate inquiries about the possible need for an accommodation"); *McCullum ex rel. DF & TF v. Orlando Reg'l Healthcare Sys., Inc.*, 768 F.3d 1135, 1147 (11th Cir. 2014) ("Where the substantial~~

likelihood of harm is obvious, a jury may infer that the defendant had actual knowledge of that substantial risk of harm…. That is, the entity will know of the individual's need for an accommodation because it is obvious." (citations omitted)); *Nattiel v. Fla. Dep't of Corr.*, CASE NO. 1:15-cv-00150-WTH-GRJ, at *1–2 (N.D. Fla. Nov. 27, 2017) (holding that under the ADA, a request for an accommodation is not necessary where the need is "obvious" and also holding that a defendant's "mandated [request] form is not required to trigger the ADA"); *Schwarz v. Villages Charter Sch., Inc.*, 165 F. Supp. 3d 1153, 1173 (M.D. Fla. 2016) ("plaintiff must also establish that the plaintiff requested an accommodation or the need for one was obvious" (parenthesis omitted)); *Alvey v. Gualtieri*, Case No. 8:15-cv-1861-T-33AEP, at *16 (M.D. Fla. Nov. 7, 2016) ("In cases alleging a failure to make reasonable accommodations, the defendant's duty to provide a reasonable accommodation is not triggered until the plaintiff makes a specific demand for an accommodation or the need for an accommodation becomes obvious."); *Awodiya v. Ross University School of Medicine*, Case No. 18-6042, (S.D. Fla. 2018), *Omnibus Order on Motions for Summary Judgment*, ECF No. 154, at *9 (Holding that under the Rehabilitation Act and the ADA, "there is no rule that a 'specific demand' must be one that follows the written policy or procedures in place."); *Schwarz v. City of Treasure Island*, Case No. 8:05-cv-1696-T-30MAP, at *2-3 (M.D. Fla. Oct. 14, 2010) ("[F]ederal law on this issue reflects that a party need not make a 'formal' request or use any 'magic words' when asking for an accommodation."); *See also Holly v. Clairson Indus.*, 492 F.3d 1247, 1261 n.14 (11th Cir. 2007) (quoting ADA examples of sufficient "request" from EEOC Enforcement Guidance); *accord* https://www.eeoc.gov/policy/docs/accommodation.html#requesting.

Granted: _____ _____

Granted as Modified: _____ _____

Denied: _____ _____

        For the sixth element, Mr. Awodiya must prove by a preponderance of the evidence that Ross University failed to provide a reasonable accommodation.

**PLAINTIFF'S REQUESTED JURY INSTRUCTION NO. 21D**

**Definition of "Otherwise Qualified" Individual**

You must decide whether Mr. Awodiya has proven by the preponderance of the evidence that he would have been able to pass his exams, including the NBME CBSE with extended testing time.  Second, you must determine whether it would have been reasonable to require Ross University, under all of the circumstances, to allow Mr. Awodiya extra test time.

~~The fourth element of the ADA and the Rehabilitation Act requires Mr. Awodiya to prove that it is more likely true than not true that he was an "otherwise qualified" individual at the time that Ross University knew of the desire or need for an accommodation and failed to provide one. Mr. Awodiya's later disqualification is not relevant to this claim.~~

In this case, Mr. Awodiya claims ~~that additional testing time on examinations could ensure that the examination results accurately reflect Mr. Awodiya's academic performance, rather than reflecting his disability.~~that Ross University should have accommodated Mr. Awodiya by giving him additional testing time.  Additional testing time can be a reasonable accommodation – but only if Mr. Awodiya shows that extended testing time would have enabled him to perform the essential functions of being a medical school student and shows that it would have been reasonable under the circumstances.

~~An individual is "otherwise qualified" for an examination if he can meet the essential eligibility requirements for participation in the examination, either with or without accommodations.~~

~~Meaningful participation and access to an academic program or activity includes the opportunity to achieve one's academic potential on a level playing field with one's peers. When a qualified student's disability prevents such meaningful participation, a reasonable accommodation is necessary.~~

~~More than one accommodation may be available. Ross University is required to provide the necessary accommodations that best ensures that the examination results accurately reflect Mr. Awodiya's academic performance, rather than reflecting his disability.~~

~~Required modifications to an examination may include additional testing time on examinations.~~

~~Mr. Awodiya only needs to show that additional testing time seems reasonable on its face. Mr. Awodiya satisfies this element by showing that it is plausible that additional testing time on examinations could ensure that the examination results accurately reflect Mr. Awodiya's academic performance, rather than reflecting his disability.~~

~~Mr. Awodiya does not need to satisfy non-essential eligibility requirements to be "otherwise qualified."~~

~~**Authorities**: 42 U.S.C. § 12189 (Title III obligations for examinations); 28 CFR § 36.309(b)(1)(i) (implementing Title III "best ensures" standard that "examination results accurately reflect"); 34 CFR § 104.44(c) (same in Rehabilitation Act under "course examinations"); 28 CFR §~~

36.309(b)(2) ("Required modifications to an examination may include changes in the length of time permitted for completion of the examination ….."); *Redding v. Nova Se. Univ., Inc.*, 165 F. Supp. 3d 1274, 1290 (S.D. Fla. 2015) ("Under both the ADA and Rehabilitation Act, an individual is 'qualified' for a program if she can meet the essential eligibility requirements for participation in the program, either with or without reasonable accommodations."); *Shaikh v. Tex. A&M Univ. Coll. of Med.*, No. 16-20793, at *9-10 (5th Cir. Jun. 20, 2018) ("does not need to satisfy non-essential program requirements"); *McKelvey v. Turnage*, 792 F.2d 194, 204 (D.C. Cir. 1986) (same); *Redding*, 165 F. Supp. 3d at 1294-95 (S.D. Fla. 2015) ("Nova's liability necessarily depends on whether Redding was a 'qualified individual' at the time she allegedly requested, and Nova allegedly denied, the accommodation. Redding's later actions are irrelevant to this claim. Contrary to Nova's argument, Redding's later disqualification does not preclude liability for prior wrongful denials of accommodations."); *Redding*, 165 F. Supp. 3d at 1299 ("Meaningful participation and access to an academic program includes the *opportunity* to advance to the next academic year on the regular schedule and to achieve one's academic potential on a level playing field with one's peers. When a qualified student's disability prevents such meaningful participation, a reasonable accommodation cannot be called unnecessary."); *Alumni Cruises, LLC v. Carnival Corp.*, 987 F. Supp. 2d 1290, 1305 (S.D. Fla. 2013) (quoting *U.S. Airways, Inc. v. Barnett,* 535 U.S. 391, 402 (2002) ("plaintiff satisfies 'burden of production' by showing 'plausible accommodation"); *Barnett*, 535 U.S. at 402 ("need only show that an 'accommodation' seems reasonable on its face, *i.e.,* ordinarily or in the run of cases").

Once an accommodation is required through the proper channels, the appropriate reasonable accommodation is best determined through a flexible, interactive process that involves both Ross University and Mr. Awodiya.  By law, Ross University is not required to grant every accommodation requested by Mr. Awodiya.  Rather, Ross University is only required to provide accommodations that are reasonable.

Further, Mr. Awodiya contends that Ross University failed to properly accommodate him during his second formal appeal for reinstatement.  For a request to be timely, Mr. Awodiya must make a request for an accommodation while still a student at Ross University, and not after the fact.  Thus, if you find that Mr. Awodiya's second formal appeal for reinstatement constitutes a request for accommodation, you must find that such request is untimely and you need not consider whether Mr. Awodiya requested an accommodation during his second formal appeal for reinstatement.

Further, Ross University is not required to ignore misconduct that has occurred because a student subsequently asserts such misconduct was the result of a disability.  Thus, if you find that Ross University dismissed Mr. Awodiya because of his failure to pass the National Board of Medical Examiners' Comprehensive Basic Science Exam, you should not consider whether Ross University failed to accommodate Mr. Awodiya during his second formal appeal for reinstatement.

You must assess given the facts of the case whether Ross University knew that Mr. Awodiya wanted a reasonable accommodation.  You must also consider whether Ross University could be liable for failing to provide a reasonable accommodation where the evidence shows that Mr. Awodiya failed to submit the application form for an accommodation.

Source: Eleventh Circuit Pattern Jury Instructions, §4.12 Americans with Disabilities Act – Reasonable Accommodation Claim – 42 U.S.C. §§ 12101-12117; *Hirsch v. Nova Southeastern Univ., Inc.*, 2005 WL 6705999 (S.D. Fla. 2005); *Barron v. School Bd. of Hillsborough County*, 3 F. Supp. 3d 1323 (S.D. Fla. 2014); *U.S. v. Hialeah Housing Auth.*, 418 Fed. Appx. 872, 876 (11th Cir. 2011); *Alvarez v. Sch. Bd. of Broward Cnty.*, 208 F. Supp. 3d 1281, 1286 (S.D. Fla. 2016); *Halpern v. Wake Forest Univ. Health Sciences*, 669 F. 3d 454. 465 (4th Cir. 2012).

Granted:                           _____

Granted as Modified:           _____

Denied:                            _____

## PLAINTIFF'S REQUESTED JURY INSTRUCTION NO. 21E

### Deliberate Indifference

Finally, the fifth element of the ADA and the Rehabilitation Act requires that Mr. Awodiya prove that it is more likely true than not true that Ross University failed to provide a necessary examination accommodation with deliberate indifference.

Mr. Awodiya must show that Ross University knew there was a substantial likelihood that Mr. Awodiya's examination results would not accurately reflect his academic performance without an examination accommodation for his disability and failed to act on that likelihood.

But if the substantial likelihood was obvious, you may infer that Ross University had actual knowledge of that substantial likelihood.

If you find that Ross University failed to provide a necessary examination accommodation with deliberate indifference, then you must find Ross University liable and Mr. Awodiya is entitled to compensatory damages.

**Authorities**: *McCullum ex rel. DF & TF v. Orlando Reg'l Healthcare Sys., Inc.*, 768 F.3d 1135, 1147 (11th Cir. 2014) ("A plaintiff may prove discriminatory intent by showing that a defendant was deliberately indifferent to his statutory rights…. Where the substantial likelihood of harm is obvious, a jury may infer that the defendant had actual knowledge of that substantial risk of harm…. That is, the entity will know of the individual's need for an accommodation because it is obvious." (citations omitted)); 34 CFR § 104.44(c) (Rehabilitation Act; "course examinations."); 42 U.S.C. § 12189 (examinations); 28 CFR §§ 36.309(a), (b)(1)(i) ("examinations"); *Holly v. Clairson Indus*, 492 F.3d 1247, 1262 (11th Cir. 2007) ("an employer's failure to reasonably accommodate a disabled individual *itself* constitutes discrimination under the ADA"); *Borkowski v. Valley Cent. School Dist*, 63 F.3d 131, 143 (2d Cir. 1995) ("Failure to consider the possibility of reasonable accommodation for such disabilities, if it leads to discharge for performance inadequacies resulting from the disabilities, amounts to a discharge solely because of the disabilities."); *Humphrey v. Memorial Hospitals Ass'n*, 239 F.3d 1128, 1139 (9th Cir. 2001) ("the consequence of the failure to accommodate is, as here, frequently an unlawful termination."); *Danielle Diserafino v. Dist. Sch. Bd. of Collier Cnty.*, Case No: 2:15-cv-569-FtM-29CM, at *9 (M.D. Fla. Aug. 11, 2016) ("A failure to accommodate is akin to a strict liability claim …." (citing *Palmer v. McDonald*, 624 F. App'x 699, 706 (11th Cir. 2015) (per curiam)).

Granted: _____ _____

Granted as Modified: _____ _____

Denied: _____ _____

*REQUESTED JURY INSTRUCTION NO. 24*

~~Compensatory Damages~~

*DAMAGES*

~~When considering the issue of Mr. Awodiya's compensatory damages, you should determine what amount, if any, has been proven by~~  Before you are allowed to award damages, you must find some reasonable basis in the evidence submitted by Mr. Awodiya to support the amount of damages to be awarded.  Mr. Awodiya must, by a~~the~~ preponderance of the evidence ~~as full, just and reasonable compensation for all of Mr. Awodiya's damages as a result of Ross University's violation of the law, no more and no less. Compensatory damages are not allowed as a punishment and must not be imposed or increased to penalize Ross University.  The extent or amount of compensatory damages may be left to reasonable inference.~~, show that the damages sought were caused by Ross University's wrongful act and must show the extent and amount of such damages.

Mr. Awodiya has the burden of presenting evidence to justify an award of damages. Before you are allowed to award any damages, you must find facts sufficient to afford a basis for measuring Mr. Awodiya's loss with reasonable certainty, and the evidence must be such that you may find the amount of the loss by reasonable inference from established fact, and not by conjecture, speculation, or surmise.

~~You should consider the following elements of damage, to the extent you find that Mr. Awodiya has proved them by a preponderance of the evidence, and no others:~~  If you find that Mr. Awodiya has failed to prove his entitlement to damages with reasonable certainty and with sufficient evidence, you need not determine the issue of damages.  Mr. Awodiya's claim cannot be based upon speculation or guesswork.

~~(a)     Lost future enhanced earning capacity; and~~

~~(b)     Emotional pain and mental anguish.~~

**~~Authorities~~**~~: Eleventh Circuit Civil Pattern Jury Instructions 4.12 (2019); *Sharick v. Southeastern University*, 780 So. 2d 136, 140 (Fla. Dist. Ct. App. 2000) ("[T]he extent or amount may be left to reasonable inference."), *review granted*, 804 So.2d 330 (Fla. 2001), 805 So.2d 809 (Fla. 2002), *review dismissed*, 822 So.2d 1290 (Fla. 2002).~~

Source: *Smith v. Austin Dev. Co.*, 538 So. 2d 128, 129 (Fla. Dist. Ct. App. 1989); *Gonzalez v. Barrenechea*, 170 So. 3d 13, 16 (Fla. Dist. Ct. App. 2015).

Granted: _____

Granted as Modified: _____

Denied: _____

*REQUESTED JURY INSTRUCTION NO. 26*
**Ross University's Affirmative Defense – Mitigation of Damages**
*VIOLATION OF SECTION 504 OF THE REHABILITATION ACT OF 1973 - FAILURE TO MITIGATE*

In this case, Ross University claims that Mr. Awodiya could have mitigated his damages with reasonable effort or expenditures. If Ross University unlawfully dismissed Mr. Awodiya and the dismissal caused damages, he is not entitled to recover for those damages which Ross University proves Mr. Awodiya could have mitigated with reasonable efforts or expenditures. By law, Mr. Awodiya is not required to make extraordinary efforts to mitigate his damages. Mr. Awodiya is also not required to undertake any ameliorative efforts. This means that you should consider the reasonableness of Mr. Awodiya's efforts in light of the circumstances facing him at the time, including his ability to make the efforts or expenditures without undue risk, burden, or humiliation. To prove this affirmative defense, Ross University must prove by a preponderance of evidence:First: That Mr. Awodiya made no reasonable effort to obtain a Doctor of Medicine (MD) degree from another institution:You are instructed that any person who claims damages as a result of an alleged wrongful act on the part of another has a duty under the law to "mitigate" those damages. For purposes of this case, the duty to mitigate damages requires Mr. Awodiya to be reasonably diligent in seeking a substantially equivalent opportunity to further his education and another equally lucrative job opportunity.  To prove that Mr. Awodiya failed to mitigate damages, Ross University must prove by a preponderance of the evidence that (1) Mr. Awodiya did not make reasonable diligent efforts to obtain a degree comparable to the degree he would have obtained from Ross University; (2) Mr. Awodiya did not make reasonable diligent efforts to pursue any other type of educational degree; or (3) Mr. Awodiya did not make reasonable diligent efforts to obtain an equally lucrative job position.

Second:    The time period needed to acquire the MD degree at the other institution; and

Third:      The tuition and associated costs incurred at the other institution.

If you do not believe that Ross University has satisfied these elements, then you should find for Mr. Awodiya on this issue.find that Ross University proved by a preponderance of the evidence that Mr. Awodiya failed to mitigate damages, then you should reduce the amount of Mr. Awodiya's damages by the amount that could have been reasonably realized if Mr. Awodiya had taken advantage of an opportunity for a substantially equivalent degree or substantially equivalent employment.

**Authorities**: Florida Standard Jury Instructions (Contract and Business) 504.9; *System Components Corp. v. Florida Dept*, 14 So. 3d 967, 982 (Fla. 2009) ("There is no actual 'duty to mitigate,' because the injured party is not compelled to undertake any ameliorative efforts"); *Thompson v. Fla. Drum Co.*, 651 So.2d 180, 182 (Fla. 1st DCA 1995) ("Extraordinary efforts on the part of a plaintiff to mitigate are not required."), *approved*, 668 So.2d 192 (Fla. 1996); *Sharick v. Southeastern University*, 780 So. 2d 136, 140 (Fla. Dist. Ct. App. 2000) (The "[student] must be afforded the opportunity to plead and prove damages in the form of the loss of earning capacity that would reasonably have resulted had he received his DO degree…. Alternatively, we recognize the potential for mitigation of damages … for him to obtain a DO degree at another institution. In that event, the appropriate measure of damages would only be the reproduction cost of acquiring

~~the degree elsewhere. This would include a calculation of the present value of his lost income~~
~~during the time period needed to acquire the degree, coupled with the tuition and associated costs~~
~~incurred at the new school."),~~ *review granted*~~, 804 So.2d 330 (Fla. 2001), 805 So.2d 809 (Fla.~~
~~2002),~~ *review dismissed*~~, 822 So.2d 1290 (Fla. 2002).~~

Sources: Eleventh Circuit Pattern Jury Instructions, §4.12 Americans with Disabilities Act –
Reasonable Accommodation Claim – 42 U.S.C. §§ 12101-12117; *Hudson v. Chertoff*, 473 F.
Supp. 2d 1292, 1297 (S.D. Fla. 2007).

Granted:                    _____

Granted as Modified:        _____

Denied:                     _____

### *REQUESTED JURY INSTRUCTION NO. 27*
### *FRAUDULENT INDUCEMENT*

Mr. Awodiya alleges a claim for fraudulent inducement against Ross University.

**Fraud in the Inducement**

In this case, Mr. Awodiya claimsalleges that Ross University fraudulently induced prospective students into enrolling at the university.Ross University published the following statement in the Admissions Requirements section of its website:

> It is the policy and practice of the University to comply with the American with Disabilities Act as applicable and practical in Dominica. No qualified individual with a disability will be denied access to or participate services, programs, or activities of Ross University School of Medicine.

Mr. Awodiya further alleges that the statement is false and that Ross University intended for prospective students to rely on this statement when applying and enrolling in Ross University's medical degree program.

To In order to prove fraud in thea claim for fraudulent inducement, Mr. Awodiya must show that it is more likely true than not true:by a preponderance of the evidence each of the following elements:

1. That the statement published by Ross University is a false statement regarding a material fact or that Ross University omitted a material fact about the statement;

2. That Ross University knew that the statement was false when it made it or made the statement knowing it did not know whether it was true or false;

3. That Ross University intended that prospective studentsthe false statement would induce Mr. Awodiya to rely on the statementor act on it when applying for and enrolling into Ross University's medical degree program;

4. That Mr. Awodiya relied on the statement when he applied for enrollment into Ross University; and, if so,

5. Consequent injuryThat the statements caused damages to Mr. Awodiya acting in reliance on the statement.

If you believe that Mr. Awodiya has satisfied these elementsconclude that Plaintiff has not proven that the statement published by Ross University was a false statement, then you should find for Mr. AwodiyaRoss University on this issue. If you do not believe that Mr. Awodiya has satisfied these elements, then you shouldconclude that Plaintiff has not proven that Ross University intended for the false statement to induce Mr. Awodiya to rely on the statement when applying and enrolling into its medical school, you must find for Ross University. If you find

that Plaintiff has not proven that he actually relied on the statement at the time he applied for and enrolled in Ross University, you must find for Ross University ~~on this issue~~.

~~Authorities~~Source: Florida Standard Jury Instructions (Civil), 409.7; *Thompkins v. Lil' Joe Records, Inc.*, 476 F. 3d 1294, 1315 (11th Cir. 2007)~~; ZC Insurance Co. v. Brooks, 847 So. 2d 547, 551 (Fla. Dist. Ct. App. 2003) ("Florida law recognizes that fraud can occur by omission, and places a duty on one who undertakes to disclose material information to disclose that information fully."); Woods v. On Baldwin Pond, LLC, No. 15-13082, at *4 (11th Cir. 2015) ("Florida law does not recognize a stark distinction between fraud by commission and fraud by omission."); Philip Morris USA, Inc. v. Duignan, 243 So. 3d 426, 440 (Discussing in detail, fraud by omission).~~.

Granted:                         _____

Granted as Modified:    _____

Denied:                          _____

*REQUESTED JURY INSTRUCTION NO. 29*
*PUNITIVE DAMAGES*

   a.   *Punitive* ~~Damages Generally~~*damages generally:*

There is an additional claim in this case that you must decide.  If you find for Mr. Awodiya and against Ross University on Mr. Awodiya's claims ~~of fraud in the~~for fraudulent inducement or negligent misrepresentation, you must decide whether, in addition to compensatory damages, punitive damages are warranted as punishment to Ross University and as a deterrent to others.

Mr. Awodiya has filed two separate causes of action against Ross University—fraudulent inducement and negligent misrepresentation.  Mr. Awodiya claims that punitive damages should be awarded against Ross University because of its alleged representation on its website.

Before punitive damages may be awarded, Mr. Awodiya must show by clear and convincing evidence that Ross University was guilty of intentional misconduct or gross negligence, which was a substantial cause of damages to Mr. Awodiya. More specifically, Mr. Awodiya must prove by clear and convincing evidence that Ross University intentionally placed a statement on its website that it knew was false for the purpose of inducing students to apply to its institution.

Under those circumstances you may, in your discretion, award punitive damages against Ross University.  If clear and convincing evidence does not show such conduct by Ross University, punitive damages are not warranted against Ross University.

"Intentional misconduct" means that Ross University had actual knowledge of the wrongfulness of the conduct, that there was a high probability that injury or damage to Mr. Awodiya would occur and that, despite that knowledge, Ross University intentionally pursued that course of conduct, resulting in injury or damage. "Gross negligence" means that Ross University's conduct was so reckless or wanting in care that it constituted a conscious disregard or indifference to the life, safety, or rights of persons exposed to such conduct.

"Clear and convincing evidence" differs from the "greater weight of the evidence" in that it is more compelling and persuasive. As I have already instructed you, "greater weight of the evidence" means the more persuasive and convincing force and effect of the entire evidence in the case.

~~Authorities~~Source:  Florida ~~Standard~~Supreme Court Pattern Jury Instructions ~~(Civil) 503.2a (Notes on Use To 503.2 ¶ 1 ("This instruction is designed so it can be given before the taking of evidence."))~~., 409.8

Granted:                    _____

Granted as Modified:       _____

Denied:                     _____

*REQUESTED JURY INSTRUCTION NO. 33*
*DAMAGES FOR LOSS OF ANY FUTURE EARNING CAPACITY*

You must now determine whether Mr. Awodiya is entitled to an award of damages for loss of any future earning capacity.  The purpose of a jury's award of damages for loss of any future earning capacity is to compensate a plaintiff for loss of capacity to earn income as opposed to actual loss of future earnings.  In order for Mr. Awodiya to be entitled to damages for loss of any future earning capacity, he must demonstrate not only a reasonable certainty of injury, but he must also present evidence that will allow you to reasonably calculate loss earning capacity.  Damages must be established with reasonable certainty.  If you find that Mr. Awodiya has failed to present sufficient evidence in support of his claims for loss of any future earning capacity, you must not award such damages.

If you find that sufficient evidence has been presented, the measure of damages is the loss of capacity to earn by virtue of any impairment you may find.  Your decision must be based on all relevant factors including the plaintiff's age, health, habits, occupation, surroundings, and earnings before and after Mr. Awodiya's injury.

**Compensatory Damages – Lost Future Enhanced Earning Capacity**
Any amount of damages that you allow for loss of any future earning capacity should be reduced to its present money value and only the present money value of those future economic damages should be included in your verdict.

Under Florida law, the legal relationship between Mr. Awodiya and Ross University is solely contractual. In valuing the loss of a Doctor of Medicine (MD) degree, the appropriate measure of damage is the expected profits of that MD degree. Mr. Awodiya can recover lost expected profits regardless of whether he is established or has any track record.

The purpose of this award is to put Mr. Awodiya in the same position he would have been had he earned the MD degree. The completion of a degree enhances earning capacity. Earning capacity is the ability to earn money in the future.

By its very nature the calculation of an award for lost expected profits must be a rough approximation. Because lost expected profits can never be predicted with complete confidence, any lump sum represents only a "rough and ready" effort to put Mr. Awodiya in the position he would have been in had he earned the MD degree.

You will be asked in the verdict form to determine:

(1) The amount of money, with the Doctor of Medicine (MD) degree, that Mr. Awodiya would have had the power to earn per year;

(2) The amount of money, without the Doctor of Medicine (MD) degree, that Mr. Awodiya has the power to earn per year;

(3) The remaining number of years Mr. Awodiya is expected to work in his lifetime;

Case 0:18-cv-60482-RKA   Document 201-2   Entered on FLSD Docket 06/10/2019   Page 36 of 36

~~(4) The interest rate reflecting the safest available investment that Mr. Awodiya could make; and~~

~~(5) The rate of wage increase, that will affect all individuals of society.~~

~~**Authorities**: *Sirpal v. Univ. of Miami*, 509 F. App'x 924, 929 (11th Cir. 2013) (Under Florida law, the legal relationship between a private university and a student is "solely contractual in character."); *Sharick v. Southeastern University*, 780 So. 2d 136, 139-140 (Fla. Dist. Ct. App. 2000) ("In valuing the loss of this degree … it is appropriate to consider the possibility of lost future earnings." This is "measured by the value of the expected profits" in "the analogous context of lost prospective profits."), *review granted*, 804 So.2d 330 (Fla. 2001), 805 So.2d 809 (Fla. 2002), *review dismissed*, 822 So.2d 1290 (Fla. 2002); *W.W. Gay Mech. Contr. v. Wharfside Two*, 545 So. 2d 1348, 1351 (Fla. 1989) ("can recover lost prospective profits regardless of whether it is established or has any 'track record.'"); *W.R. Grace & Co.-Conn. v. Pyke*, 661 So. 2d 1301, 1304 (Fla. Dist. Ct. App. 1995) ("An award for loss of earning capacity is measured by the plaintiff's diminished ability to earn money in the future. The jury is not to be concerned with actual future loss of earnings, but with the loss of the power to earn." (citations omitted)); *Walker v. Electronic Products Engineering Co.*, 248 So. 2d 161, 163 (Fla. 1971) (A "[c]riteria by which loss of earning capacity may be measured" is the "[e]ducation of claimant"); *Albanese v. Albanese*, 135 So. 3d 532, 534 (Fla. Dist. Ct. App. 2014) ("He has about three and a half years more to complete his pharmacy degree. Upon completion, his earning capacity will be greatly enhanced."); *Sharick v. Southeastern University*, 780 So. 2d 136, 140 (Fla. Dist. Ct. App. 2000) (Holding that an unlawfully dismissed medical student "must be afforded the opportunity to plead and prove damages in the form of the loss of earning capacity that would reasonably have resulted had he received his DO degree."); *Ocean Comms. v. Bubeck*, 956 So. 2d 1222, 1225 (Fla. Dist. Ct. App. 2007) ("The purpose of damages is to put the injured party in as good a position as he would have occupied had the contract been fully performed"); *Culver v. Slater Boat Co.*, 722 F.2d 114, 117, 120-121 (5th Cir. 1984) (Future earning capacity and "The jury may … answer interrogatories"); *Deakle v. John E. Graham Sons*, 756 F.2d 821, 830 n.7 (11th Cir. 1985) ("*Culver* is binding precedent in the Eleventh Circuit."); *Culver*, 722 F.2d at 120 ("we consider only work-life expectancy"); *Jones Laughlin Steel Corp. v. Pfeifer*, 462 U.S. 523, 538 (1983) ("reflecting the safest available investment"); *Deakle v. John E. Graham Sons*, 756 F.2d 821, 832 n.15 (11th Cir. 1985) ("The wage inflation incorporated here is 'general' in the sense that it will affect all individuals of society"); *Delta Air Lines, Inc. v. Ageloff*, 552 So. 2d 1089, 1093 (Fla. 1989) ("by its very nature the calculation of an award for lost earnings must be a rough approximation. Because the lost stream can never be predicted with complete confidence, any lump sum represents only a 'rough and ready' effort to put the plaintiff in the position he would have been in").~~

Source: Florida Supreme Court Pattern Jury Instructions, 417.12; *W.R. Grace & Company-Conn. v. Pyke*, 661 So. 2d 1301 (Fla. 1995); *Benjamin v. Diel*, 831 So. 2d 1227 (Fla. Dist. Ct. App. 2002); *GEICO General Insurance Com. v. Dixon*, 209 So. 3d 77 (Fla. Dist. Ct. App. 2017).

Granted: _____

Granted as Modified: _____

Denied: _____