UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

OLUWAMUYIWA AWODIYA,  　　　　　　　　CASE NO.  0:18-cv-60482-KMM-AOV

　　　　Plaintiff,
v.

ROSS UNIVERSITY SCHOOL OF
MEDICINE, SCHOOL OF VETERINARY
MEDICINE LIMITED,

　　　　Defendant.
_____/

**DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S
MOTION IN LIMINE TO EXCLUDE PREJUDICIAL EVIDENCE AND THEORIES**

Defendant Ross University School of Medicine, School of Veterinary Medicine Limited ("Ross University"), by counsel, hereby submits its response in opposition to the Motion in Limine to Exclude Prejudicial Evidence and Theories [ECF No. 194] (the "Motion") filed by plaintiff Oluwamuyiwa Awodiya ("Plaintiff").

**I.    INTRODUCTION**

Plaintiff alleges that Ross University discriminated against him in violation of Section 504 of the Rehabilitation Act of 1973 (the "Rehabilitation Act") and Title III of the Americans with Disabilities Act ("ADA").  To establish these claims, Plaintiff must prove that he was: (i) disabled; (ii) "otherwise qualified," as defined under the statutes; and (iii) discriminated against because of his disability.  Plaintiff also brings claims for fraudulent inducement and negligent misrepresentation.  These claims are premised on a statement purportedly made on Ross University's website that "[i]t is the policy and practice of the University to comply with the Americans with Disabilities Act as applicable and practical in Dominica."  Plaintiff seeks to show that such statements were false by attempting to establish that Ross University did not grant his

individual request for an accommodation. Of course, Ross University denies that Awodiya ever made such a request.

By way of his motion in limine, Plaintiff now seeks to exclude the very evidence that Ross University puts forth to challenge the elements of his claims and to dispute his allegations regarding his purported accommodation request by claiming that such evidence is irrelevant and unduly prejudicial. Plaintiff's arguments are unfounded and, in some instances, have previously been rejected by the Court. The Motion should be denied.

## II. LEGAL STANDARD

"[I]n resolving motions in limine, '[t]he court excludes evidence on a Motion in Limine only if the evidence is clearly inadmissible for any purpose.'" *Smith v. Royal Caribbean Cruises, Ltd.*, No. 13-20697-Civ, 2014 WL 5312534, at *1 (S.D. Fla. Oct. 10, 2014). "If the evidence is not clearly inadmissible, evidentiary rulings must be deferred until trial to allow questions of foundation, relevancy, and prejudice to be resolved in the context. *Id.* (citing *Stewart v. Hooter of Am., Inc.*, No. 8:04-CV-40-T17-MAP, 2007 WL 1752873, at *1 (M.D. Fla. June 18, 2007)).

## III. ARGUMENT

### A. Evidence of Ross University's Written Policies and Procedures for Requesting Accommodations is Relevant and Probative

Pursuant to Federal Rule of Evidence 401, evidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence; and the fact is of consequence in determining this action. Here, Ross University intends to use its written policies and procedures to show what would have happened if Mr. Awodiya had actually requested an accommodation. Several witnesses in the case have testified that: 1) they do not recall Mr. Awodiya ever asking for an accommodation; and 2) if they had been verbally asked for an accommodation, they would have directed Mr. Awodiya to complete the process outlined in the

Student Handbook and Academic Catalog. The fact that the Student Handbook and Academic Catalog have a very detailed process for requesting an accommodation and there is no evidence that Mr. Awodiya ever completed any of the required steps tends to show that Mr. Awodiya never actually requested an accommodation. The lack of evidence of Mr. Awodiya taking part in the any portion of the outlined process makes it less probable that Mr. Awodiya ever made a verbal request. Furthermore, Ross University's policies and practices with respect to accommodations are directly relevant to its argument that the statement made on the website was not false. Ross University's written policies and procedures are relevant and probative and should be admitted.

### B. Evidence of Plaintiff's Academic Record Prior to Enrolling at Ross University is Relevant and Probative

For Plaintiff to establish that he was otherwise qualified in this case, which is a necessary element of his ADA and Rehabilitation Act claims, he is required to establish, among other things, that additional testing time would have allowed him to pass his exam. *See* 42 U.S.C. § 12131(2). Here, Ross University intends to use Plaintiff's academic record prior to enrolling at Ross University to show that Plaintiff was able to successfully take tests without additional testing time in the past. This evidence makes it more probable that Plaintiff struggled with the difficulty of the subject matter as opposed to not having enough time. This evidence will be used to rebut any assertion by Plaintiff that additional testing time would have permitted him to pass his exams.

This evidence of Plaintiff's undergraduate record is also relevant to show that Plaintiff's failure to request any formal accommodation during his undergraduate career tends to show that he did not seek any accommodation once enrolled at Ross University. Evidence of Plaintiff's academic success prior to enrolling at Ross University is both relevant and probative.

### C. Ross University Should Be Permitted to Raise the "Direct Threat" Affirmative Defense

Plaintiff has filed failure to accommodate claims, alleging violations of the Rehabilitation Act and ADA. In order to successfully prove these claims, one of the elements Plaintiff must establish is that he was "otherwise qualified" to meet the standards necessary to become a medical doctor. *See Hetherington v. Wal-Mart, Inc.*, 511 Fed. Appx. 909, 912 (11th Cir. 2013) (holding that to bring a claim under the ADA and Rehabilitation Act, a plaintiff must demonstrate that he (i) has a disability; (ii) is a ***"qualified" individual***; and (iii) was discriminated against because of his disability by failing to receive an accommodation) (emphasis added); *King v. Catholic Charities of Northwest Fla. Inc.*, Case No. 3:16-cv-91/MCR/EMT, 2018 WL 3848819, at *2 (N.D. Fla. Aug. 12, 2018) ("Plaintiff's claim for failure to accommodate requires proof that she was a ***"qualified"*** individual . . . .") (emphasis added).

Under the ADA, Ross University may assert that Mr. Awodiya is not a "qualified individual" if his continued enrollment at the university would have posed a significant risk to the health or safety of himself or others. 42 U.S.C. § 12113. Here, Plaintiff points out that Ross University did not list "direct threat" as an affirmative defense in its Answer to the Third Amended Complaint. However, this failure standing alone should not prevent Ross University from pursuing the "direct threat" affirmative defense here. The Eleventh Circuit has liberalized the requirement that defendants must raise affirmative defenses in their initial pleadings. *See Miranda De Villalba v. Coutts & Co.,* 250 F.3d 1351, 1353 (11th Cir. 2001). "A court may consider an affirmative defense that did not appear in the answer, if the plaintiff has suffered no prejudice from the failure to raise the defense in a timely fashion." *Id.* Here, Plaintiff admits that he has known since at least March 12, 2019 that Ross University intended to assert a "direct threat" defense in this case. *See*

Motion, [ECF No. 194] at p. 10; *see also* Defendant's Proposed Jury instructions [ECF No. 162] at p. 28.

Furthermore, throughout discovery and during Plaintiff's deposition, Plaintiff was aware that Defendant was inquiring into the Safety Plan that Plaintiff signed while at Ross University, acknowledging the steps he would take to avoid an incident of self-harm. During Plaintiff's deposition, he was also questioned about a note in his medical records reflecting a phone call his mother made to the Ross University Counseling Center expressing concern of self-harm. *See* Plaintiff's Motion in Limine filed on January 9, 2019, [ECF No. 127] at p. 8-9. In fact, this Court denied Plaintiff's motion exclude certain Ross University counseling notes that discuss Plaintiff's alleged self–harm and suicidal ideation. *See* Omnibus Order, [ECF No. 155] at p. 8-9. In making this ruling this Court noted that "[w]hether Plaintiff satisfied [Ross University's] technical standards of qualification is at the heart of the ADA and Rehabilitation Act claims, and it is an issue for the jury to decide." *Id.* This is the exact same evidence Ross University intends to submit in regards to the direct threat affirmative defense. Plaintiff has always known that Ross University intended to use this evidence and the parties have already done all the necessary discovery of the evidence underlying this defense.

Plaintiff has had substantial time to prepare for this defense or seek additional discovery. Thus, he suffers no prejudice from Ross University asserting this affirmative defense and the Court should consider it. *Miranda De Villalba,* 250 F.3d at 1353.

### D. Whether Plaintiff was Qualified to Become a Medical Doctor Is Relevant To Plaintiff's Rehabilitation Act and ADA Claims and Damages

For the second time, Plaintiff is filing a motion in limine seeking to preclude Ross University from introducing evidence that he was not "otherwise qualified" to become a medical doctor. *See* [ECF No. 127] at pp. 3-5; [ECF No. 194] at pp. 7-10. As previously ruled by this

5

Court, Plaintiff's motion should be denied because "the evidence of whether or not Plaintiff would otherwise be qualified to become a doctor is relevant to Plaintiff's failure to accommodate claims and to any potential lost-earning capacity damages."  *See* [ECF No. 155] at pp. 7-8.

Plaintiff has filed failure to accommodate claims, alleging violations of the Rehabilitation Act and ADA.  In order to successfully prove these claims, one of the elements Plaintiff must establish is that he was "otherwise qualified" to meet the standards necessary to become a medical doctor.  *See Hetherington*, 511 Fed. Appx. at 912.  To prove that he is "otherwise qualified," Plaintiff must show that, with or without reasonable accommodations, he was able to perform the essential requirements to graduate from Ross University.  *See* 42 U.S.C. § 12131(2).  Put another way, Plaintiff must present sufficient evidence to show that he could satisfy the program's necessary requirements, or that any reasonable accommodation by the school would enable him to meet these requirements.  Ross University should not be precluded from rebutting Plaintiff's evidence as to this element.  Such evidence is clearly relevant to defend Plaintiff's claims.

In fact, the Supreme Court of the United States has expressly rejected an interpretation of "otherwise qualified" that would prohibit an institution from introducing evidence of an individual's limitations when determining that person's eligibility for an academic program.  *See Southeastern Community College v. Davis*, 442 U.S. 397, 405 (1979).  The *Davis* Court stated that "an otherwise qualified person is one who is able to meet all of a program's requirements in spite of his handicap."  *Id.* at 406.  Moreover, the law does not require an academic program to compromise its enrollment criteria.  *Id.; see also Bercovitch v. Baldwin Sch., Inc.,* 133 F.3d 141, 154 (1st Cir. 1998).  "A school's code of conduct is not superfluous to its proper operation; it is an integral aspect of a productive learning environment."  *Id.* at 154.

6

>Ross University's Student Handbook states that:
>>Candidates must possess the emotional health required for the full utilization of their intellectual abilities, for the exercise of good judgment, for the prompt completion of all responsibilities attendant to the diagnosis and care of patients, for the development of effective relationships with patients and for effective functioning as a member of the health care team.  Candidates must be able to tolerate physically taxing workloads and function effectively under stress.  They must be able to adapt to changing environments, display flexibility and learn to function in the face of uncertainties inherent in the clinical problems of patients.

Excerpts from the Ross University Student Handbook are attached hereto as **Exhibit A**; *see also Yaldo v. Wayne State Univ.*, 266 F. Supp. 3d 988, 1012 (E.D. Mich. 2017) (finding a Plaintiff was not "otherwise qualified" if he failed to satisfy the medical school's professionalism requirements); *Zimmeck v. Marshall Univ. Bd. of Governors*, 106 F. Supp. 3d 776, 782 (S.D. W. Va. 2015) (finding that a student diagnosed with depression unqualified under the ADA because he failed to meet the professionalism requirements of the medical school).

The Student Handbook requires not only that students possess the emotional health required for the full utilization of their intellectual abilities, but also that they exercise good judgment. Exh. A at pp. 7-8.  It also requires that students tolerate physically taxing workloads and function effectively under stress.  *Id.*  Ross University should be permitted to introduce evidence showing that Plaintiff did not satisfy the technical standards of the medical school.  The evidence shows that Plaintiff was suffering from depression and had suicidal ideations due to a relationship break-up with a female student who was unfaithful, familial relationship issues, and general loneliness.  *See* [ECF No. 102] at Exhibit SJ-10.  Plaintiff also reported being "constantly forgetful in daily activities" and having constant difficulty with tasks requiring persistence or organization, including schoolwork and job duties.  *See* [ECF No. 102] at Exhibit SJ-03**.**  Subsequently, Plaintiff also reported to a physician that he has been pulling his eyelashes and chin

hairs out. *See* [ECF No. 102] at Exhibit SJ-04. Ross University should be able to introduce evidence showing that Plaintiff was not qualified.

Evidence pertaining to Plaintiff's remaining qualifications of becoming a medical doctor is also relevant because such evidence ties directly to the issue of damages. More specifically, Plaintiff seeks to recover damages for his purported loss of earning capacity. However, before Plaintiff may seek damages for lost of earning capacity as a medical doctor, he must first establish that he would have in fact became a doctor. Plaintiff's qualifications and the likelihood of him becoming a doctor bear on these issues. *See King*, 2018 WL 3848819 at *2. Evidence refuting that Plaintiff was qualified should not be excluded. Since Plaintiff is purportedly seeking lost earning capacity damages for both his federal accommodations claims and his state court fraud claim, this evidence is relevant regardless of which claims remain in the case.

Plaintiff's qualifications are relevant and any prejudice asserted by Plaintiff does not substantially outweigh the probative value of such evidence. Ross University should be permitted to offer this evidence and the Motion seeking to exclude such evidence should be denied.

### E. The Jury is Permitted to Consider Plaintiff's Failure to Mitigate His Damages

Plaintiff seeks to recover damages for his purported loss of earning capacity. Ross University should be able to argue that Plaintiff's purported earning capacity should be reduced by his failure to mitigate his purported damages. Ross University intends to offer evidence showing that Plaintiff did not suffer a loss of earning capacity because: 1) he was offered readmission into Ross University and declined to pursue his medical degree; and 2) he is capable of acquiring an equally or more lucrative job in the future. Had Plaintiff accepted Ross University's offer of readmission, he would have had the opportunity to pursue his medical degree and would not have had any lost earning capacity. Similarly, Plaintiff's loss of earning capacity

cannot be measured against the career Plaintiff chose to pursue. As defense expert Ronald Quintero points out that the "opportunity cost of not practicing as a physician must be measured against the next best application of the Plaintiff's skills." *See* the Expert Report of Ronald Quintero attached hereto as **Exhibit B**, at 16-17. Plaintiff, who was capable of gaining admission to medical school and passing the first four semesters of the Ross University curriculum, has the potential to be a superior performer in another field suitable to individuals with an inclination towards health care and not suffer any loss in earning capacity at all.

Ross University should be able to point to Plaintiff's failure to mitigate his damages by refusing to accept Ross University's offer of readmission and refusing to pursue an alternative equally as lucrative career path. It is clear that Plaintiff had a duty to mitigate his damages on each of his claims.

Plaintiff has a duty to mitigate any damages in a claim brought under the Rehabilitation Act. *See Hudson v. Chertoff*, 473 F. Supp. 2d 1292, 1297 (S.D. Fla. 2007) (citing *Miller v. Marsh*, 766 F. 2d 490, 492 (11th Cir. 1995)). "Although a plaintiff is not required to be successful in mitigating his damages, he must make a reasonable, good faith effort to mitigate. *See Hudson*, 473 F. Supp. 2d at 1297 (citing *Walters v. City of Atlanta*, 803 F.2d 1135, 1145 (11th Cir. 1986)) (emphasis added). The burden regarding mitigation requires the defendant to prove that substantially equivalent work was available and that the employee did not use reasonable diligence to obtain it. *Id.*

Similarly, Plaintiff has a duty to mitigate for his state law fraudulent inducement claim. The Florida Supreme Court has made clear that a plaintiff may recover damages for loss of earning capacity only "when such damages are established with reasonable certainty." *Auto–Owners Ins. Co. v. Tompkins*, 651 So. 2d 89, 91 (Fla. 1995). To establish a claim for loss of future earning

capacity, the plaintiff must introduce "reasonably certain evidence that the capacity to labor has been diminished and that there is a monetary standard against which the jury can measure any future loss." *Hubbs v. McDonald*, 517 So. 2d 68, 69 (Fla. 1st DCA 1987) (quoting *Long v. Publix Super Mkts., Inc.,* 458 So. 2d 393, 394 (Fla. 1st DCA 1984)).  There are no facts in this case that establish that Plaintiff suffered a loss of earning capacity to a reasonable certainty.  However, if Plaintiff is able to introduce evidence sufficient to warrant an award for lost earning capacity, the jury should consider "all relevant factors including the plaintiff's age, health, habits, occupation, surroundings, and earnings before and after the injury." *W.R. Grace & Co.–Conn. v. Pyke*, 661 So. 2d 1301, 1302 (Fla. 3d DCA 1995) (citing *Atl. Coast Line R.R. v. Ganey*, 125 So. 2d 576 (Fla. 3d DCA 1960)).  "It [is] the jury's role to determine the amount plaintiff could earn in other occupations … and award damages for any diminution in earning capacity." *W.R. Grace,* 661 So. 2d at 1303.  Defendant should be able to present such evidence to the jury.

## CONCLUSION

WHEREFORE, defendant Ross University School of Medicine, School of Veterinary Medicine Limited respectfully requests this Court to enter an Order (i) denying plaintiff Oluwamuyiwa Awodiya's Motion in Limine to Exclude Prejudicial Evidence and Theories [ECF No. 194]; and (ii) awarding Ross University such other and further relief as the Court deems appropriate.

49123149;2

Dated: June 13, 2019

Respectfully submitted,

*/s/Donnie M. King*
MICHAEL C. MARSH
Florida Bar Number: 0072796
Email: michael.marsh@akerman.com
Secondary: sharon.luesang@akerman.com
RYAN A. ROMAN
Florida Bar Number: 0025509
Email: ryan.roman@akerman.com
Secondary: dorothy.matheis@akerman.com
DONNIE M. KING
Florida Bar Number: 101386
Email: donnie.king@akerman.com
Secondary: simone.tobie@akerman.com
OCTAVIA M. GREEN
Florida Bar Number: 119179
Email: octavia.green@akerman.com
Secondary: simone.tobie@akerman.com

**AKERMAN LLP**
98 SE 7th Street, Suite 1100
Miami, FL 33131
Phone: (305) 374-5600
Fax: (305) 374-5095

*Attorneys for Defendant Ross University School of Medicine, School of Veterinary Medicine Limited*

11

49123149;2

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on June 13, 2019 a true and correct copy of the foregoing document was served via CM/ECF on:

Oluwamuyiwa Awodiya
15005 Dahlia Drive
Bowie, Maryland 20721
Telephone: (240) 602-1836
E-mail: drmuyiwa.a@gmail.com

                                          *s/Donnie M. King*
                                          Donnie M. King

49123149;2