UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 18-60482-CIV-ALTMAN/Hunt

**OLUWAMUYIWA AWODIYA**,

    Plaintiff,

v.

**ROSS UNIVERSITY SCHOOL OF MEDICINE**,

    Defendant.

_____/

# **ORDER**

**THIS MATTER** came before the Court upon the parties' responses [ECF Nos. 192 & 193] to the Court's May 15, 2019 Omnibus Order ("Omnibus Order") [ECF No. 191]. The Omnibus Order required the parties, pursuant to Federal Rule of Civil Procedure 56(f), to brief the following questions: (1) whether Title III of the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act ("RA") apply extraterritorially; and (2) what impact, if any, the answer to this question has on the Plaintiff's remaining claims.

On March 2, 2019, this Court entered partial summary judgment against the Plaintiff [ECF No. 154] and, as a result, only four of the Plaintiff's claims against the Defendant, Ross University School of Medicine ("RUSM"), have survived: Count I (failure to accommodate under the RA); Count II (failure to accommodate under the ADA); Count VIII (fraudulent inducement); and Count IX (negligent misrepresentation). At the motions hearing on June 11, 2019, the Plaintiff moved in open court to voluntarily dismiss Count IX (negligent misrepresentation) with prejudice under Federal Rule of Civil Procedure 41(a)(2), and the Court granted that motion. Accordingly, as of this Order, only Counts I, II, and VIII remain.

As the Omnibus Order made clear, neither party had raised—and so the Court did not consider—the question of the ADA's and the RA's extraterritorial application. With the benefit of the parties' supplemental briefing and oral argument, the Court does so now.

## THE FACTS

The facts of this case are thoroughly detailed in the Court's March 2, 2019 Order on the parties' motions for summary judgment.[1] As relevant here, the Plaintiff is a former medical student at RUSM, a private medical school in Dominica. Pl.'s 56.1 ¶¶ 1, 9. The Plaintiff applied to RUSM in 2013. Def.'s 56.1 ¶ 4. On its website, RUSM represented that "[i]t is the policy and practice of [RUSM] to comply with the Americans with Disabilities Act as applicable and practical in Dominica." *Id.* RUSM requires its students to take the National Board of Medical Examiners' Comprehensive Basic Science Exam ("COMP Exam") at the end of their fifth semester. Def.'s 56.1 ¶ 36. The Plaintiff took and failed the COMP Exam five times. Def.'s 56.1 ¶¶ 39-50. As a result, on June 29, 2017, RUSM dismissed him from the university. *See* Dismissal Letter [ECF No. 119-28 at 2].

The Plaintiff's remaining contentions are that: (1) RUSM failed to honor his alleged requests for an accommodation under the ADA and the RA for extra test-taking time; and (2) RUSM's statement that it complies with the ADA "as applicable and practical in Dominica" constitutes fraudulent inducement because RUSM never had any intention of complying with either federal statute.

---

[1] The Court will adopt the same citation convention it used in the March 2, 2019 Order. That is, the facts taken from the Plaintiff's Statement of Undisputed Facts will be referred to as "Pl.'s 56.1" [ECF No. 101]; the Defendant's Response in Opposition as "Def.'s Resp. 56.1" [ECF No. 107-1]; the Plaintiff's Reply as "Pl.'s Reply 56.1" [ECF No. 115]; the Defendant's Statement of Undisputed Facts as "Def.'s 56.1" [ECF No. 119]; the Plaintiff's Response in Opposition as "Pl.'s Resp. 56.1" [ECF No. 139]; and the Defendant's Reply as "Def.'s Reply 56.1" [ECF No. 143].

## **THE STANDARD OF REVIEW**

Summary judgment is appropriate where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); FED. R. CIV. P. 56(a). In determining whether to grant summary judgment, the Court must consider "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." FED. R. CIV. P. 56(c). "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). An issue of fact is "material" if it might affect the outcome of the case under the governing law. *Id.* at 248. A dispute about a material fact is "genuine" if the evidence could lead a reasonable jury to find for the non-moving party. *Id.*

At summary judgment, the moving party has the burden of proving the absence of a genuine issue of material fact, and all factual inferences are drawn in favor of the non-moving party. *See e.g., Allen v. Tyson Foods Inc.*, 121 F.3d 642, 646 (11th Cir. 1997). Once the moving party satisfies its initial burden, the burden shifts to the non-moving party to come forward with evidence that a genuine issue of material fact precludes summary judgment. *See Bailey v. Allgas, Inc.*, 284 F.3d 1237, 1243 (11th Cir. 2002); FED. R. CIV. P. 56(e). "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." *Miranda v. B & B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1534 (11th Cir. 1992). Notably, assessments of credibility—no less than the weighing of evidence—are jury questions not susceptible of

disposition at summary judgment. *Strickland v. Norfolk S. Ry. Co.*, 692 F.3d 1151, 1154 (11th Cir. 2012). The Court must analyze the record as a whole—and not just the evidence the parties have singled out for consideration. *See Clinkscales v. Chevron U.S.A., Inc.*, 831 F.2d 1565, 1570 (11th Cir. 1987). If there are any genuine issues of material fact, the Court must deny summary judgment and proceed to trial. *Whelan v. Royal Caribbean Cruises Ltd.*, No. 1:12-CV-22481, 2013 WL 5583970, at *2 (S.D. Fla. Aug. 14, 2013) (citing *Envtl. Def. Fund v. Marsh*, 651 F.2d 983, 991 (5th Cir. 1981)).

## ANALYSIS

### I. Counts I and II (Failure to Accommodate under the RA and the ADA)

Two federal courts have already held, in the precise circumstances presented here—a lawsuit by an RUSM student against RUSM for violations of the ADA and the RA—that the ADA and the RA do not apply extraterritorially. *See Archut v. Ross Univ. Sch. of Veterinary Med.*, 580 F. App'x 90 (3d Cir. 2014) and *Galligan v. Adtalem Glob. Educ. Inc.*, No. 17 C 6310, 2019 WL 423356 (N.D. Ill. Feb. 4, 2019).

The Plaintiff's Response ("Pl. Resp.") [ECF No. 192] to the Court's Omnibus Order raises three principal arguments: (1) that the Supreme Court "overruled" *Archut* in *RJR Nabisco, Inc. v. European Cmty.*, 136 S. Ct. 2090 (2016); (2) that the express language of both the ADA and the RA indicates that Congress intended the statutes to apply extraterritorially; and (3) that "most of" the acts in this case occurred in the United States—thus obviating any need to determine whether the ADA applies extraterritorially.

In its Response ("Def. Resp.") [ECF No. 193], RUSM says (1) that all of the conduct pertaining to the Plaintiff's alleged requests for an accommodation occurred in Dominica; and (2) that neither the ADA nor the RA contains any express indication of congressional intent with

4

respect to the statutes' extraterritorial application—as a result of which, RUSM contends, the statutes do not apply abroad. *See Morrison v. Nat'l Austl. Bank, Ltd.*, 561 U.S. 247, 255 (2010).

It is a "longstanding principle of American law that legislation of Congress, unless a contrary intent appears, is meant to apply only within the territorial jurisdiction of the United States." *Id.* at 255 (citations and quotations omitted). Because Congress "ordinarily legislates with respect to domestic, not foreign, matters," a statute does not apply extraterritorially unless Congress makes plain its "affirmative intention" that the statute should govern abroad. *Id.* Indeed, given the "obvious" incompatibility between American and foreign laws that might arise if U.S. statutes were routinely given extraterritorial effect, the Supreme Court has admonished courts to presume that, if "Congress intended . . . foreign application, it would have addressed the subject" within the text of the statute. *Id.* at 269. Unfortunately for the Plaintiff, neither Title III of the ADA nor Section 504 of the RA evince any "affirmative intention" to apply the provisions of those statutes extraterritorially.

Title III of the ADA provides that "[n]o individual shall be discriminated on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation." 42 U.S.C. § 12182(a). Title III governs accommodations provided by private entities, which may include "postgraduate private school[s] or other place[s] of education,"[2] and prohibits a private entity's failure to make reasonable modifications in policies, practices, or procedures when such modifications are necessary to afford goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of its services. *See* 42 U.S.C. § 12182(b)(2)(A)(iii).

---

[2] *See* 42 U.S.C. § 12187(7)(J).

5

Analyzing the precise question at issue here—whether Title III of the ADA applies extraterritorially—the district court in *Archut* explained as follows:

> Following the analysis set forth in *Morrison,* we observe that [Title III of the ADA] contains no clear expression of extraterritorial application of the anti-discrimination standards to foreign institutions. The text of the statute provides no indication Congress intended to provide extraterritorial application of these standards to foreign institutions offering public accommodations or public transportation. Moreover, in this piece of legislation, Congress sought to reduce physical or other barriers to sites where disabled individuals need access. This focus is presumed to be domestic, as no indication exists in the text of the statute to suggest otherwise. This statute is narrowly addressed to the domestic issue of providing access for disabled United States citizens. It would be contrary to the rationale of the presumption against extraterritoriality to interpret the text so as to require foreign institutions to adhere to United States standards for barrier removal and reasonable accommodations.

*Archut v. Ross Univ. Sch. of Veterinary Med.*, No. CIV.A. 10-1681 MLC, 2012 WL 5867148, at *11 (D.N.J. Nov. 19, 2012), *aff'd*, 580 F. App'x 90 (3d Cir. 2014). Notably, the "Definitions" section of Title III does not include *foreign* educational institutions as "entities [] considered public accommodations" under the ADA. Nor does Title III contain, in any other section, any suggestion that its terms apply in foreign lands. *See generally* 42 U.S.C. § 12181.

No less significantly, Title I of the ADA—which, unlike Title III, prohibits *employment* discrimination—expressly applies extraterritorially. *See* 42 U.S.C. § 12111(4) ("The term 'employee' means an individual employed by an employer. With respect to employment in a foreign country, such term includes an individual who is a citizen of the United States."). Under the doctrine of *expressio unius est exclusio alterius*, we must assume that, by including an extraterritorial provision in Title I—and by excluding any similar provision from Title III—Congress acted purposefully. *See* A. SCALIA & B. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 107-11 (2012). As the *Morrison* Court noted, "when a statute provides for some extraterritorial application, the presumption against extraterritoriality operates to limit that

6

provision to its terms." *Morrison*, 561 U.S. at 265.[3] Put simply, Title III of the ADA does not apply to RUSM's actions in Dominica.

The analysis under the RA is even more straightforward. By its own terms, that statute explicitly limits its own scope to "individual[s] with a disability *in the United States*." 29 U.S.C. § 794(a) (emphasis added). Based in part on this circumscription, the *Galligan* Court addressed and dismissed the very same argument the Plaintiff makes here—that, because RUSM receives federal financial assistance, it must be subject to the RA:

> The [RA] by its own terms limits relief to those "in the United States," language which supports rather than rebuts the presumption against extraterritoriality. Galligan argues that by applying to "any program," the Rehab Act demonstrates its intent to apply extraterritorially. But broad statutory language does not indicate worldwide scope. In *Morrison*, the Court held that section 10(b) of the Securities Exchange Act "contains nothing to suggest it applies abroad," even though it prohibits "*any* person" from using "*any* manipulative or deceptive device" "in connection with the purchase or sale of *any* security."

*Galligan*, 2019 WL 423356 at *3. Broad phrases such as "any program or activity receiving federal financial assistance" do not overcome the presumption against extraterritoriality. *Archut*, 2012 WL 5867148 at *5 (citing *Morrison*, 561 U.S. at 265).

There is, moreover, nothing in the text of the RA (or the ADA) to support the Plaintiff's view that an institution's decision to accept American financial assistance carries with it an implicit requirement to abide by the proscriptions of either statute. *Accord id.* at *10 (rejecting the "follow the money" theory the Plaintiff espouses here). To the contrary, it is a "basic premise of our legal

---

[3] The historical context here is even more damaging to the Plaintiff's position. In 1991, Congress saw fit to amend Title I of the ADA to ensure its extraterritorial application, but specifically chose *not to* include any similar amendments in Title III—the only Title at issue here. S*ee* Civil Rights Act of 1991, Pub. L. 102-166 § 109(a) (1991) (codified at 42 U.S.C. § 12111(4)). As the Supreme Court has said in an unrelated case, this may be the "most obvious textual clue" that Title III of the ADA does not apply abroad. *RJR Nabisco, Inc.*, 136 S. Ct. at 2101.

7

system" that our laws apply only domestically. *Microsoft Corp. v. AT&T Corp.*, 550 U.S. 437, 454 (2007) (admonishing courts not to treat our laws as if they "rule[d] the world").

The Plaintiff's contention that the RA prohibits discriminatory conduct at "institutions of higher education" that receive federal grants, 29 U.S.C. § 705(23)—which includes "institutions outside the United States," *see id.* (incorporating by reference "institutions outside the United States," 20 U.S.C. § 1002(a)(2))—is misplaced. Pl. Resp. 5. The non-discrimination provision of the RA at issue here, § 794, refers to programs or activities at "college[s], universit[ies], or other postsecondary institution[s], or a public system of higher education." 29 U.S.C. § 794(a). But it notably includes no reference either to "institutions of higher education" or to "graduate medical schools located outside the United States." In other words, the definition of "institutions of higher education" on which the Plaintiff relies appears to refer to other, non-relevant provisions of the RA. Indeed, far from supporting the Plaintiff's position, Congress' decision to include a reference to "institutions outside the United States" in the definition of "institutions of higher education," 29 U.S.C. § 705(23), lends further support to RUSM's view that § 794—which never mentions either "institutions of higher education" or "institutions outside the United States"—does not apply abroad.

Finally, the Supreme Court's holding in *RJR Nabisco* did not, as the Plaintiff suggests, "overrule" *Archut*. Pl. Resp. 2. In fact, *RJR Nabisco* did not so much as cite to—let alone address—*Archut*. Instead, *RJR Nabisco* resolved the wholly unrelated question of whether the Racketeer Influenced and Corrupt Organizations ("RICO") Act, 18 U.S.C. §§ 1961–1968, applies extraterritorially. Because of the very particular language of that statute—language that is noticeably absent from either the ADA or the RA—the Supreme Court concluded that the plaintiffs had successfully rebutted the presumption against a finding of extraterritoriality. Specifically,

given that certain RICO predicates unquestionably apply extraterritorially,[4] the Court found that Congress had unmistakably expressed its intention that RICO govern abroad. *See RJR Nabisco, Inc.* 136 S. Ct. at 2102. But there are no analogous "predicates" in either Title III of the ADA or in Section 504 of the RA that similarly apply outside of the United States. Accordingly, *RJR Nabisco* does not help the Plaintiff here.

Having concluded that neither the ADA nor the RA apply extraterritorially, the Court must now determine whether the Plaintiff's claims arise in the United States. To succeed on a failure to accommodate claim, including both a Title III ADA claim and a claim under the Rehabilitation Act, a plaintiff must demonstrate that he: (1) has a disability; (2) is an otherwise qualified individual; and (3) was discriminated against because of his disability. *See Boyle v. City of Pell City*, 866 F.3d 1280, 1288 (11th Cir. 2017) (laying out the *prima facie* test under the RA); *see also Hetherington v. Wal-Mart, Inc.*, 511 F. App'x 909, 912 (11th Cir. 2013) (describing the *prima facie* test under the ADA). For either statute to apply, it is not sufficient for a defendant's allegedly discriminatory conduct to bear only "some connection" to the United States. *Galligan*, 2019 WL 423356 at *3.

As in *Galligan*,[5] there is no genuine dispute as to *where* the allegedly discriminatory conduct that forms the gravamen of the Plaintiff's complaint took place. Indeed, according to the Plaintiff's own Statement of Undisputed Material Facts: (1) RUSM, which was located in

---

[4] "These predicates include the prohibition against engaging in monetary transactions in criminally derived property, which expressly applies, when 'the defendant is a United States person,' to offenses that 'tak[e] place outside the United States.' 18 U.S.C. § 1957(d)(2). Other examples include the prohibitions against the assassination of Government officials, § 351(i) ("There is extraterritorial jurisdiction over the conduct prohibited by this section"); § 1751(k) (same) . . . ."

[5] "Since Galligan alleges that the program, exclusion, denial, and discrimination all took place in St. Kitts and Nevis, where the Rehab Act does not apply, he has not stated a claim for relief. Similarly, the alleged discrimination, lack of equal enjoyment, and public accommodations under Title III were all in St. Kitts and Nevis." *Galligan*, 2019 WL 423356 at *3.

Dominica, was the entity empowered to grant the Plaintiff extended testing time; (2) the Plaintiff authorized the RUSM Counseling Center *in Dominica* to "discuss his confidential information [with the administration]" for the purpose of determining whether an accommodation was appropriate; (3) the Plaintiff verbally asked Dr. Sharma and Mr. Cuffy, who were in Dominica, to tell the RUSM administration that he needed extended testing time because of his disability; (4) the Plaintiff, while in Dominica, went in person to provide the RUSM Counseling Center with a medical assessment upon which he was relying for his request; and, most importantly, (5) Dr. Hayse, RUSM's Associate Dean of Student Affairs, who lived and worked in Dominica, "made the final decision [with respect to the Plaintiff's request for accommodation] and oversaw the academic accommodations process." Pl.'s 56.1 ¶¶ 16-17, 26, 32, 34. What's more, all of the Plaintiff's counseling notes—which he says support his allegation that he requested an accommodation—indicate that his counseling sessions occurred, not in the United States, but at the RUSM Counseling Center in Dominica. Pl. Mot. Summ. J. [ECF No. 102 at 12-16]. Because these allegations, if true, would constitute both the beginning and the end of the Plaintiff's ADA and RA claims—and because all of these critical events took place in Dominica—the Court finds that the central facts upon which the Plaintiff's complaint is premised occurred outside of the United States.

In this respect, the only relevant acts that took place in the United States were the Plaintiff's second, third, fourth, and fifth attempts at passing the COMP Exams—which, it is undisputed, are not administered by RUSM.[6] Pl.'s 56.1 ¶ 28. But by the time the Plaintiff sat down to take these examinations, the alleged discriminatory decision to deny his requested accommodation—the

---

[6] Notably, the Plaintiff's requested accommodation, if granted, would have applied to all of his testing—both the COMP Exams he took in the United States and the many other exams he took in Dominica. Third Am. Compl. at 9-11 [ECF No. 47].

decision upon which his ADA and RA claims are based—had already been made in Dominica. In short, the record contains no evidence to support the Plaintiff's position that the conduct he has challenged occurred anywhere but in Dominica—a place where neither the ADA nor the RA apply.[7]

Because Title III of the ADA and Section 504 of the RA do not apply extraterritorially, and because the acts that form the basis of the Plaintiff's complaint occurred in Dominica, the Court finds that summary judgment is appropriate as to Counts I and II of the Plaintiff's Third Amended Complaint. Accordingly, it is hereby **ORDERED and ADJUDGED** that Counts I and II are **DISMISSED with prejudice**.

## II.  Count VIII (Fraudulent Inducement)

Count VIII of the Plaintiff's Third Amended Complaint arises under Florida law. Pointing to a statement on RUSM's website to the effect that "[i]t is the policy and practice of the University to comply with the Americans with Disabilities Act as applicable and practical in Dominica," the Plaintiff claims that RUSM fraudulently induced him into enrolling at the school. *See* Third Am. Compl. at 20-22. To succeed on a claim of fraudulent inducement under Florida law, a plaintiff must show that (1) the defendant made a misrepresentation of material fact; (2) the defendant knew or should have known of the falsity of the statement; (3) the defendant intended for the misrepresentation to induce the plaintiff to rely and act upon the misrepresentation; and (4) the plaintiff suffered injury in justifiable reliance on the representation. *See Biscayne Inv. Grp. Ltd. v. Guarantee Mgmt. Servs., Inc.*, 903 So. 2d 251, 255 (Fla. 3d DCA 2005).

Although the Plaintiff argues that the ADA-compliance statement on RUSM's website is

---

[7] The Plaintiff's suggestion that the record evidence is "not developed" enough to determine whether the acts he has challenged occurred in Dominica is belied by the aforementioned citations to the Plaintiff's own "Statement of Undisputed Material Facts."

11

"false," he supplies no record evidence to support this contention. Pl. Resp. 10. For its part, RUSM says that, because the ADA is inapplicable in Dominica, any assurances it may have made concerning its compliance with the ADA "cannot be false as a matter of law." Def. Resp. 7. The Court is not persuaded that summary judgment as to Count VIII is appropriate on this basis. If, when it published the alleged avowal on its website, RUSM knew, as its papers here suggest, that the ADA did *not* apply in Dominica, then its promise to abide by the ADA "as practical *and* [legally] applicable" in Dominica could indeed be false. "A promise of future conduct made with the positive intent not to perform will satisfy the misrepresentation element." *Stefan v. Singer Island Condominiums Ltd.*, No. 08-80039-CIV, 2009 WL 426291, at *16 (S.D. Fla. Feb. 20, 2009) (citing *Royal Typewriter Co. v. Xerographic Supplies Corp.*, 719 F.2d 1092, 1104 (11th Cir. 1983)). Put another way, if RUSM's statement was a promise to do something it knew it would never do—precisely because it would never have to do it—such a false assurance could theoretically constitute a fraudulent misrepresentation.

This theoretical plausibility, however, does not end the analysis. To succeed on a claim of fraud under Florida law, a plaintiff must show that the promisor had a specific intent not to fulfill his promise *at the time* the promise was made. *See Alexander/Davis Properties, Inc. v. Graham*, 397 So. 2d 699, 706 (Fla. 4th DCA 1981) (citing 14 Fla. Jur., Fraud & Deceit, Sections 15-16). And "a subsequent failure to perform a promise is not evidence that a party had no intent to perform the promise when made." *Quantum Capital, LLC v. Banco de los Trabajadores*, No. 1:14-CV-23193-UU, 2015 WL 12259226, at *10 (S.D. Fla. Dec. 22, 2015) (citing *Alexander/Davis Properties*, 397 So. 2d at 708).

The evidence in this case does not support the Plaintiff's view that, at the time it posted the statement on its website, RUSM specifically intended *not* to comply with the ADA. Dr. Sharma,

for example, an RUSM Professor of Behavior Sciences, testified that he has helped other students obtain testing accommodations at RUSM, and that he routinely sends the necessary documentation to the RUSM Accommodations Office to facilitate that process. Sharma Dep. 27:1-18 [ECF No. 102 at 102]. Dr. Sharma further testified that RUSM "does not deny student accommodations once documentation is adequate." Sharma Dep. 74:3-5. No less significantly, Mr. Stewart-Fulton, one of the accommodations coordinators at RUSM, testified that, although RUSM was not *required* to comply with the ADA, "in the interest of supporting our students, we abide[] by the spirit of the ADA and Section 504 of the Rehabilitation Act to provide appropriate accommodations within the process that was defined in the student handbook." Stewart-Fulton Dep. 32:1-10 [ECF No. 102 at 122]. Finally, Dr. Bryan Hayse testified that RUSM "uses [the] ADA as a guideline, but [RUSM is] not necessarily beholden to [it]." Hayse Dep. 10:14-17 [ECF No. 102 at 114]. This testimony was corroborated by the fact that RUSM maintains an Accommodations Office (and pays accommodations coordinators) for the sole purpose of determining whether a student is eligible for the kind of accommodation the Plaintiff sought here. *See generally* Sharma Dep. 28-29.

The Plaintiff has introduced no evidence to rebut this testimony. Specifically, he has adduced no evidence to support his assertions that RUSM summarily denies requests for accommodations, or that, at the time it posted the compliance statement on its website, RUSM never intended to comply with the ADA. Instead, the Plaintiff says only that RUSM failed to conform to the ADA in his case. But this bald assertion, without more, is simply insufficient to withstand summary judgment. *See Prieto v. Smook, Inc.*, 97 So. 3d 916, 918 (Fla. 4th DCA 2012) (where plaintiff's only evidence of a positive intention not to perform is the defendant's lack of performance, that evidence is insufficient to form the predicate for actionable fraud); *accord Biscayne Inv. Grp., Ltd. v. Guarantee Mgmt. Servs., Inc.*, 903 So. 2d 251 (Fla. 3d DCA 2005).

13

Because the Plaintiff has introduced no evidence to support his averment that, at the time it posted the compliance statement on its website, RUSM made "[a] promise of future conduct *with the positive intent not to perform*," *Singer*, 2009 WL 426291 at *16 (emphasis added), the Defendant is entitled to summary judgment on Count VIII.

Accordingly, the Court hereby

**ORDERS and ADJUDGES** as follows:

1. Counts I, II, VIII, and IX of the Plaintiff's Third Amended Complaint [ECF No. 47] are **DISMISSED with prejudice**.

2. All pending motions are **DENIED as moot**. An order of final judgment shall be entered separately. The Clerk of Court is instructed to **CLOSE** this case.

**DONE AND ORDERED** in Fort Lauderdale, Florida, this 17th day of June 2019.

 

_____
**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc:  counsel of record
     Awodiya Oluwamuyiwa, *pro se*