FILED BY _C̶H̶_ D.C.

JUN 2 6 2019

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - FT. LAUD.

# UNITED STATES DISTRICT COURT
### for the
### Southern District of Florida

|  |  |  |
|---|---|---|
| OLUWAMUYIWA AWODIYA, | ) | Case No.   0:18-cv-60482-RKA |
| *Plaintiff,* | ) | |
| | ) | |
| -v- | ) | Hon. Judge: Roy K. Altman |
| | ) | Magistrate Judge: Patrick M. Hunt |
| ROSS UNIVERSITY SCHOOL OF | ) | |
| MEDICINE, SCHOOL OF | ) | |
| VETERINARY MEDICINE LIMITED, | ) | |
| *Defendant.* | ) | |
| | ) | |

## PLAINTIFF'S MOTION FOR AMENDED AND
## ADDITIONAL FINDINGS IN THE COURT'S ORDER CLOSING CASE

*Pro se* plaintiff Oluwamuyiwa Awodiya ("Plaintiff"), pursuant to Rule 52(b) of the Federal Rules of Civil Procedure, hereby files his motion for amended and additional findings in the Court's June 18, 2019 Order Closing Case [ECF No. 210].

Plaintiff respectfully moves the Court to amend or make additional factual findings under Rule 52(b), whether or not granting the motion would alter the judgment.

## I.    INTRODUCTION

Not only did *pro se* Plaintiff not have notice to come forward with all of his evidence, Plaintiff was not given notice that the Court would decide the domestic applications of this case. The Court did not request for a briefing on the domestic application of the ADA and the RA in this case. Moreover, defendant Ross University School of Medicine, School of Veterinary Medicine Limited ("RUSM") filed its response to the Court's Order Closing Case, one week after Plaintiff filed his response. In doing so, RUSM raised several conclusory and unsupported arguments, which Plaintiff did not have a chance to defend since he already submitted his response a week prior to RUSM's submission.

1

## II.    AMENDED AND ADDITIONAL FACTS

1.      RUSM has a campus in Miramar, Florida that includes "[f]ive classrooms ranging in capacity from 32 to 150 seats." *See* Academic Catalog at 54 [ECF No. 119-22].

2.      RUSM's administrative offices are also located in Miramar, Florida. *Id.* at page ii.

3.      The RUSM administrative offices located in Miramar, Florida includes the "Office of the Registrar … and the Exam Administration Department." *See* email from RUSM Office of Student Services dated April 6, 2016, attached as **Exhibit A** to the Declaration of Oluwamuyiwa Awodiya ("Awodiya Decl.") filed concurrently herewith this motion.

4.      RUSM's "[s]tudents complete the foundational basic science courses in Dominica through the Foundations of Medicine curriculum…. Students then continue their clinical education at one of more than 29 teaching hospitals in the US that are affiliated with RUSM." *See* Academic Catalog, at page iv–v [ECF No. 119-22].

5.      "All Foundations of Medicine coursework must be satisfactorily completed at the RUSM campus in Dominica." *Id.* at 1. The "[c]linical Science curriculum [is] in the United States." *Id.* at 2.

6.      In March 2016, the RUSM Director of Student Affairs sent an email to students outlining the process for NBME CBSE (aka COMP Exam) retakes at "Prometric sites." *See* email attached as **Exhibit B** to the Awodiya Decl. Therein the email, the Director of Student Affairs stated: "At the class meeting I promised I would get back with you regarding some information for transitioning to Clinical Semesters." *Id.* at 1.

7.      For NBME CBSE (aka COMP Exam) retakes, the RUSM "Office of Exam Administration will register [students] for the next retake testing window if [they] were to fail [their] first attempt. [The student's] testing permit will then be sent to [their] RUSM email by NBME to be used for schedule [their] sitting date for the exam." *Id.* at 1. Students were also

2

advised to schedule their "COMP retake as early as possible as Prometric sites fill-up quickly." *Id.* at 1–2. However, "[i]f [students] decided to stay in Dominica to take [their] retake exam" they were directed to "advise the Office of Exam Administration." *Id.* at 2.

8.      From Miramar, Florida, the RUSM "Office of the Registrar - Exam Administration" sent an email to Plaintiff stating: "We regret to inform you that you did not pass the [NBME CBSE].... You will take the next CBSE as a web-based exam at a Prometric Testing Center.... Details for scheduling your next web-based exam at a Prometric Testing Center will be provided by the Office of Exam Administration within the week." *See* attached as **Exhibit C** to the Awodiya Decl.

9.      RUSM Rule 36-admits that Plaintiff's second through fifth attempts of the NBME CBSE "occurred at Prometric Test Centers in the United States of America." *See* [Exhibit A to ECF No. 195] at Plaintiff's Requests for Admission No. 71. RUSM Rule 36-admits "that RUSM, not the NBME, is the entity that determines whether its students require accommodations to a disability when taking the NBME CBSE and that this is referenced at Page 2 of Exhibit 10." *Id.* at Plaintiff's Requests for Admission No. 18; *see also* page 1 of "Exhibit 10" referenced in Plaintiff's Requests for Admission No. 18, therein [Exhibit B to ECF No. 195] ("This document provides basic information on ordering, fees, and related information to request administration of an NBME subject examination to your students at Prometric Test Centers.").

10.     Page 2 of "Exhibit 10" referenced in Plaintiff's Requests for Admission No. 18, states: "[T]he decision to provide an accommodation is still [RUSM's], as it is with locally-delivered NBME web-based examinations." [Exhibit B to ECF No. 195]. It is RUSM's decision to provide its "students who need extra testing time" with "1.25x, 1.5x, or 2x" the amount of time for extended testing time on the NBME CBSE at Prometric Test Centers in the United States. *Id.*

11.     Dr. Davendranand Sharma was a campus administrator at RUSM. *See* Academic Catalog at 59–60 (see in the "Foundations of Medicine Campus Administration" section) [ECF No. 119-22]. Dr. Sharma was also a professor at RUSM. *Id.* at 61.

12.     Dr. Sharma testified that he has helped other students obtain testing accommodations at RUSM, and that he routinely sends the necessary documentation to the RUSM accommodations office to facilitate that process. Sharma Dep. 27:1–18 [ECF No. 102 at 102]. Dr. Sharma also testified: "The accommodations office … could override my request, because I'm the one -- or the doctors make the request for accommodation, which is time-and-a-half. You get extra time. We actually put it we want the student to get the accommodation[.]" Sharma Dep. 37:15–21.

13.     Dr. Sharma testified that Plaintiff had adequate documentation of his ADHD to get test accommodations. Sharma Dep. 37:9–12. Dr. Sharma also testified that he was informed that Plaintiff was running out of time on his exams and that his symptoms, ADHD, and running out of time, were "all connected." Sharma Dep. 23:7–23.

14.     Dr. Sharma also created a note indicating that Plaintiff was preparing to take the NBME CBSE in the United States. *See* attached as **Exhibit D** to the Awodiya Decl.

15.     It is RUSM's policy that: "Disclosure can be made without consent to RUSM officials with legitimate educational interests who need to review a record in order to fulfill their professional responsibilities. A RUSM official is a person employed by RUSM in an administrative, supervisory, academic or research, or support staff position (including law enforcement unit personnel and health staff)." *See* Student Handbook at 97 [ECF No. 119-20].

16.     RUSM Rule 36-admits that Plaintiff took the NBME CBSE exam five times without any accommodations for his disability. *See* [Exhibit A to ECF No. 195] at Plaintiff's Requests for Admission Nos. 16, 53–57.

17.     Dr. Neils Larsen was a campus administrator at RUSM. *See* Academic Catalog at 59 (see in the "Foundations of Medicine Campus Administration" section) [ECF No. 119-22].

18.     From Miramar, Florida on June 1, 2017, Dr. Neils Larsen sent Plaintiff a letter that states: "If additional information has become available or if you believe university procedure wasn't followed, you may appeal this decision by submitting an appeal to the Dean…. The Dean or his designee will make a final decision …." *See* attached as **Exhibit E** to the Awodiya Decl.

19.     On June 2, 2017, Plaintiff sent an email to Dr. Neils Larsen where he states: "I would also want to ask if it is possible for Ross to set up a proctored NBME exam of any fashion. I have been working diligently on addressing my recent diagnosis and have made remarkable progress…. It would be great if I could take the next unofficial NBME in an environment that Ross considers adequate enough so that there is no doubt that I can now pass these exams." *See* email chain attached as **Exhibit F** to the Awodiya Decl.

20.     William Owen is the Dean of RUSM. Owen Dep. 7:20–25 [ECF No. 113 at 6]. The Dean's office is located in Miramar, Florida. *Id.*

21.     On June 12, 2017, Plaintiff's psychiatrist and psychotherapist informed the Dean of RUSM that Plaintiff has ADHD and OCD. *See* email/letter attached as **Exhibit G** to the Awodiya Decl. Plaintiff's psychiatrist and psychotherapist further informed the Dean of RUSM that "[Plaintiff] has had symptoms of the latter for the past 4-6 years but did not understand the nature of the diagnosis until recently. We believe that the anxiety and checking rituals inherent to this condition have been adversely affecting his academic performance in medical school." *Id.*

22.     On June 13, 2017, Plaintiff submitted his appeal letter to the Dean of RUSM. *See* Plaintiff's Appeal Letter to the Dean of RUSM attached as **Exhibit H** to the Awodiya Decl. In the Appeal Letter to the Dean of RUSM, Plaintiff stated that "the purpose of this letter is to seek one

5

more chance to take the NBME comp exam…. [M]y objective is to keep this letter relevant to how OCD has influenced my academic performance." *Id.* On the same page of the Appeal Letter, Plaintiff stated, "I'm the student who never finished an exam on time." *Id.*

23.     The Dean of RUSM testified that he saw and recalled Plaintiff's Appeal letter and the letter from Plaintiff's psychiatrist and psychotherapist that was sent to him. Owen Dep. 20:21–21:7 [ECF No. 113 at 9].

24.     From Miramar, Florida on June 29, 2017, RUSM dismissed Plaintiff from the university. *See* Dismissal Letter [ECF No. 119-28 at 2].

## III.     LEGAL STANDARD

"On a party's motion filed no later than 28 days after the entry of judgment, the court may amend its findings—or make additional findings—and may amend the judgment accordingly." Fed. R. Civ. P. 52(b). "Rule 52(b) is intended to reduce the frequency of appellate remands by permitting the correction of errors in the district court." *Dev. Specialists, Inc. v. Kaplan (In re Irving Tanning Co.)*, 876 F.3d 384, 390 (1st Cir. 2017). The purpose of Rule 52(b) is to "allow the court to correct plain errors of law or fact, or, in limited situations, to allow the parties to present newly discovered evidence, but not to allow the relitigation of old issues, a rehearing on the merits, or the presentation of new theories of the case." *Perez v. Renaissance Arts & Educ., Inc.*, CASE NO.: 8:12-CV-514-T-MAP, at *2 (M.D. Fla. Feb. 3, 2014).

## IV.     ARGUMENT

### A.     Sufficiency of Notice or Miscommunication

On May 16, 2019, this Court, *sua sponte*, issued an Order (hereinafter "*Sua Sponte* Order") [ECF No. 91], stating that "the parties shall, in no more than **10 pages**, brief the question of the **extraterritorial application** of the ADA and the RA, as well as the impact, if any, that the **answer to this question might** have on the Plaintiff's remaining claims …. The parties **shall include**

citations to the <u>existing evidentiary record</u> as needed." *Sua Sponte* Order at 5–6 (emphasis added). In response to the Court's *Sua Sponte* Order, Plaintiff filed his eleven-page brief ("Pl. Resp.") [ECF No. 192] on the question of "extraterritorial application" of the ADA and the RA.

        i.      <u>Insufficient Notice of Questions at Issue</u>

The Court did not request for a briefing on the domestic application of the ADA and the RA in this case. *See Sua Sponte* Order at 5. Plaintiff advised the Court that "[b]ecause the issue of **extraterritorially was irrelevant to the parties' motions for summary judgment** concerning the failure to accommodate claims, the evidence offered may have miscommunicated to the Court the location of the acts in this case …. If the Court finds that an answer to [domestic application] is warranted, **Plaintiff needs an estimated five additional pages to fully brief the depth of the mix questions of fact** and law regarding the [domestic application] … issues. At this stage, the record evidence before the Court is not developed to answer, [domestic application]." Pl. Resp. at 8–9. *See also RJR Nabisco, Inc. v. European Cmty.*, 136 S. Ct. 2090, 2101 (2016) ("If the conduct relevant to the statute's focus occurred in the United States, then the case involves a permissible domestic application even if other conduct occurred abroad.").

        ii.     <u>Insufficient Notice to Come Forward With All Evidence That Was Not on the Record</u>

"A district court possesses the power to enter summary judgment *sua sponte* provided the losing party 'was on notice that she had to come forward with all of her evidence.'" *Burton v. City of Belle Glade*, 178 F.3d 1175, 1203 (11th Cir. 1999) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986). "As we have long recognized, 'this notice provision is not an unimportant technicality, but a vital procedural safeguard' to a party's right to offer the best defense to any challenge." *Id.* at 1203–04 (quoting *Massey v. Congress Life Ins. Co.*, 116 F.3d 1414, 1417 (11th Cir. 1997)).

After Plaintiff filed his brief, the Court, without warning or notice, later determined that an answer to the domestic application of his case was warranted. *See* Order Closing Case at 10–11. Plaintiff expressly stated that the "record evidence before the Court is not developed to answer" that question—as in, there is evidence that was not on the record that is material to determine the domestic application of his case. Pl. Resp. at 9. The Court acknowledge and denied Plaintiff's request for additional pages on the grounds that "Plaintiff's suggestion that the record evidence is 'not developed' enough to determine whether the acts he has challenged occurred in Dominica is belied by the aforementioned citations to the Plaintiff's own 'Statement of Undisputed Material Facts.'" Order Closing Case at 11 n.7. To the extent that the phrase, "not developed" means something different than how used in Plaintiff's pleadings, "it is well-established that *pro se* complainants are held to less pleading standards less stringent than those applicable to lawyers." *U.S. v. Roberts*, 308 F.3d 1147, 1153 (11th Cir. 2002) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972)).

The Court stated that "[t]he parties shall include citations to the **existing evidentiary record**." *Sua Sponte* Order at 6 (emphasis added). Plaintiff was not required to, and therefore he did not, put forth irrelevant evidence in his "Statement of Undisputed Material Facts" because that evidence (that was not on the record) was irrelevant to the parties' motions for summary judgment. As the Court noted, "neither party had raised—and so the Court did not consider—the question of the ADA's and the RA's extraterritorial application." Order Closing Case at 2. The Local Rules only requires that "[a] motion for summary judgment and the opposition thereto shall be accompanied by a statement of **material facts**." S. D. FLA. L. R. 56.1(a) (emphasis added). Thus, evidence omitted from Plaintiff's "Statement of Undisputed Material Facts" were not considered

8

material at that time, and consequently, was not an "existing evidentiary record" that Plaintiff

could cite to.

**B.    Domestic Application and the Relevant Facts**

"If the statute is not extraterritorial, then at the second step we determine whether the case

involves a domestic application of the statute, and we do this by looking to the statute's

'focus.' If the conduct **relevant** to the statute's focus occurred in the United States, then the case

involves a permissible domestic application even if other conduct occurred abroad." *RJR Nabisco,*

*Inc. v. European Cmty.*, 136 S. Ct. 2090, 2101 (2016) (emphasis added).

i.    <u>How to Identify a Statute's Focus</u>

The Supreme Court recently explained how to identify a statute's focus in *Westerngeco*

*LLC v. Ion Geophysical Corp.*, 138 S. Ct. 2129 (2018). The Supreme Court explained that "[t]he

focus of a statute is 'the object of its solicitude,' which can include the conduct it 'seeks to

regulate,' as well as the parties and interests it 'seeks to protect' or vindicate." *Id.* at 2137 (brackets

omitted) (quoting *Morrison v. Nat'l Austl. Bank Ltd.*, 561 U.S. 247, 267 (2010)). "When

determining the focus of a statute, we do not analyze the provision at issue in a vacuum." *Id.*

(citing *Morrison*, 561 U.S. at 267-69). Instead:

> If the statutory provision at issue works in tandem with other
> provisions, it must be assessed in concert with those other
> provisions. Otherwise, it would be impossible to accurately
> determine whether the application of the statute in the case is a
> "domestic application." And determining how the statute has
> actually been applied is the whole point of the focus test.

*Id.* (citation omitted) (citing *RJR Nabisco*, 136 S. Ct. at 2101).

ii.    <u>Plaintiff's Equal Opportunity and His Examinations Are the Statutes'</u>
<u>Object of Solicitude in This Case</u>

"[The] focus is not necessarily the 'bad act,' or the *actus reus*, prohibited by the statute.

Rather, it is 'the object[] of the statute's solicitude,' the activities 'the statute seeks to regulate

[and] parties or prospective parties to those [activities] that the statute seeks protect.'" *European*

*Cmty. v. RJR Nabisco, Inc.,* No. 02–CV–5771 (NGG)(VVP), 2011 WL 843957, at *4 (E.D.N.Y.

March 8, 2011) (alterations in original) (quoting *Morrison v. National Australia Bank Ltd.,* 130 S.

Ct. 2869, 2881 (2010)); *accord Sorota v. Sosa,* 842 F. Supp. 2d 1345, 1350 (S.D. Fla.

2012) (collecting *European* and other cases).

"42 U.S.C. § 12189, which falls within Title III of the ADA, governs … examinations."

*Enyart v. National Conference,* 630 F.3d 1153, 1160 (9th Cir. 2011). "The purpose of this section

is 'to assure that persons with disabilities are not foreclosed from educational, professional, or

trade opportunities because an examination or course is conducted in an inaccessible site or

without an accommodation.'" *Id.* (quoting H.R. Rep. No. 101-85(111), at 68-69 (1990), *reprinted*

*in* 1990 U.S.C.C.A.N. 445, 491-92). "The text of these other ADA provisions does not resolve the

ambiguity in § 12189's use of term 'accessible' because an examination is not equivalent to a

physical space." *Id.* at 1162. The "DOJ's regulation is not based upon an impermissible

construction of § 12189, so this court affords *Chevron* deference to 28 C.F.R. § 36.309 and applies

the regulation's 'best ensure' standard." *Id.* 28 CFR § 36.309(b) provides that:

> (1) Any private entity offering an examination covered by this
> section must assure that -
>
> (i) The examination is **selected and administered** so as to **best
> ensure** that, when the examination is administered to an individual
> with a disability that … the examination results accurately reflect
> the individual's aptitude or achievement level or whatever other
> factor the examination purports to measure, rather than reflecting
> the individual's impaired sensory, manual, or speaking skills ….

*Id.* (emphasis added); *accord* 34 CFR § 104.44(c) (same under the Rehabilitation Act); *see also*

*Jones v. Nat'l Conference of Bar Examiners,* 801 F. Supp. 2d 270, 284 (D. Vt. 2011) ("This court,

like several other courts, concludes that 28 C.F.R. § 36.309(b)(1)(i) is neither arbitrary nor

capricious, nor manifestly contrary to the statute it implements. The court thus concludes that a 'best ensure' is entitled to controlling weight and governs the outcome in this case." (footnote omitted)). The *Jones* court continues:

> A "best ensure" standard not only **prevents an entity such as Defendant from directly or indirectly providing** "a qualified individual with a disability with an aid, benefit, or service that is not as effective in affording equal opportunity to obtain the same result, to gain the same benefit and to reach the same level of achievement as that provided to others[,]" 28 C.F.R. § 35.130(b)(1), it also reflects the special challenges to the establishment of a level playing field in the administration of professional exams.

*Jones*, 801 F. Supp. 2d at 284 (emphasis added).

Regulating examinations, the focus of the statutes is how an examination is offered, selected, or administered. 42 U.S.C. § 12189; 28 CFR § 36.309(b)(1)(i); 34 CFR § 104.44(c). Moreover, the statutes seek to protect "persons with disabilities." *Id*. Therefore, *where* an examination is administered, is relevant to the focus of the statute. And if a person with a disability acts to take an examination within the United States, the case "involves a permissible domestic application even if other conduct occurred abroad." *RJR Nabisco, Inc. v. European Cmty.*, 136 S. Ct. 2090, 2101 (2016).

### iii.   Improper Factual Inference or Application of Law

Here, the Court appears to have drawn an improper factual inference in favor of RUSM. "[A]ll factual inferences are drawn in favor of the non-moving party." Order Closing Case at 3 (citing *Allen v. Tyson Foods Inc.*, 121 F.3d 642, 646 (11th Cir. 1997)). The Court found that "the only relevant acts that took place in the United States were the Plaintiff's second, third, fourth, and fifth attempts at passing the COMP Exams—which, it is undisputed, are not administered by RUSM." Order Closing Case at 10 (footnote omitted) (citing Pl.'s 56.1 ¶ 28 [ECF No. 101]). Pl.'s 56.1 ¶ 28 cites to RUSM's Answer at ¶ 23 [ECF No. 58], which merely states that "RUSM admits

that Plaintiff's first attempt to pass the NBME CBSE took place in Dominica and that his second through fifth attempts took place at Prometric Test Centers in the United States of America." The Court's finding is unsupported by the referenced evidence and the Court's usage of the term "administered" is vague.

Like RUSM's argument, "NCBE argues that it is the Court of Appeals that 'offers' the MBE because the Court of Appeals administers the examination and NCBE is merely a vendor that provides testing materials." *Bonnette v. Dist. of Columbia Court of Appeals*, 796 F. Supp. 2d 164, 179 (D.D.C. 2011). The Circuit court rejected this argument and held that, "to the extent that NCBE exercises control over the manner in which the examination is given, it is subject to § 12189." *Id.* at 179–180; *see also Binno v. Am. Bar Ass'n*, 826 F.3d 338, 347 (6th Cir. 2016) ("[T]he term 'offer' nevertheless must be interpreted so that Section 309 [28 CFR § 36.309] is not meaningless. Because the statute states that an entity that 'offers' exams must do so 'in a place and manner accessible' to disabled persons or else offer alternative accommodations, the entity must have some ability to grant those accommodations in the administration of the exam."). "NCBE also suggests that § 12189 applies only to 'public accommodations' as defined in Title III of the ADA …. However, § 12189 clearly applies to 'any person' that offers examinations, not just public accommodations." *Bonnette*, 796 F. Supp. 2d at 180 n.2.

The evidence shows that RUSM selects and controls the manner in which the NBME CBSE is administered in Prometric Test Centers in the United States. *See* Amended and Additional Facts (hereinafter the "AAF") ¶¶ 6–10, *supra* Part II.

      iv.   <u>A Discriminatory Decision Is Not the Focus of the ADA and the Rehabilitation Act</u>

The Court further stated that "by the time the Plaintiff sat down to take these examinations, the alleged discriminatory decision to deny his requested accommodation … had already been made in Dominica." Order Closing Case at 10–11.

First, as a factual matter, RUSM judicially admitted that it is the "entity" that determines accommodations required for the NBME CBSE attempts that are administered at Prometric Test Centers in the United States. *See* AAF ¶¶ 9–10. "[F]acts judicially admitted are facts established not only beyond the need of evidence to prove them, but beyond the power of evidence to controvert them." *Cooper v. Meridian Yachts, Ltd.*, 575 F.3d 1151, 1178 (11th Cir. 2009). Moreover, Dr. Sharma, an administrator at RUSM, had the authority to institute testing accommodations for students. AAF ¶¶ 11–12, 15. Dr. Sharma also knew that Plaintiff was preparing to take his NBME CBSE exams in the United States. AAF ¶¶ 7, 13–14. Plaintiff also informed RUSM administration located in the United States that could institute a sixth NBME CBSE attempt with corrective measures for testing accommodations. AAF ¶¶ 15, 17–24.

Second, a "discriminatory decision" is not the focus of the ADA. It may very well be a "bad act" related to a focus, but it is not itself the sole focus, if any focus, of examinations under the ADA and the Rehabilitation Act. *See supra* Part IV.B.ii. A contrary reading of the statutes would lead to absurd results. *Shimek v. Weissman, Nowack, Curry Wilco*, 374 F.3d 1011, 1014 (11th Cir. 2004) ("[T]he plain meaning of the statute will be followed unless it would lead to a 'truly absurd' interpretation").

Hypothetically, if discriminatory decisions were the focus of the ADA and the Rehabilitation Act, that would mean that an entity would be liable for making a "discriminatory decision," while inside of the United States, to not provide accommodations outside of the United States. Equally, under that interpretation, an entity that makes decisions outside of the United

13

States would have no obligation to make its buildings located in the United States accessible to persons with disabilities, because the "discriminatory decision" was made in a foreign country.

The only logical interpretation of the statutes' focus is the building, examination, or activity that needs a modification. Therefore, when an extraterritorial decision controls a disabled person's equal access to a building, examination, or activity located inside of the United States, the case involves a domestic application even if other conduct occurred abroad. *See supra* Part IV.B.ii.

Third, under the Rehabilitation Act and the ADA, it is not important as to who is capable of making a "final decision" as the Court suggested. Order Closing Case at 10. "To prevail on a claim for compensatory damages under either the RA or the ADA, a plaintiff must show that a defendant violated his rights under the statutes and did so with discriminatory intent." *McCullum ex rel. DF & TF v. Orlando Reg'l Healthcare Sys., Inc.*, 768 F.3d 1135, 1146-47 (11th Cir. 2014). "A plaintiff may prove discriminatory intent by showing that a defendant was deliberately indifferent to his statutory rights." *Id.* at 1147 (citing *Liese v. Indian River Cnty. Hosp. Dist.*, 701 F.3d 334, 345 (11th Cir. 2012)).

"We have held that it is appropriate to look to Title IX case law for guidance in examining discriminatory intent under § 504." *J.S. v. Hous. Cnty. Bd. of Educ.*, 877 F.3d 979, 987 (11th Cir. 2017) (citing *Liese*, 701 F.3d at 347). So, "[f]or an organization to be liable for Title IX purposes, [a plaintiff must show] the deliberate indifference of 'an *official* who at a minimum has *authority* to address the alleged discrimination and to institute corrective measures on the organization's behalf and who has *actual knowledge* of discrimination in the organization's programs and fails adequately to respond." *J.S. v. Hous. Cnty. Bd. of Educ.*, 877 F.3d 979, 987 (11th Cir. 2017) (alterations in original) (citing *Liese*, 701 F.3d at 349).

14

"In the § 504 context, we conclude that an official is someone who enjoys substantial supervisory authority within an organization's chain of command so that, when dealing with the complainant, the official had complete discretion at a 'key decision point' in the administrative process." *Liese v. Indian River Cnty. Hosp. Dist.*, 701 F.3d 334, 350 (11th Cir. 2012) (citing *Doe v. County*, 604 F.3d 1248, 1256-57 (11th Cir. 2010)). In *Doe*, the Eleventh Circuit found that notice to a school official met this standard because "[m]ore importantly, … [he] could 'initiate corrective action' … even if he could not take final adverse employment actions." *Doe*, 604 F.3d at 1255. "In *Broward County* [*Doe*, 604 F.3d 1248], we rejected the notion that 'final employment decisions such as suspending, terminating, or reassigning an offending [individual] [are] the *only* corrective measures giving an official the power to remedy' …." *J.S. v. Hous. Cnty. Bd. of Educ.*, 877 F.3d 979, 990 (11th Cir. 2017) (quoting *Doe*, 604 F.3d at 1257). For example, the Eleventh Circuit held, "we conclude that [even] a teacher can serve as an appropriate person." *Id*. at 989.

## V.    CONCLUSION

WHEREFORE, Plaintiff respectfully requests that the Court enter an Order that amends or makes additional factual findings under Rule 52(b), whether or not granting the motion would alter the judgment.


DATED this 25th day of June, 2019:

                               Respectfully submitted,

                               By: Oluwamuyiwa Awodiya, *pro se* litigant
                                        15005 Dahlia Dr.
                                        Bowie, MD 20721
                                        (240) 602-1836
                                        Plaintiff, in Proper Person

## CERTIFICATE OF SERVICE

I do hereby certify that on this 25th day of June, 2019, I have caused a true and correct copy of the foregoing by mailing a copy to the Court, where the Court's CM/ECF system will send notification to the counsel of record:

By: Oluwamuyiwa Awodiya, *pro se* litigant

PRIORITY MAIL EXPRESS

VISIT US AT USPS.COM®
Label 11B, Nov 2016
United States Postal Service®

**CUSTOMER USE ONLY**

FROM: (PLEASE PRINT)   PHONE ( ) 740-662-____

Oluwamuyiwa Awodiya
15005 Dahlia Dr.
Bowie, MD 20721

PAYMENT BY ACCOUNT (if applicable)
USPS Corporate Acct. No.   Federal Agency Acct. No.

DELIVERY OPTIONS (Customer Use Only)
☐ SIGNATURE REQUIRED
☐ No Saturday Delivery
☐ Sunday/Holiday Delivery Required
☐ 10:30 AM Delivery Required

TO: (PLEASE PRINT)   PHONE ( )

U.S. Federal Building and Courthouse
299 East Broward Boulevard
Room 108
Fort Lauderdale, FL
ZIP + 4® (U.S. ADDRESSES ONLY)
3 3 3 0 1 -

**ORIGIN (POSTAL SERVICE USE ONLY)**

EK 557424685 US

ᴹ UNITED STATES POSTAL SERVICE ®

PRIORITY MAIL EXPRESS™

MITCHELLVILLE BR PO
JUN 25 2019

1-ORIGIN POST OFFICE COPY

