UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 18-60482-CIV-ALTMAN/Hunt

**OLUWAMUYIWA AWODIYA**,

    Plaintiff,
v.

**ROSS UNIVERSITY SCHOOL OF MEDICINE**,

    Defendant.
_____/

## ORDER

**THIS MATTER** came before the Court upon the Plaintiff's Motion for Amended and Additional Findings in the Court's Order Closing Case ("Motion to Amend") [ECF No. 212]. The Plaintiff asks the Court to "amend or make additional findings under Rule 52(b), whether or not granting the motion would alter the judgment." Motion to Amend at 1.

As a preliminary matter, the Court notes that a motion to amend under Federal Rule of Civil Procedure 52(b) is improper where, as here, a district court has entered an order for summary judgment "because the findings of fact on a summary judgment motion are not findings in the strict sense that the trial court weighed evidence and resolved disputed factual issues." *Silva v. Potter*, No. 804CV2542T17EAJ, 2006 WL 3219232, at *2 (M.D. Fla. Nov. 6, 2006).

What the Plaintiff actually wants is to introduce "new evidence" that might induce the Court to reconsider its June 18, 2019 Omnibus Order granting summary judgment in favor of the Defendant, RUSM ("Omnibus Order") [ECF No. 210]. As such, the Court will construe the Plaintiff's Motion to Amend as a Motion for Reconsideration under Federal Rule of Civil

Procedure 59(e). Rule 59(e) sets forth "three primary grounds that justify reconsideration[]: (1) an intervening change in the controlling law; (2) the availability of new evidence; and (3) the need to correct clear error or prevent manifest injustice." *Delaware Valley Floral Grp., Inc. v. Shaw Rose Nets, LLC*, 597 F.3d 1374, 1383 (11th Cir. 2010) (internal quotation omitted).

In support of his motion, the Plaintiff raises two principal arguments: (1) that he was not "on notice" of the Court's intention to evaluate the domestic application of the ADA to the facts of his case;[1] and (2) that, under the "focus" test set out in *RJR Nabisco, Inc. v. European Cmty.*, 136 S. Ct. 2090 (2016), the ADA's "focus" is not the elimination of discriminatory decisions, which in this case occurred in Dominica, but rather the eradication of un-accommodated exams—exams the Plaintiff admittedly took in the United States. *See generally* Motion to Amend. Both arguments are meritless.

The Plaintiff first claims that he "was not given notice that the Court would decide the domestic applications of this case," and that the "Court did not request for a briefing on the domestic application of the ADA and the RA in this case." Motion to Amend at 1. But this is simply not so. In its May 14, 2019 Order [ECF No. 191] requesting additional briefing, the Court specifically asked the parties to "brief the question of the extraterritorial application of the ADA and the RA, *as well as the impact, if any, that the answer to this question might have on the Plaintiff's remaining claims*, which include: Count I (failure to accommodate under the ADA); Count II (failure to accommodate under the RA); Count VIII (fraudulent inducement under Florida law); and Count IX (negligent misrepresentation under Florida law)." [ECF No. 191 at 6 (emphasis added)]. The Court's Order therefore put the parties on notice of its intention, not only to consider

---

[1] The Plaintiff also (and relatedly) says that the Court should have asked for additional briefing on this issue. Motion to Amend at 1.

the extraterritoriality of the ADA, but also to assess the viability of the Plaintiff's claims in the event the ADA was found not to apply abroad. The Plaintiff was therefore unmistakably on notice that the Court intended to consider the domestic application of the ADA—he says as much in his response to the Court's May 14, 2019 Order, *see* Pl. Resp. at 9 [ECF No. 192]—but, for reasons that are not clear, he specifically chose not to allocate any of his ten pages of extra briefing to this issue. *Id*.

The Court also did not need any additional briefing—that is, any briefing on top of the additional briefing the Court had already sought, *see generally* ECF No. 191—to resolve the rather straightforward question of whether the Plaintiff's ADA claims arose from actions RUSM took in the United States. Indeed, the Plaintiff's own Statement of Undisputed Material Facts[2]—upon which the Court exclusively relied for its conclusion on this issue—made plain that RUSM's alleged denial of his request for an accommodation occurred *in Dominica*. The Plaintiff's renewed arguments on this point—like the declaration he attached to his Motion—do little more than attempt to relitigate issues the Court has already addressed in the Omnibus Order. And, for whatever it is worth, the "Additional Facts" the Plaintiff cites in his motion provide *no evidence* that RUSM's allegedly discriminatory decision not to provide the Plaintiff with test-taking accommodations took place anywhere but in Dominica. As the Court explained in its Omnibus Order, RUSM's alleged decision not to grant the test-taking accommodations—and the Plaintiff's conversations with RUSM staff about his medical conditions—all occurred *in Dominica*.

The Plaintiff's second argument—that, because the ADA's "focus" is the un-accommodated exam itself, and because he took that exam in the United States, his ADA claims necessarily arose in the United States—fares little better. In *RJR Nabisco*, the Supreme Court set

---

[2] *See* Plaintiff's Statement of Material Facts in Support of Plaintiff's Second Motion for Partial Summary Judgment [ECF No. 101].

out a two-step framework for courts to follow in analyzing the extraterritorial application of a plaintiff's claims:

> At the first step, we ask whether the presumption against extraterritoriality has been rebutted—that is, whether the statute gives a clear, affirmative indication that it applies extraterritorially . . . [i[f the statute is not extraterritorial, then at the second step we determine whether the case involves a domestic application of the statute, and we do this by looking to the statute's "focus." If the conduct relevant to the statute's focus occurred in the United States, then the case involves a permissible domestic application even if other conduct occurred abroad; *but if the conduct relevant to the focus occurred in a foreign country, then the case involves an impermissible extraterritorial application regardless of any other conduct that occurred in U.S. territory.*

*Id.* at 2101 (emphasis added).

The Plaintiff's decision to take the COMP Exam in the United States—a decision the Plaintiff made only *after* RUSM had chosen not to grant him a testing accommodation—is not, as the Plaintiff suggests, "conduct relevant to the [ADA's] focus." *Id*. To the contrary, as the text of the ADA makes clear, the "Purpose" of the ADA is to eliminate *discrimination*—that is, decisions that discriminate—against individuals with disabilities. *See generally* 42 U.S.C. § 12101(b).[3] Specifically, the ADA endeavors to "provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." *Id.* The ADA's "focus" is thus the elimination of precisely the kind of discrimination in which RUSM allegedly engaged here—

---

[3] Section 12101(b) provides as follows:

> It is the purpose of this chapter: (1) to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities; (2) to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities; (3) to ensure that the Federal Government plays a central role in enforcing the standards established in this chapter on behalf of individuals with disabilities; and (4) to invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by people with disabilities.

discrimination that occurred, if at all, in Dominica. In other words, because the "conduct relevant to the focus [of the ADA] occurred in a foreign country, the case involves an impermissible extraterritorial application *regardless of any other conduct that occurred in U.S. territory*." *RJR Nabisco*, 136 S. Ct. at 2101 (emphasis added).

In short, the decision not to provide an accommodation—even for exams that might later take place in the United States—was one RUSM made in Dominica, a foreign country in which the ADA, for better or worse, simply does not apply. Given that there has been no change in the intervening or controlling law, no new evidence, and no showing of clear error or manifest injustice, the Court hereby

**ORDERS AND ADJUDGES** that the Plaintiff's Motion to Amend [ECF No. 212] is **DENIED**.

**DONE AND ORDERED** in Fort Lauderdale, Florida, this 9th day of July 2019.

_____
**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc:   counsel of record