**UNITED STATES COURT OF APPEALS**
**FOR THE ELEVENTH CIRCUIT**

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

FILED BY ___AP___ D.C.
Jun 23, 2021
ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

June 23, 2021

Clerk - Southern District of Florida
U.S. District Court
400 N MIAMI AVE
MIAMI, FL 33128-1810

Appeal Number: 19-12832-DD
Case Style: Oluwamuyiwa Awodiya v. Ross University School
District Court Docket No: 0:18-cv-60482-RKA

A copy of this letter, and the judgment form if noted above, but not a copy of the court's decision, is also being forwarded to counsel and pro se parties. A copy of the court's decision was previously forwarded to counsel and pro se parties on the date it was issued.

The enclosed copy of the judgment is hereby issued as mandate of the court. The court's opinion was previously provided on the date of issuance.

Sincerely,

DAVID J. SMITH, Clerk of Court

Reply to: Lois Tunstall
Phone #: (404) 335-6191

Enclosure(s)

MDT-1 Letter Issuing Mandate

# UNITED STATES COURT OF APPEALS
## For the Eleventh Circuit

_____

No. 19-12832

_____

District Court Docket No.
0:18-cv-60482-RKA

OLUWAMUYIWA AWODIYA,

                                Plaintiff - Appellant,

versus

ROSS UNIVERSITY SCHOOL OF MEDICINE,
School of Veterinary Medicine Limited,

                                Defendant - Appellee.

_____

Appeal from the United States District Court for the
Southern District of Florida

_____

## JUDGMENT

It is hereby ordered, adjudged, and decreed that the opinion issued on this date in this appeal is entered as the judgment of this Court.

Entered: May 24, 2021
For the Court: DAVID J. SMITH, Clerk of Court
By: Jeff R. Patch

ISSUED AS MANDATE 06/23/2021

[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-12832
_____

D.C. Docket No. 0:18-cv-60482-RKA


OLUWAMUYIWA AWODIYA,

                 Plaintiff-Appellant,

versus

ROSS UNIVERSITY SCHOOL OF MEDICINE,
School of Veterinary Medicine Limited,

                 Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(May 24, 2020)

Before JORDAN, JILL PRYOR, and BRANCH, Circuit Judges.

JORDAN, Circuit Judge.

Oluwamuyiwa Awodiya sued Ross University School of Medicine after he was dismissed in 2017 from its medical program in Dominica for failing the Comprehensive Basic Science Exam (CBSE) five times. He appeals the district court's grant of summary judgment on some of his claims. Following a review of the record, we affirm in part and reverse in part.[1]

## I

We review the district court's grant of summary judgment *de novo*. In so doing, we view the evidence in the light most favorable to Mr. Awodiya. *See, e.g., Scott v. Harris*, 550 U.S. 372, 378 (2007).

## II

Mr. Awodiya alleged that Ross had violated the Rehabilitation Act, 29 U.S.C. § 794, and the Americans with Disabilities Act, 42 U.S.C. § 12182, by failing to accommodate his disabilities (ADHD and OCD) in the test-taking process. The district court ruled that the RA and the ADA do not apply extraterritorially, and that the acts that formed the basis of Mr. Awodiya's federal claims took place in Dominica.[2]

---

[1] We assume the parties' familiarity with the record, and thus set out only what is necessary to explain our decision.
[2] Cases under the RA and the ADA are generally governed by the same standards. *See Cash v. Smith*, 231 F.3d 1301, 1305 (11th Cir. 2000). We therefore discuss the claims together and cite RA cases and ADA cases interchangeably where appropriate.

On appeal, Mr. Awodiya challenges these rulings, arguing that his case involves a domestic application of the RA and the ADA because (i) he took four of his five tests at Prometric test centers located in the United States, and (ii) his appeal of the dismissal was denied by Ross' dean, William Owen, whose office is located in Miramar, Florida. He contends in part that he should have been provided a sixth CBSE administration with corrective measures and accommodations. We address each argument below.

### A

Mr. Awodiya first argues that the fact that he took his CBSE examinations in the United States makes his case one involving a domestic application of the RA and the ADA. That is so, according to Mr. Awodiya, because the mere participation in an unequal benefit is part of the focus of the RA and the ADA, and the administration of examinations is conduct relevant to that focus. We disagree. As it relates to failure to accommodate claims, the focus of the RA and the ADA is the elimination of acts or omissions that constitute failures to provide reasonable accommodations. Here, the conduct relevant to that focus occurred in Dominica.

The Supreme Court has held that to determine whether a case involves a domestic application of a federal statute, a court must identify the law's "focus," i.e., "the object of its solicitude, which can include the conduct it seeks to regulate, as well as the parties and interests it seeks to protect or vindicate." *WesternGeco LLC*

3

*v. ION Geophysical Corp.*, 138 S. Ct. 2129, 2137 (2018) (internal quotation marks and citation omitted, modifications in original). "If the conduct relevant to the statute's focus occurred in the United States, then the case involves a permissible domestic application of the statute, even if other conduct occurred abroad. But if the relevant conduct occurred in another country, then the case involves an impermissible extraterritorial application regardless of any other conduct that occurred in U.S. territory." *Id.* (internal quotation marks and citation omitted).

We begin our analysis with the text of the RA and the ADA, both of which make clear that the statutory focus is the elimination of discrimination. For example, § 504 of the RA provides that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). Similarly, the ADA explicitly provides that one of its purposes is to eliminate discrimination. *See* 42 U.S.C. § 12101(b)(1) (stating that one purpose of the ADA is "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities"). And § 12182(a) of the ADA establishes that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation

4

by any person who owns, leases (or leases to), or operates a place of public accommodation." From those provisions, it is clear to us that the focus of both Acts is the elimination of discrimination. Given, however, that discrimination under the RA and the ADA can take different forms, *see, e.g.*, 42 U.S.C. § 12182(b)(2)(A), we must consider the type of discrimination at issue in a given case to identify the focus of the provisions in that particular case. *See WesternGeco*, 138 S. Ct. at 2137 ("To determine the focus of [the relevant statute] in a given case, we must look to the type of infringement that occurred."). Here, Mr. Awodiya raises a failure to accommodate claim, which the ADA defines as "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities." 42 U.S.C. § 12182(b)(2)(A)(ii). As is evident from that text, as to failures to accommodate, the object of the ADA's solicitude is the regulation of a particular type of conduct—the "failure to make reasonable modifications." *See id.*[3]

The few courts addressing failure to accommodate claims under the RA have similarly found that its focus is the regulation of failures to make reasonable

---

[3] That conduct can take the form of positive action (e.g., the denial of a request for accommodation) or an omission (e.g., an unreasonable delay in providing an accommodation). *See Hill v. Clayton County Sch. Dist.*, 619 F. App'x 916, 922 (11th Cir. 2015) (unpublished). *See also McCray v. Wilkie*, 966 F.3d 616, 621 (7th Cir. 2020).

modifications. *See Murphy v. Eisai, Inc. & Eisai, Ltd*, ___F. Supp. 3d ___, 2020 WL 7022747, at *6 (D.N.J. Nov. 28, 2020) (concluding that the focus of a failure to accommodate claim under the RA is the "wrongful refusal to provide a reasonable accommodation"). *Cf. Archut v. Ross Univ. Sch. of Veterinary Med.*, Civ. A. No. 10-1681 (MLC), 2012 WL 5867148, at *9 (D.N.J. Nov. 19, 2012) (explaining that the focus of the RA "is centered on acts that constitute exclusionary or accommodating decisions"), *aff'd*, 580 F. App'x 90 (3d Cir. 2014).

Based on the above, we hold that—in relation to failures to accommodate—the focus of the RA and the ADA is the elimination of acts or omissions that constitute failures to provide reasonable accommodations. With that in mind, we must now pinpoint the location of the conduct in this case that is relevant to that focus.

Here, that conduct occurred in Dominica. After failing his fifth semester at Ross (before failing the CBSE for the first time), in Dominica, Mr. Awodiya began attending Ross' counseling center, also in Dominica. There, he authorized the counseling center to discuss his confidential information with Ross administrators to determine whether it was appropriate to provide him with reasonable testing accommodations. Mr. Awodiya requested extended testing time from Davendranand Sharma, a Ross professor; Mr. McMillan Cuffy, a Ross counselor; and Bryan Hayse, a Ross associate dean. These individuals worked in Dominica. According to Mr.

6

Awodiya, Dean Hayse made the final decision on his request for extended testing time.

Accordingly, as to Ross' denial of Mr. Awodiya's requests for testing accommodations, we find that the conduct relevant to the focus of the RA and the ADA in this case occurred in Dominica.

### B

Insofar as the RA and the ADA are concerned, that leaves the denial of Mr. Awodiya's appeal by Dean Owen. Aside from noting that Dean Owen's office is located in Florida, Mr. Awodiya does not explain why the denial of his appeal is conduct relevant to the focus of the RA and the ADA. To explain why this matters, we recount the facts relating to Mr. Awodiya's dismissal.

The registrar of Ross' medical school—who is based in Florida—dismissed Mr. Awodiya because he had failed the CBSE five consecutive times. Mr. Awodiya appealed to the Students Promotions Committee, explaining that he had been diagnosed with OCD and trichotillomania (the pulling of eyelashes), that he was receiving treatment, and that he would "likely pass any future exam, specifically" the CBSE. The Students Promotions Committee—also based in Florida—upheld the dismissal.

Mr. Awodiya then appealed to Dean Owen. He again explained his OCD diagnosis and said that the condition had affected his academic performance. Noting

7

that he "never finished an exam on time," Mr. Awodiya said that he was getting help from a psychotherapist and a psychiatrist. He reported that he had taken timed practice tests since his diagnosis, and that those scores had improved. He closed by saying that he "just need[ed] one more chance" to take and pass the CBSE. Mr. Awodiya's treating doctors also sent a joint letter to Dean Owen in support of the appeal. They explained that Mr. Awodiya was receiving therapy for ADHD and OCD, that he previously had not understood the nature of these conditions (which affected his academic performance), and that he was considering taking psychotropic medication.

Dean Owen rejected Mr. Awodiya's appeal. Explaining that he had considered Mr. Awodiya's appeal, academic record, and pre-matriculation materials, he ultimately concurred with the decision of the Student Promotions Committee.

At no time in his appeals to the Student Promotions Committee or to Dean Owen did Mr. Awodiya allege or complain that he had been denied any requested accommodations for the CBSE. And aside from asking for an opportunity to take the CBSE a sixth time, Mr. Awodiya did not request any further accommodations.

But we do not rest our decision on Mr. Awodiya's failure to make an express demand for certain accommodations. *Cf. Hunt v. Aimco Properties, L.P.*, 814 F.3d 1213, 1226 (11th Cir. 2016) ("[A] plaintiff can be said to have made a request for

8

accommodation when the defendant has enough information to know of both the disability and desire for an accommodation.") (internal quotation marks omitted)). Under the circumstances, we agree with Ross' alternative argument, *see* Appellee's Br. at 16–20, that Dean Owen's rejection of Mr. Awodiya's appeal did not violate the RA or the ADA. Assuming, without deciding, that Dean Owen's decision constitutes the relevant conduct for purposes of a domestic application of the RA and the ADA, Ross was not required to permit Mr. Awodiya to take the CBSE a sixth time.

Given that Ross had already dismissed Mr. Awodiya in 2016 after his fourth CBSE failure, and reinstated him to allow him to take the exam a fifth time, it was not required to reinstate him again so that he could take the CBSE a sixth time. The RA and the ADA "impose [ ] no requirement upon an educational institution to lower or to effect substantial modifications of standards to accommodate a handicapped [or disabled] person." *Se. Cmty. Coll. v. Davis*, 442 U.S. 397, 413 (1979). And Mr. Awodiya—who has the burden of production on the issue of a reasonable accommodation—has not shown that "special circumstances" require an exception to Ross' academic requirement that students not fail the CBSE in five consecutive attempts. *See US Airways, Inc. v. Barnett*, 535 U.S. 391, 401–02, 406 (2002).

Accordingly, we affirm the district court's grant of summary judgment on Mr. Awodiya's RA and ADA claims.

9

### III

Mr. Awodiya also alleged that Ross had fraudulently induced him into applying and enrolling via the following statement on its student admission requirements webpage: "It is the policy and practice of the University to comply with the Americans with Disabilities Act as applicable and practical in Dominica." *Awodiya v. Ross Univ. Sch. Of Med.*, 391 F. Supp. 3d 1098, 1107 (S.D. Fla. 2019). The district court initially denied a summary judgment motion by Ross on this claim, concluding that there were material issues of fact on whether Ross had made a misstatement and whether Mr. Awodiya had relied on the website statement.

In its second summary judgment order, the district court (with a different district judge presiding) understood Mr. Awodiya to be arguing that the website statement was a promise of future conduct (future compliance with the ADA) by Ross. *See id.* Because Mr. Awodiya had not alleged or proven that Ross had specifically intended not to comply with that promise, as required by Florida law, the district court granted summary judgment in favor of Ross on the fraudulent inducement claim as well. *See id.*

Liberally construing Mr. Awodiya's briefs on appeal, *see Miller v. Donald*, 541 F.3d 1091, 1100 (11th Cir. 2008), we understand them to argue that the district court mischaracterized his fraudulent inducement claim. According to Mr. Awodiya, he did not argue that the website statement was a promise of future conduct, but

instead that it was a false statement about the existence of a policy to comply with the ADA. After a review of the record, we agree with Mr. Awodiya, and conclude that the initial denial of summary judgment was correct.

Under Florida law, fraudulent inducement requires the existence of "(1) a false statement concerning a material fact; (2) the representor's knowledge that the representation is false; (3) an intention that the representation induce another to act on it; and (4) consequent injury by the party acting in reliance on the representation." *Butler v. Yusem*, 44 So. 3d 102, 105 (Fla. 2010) (internal quotation marks omitted). "Generally, the false statement of material fact necessary to establish fraud must concern a past or existing fact." *Prieto v. Smook, Inc.*, 97 So. 3d 916, 917 (Fla. 4th DCA 2012). A promise of future conduct cannot give rise to a fraudulent inducement claim unless "the plaintiff can demonstrate that the person promising future action does so with no intention of performing or with a positive intention not to perform." *Mejia v. Jurich*, 781 So. 2d 1175, 1177 (Fla. 3rd DCA 2001).

Whether a statement concerns a past or existing fact or is a promise of future conduct depends, in part, on whether it is backward/present-looking or forward-looking. *See Prieto*, 97 So. 3d at 917; *King v. Bencie*, 752 F. App'x 881, 883–84 (11th Cir. 2018). One Florida case, *Thor Bear, Inc. v. Crocker Mizner Park, Inc.*, 648 So. 2d 168 (Fla. 4th DCA 1994), is instructive on this point. There, during negotiations on a retail space lease agreement, a mall had represented to the plaintiff

Case 0:18-cv-60482-RKA Document 221 Entered on FLSD Docket 06/23/2021 Page 14 of 19
USCA11 Case: 19-12832 Date filed: 05/24/2021 Page: 12 of 16
(12 of 17)

(i) that it had enough parking to accommodate the plaintiff's future store, and (ii) that more paved parking would be built near the store. *See id.* at 170. After trial, the trial court entered final judgment in favor of the mall. It understood the statements to be opinions of future affairs, and without evidence that the mall specifically intended not to comply with the statements at the time it made them, there was no actionable fraud. *See id.* at 170–171. The Fourth District disagreed and reversed, identifying the statement that the mall had sufficient parking as a statement of existing fact and the statement that more paved parking would be built as a promise of future conduct. *See id.* at 172–73.

Here, the district court found that "[t]he evidence in this case does not support [Mr. Awodiya's] view that, at the time it posted the statement on its website, [Ross] specifically intended *not* to comply with the ADA." *Awodiya*, 391 F. Supp. 3d at 1107. Though we are cognizant that Mr. Awodiya did not always express his fraudulent inducement claim with a lawyer's precision, a review of the record convinces us that his claim is based on an alleged false statement concerning an existing fact—that Ross, contrary to its website statement, did not have a policy or practice of complying with the ADA.[4]

---

[4] As noted, two district judges presided over this case. The first district judge interpreted Mr. Awodiya's fraudulent inducement claim as we do, relating to the existence of a policy and practice at Ross to comply with the ADA. *See* D.E. 154 at 19. After the case was reassigned, the second district judge recharacterized Mr. Awodiya's fraudulent inducement claim as relating to a promise

For example, in its motion relating to the earlier summary judgment order, Ross noted that "[t]he [website statement] language clearly states that [Ross] will comply with the ADA 'as applicable and practical' in Dominica." D.E. 107 at 17. Mr. Awodiya's response was adamant: "The [website] statement does not contain the term 'will' comply, it merely states 'It is [Ross'] policy . . . to comply.' [Ross'] argument attempts to morph the representation from a statement of fact into a statement of intent. Where is the policy? There is no policy." D.E. 137 at 21. Moreover, in his brief relating to the summary judgment order at issue, Mr. Awodiya again characterized the website statement as concerning an existing fact: "[Ross] advertised a false statement in the Admissions Requirements section of its website claiming that the university had a policy requiring its faculty to comply with the Americans with Disabilities Act in Dominica." D.E. 192 at 10.

Given our understanding of Mr. Awodiya's fraudulent inducement claim, we agree with the first district judge that the evidence in the record creates a genuine dispute of material fact as to whether Ross had a policy or practice of complying with the ADA in Dominica. On the one hand, Matthew Stewart-Fulton, one of Ross' accommodation coordinators, testified that Ross did not have a policy requiring faculty to comply with the ADA, and instead that it abided by the "spirit" of the

---

of future conduct. *See Awodiya*, 91 F. Supp. 3d at 1107. We agree with the interpretation of the first district judge.

13

ADA. Additionally, Dean Hayse testified that Ross uses the ADA as a guideline but is not beholden to it, and confirmed that Ross does not require its faculty to comply with the ADA. On the other hand, Dr. Sharma testified that he had assisted other students in obtaining accommodations, and that Ross does not deny accommodation requests once students' documentation is adequate. Further, Ross maintains an accommodation office in order to process requests for accommodations.

This conflicting evidence is sufficient for Mr. Awodiya's fraudulent inducement claim to survive summary judgment. We therefore reverse in part the district court's order on summary judgment as it relates to Mr. Awodiya's fraudulent inducement claim.[5]

## IV

We reverse the district court's grant of summary judgment on Mr. Awodiya's fraudulent inducement claim and affirm in all other respects.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

---

[5] Two theories comprise Mr. Awodiya's fraudulent inducement claim—a theory that Ross affirmatively misrepresented a material fact, and a theory that Ross fraudulently omitted a material fact from its website statement. We understand Mr. Awodiya's fraudulent omission theory to be that Ross failed to disclose that it had no policy or practice to comply with the ADA despite the website statement providing that it had a policy to comply with the ADA as applicable and practical in Dominica, precisely because the ADA is not applicable in Dominica. *See* Appellant's Br. at 28; Appellant's Reply Br. at 15.

14

BRANCH, Circuit Judge, concurring in part and dissenting in part:

I concur with Parts I and II of the majority's analysis, but respectfully dissent from its holding in part III that we should reverse the district court's grant of summary judgment to Ross on Awodiya's fraudulent inducement claim because I believe the majority has misconstrued the district court's order. Instead, I would affirm the district court.

Awodiya's fraudulent inducement claim is that he attended Ross based on his reliance on its allegedly false assurance on its website that "[i]t is the policy and practice of the University to comply with the Americans with Disabilities Act as applicable and practical in Dominica." The district court found that Awodiya could not withstand summary judgment because he had not presented any evidence that Ross's website statement was false. representation. The district court is correct.

To establish fraudulent inducement under Florida law, a plaintiff must show (1) the defendant made a false statement of material fact, (2) the defendant knew or should have known that the statement was false, (3) the defendant intended to induce the plaintiff's reliance, and (4) the plaintiff suffered an injury by acting in reliance on the representation. *Wadlington v. Continental Med. Servs.*, 907 So.2d 631, 632 (Fla. 4th Dist. Ct. App. 2005). The first element, a false statement of material fact, can be satisfied when the plaintiff establishes either (1) "a false

statement . . . concern[ing] a past or existing fact," *Prieto v. Smook, Inc.*, 97 So. 3d 916, 917 (Fla. 4th Dist. Ct. App. 2012), or (2) a promise of future action with "no intention of performing," *Mejia v. Jurich*, 781 So. 2d 1175, 1177 (Fla. 3d Dist. Ct. App. 2001).

In this case, the website promises future action. And, as the district court correctly noted, Awodiya presented no evidence that Ross had "no intention" of honoring the ADA statement on its website when it made it. Further, the district court detailed Ross's evidence of the times it provided such accommodations to students. Accordingly, I would affirm the district court on this claim.

The majority reverses because it believes the district court misconstrued Awodiya's argument. The majority believes that Awodiya's claim is that Ross falsely claimed it had a policy or practice of complying with the ADA when it, in fact, had no such policy or practice. But this interpretation is a distinction without a difference. Ross announced the policy when it made the statement on the website; thus, the policy exists. Awodiya's questioning of whether Ross truly had such a policy is another way of asking whether Ross intended to comply with the policy at the time it was announced. And, as the district court correctly noted, Awodiya has presented no evidence that Ross lacked such an intention. Because the district court did not err in its analysis of the fraudulent inducement claim, I respectfully dissent.

# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

May 24, 2021

MEMORANDUM TO COUNSEL OR PARTIES

Appeal Number: 19-12832-DD
Case Style: Oluwamuyiwa Awodiya v. Ross University School
District Court Docket No: 0:18-cv-60482-RKA

**This Court requires all counsel to file documents electronically using the Electronic Case Files ("ECF") system, unless exempted for good cause. Non-incarcerated pro se parties are permitted to use the ECF system by registering for an account at www.pacer.gov. Information and training materials related to electronic filing, are available at www.ca11.uscourts.gov.** Enclosed is a copy of the court's decision filed today in this appeal. Judgment has this day been entered pursuant to FRAP 36. The court's mandate will issue at a later date in accordance with FRAP 41(b).

The time for filing a petition for rehearing is governed by 11th Cir. R. 40-3, and the time for filing a petition for rehearing en banc is governed by 11th Cir. R. 35-2. Except as otherwise provided by FRAP 25(a) for inmate filings, a petition for rehearing or for rehearing en banc is timely only if received in the clerk's office within the time specified in the rules. Costs are governed by FRAP 39 and 11th Cir.R. 39-1. The timing, format, and content of a motion for attorney's fees and an objection thereto is governed by 11th Cir. R. 39-2 and 39-3.

Please note that a petition for rehearing en banc must include in the Certificate of Interested Persons a complete list of all persons and entities listed on all certificates previously filed by any party in the appeal. See 11th Cir. R. 26.1-1. In addition, a copy of the opinion sought to be reheard must be included in any petition for rehearing or petition for rehearing en banc. See 11th Cir. R. 35-5(k) and 40-1 .

Counsel appointed under the Criminal Justice Act (CJA) must submit a voucher claiming compensation for time spent on the appeal no later than 60 days after either issuance of mandate or filing with the U.S. Supreme Court of a petition for writ of certiorari (whichever is later) via the eVoucher system. Please contact the CJA Team at (404) 335-6167 or cja_evoucher@ca11.uscourts.gov for questions regarding CJA vouchers or the eVoucher system.

For questions concerning the issuance of the decision of this court, please call the number referenced in the signature block below. For all other questions, please call Bradly Wallace Holland, DD at 404-335-6181.

Sincerely,

DAVID J. SMITH, Clerk of Court

Reply to: Jeff R. Patch
Phone #: 404-335-6151

OPIN-1 Ntc of Issuance of Opinion