# Exhibit A

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 18-60482-CIV-ALTMAN/Hunt

OLUWAMUYIWA AWODIYA,

      Plaintiff,

v.

ROSS UNIVERSITY SCHOOL OF
MEDICINE, SCHOOL OF VETERINARY
MEDICINE LIMITED,

      Defendant.

_____

### PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

*Pro se* plaintiff Oluwamuyiwa Awodiya ("Plaintiff") hereby files his Motion for Summary

Judgment ("Motion").

## I.    INTRODUCTION

In this action, Plaintiff brings a claim of fraudulent inducement under two theories, "both

[1] false statement and [2] omission of fact," against defendant Ross University School of

Medicine, School of Veterinary Medicine Limited ("RUSM"). *See* Third Amended Complaint (the

"Complaint") [ECF No. 47] at 20.

In order to appear more American-friendly by creating a false sense of security and equality

in a foreign medical school, and even though the Americans with Disabilities Act (the "ADA") is

not applicable to foreign institutions outside of the U.S., RUSM made a false statement to

prospective students that it was the policy and practice for the university to comply with the ADA

in Dominica. The statement was false twice because (1) its own administration testified that it was

not the policy of RUSM for the university to comply with the ADA in Dominica; and (2) in

addition to the fact that the student handbook and academic catalog did not tell the university to

1

comply with the ADA—and did not reference the ADA at all—RUSM implemented an exclusory requirement in its practice that did not comply with the ADA.

In noncompliance with the ADA, RUSM's exclusory requirement for students to request an accommodation in writing, did not comply with the ADA because it screens out and excludes requests that are not in writing. In further noncompliance with the ADA, RUSM had a practice of failing to act on and willfully ignoring students when it notices that a student has an obvious need for accommodation and disability.

On top of the false statement, RUSM omitted the fact that it is was not the policy of RUSM for the university to comply with the ADA in Dominica—it knowing the ADA was not applicable in Dominica.

On March 2, 2019, this Court entered an Omnibus Order on Motions for Summary Judgment (the "March Order") [ECF No. 154], which denied Plaintiff's partial motion for summary judgment on his fraudulent inducement claim due to the element on reliance under the theory of false statement—notably, the Court did not discuss the claim under the theory of omission of fact. The distinction between a false statement theory and an omission of fact theory is an important one because in fraud cases involving omitted or concealed information, "plaintiffs are not required to show reliance on a specific statement." *Cote v. R.J. Reynolds Tobacco Co.*, 909 F.3d 1094, 1108 (11th Cir. 2018).

Moreover, on a separate issue, RUSM's initial survival of summary judgment under the theory of false statement was dependent on RUSM conflating Plaintiff's claim of fraudulent inducement with impermissible circumstantial evidence related to other causes of action that have since been dismissed. Now that the only claim remaining in this case is fraudulent inducement, RUSM cannot survive summary judgment via the reliance element because there is no evidence

that Plaintiff ever stated that he relied on the website statement due to a then-known disability—as opposed to the evidence showing that he relied on the website statement for completely different reasons—and thus the mere possibility of RUSM's subsequent pyramiding inferences does not qualify those inferences as reasonable. "According to federal law there is no prohibition against pyramiding inferences; instead all inferences are permissible so long as they are reasonable…. [A]n inference is not reasonable if it is 'only a guess or a possibility,' for such an inference is not based on the evidence but is pure conjecture and speculation." *Daniels v. Twin Oaks Nursing Home*, 692 F.2d 1321, 1324 (11th Cir. 1983).

Also, even though there is evidence that Plaintiff didn't know the legal technicalities of the ADA, there is no evidence that Plaintiff didn't know that the purpose of the ADA is to prevent discrimination—as opposed to the evidence showing that he knew of the ADA and its purpose despite the fact that he didn't know the legal technicalities.

## II.   FACTUAL BACKGROUND

RUSM operates a Caribbean medical school that was located in Dominica. *See* Statement of Material Facts in Support of Plaintiff's Motion for Summary Judgment ("SOF") at ¶ 2. RUSM also has a sister veterinary school (identified hereinafter as "RUSVM") that shares the same website www.rossu.edu. *Id.* at ¶ 3. RUSM and RUSVM are operated by the same board of trustees. *Id.* at ¶¶ 4–5. In a 2012 lawsuit against RUSVM, RUSVM asserted that the ADA is only applicable in the United States. *Id.* at ¶ 6. Following RUSVM's assertion, the court in that case "conclude[d] that the requirements of the ADA with respect to institutions offering public accommodations do not apply extraterritorially to require foreign institutions to provide reasonable accommodations to American citizens with disabilities." *Id.*

RUSM operated to make a profit from students. *Id.* at ¶ 7. RUSM's financial gains depended on access to hundreds of millions of dollars of U.S. government funds made accessible

3

through American students. *Id.* at ⸉ 9. According to the U.S. Department of Education, between the fiscal years 2014 through 2018, the U.S. government disbursed $551,666,000 to RUSM which generated more than 80% of RUSM's revenue during this period. *Id.* According to RUSM, for a student to have been eligible for federal student aid, the student must be a citizen or permanent resident of the United States, and that students that were not U.S. citizens or permanent residents were not eligible for U.S. federal student assistance. *Id.* at ⸉ 8.

Plaintiff was born in the U.S. and raised in the state of Maryland. *Id.* at ⸉ 1. Growing up in the Maryland public school system, Plaintiff was taught about our country's history of inequality and discrimination towards women, individuals with disabilities, African Americans, and members of the LGBT community. *Id.* He was also taught from a young age that it is morally wrong and against social norms in our country to willfully ignore discrimination against a protected class that he is not a member of. *Id.* Even though he is a straight, African American man, he uses the statements and or actions of others in his decisions to associate himself with or disassociate himself from businesses and individuals based on their conformity to the American standards of antidiscrimination and equality for women, individuals with disabilities, members of the LGBT community, and any other protected class that he is not a member of. *Id.*

It is a generally known fact that no one is immune from the possibility of future disability or premature death. *Id.* at ⸉ 10. Plaintiff testified that while he was applying to RUSM, he had multiple concerns that made him hesitant about considering RUSM. *Id.* at ⸉ 11. One of his concerns was about his "safety," and "going to a less developed nation than the U.S." after he had googled pictures of Dominica. *Id.* He further testified that "it was a lot more nature than I thought that I could be comfortable with," noting that he didn't see rails on the side of their roads. *Id.* He continued to testify that these concerns led him to think "what if I get hurt down there?" *Id.* He

testified. "I was very concerned about like being hurt or injured while I was down there and how they would treat me if I was to be hurt or injured or got some type of -- became disabled in some type of way." *Id.*

Plaintiff enrolled at RUSM in the year 2014. *Id.* at ¶ 12. Before Plaintiff enrolled and throughout his enrollment, RUSM made a statement in the Admission Requirements section of its website which stated: "It is the policy and practice of the University to comply with the Americans with Disabilities Act as applicable and practical in Dominica." *Id.* at ¶ 13. RUSM published this statement in the Admission Requirements section of its website, "for prospective students." *Id.*

Plaintiff testified that although he was not a lawyer and didn't know the legal "technical[ities]" of the ADA or the "case law," he still knew of the ADA, he "knew that it was some type of thing that stopped discrimination" against disabled people, and he knew that it "prevent[s] discrimination against Americans." *Id.* at ¶ 14.

Plaintiff testified that after he saw the ADA statement in the Admission Requirements section of RUSM's website, "it was a green light for me. Because ... it made me feel as though that they still had to follow or they had some policy to obligate the school to afford me an opportunity to continue even if I get hurt down there or become disabled or learn of a disability." *Id.* at ¶ 15. He further testified that he just wanted to know if there was "some type of protection or ... policy to comply." *Id.* He continued to testify that this was "one of the important considerations" in his decision to enroll at RUSM. *Id.*

Matthew Stewart-Fulton ("Mr. Stewart-Fulton") was the Accommodation Coordinator at RUSM. *Id.* at ¶ 16. The Accommodation Coordinator testified that throughout the time that RUSM was located in Dominica, and when Plaintiff enrolled, RUSM did not have a "policy" requiring faculty "to comply" with the ADA, and instead that it only abided by the "spirit" of the ADA via

the process outlined within the student handbook. *Id.* The Accommodation Coordinator further testified that RUSM did not tell him that he needs to comply with the ADA. *Id.* at ¶ 17.

Bryan Hayse ("Dean Hayse") was the Associate Dean at RUSM and he supervised the Accommodation Coordinator. *Id.* at ¶ 18. Dean Hayse testified that employees at RUSM were not beholden to the ADA and only used it as a guideline, and confirmed that RUSM did not require its employees to comply with the ADA. *Id.*

The RUSM student handbooks and academic catalogs between 2013 through 2018 do not contain the terms "Americans with Disabilities Act" or "ADA." *Id.* at ¶ 19. According to the process outlined within the RUSM 2013-2014 Student Handbook, a request for accommodation must be made "in writing." *Id.* at ¶ 20. The Accommodation Coordinator testified that a request for accommodation must be in writing and that verbal requests were not accepted by RUSM. *Id.* Dr. Davendranand Sharma ("Dr. Sharma"), was a professor at RUSM. *Id.* Dr. Sharma testified that requests for accommodation were required to be in writing and that an oral or verbal request "doesn't count to the accommodations office" and that "a verbal request is not a request for accommodations." *Id.*

The Accommodation Coordinator also testified that it was RUSM's practice to not act with initiative to ascertain accommodations for its students when it notices that a student has an obvious need for accommodation and disability. *Id.* at ¶ 21.

At minimum, Plaintiff has suffered pecuniary injury and or has been placed in a worse position than he would have been absent the fraud. *Id.* at ¶¶ 22–25.

## III.   LEGAL STANDARD

Summary judgment is appropriate where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); FED. R. CIV. P. 56(a). In determining whether to grant summary judgment, the

6

Court must consider "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." FED. R. CIV. P. 56(c). "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment: the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). An issue of fact is "material" if it might affect the outcome of the case under the governing law. *Id.* at 248. A dispute about a material fact is "genuine" if the evidence could lead a reasonable jury to find for the non-moving party. *Id.*

At summary judgment, the moving party has the burden of proving the absence of a genuine issue of material fact, and all factual inferences are drawn in favor of the non-moving party. *See e.g., Allen v. Tyson Foods Inc.*, 121 F.3d 642, 646 (11th Cir. 1997). Once the moving party satisfies its initial burden, the burden shifts to the non-moving party to come forward with evidence that a genuine issue of material fact precludes summary judgment. *See Bailey v. Allgas, Inc.*, 284 F.3d 1237, 1243 (11th Cir. 2002); FED. R. CIV. P. 56(e). "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." *Miranda v. B & B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1534 (11th Cir. 1992). The Court must analyze the record as a whole—and not just the evidence the parties have singled out for consideration. *See Clinkscales v. Chevron U.S.A., Inc.*, 831 F.2d 1565, 1570 (11th Cir. 1987). If there are any genuine issues of material fact, the Court must deny summary judgment and proceed to trial. *Whelan v. Royal Caribbean Cruises Ltd.*, No. 1:12-CV-22481, 2013 WL 5583970, at *2 (S.D. Fla. Aug. 14, 2013) (citing *Envtl. Def. Fund v. Marsh*, 651 F.2d 983, 991 (5th Cir. 1981)).

## IV.    ARGUMENT

Under Florida law, fraudulent inducement requires the existence of "(1) a false statement concerning a material fact; (2) the representor's knowledge that the representation is false; (3) an intention that the representation induce another to act on it; and (4) consequent injury by the party acting in reliance on the representation." *Butler v. Yusem*, 44 So. 3d 102, 105 (Fla. 2010) (internal quotation marks omitted); *Awodiya v. Ross Univ. Sch. of Med.*, No. 19-12832, at *11 (11th Cir. May 24, 2020) [ECF No. 221].

### A.    There Is No Evidence That the Website Statement Is Not False. There Is No Evidence That Material Facts Were Not Omitted from the Website Statement.

The website statement: "It is the policy and practice of the University to comply with the Americans with Disabilities Act as applicable and practical in Dominica," SOF ¶ 13, is false twice. First, regarding the existence of the policy, its own administration testified that it was not the policy of RUSM for the university to comply with the ADA in Dominica. SOF ¶¶ 16–18.

Second, regarding its practice, and in addition to the fact that the student handbook and academic catalog did not tell the university to comply with the ADA—they did not reference the ADA at all, SOF ¶ 19—RUSM implemented an exclusory requirement in its practice that did not comply with the ADA. SOF ¶ 20. As this Court has previously stated in this case, under the ADA, a request is not required to be in writing. *See* March Order at 9 [ECF No. 154]. The ADA prohibits "the imposition or application of eligibility criteria that screen out or tend to screen out an individual with a disability or any class of individuals with disabilities from fully and equally enjoying any … accommodations." 42 U.S.C. § 12182(b)(2)(A)(i). In noncompliance with the ADA, RUSM's exclusory requirement for students to request an accommodation in writing, did not comply with the ADA because it screens out and excludes requests that are not in writing. SOF ¶ 20.

In further noncompliance with the ADA, RUSM had a practice of failing to act on and willfully ignoring students when it notices that a student has an obvious need for accommodation and disability. SOF ¶ 21. Under the ADA, the mere "failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services," is also prohibited. 42 U.S.C. § 12182(b)(2)(A)(iii). *See also Schwarz v. Villages Charter Sch., Inc.*, 165 F. Supp. 3d 1153, 1173 (M.D. Fla. 2016) (A "plaintiff must also establish that the plaintiff requested an accommodation or the need for one was obvious." (parenthesis omitted)); *U.S. v. Hialeah Housing Authority*, 418 Fed. Appx. 872, 876 (11th Cir. 2011) ("or circumstances must at least be sufficient to cause a reasonable [person] to make appropriate inquiries about the possible need for an accommodation"); *McCullum ex rel. DF & TF v. Orlando Reg'l Healthcare Sys., Inc.*, 768 F.3d 1135, 1147 (11th Cir. 2014) ("Where the substantial likelihood of harm is obvious, a jury may infer that the defendant had actual knowledge of that substantial risk of harm…. That is, the entity will know of the individual's need for an accommodation because it is obvious." (citations omitted)).

"Florida law recognizes that fraud can occur by omission, and places a duty on one who undertakes to disclose material information to disclose that information fully…. We liken this case to the 'unacceptable paradox' that is created when an insured receives a document that purports to give coverage, while a separate, unseen document cancels that very coverage." *ZC Insurance Co. v. Brooks*, 847 So. 2d 547, 551 (Fla. Dist. Ct. App. 2003). On top of the false statement, RUSM omitted the fact that it is was not the policy of RUSM for the university to comply with the ADA in Dominica. SOF ¶¶ 16–18.

**B.    There Is No Evidence That RUSM Did Not Know That the Website Statement Was False. There Is No Evidence That RUSM Did Not Know the Material Facts That Were Omitted from the Website Statement.**

As an initial matter, RUSM and its veterinary sister school are operated by the same board of trustees, and they knew, via a 2012 court order, that the ADA was not applicable to foreign institutions. SOF ¶¶ 2–6.

First, RUSM knew that it was not the policy of RUSM for the university to comply with the ADA in Dominica. SOF ¶¶ 16–18.

Second, "[m]aking a statement that is false when one does not have sufficient information to know whether the statement is either true or false amounts to a knowing misrepresentation that rises to the level of fraudulent conduct." *Jack Eckerd Corp. v. Smith*, 558 So. 2d 1060, 1065 (Fla. Dist. Ct. App. 1990), *review denied*, 577 So. 2d 1321 (Fla. 1991). Regardless of whether or not RUSM knew that its practice was not in compliance with the ADA, *see* discussion regarding noncompliance *supra* Part IV.A., it has not produced any evidence showing that it had sufficient knowledge about the ADA to assert, as not false, that it was the practice of the university to comply with the ADA.

Third, RUSM omitted the fact that it is was not the policy of RUSM for the university to comply with the ADA in Dominica—it knowing the ADA was not applicable in Dominica. SOF ¶¶ 2–6, 16–18.

**C.    There Is No Evidence That RUSM Did Not Intend for Prospective Students to Rely on the Website Statement.**

Fraud in the inducement exists when "the maker [of a false statement] intends that another rely upon the statement." *Spitz v. Prudential-Bache Sec., Inc.*, 549 So. 2d 777, 778 (Fla. Dist. Ct. App. 1989); *see also* March Order at 19 [ECF No. 154]. RUSM published the website statement in the Admission Requirements section of its website, "for prospective students." SOF ¶ 13.

**D.    Under the Theory of False Statement, There Is No Evidence That Plaintiff Did Not Rely on the Website Statement. Under the Theory of Omission of Fact, There Is No Evidence That Plaintiff Was Not Exposed to the Website Statement nor That He Did Not Harbor a Misapprehension About the Omitted Facts.**

When a business or person chooses to speak publicly about its stance on compliance with the American standards of antidiscrimination and equality, it squares with logic and reason or human experience for an American to rely on these public statements regardless of their individual membership to the protected class. Compliance with American standards of antidiscrimination and equality is fundamental to our American society. Regardless of an individual's membership to a protected class, it is not unreasonable for Americans to decline a prospective business, employment, or contractual relationship due to another's disclosure of nonconformity to American standards of antidiscrimination and equality.

It also squares with logic and reason or human experience, and is generally known, that no one is immune from the possibility of future disability or premature death, *see* SOF ¶ 10; and that it is not unreasonable for Americans to ensure that some sense of security is in place for this indelible risk. For example, via health, car, or disability insurance, or via reliance on another's past or current polices, practices, statistical data, or values to infer what patterns of behavior are likely—although not promised or guaranteed—to remain in place or to occur in the future. All of which are different forms of risk management.

Plaintiff testified that although he was not a lawyer and didn't know the legal "technical[ities]" of the ADA or the "case law," he still knew of the ADA, he "knew that it was some type of thing that stopped discrimination" against disabled people, and he knew that it "prevent[s] discrimination against Americans." SOF ¶ 14.

Here, RUSM chose to speak about its conformity to the Americans with Disabilities Act in the Admission Requirements section of its website for prospective students. SOF ¶ 13. As any

11

reasonable American. Plaintiff—who was born and raised in the U.S., *see* SOF ¶ 1—relied on the website statement regardless of his membership to the protected class because (1) it affirmatively conveys that an institution conforms to some American standard of antidiscrimination and equality, *see* SOF ¶¶ 1, 14; and (2) although not a promise of future conduct—an institution's assertion of a currently existing policy and practice to comply with the American standards of antidiscrimination and equality for individuals with disabilities, enables him to make his own inference on the institution's patterns of behavior which provides him with a sense of security in his risk management of what could occur if he were to later develop a physical or mental disability, *see* SOF ¶¶ 11, 14, 15.

      i.      <u>Under the Theory of False Statement</u>

Plaintiff testified that he relied on the website statement when he enrolled. *See* SOF ¶¶ 11–15. RUSM attempts to contest the credibility of Plaintiff's testimony based on the circumstantial fact that he was not aware of having a disability when he enrolled. *See* March Order at 7 [ECF No. 154].[1]

"Where a non-movant presents direct evidence that creates a genuine issue of material fact, the only issue is one of credibility; thus, there is no legal issue for the court to decide." *Mize v. Jefferson City Board of Education*, 93 F.3d 739, 742 (11th Cir. 1996). However, "[w]here the evidence is circumstantial, a court may grant summary judgment when it concludes that no reasonable jury may infer from the assumed facts the conclusion upon which the nonmovant's claim rests." *Id.* at 743.

---

[1] Even though there is evidence that Plaintiff didn't know the legal technicalities of the ADA, there is no evidence that Plaintiff didn't know that the purpose of the ADA is to prevent discrimination. *Compare with* SOF ¶ 14 (evidence showing that Plaintiff knew of the ADA and its purpose despite the fact that he didn't know the legal technicalities).

"According to federal law there is no prohibition against pyramiding inferences; instead all inferences are permissible so long as they are reasonable…. [A]n inference is not reasonable if it is 'only a guess or a possibility,' for such an inference is not based on the evidence but is pure conjecture and speculation." *Daniels v. Twin Oaks Nursing Home*, 692 F.2d 1321, 1324 (11th Cir. 1983). "[T]he practice in civil cases is to evaluate the probative value of every inference on its own merits. When inferences are built upon inferences, the probability of the last or ultimate inference is attenuated by each underlying inference." *Salter v. Westra*, 904 F.2d 1517, 1525 (11th Cir. 1990) (citing *Cora Pub., Inc., v. Continental Casualty Co.*, 619 F.2d 482, 485-86 (11th Cir. 1980)). "The important question is whether the inference is reasonably well supported by the evidence." *Cora Pub, Inc.*, 619 F.2d at 486.

RUSM's initial and subsequent pyramiding inferences are not reasonable and are not supported by the evidence. RUSM's first inference from its circumstantial evidence implies that there is evidence that Plaintiff stated that he relied on the website statement due to a then-known disability. However, there is no evidence that Plaintiff ever stated that he relied on the website statement due to a then-known disability. *Compare with* SOF ¶¶ 11, 14, 15. RUSM's second pyramiding inference from its circumstantial evidence implies that in order for an individual to rely on another's published statements related to the antidiscrimination rights and equality of a protected class, the individual is required to be a member of the protected class. RUSM's third pyramiding inference implies that if an individual does not meet the requirement set by its second reference, then it is not reasonable for that individual to rely on those published statements to endorse, advocate, or be otherwise concerned about equal rights for the protected class. For example, this implies that men cannot endorse, advocate, or be otherwise concerned about equal rights for women; that White Americans cannot endorse, advocate, or be otherwise concerned

13

about equal rights for Black Americans: and that individuals without a disability cannot endorse. advocate. or be otherwise concerned about equal rights for individuals with a disability.

The mere possibility of these pyramiding inferences does not qualify them as reasonable. There is no evidence that Plaintiff did not rely on the website statement.

    ii.    <u>Under the Theory of Omission of Fact</u>

"[W]here fraudulent conduct involves omitted or concealed information and 'the use of an artifice to throw the other party off his guard and lull him into a false sense of security.' the link between the defendant's conduct and the plaintiff's misapprehension is less direct and does not necessarily depend upon reliance on a statement." *Cote v. R.J. Reynolds Tobacco Co.*. 909 F.3d 1094. 1107 (11th Cir. 2018). In fraud cases involving omitted or concealed information. "plaintiffs are not required to show reliance on a specific statement." *Id.* at 1108. "Instead. Florida law permits a[] … jury to infer reliance based on evidence that the plaintiff was exposed to the disinformation campaign and harbored a misapprehension" as to the undisclosed fact. and "[i]f the plaintiff makes this showing. the burden of proof shifts and requires the defendant to 'show otherwise.'" *Id.*: *See also Philip Morris USA. Inc. v. Duignan*. 243 So. 3d 426. 443 (Fla. Dist. Ct. App. 2017) ("The question of reliance. in contrast. asks whether a misapprehension as to the undisclosed fact took on significance in the mind of the plaintiff and influenced his decision-making with respect to the matter at issue to his detriment.").

Here. RUSM chose to speak about its conformity to the Americans with Disabilities Act in the Admission Requirements section of its website for prospective students. and Plaintiff was exposed to this website statement. *See* SOF ¶¶ 13. 15.

If. rather than omitting the unstated truth. RUSM had published that "it is the policy and practice of the university to not comply with the ADA" or that "it is not the policy and practice of the university to comply with ADA." Plaintiff would not have misapprehended the risk of

discrimination and inequality associated with the omission of its nonconformity to American standards—negatively influencing his thought process to risk-manage the impact of the indelible possibility of future physical or mental disability—a risk that he was not willing to take. *See* SOF ¶¶ 11–15.

There is no evidence that Plaintiff was not exposed to the website statement and there is no evidence that he did not harbor a misapprehension about the undisclosed facts.

### E.    There Is No Evidence of No Injury

"Generally speaking, to satisfy the element of an injury, the claimant must establish that he or she has sustained pecuniary damage or injury by which he or she has been placed in a worse position than he or she would have been absent the fraud." *Geico Gen. Ins. Co. v. Hoy*, 136 So. 3d 647, 651 (Fla. Dist. Ct. App. 2014). "Florida law provides for an election of remedies in fraudulent inducement cases: rescission, whereby the party repudiates the transaction, or damages, whereby the party ratifies the contract. A prerequisite to rescission is placing the other party in status quo." *Mazzoni Farms, Inc. v. E.I. DuPont de Nemours & Co.*, 761 So. 2d 306, 313 (Fla. 2000) (internal citation omitted).

Plaintiff was fraudulently induced into enrolling at RUSM. At minimum, Plaintiff has suffered pecuniary injury and or has been placed in a worse position than he would have been absent the fraud. *See* SOF ¶¶ 22–25.

## V.    CONCLUSION

Plaintiff Oluwamuyiwa Awodiya respectfully requests that the Court enter an Order (i) granting summary judgment in favor of the Plaintiff; and (ii) granting Plaintiff such other and further relief as the Court deems just and proper.

15

DATED this 23rd day of September. 2021:

Respectfully submitted.

**Oluwamuyiwa Awodiya**
Email: drmuyiwa.a@gmail.com
15005 Dahlia Dr.
Bowie. MD 20721
Phone: (240) 602-1836
*Pro Se* Plaintiff

# **<u>Exhibit B</u>**

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO. 18-60482-CIV-ALTMAN/Hunt

OLUWAMUYIWA AWODIYA,

      Plaintiff,

v.

ROSS UNIVERSITY SCHOOL OF
MEDICINE, SCHOOL OF VETERINARY
MEDICINE LIMITED,

      Defendant.

_____

### PLAINTIFF'S STATEMENT OF MATERIAL FACTS
### IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rule 56.1 of the Local Rules of the United States District Court for the Southern District of Florida, *pro se* plaintiff Oluwamuyiwa Awodiya ("Plaintiff") hereby files his Statement of Material Facts in Support of Plaintiff's Motion for Summary Judgment.

    1.    Plaintiff was born in the U.S. and raised in the state of Maryland. *See* Declaration of Oluwamuyiwa Awodiya dated Sept. 12, 2021 ("Awodiya Declaration") at ¶ 2. Growing up in the Maryland public school system, Plaintiff was taught about our country's history of inequality and discrimination towards women, individuals with disabilities, African Americans, and members of the LGBT community. *Id.* He was also taught from a young age that it is morally wrong and against social norms in our country to willfully ignore discrimination against a protected class that he is not a member of. *Id.* Even though he is a straight, African American man, he uses the statements and or actions of others in his decisions to associate himself with or disassociate himself from businesses and individuals based on their conformity to the American

standards of antidiscrimination and equality for women, individuals with disabilities, members of the LGBT community, and any other protected class that he is not a member of. *Id.*

2.     RUSM operates a Caribbean medical school that was located in Dominica. *See* Defendant's Answer ("Answer") [ECF No. 58] at ¶ 2, to the Third Amended Complaint ("Complaint") [ECF No. 47].

3.     RUSM has a sister veterinary school (identified hereinafter as "RUSVM") that shares the same website www.rossu.edu. *See* Defendant's Response to Plaintiff's First Set of Requests for Admission ("Def. Admission") at ¶ 24, attached to Awodiya Declaration as **Exhibit 1**.

4.     RUSM and RUSVM are operated by the same board of trustees. *Compare* RUSM Academic Catalog 2013-2014 at 110, *with* RUSVM Academic Catalog 2013-2014 at 17, attached to Awodiya Declaration as **Exhibit 2** and **Exhibit 3**, respectively.

5.     According to the definition provided by investopedia.com: "A board of trustees is an appointed or elected group of individuals that has overall responsibility for the management of an organization." *See* https: www.investopedia.com terms b boardoftrustees.asp (last visited Sept. 7, 2021). According to dictionary.com, the term "board of trustees" is defined as "an appointed or elective board that supervises the affairs of a public or private organization." *See* https: www.dictionary.com browse board-of-trustees (last visited Sept. 7, 2021).

6.     In a 2012 lawsuit against RUSVM, RUSVM asserted that the ADA is only applicable in the United States. Def. Admission ¶ 27. Following RUSVM's assertion, the court in that case "conclude[d] that the requirements of the ADA with respect to institutions offering public accommodations do not apply extraterritorially to require foreign institutions to provide reasonable

accommodations to American citizens with disabilities." *Archut v. Ross Univ. Sch. of Veterinary Med.*, CIVIL ACTION No. 10-1681 (MLC), at *28 (D.N.J. Nov. 19, 2012).

7.      RUSM operated to make a profit from students. Answer ¶ 2.

8.      According to RUSM, for a student to have been eligible for federal student aid, the student must be a citizen or permanent resident of the United States. *See* RUSM Academic Catalog 2013-2014 at 13. And that "[s]tudents that are not U.S. citizens or permanent residents are not eligible for U.S. federal student assistance." *Id.* at 14.

9.      According to the U.S. Department of Education, between the fiscal years 2014 through 2018, the U.S. government disbursed $551,666,000 to RUSM. *See* excerpts from the 2014 through 2018 Award Year: Report excel files, obtained from https: studentaid.gov data-center school proprietary and filtered for RUSM, attached to Awodiya Declaration as **Exhibit 4**. More than 80% of RUSM's total revenue came from these U.S. government funds during this time period. *Id.*

10.     It is a generally known fact that no one is immune from the possibility of future disability or premature death.

11.     Plaintiff testified that while he was applying to RUSM, he had multiple concerns that made him hesitant about considering RUSM. *See* Deposition Transcript of Oluwamuyiwa Awodiya dated December 5, 2018 ("Awodiya Dep.") at 144:18–21, attached to Awodiya Declaration as **Exhibit 5**. One of his concerns was about his "safety," and "going to a less developed nation than the U.S." after he had googled pictures of Dominica. *Id.* 145:4–7, 145:17–18. He further testified that "it was a lot more nature than I thought that I could be comfortable with," noting that he didn't see rails on the side of their roads. *Id.* 145:8–9, 145:19–20. He continued to testify that these concerns led him to think "what if I get hurt down there?" *Id.* 145:22–

24. He testified, "I was very concerned about like being hurt or injured while I was down there and how they would treat me if I was to be hurt or injured or got some type of -- became disabled in some type of way." *Id.* 146:6–9.

12.     Plaintiff enrolled at RUSM in the year 2014. Awodiya Dep. 159:12-14.

13.     Before Plaintiff enrolled and throughout his enrollment, RUSM made a statement in the Admission Requirements section of its website which stated: "It is the policy and practice of the University to comply with the Americans with Disabilities Act as applicable and practical in Dominica." *Compare* Answer ¶ 107, *with* Complaint ¶ 106; *See also* Def. Admission ¶ 28. RUSM published this statement in the Admission Requirements section of its website, "for prospective students." Answer ¶ 106.

14.     Plaintiff testified that although he was not a lawyer and didn't know the legal "technical[ities]" of the ADA or the "case law," he still knew of the ADA, he "knew that it was some type of thing that stopped discrimination" against disabled people, and he knew that it "prevent[s] discrimination against Americans." Awodiya Dep. 148:16–18, 149:1–8.

15.     Plaintiff testified that after he saw the ADA statement in the Admission Requirements section of RUSM's website, "it was a green light for me. Because … it made me feel as though that they still had to follow or they had some policy to obligate the school to afford me an opportunity to continue even if I get hurt down there or become disabled or learn of a disability." Awodiya Dep. 146:11–20. He further testified that he just wanted to know if there was "some type of protection or … policy to comply." *Id.* 147:4–6. He continued to testify that this was "one of the important considerations" in his decision to enroll at RUSM. *Id.* 147:9–12.

16.     Matthew Stewart-Fulton ("Mr. Stewart-Fulton") was the Accommodation Coordinator at RUSM. Answer ¶ 17. Mr. Stewart-Fulton testified that throughout the time that

RUSM was located in Dominica, and when Plaintiff enrolled, RUSM did not have a "policy" requiring faculty "to comply" with the ADA, and instead that it abided by the "spirit" of the ADA via the process outlined within the student handbook. *See* Deposition Transcript of Matthew Stewart-Fulton dated November 5, 2018 ("Stewart-Fulton Dep.") at 32:1–19, attached to Awodiya Declaration as **Exhibit 6**.

17.     The Accommodation Coordinator further testified that RUSM did not tell him that he needs to comply with the ADA. Stewart-Fulton Dep. 34:2–9. (After his attorneys instructed him not to answer the question due attorney-client privilege. *Id.* 33:4–17, the question was rephrased to exclude privileged communication between lawyers).

18.     Bryan Hayse ("Dean Hayse") was the Associate Dean at RUSM and he supervised Mr. Stewart-Fulton. *See* Deposition Transcript of Bryan Hayse dated November 5, 2018 ("Hayse Dep.") at 8:21–24, 9:12–13, attached to Awodiya Declaration as **Exhibit 7**. Dean Hayse testified that employees at RUSM were not beholden to the ADA and only used it as a guideline, and confirmed that RUSM did not require its employees to comply with the ADA. *Id.* 10:14–17, 14:11–18.

19.     The RUSM student handbooks and academic catalogs published on www.rossu.edu between 2013 through 2018 do not contain the terms "Americans with Disabilities Act" or "ADA." Awodiya Declaration ¶ 3.

20.     According to the process outlined within the RUSM 2013-2014 Student Handbook, a request for accommodation must be made "in writing." *See* RUSM 2013-2014 Student Handbook at 9, attached to Awodiya Declaration as **Exhibit 8**. Mr. Stewart-Fulton testified that a request for accommodation must be in writing and that verbal requests were not accepted by RUSM. Stewart-Fulton Dep. 15:23–16:2. Dr. Davendranand Sharma ("Dr. Sharma"), was a professor at RUSM.

*See* Deposition Transcript of Davendranand Sharma dated October 16, 2018 ("Sharma Dep.") at 7:21–23, attached to Awodiya Declaration as **Exhibit 9**. Dr. Sharma testified that requests for accommodation were required to be in writing and that an oral or verbal request "doesn't count to the accommodations office" and that "a verbal request is not a request for accommodations." *Id.* 35:18–36:3, 42:8–15.

21.     Mr. Stewart-Fulton testified that it was RUSM's practice to not act with initiative to ascertain accommodations for its students when it notices that a student has an obvious need for accommodation and disability. Stewart-Fulton Dep. 27:2–8, 27:16–21.

22.     The current balance of Plaintiff's federal student loans only under RUSM is $261,488.54. *See* Plaintiff's Account Details for Graduate PLUS Loans and Account Details for Stafford Loans, attached to Awodiya Declaration as **Exhibit 10** and **Exhibit 11**, respectively.

23.     The total cost of private student loans associated with attending RUSM is $20,802. *See* Award History as reported by RUSM, attached to Awodiya Declaration as **Exhibit 12**.

24.     RUSM required Plaintiff to take classes in Dominica for approximately 2 years between May 2014 through April 2016. Awodiya Declaration ¶ 4.

25.     According to the U.S. Bureau of Labor Statistics, the annual average of weekly wages of an individual with a bachelor's degree in 2014 was $1,101, in 2015 was $1,137, and in 2016 was $1,156. *See* screenshots of the U.S. Bureau of Labor Statistics website obtained from https:/data.bls.gov/timeseries/LEU0252919100 (with the "include annual averages" box ticked), attached to Awodiya Declaration as **Exhibit 13**. Plaintiff's total lost past wages based on the annual average of weekly wages of an individual with a bachelor's degree is $117,806 ($1,101 x 26 weeks in 2014 − $1,137 x 52 weeks in 2015 − $1,156 x 26 weeks in 2016).

DATED this 23rd day of September, 2021:

Respectfully submitted.

**Oluwamuyiwa Awodiya**
Email: drmuyiwa.a@gmail.com
15005 Dahlia Dr.
Bowie. MD 20721
Phone: (240) 602-1836
*Pro Se* Plaintiff